Kenneth A. Rosen (KR4963)
Jeffrey D. Prol (JP7454)
LOWENSTEIN SANDLER, PC
65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500

Elihu Inselbuch (EI2843)
CAPLIN & DRYSDALE, CHARTERED
399 Park Avenue, 27th Floor
New York, New York 10022
212.319.7125

Trevor W. Swett (TS8962)
Peter Van N. Lockwood (PL8843)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, D.C. 20005
202.862-5000

Co-Counsel to Official Committee
  of Asbestos Claimants

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>G-I HOLDINGS, INC. f/k/a GAF CORPORATION, et al.,<br><br>Debtors. | Chapter 11<br>Case No. 01-30135 (RG)<br><br>Hearing Date: February 24, 2003<br>Hearing Time: 10:00 a.m. |

**APPLICATION IN SUPPORT OF MOTION BY OFFICIAL COMMITTEE
OF ASBESTOS CLAIMANTS TO ENFORCE OR IMPLEMENT EXISTING
STAY ORDER REGARDING CLAIMS ESTIMATION, OR, IN THE
ALTERNATIVE, TO STAY ASBESTOS CLAIMS DISCOVERY
UNDER BANKRUPTCY RULE 5011(c) OR 11 U.S.C. § 105(a)**

# TABLE OF CONTENTS

THE PARTIES ..................................................................................................................................1

JURISDICTION AND VENUE .......................................................................................................2

RELIEF REQUESTED .....................................................................................................................2

THE PENDING MOTIONS TO WITHDRAW THE REFERENCE WITH
RESPECT TO CLAIMS ESTIMATION AND BAR DATE MATTERS .......................................3

THE EXISTING STAY — COURSE OF RELATED PROCEEDINGS .........................................5

THE DEBTOR'S PROPOSED DISCOVERY .................................................................................7

ARGUMENT ..................................................................................................................................12

I.   TO PERMIT CLAIMS DISCOVERY AT THIS STAGE WOULD BE
     TO ENGAGE IN PRECISELY THE KIND OF "SUBSTANTIVE
     PROCEEDINGS" THAT THE STAY ORDER IS MEANT TO AVOID ..........................12

     A.   The Proposed Discovery Would Be Premature, Wasteful, and Unfair
          Because the Debtor's Claims Liquidation Motions Are Subject to
          Dismissal on Purely Legal Grounds .........................................................................14

     B.   Permitting the Debtor to Jump the Gun on Claims Discovery Would
          Threaten to Moot the Committee's Objections to the "Proof of Claim
          Form" that Is the Cornerstone of the Debtor's Unprecedented Claims
          Estimation Program ..................................................................................................17

     C.   The Proposed Discovery Would Give the Debtor Much More Than It
          Could Legitimately Seek Even if it Prevailed on the Merits and Won
          the Right to Impose its Onerous "Proof of Claim Form" .........................................19

     D.   Claim-by-Claim Discovery Is Irrelevant Because the Proper Estimation
          Method Focuses on the Aggregate Liability, Not the Individual Claims .................20

     E.   The Debtor's Proposed Discovery Will Inevitably Generate Disputes
          that the Bankruptcy Court Could Not Resolve Without Delving Into
          the Merits ..................................................................................................................22

     F.   The Voluntary Discovery Being Conducted in Other, More Fact-Intensive,
          Controversies Pending Reference Withdrawal Rulings Does Not Provide a
          Sensible Model for the Legal Dispute Surrounding Claims Estimation ...................24

II. A STAY OF DISCOVERY IS CLEARLY WARRANTED UNDER BANKRUPTCY
RULES 5011(c) AND 7026 ................................................................................................26

    A.    The Committee Will Likely Prevail on the Merits ....................................................27

        1.    Debtors Have Conceded the Crux of the Reference
            Withdrawal Motions ...................................................................................28

        2.    The Debtor's Liquidation Proposal Is Foreclosed as a
            Matter of Law ............................................................................................29

    B.    Failure to Grant this Motion Will Impose Severe and Irreparable
        Injury on the Targets of Debtor's Discovery Demands and on the Estate .................33

        1.    The Discovery Requests Serve No Purpose.................................................33

        2.    The Discovery Sought by the Debtor Is Enormously Broad,
            and Would Inflict Exorbitant Costs .............................................................34

