# EXHIBIT E

# LIQUIDATION ANALYSIS

**INTRODUCTION**

      Pursuant to section 1129(a)(7) of the Bankruptcy Code, each Holder of an impaired Claim or Equity Interest must either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such non-accepting Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code (often referred to as the "Best Interests Test"). In connection with this requirement, the following hypothetical liquidation analysis (the "Liquidation Analysis") has been prepared so that the Bankruptcy Court may determine that the Plan is in the best interests of all classes impaired by the Plan.

      The Debtors believe that the Plan meets the "best interest of creditors" test of section 1129(a)(7) of the Bankruptcy Code.  The Debtors believe that the holders of claims belonging to a Class that would be an impaired Class under the Plan, will receive greater value as of the Effective Date under the Plan than such holders would received under a chapter 7 liquidation if the applicable Debtor or Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

      The Debtors believe that chapter 7 liquidations of the Debtors would result in substantial diminution in the value to be realized by holders of Claims belonging to a Class that would be an impaired Class under the Plan, as compared to the proposed distributions under the Plan, because of, among other factors: (a) the absence of going concern value in chapter 7 because the channeling injunction necessary to protect BMCA from asbestos claims is only available in chapter 11, (b) the failure to realize the maximum going concern value of the Debtors' assets; (c) the substantial negative impact of conversion to a chapter 7 case and subsequent liquidation on the employees and customers of the Debtors' subsidiaries; (d) additional costs and expenses involved in the appointment of trustees, attorneys, accountants and other professionals to assist such trustees in the chapter 7 cases; (e) additional expenses and Claims, some of which would be entitled to priority in payment, which would arise by reason of the liquidation and from the rejection of unexpired real estate leases and other Executory Contracts and Unexpired Leases in connection with a cessation of the Debtors' subsidiaries' operations; and (f) the substantial time that would elapse before Entities would receive any distribution in respect of their Claims.  Consequently, the Debtors believe that the Plan will provide a substantially greater ultimate return to holders of Claims than would chapter 7 liquidations.

THE LIQUIDATION ANALYSIS IS AN ESTIMATE OF THE PROCEEDS THAT MAY BE GENERATED AS A RESULT OF A HYPOTHETICAL CHAPTER 7 LIQUIDATION OF THE ASSETS OF THE DEBTORS AND NON-DEBTOR AFFILIATES. UNDERLYING THE LIQUIDATION ANALYSIS ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT ECONOMIC, COMPETITIVE, AND OPERATIONAL UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF MANAGEMENT. ADDITIONALLY, VARIOUS LIQUIDATION DECISIONS UPON

WHICH CERTAIN ASSUMPTIONS ARE BASED ARE SUBJECT TO CHANGE. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE ASSUMPTIONS AND ESTIMATES EMPLOYED IN DETERMINING THE LIQUIDATION VALUES OF THE DEBTORS' AND NON-DEBTOR AFFILIATES' ASSETS WILL RESULT IN THE PROCEEDS WHICH WOULD BE REALIZED WERE THE DEBTORS AND NONDEBTOR AFFILIATES TO UNDERGO AN ACTUAL LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE. THE UNAVAILABILITY OF A SECTION 524(g) CHANNELING INJUNCTION IN CHAPTER 7 TO PRESERVE THE GOING CONCERN VALUE OF BMCA, HOWEVER, IS A CERTAINTY.

**GENERAL ASSUMPTIONS**

For purposes of this analysis, the Effective Date is assumed to be December 31, 2008. A summary of the assumptions used by management in preparing the Liquidation Analysis follows.

The Liquidation Analysis assumes that the hypothetical chapter 7 liquidation is effected via the orderly sale of the assets of the Debtors and Non-Debtor Affiliates. The lack of the Asbestos Permanent Channeling Injunction in a chapter 7 liquidation would preclude a sale of the businesses as a going concern, due to the potential asbestos liability incurred in the acquisition of the assets. Therefore, we have assumed that an actual liquidation of assets would be required.

The Liquidation Value available to holders of unsecured Claims and Interests would be reduced by, among other things: (a) the Claims of secured claimholders to the extent of the value of their collateral; (b) the costs, fees and expenses of the liquidation, as well as other administrative expenses of the Debtors' chapter 7 case; (c) unpaid Administrative Claims of the Reorganization Case; and (d) Priority Claims and Priority Tax Claims.  The Debtor's costs of liquidation in a chapter 7 case would include the compensation of a trustee, as well as of counsel and of other professionals retained by such trustee, asset disposition expenses, applicable Taxes, litigation costs, Claims arising from the operation of the Debtor during the pendency of the chapter 7 case and all unpaid Administrative Claims incurred by the Debtor during the Reorganization case that are allowed in the chapter 7 case.  The liquidation itself would trigger certain Priority Claims, such as Claims for severance pay, and likely would accelerate the payment of other Priority Claims and Priority Tax Claims that would otherwise be payable in the ordinary course of business.  These Priority Claims and Priority Tax Claims would be paid in full out of the net liquidation proceeds, after payment of Secured Claims, before the balance would be made available to pay unsecured Claims or to make any distribution in respect of Interests.  The Debtors believe that the liquidation also would generate a significant increase in unsecured Claims, such as contract rejection damage Claims, and tax and other governmental Claims.