    C.    Granting a Stay Will Not Harm the Debtor ..............................................................35

    D.    The Public Interest Weighs Heavily in Favor of Staying Discovery.........................36

III. IN THE ALTERNATIVE AN ORDER SHOULD ISSUE UNDER § 105(A)
TO PREVENT AN ABUSE OF PROCESS .......................................................................37

CONCLUSION................................................................................................................................41

# TABLE OF AUTHORITIES

## FEDERAL CASES

A.H. Robins v. Piccinin,
   788 F.2d 994 (4th Cir. 1986) ................................................................. 22

In re Burrell,
   148 B.R. 820 (Bankr. E.D. Va. 1992) ..................................................... 37

Chavous v. District of Columbia Finance Responsibility and Management
   Assistance Authority,
   201 F.R.D. 1 (D.D.C. 2001) ........................................................ 16, 34, 36

Chicago Board of Options Exch. Inc. v. Conn. Gen'l Life Insurance Co.,
   95 F.R.D. 524 (N.D. Ill. 1982) ................................................................ 16

Chrysler Cap. Corp. v. Century Power Corp.,
   137 F.R.D. 209 (S.D.N.Y. 1991) ............................................................ 36

In re Confidential Investigative Consultants, Inc.,
   178 B.R. 739 (Bankr. N.D. Ill. 1995) ...................................................... 37

Crane v. Green & Freedman Baking Co., Inc.,
   134 F.3d 17 (1st Cir. 1998) ..................................................................... 25

In re Dow Corning Corp.,
   211 B.R. 545 (Bankr. E.D. Mich. 1997) ........................................... 22, 31

In re Eagle Enterprises, Inc.,
   259 B.R. 83 (Bankr. E.D. Pa. 2001) .............................................. 27, 34, 36

In re Eagle-Picher Industrial, Inc.,
   169 B.R. 135 (Bankr. S.D. Ohio 1994) ......................................... 22, 37, 38

In re Eagle-Picher Industrial, Inc.,
   189 B.R. 681 (Bankr. S.D. Ohio 1995) ................................................... 21

In re First Constitution S'holders Litigation,
   145 F.R.D. 291 (D.Conn. 1991) .............................................................. 16

In re Fuller-Austin Insulation,
   1998 WL 812388 (D. Del. Nov. 10, 1998) ................................................ 1

G-I Holdings, Inc. v. Baron & Budd,

179 F. Supp. 2d 233 (S.D.N.Y. 2001)................................................. 39, 40

G-I Holdings, Inc. v. Baron & Budd,
2002 WL. 1585328 (S.D.N.Y. July 17, 2002) ............................................. 40

G-I Holdings, Inc. v. Baron & Budd,
2002 WL. 31251702 (S.D.N.Y. Oct. 8, 2002) ............................................. 40

In re General Teamsters, Warehousemen and Helpers Union Local 890,
124 F.3d 999 (9th Cir. 1997)........................................................ 28, 29

Jackson v. Northern Telecom, Inc.,
1990 WL. 39311 (E.D. Pa. 1990) ........................................................ 16

Johnson v. New York University Sch. of Education,
205 F.R.D. 433 (S.D.N.Y. 2002) ........................................................ 16

Landry v. Air Line Pilots Association International AFL-CIO,
901 F.2d 404 (5th Cir. 1990) .......................................................... 16

Markman v. Westview Instruments, Inc.,
517 U.S. 370 (1996)................................................................... 32

Moldea v. New York Times Co.,
137 F.R.D. 1 (D.D.C. 1990) ............................................................ 16

In re National Gypsum Co.,
139 B.R. 397 (N.D. Tex. 1992)......................................................... 22

Ortiz v. Fibreboard Corp.,
524 U.S. 936 (1999)................................................................... 22

Otey v. Commissioner of Internal Revenue,
634 F.2d 1046 (6th Cir. 1980) ......................................................... 26

Patin v. Thoroughbred Power Boats, Inc.,
294 F.3d 640 (5th Cir. 2002) .......................................................... 26

In re Pruitt,
910 F.2d 1160 (3d Cir. 1990) ..................................................... 28, 29

Raleigh v. Illinois Department of Revenue,
530 U.S. 15 (2000) .................................................................... 30

In re Raytech Corp.,
   217 B.R. 679 (Bankr. D. Conn. 1998) ................................................................. 22