Conversion of the Chapter 11 Cases to chapter 7 would likely result in additional costs to the Debtors' estates.  It is assumed that the liquidation of the Debtors and Non-Debtor Affiliates would commence under the direction of a Court-appointed trustee and continue for 12 months, during which time all of the Debtors' and Non-Debtor Affiliates' major assets would be sold and the cash proceeds, net of liquidation-related costs, would then be distributed to creditors. Although some assets might be liquidated in less than 12 months, other assets would be more difficult to collect or sell, thus requiring a liquidation period substantially longer than 12 months. The liquidation period would allow for the collection of receivables, sale of assets, and wind-down of daily operations.  For certain assets, estimates of the liquidation proceeds were made for

each asset individually.  For other assets, liquidation values were assessed for general classes of assets by estimating the percentage recoveries that a trustee might achieve through their disposition.  The Liquidation Analysis does not include recoveries of any potential preferences, fraudulent conveyances, RICO, or other causes of action.

Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee and other professionals retained by the trustee, including attorneys, financial advisors and consultants; asset disposition expenses; litigation costs; all unpaid expenses incurred by the Debtors in the Chapter 11 Cases that are allowed in the chapter 7 cases; and Claims arising from the operations of the Debtors during the pendency of the Chapter 11 Cases.

In addition, liquidation costs could be higher, and the value of any distributions could be lower, if the chapter 7 cases were not completed within the 12-month period assumed in the Liquidation Analysis.  In the event that litigation were necessary to resolve claims asserted in the chapter 7 cases, any delay could be further prolonged and administrative expenses further increased.  The effects of this potential delay on the value of distributions under the hypothetical liquidation have not been considered.  Further details are provided in Note 15 below.

## FOOTNOTES TO LIQUIDATION ANALYSIS

A summary of the assumptions used in the Liquidation Analysis is set forth below.

### NOTE 1 – Book Values as of September 28, 2008

Unless stated otherwise, the book values used in this Liquidation Analysis are the book values as of September 28, 2008 of BMCA and G-I.

### NOTE 2 – Cash and cash equivalents

The Liquidation Analysis assumes that operations during the liquidation period would not generate additional cash available for distribution except for net proceeds from the disposition of non-cash assets.  It is assumed that cash and cash equivalents, which include short-term and long-term marketable securities, would be 100% collectible.  The September 28, 2008 balance has been adjusted to include a $2.95 million tax refund received by G-I from its affiliate G-Holdings Inc. on November 21, 2008.  Previously, this amount appeared on G-I's balance sheet as a $2.492 million Income tax receivable.

### NOTE 3 – Accounts receivable, trade, net

The accounts receivable assumes that a chapter 7 trustee would retain a staff to process the collection of outstanding accounts receivable.  Proceeds from the collection of accounts receivable were estimated using the borrowing base advance rate of 85% of eligible Accounts Receivable stipulated in BMCA's current credit agreement.  This advance rate was applied to the September 28, 2008 balance sheet values.   The result is assumed to be an estimate of the amount of proceeds that would be available to a secured lender in the event of a liquidation.

Accounts receivable have been discounted at 75% on the low end and 85% on the high end of their book value as a result of the application of this methodology.

**NOTE 4 – Accounts receivable, other**

The accounts receivable assumes that a chapter 7 trustee would retain a staff to process the collection of outstanding accounts receivable. Proceeds from the collection of accounts receivable were estimated using the borrowing base advance rate of 85% of eligible Accounts Receivable stipulated in BMCA's current credit agreement. This advance rate was applied to the September 28, 2008 balance sheet values.

Accounts receivable have been discounted at 75% on the low end and 85% on the high end of their book value as a result of the application of this methodology.

**NOTE 5 – Income tax receivable**

The income tax receivable line represents estimated income tax refund payments due to G-I from its affiliates. The actual payment of $2.95 million was received by G-I on November 21, 2008 and is shown as Cash and cash equivalents in this analysis. The Income tax receivable had been $2.492 million on September 28, 2008.