In re SGL Carbon Corp.,
   200 F.3d 154 (3d Cir. 1999) ................................................................................ 41

In re TJN, Inc.,
   207 B.R. 499 (Bankr. D.S.C. 1996) ..................................................................... 27

Transunion Corp. v. PepsiCo, Inc.,
   811 F.2d 127 (2d Cir. 1987) ................................................................................ 16

In re UNR Industrial, Inc.,
   45 B.R. 322 (N.D. Ill. 1984) ................................................................................ 22

United States v. City of Nassau,
   188 F.R.D. 187 (E.D.N.Y. 1999) ......................................................................... 16

Waldman v. Carey,
   82 F.R.D. 469 (E.D. Pa. 1979) ............................................................................. 16

Weisman v. Mediq, Inc.,
   1995 WL. 273678 (E.D.Pa. May 3, 1995) ........................................................... 16

Wyatt v. Kaplan,
   686 F.2d 276 (5th Cir.1982) ................................................................................ 16

## FEDERAL STATUTES AND RULES

11 U.S.C. § 1102(a) ...................................................................................................... 1

11 U.S.C. § 157(a) ........................................................................................................ 2

11 U.S.C. § 502(c) ................................................................................................. passim

11 U.S.C. § 524(g) .................................................................................................. 2, 33

26 U.S.C. § 707(a) ...................................................................................................... 26

26 U.S.C. § 721(a) ...................................................................................................... 26

28 U.S.C. § 1334 .......................................................................................................... 2

- v -

28 U.S.C. § 1408 ................................................................................................2

28 U.S.C. § 1411(a) ............................................................................22, 31, 32, 33

28 U.S.C. § 157(d) ..............................................................................................3

Fed. R. Civ. P. 12(b)(6) .................................................................................... 15

Fed.R.Civ.P. 26(c) ............................................................................. 3, 15, 16, 34

Bankruptcy Rule 5011(c) ............................................................................ passim

Bankruptcy Rule 7026 ................................................................................ passim

The Official Committee of Asbestos Claimants ("Committee") files this application and, in support thereof, respectfully submits as follows.

## THE PARTIES

The Committee is a statutory committee of creditors of G-I Holdings, Inc. ("G-I" or "Debtor"), formerly known as GAF Corporation. The members of the Committee are eleven individuals who assert tort claims against the Debtor by reason of personal injuries or wrongful death caused by asbestos-containing products and who have been appointed to the Committee by the United States Trustee pursuant to 11 U.S.C. § 1102(a).

The Debtor is a New Jersey corporation whose only substantial asset is the stock of a nonbankrupt subsidiary, Building Materials Corporation of America (a/k/a GAF Materials Corporation). The G-I corporate group is under the control of Samuel J. Heyman, who owns, indirectly through another holding company, substantially all of G-I's stock.

G-I's bankruptcy petition, filed on January 5, 2001, resulted from its massive liability to individuals who suffer from asbestos-related disease as a consequence of their exposure to asbestos-containing products manufactured and distributed by The Ruberoid Company ("Ruberoid") and GAF Corporation ("GAF"). G-I is the successor by merger to GAF and Ruberoid and does not dispute its succession to their liabilities.[1] For thirty years prior to this bankruptcy, GAF was a prominent defendant in nationwide asbestos tort litigation, and received by its own count approximately 500,000 asbestos claims, for the defense or payment of which it paid or committed to pay over $1.5 billion. See Affidavit of Richard Weinberg in Support of G-I Holdings, Inc.'s Motion for a Preliminary Injunction ¶ 16. G-I's bankruptcy petition automatically stayed upwards of 150,000 asbestos personal injury claims pending against it.

---

[1] The parties disagree as to whether G-I's operating subsidiary also bears financial responsibility for the asbestos claims, but that dispute has no bearing on this application.

It is to be expected that many thousands of persons as yet unknown will manifest asbestos-related diseases in the future and will seek compensation from G-I for their injuries. Accordingly, early in its chapter 11 case, G-I moved for the appointment of a legal representative for such unknown persons pursuant to 11 U.S.C. § 524(g).[2] This Court appointed the Honorable C. Judson Hamlin (the "Legal Representative") to serve in that capacity.