**NOTE 6 – Inventories, net**

Inventories are comprised of raw materials, work-in-process and finished goods. Proceeds from the collection of inventories were estimated using the borrowing base advance rates stipulated in BMCA's current credit agreement. These advance rates were applied to the September 28, 2008 balance sheet values. This methodology resulted in an overall inventory recovery as a percentage of net book value of 40% on the low end and 50% on the high end.

**NOTE 7 – Deferred income tax assets**

Deferred income tax assets can be used to offset taxes payable in future periods; however, it is not believed that the deferred income tax assets can be liquidated for cash and therefore have a 0% recovery rate.

**NOTE 8 – Receivable from affiliates**

The receivable from affiliates is due to G-I from its affiliates, and shown at its September 28, 2008 balance sheet values. It is expected that this receivable cannot be collected.

**NOTE 9 – Other current assets**

Other current assets are comprised of a variety of assets. Management's recovery estimates are based upon such factors as the nature of the asset, its potential use during the liquidation period and the ability to recover value. Management estimates that it can recover 40% on the low end and 50% on the high end of these assets' book values.

**NOTE 10 – Property, plant & equipment, net**

Property, plant & equipment, net is stated at cost less accumulated depreciation and amortization. The recovery rates for property, plant and equipment were determined by assumptions of management. Using these assumptions, property, plant & equipment, net was determined to have a liquidation value of 20% on the low end and 30% on the high end of its book value.

**NOTE 11 – Income tax receivable from parent corporation**

The Income tax receivable from parent corporation represents income tax payments due to BMCA from its parent and is shown at its September 28, 2008 book value. It is not believed that this item will be recoverable.

**NOTE 12 – Insurance receivable – Superfund**

For the Insurance receivable – Superfund, recovery assumptions range from 90% on the low end to 100% on the high end of September 28, 2008 book value.

**NOTE 13 – Other assets – Israel Development Bonds**

G-I owns Israel Development Bonds in the principal amount of $1,000. Recovery assumptions range from 90% on the low end to 100% on the high end.

**NOTE 14 – Investment in subsidiaries**

The book value as of September 28, 2008 of G-I's investments in its subsidiaries is shown as Investment in subsidiaries. Recovery assumptions range from 90% on the low end to 100% on the high end.

**NOTE 15 – Costs Associated with a Chapter 7 Liquidation**

The costs associated with a chapter 7 liquidation are assumed to include corporate payroll overhead during liquidation, fees and costs for professionals retained by the chapter 7 trustee, including legal, financial and claims processing advisors, estimated at $2.0 million per month for twelve months. In addition, it is assumed the chapter 7 trustee would receive payments equal to 1.5% of the estimated total proceeds from sale of the businesses and available cash less other chapter 7 expenses. Additional brokerage fees would be necessary for the sale of the Debtors' assets. Brokerage fees are calculated at 0.5% of estimated total proceeds from sale of the businesses.

**NOTE 16 – BMCA secured debt**

BMCA secured debt consists of all of BMCA's outstanding secured debt. As of September 28, 2008, BMCA's secured debt stood at $2.0 billion.