## JURISDICTION AND VENUE

This is a civil proceeding arising under title 11 or arising in a case under title 11 and thus falls within the original jurisdiction of the federal district courts pursuant to 28 U.S.C. § 1334. Venue lies in this district pursuant to 28 U.S.C. § 1408. The Bankruptcy Court exercises jurisdiction pursuant to 11 U.S.C. § 157(a) and the standing order of reference.

This is a non-core proceeding pertaining to "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." 11 U.S.C. § 157(b)(2)(B).

## RELIEF REQUESTED

The Committee seeks an order enforcing and implementing the existing Order of December 13, 2002 (the "Stay Order") by staying discovery pertaining to claims estimation and related matters. If the Court determines that such discovery does not fall within the existing Stay Order, then the Committee prays that such discovery be stayed by a new Order.

The statutory grounds for relief are found in Rules 5011 and 7026 of the Federal Rules of Bankruptcy Procedure and section 105(a) of the Bankruptcy Code. Bankruptcy Rule 5011(c) provides that "the bankruptcy judge may stay, on such terms and conditions as are proper,

---

[2] Section 524(g) requires the appointment of such a legal representative as part of a statutory scheme under which an asbestos company in chapter 11 may channel its present and future asbestos liabilities to a funded settlement trust and receive a discharge.

proceedings pending disposition of [a] motion [for withdrawal of the reference]." Bankruptcy Rule 7026 makes applicable Rule 26(c) of the Federal Rules of Civil Procedure, which, for good cause shown, authorizes the court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Section 105(a) of the Bankruptcy Code codifies the powers of a court exercising bankruptcy jurisdiction to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

## THE PENDING MOTIONS TO WITHDRAW THE REFERENCE WITH RESPECT TO CLAIMS ESTIMATION AND BAR DATE MATTERS

Parties have applied to the District Court to withdraw the reference with respect to claims estimation matters, and this Motion is a direct outgrowth of those motions and matters. More specifically:

- On or about May 23, 2002, the Committee filed its motion for partial withdrawal of the reference pursuant to 28 U.S.C. § 157(d) and for an estimation of personal injury tort and wrongful death claims under 11 U.S.C. § 502(c).

- On or about June 19 and 25, 2002, respectively, the Debtor filed two inter-related motions, the first to establish a method for estimating asbestos claims under 11 U.S.C. § 502(c) and the second to implement its proposed method by obtaining court approval of certain forms and notice procedures under Bankruptcy Rule 3003(c)(3).

- On or about August 13, 2002, the Legal Representative filed his motion to withdraw the reference of the Debtor's 's aforementioned motions.

For convenience, the reference withdrawal motions filed by the Committee and the Legal Representative involving the question of estimating the Debtor's asbestos liabilities will be

- 3 -

referred to together as the "Estimation Reference Withdrawal Motions."[3] The Debtor's motion under section 502(c) and its motion under Bankruptcy Rule 3003(c)(3) are two parts of an integrated whole, which is a proposal to liquidate and fix the amount of each asbestos claim before a plan of reorganization is confirmed. This memorandum will therefore use the term "Liquidation Motions" when the Debtor's two motions are referred to together.

The briefing of the Estimation Reference Withdrawal Motions is complete and those matters remain *sub judice* before the District Court. The briefing of the Debtors' Claims Liquidation Motions and the objections is likewise complete.[4] The Debtor has admitted that "[t]he liquidation or estimation of contingent or unliquidated personal injury or wrongful death claims is a non-core proceeding."[5] Application of G-I Holdings, Inc. for Order Pursuant to 11 U.S.C. § 502(c) Establishing Method to Liquidate Asbestos Claims at 9 (hereinafter, Debtor's Liq. App.).

When the Committee moved to withdraw the reference of Debtor's Claims Liquidation, this Court emphasized to the parties that it would not venture into matters that might affect or be affected by an eventual withdrawal of the reference:

> [I]t's fair to say, counsel, * * * as I understand it presently, before Judge Bassler is a motion to partially withdraw the reference to the bankruptcy court for purposes of performing an estimation of contingent or unliquidated personal injury, tort and wrongful death claims [, accepting] the filing of this motion as a

---

[3] The Legal Representative joined in the Committee's motion to withdraw the reference for the purpose of commencing an estimation proceeding. Conversely, the Committee joined in the Legal Representative's motion to withdraw the reference as the Debtors' Liquidation Motions.