**Statement of Assets**
($ in thousands)

| | Note | Percentage Recovery Low | Percentage Recovery High | Building Materials Corporation of America Book value as of Sept. 28, 2008 (Note 1) (Unaudited) | Low (Unaudited) | High (Unaudited) | G-I Holdings Inc. Book value as of Sept. 28, 2008 (Note 1) (Unaudited) | Low (Unaudited) | High (Unaudited) |
|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | |
| Cash and cash equivalents | 2 | 100% | 100% | $157,809.0 | $157,809.0 | $157,809.0 | $6,334.9 | $6,334.9 | $6,334.9 |
| Accounts receivable, trade, net | 3 | 75% | 85% | 539,864.0 | 404,898.0 | 458,884.4 | – | – | – |
| Accounts receivable, other | 4 | 75% | 85% | 11,749.0 | 8,811.8 | 9,986.7 | 1,158.2 | 868.6 | 984.5 |
| Income tax receivable | 5 | 0% | 0% | – | – | – | – | – | – |
| Inventories, net | 6 | 40% | 50% | 315,769.0 | 126,307.6 | 157,884.5 | – | – | – |
| Deferred income tax assets | 7 | 0% | 0% | 42,564.0 | – | – | – | – | – |
| Receivable from affiliates | 8 | 0% | 0% | – | – | – | 939.9 | – | – |
| Other current assets | 9 | 40% | 50% | 18,249.0 | 7,299.6 | 9,124.5 | 23.6 | 9.4 | 11.8 |
| Property, plant & equipment, net | 10 | 20% | 30% | 643,948.0 | 128,789.6 | 193,184.4 | 752.4 | 150.5 | 225.7 |
| Income tax receivable from parent corporation | 11 | 0% | 0% | 10,016.0 | – | – | | | |
| Insurance receivable - Superfund | 12 | 90% | 100% | | – | – | 3,707.2 | 3,336.5 | 3,707.2 |
| Other assets - Israel Development Bonds | 13 | 90% | 100% | | – | – | 1.0 | 0.9 | 1.0 |
| Investment in Subsidiaries | 14 | 90% | 100% | | – | – | 8,596.3 | 7,736.7 | 8,596.3 |
| Total assets | | | | $1,739,968.0 | $833,915.6 | $986,873.5 | $21,513.5 | $18,437.6 | $19,861.4 |
| **Assets Available for Distribution** | | | | | $833,915.6 | $986,873.5 | | $18,437.6 | $19,861.4 |
| **Costs Associated with Liquidation** | 15 | | | | | | | | |
| Corporate payroll overhead and professional fees | | | | | 24,000.0 | – | | – | – |
| Chapter 7 trustee payments | | | | | 12,148.7 | 14,803.1 | | 276.6 | 297.9 |
| Additional brokerage fees | | | | | 4,169.6 | 4,934.4 | | 92.2 | 99.3 |
| Costs associated with liquidation | | | | | $40,318.3 | $19,737.5 | | $276.6 | $297.9 |
| **BMCA Secured Debt (at Sept. 28, 2008)** | 16 | | | | $2,000,200.0 | $2,000,200.0 | | – | – |
| **Net Estimated Proceeds from Asset Liquidation** | | | | | ($1,206,602.8) | ($1,033,064.0) | | $18,161.0 | $19,563.5 |
| **Net Estimated Proceeds Available for Distribution** | | | | | – | – | | $18,161.0 | $19,563.5 |

See Notes to Liquidation Analysis

**Distribution Analysis**
($ in thousands)

|  | G-I Holdings Inc. | | | |
|---|---|---|---|---|
|  | Low Estimate | | High Estimate | |
| **Net Estimated Proceeds Available for Distribution (Asset Sale)** | | $18,161.0 | | $19,563.5 |
|  | Estimated Allowable Claims | Estimated Liquidation Value | Estimated Allowable Claims | Estimated Liquidation Value |
| **Net Estimated Proceeds Available for Distribution** | | **$18,161.0** | | **$19,563.5** |
| Less: Admin. Claims, Priority Claims and Secured Claims | | | | |
|    Administrative Expense Claims | $5,500.0 | | $5,500.0 | |
|    Priority Tax Claims | – | | – | |
|    Class 1A: G-I Priority Non-Tax Claims | – | | – | |
|    Class 1B: ACI Priority Non-Tax Claims | – | | – | |
|    Class 2A: G-I Secured Claims | – | | – | |
|    Class 2B: ACI Secured Claims | – | | – | |
| Total Admin. Claims, Priority Claims and Secured Claims | $5,500.0 | $5,500.0 | $5,500.0 | $5,500.0 |
| *Hypothetical Recovery (%)* | | *100.0%* | | *100.0%* |
| **Net Estimated Proceeds Available to Unsecured Claims** | | **$12,661.0** | | **$14,063.5** |
| Less: Unsecured Claims | | | | |
|    Class 3A: G-I Unsecured Claims | $1,110.6 | | $1,110.6 | |
|    Class 3B: ACI Unsecured Claims | – | | – | |
|    Class 4: Environmental Claims for Remedial Relief | – | | – | |
|    Class 5: Other Environmental Claims | – | | – | |
|    Class 6: Asbestos Claims | 7,000,000.0 | | 7,000,000.0 | |
|    Class 7: Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims | – | | – | |
|    Class 8: CCR Claim | 9,900.0 | | 9,900.0 | |
|    Class 9: Bonded Claims | 10,068.8 | | 10,068.8 | |
|    Class 10A: G-I Affiliate Claims | 177,098.6 | | 177,098.6 | |
|    Class 10B: ACI Affiliate Claims | – | | – | |
|    Class 11: G-I Equity Interest Redemption Claims | 52.0 | | 52.0 | |
|    Class 12A: G-I Equity Interests | – | | – | |
|    Class 12B: ACI Equity Interests | – | | – | |
| Total Unsecured Claims | $7,198,230.0 | $12,661.0 | $7,198,230.0 | $14,063.5 |
| *Hypothetical Recovery (%)* | | *0.2%* | | *0.2%* |
| **Net Estimated Deficiency to Unsecured Claims** | | **($7,185,569.0)** | | **($7,184,166.5)** |

See Notes to Liquidation Analysis