[4] The briefs are very extensive. In addition to its original moving papers, the Debtor has filed reply papers. The Committee and the Legal Representative have each filed opposing papers and sur-replies.

[5] Subsection (b)(2)(B) of 28 U.S.C. § 157 expressly provides that "core proceedings" do not include "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11."

- 4 -

> commencement of an estimation proceeding of the value of such claims under Section 502(c) and fixing dates for a conference for purposes of structuring the proceedings. So I understand this hasn't been argued, hasn't been responded to; but I have to give consideration to the fact that there is this matter before the district court. *And I am always cognizant of that when rushing forward to adjudicate matters in this court that may be the subject of a request for withdrawal of the reference, and I defer when it is possible in the context of the case for reasons that are quite self-evident. Not to conduct hearings that may ultimately be affected by the district court's decision. So that's why I keep harping back, and I'm sorry if I sound like I'm a broken record; but I want to understand what's going on in the district court because I am not going to have parallel proceedings in this court if there is a request to withdraw the reference to that court.* I think the district court is going to hear that, and I will be directed on how to proceed. So I want parties' presentations to certainly give credence to the fact that I am going to give consideration that there is a pending motion to withdraw the reference and there may be a second.

Transcript of Proceedings of June 20, 2002, at 13-15 (filed herewith as Exhibit A) (emphasis added).

## THE EXISTING STAY — COURSE OF RELATED PROCEEDINGS

This Court has already entered an Order providing as follows:

> All substantive proceedings and rulings on the merits of the Debtor's Claims Estimation Motion and Bar Date Motion are hereby stayed pending the decision of the District Court for the District of New Jersey on the Committee's Withdrawal Motion and the Legal Representative's Withdrawal Motion.

See Stay Order ¶ 1 (filed herewith as Exh. B). The Stay Order was an outgrowth of previous motions by which the Committee and by the Legal Representative requested a stay of the Debtors' Liquidation Motions pursuant to Bankruptcy Rule 5011(c). The only limitation on the requested stay was the Committee's suggestion (to which the other parties agreed) that the briefing of the underlying Liquidation Motions should go forward. See Application in Support of Motion of the Official Committee of Asbestos Claimants for Order Staying Proceedings at 18 (July 15, 2002); see also Transcript of Proceedings of July 15, 2002, at 11 (filed herewith as Exhibit C). That way, the Committee reasoned, whichever court was charged with presiding

over claims estimation once the associated reference withdrawal issues were decided could turn promptly to the legal issues presented.

The Debtor filed papers opposing the prior stay motions, but the parties arrived at what they believed to be an agreed resolution and so informed the Court at a hearing on September 27, 2002. When they proceeded to discuss a form of order, however, differences emerged between the parties, and the Committee wound up submitting a proposed order on October 17, 2002, under the five-day rule. The Debtor filed no objection to that proposed order.

Commencing in November 2002, counsel for the parties participated in a series of consultations at the Debtor's request during which the Debtor expressed its desire to embark on discovery under color of the Clams Liquidation Motions. Before and during these consultations, the Committee pointed out that strong objections to the Liquidation Motions had been raised, that motions for a stay were pending, that the reference withdrawal issue remained undecided, and that commencing discovery in this posture would be premature, wasteful, and inappropriate. The upshot was an "agreement to disagree," whereby the Debtors proceeded to serve two sets of discovery requests and the Committee reserved all of its rights and potential objections while undertaking to present by motion the basic question whether discovery should proceed at all at this stage.

On December 13, 2002, the Court took up the proposed form of stay order at a hearing involving other matters in the G-I case. The parties remained at loggerheads on the question of whether the form of order staying "all substantive proceedings and rulings on the merits" would, of its own force, operate to stay discovery regarding the Claims Liquidation Motions or, if not, whether the stay should be extended to discovery. Except as pertains to discovery, however, all parties were satisfied with the terms of the proposed order. In keeping with their "agreement to

disagree," the parties consented to the entry of the order, while mutually reserving their rights on the discovery question. The Court acted on that basis, and set forth the posture clearly on the record:

> I have a form of order here which provides that all substantive proceedings and rulings on the merits of the debtor's claim estimation motion and bar date motion are stayed pending decision of the district court and also sets forth certain briefing schedules. And I believe that is consistent with the court's decision. The order is admittedly silent as to the conduct of other discovery going forward, and there is some disagreement as to the impact of this ruling on discovery proceedings. Rather than complicate this proceeding by hearing argument on that, I would like to sign this order and reserve to the parties the right to make arguments as appropriate as to what discovery should or should not forward as that case goes forward. I think the parties are in agreement to do that at this time to have this order entered.

Transcript of Proceedings of Dec. 13, 2002, at 228-29 (excerpt filed herewith as Exhibit D).

## THE DEBTOR'S PROPOSED DISCOVERY

To say that the two sets of discovery requests served by the Debtor cast a wide net would be like describing the Pacific Ocean as broad − the word does not begin to capture the reality. Parsing through the definitions, instructions and requests, it becomes is apparent that what the Debtor plans is nothing less than comprehensive claim-by claim discovery against asbestos claimants at large, and more particularly against the asbestos plaintiffs bar. Indeed, the Debtor purports to elicit virtually every fact and document that could have any bearing on the merits of any open claim — and even every closed claim that was resolved within the last ten years.

The issue presented by this application is whether *any* discovery is appropriate at this stage of the Claims Liquidation Motions. This is not the place for the Committee to register objections to the Debtor's myriad requests, and all potential objections are expressly reserved. It must be noted at the outset, however, that if the time ever comes for the Committee to engage in the discovery demanded by the Debtor, the issues then arising as to the propriety of the Debtor's

-7-

discovery under Rule 26 of the Federal Rules of Civil Procedure will be numerous and important.

The Debtor's audacious overreaching begins with Instruction No. 1, wherein it defines "Committee," the party ostensibly required to respond: "The term 'Committee' refers to the present asbestos claimants and their counsel, including Lowenstein Sandler, PC; Caplin & Drysdale, Chartered; and any other affiliated or local counsel, co-counsel, law firm, representative, investigator, consultant, expert, or agent of the foregoing, or any other person, firm, or entity directly or indirectly subject to the control of the foregoing." [6] Through definitional sleight of hand, the "Committee" is transformed into something very different than the juridical entity created by the U.S. Trustee under 11 U.S.C. § 1102. The "Committee," as defined, goes beyond the eleven individuals who are the members of the Committee to sweep in "the present asbestos claimants" generally. It purportedly subsumes the tort counsel who act for members and claimants, as well as the law firms who have been retained as counsel to the Committee itself, and also all agents of all of these claimants and law firms. And the concept presumes to require each of those law firms, their attorneys, and agents to submit to discovery with respect to all of their clients who are or have ever been asbestos claimants.

In the Debtor's view, evidently, it is just as though the membership of, say Citbank, on an unsecured creditors committee, represented in the committee's affairs by a Wall Street law firm, could somehow expose the entire financial community to discovery. The Debtor's idea would transform all of Citibank's depositors and correspondent banks, and all of the Wall Street law

---

[6] Initially, the Debtor purported to encompass within the definition of "Committee" even *future* claimants, their tort counsel, the Legal Representative, and the Legal Representative's counsel. See First Set of Discovery Requests (Definitions ¶ 1) (filed herewith as Exhibit E). At the request of the Legal Representative, the Debtor informally modified its requests so as to separate those persons out from its artificial construction of the "Committee."

firms other banking clients, into discovery targets. And it would treat those remote persons, not as third party witnesses under the safeguards of Rule 45 of the Federal Rules of Civil Procedure, but as parties-opponent whose information and files may be extracted simply by serving document requests and interrogatories on the creditors committee under Rules 33 and 34.

Having thus purported to bring the entire asbestos constituency within its discovery net, the Debtor proceeds to frame exhaustive requests that admit of virtually no limits: If the fact or document pertains to the merits of an asbestos claim that is now, or ever was, asserted against GAF or G-I, the Debtor wants that fact stated or that document produced for the purposes of its Liquidation Motions. Indeed, it wants such information even as to claims that were asserted against any *other* asbestos defendant and *not* against the debtor! The discovery requests are filed herewith as Exhibits E and F, and they should be read in their entirety to grasp the flabbergasting scale of the discovery the Debtor is asking to mount. But the requests are too lengthy to set out here in full, so instead we provide below some exemplary quotations and illustrative paraphrases. The "Committee" and all of those for whom the Debtor deems the Committee to be a surrogate (as subsumed in the defined term, "you"), are directed to:

- "Describe each and every instance in which you submitted a proof of claim form or similar form on behalf of any asbestos claimant in any bankruptcy, trust procedure, claims resolution procedure or claims liquidation procedure" (including, presumably, any asbestos personal injury suit in the tort system). Exh. E, Int. 9.

- Produce "any proof of claim form submitted to any entity" (including Federal court or agency) in "all prior litigation, settlement, bankruptcy or other claims resolution processes, including CCR, Manville Trust, Robins Trust, and the ACME Trust. Exh. E., Doc. Req. 6.

- Produce "[a]ll documents concerning your evaluation and analysis of the 'value' of any asbestos claim, and your analysis with respect to such claims' settlement values." Exh. F, Doc. Req. 11.

- Produce "[a]ll documents concerning or in any way related to the methodology or decision-making process which you use to determine how you allocate settlement awards among the asbestos claimants whom you represent in any asbestos litigation." Exh. F, Doc. Req. 18.

- Describe "each and every instance in which you and/or your affiliated local counsel acted as counsel in any action against the Debtor"; provide, *inter alia,* the "basis for your good faith belief that the client was exposed to asbestos," and identify every claim that you settled with the same defendant or defendants on the same day. Exh. F, Int. 14.

- Describe "each and every instance in which you and/or your affiliated counsel acted as counsel in an action against *any* present or former manufacturer of asbestos," (emphasis added), providing for each claim the same information as is requested in Interrogatory 14. Exh. F, Int. 15.

- For each claim described in response to Interrogatories 14 or 15, describe the details of all settlement payments, and all related fees, expenses, and allocations. Exh. F, Int. 16.

- Identify all documents used in forming responses to Interrogatories 14-17 concerning all claims and settlements elicited therein, and identify every individual who may have knowledge regarding those subjects. Exh. F, Int. 17, 18.

- Identify all paralegals, staff members, independent contractors, employees, or experts who have ever communicated with witnesses, clients, or potential clients regarding product identification or related testimony in any matter in which the Debtor or any other present or former asbestos manufacturer was a party. Exh. F, Int. 21.

- Produce "[a]ll documents concerning the screening, treatment or diagnosis of any asbestos claimant who filed a claim in any asbestos litigation in which Debtor is or was a party, including but not limited to written diagnoses, x-rays, medical reports or opinions, medical records, medical histories, and medical bills." Exh. F, Doc. Req. 13.

- Produce "[a]ll documents concerning the drafting and execution of affidavits by any asbestos claimant or witness prepared for and/or used in any action to which the Debtor is or was a party, including, but not limited to, all drafts and executed copies of the affidavits, correspondence, transmittal letters, fax cover sheets, electronic mail, handwritten notes, and telephone and voice mail messages." Exh. F, Doc. Req. 15.

- Produce "[a]ll originals or copies of any record of payment, including, but not limited to, checks, bank deposit slips, wire transfers, payment stubs,

and money orders received by you in any asbestos-related litigation and /or paid by you to any asbestos claimant." Exh. F, Doc. Req. 16.

- Produce "[a]ll copies of all responses served on behalf of any claimant to interrogatories prepared by any defendant in any asbestos litigation or bankruptcy whether in federal or state court, and all documents relied upon or referred to, including but not limited to, templates, in providing those responses." Exh. F, Doc. Req. 18.

As if the overreaching of its particular requests were not abundantly clear from their own wording, the Debtor instructs the targets of discovery to use the "most expansive and inclusive interpretation" of each request. See Exh. E (Instructions ¶ 1); Exh. F (Instructions ¶ 1).

Many of the interrogatories and document requests propounded in the Debtor's First Set of Discovery Requests are aimed at a "pre-test" of the Debtor's proposed "proof of claim form," or "POC," conducted under the auspices of Dr. Mark Peterson, the Committee's claims expert.[7] Dr. Peterson has described the pre-test and its results in his affidavits. Suffice it to say here that the pre-test points to the virtual impossibility of complying fully with the POC, which is far more demanding than any such form that has ever been approved in an asbestos bankruptcy, and underscores the imponderable costs in time and money that attempted compliance would inflict on the claimants and their lawyers. See Affidavit of Mark Peterson ¶¶ 21-35; Supplemental Affidavit of Mark Peterson ¶¶ 74-82. The Debtor's opposing expert, Dr. Letitia Chambers, takes a contrary view, albeit without any expertise that would entitle her views on that subject to serious consideration. See Affidavit of Letitia Chambers, ¶¶ 96, 123-32; Supplemental Affidavit of Mark Peterson ¶¶ 83-84. It must be noted, however, that any disagreement as to the costs in

---

[7] We refer to the Debtor's "proof of claim form" in quotation marks, because it bears no resemblance to what Bankruptcy Rule 3001(c) and related cases contemplate or permit. It is objectionable not only because its manifest purpose is to magnify claimants' costs and discourage filings, but also because, in combination with the Debtor's arbitrary claim "matrix," it would implement substantive rules for claim allowance that repudiate applicable state tort law and substitute the Debtor's self-serving notions of what the tort law ought to be. See Committee's Sur-Reply to Debtors' Liquidation Proposal 13-21.

- 11 -

time and money that would be imposed by the POC will become moot if the Debtor's Claims Liquidation Motions fail on purely legal grounds, as the Committee and the Legal Representative have argued that they must.

Prominent among the topics the Debtor intends to obtain through the Committee are the practices of the plaintiffs bar in soliciting and securing retention by clients, obtaining affidavits and testimony about medical subjects and product identification. The Court will recognize these themes from the Debtor's much-vaunted fraud and RICO litigation in the Southern District of New York against certain plaintiffs' attorneys. Judge Sweet has restricted discovery appropriately in that case and has instructed the Debtor to avoid precisely the kind of "fishing expedition" that it is now seeking to unleash against the plaintiffs' bar generally, using its Claims Estimation Motions as the excuse. See G-I Holdings, Inc. v. Baron & Budd, 2002 WL 31251702 *5 (S.D.N.Y. Oct. 8, 2002).

## ARGUMENT

I.  **TO PERMIT CLAIMS DISCOVERY AT THIS STAGE WOULD BE TO ENGAGE IN PRECISELY THE KIND OF "SUBSTANTIVE PROCEEDINGS" THAT THE STAY ORDER IS MEANT TO AVOID**

The parties have framed competing approaches to the handling of asbestos claims in this asbestos-driven bankruptcy. Each of the competing proposals is subject to a pending motion to withdraw the reference. The Committee and the Legal Representative have raised substantial objections to the Debtor's methodology and related forms, to which the parties have devoted extensive briefs. The Debtor has admitted that claims estimation is not a core proceeding. This Court has already articulated its sound practice of not adjudicating any matter that might affect or be affected by withdrawal of the reference if that should occur (Exh. A 14), and so has stayed "all substantive proceedings, and all rulings on the merits" as well as "all substantive

proceedings" pertaining to the Claims Liquidation Motions until the reference withdrawal issue has been decided. Exh. B ¶ 1.

Against this background, the first question presented by this application is whether the existing Stay Order prevents the Debtor from launching discovery in aid of its Claims Liquidation Motions at this stage. When the Stay Order is viewed in its proper context, the answer should be abundantly clear. The purposes of the Stay Order are to promote fairness and judicial economy, and to accord proper respect to the role of the District Court, by preserving the *status quo* as to significant matters that may affect or be affected by a withdrawal of the reference. For these reasons, the Stay Order postpones, not only "all decisions on the merits," but also "all substantive proceedings" with respect to the Claims Liquidation Motions, pending the outcome of the Estimation Reference Withdrawal Motions. The Stay Order thus implements this Court's wise practice of refusing to "rush[] forward to adjudicate matters in this court that may be the subject of a request for withdrawal of the reference," and of refraining from "hearings that may ultimately be affected by the district court's decision," or that might entail "parallel proceedings" prejudicial to, or inconsistent with, the District Court's ultimate directives "on how to proceed." Exh. A 14-15.

The Committee and the Legal Representative have challenged the Debtor's program for liquidating asbestos claims on the grounds, *inter alia*, that it violates basic principles of bankruptcy law, ignores jury trial rights that Congress has preserved inviolate by statute, and fails the tests of Constitutional due process and fundamental fairness. Those challenges, which have been fully briefed, are quintessentially legal, not factual, and the adjudication thereof cannot profit from discovery. In circumstances like these, courts do not hesitate to prevent parties from launching discovery that will turn out to be irrelevant, unnecessary, and wasteful if

- 13 -