UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| G-I HOLDINGS INC.<br>(f/k/a GAF Corporation) and ACI INC., | Case Nos. 01-30135 (RG) and 01-38790 (RG)<br>(Jointly Administered) |
| Debtors. | Hon. Rosemary Gambardella, U.S.B.J. |

**EIGHTH AMENDED JOINT PLAN OF REORGANIZATION OF G-I HOLDINGS INC.
AND ACI INC. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**THIS PLAN PROVIDES FOR THE ISSUANCE OF A CHANNELING INJUNCTION
UNDER SECTION 524(g) OF THE BANKRUPTCY CODE THAT PERMANENTLY
ENJOINS ALL PERSONS HOLDING ASBESTOS CLAIMS AND FUTURE ASBESTOS-
RELATED DEMANDS FROM PURSUING A REMEDY AGAINST THE DEBTORS AND
OTHER PROTECTED PARTIES, AND CHANNELS SUCH CLAIMS AND DEMANDS TO
THE ASBESTOS TRUST FOR RESOLUTION AND PAYMENT**

| | |
|---|---|
| DEWEY & LeBOEUF L.L.P.<br>1301 Avenue of the Americas<br>New York, New York 10019<br>(212) 259-8000<br><br>Attorneys for Debtors in Possession | RIKER, DANZIG, SCHERER,<br>HYLAND & PERRETTI LLP<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey 07962-1981<br>(973) 538-0800<br>Attorneys for Debtors in Possession |
| CAPLIN & DRYSDALE, CHARTERED<br>375 Park Avenue<br>New York, New York  10152-3500<br>(212) 319-7125<br>Attorneys for Official Committee of Asbestos<br>Claimants | LOWENSTEIN SANDLER, PC<br>65 Livingston Avenue<br>Roseland NJ 07068<br>(973) 597-2500<br>Attorneys for Official Committee of Asbestos<br>Claimants |
| KEATING MUETHING & KLEKAMP PLL<br>One East Fourth Street<br>Suite 1400<br>Cincinnati, Ohio 45202<br>Tel: (513) 579-6400<br>Attorneys for C. Judson Hamlin as Legal<br>Representative | SAIBER LLC<br>One Gateway Center<br>Newark, New Jersey  07102-5311<br>(973) 645-4929<br>Attorneys for C. Judson Hamlin as Legal<br>Representative |

Dated:  October 5, 2009

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| ARTICLE I | DEFINITIONS ................................................................ | 1 |
| 1.1 | Defined Terms ................................................................ | 1 |
| 1.2 | Other Definitions ........................................................... | 19 |
| 1.3 | Rules of Construction .................................................... | 19 |
| ARTICLE II | TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ............................. | 19 |
| 2.1 | Administrative Expense Claims ..................................... | 19 |
| 2.2 | Professional Compensation and Reimbursement Claims .......................................... | 20 |
| 2.3 | No Double Payment of Administrative Claims .............. | 20 |
| 2.4 | Priority Tax Claims ........................................................ | 20 |
| ARTICLE III | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................................. | 21 |
| 3.1 | Class 1A – G-I Priority Non-Tax Claims. ..................... | 22 |
| 3.2 | Class 1B – ACI Priority Non-Tax Claims. .................... | 23 |
| 3.3 | Class 2A – G-I Secured Claims. .................................... | 23 |
| 3.4 | Class 2B – ACI Secured Claims. ................................... | 23 |
| 3.5 | Class 3A – G-I Unsecured Claims. ................................ | 24 |
| 3.6 | Class 3B – ACI Unsecured Claims. ............................... | 24 |
| | Class 3C – G-I Non-Priority Tax Penalty Claims …………………………………25 | |
| 3.7 | Class 4 – Environmental Claims for Remedial Relief .................................... | 24 |
| 3.8 | Class 5 – Other Environmental Claims .......................... | 25 |
| 3.9 | Class 5A - US Environmental Claim and Vermont Environmental Claim ................... | |
| 3.10 | Class 6 – Asbestos Claims. ............................................ | 25 |
| 3.11 | Class 7 – Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims. ......................................................... | 26 |
| 3.12 | Class 8 – CCR Claim ..................................................... | 27 |
| 3.13 | Class 9 – Bonded Claims ............................................... | 28 |
| 3.14 | Class 10A – G-I Affiliate Claims ................................. | 28 |
| 3.15 | Class 10B – ACI Affiliate Claims ................................ | 28 |
| 3.16 | Class 11 – G-I Equity Interest Redemption Claims......... | 29 |
| 3.17 | Class 12A – G-I Equity Interests .................................. | 29 |
| 3.18 | Class 12B – ACI Equity Interests ................................. | 29 |
| ARTICLE IV | IMPLEMENTATION OF PLAN ................................. | 29 |
| 4.1 | Compromise and Settlement.......................................... | 29 |
| 4.2 | Creation of Asbestos Trust ............................................ | 30 |
| 4.3 | Appointment of Asbestos Trustees ................................ | 30 |
| 4.4 | Transfer of Certain Property to the Asbestos Trust. ...... | 30 |
| 4.5 | Institution and Maintenance of Legal and Other Proceedings.......... | 33 |
| 4.6 | Supersedeas Bonds and Payment Assurances. ............... | 33 |

# TABLE OF CONTENTS
## (continued)

**Page**

4.7      Equity Ownership of G-I. ........................................................................... 34
4.8      Equity Ownership of ACI. ........................................................................... 34
4.9      New ACI .......................................................................................................
4.10    Equity Infusion to Fund Liabilities Under the Plan ....................................
        Authority of the Debtors ........................................................................ 35
4.11    Letter of Credit ........................................................................................... 34

**ARTICLE V**      VOTING and DISTRIBUTIONS UNDER THE PLAN ....................................... 35

5.1      Impaired Classes to Vote .......................................................................... 35
5.2      Acceptance by Class of Creditors .............................................................. 35
5.3      Nonconsensual Confirmation .................................................................... 35
5.4      Distributions Under the Plan ...................................................................... 35
5.5      Disbursing Agent ....................................................................................... 36
5.6      Manner of Payment Under the Plan ........................................................... 36
5.7      Unclaimed Property. .................................................................................. 36
5.8      Time Bar to Cash Payments ...................................................................... 37
5.9      Distributions After Effective Date .............................................................. 37
5.10    Setoffs ....................................................................................................... 37
5.11    Cancellation of Existing Securities and Agreements ................................. 37
5.12    Payment of Interest on Allowed Claims .................................................... 37
5.13    Allocation of Plan Distributions Between Principal and Interest ............... 37

**ARTICLE VI**     TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN ......................... 38

6.1      Objections to Claims; Prosecution of Disputed Claims ............................. 38
6.2      Estimation of Claims ................................................................................. 38
6.3      No Distributions Pending Allowance ......................................................... 39
6.4      Distributions After Allowance ................................................................... 39
6.5      Insurance. .................................................................................................. 39
6.6      Management of Existing Tax Claim Litigation ........................................... 39

**ARTICLE VII**    EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................. 39

7.1      Assumption and Rejection of Executory Contracts and Unexpired Leases ............... 39
7.2      Assumption of Insurance Policies .............................................................. 40
7.3      Cure of Defaults and Survival of Contingent Claims under Assumed
        Executory Contracts and Unexpired Leases ......................................... 40
7.4      Deadline for Filing Rejection Damage Claims ........................................... 41
7.5      Indemnification and Reimbursement Obligations ..................................... 41
7.6      Compensation and Benefit Programs ........................................................ 41
7.7      Retiree Benefits ......................................................................................... 42

NYA 584340.26

# TABLE OF CONTENTS
## (continued)

**Page**

ARTICLE VIII    CORPORATE GOVERNANCE AND MANAGEMENT OF
REORGANIZED DEBTORS................................................................... 42

8.1    General......................................................................................... 42
8.2    Reorganized Debtors' Directors and Officers ............................. 42
8.3    Amendment of Articles of Incorporation and By-Laws .............. 42
8.4    Corporate Action ......................................................................... 42

ARTICLE IX    EFFECT OF CONFIRMATION ............................................... 43

9.1    Title to Assets ............................................................................. 43
9.2    Discharge of Claims .................................................................... 43
9.3    Injunction on Claims.................................................................... 43
9.4    Term of Existing Injunctions or Stays ........................................ 44
9.5    Injunction Against Interference With Plan of Reorganization ..... 44
9.6    Exculpation ................................................................................. 44
9.7    Mutual Releases........................................................................... 44
9.8    Avoidance Actions....................................................................... 45
9.9    Reservation of Rights .................................................................. 45

ARTICLE X    CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN;
IMPLEMENTATION PROVISIONS ......................................... 46

10.1    Conditions Precedent to Effective Date of the Plan .................... 46
10.2    Waiver of Conditions Precedent ................................................. 49

ARTICLE XI    RETENTION OF JURISDICTION.............................................. 49

11.1    Retention of Jurisdiction............................................................. 49
11.2    Non-Core Jurisdictional Matters................................................. 51

ARTICLE XII    MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........ 52

12.1    Plan Modifications....................................................................... 52
12.2    Revocation, Withdrawal, or Non-Consummation. ...................... 52

ARTICLE XIII    MISCELLANEOUS PROVISIONS ........................................ 53

13.1    Effectuating Documents and Further Transactions ..................... 53
13.2    Cooperation.................................................................................. 53
13.3    Withholding and Reporting Requirements .................................. 53
13.4    Exemption from Transfer Taxes .................................................. 53
13.5    Expedited Tax Determination ...................................................... 54
13.6    Exemption from Registration ...................................................... 54
13.7    Payment of Statutory Fees .......................................................... 54
13.8    Post-Confirmation Date Fees and Expenses................................ 54
13.9    The Asbestos Claimants Committee and the Legal Representative. .......... 54
13.10    Plan Supplement ........................................................................ 55

NYA 584340.26

## TABLE OF CONTENTS
### (continued)

**Page**

| | | |
|---|---|---|
| 13.11 | Substantial Consummation | 55 |
| 13.12 | Sections 1125 and 1126 of the Bankruptcy Code | 55 |
| 13.13 | Severability | 55 |
| 13.14 | Governing Law | 56 |
| 13.15 | Deemed Acts | 56 |
| 13.16 | Binding Effect | 56 |
| 13.17 | Exhibits/Schedules | 56 |
| 13.18 | Notices | 56 |
| 13.19 | Time | 57 |
| 13.20 | Section Headings | 57 |
| 13.21 | Inconsistencies | 57 |

NYA 584340.26

**EIGHTH AMENDED JOINT PLAN OF
REORGANIZATION OF G-I HOLDINGS INC.AND ACI INC.
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The Plan Proponents together propose the following eighth amended joint plan of reorganization under section 1121(a) of title 11 of the United States Code:

# ARTICLE I

## DEFINITIONS

1.1    Defined Terms.  As used in the Plan, the following terms shall have the respective meanings specified below and be applicable to the singular and plural form of the terms defined:

1.1.1    ACI means ACI Inc., one of the Debtors in Possession.

1.1.2    ACI Class B Shares means the new class of common stock authorized by ACI and issued to G-I prior to the Effective Date.

1.1.3    ACI Affiliate Claim means a Claim asserted against ACI by any of its Affiliates.

1.1.4    ACI Equity Interest means an Equity Interest in ACI.

1.1.5    ACI Secured Claim means a Secured Claim against ACI.

1.1.6    ACI Priority Non-Tax Claim means any Claim against ACI or its estate, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.1.7    Administrative Expense Claim means any Claim constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(1) of the Bankruptcy Code during the period up to and including the Effective Date, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors-in-Possession, any indebtedness or obligations incurred or assumed by the Debtors-in-Possession in connection with the conduct of their businesses, and any Claims for compensation and reimbursement of expenses arising during the period from and after the respective Commencement Dates and prior to the Effective Date to the extent Allowed by Final Order of the Bankruptcy Court under sections 328, 330, 331, or 503(b) of the Bankruptcy Code or otherwise in accordance with the provisions of the Plan, whether fixed before or after the Effective Date, and any fees or charges assessed against the Debtors' estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

1.1.8    Affiliate means (i) any Entity that is an "affiliate" of any of the Debtors within the meaning set forth in section 101(2) of the Bankruptcy Code, and (ii) Samuel J. Heyman,

1

members of his family, and any other Entity that is owned or controlled, directly or indirectly, by Samuel J. Heyman or members of his family.

      1.1.9    <u>Allowed</u> means:

      (a)    With reference to any Claim (other than an Asbestos Claim) against the Debtors, (i) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any Claim allowed hereunder, (iii) any timely filed Claim that is not disputed or as to which no objection to allowance has been timely interposed in accordance with Section 6.1 hereof or such other period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (iv) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Reorganized Debtors pursuant to a Final Order of the Bankruptcy Court or under Section 6.1 of the Plan, or (v) any Claim that, if disputed, has been Allowed by Final Order; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder; and *provided further* that unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Commencement Date.

      (b)    With respect to any Bonded Claim, any Claim that qualifies as a Bonded Claim under the applicable definitions of the Plan, but only to the extent that the Bankruptcy Court or other court of competent jurisdiction determines by Final Order (or the applicable Debtor or Reorganized Debtor and the holder of such Claim agree) that such holder is entitled to some or all of the proceeds of the applicable supersedeas bond or other payment assurance, but only to the extent so ordered or agreed.

      (c)    With respect to the CCR Claim, such Claim to the extent that the CCR Settlement Agreement has been executed and delivered by each of the parties thereto and approved by the Bankruptcy Court or a Final Order has been issued in the CCR Allowance Proceedings.

      1.1.10    <u>Asbestos Claim</u> means any (i) Asbestos Personal Injury Claim, (ii) Indirect Trust Claim, and (iii) any deficiency portion of a Bonded Asbestos Personal Injury Claim remaining after crediting the proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Claim" shall not include or pertain to the CCR Claim or any Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Claim, Claim held by an Affiliate (even if such Claim would constitute an Indirect Trust Claim if it arose in favor of a non-Affiliate), Environmental Claim, or Workers' Compensation Claim.

1.1.11    Asbestos Claimants Committee means the statutory asbestos claimants committee, consisting of the Entities appointed as members in the Chapter 11 Cases by the United States Trustee for the District of New Jersey and their duly appointed successors, if any, as the same may be reconstituted from time to time.

1.1.12    Asbestos Permanent Channeling Injunction means an irrevocable order or orders of the District Court granting the Debtors and the other Protected Parties the maximum relief and protection against Claims and Demands provided by section 524(g) of the Bankruptcy Code permanently and forever staying, restraining, and enjoining any Entity from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Claim, all of which shall be channeled to the Asbestos Trust for resolution as set forth in the Asbestos Trust Distribution Procedures including, but not limited to:

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitral, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interests in property of any Protected Party;

(b)    enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

(d)    setting off, seeking reimbursement of, contribution from, indemnification of or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

(e)    proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Trust Agreement or the Asbestos Trust Distribution Procedures, except in conformity and compliance therewith.

1.1.13    Asbestos Personal Injury Claim means any Claim or Demand against G-I now existing or hereafter arising, whether or not such Claim, remedy, liability, or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, for death, bodily injury, sickness, disease, medical monitoring or other personal injuries (whether physical, emotional or otherwise) to the extent caused or allegedly caused, directly or indirectly, by the presence of or exposure (whether prior to or on and after the Commencement Date) to asbestos or asbestos-

3

containing products or things that was or were installed, engineered, designed, manufactured, fabricated, constructed, sold, supplied, produced, specified, selected, distributed, released, marketed, serviced, maintained, repaired, purchased, owned, occupied, used, removed, replaced or disposed of by G-I or an Entity for whose products or operations G-I allegedly has liability or for which G-I is otherwise allegedly liable, including, without limitation, (i) any Claim, remedy, liability, or demand for compensatory damages (such as loss of consortium, wrongful death, medical monitoring, survivorship, proximate, consequential, general, and special damages) and punitive damages; (ii) any Claim, remedy, liability or demand for reimbursement, indemnification, subrogation and contribution (including an Indirect Trust Claim); and (iii) any Claim under any settlement pertaining to an Asbestos Personal Injury Claim, which settlement was actually or purportedly entered into by or on behalf of G-I prior to the Commencement Date; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Personal Injury Claim" shall not include or pertain to the CCR Claim or any Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Claim, Claim held by an Affiliate (even if such Claim would constitute an Indirect Trust Claim if it arose in favor of a non-Affiliate), Environmental Claim, or Workers' Compensation Claim.

1.1.14    Asbestos Property Damage Claim means (i) any Claim or remedy or liability against G-I, whether or not such Claim, remedy, or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, for damages for property damage, including but not limited to, the cost of inspecting, maintaining, encapsulating, repairing, decontaminating, removing or disposing of asbestos or asbestos-containing products in buildings, other structures, or other property arising from the installation in, presence in or removal from buildings or other structures of asbestos or asbestos-containing products that was or were installed, manufactured, engineered, designed, fabricated, constructed, sold, supplied, produced, distributed, released, specified, selected, marketed, serviced, repaired, maintained, purchased, owned, used, removed, replaced or disposed of by G-I prior to the Commencement Date, or for which G-I is otherwise allegedly liable, including, without express or implied limitation, any such Claims, remedies and liabilities for compensatory damages (such as proximate, consequential, general, and special damages) and punitive damages, and any Claim, remedy or liability for reimbursement, indemnification, subrogation and contribution, including, without limitation, any Asbestos Property Damage Contribution Claim; and (ii) any Claim under any settlement pertaining to an Asbestos Property Damage Claim, which settlement was actually or purportedly entered into by or on behalf of G-I prior to the Commencement Date; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Property Damage Claim" shall not include or pertain to an Asbestos Personal Injury Claim, Bonded Claim, Indirect Trust Claim, CCR Claim, Environmental Claim, or Workers' Compensation Claim.

1.1.15    Asbestos Property Damage Contribution Claim means any Claim or remedy or liability against G-I, whether or not such Claim, remedy or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases for such Claim, remedy or liability are known or unknown, that is (i) held by (a) any Entity (other than a director or officer entitled to indemnification pursuant to Section 7.4 of the Plan) who has been, is, or may be a

4

defendant in an action seeking damages for property damage, including but not limited to, the cost of inspecting, maintaining, encapsulating, repairing, decontaminating, removing or disposing of asbestos or asbestos-containing products in buildings, other structures, or other property, arising from the installation in, presence in or removal from buildings or other structures of asbestos or asbestos-containing products that was or were installed, manufactured, engineered, designed, fabricated, constructed, sold, supplied, produced, distributed, released, specified, selected, marketed, serviced, repaired, maintained, purchased, owned, used, removed, replaced or disposed of by G-I prior to the Commencement Date, or for which G-I is otherwise allegedly liable, including, without express or implied limitation, any such Claims, remedies and liabilities for compensatory damages (such as proximate, consequential, general, and special damages) and punitive damages, or (b) any assignee or transferee of such Entity; and (ii) on account of alleged liability of G-I for reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay to the plaintiff in such action; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Property Damage Contribution Claim" shall not include or pertain to an Asbestos Personal Injury Claim, Bonded Claim, Indirect Trust Claim, CCR Claim, Environmental Claim, or Workers' Compensation Claim.

1.1.16    Asbestos Trust means the trust established by the Debtors under Bankruptcy Code section 524(g) and in accordance with the Asbestos Trust Agreement.

1.1.17    Asbestos Trust Agreement means the "G-I Holdings Inc. Asbestos Personal Injury Settlement Trust Agreement", to be executed by the Debtors and the Asbestos Trustees, substantially in the form of Exhibit 1.1.17 to the Plan.

1.1.18    Asbestos Trust Distribution Procedures means the "G-I Holdings Inc. Asbestos Personal Injury Trust Distribution Procedures" to be implemented by the Asbestos Trustees pursuant to the terms and conditions of the Plan and the Asbestos Trust Agreement to process, liquidate, and pay Asbestos Claims, substantially in the form of Exhibit 1.1.18 to the Plan.

1.1.19    Asbestos Trust Initial Payment Percentage means the initial payment percentage set forth in the Asbestos Trust Distribution Procedures for the Asbestos Claims, to be established prior to the Effective Date.

1.1.20    Asbestos Trustees means, collectively, the persons confirmed by the Bankruptcy Court to serve as trustees of the Asbestos Trust, pursuant to the terms of the Asbestos Trust Agreement, or as subsequently may be appointed pursuant to the terms of such Agreement.

1.1.21    Ballot means the form distributed to each holder of an impaired Claim to accept or reject the Plan.

1.1.22    Bankruptcy Code means the Bankruptcy Reform Act of 1978, as amended, to the extent codified in title 11 of the United States Code, and applicable to the Chapter 11 Cases.

5

1.1.23    Bankruptcy Court means the United States Bankruptcy Court for the District of New Jersey or such other court having subject matter jurisdiction over the Chapter 11 Cases.

1.1.24    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended from time to time and as applicable to the Chapter 11 Cases.

1.1.25    BMCA means Building Materials Corporation of America, Inc., a subsidiary of G-I.

1.1.26    Board of Directors means each Board of Directors of the Debtors or Reorganized Debtors, as they may exist from time to time.

1.1.27    Bonded Asbestos Personal Injury Claim means an Asbestos Personal Injury Claim evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was posted by a Debtor or by an Affiliate as security for such Claim.

1.1.28    Bonded Claim means any Bonded Asbestos Personal Injury Claim or Bonded Non-Asbestos Claim, but shall not include the deficiency portion, if any, of any such Claims.

1.1.29    Bonded Non-Asbestos Claim means any Claim, other than an Asbestos Claim and a Bonded Asbestos Personal Injury Claim, evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was posted by a Debtor or by an Affiliate as security for such Claim.

1.1.30    Business Day means a day other than a Saturday, a Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.1.31    Capital Stock Lien means the first priority Lien on the G-I Class B Shares, which Lien shall attach to the G-I Class B Shares as of the Effective Date to secure the Trust Note, as set forth in the Holdings Pledge Agreement.

1.1.32    Cash means the lawful currency of the United States of America.

1.1.33    CCR means the Center for Claims Resolution, Inc., a Delaware non-profit corporation, or its successor-in-interest.

1.1.34    CCR Allowance Proceeding means a contested matter pursuant to 11 U.S.C. § 502 to determine the amount of the CCR Claim, excluding any contested matter to determine the amount or validity of the Former CCR Member Claims.

6

1.1.35    CCR Claim means any Claim arising from facts or legal relationships that existed before or during G-I's bankruptcy that CCR or its members, in their capacity as such, have asserted or could assert against G-I or its bankruptcy estate, including, without limitation, any Claim for compensatory damages, contribution, indemnity, payment, reimbursement, subrogation, or any other remedy, whether or not raised in the alternative dispute resolution proceedings that were pending between CCR and G-I when G-I's bankruptcy case commenced.  The CCR Claim shall include, but not necessarily be limited to, all Claims based on or relating to (i) alleged breach by G-I of the CCR Producer Agreement or any amendments thereof; (ii) alleged payment or advances of funds, or financing of expenses, by or through CCR on G-I's account or for G-I's benefit; and (iii) any liability or expense allegedly incurred or paid by or through CCR as a result of G-I's failure or refusal to pay any obligation it allegedly incurred under any agreement made by CCR, during G-I's membership in CCR, for the settlement of any asbestos-related personal injury or wrongful death Claim; *provided*, *however*, that the CCR Claim shall not include the Former CCR Member Claims to the extent such Claims are Allowed.

1.1.36    CCR Escrow means an interest-bearing escrow account to be established by the Reorganized Debtors under circumstances described in Section 4.4(c)(i)(C) of the Plan.

1.1.37    CCR Escrow Amount means the dollar amount to be deposited by the Reorganized Debtors into the CCR Escrow (if the CCR Escrow becomes applicable), which amount shall be computed by applying the Asbestos Trust Initial Payment Percentage to the aggregate amount of the CCR Claim as alleged in a proof of claim timely filed with the Bankruptcy Court.

1.1.38    CCR Escrow Earnings means any interest, gains and other income on the CCR Escrow Amount, after deduction of any losses on such account and any fees and expenses charged by the escrow agent.

1.1.39    CCR Payment Amount means the Cash payment equal to either (a) if the CCR Claim is an Allowed Claim pursuant to the CCR Settlement Agreement, the *greater* of (x) $9.9 million and (y) the amount resulting from multiplying $110 million by the Asbestos Trust Initial Payment Percentage, or (b) if the CCR Claim is an Allowed Claim pursuant to a Final Order issued in connection with a CCR Allowance Proceeding, the amount resulting from multiplying the amount of the Allowed CCR Claim by the Asbestos Trust Initial Payment Percentage.

1.1.40    CCR Producer Agreement means The Producer Agreement Concerning Center for Claims Resolution, dated September 28, 1988, as modified, amended and supplemented.

1.1.41    CCR Settlement Agreement means an agreement to be entered into between and among the Debtors, the Asbestos Claimants Committee, the Legal Representative and CCR, and submitted for approval to the Bankruptcy Court, which will implement the letter of understanding with CCR dated June 30, 2008, and provide for a compromise and settlement governing the allowance and treatment of the CCR Claim under the Plan.  The aforementioned letter of understanding is Exhibit 1.1.41 to the Plan.

1.1.42     Chapter 11 Cases means the cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors styled *In re G-I Holdings Inc., et al.*, Chapter 11 Case Nos. 01-30135 (RG) and 01-38790 (RG) (Jointly Administered) currently pending before the Bankruptcy Court.

1.1.43     Claim means (i) a "claim," as defined in section 101(5) of the Bankruptcy Code, against G-I or ACI, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim; (ii) any Environmental Claim, whether or not it constitutes a "claim" under section 101(5) of the Bankruptcy Code; and (iii) any rights to any equitable remedy.

1.1.44     Class means a category of Claims or Equity Interests set forth in Article III of the Plan.

1.1.45     Collateral means any property or interest in property of the estates of any of the Debtors subject to an unavoidable Lien to secure the payment or performance of a Claim.

1.1.46     Collateral Agency Agreement means the "Collateral Agency Agreement" to be entered into by and among Reorganized G-I, the Asbestos Trust and the Collateral Agent, substantially in the form annexed as Exhibit 1.1.46 to the Plan.

1.1.47     Collateral Agent means the Entity appointed pursuant to the Collateral Agency Agreement as agent for the Asbestos Trust and any registered holder of the Trust Note, for the purposes specified in the Collateral Agency Agreement.

1.1.48     Commencement Date means January 5, 2001, with respect to G-I, and August 3, 2001, with respect to ACI.

1.1.49     Confirmation Date means the later of (i) the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court; and (ii) the date on which the Confirmation Order is entered on the docket of the District Court.

1.1.50     Confirmation Hearing means the hearing to consider confirmation of the Plan in accordance with the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.1.51     Confirmation Order means the order or orders of the Bankruptcy Court or the District Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, which will contain, *inter alia*, the Asbestos Permanent Channeling Injunction; *provided*, *however*, that, if the District Court does not enter such an order confirming the Plan, then the term "Confirmation Order" shall include an order of the District Court affirming the Confirmation Order entered by the Bankruptcy Court.

8

1.1.52    <u>Consent Decree and Settlement Agreement</u> means the agreement entered into between G-I Holdings and the United States of America to compromise and settle the US Environmental Claim and the Vermont Environmental Claim.

1.1.53    <u>Covered Matters</u> means:

(a)    matters and/or proceedings pending or formerly before the Bankruptcy Court or District Court relating to: (i) the estimation of the aggregate Asbestos Personal Injury Claims and Demands, including, but not limited to, those matters subject to the Bankruptcy Court's Sixth Amended Estimation Scheduling Order, entered on July 7, 2008; (ii) the adversary proceeding styled *Official Committee of Asbestos Claimants v. Building Materials Corporation of America, et al.,* Adv. Proc. No. 04-2192 (RG); (iii) the Asbestos Claimants Committee's motion for authority to prosecute alleged avoidance actions of the G-I estate against BMCA, certain of its Affiliates, and certain current and former creditors of BMCA; (iv) the adversary proceeding commenced by the Asbestos Claimants Committee to compel the Chapter 11 filing and substantive consolidation of certain Affiliate(s) of G-I, styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. v. G-I Holdings Inc. et al.,* Case No. 01-03065 (RG); and (v) G-I's prosecution of an action for injunctive relief to stay asbestos claims against BMCA, styled *G-I Holdings, Inc. v. Those Parties Listed on Exhibit A to Complaint and John Does 1-250,* Adv. Proc. 01-3013 (RG);

(b)    matters and/or proceedings formerly pending before the District Court relating to G-I's prosecution of an action for a declaratory judgment that BMCA has no successor liability or alter ego liability for Asbestos Personal Injury Claims or Asbestos Property Damage Claims, styled *G-I Holdings Inc. et al. v. Bennett, et al.,* Civil No. 02-3626 (SRC), and the Asbestos Claimants Committee's prosecution of counter-claims therein;

(c)    matters and/or proceedings pending before the United States Court of Appeals for the Third Circuit relating to G-I's appeal from the order, dated December 7, 2005, issued by the District Court (Bassler, J.) dismissing, for lack of subject matter jurisdiction, G-I's appeal from the portion of the order of the Bankruptcy Court denying G-I's application to establish a method to estimate individual asbestos personal injury claims for distribution purposes, styled *G-I Holdings Inc. et al. v. Legal Representative of Present and Future Holders of Asbestos-Related Demands,* Case No. 06-1116;

(d)    matters and/or proceedings pending before the United States District Court for the Southern District of New York relating to the prosecution by the Asbestos Claimants Committee and the Legal Representative of alleged avoidance actions of the G-I estate against Samuel J. Heyman and related Entities, styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. et al. v. Heyman et al.,* Case No. 01-Civ-8539 (RWS), and predecessor actions styled *Nettles v. Heyman,* Civ. No. 00-0035 (RWS),  and *Stewart v. Heyman,* Civ. No. 00-9769 (RWS); and

9

(e)    matters and/or proceedings pending before the United States Court of Appeals for the Second Circuit relating to G-I's action for damages against certain law firms and other defendants, styled *G-I Holdings Inc. v. Baron & Budd, et al.*, Case No. 06-0174.

1.1.54    <u>Creditor</u> means any Entity holding a Claim.

1.1.55    <u>Debtors</u> means G-I and ACI.

1.1.56    <u>Debtors-in-Possession</u> means the Debtors in their capacity as debtors in possession pursuant to sections 1101(1), 1107(a), and 1108 of the Bankruptcy Code.

1.1.57    <u>Demand</u> means a demand for payment, present or future, referred to in Bankruptcy Code section 524(g)(5) that (i) was not a Claim during the Chapter 11 Cases; (ii) arises out of the same or similar conduct or events that gave rise to the Claims addressed by the Asbestos Permanent Channeling Injunction; and (iii) pursuant to the Plan is to be determined, resolved, and paid by the Asbestos Trust.

1.1.58    <u>Disallowed Claim</u> means a Claim (other than an Asbestos Claim) that is disallowed in its entirety by an order of the Bankruptcy Court or such other court of competent jurisdiction, as the case may be.

1.1.59    <u>Disbursing Agent</u> means Reorganized G-I or its designee in its capacity as disbursing agent pursuant to Section 5.5 of the Plan.

1.1.60    <u>Disclosure Statement</u> means the disclosure statement for the Plan approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

1.1.61    <u>Disputed Claim</u> means a Claim that is none of an Allowed Claim, a Disallowed Claim or an Asbestos Claim, and is any Claim, proof of which was filed, or an Administrative Expense Claim or other Claim, which is the subject of a dispute under the Plan or as to which Claim the Debtors have interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed.

1.1.62    <u>Distribution</u> means any dividend or payment of Cash or other consideration made by the Disbursing Agent to the holder of an Allowed Claim on account of such Claim pursuant to the terms and provisions of this Plan; *provided*, *however*, that the term "Distribution" shall not include or pertain to any payment, transfer, or delivery of Cash, property, or other consideration to the Asbestos Trustees, the Asbestos Trust, or any holder of an Asbestos Claim or Demand.

1.1.63    <u>District Court</u> means the United States District Court for the District of New Jersey.

10

1.1.64    <u>Effective Date</u> means a Business Day selected by the Debtors that is on or after the date by which the conditions precedent to the effectiveness of the Plan specified in Section 10.1(b) of the Plan have been satisfied; *provided*, *however*, that the Effective Date shall occur no later than November 20, 2009.

1.1.65    <u>Encumbrance</u> means, with respect to any asset, mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such asset (including, without express or implied limitation, any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

1.1.66    <u>Entity</u> means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the United States Trustee, or any other Entity.

1.1.67    <u>Environmental Claim</u> means any Claim relating to alleged hazardous materials, hazardous substances, contamination, pollution, waste, fines or mine or mill tailings released, threatened to be released or present in the environment or ecosystem, including without limitation, alleged contamination under federal or state environmental laws, codes, orders or regulations, common law, as well as any entitlements to equitable remedies, including, without limitation, investigation, restoration, natural resource damages, reclamation, remediation and cleanup, including without limitation, any Environmental Claim for Remedial Relief and any Other Environmental Claim; *provided*, *however*, for the avoidance of doubt, the term "Environmental Claim" shall not include or pertain to any Asbestos Claim, Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Asbestos Personal Injury Claim, CCR Claim, Workers' Compensation Claim, or Claim of an Affiliate.

1.1.68    <u>Environmental Claim for Remedial Relief</u> means the following Environmental Claims by a governmental unit with respect to properties currently owned or operated by the Debtors: (i) Claims for recovery of response costs incurred post-petition with respect to response actions taken post-petition to address hazards, threats, or releases; (ii) Claims for recovery of civil penalties for violations of law resulting from post-petition actions of the Debtors; or (iii) actions seeking to compel the performance of an action to address a hazard, threat, or release under applicable environmental law.  "Environmental Claim for Remedial Relief" does not include or pertain to any Environmental Claim  for recovery of pre-petition expenditures or pre-petition penalties.

1.1.69    <u>Equity Interest</u> means any equity interest or proxy related thereto, direct or indirect, in any of the Debtors represented by duly authorized, validly issued and outstanding shares of preferred stock or common stock, stock appreciation rights or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in any of the Debtors, or right to convert into such an equity interest or acquire any equity interest of the Debtors, whether or not transferable, or an option, warrant or right contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Commencement Date; *provided*, *however*, for the avoidance

11

of doubt, the term "Equity Interest" shall not include or pertain to any ACI Class B Shares or G-I Class B Shares.

1.1.70    Final Order means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to (a) the Debtors, the Asbestos Claimants Committee, and the Legal Representative if before the Effective Date, or (b) the Reorganized Debtors and the Asbestos Trust if on or after the Effective Date, and if an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 60 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 9024) or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order; and *provided further, however,* that notwithstanding the filing of a motion under Rule 59 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 9023) with respect to such order, the Debtors, the Asbestos Claimants Committee, and the Legal Representative (or, on and after the Effective Date, the Reorganized Debtors and the Asbestos Trust) shall be authorized jointly to deem any such order a Final Order unless such order affects the Asbestos Trust in which case the Debtors or the Reorganized Debtors, together with the Asbestos Trustees, may deem such order a Final Order.

1.1.71    First Payment To Asbestos Trust means the amount Reorganized G-I shall pay in Cash to the Asbestos Trust on the Effective Date in furtherance of the provisions of the Plan, as quantified in accordance with Section 4.4(c) of the Plan.

1.1.72    Former CCR Members Claims means the Claims asserted against G-I by (a) Pfizer Inc.; Quigley Company, Inc.; United States Gypsum Company; and Asbestos Claims Management Corporation ("ACMC"), each a former member of the CCR, and (b) NGC Bodily Injury Trust as successor to the NGC Settlement Trust, an affiliate of ACMC, seeking recovery of amounts arising from or related to the CCR Producer Agreement.

1.1.73    G-I means G-I Holdings Inc., one of the Debtors in Possession.

1.1.74    G-I Affiliate Claim means a Claim asserted against G-I by any of its Affiliates.

1.1.75    G-I Class B Shares means the new class of common stock authorized by G-I and issued to Holdings prior to the Effective Date, pursuant to Section 4.7 of the Plan, and any certificates evidencing the same.

1.1.76    G-I Equity Interest means an Equity Interest in G-I.

NYA 584340.26

1.1.77    <u>G-I Equity Interest Redemption Claim</u> means an Unsecured Claim against G-I for the tender or redemption of an Equity Interest related to the 1989 LBO Transaction.

1.1.78    <u>G-I Non-Priority Tax Penalty Claim</u> means any Unsecured Claim of the Internal Revenue Service under the Tax Code against the Debtors or their estates for penalties (including interest thereon) that is not a Priority Tax Claim.

1.1.79    <u>G-I Priority Non-Tax Claim</u> means any Claim against G-I or its estate, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.1.80    <u>G-I Secured Claim</u> means any Secured Claim against G-I.

1.1.81    <u>G-I Unsecured Claim</u> means an Unsecured Claim against G-I, other than an Administrative Expense Claim, Priority Tax Claim, G-I Priority Non-Tax Claim, G-I Secured Claim, Asbestos Claim, Bonded Claim, Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, CCR Claim, Environmental Claim, G-I Affiliate Claim, or G-I Equity Interest Redemption Claim.

1.1.82    <u>Holdings</u> means G Holdings Inc., the parent company of G-I.

1.1.83    <u>Holdings Pledge Agreement</u> means the "Pledge Agreement of G Holdings Inc." to be entered into by and between Holdings and the Collateral Agent, a copy of which is annexed as Exhibit 1.1.83 to the Plan.

1.1.84    <u>Indirect Trust Claim</u> means any Claim or Demand against G-I, now existing or hereafter arising, that is (i) held by any Entity (other than a director or officer entitled to indemnification pursuant to Section 7.5 of the Plan) who has been, is, or may be a defendant in an action seeking damages for death, bodily injury, sickness, disease, or other personal injuries (whether physical, emotional, or otherwise) to the extent based on, arising from, or attributable to an Asbestos Personal Injury Claim; and (ii) on account of alleged liability of G-I for reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay on account of an Asbestos Personal Injury Claim; *provided, however,* for the avoidance of doubt, the term "Indirect Trust Claim" shall not include or pertain to the CCR Claim, any Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Claim, Environmental Claim, Workers' Compensation Claim, ACI Affiliate Claim, or G-I Affiliate Claim.

1.1.85    <u>Insured Claim</u> means a Claim arising from an incident or occurrence covered by one or more of the Debtors' insurance policies.

1.1.86    <u>ISP</u> means International Specialty Products, Inc., an Affiliate of the Debtors.

13

1.1.87    <u>Legal Representative</u> means C. Judson Hamlin, the Legal Representative of Present and Future Holders of Asbestos Related Demands appointed by the Bankruptcy Court pursuant to its order dated October 10, 2001.

1.1.88    <u>Letter of Credit</u> means one or more irrevocable standby letters of credit issued by an "Acceptable Letter of Credit Issuer", as defined in the Collateral Agency Agreement, and that otherwise satisfy in form and substance all requirements set forth in the Collateral Agency Agreement.

1.1.89    "<u>LIBOR</u>" means, with respect to an Interest Period, the rate (expressed as a percentage per annum to five decimal places) for deposits in United States dollars for three month periods beginning on the first day of such Interest Period that appears on Telerate Page 3750 as of 11:00 a.m., London time, on the Determination Date.  If Telerate Page 3750 does not include such a rate or is unavailable on a Determination Date, the Company will request the principal London office of any four (4) of the Reference Banks (selected by the Company), to provide such bank's offered rate as of approximately 11:00 a.m., London time, on such Determination Date, to prime banks in the London interbank market, for deposits in a representative amount in United States dollars for a three month period beginning on the first day of such Interest Period.  If at least two such offered quotations are so provided, LIBOR for the Interest Period will be the arithmetic mean of such quotations.  If fewer than two such quotations are so provided, the Company will request each of the principal New York City offices of such Reference Banks, to provide such bank's rate as of approximately 11:00 a.m., New York City time, on such Determination Date, for loans in a representative amount in United States dollars to leading European banks for a three month period beginning on the first day of such Interest Period.  If at least two such rates are so provided, LIBOR for the Interest Period will be the arithmetic mean of such rates.  If fewer than two such rates are so provided, then LIBOR for the Interest Period will be 4.50000% per annum.

1.1.90    <u>Lien</u> means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.1.91    <u>Maximum Amount</u> has the meaning ascribed to that term in the Collateral Agency Agreement.

1.1.92    <u>1989 LBO Transaction</u> means the transaction or series of transactions that took place in or about March 1989, in which the former GAF Corporation and certain of its wholly-owned direct or indirect subsidiaries acquired a predecessor also named GAF Corporation in a management-led buyout and in which shareholders of the acquired predecessor company were offered Cash for the tender of their shares in the acquired company.

1.1.93    <u>Noteholder Defendants</u> means any Entity that holds or held public debt issued before the Confirmation Date by BMCA, and all Entities that were named as defendants in the action filed by the Asbestos Claimants Committee styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. v. Building Materials Corp. of America, et al. (In re G-I Holdings, Inc. and ACI Inc.)*, Adv. No. 04-2192 (RG) (Bankr. D.N.J.), or in the proposed complaint submitted by the Asbestos Claimants Committee in the action styled *Official Committee of Asbestos Claimants of G-I*

14

*Holdings Inc. v. Those Parties listed on Exhibit A, et. al.*, Adv. No. 01-3013 (RG) (Bankr. D.N.J.). "Noteholder Defendants" specifically includes, but is not limited to, all current or former parents, subsidiaries, affiliates, advisors, trustees, agents and/or investment managers of any such holder or former holder of public debt issued before the Confirmation Date by BMCA, but only in their capacity as such.

1.1.94    Other Environmental Claim means any Environmental Claim that is not an Environmental Claim for Remedial Relief, including without limitation Claims for monetary relief for reimbursement or contribution in respect of prepetition remediation expenditures and any prepetition monetary Claims relating to environmental laws or regulations, whether for property owned or operated by G-I prepetition, postpetition, or both.

1.1.95    Plan means this Eighth Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc. Pursuant to Chapter 11 of the Bankruptcy Code, including, without limitation, the Plan Documents, as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

1.1.96    Plan Documents mean all documents, attachments, schedules, and exhibits related to the Plan, including, without limitation, the documents contained in the Plan Supplement.

1.1.97    Plan Proponents means G-I, ACI, the Asbestos Claimants Committee, and the Legal Representative.

1.1.98    Plan Sponsor means Samuel J. Heyman or any of his Affiliates or designees.

1.1.99    Plan Supplement means the Supplement to the Plan containing the exhibits and schedules to the Plan that are not served with the approved Disclosure Statement upon holders of Claims and Equity Interests in connection with the solicitation of votes to accept or reject the Plan.

1.1.100    Priority Tax Claim means any Claim of a governmental unit against the Debtors entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.1.101    Protected Party **means any and all of the following parties:**

(a)    **the Debtors;**

(b)    **the Reorganized Debtors;**

(c)    **any Affiliate listed on Exhibit 1.1.101(c) hereto;**

(d)    **any Entity that, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any assets of the Debtors, the Reorganized Debtors, or the Asbestos Trust, but solely to the extent that an Asbestos Claim is asserted against such Entity by reason of its becoming such a transferee or successor;**

15

(e)        any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to the Reorganized Debtors, any Protected Party, or the Asbestos Trust or to a successor to, or transferee of, any assets of the Debtors, the Reorganized Debtors, or the Asbestos Trust, but solely to the extent that an Asbestos Claim is asserted against such Entity by reason of its making such loan or to the extent that any pledge of assets made in connection with such a loan is sought to be upset or impaired; or

(f)        any Entity alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on the Debtors, the Reorganized Debtors, or the Asbestos Trust on account of Asbestos Claims by reason of one or more of the following:

(i)        such Entity's ownership of a financial interest in the Debtors, the Reorganized Debtors, a past or present Affiliate of the Debtors or the Reorganized Debtors, or a predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such;

(ii)        such Entity's involvement in the management of the Debtors, an Affiliate, the Reorganized Debtors, or any predecessor in interest of the Debtors, or the Reorganized Debtors, but solely in such Entity's capacity as such;

(iii)        such Entity's service as an officer, director, or employee of the Debtors, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, any predecessor in interest of the Debtors or the Reorganized Debtors, or any Entity that owns or at any time has owned a financial interest in the Debtors or the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such;

(iv)        such Entity's provision of insurance to the Debtors, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, any predecessor in interest of the Debtors or the Reorganized Debtors, any Entity that owns or at any time has owned a financial interest in the Debtors or the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but only to the extent that the Debtors, the Reorganized Debtors, or the Asbestos Trust enters into a settlement with such Entity that is approved by the Bankruptcy Court and expressly provides that such Entity shall be entitled to the protection of the Asbestos Permanent Channeling Injunction as a Protected Party; or

(v)        such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction (including involvement in providing financing or advice to an Entity involved in such a transaction or acquiring or selling a financial interest in an Entity as part of such a

16

**transaction), affecting the financial condition of the Debtors, an Affiliate, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such.**

1.1.102    Record Date means the record date for distributions under the Plan, as set forth in the Confirmation Order.

1.1.103    Reorganized Debtors means the Debtors from and after the Effective Date.

1.1.104    Reorganized Debtors' Certificate of Incorporation means the certificate of incorporation or articles of incorporation of each of the Reorganized Debtors that are substantially in the form of Schedule 1.1.104 of the Plan Supplement.

1.1.105    Reorganized Debtors' By-Laws mean the respective by-laws of the Reorganized Debtors that are substantially in the form of Schedule 1.1.105 of the Plan Supplement.

1.1.106    Reorganized G-I means G-I from and after the Effective Date.

1.1.107    Schedules mean, unless otherwise specified, the respective schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

1.1.108    Secured Claim means any Claim (i) to the extent reflected in the Schedules or in a proof of claim as a Secured Claim, which is validly and unavoidably secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (ii) that is subject to a valid setoff right.

1.1.109    Supersedeas Bond Action means any rights, defenses, counterclaims, or affirmative causes of action of the Debtors or the Reorganized Debtors with respect to a Bonded Claim, or with respect to any supersedeas bond or other form of security or payment assurance issued in connection with a Bonded Claim, or against the issuer or insurer of any payment assurance issued in connection with a Bonded Claim.

1.1.110    Tax Code means the Internal Revenue Code of 1986, as amended from time to time.

1.1.111    Trust Causes of Action means any and all actions, claims, rights, defenses, counterclaims, suits, and causes of action of the Debtors, whether known or unknown, at law, in equity or otherwise, whenever or wherever arising under the laws of any jurisdiction attributable to: (a) all defenses to any Asbestos Claim; (b) with respect to any Asbestos Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect Claim of any kind

NYA 584340.26

whatsoever, whenever, and wherever arising or asserted; and (c) subject to the provisions of this Plan, any other Claims or rights with respect to Asbestos Claims that the Debtors would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Asbestos Claim had asserted it by initiating or continuing civil litigation against any such Debtor. Notwithstanding the foregoing, Trust Causes of Action shall not include (i) any of the Debtors' rights arising under or attributable to the Supersedeas Bond Actions; (ii) the property, rights, or assets, if any, of the Debtors or their Affiliates that were previously used to secure or obtain a supersedeas bond with respect to any Bonded Claim and which are recoverable or recovered by any of the Debtors or any of their Affiliates after full satisfaction of such Claim; or (iii) any Claims or rights that were or could have been asserted in the Covered Matters.

1.1.112    Trust Note means the note in the original principal amount of Five Hundred Sixty Million Dollars ($560,000,000), to be authorized and issued pursuant to the Plan by Reorganized G-I on the Effective Date, a copy of which is Exhibit 1.1.112 to the Plan, which Trust Note shall be secured by the Holdings Pledge Agreement until the Holdings Pledge Agreement is replaced by the Letter of Credit, as provided in Sections 4.4(c)(ii) and (iii) of the Plan.

1.1.113    Unsecured Claim means any Claim against one or more of the Debtors (regardless of whether such Claim is covered by insurance), to the extent that such Claim is neither secured nor entitled to priority under applicable law. Unsecured Claims shall expressly include, without limitation, (a) any Claim arising from the rejection of an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) any portion of a Claim that is not a Secured Claim (i.e., a deficiency claim); (c) any deficiency portion of a Bonded Non-Asbestos Claim remaining after crediting proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled; (d) any Claims arising from the provision of goods or services to the Debtors prior to the Commencement Date, including the Claims of commercial trade creditors; (e) any G-I Non-Priority Tax Penalty Claim and (f) to the extent Allowed, the Former CCR Member Claims. Unless otherwise specifically provided in an applicable provision of this Plan, Unsecured Claims shall not include (i) Administrative Expense Claims; (ii) Priority Tax Claims; (iii) G-I Priority Non-Tax Claims; (iv) ACI Priority Non-Tax Claims; (v) G-I Secured Claims; (vi) ACI Secured Claims; (vii) Asbestos Claims; (viii) Asbestos Property Damage Claims; (ix) Asbestos Property Damage Contribution Claims; (x) Environmental Claims; (xi) Bonded Claims; (xii) the CCR Claim; (xiii) G-I Affiliate Claims; (xiv) ACI Affiliate Claims; (xv) Workers' Compensation Claims, or (xvi) G-I Equity Interest Redemption Claims.

1.1.114    US Adversary Complaint means the adversary proceeding filed by the United States of America against G-I for declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a); Section 303 of the CAA , 42 U.S.C. § 7603; and Section 7003 of RCRA, 42 U.S.C. § 6973, in connection with the VAG Site.

1.1.115    US Environmental Claim means the proof of claim filed by the United States of America against the G-I and certain of its Affiliates on behalf of the Environmental Protection Agency, the National Oceanic and Atmospheric Administration, and the Department of the Interior alleging claims arising under Section 107 of the Comprehensive Environmental

18

Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607; the Federal Water Pollution Control Act ("FWPCA"), as amended, 35 U.S.C. § 1251 *et seq.*; Section 303 of the Clean Air Act ("CAA"), 42 U.S.C. § 7603; and Section 7003 of the Resource Recovery Act ("RCRA"), 42 U.S.C. § 6973, as more fully described in the Consent Decree and Settlement Agreement.

1.1.116    VAG Site means the Vermont Asbestos Group Mine Site in Lowell and Eden, Vermont.

1.1.117    Vermont Environmental Claim means the proof of claim filed by the State of Vermont relating to the VAG Site that is the subject of the US Adversary Complaint, as more fully described in the Consent Decree and Settlement Agreement.

1.1.118    Workers' Compensation Claim means a Claim brought by any person for alleged entitlement to benefits from G-I under any workers' compensation statute,  whether asserted directly by the person claiming such benefits or indirectly or derivatively by an Entity claiming subrogation, reimbursement, contribution, or indemnity for the payment of such benefits.

1.2    Other Definitions.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code.

1.3    Rules of Construction.  Unless otherwise expressly provided,

(a)    all section, schedule or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time;

(b)    all references to dollars are to the lawful currency of the United States of America;

(c)    the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole; and

(d)    the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

# ARTICLE II

## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND PRIORITY TAX CLAIMS

2.1    Administrative Expense Claims.  Except to the extent that any Entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment with the applicable Debtor, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and

19

the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor in Possession shall be paid in full and performed by the applicable Reorganized Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

       2.2    <u>Professional Compensation and Reimbursement Claims</u>.  All holders of any Claim for an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by a date no later than the date that is ninety (90) days after the Effective Date or by such other date as may be fixed by the Bankruptcy Court, and (ii) if granted such an award by the Bankruptcy Court, be paid in full in such amounts as are Allowed by the Bankruptcy Court (A) on the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, or (B) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Reorganized Debtors.

       2.3    <u>No Double Payment of Administrative Claims</u>.  To the extent that an Administrative Expense Claim is Allowed against the Estate of each Debtor, there shall be only a single recovery on account of such Allowed Claim; *provided, however*, that an Entity holding an Allowed Claim against each of the Debtors as co-obligors on such Claim may recover distributions from any such Debtor until such Entity has received payment in full on such Allowed Claim.

       2.4    <u>Priority Tax Claims</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the applicable Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the applicable Reorganized Debtor and in full and complete satisfaction of any and all liability attributable to such Priority Tax Claim on the latest of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law, or as soon thereafter as is reasonably practicable, (a) Cash in an amount equal to such Allowed Priority Tax Claim, (b) a transferable note in the principal amount equal to such Allowed Priority Tax Claim, together with interest at a rate per annum equal to LIBOR in effect on the Confirmation Date plus 1%, payable in Cash on the sixth (6th) anniversary from the date of the final determination of the assessment of such Allowed Priority Tax Claim (for purposes of this section 2.4, such date means the date upon which the Allowed Priority Tax Claim is determined by a Final Order), or (c) any combination of Cash and a note, on the terms provided in subsections (a) and (b) hereof, in an aggregate Cash and principal amount equal to such Allowed Priority Tax Claim; *provided*, that the Debtors reserve the right to prepay any such note in part or in whole at any time without premium or penalty; and *provided, further*, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising after the Commencement Date with

20

respect to or in connection with such Allowed Priority Tax Claim; and *provided further*, that any assessment of a tax liability made against any entity the payment of which would give rise to a claim for indemnification by such entity against the Reorganized Debtors shall (i) not exceed the amount of any Allowed Priority Tax Claim, (ii) for purposes of this Section 2.4, be deemed to be an assessment of an Allowed Priority Tax Claim, and (iii) be subject to the timing and payment terms set forth herein, such that any such assessment may be satisfied in full upon such entity's delivering a note issued by G-I having the same terms as described in (b) hereof.

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 1A:  G-I Priority Non-Tax Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 1B:  ACI Priority Non-Tax Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 2A:  G-I Secured Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 2B:  ACI Secured Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 3A:  G-I Unsecured Claims | Impaired | Yes |
| Class 3B:  ACI Unsecured Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 3C:  G-I Non-Priority Tax Penalty Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 4:  Environmental Claims for Remedial Relief | Unimpaired | No (deemed to accept the Plan) |
| Class 5: Other Environmental Claims | Impaired | No (deemed to reject the Plan) |
| Class 5A: US Environmental Claim and Vermont Environmental Claim | Impaired | No (the Consent Decree and Settlement Agreement constitutes the claimholders' vote to accept the Plan) |
| Class 6:  Asbestos Claims | Impaired | Yes |

NYA 584340.26

| Class 7:  Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims | Impaired | Yes |
|---|---|---|
| Class 8:  CCR Claim | Unimpaired if CCR Settlement Agreement is approved before voting deadline; otherwise impaired. | No (deemed to accept the Plan) if CCR Settlement Agreement is approved prior to voting deadline; otherwise Yes. |
| Class 9:  Bonded Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 10A:  G-I Affiliate Claims | Impaired | No (deemed to reject the Plan) |
| Class 10B:  ACI Affiliate Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 11:  G-I Equity Interest Redemption Claims | Impaired | No (deemed to reject the Plan) |
| Class 12A:  G-I Equity Interests | Impaired | No (deemed to reject the Plan) |
| Class 12B:  ACI Equity Interests | Impaired | No (deemed to reject the Plan) |

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Equity Interests are classified for all purposes, including, without limitation, voting, confirmation, and distribution pursuant to the Plan, as set forth herein.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  Other than Asbestos Claims, a Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3.1     Class 1A – G-I Priority Non-Tax Claims.

(a)     Classification:  Class 1A consists of all G-I Priority Non-Tax Claims.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed G-I Priority Non-Tax Claims are unaltered by the Plan, or such Allowed G-I

22

Priority Non-Tax Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    Voting:  Class 1A is unimpaired by the Plan.  Each holder of a Class 1A Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.2    Class 1B – ACI Priority Non-Tax Claims.

(a)    Classification:  Class 1B consists of all ACI Priority Non-Tax Claims.

(b)    Treatment:  The legal, equitable, and contractual rights of the holders of Allowed ACI Priority Non-Tax Claims are unaltered by the Plan, or such Allowed ACI Priority Non-Tax Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    Voting:  Class 1B is unimpaired by the Plan.  Each holder of a Class 1B Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.3    Class 2A – G-I Secured Claims.

(a)    Classification:  Class 2A consists of all G-I Secured Claims.

(b)    Treatment:  The legal, equitable, and contractual rights of the holders of Allowed G-I Secured Claims are unaltered by the Plan, or such Allowed G-I Secured Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    Voting:  Class 2A is unimpaired by the Plan.  Each holder of a Class 2A Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.4    Class 2B – ACI Secured Claims.

(a)    Classification:  Class 2B consists of all ACI Secured Claims.

(b)    Treatment:  The legal, equitable, and contractual rights of the holders of Allowed ACI Secured Claims are unaltered by the Plan, or such Allowed ACI Secured Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    Voting:  Class 2B is unimpaired by the Plan.  Each holder of a Class 2B Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

NYA 584340.26

3.5     Class 3A – G-I Unsecured Claims.

        (a)     Classification:  Class 3A consists of all Unsecured Claims against G-I.  To the extent the Former CCR Members Claims become Allowed Former CCR Member Claims, such Claims shall be entitled to the treatment provided for Allowed Claims in Class 3A.

        (b)     Treatment:  On the later of (i) the Effective Date and (ii) the date on which a G-I Unsecured Claim becomes an Allowed G-I Unsecured Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed G-I Unsecured Claim shall receive Cash in an amount equal to 8.6 % of such Allowed Claim..

        (c)     Voting:  Class 3A is impaired by the Plan.  Each holder of an Allowed Class 3A Claim is entitled to vote to accept or reject the Plan.

3.6     Class 3B – ACI Unsecured Claims

        (a)     Classification:  Class 3B consists of all Unsecured Claims against ACI.

        (b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed ACI Unsecured Claims are unaltered by the Plan, or such Allowed ACI Unsecured Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

        (c)      Voting:  Class 3B is unimpaired by the Plan.  Each holder of a Class 3B Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.7     Class 3C - G-I Non-Priority Tax Penalty Claims

        (a)     Classification:  Class 3C consists of all G-I Non-Priority Tax Penalty Claims.

        (b)     Treatment:  On the later of (i) the Effective Date and (ii) the date on which a G-I Non-Priority Tax Penalty Claim becomes an Allowed G-I Non-Priority Tax Penalty Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed G-I Non-Priority Tax Penalty Claim shall receive Cash in an amount equal to 100% of such Allowed Claim; *provided*, *however*, that if necessary to render any such Class 3C Claim unimpaired, each holder of an Allowed G-I Non-Priority Tax Penalty Claim shall also receive Cash in an amount sufficient for payment in full of postpetition interest on any such Class 3C Claim, to the extent accrued under applicable non-bankruptcy law.

        (c)     Voting:  Class 3C is unimpaired by the Plan.  Each holder of a Class 3C Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

24

3.8    Class 4 – Environmental Claims for Remedial Relief

(a)    Classification:  Class 4 consists of all Environmental Claims for Remedial Relief.

(b)    Treatment:  The legal, equitable, and contractual rights of the holders of Allowed Environmental Claims for Remedial Relief are unaltered by the Plan, or such Allowed Environmental Claims for Remedial Relief shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    Voting:  Class 4 is unimpaired by the Plan.  Each holder of a Class 4 Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.9    Class 5 – Other Environmental Claims

(a)    Classification:  Class 5 consists of Other Environmental Claims.

(b)    Treatment:  On the later of (i) the Effective Date and (ii) the date on which an Other Environmental Claim becomes an Allowed Other Environmental Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Environmental Claim shall receive Cash in an amount equal to 8.6 % of such Allowed Claim.

(c)    Voting.  Class 5 is impaired by the Plan.  Each holder of an Allowed Class 5 Claim is conclusively deemed to reject the Plan and is thus not entitled to vote to accept or reject the Plan.

3.10    Class 5A – US Environmental Claim and Vermont Environmental Claim

(a)    Classification:  Class 5A consists of the US Environmental Claim and the Vermont Environmental Claim.

(b)    Treatment:   On the Effective Date, the respective holders of the US Environmental Claim and Vermont Environmental Claim shall receive the treatment afforded to such Claims pursuant to the Consent Decree and Settlement Agreement.  With respect to environmental liabilities to the United States and the State of Vermont, nothing in this Plan shall be construed to discharge or release any non-debtor from liability to the United States or the State of Vermont other than as set forth in the Consent Decree, subject to the provisions of the Plan with respect to the injunctive provisions of 11 U.S.C. § 524(g).

(c)    Voting:  Class 5A is impaired by the Plan.  The Consent Decree and Settlement Agreement constitutes the vote by the holders of the Class 5A Claims to accept the Plan.

(d)    Global Settlement and Compromise.  The Plan incorporates a global settlement and compromise between G-I and its Affiliates with the United States and the

25

State of Vermont of the US Environmental Claim, the Vermont Environmental Claim, and the US Adversary Complaint, which is memorialized in the Consent Decree and Settlement Agreement.  This settlement and compromise is subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  The treatment to be afforded the United States and Vermont with regard to the US Environmental Claim and the Vermont Environmental Claim is set forth in the Consent Decree and Settlement Agreement.  To the extent there is an inconsistency between the provisions of the Consent Decree and Settlement Agreement and the Plan with regard to the treatment of the US Environmental Claim and the Vermont Environmental Claim, the Consent Decree and Settlement Agreement will control.

3.11    Class 6 – Asbestos Claims.

(a)    Classification:  Class 6 consists of all Asbestos Claims.

(b)    Treatment:    All Class 6 Claims shall be resolved, determined, and paid pursuant to section 524(g) of the Bankruptcy Code and the terms, provisions, and procedures of the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.   The Asbestos Trust will be funded in accordance with the provisions of Section 4.4 of the Plan. The sole recourse of the holder of a Class 6 Claim shall be the Asbestos Trust, and such holder shall have no right whatsoever at any time to assert its Class 6 Claim against any Protected Party.  *Without limiting the foregoing, on the Effective Date, all holders of Asbestos Claims shall be subject to the Asbestos Permanent Channeling Injunction*.

(c)    Voting:  Class 6 is impaired by the Plan.  Each holder of a Class 6 Claim is entitled to vote to accept or reject the Plan.

3.12    Class 7 – Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims

(a)    Classification:  Class 7 consists of all Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims.

(b)    Treatment:  On the later of (i) the Effective Date and (ii) the date on which an (A) Asbestos Property Damage Claim becomes an Allowed Asbestos Property Damage Claim or (B) Asbestos Property Damage Contribution Claim becomes an Allowed Asbestos Property Damage Contribution Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Asbestos Property Damage Claim or Allowed Asbestos Property Damage Contribution Claim shall receive Cash in an amount equal to 8.6 % of such Allowed Claim.

(c)    Voting:  Class 7 is impaired by the Plan.  Each holder of an Allowed Class 7 Claim is entitled to vote to accept or reject the Plan.

26

3.13    Class 8 – CCR Claim

(a)    <u>Classification</u>:  Class 8 consists of the CCR Claim.

(b)    <u>Treatment</u>:

(i)    If, by the Effective Date, the CCR Claim has been Allowed pursuant to a CCR Settlement Agreement approved by the Bankruptcy Court and executed and delivered by the parties thereto, then on the Effective Date or as soon thereafter as is reasonably practicable, and in accordance with such CCR Settlement Agreement, the Reorganized Debtors shall pay to CCR the CCR Payment Amount as specified in clause (a) of the definition thereof.  If no such CCR Settlement Agreement is approved, executed and delivered, then the Allowed amount, if any, of the CCR Claim shall be determined in a CCR Allowance Proceeding.  If, before the Effective Date, the CCR Claim is Allowed pursuant to a Final Order in a CCR Allowance Proceeding, the Reorganized Debtors shall pay to CCR, on the Effective Date or as soon thereafter as is reasonably practicable, the CCR Payment Amount as specified in clause (b) of the definition thereof.  The Plan may be consummated notwithstanding the pendency of a CCR Allowance Proceeding if, but only if, the Asbestos Claimants Committee and the Legal Representative, in their sole discretion, have provided the written consents described in Section 12.2(b) of the Plan.  Upon the delivery of such written consents, the Reorganized Debtors shall create the CCR Escrow on the Effective Date as provided in Section 4.4(c)(i)(C) of the Plan, in the amount required by that Section, and thereafter, upon the entry of a Final Order in such CCR Proceeding, shall cause a sum equal to the CCR Payment Amount to be disbursed to CCR from the CCR Escrow.  Once the CCR Escrow is created, the Debtors and Reorganized Debtors shall have no liability in respect of the CCR Claim beyond having the escrow agent turn over the appropriate amount from the CCR Escrow.

(ii)    Debtors believe the Former CCR Member Claims are derivative of the CCR Claim, and holders of Former CCR Member Claims have no individual right to assert such Claims against G-I; thus Debtors believe the CCR has compromised and settled these derivative Claims pursuant to the CCR Settlement Agreement; *provided*, *however*, to the extent the Former CCR Members Claims become Allowed Former CCR Member Claims, such Claims shall be entitled to the treatment provided for Allowed Claims in Class 3A.

(c)    <u>Voting</u>:  If the CCR Settlement Agreement has been executed and delivered by each of the parties thereto and approved by the Bankruptcy Court prior to the Confirmation Hearing, the Class 8 Claim is unimpaired by the Plan and the holder of the Class 8 Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.  If no CCR Settlement Agreement has been approved by the Bankruptcy Court prior to the Confirmation Hearing, then Class 8 Claim is impaired by the Plan, and the holder of an Allowed Class 8 Claim is entitled to vote to accept or reject the Plan.

3.14    Class 9 – Bonded Claims

(a)    <u>Classification</u>: Class 9 consists of all Bonded Claims.

(b)    <u>Treatment</u>:  On the later of (i) the Effective Date and (ii) the date on which a Bonded Claim becomes an Allowed Bonded Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Bonded Claim shall receive Cash in an amount equal to such Allowed Bonded Claim; *provided, however*, that (i) in no event shall such Cash distribution exceed the amount of the bond securing such Allowed Bonded Claim and (ii) each such holder of an Allowed Bonded Claim shall look solely to the bond securing its Claim for such Cash distribution, and shall receive no Cash distribution from G-I.  If the holder of the Bonded Claim and G-I do not agree on the Allowed amount of the Bonded Claim, the Bankruptcy Court shall determine the amount of such holder's Allowed Bonded Claim, which amount shall then be paid to such holder from the bond securing such holder's Allowed Bonded Claim.

(c)    <u>Voting</u>:  Class 9 is unimpaired by the Plan.  Each holder of a Class 9 Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.15    Class 10A – G-I Affiliate Claims

(a)    <u>Classification</u>:  Class 10A consists of all G-I Affiliate Claims.

(b)    <u>Treatment</u>:  On the Effective Date, each holder of a G-I Affiliate Claim shall receive no distribution of Cash or property in respect of such Claim.

(c)    <u>Voting</u>:  Class 10A is impaired by the Plan.  Each holder of a G-I Affiliate Claim is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

3.16    Class 10B – ACI Affiliate Claims

(a)    <u>Classification</u>:  Class 10B consists of all ACI Affiliate Claims.

(b)    <u>Treatment</u>:  The legal, equitable, and contractual rights of the holders of Allowed ACI Affiliate Claims are unaltered by the Plan, or such Allowed ACI Affiliate Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    <u>Voting</u>:  Class 10B is unimpaired by the Plan.  Each holder of an ACI Affiliate Claim is conclusively presumed to have accepted the Plan and is thus not entitled to vote to accept or reject the Plan.

3.17    Class 11 – G-I Equity Interest Redemption Claims

(a)    Classification:  Class 11 consists of all G-I Equity Interest Redemption Claims.

(b)    Treatment:  On the Effective Date, each holder of a G-I Equity Interest Redemption Claim shall receive no distribution of Cash or property in respect of such Claim.

(c)    Voting:  Class 11 is impaired by the Plan.  Each holder of a G-I Equity Interest Redemption Claim is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

3.18    Class 12A – G-I Equity Interests

(a)    Classification:  Class 12A consists of all G-I Equity Interests.

(b)    Treatment:  On the Effective Date, all instruments evidencing a G-I Equity Interest (but not the G-I Class B Shares) shall be canceled without further action under any applicable agreement, law, regulation, or rule. The G-I Equity Interests shall be extinguished and holders of G-I Equity Interests shall not receive nor retain any property under the Plan.

(c)    Voting:  Class 12A is impaired by the Plan.  Each holder of a G-I Equity Interest is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

3.19    Class 12B – ACI Equity Interests

(a)    Classification:  Class 12B consists of all ACI Equity Interests.

(b)    Treatment:  On the Effective Date, all instruments evidencing an ACI Equity Interest (but not the ACI Class B Shares) shall be canceled without further action under any applicable agreement, law, regulation, or rule. The ACI Equity Interests shall be extinguished and holders of ACI Equity Interests shall not receive nor retain any property under the Plan.

(c)    Voting:  Class 12B is impaired by the Plan.  Each holder of an ACI Equity Interest is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

## ARTICLE IV

## IMPLEMENTATION OF PLAN

4.1    Compromise and Settlement.  The Asbestos Claimants Committee and the Legal Representative have alleged that the liability of G-I for Asbestos Claims and Demands exceeds the value of G-I's estate by several billion dollars.  In addition, the Asbestos Claimants Committee and

NYA 584340.26

the Legal Representative have pursued a number of causes of action against G-I and certain of its present and former Affiliates in the Bankruptcy Court, District Court and the United States District Court for the Southern District of New York.  G-I disputes the aggregate liability for Asbestos Claims and Demands alleged by the Asbestos Claimants Committee and the Legal Representative, and G-I or its Affiliates have contended that the above-mentioned causes of action are without merit. The Plan incorporates a global settlement and compromise of all of the disputes in these Chapter 11 Cases among G-I and its Affiliates, the Asbestos Claimants Committee, the Legal Representative, and all other parties to the causes of action referred to above, including the causes of action that were or could have been asserted by the Asbestos Claimants Committee and/or Legal Representative in the Covered Matters.

4.2    Creation of Asbestos Trust.  Effective as of the Effective Date, the Asbestos Trust shall be created.  The Asbestos Trust shall be a "qualified settlement fund" within the meaning of section 468B of the Tax Code.  The purpose of the Asbestos Trust is, among other things, (a) to direct the processing, resolution, liquidation, and payment of all Asbestos Claims in accordance with section 524(g) of the Bankruptcy Code, the Plan, the Asbestos Trust Agreement, the Asbestos Trust Distribution Procedures, and the Confirmation Order, and (b) to preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Asbestos Claims.

4.3    Appointment of Asbestos Trustees.  On the Confirmation Date, the Bankruptcy Court shall appoint the individuals selected jointly by the Asbestos Claimants Committee and the Legal Representative to serve as the Asbestos Trustees for the Asbestos Trust pursuant to the terms of the Asbestos Trust Agreement.  Such appointment shall be effective as of the Effective Date.  The individuals so appointed shall be identified in Exhibit 4.3 of the Plan.

4.4    Transfer of Certain Property to the Asbestos Trust.

(a)    Transfer of Asbestos Claims Books and Records.  On the Effective Date or as soon thereafter as is reasonably practicable, the books and records of the Debtors that pertain directly to Asbestos Claims shall be transferred, assigned, or otherwise disposed of pursuant to the terms and provisions of a certain Cooperation Agreement to be entered into by and between the Reorganized Debtors and the Asbestos Trust on the Effective Date, a copy of which will be set forth in the Plan Supplement as Schedule  4.4(a) thereto.

(b)    Transfer of CCR Claims Books and Records.  On the date on which (i) the CCR Payment Amount is paid to CCR, consistent with the terms of the CCR Settlement Agreement, or (ii) the Final Order is entered in the CCR Allowance Proceeding, as applicable, or as soon thereafter as is practicable, CCR shall assign to the Asbestos Trust all data and documentation concerning the underlying Asbestos Personal Injury Claims and any rights and claims against G-I that CCR received by agreement or operation of law in settling such Claims.

30

(c)    <u>Effective Date Transfers of Plan Consideration</u>.

(i)    <u>Cash Payment</u>.

(A)    On the Effective Date, if the CCR Claim has been Allowed and the CCR Payment Amount is $10.0 million or less, the Reorganized Debtors' First Payment To Asbestos Trust shall be Cash in the aggregate amount of $215,000,000 less half of the CCR Payment Amount.

(B)    On the Effective Date, if the CCR Claim has been Allowed and the CCR Payment Amount is greater than $10.0 million, the Reorganized Debtors' First Payment To Asbestos Trust shall be Cash in an aggregate amount calculated by subtracting the CCR Payment Amount from $220,000,000.

(C)    If a CCR Allowance Proceeding remains pending after confirmation of the Plan but the Asbestos Claimants Committee and the Legal Representative have provided the written consents described in Section 12.2(b) of the Plan, then the Reorganized Debtors shall create the CCR Escrow on the Effective Date. The Reorganized Debtors shall deposit the CCR Escrow Amount into the CCR Escrow, for eventual disbursement to CCR if, when, and to the extent the CCR Claim is Allowed pursuant to a Final Order in the CCR Allowance Proceeding. If the CCR Escrow becomes applicable, the Reorganized Debtors' First Payment To Asbestos Trust shall be computed as $220,000,000 *minus* the CCR Escrow Amount, and CCR's sole recourse for payment of the CCR Claim shall be against the CCR Escrow. Any balance remaining in the CCR Escrow after the CCR Claim is paid or disallowed shall be distributed as follows: (i) If the CCR Claim is disallowed by Final Order, Reorganized G-I shall receive $5 million *plus* an allocable *pro rata* share of any CCR Escrow Earnings, and the Asbestos Trust shall receive all remaining proceeds of the CCR Escrow, including all remaining CCR Escrow Earnings; (ii) if the CCR Claim is Allowed by Final Order and the resulting CCR Payment Amount is $10 million or less, Reorganized G-I shall receive the difference between $5 million and 50% of the CCR Payment Amount, *plus* a *pro rata* share of any CCR Escrow Earnings, and the Asbestos Trust shall receive the entire remaining balance of the CCR Escrow *plus* all remaining CCR Escrow Earnings; and (iii) if the CCR Claim is allowed by Final Order and the resulting CCR Payment Amount is

31

more than $10 million, the Asbestos Trust shall receive the entire remaining balance of the CCR Escrow *plus* all CCR Escrow Earnings.

(ii)     Other Consideration.  On the Effective Date, Reorganized G-I shall execute and deliver to the Asbestos Trust the Trust Note, as well as any and all documents and instruments related thereto.  Also on the Effective Date, subject to Section 4.4(c)(iii) of the Plan, the respective parties to the following agreements and instruments shall execute and deliver the same to the Collateral Agent: the Holdings Pledge Agreement and the Letter of Credit.

(iii)    Release of Holdings Pledge Agreement Upon Delivery of Letter of Credit.  On the Effective Date, Reorganized G-I or the Plan Sponsor shall provide and deliver to the Collateral Agent, or may cause other persons to provide and deliver to the Collateral Agent, a Letter of Credit in the Maximum Amount.  Upon delivery of such Letter of Credit to the Collateral Agent, the Holdings Pledge Agreement shall be automatically terminated, and the Capital Stock Lien shall be immediately extinguished; *provided, however*, that the extinguishment of the Capital Stock Lien shall not in any way discharge, release or extinguish the Plan Sponsor's obligations under the other Plan Documents.

(d)     Post-Effective Date Transfers of Plan Consideration.   After the Effective Date, and in addition to the First Payment to Asbestos Trust, Reorganized G-I shall make the payments set forth in the Trust Note as and when due.

(e)     Cash Resources for Plan Implementation.   To carry out the Plan, the Reorganized Debtors, in their sole discretion,  may fund any payment obligations under the Plan using (A) cash flow from BMCA, (B) dividends from any direct or indirect subsidiary of the Reorganized Debtors, (C) contributions to capital of the Reorganized Debtors from Plan Sponsor, (D) sales of Equity Interests in, or assets of, the Reorganized Debtors or any of their direct or indirect subsidiaries or (E) borrowings by Reorganized Debtors; provided however, that the Cash necessary to pay holders of Allowed G-I Non-Priority Tax Penalty Claims shall be provided by ISP.

(f)     Assumption of Certain Liabilities by the Asbestos Trust.  On the Effective Date, subject to the terms of the Plan Documents and in accordance with sections 524(g) and 1141 of the Bankruptcy Code, the Asbestos Trust shall assume and succeed to all liability and responsibility for all Asbestos Claims; the Reorganized Debtors shall be completely discharged of such Claims and shall have no further financial or other responsibility or liability for pending or future Asbestos Claims or Demands; and all Protected Parties shall receive the protections of the Asbestos Permanent Channeling Injunction.

(g)     Assignment and Enforcement of Trust Causes of Action.  On the Effective Date, by virtue of the confirmation of this Plan, without further notice, action, or deed, the Trust Causes of Action shall be automatically assigned to, and indefeasibly vested in, the

32

Asbestos Trust, and the Asbestos Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, with the exclusive right to enforce any and all of the Trust Causes of Action against any Entity, and the proceeds of the recoveries of any such Trust Causes of Action shall be deposited in the Asbestos Trust; *provided, however*, that nothing herein shall alter, amend or modify the Asbestos Permanent Channeling Injunction, releases, discharges, or Supersedeas Bond Action provisions contained elsewhere in this Plan.

4.5     <u>Institution and Maintenance of Legal and Other Proceedings</u>.    As of the date subsequent to the Effective Date on which the Asbestos Trustees confirm in writing to the Reorganized Debtors that the Asbestos Trust is in a position to assume the responsibility, the Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Trust, including Trust Causes of Action.  The Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all such actions in the name of G-I, ACI, or any of the Reorganized Debtors if deemed necessary or appropriate by the Asbestos Trust.  The Asbestos Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred subsequent to the Effective Date arising from or associated with any legal action or other proceeding that is the subject of this subsection.

4.6     <u>Supersedeas Bonds and Payment Assurances</u>.

(a)     <u>Preserved Actions</u>.  All Supersedeas Bond Actions and the rights and Claims asserted or to be asserted therein shall be preserved and shall be prosecuted or defended, as the case may be, by the Reorganized Debtors on and after the Effective Date.

(b)     <u>Assumption by the Asbestos Trust</u>.  As of the Effective Date, the Asbestos Trust shall assume, and shall have exclusive liability for, any deficiency portion of a Bonded Asbestos Personal Injury Claim remaining after crediting proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled.  To the extent the Reorganized Debtors successfully prosecute or defend against a Supersedeas Bond Action resulting in the discharge or release of the relevant supersedeas bond or other payment assurance provided in connection therewith, any such recoveries shall inure to the benefit of the Reorganized Debtors.

(c)     <u>Reservation of Rights of Issuers and Insurers of Payment Assurances</u>.  Notwithstanding anything to the contrary contained herein, nothing in the Plan shall be deemed to impair, prejudice, compromise, or otherwise affect any defense or counterclaim asserted by any issuer or insurer of payment assurances issued on behalf of the Debtors, or any other defendant in the Supersedeas Bond Actions, to any claim of the Debtors, including, without limitation, any defense based on an asserted right of setoff or recoupment, or other defense under applicable non-bankruptcy law.  Any right of setoff or recoupment shall be satisfied out of the assets in the possession of the sureties or insurers relating to such payment assurances and any claims or liabilities including, without limitation, claims for premiums for bonds provided by any such issuers or insurers.

33

(d)     <u>Compromise and Settlement</u>.  The Reorganized Debtors shall be entitled to compromise or settle any of the Supersedeas Bond Actions; *provided, however*, that any such compromise or settlement shall require the consent of the Asbestos Trust (which consent shall not be unreasonably withheld or delayed) to the extent the compromise or settlement results in there being any deficiency portion of a Bonded Asbestos Personal Injury Claim after applying the proceeds of any supersedeas bond or equivalent form of payment assurance.

4.7     <u>Equity Ownership of G-I</u>.  Prior to the Effective Date, for good and valuable consideration as part of the global settlement referred to in Section 4.1 hereof, G-I shall authorize and issue to Holdings the G-I Class B Shares.  On the Effective Date, as a result of all Equity Interests in G-I (but not the G-I Class B Shares) being cancelled, one hundred percent (100%) of the equity interest in G-I shall be represented by the G-I Class B Shares held by Holdings.  As of the Effective Date, the G-I Class B Shares shall be subject to the Capital Stock Lien until delivery of the Letter of Credit, pursuant to Section 4.4(c)(iii) of the Plan.

4.8     <u>Equity Ownership of ACI.</u>  Prior to the Effective Date, for good and valuable consideration as part of the global settlement referred to in Section 4.1 hereof, ACI will authorize and issue to G-I the ACI Class B Shares.  On the Effective Date, as a result of all Equity Interests in ACI (but not the ACI Class B Shares) being cancelled, one hundred percent (100%) of the equity interest in ACI shall be represented by the ACI Class B Shares held by G-I.

4.9     <u>New ACI</u>.  Due to the failure of ACI to deliver its annual registration under Georgia corporate law, together with required fees, ACI's corporate existence is no longer recognized by the Secretary of State of the State of Georgia.  Accordingly, after the Confirmation Date, but prior to the Effective Date, G-I will form a new ACI (with the corporate name, "New ACI Inc.").  G-I will contribute all of its right, title and interest in its shares of old ACI to New ACI.  Immediately thereafter, old ACI will be liquidated into New ACI. These transactions are being effectuated solely for purposes of ensuring ACI's recognition under Georgia corporate law.  Notwithstanding anything herein to the contrary, from and after such liquidation, any references in this Plan to ACI shall be deemed to be references to New ACI.

4.10     <u>Equity Infusion to Fund Liabilities Under Plan</u>.  G-I's liabilities under the Plan will be funded in part by an equity infusion into G-I of up to $220 million from the Plan Sponsor.

4.11     <u>Letter of Credit</u>.  Payment of interest and principal under the Trust Note shall be secured by the Capital Stock Lien, subject to Section 4.4(c)(iii) of the Plan, and by the Letter of Credit issued on the Effective Date.

4.12     <u>Authority of the Debtors</u>.  Effective on the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively their respective obligations under the Plan and the Plan Documents.

NYA 584340.26

# ARTICLE V

## VOTING AND DISTRIBUTIONS UNDER THE PLAN

5.1    <u>Impaired Classes to Vote</u>.  Each holder of a Claim in an impaired Class as of the Record Date shall be entitled to vote to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

5.2    <u>Acceptance by Class of Creditors</u>.  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan; *provided, however,* that pursuant to section 524(g) of the Bankruptcy Code, Class 6 Asbestos Claims shall have accepted the Plan if the Plan is accepted by at least seventy-five percent (75%) of those voting in Class 6 to accept or reject the Plan.  In the event there are no Claims in a Class because (i) no Claim in such Class is known by the Debtors, (ii) no proof of claim asserting a Claim in such Class has been filed, (iii) any proof of claim asserting a Claim in such Class has been disallowed in its entirety by an order of the Bankruptcy Court or such other court of competent jurisdiction, (iv) any proof of claim asserting a Claim in such Class has been re-classified as a Claim in another Class or against another Debtor, or (v) any proof of claim asserting a Claim in such Class has been withdrawn by the party asserting such Claim or otherwise removed by agreement of such party and the applicable Debtor or by Final Order of the Court, such Class shall be eliminated from the Plan as if it never existed.

5.3    <u>Nonconsensual Confirmation</u>.  If any impaired Class of Claims, other than Class 6, shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code and/or amend the Plan.

5.4    <u>Distributions Under the Plan</u>.  Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.  The Distributions shall be made to the holders of Allowed Claims as of the Record Date and the Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of a Claim occurring after the Record Date.

(a)    <u>Distribution Deadlines</u>.  Any Distribution to be made by the Disbursing Agent pursuant to the Plan shall be deemed to have been timely made if made within twenty (20) days after the time therefor specified in the Plan or such other agreements.  No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date.

(b)    <u>Distributions with Respect to Allowed Claims</u>.  Subject to Bankruptcy Rule 9010, all Distributions under the Plan to holders of Allowed Claims in Classes 3A, 3B, 5, and 7 shall be made by the Disbursing Agent to the holder of each Allowed Claim in such Classes

35

at the address of such holder as listed on the Schedules as of the Record Date, unless the Debtors or, on and after the Effective Date, the Reorganized Debtors have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules.   If any Distribution to any such holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; *provided*, *however*, that, at the expiration of one (1) year from the Effective Date such undeliverable Distributions shall be deemed unclaimed property and shall be treated in accordance with Section 5.7 of the Plan.

(c)    Responsibility for Transfers and Distributions.    The Plan Sponsor and Reorganized Debtors (as applicable) and only the Plan Sponsor and Reorganized Debtors shall be responsible for Distributions required by the Plan.   The Asbestos Trust and only the Asbestos Trust shall be responsible for resolving and paying Class 6 Claims and Demands in accordance with the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.

5.5    Disbursing Agent.   All Distributions under the Plan shall be made by the Disbursing Agent.

5.6    Manner of Payment Under the Plan.   Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Disbursing Agent shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank; *provided, however,* that no Cash payment of less than one hundred dollars ($100) shall be made to a holder of an Allowed Claim unless a request therefor is made in writing to the Reorganized Debtors.

5.7    Unclaimed Property.

(a)    Plan Distributions.   All Distributions under the Plan that are unclaimed for a period of one (1) year after distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors, and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

(b)    1989 LBO Transaction.   Any unclaimed, un-cashed, or undeliverable Cash or check previously earmarked or tendered for the redemption of certain Equity Interests relating to the 1989 LBO Transaction, which Cash or checks G-I currently holds or has remitted to an appropriate state agency, and as to which such Equity Interests remain untendered by their holders, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors, and any entitlement of any holder of any Claim to such Cash or checks shall be extinguished and forever barred.

36

5.8    <u>Time Bar to Cash Payments</u>.    Checks issued by the Disbursing Agent for Distributions on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof.  Requests for re-issuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (a) the first (1st) anniversary of the Effective Date, or (b) ninety (90) days after the date of issuance of such check, if such check represents a final Distribution hereunder on account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Reorganized Debtors shall retain all monies related thereto.

5.9    <u>Distributions After Effective Date</u>.    Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of the Plan.

5.10    <u>Setoffs</u>.    The Reorganized Debtors may, but shall not be required to, pursuant to applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that the Debtors' estates or the Reorganized Debtors hold against the holder of such Allowed Claim (other than an Asbestos Claim); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Debtors-in-Possession or the Reorganized Debtors of any such claims, rights and causes of action that the Debtors, Debtors-in-Possession or the Reorganized Debtors may possess against such holder.

5.11    <u>Cancellation of Existing Securities and Agreements</u>.    On the Effective Date, any document, agreement, or instrument evidencing any Claim or Equity Interest, other than an Asbestos Claim or any Claim that is unimpaired by the Plan, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be discharged; *provided, however,* that each Asbestos Claim (other than any Demand) shall be discharged as to the Reorganized Debtors, and all Asbestos Claims (including all Demands) shall be subject to the Asbestos Permanent Channeling Injunction.

5.12    <u>Payment of Interest on Allowed Claims</u>.    Interest shall be paid on Allowed Claims only to the extent the payment of interest is provided for by a contractual agreement between the Debtors and the holder of any such Allowed Claim.

5.13    <u>Allocation of Plan Distributions Between Principal and Interest</u>.    To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**ARTICLE VI**

**TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN**

6.1     Objections to Claims; Prosecution of Disputed Claims.

(a)     The Reorganized Debtors shall object to the allowance of Claims filed with the Bankruptcy Court (other than Asbestos Claims) with respect to which the Reorganized Debtors dispute liability in whole or in part.  All objections filed and prosecuted by the Reorganized Debtors as provided herein shall be litigated to Final Order by the Reorganized Debtors; *provided, however*, that the Debtors or Reorganized Debtors, as the case may be, may compromise and settle, withdraw, or resolve by any other method, without requirement of Bankruptcy Court approval, any objections to Claims; *provided, further, however*, that in the case of a CCR Allowance Proceeding (i) such CCR Allowance Proceeding shall be prosecuted by the Reorganized Debtors, the Asbestos Claimants Committee, and the Legal Representative, and (ii) such CCR Allowance Proceeding may only be compromised, settled, withdrawn, or otherwise resolved with the consent of each of the Reorganized Debtors, the Asbestos Claimants Committee, and the Legal Representative.  Subject to the treatment described in Section 3.11 with respect to the CCR Claim, each of G-I, ACI, the Asbestos Claimants Committee, and the Legal Representative shall oppose the allowance of any Claim by or on behalf of any Entity that is or was a member of CCR, arising from facts or legal relationships that existed during the period when G-I and the Entity asserting the Claim (or on whose behalf it is asserted) were both members of CCR, or arising from or relating to any agreement made by CCR during such period for the settlement of any asbestos-related personal injury or wrongful death claim.

(b)     Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtors to Claims shall be served and filed on or before the later of (i) one hundred eighty (180) days after the Effective Date, and (ii) such date as may be fixed by the Bankruptcy Court, after notice and hearing, whether fixed before or after the date specified in clause (i) above.

6.2     Estimation of Claims.  Unless otherwise limited by an order of the Bankruptcy Court, the Reorganized Debtors may at any time request that the Bankruptcy Court estimate for final Distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on such objection, and the Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; *provided, however*, that, if the estimate constitutes the maximum limitation on such Claim, the Debtors or the Reorganized Debtors, as the case may be, may elect to pursue supplemental

38

proceedings to object to any ultimate allowance of such Claim; and, *provided, further*, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

6.3     No Distributions Pending Allowance.  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no Distribution provided for hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.  No interest shall be paid on account of Disputed Claims that later become Allowed except to the extent that payment of interest is required under section 506(b) of the Bankruptcy Code.

6.4     Distributions After Allowance.  To the extent a Disputed Claim ultimately becomes an Allowed Claim, a Distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction (including any appeal therefrom) allowing any Disputed Claim becomes a Final Order, the Reorganized Debtors shall provide to the holder of such Claim the Distribution to which such holder is entitled hereunder on account of or in exchange for such Allowed Claim.

6.5     Insurance.  Nothing contained herein shall constitute or be deemed a waiver of any Claim, defense, right or cause of action that the Debtors, the Reorganized Debtors, the Asbestos Trust, or any Entity may hold under any policies of insurance against any other Entity, including, without limitation, insurers, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers, and the rights of all such parties are expressly preserved.  This Section 6.5 shall not limit the liability or obligations of any of the Debtors under this Plan with respect to the uninsured portion of any Claim.

6.6     Management of Existing Tax Claim Litigation.  Under the Confirmation Order, the District Court shall retain sole jurisdiction over the litigation in the action styled *United States v. G-I Holdings Inc*., Case No. 02-03082 (D.N.J.) (pending resolution or dismissal without prejudice of that action) and, as a consequence, the Reorganized Debtors shall not file any petition in the United States Tax Court with respect to the Claims subject to that litigation pending resolution or dismissal without prejudice of that action.

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     Assumption and Rejection of Executory Contracts and Unexpired Leases.  Any executory contract or unexpired lease not set forth on Schedule 7.1 of the Plan Supplement that has not expired by its own terms on or prior to the Confirmation Date, which has not been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which is not the subject of a motion to assume and assign or reject as of the Confirmation Date, shall be deemed rejected by the Debtors-in-Possession on the Confirmation Date and the entry of the Confirmation Order by the

39

Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any executory contracts or unexpired leases of the Debtors that are set forth on Schedule 7.1 of the Plan Supplement shall be deemed to have been assumed by the Debtors and the Plan shall constitute a motion to assume such executory contracts and unexpired leases. Any executory contracts or unexpired leases of the Debtors that are set forth on schedule 7.1 of the Plan Supplement that have been designated as being assumed and assigned to one of the Debtors' Affiliates shall be deemed to have been assumed and assigned by a Debtor to that Affiliate and the Plan shall constitute a motion to assume and assign such executory contracts and unexpired leases. Each executory contract or unexpired lease assumed, or assumed and assigned, hereunder shall include any modifications, amendments, supplements or restatements to such contract or lease. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code, and approval of such assumptions and assignments pursuant to section 365(f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that each such assumed, or assumed and assigned, executory contract or unexpired lease is in the best interest of the Debtors, their bankruptcy estates, and all parties in interest in the Chapter 11 Cases. The Debtors reserve the right, at any time prior to the Effective Date, to amend Schedule 7.1 to (a) delete any executory contract or unexpired lease listed therein, thus providing for its rejection hereunder; or (b) add any executory contract or unexpired lease to Schedule 7.1, thus providing for its assumption, or assumption and assignment hereunder. The Debtors shall provide notice of any amendments to Schedule 7.1 to the parties to the executory contracts and unexpired leases affected thereby. Nothing herein shall constitute an admission by a Debtor or Reorganized Debtor that any contract or lease is an executory contract or unexpired lease or that a Debtor or Reorganized Debtor has any liability thereunder.

    7.2    Assumption of Insurance Policies. Notwithstanding anything contained in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed pursuant to the Plan, effective as of the Effective Date. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that assumption of the insurance policies is in the best interest of the Debtors, their bankruptcy estates, and all parties in interest in the Chapter 11 Cases. Nothing contained in this Section 7.2 shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any Entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

    7.3    Cure of Defaults and Survival of Contingent Claims under Assumed Executory Contracts and Unexpired Leases. Except as may otherwise be agreed to by the parties, on or before the thirtieth (30th) day after the Effective Date, provided the non-debtor party to any such assumed executory contract or unexpired lease has timely filed a proof of claim with respect to such cure amount, the Reorganized Debtors shall cure any and all undisputed defaults under each executory contract and unexpired lease assumed by the Debtors pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code. All disputed defaults required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. Unless a proof of claim was timely filed with respect thereto, all cure amounts and all contingent

40

reimbursement or indemnity claims for prepetition amounts expended by the non-debtor parties to assumed executory contracts and unexpired leases shall be discharged upon entry of the Confirmation Order by the Clerk of the Bankruptcy Court.

7.4    <u>Deadline for Filing Rejection Damage Claims</u>.   If the rejection of an executory contract or unexpired lease by the Debtors-in-Possession pursuant to Section 7.1 of the Plan results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties, agents, successors, or assigns, unless a proof of claim is filed with the Debtors' court-appointed claims agent or with the Bankruptcy Court and served upon the Debtors or Reorganized Debtors on or before thirty (30) days after the latest to occur of (a) the Confirmation Date, and (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of such executory contract or unexpired lease.

7.5    <u>Indemnification and Reimbursement Obligations</u>.   For purposes of the Plan, the obligations of the Debtors to indemnify and reimburse persons who are or were directors, officers, or employees of any of the Debtors on the Commencement Date or at any time thereafter against and for any obligations (including, without limitation, fees and expenses incurred by the board of directors of any of the Debtors, or the members thereof, in connection with the Chapter 11 Cases) pursuant to articles of incorporation, codes of regulations, bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected hereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Commencement Date.   In furtherance of the foregoing, the Reorganized Debtors shall maintain insurance for the benefit of such directors, officers, or employees at levels no less favorable than those existing as of the date of entry of the Confirmation Order for a period of no less than four years following the Effective Date.

7.6    <u>Compensation and Benefit Programs</u>.  Except as provided in Section 7.1 of the Plan, the Debtors' existing pension plans and all savings plans, retirement plans, health care plans, performance-based incentive plans, retention plans, workers' compensation programs and life, disability, directors and officers liability, and other insurance plans are treated as executory contracts under the Plan and shall, on the Effective Date, be deemed assumed by the Debtors in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code.  On and after the Effective Date, all Claims submitted for payment in accordance with the foregoing benefit programs, whether submitted prepetition or postpetition, shall be processed and paid in the ordinary course of business of the Reorganized Debtors, in a manner consistent with the terms and provisions of such benefit programs. Nothing in the Confirmation Order, the Plan, the Bankruptcy Code (and section 1141 thereof), or any other document filed in any of the Debtors' bankruptcy proceedings shall be construed to discharge, release or relieve the Debtors, the Reorganized Debtors, or any other party, in any capacity, from any liability or responsibility with respect to the Retirement Plan for Hourly Paid Employees of Building Materials Corporation of America ("Pension Plan") under any law, governmental policy, or regulatory provisions.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility as a result of any of the provisions of the Plan, including those providing for satisfaction, release, and discharge of claims, the Confirmation Order, the Bankruptcy

41

Code (and section 1141 thereof), or any other document filed in any of the Debtors' bankruptcy proceedings.

7.7     <u>Retiree Benefits</u>.  On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtors had obligated themselves to provide such benefits.

## ARTICLE VIII

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF REORGANIZED DEBTORS

8.1     <u>General</u>.  On the Effective Date, the management, control, and operation of the Reorganized Debtors shall become the general responsibility of the Board of Directors of the Reorganized Debtors.

8.2     <u>Reorganized Debtors' Directors and Officers</u>.  The Boards of Directors of each of the Debtors immediately prior to the Effective Date shall serve as the initial Boards of Directors of the Reorganized Debtors on and after the Effective Date and, if different than the individuals identified in the Disclosure Statement, shall be identified in Schedule 8.2 of the Plan Supplement.  Each of the members of such Boards of Directors shall serve in accordance with applicable non-bankruptcy law and each Debtors' certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.  The officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date.  Such officers shall serve in accordance with applicable non-bankruptcy law and any employment agreement with the Debtors, if assumed, or with the Reorganized Debtors.

8.3     <u>Amendment of Articles of Incorporation and By-Laws</u>.  The articles of incorporation and by-laws of the Debtors shall be amended as of the Effective Date to provide substantially as set forth in the Reorganized Debtors' Certificate of Incorporation and the Reorganized Debtors' By-Laws.  The certificate or articles of incorporation and by-laws shall contain provisions (i) prohibiting the issuance of non-voting equity securities, as required by section 1123(a)(6) of the Bankruptcy Code (subject to further amendment of such certificates or articles of incorporation and by-laws as permitted by applicable law), and (ii) effectuating the provisions of the Plan, in such case without further action by the stockholders or directors of the Debtors, the Debtors-in-Possession, or the Reorganized Debtors.

8.4     <u>Corporate Action</u>.  On the Effective Date, the adoption of the Reorganized Debtors' Certificate of Incorporation and the Reorganized Debtors' By-Laws shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized

42

Debtors.  All other matters provided under the Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred, be authorized, and shall be in effect without requiring further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors.  Without limiting the foregoing, from and after the Confirmation Date, the Debtors or the Reorganized Debtors shall take any and all actions deemed appropriate to consummate the transactions contemplated herein.

## ARTICLE IX

## EFFECT OF CONFIRMATION

9.1    Title to Assets.  Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the estates of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests created prior to the Effective Date, except as provided in this Plan and the Plan Documents.  From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

9.2    Discharge of Claims.  In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as provided in the Plan, upon the Effective Date, all Claims against the Debtors shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim.  Upon the Effective Date, all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors.

9.3    Injunction on Claims.  In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, the Confirmation Order or such other applicable order of the Bankruptcy Court, all Persons or Entities who have held, hold or may hold Claims or other debt or liability that are discharged pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability pursuant to the Plan against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors or the Reorganized Debtors, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, (c) creating, perfecting, or enforcing any encumbrance of any kind securing a discharged claim against the Debtors, the Debtors-in-Possession or the

43

Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Debtors-in-Possession or the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.

9.4    <u>Term of Existing Injunctions or Stays</u>.  Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

9.5    <u>Injunction Against Interference With Plan of Reorganization</u>.  Pursuant to sections 1142 and 105 of the Bankruptcy Code, from and after the Effective Date, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan except for actions allowed to attain legal review.

9.6    <u>Exculpation</u>.  **None of the Debtors, the Reorganized Debtors, their Affiliates, any of the members of the Asbestos Claimants Committee, the Legal Representative, or any of their respective officers, directors, members, employees, advisors, attorneys, financial advisors, accountants, agents, or other professionals retained with Bankruptcy Court approval shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including, without limitation, the commencement of the Chapter 11 Cases, the negotiation of the Plan, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Plan.  None of the foregoing parties shall be exculpated under this provision with respect to any acts occurring prior to the Commencement Date.  With respect to officers and directors of the Debtors this section shall apply only to such officers and directors who were serving in such capacity on and after the Commencement Date.**

9.7    <u>Mutual Releases</u>.

(a)    Upon the Effective Date, the Debtors, the Debtors-in-Possession, the Plan Sponsor, the Reorganized Debtors, and the respective Affiliates and subsidiaries of the foregoing Entities shall be deemed to have unconditionally waived and released the Asbestos Claimants Committee, the Legal Representative, the defendants in *G-I Holdings Inc. v. Baron & Budd, et al.*, Case No. 01-CV-0216 (RWS), the Noteholder Defendants, and each of their respective members, employees, agents, advisors, attorneys, financial advisors, accountants, and other professionals from any and all claims, obligations, suits, judgments, damages,

44

rights, causes of action arising from or based on any Claim, Equity Interest, or litigation, including, but not limited to, the Covered Matters, and all pending litigation among the Debtors, the Debtors-in-Possession, shareholders of the Debtors, the Asbestos Claimants Committee, the Noteholder Defendants and the Legal Representative (including any of the Covered Matters) shall be dismissed with prejudice and without costs to any party; *provided, however*, that nothing herein shall relieve the Debtors, the Reorganized Debtors, the Plan Sponsor, the Asbestos Claimants Committee, the Legal Representative, or the Asbestos Trust of their obligations under the Plan, the Plan Documents, the Confirmation Order, the documents and instruments contained in the Plan Supplement, and the Asbestos Trust Agreement.

(b)    Upon the Effective Date, the Asbestos Claimants Committee and the Legal Representative shall be deemed to have unconditionally waived and released the Debtors, the Debtors-in-Possession, the Plan Sponsor, the Reorganized Debtors, the respective Affiliates and subsidiaries of the foregoing Entities, the Noteholder Defendants, and each of the foregoing Entities' respective present and former officers, directors, employees, advisors, attorneys, financial advisors, accountants, and other professionals from any and all claims, obligations, suits, judgments, damages, rights, causes of action arising from or based on any Claim (other than an Asbestos Claim), Equity Interest, or litigation, including, but not limited to, the Covered Matters, and all pending litigation among the Debtors, the Debtors-in-Possession, shareholders of the Debtors, the Asbestos Claimants Committee, the Noteholder Defendants and the Legal Representative (including any of the Covered Matters) shall be dismissed with prejudice and without costs to any party; *provided, however*, that nothing herein shall relieve the Debtors, the Reorganized Debtors, the Plan Sponsor, the Asbestos Claimants Committee, the Legal Representative, or the Asbestos Trust of their obligations under the Plan, the Plan Documents, the Confirmation Order, the documents and instruments contained in the Plan Supplement, and the Asbestos Trust Agreement.

(c)    Consistent with the foregoing releases, the parties shall execute any and all appropriate documentation to effectuate the dismissal of all pending litigation.

9.8    <u>Avoidance Actions</u>.  The Reorganized Debtors shall release any avoidance, equitable subordination, piercing the corporate veil, alter ego or similar claims, rights, or causes of action that the Debtors, the Debtors-in-Possession or their Chapter 11 estates hold, arising under sections 510, 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code or non-bankruptcy law, including, but not limited to, any and all causes of action that were or could have been asserted in the Covered Matters.

9.9    <u>Reservation of Rights</u>.  Except with respect to Covered Matters or as otherwise specifically provided in the Plan, nothing herein shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Reorganized Debtors, or the Asbestos Trust may have against any Entity other than a Protected Party in connection with or arising out of an Asbestos Claim, and the Asbestos Permanent Channeling Injunction shall not apply to the assertion of any such claim, right, or cause of action by the Debtors, the Reorganized Debtors, or the Asbestos Trust.

NYA 584340.26

## ARTICLE X

### CONDITIONS PRECEDENT TO EFFECTIVE DATE OF
### THE PLAN; IMPLEMENTATION PROVISIONS

10.1    <u>Conditions Precedent to Effective Date of the Plan</u>.  The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a)    <u>Entry of the Confirmation Order</u>.  The Bankruptcy Court and the District Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors, the Asbestos Claimants Committee, and the Legal Representatives.  The Confirmation Order or ancillary orders shall provide the following findings and conclusions and shall approve the following relief:

(i)    The Asbestos Permanent Channeling Injunction is implemented in connection with the Plan and the Asbestos Trust;

(ii)    The Plan (including the Plan Documents) complies with section 524(g) of the Bankruptcy Code for the issuance of an irrevocable injunction against Demands subject to the exclusive subject matter jurisdiction of the District Court;

(iii)    The Reorganized Debtors, the Plan Sponsor, each Protected Party and their respective successors and assigns are permanently enjoined from requesting any tribunal to enjoin draws on any Letter of Credit provided hereunder for any reason, including, without limitation, if any one of them becomes a debtor under title 11 of the United States Code; *provided, however,* that this provision shall not impair any of such enjoined persons' remedies if such a draw shall have been wrongful or fraudulent.

(iv)    The global compromise and settlement embodied in the Plan is approved.

(v)    At the time of the order for relief with respect to G-I, G-I had been named as a defendant in personal injury, wrongful death, and property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(vi)    The Asbestos Trust, as of the Effective Date, will assume all the liabilities of the Debtors with respect to all Asbestos Claims;

(vii)    The Asbestos Trust is to be funded in whole or in part by securities of the Reorganized Debtors and by the obligation of the Reorganized Debtors to make future payments;

46

(viii)    The Asbestos Trust is to own, or by the exercise of rights granted under the Plan, for purposes of section 524(g) of the Bankruptcy Code, would be entitled to own, if specified contingencies occur, a majority of the voting shares of G-I;

(ix)    G-I is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Asbestos Permanent Channeling Injunction;

(x)    The actual amounts, numbers, and timing of the future Demands referenced in Section 10.1(a)(ix) of the Plan cannot be determined;

(xi)    Pursuit of the Demands referenced in Section 10.1(a)(ix) of the Plan outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands;

(xii)    The terms of the Asbestos Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan and the Disclosure Statement;

(xiii)    The Plan establishes, in Class 6 (Asbestos Claims), a separate class of the claimants whose Claims are to be addressed by the Asbestos Trust;

(xiv)    The Legal Representative was appointed as part of the proceedings leading to issuance of the Asbestos Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert unknown Asbestos Claims and Demands that are addressed in the Asbestos Permanent Channeling Injunction and transferred to the Asbestos Trust;

(xv)    Applying the Asbestos Permanent Channeling Injunction to each Protected Party in the Asbestos Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Trust by or on behalf of any such Protected Party;

(xvi)    Class 6 (Asbestos Claims) has voted, by at least 75 percent (75%) of those voting, in favor of the Plan;

(xvii)    Pursuant to court orders or otherwise, the Asbestos Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Trust will liquidate, and be in a financial

47

position to pay, Asbestos Claims and Demands that involve similar Claims in substantially the same manner;

(xviii) The Trust Note, and the Collateral Agency Agreement shall each be a valid and binding obligation of each of the parties thereto, in full force and effect, and enforceable in accordance with its terms, upon execution and delivery as of the Effective Date;

(xix) Subject to Section 4.4(c)(iii) of the Plan, the Holdings Pledge Agreement shall be a valid and binding obligation of each of the parties thereto, in full force and effect, and enforceable in accordance with its terms, upon execution and delivery as of the Effective Date; and

(xx) Subject to Section 4.4(c)(iii) of the Plan, as of the Effective Date, the Capital Stock Lien shall attach to the G-I Class B Shares and the Collateral Agent shall thereby possess a valid and enforceable security interest in such shares, upon performance of delivery requirements specified in the Holdings Pledge Agreement with respect to such pledged collateral.

(b)    Occurrence of the Effective Date.  The Effective Date shall not occur, and the Plan shall be of no force and effect, until satisfaction of the following conditions precedent:

(i)    The Confirmation Order shall have been entered for at least ten (10) days and then is not stayed or enjoined;

(ii)    The Bankruptcy Court and/or the District Court, as required, shall have entered or affirmed the Asbestos Permanent Channeling Injunction (which may be included in the Confirmation Order), which shall contain terms satisfactory to the Debtors, the Asbestos Claimants Committee, and the Legal Representative;

(iii)    The Confirmation Order and the Asbestos Permanent Channeling Injunction shall be in full force and effect;

(iv)    All Asbestos Trustees shall have been selected and shall have executed the Asbestos Trust Agreement;

(v)    All agreements and instruments that are exhibits to the Plan or included in the Plan Supplement shall have been duly executed and delivered; *provided, however*, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring;

(vi)    Such other actions and documents as the Debtors deem necessary to implement the Plan shall have been effected or executed; *provided, however*, that the execution, delivery and approval of the CCR Settlement Agreement shall not

48

constitute a condition to the Effective Date and the issuance of a Final Order in the CCR Allowance Proceedings shall not constitute a condition to the Effective Date; and

(vii)    All conditions to closing set forth in the Trust Note, Letter of Credit and the Plan Documents shall have been fulfilled to the reasonable satisfaction of the Asbestos Claimants Committee and the Legal Representative (such satisfaction not to be unreasonably withheld);

(viii)    The Debtor or Plan Sponsor shall have demonstrated to the reasonable satisfaction of the Asbestos Claimants Committee and the Legal Representative that the Letter of Credit will be issued on the Effective Date.

(c)    The Debtors shall have received (i) a favorable ruling from the Internal Revenue Service with respect to the qualification of the Asbestos Trust as a "qualified settlement fund," or (ii) an opinion of counsel with respect to the tax status of the Asbestos Trust as a "qualified settlement fund" reasonably satisfactory to the Debtors, the Asbestos Claimants Committee and the Legal Representative.

10.2    <u>Waiver of Conditions Precedent</u>.  To the extent practicable and legally permissible, each of the conditions precedent in Section 10.1 hereof, may be waived, in whole or in part, by the Plan Proponents, jointly.  Any such waiver of a condition precedent may be effected at any time by filing with the Bankruptcy Court a notice thereof that is executed by the Plan Proponents, jointly.  If any Plan Proponent desires to waive a condition precedent to facilitate confirmation, the other Plan Proponents shall confer promptly with it as to whether or not the suggested waiver should be given, in recognition that time is of the essence.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction and retain all exclusive jurisdiction it has over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following:

(a)    to interpret, enforce, and administer the terms of the Plan, the Plan Documents (including all annexes and exhibits thereto), and the Confirmation Order.

(b)    to resolve any matters related to the assumption, assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of the Plan, to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

49

(c)       to enter such orders as may be necessary or appropriate to implement or consummate the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan; *provided*, *however*, that nothing in the Plan shall detract from or contravene any jurisdictional provisions of any such written agreement or instrument, including the Trust Note, any agreement regarding a pledge or collateral to secure the Trust Note, or any escrow agreement with respect to the CCR Escrow, that permits or requires legal actions or proceedings to be brought in another court;

(d)       to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors or by the Asbestos Claimants Committee and the Legal Representative, after the Effective Date including, without limitation, any claims to recover assets for the benefit of the Debtors' estate, except for matters waived or released under this Plan;

(e)       to ensure that Distributions to holders of Allowed Claims (other than Asbestos Claims) are accomplished as provided herein;

(f)       to hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim (other than Asbestos Claims), both before and after the Confirmation Date, including any objections to the classification of any Claim (other than Asbestos Claims), and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim (other than Asbestos Claims), in whole or in part;

(g)       to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

(h)       to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(i)       to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(j)       to hear and determine all applications for allowances of compensation and reimbursement of expenses of professionals under sections 330 and 331 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan, except as otherwise provided in Section 13.8 of the Plan;

(k)       to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

50

(l)        to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)        to recover all assets of the Debtors and property of the Debtors' estates, wherever located;

(n)        to resolve any Disputed Claims;

(o)        to determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code;

(p)        to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement, including any of the Plan Documents;

(q)        to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim (excluding any Asbestos Claim) or cause of action by or against the Debtors' estates;

(r)        to hear and determine any other matters that may be set forth in the Plan, the Confirmation Order or the Asbestos Permanent Channeling Injunction, or that may arise in connection with the Plan, the Confirmation Order or the Asbestos Permanent Channeling Injunction;

(s)        to hear and determine any proceeding that involves the validity, application, construction, or enforceability of the Asbestos Permanent Channeling Injunction, or that may arise in connection with the Plan, the Confirmation Order, or the Asbestos Permanent Channeling Injunction;

(t)        to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(u)        to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code;

(v)        to enter a final decree closing the Chapter 11 Cases; and

(w)        to hear and determine all objections to the termination of the Asbestos Trust.

11.2    <u>Non-Core Jurisdictional Matters</u>.    To the extent that the Bankruptcy Court under applicable law lacks core jurisdiction over, or is otherwise not permitted to render dispositive orders or judgments in, any of the foregoing matters, the reference to the "Bankruptcy Court" in this Article XI shall be deemed to be replaced by the "District Court."    Notwithstanding anything in this Article

51

XI to the contrary, (i) the resolution and payment of Asbestos Claims, and the forum in which such resolution and payment will be determined, will be governed by and in accordance with the Asbestos Trust Distribution Procedures and the Asbestos Trust Agreement, and (ii) the Bankruptcy Court and the District Court shall have concurrent rather than exclusive jurisdiction with respect to (x) disputes relating to rights under insurance policies issued to the Debtors, and (y) disputes relating to the Debtors' rights to insurance with respect to Workers' Compensation Claims.

# ARTICLE XII

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

12.1    Plan Modifications.  Prior to the Confirmation Date, the Plan Proponents, in their sole discretion, may jointly amend, modify or supplement the terms and provisions of the Plan, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Code may otherwise direct.  After the Confirmation Date, so long as such action does not materially adversely affect the treatment of Claims under the Plan, the Plan Proponents may jointly institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  If any Plan Proponent suggests a modification of the Plan to facilitate confirmation, the other Plan Proponents shall confer promptly with it as to whether or not to modify the Plan accordingly, in recognition that time is of the essence.

12.2    Revocation, Withdrawal, or Non-Consummation.

(a)    If the Effective Date does not occur by the last date permitted by the definition thereof, or if the Plan does not otherwise become effective by such date, the Confirmation Order and this Plan shall become null and void in all respects, unless each Plan Proponent, in its sole and absolute discretion, executes and files with the Bankruptcy Court a written notice waiving the foregoing requirement of Plan effectiveness by such date.

(b)    If a CCR Allowance Proceeding remains pending after confirmation of the Plan, the Plan shall be deemed withdrawn, and may not be consummated, unless the Asbestos Claimants Committee and the Legal Representative, in their sole discretion, consent in writing to (i) consummation of the Plan, with the CCR Allowance Proceeding to be resolved after the Effective Date, (ii) the creation of a CCR Escrow pursuant to Section 4.4(c)(i)(C) of the Plan, and (iii) any adjustment in the First Payment to Asbestos Trust required by Section 4.4(c)(i)(C) of the Plan.

(c)    If the Plan is revoked or withdrawn prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the

rights of the Debtors or any other Entity in any further proceedings pending in, arising in, or relating to the Chapter 11 Cases.

(d)    In the event that the Effective Date does not occur, the parties shall be returned to the position they would have held had the Confirmation Order not been entered, and nothing in this Plan, the Disclosure Statement, any of the Plan Documents, or any pleading filed or statement made in court with respect to the Plan or the Plan Documents shall be deemed to constitute an admission or waiver of any sort or in any way limit, impair, or alter the rights of any Entity.

# ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1    <u>Effectuating Documents and Further Transactions</u>.    Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the Board of Directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.2    <u>Cooperation</u>.    Subject to the rights set forth herein to revoke or withdraw the Plan, the Plan Proponents shall cooperate and together use their best efforts in pursuing confirmation of this Plan by the Bankruptcy Court.

13.3    <u>Withholding and Reporting Requirements</u>.    In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtors, or any other paying agent, as applicable, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements.    Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.    Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to refrain from making a Distribution, until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

13.4    <u>Exemption from Transfer Taxes</u>.    Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes, equity interests or other plan securities pursuant to the Plan or any of the Plan Documents, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan or any of the Plan Documents, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

NYA 584340.26

13.5    Expedited Tax Determination.  The Reorganized Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Commencement Date through, and including, the Effective Date.

13.6    Exemption from Registration.  Pursuant to section 1145 of the Bankruptcy Code, and except as provided in subsection (b) thereof, the issuance of (a) any shares of stock issued pursuant to the Plan, and (b) the Trust Note issued pursuant to the Plan shall be exempt from registration pursuant to section 5 of the Securities Act of 1933, as amended, and all other applicable non-bankruptcy laws or regulations.

13.7    Payment of Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.  The Reorganized Debtors shall pay any quarterly fees payable pursuant to 28 U.S.C. section 1930(a)(6) to the Office of the United States Trustee (the "OUST") after the Effective Date until such time as the case is converted, dismissed or closed pursuant to a final decree.  The Reorganized Debtor shall file post-Effective Date reports, the form of which will be supplied by the OUST.  Nothing contained in this Plan shall relieve the Debtors or Reorganized Debtors from making payments to the OUST when due as required by 28 U.S.C. section 1930(a)(6).

13.8    Post-Confirmation Date Fees and Expenses.  The Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons incurred from and after the Effective Date by the Reorganized Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

13.9    The Asbestos Claimants Committee and the Legal Representative.

        (a)    Except as provided below, the Asbestos Claimants Committee and the Legal Representative shall continue in existence until the Effective Date.

        (b)    Except as provided below, on the Effective Date, the rights, duties, and responsibilities of the Legal Representative shall be as set forth in the Asbestos Trust Agreement.

        (c)    Except as provided below, on the Effective Date, the Asbestos Claimants Committee shall be dissolved, and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, liabilities, and obligations related to, or arising from, the Chapter 11 Cases.

        (d)    Notwithstanding any of the foregoing, the Asbestos Claimants Committee and the Legal Representative shall continue in existence and shall have post-Effective Date standing and capacity to (i) complete matters, if any, including, without limitation, litigation, appeals, or negotiations pending as of the Effective Date which are not released pursuant to

54

the Plan, including participating as a party in interest in any CCR Allowance Proceeding; (ii) object to or defend the Administrative Expense Claims of professionals employed by or on behalf of the Estates; (iii) participate with the Debtors to oppose any appeals of the Confirmation Order; and (iv) prepare and prosecute applications for the payment of fees and reimbursement of expenses.

(e)    In all events, the Asbestos Claimants Committee, its members, and its professionals, as well as the Legal Representative and his professionals, shall have the right to seek, and shall be entitled to, reasonable fees and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code for services rendered (including those services arising from or connected with any pending matter referred to in Section 13.9(d)).    The Debtors shall pay such reasonable fees and expenses incurred through the Effective Date, in accordance with the fee and expense procedures set forth in the Bankruptcy Code and Bankruptcy Rules or otherwise promulgated during the Chapter 11 Cases.  The Reorganized Debtors shall pay such reasonable fees and expenses relating to any post-Effective Date activities authorized in Section 13.9(d), but only to the extent that such reasonable fees and expenses are not expenses of the Asbestos Trust, in which case those portions of such fees and expenses shall be paid as Asbestos Trust expenses in accordance with the Asbestos Trust Agreement, with the remainder to be paid by the Reorganized Debtors.

13.10    Plan Supplement.  A specimen form of the documents to be included in the Plan Supplement shall be (a) filed with the clerk of the Bankruptcy Court no later than ten (10) days prior to the Confirmation Hearing; and (b) posted at www.epiqsystems.com as they become available, but no later than ten (10) days prior to the Confirmation Hearing.  Upon its filing with the clerk of the Bankruptcy Court, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court during normal court hours.

13.11    Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.12    Sections 1125 and 1126 of the Bankruptcy Code.  As of and subject to the occurrence of the Confirmation Date: (i) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation, and (ii) the Debtors, the Asbestos Claimants Committee and its members, the Legal Representative, and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

13.13    Severability.  If, prior to the Confirmation Date, any term or provision of the Plan or any of the Plan Documents shall be held by the Bankruptcy Court to be invalid, void or

NYA 584340.26

unenforceable, the Bankruptcy Court shall, with the written consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan or the Plan Documents as the case may be, shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan and the Plan Documents, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.14   Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an exhibit hereto or document contained in the Plan Supplement provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to principles of conflicts of laws.

13.15   Deemed Acts.  Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

13.16   Binding Effect.  The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.

13.17   Exhibits/Schedules.  All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are part of the Plan as if set forth in full herein.

13.18   Notices.  All notices, requests, and demands to or upon the Debtors, the Debtors-in-Possession or the Reorganized Debtors to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> G-I Holdings Inc.
> 1361 Alps Road
> Wayne, New Jersey 07470
> Attention:  Secretary

With a copy to:

> Dewey & LeBoeuf, L.L.P.
> 1301 Avenue of the Americas

New York, New York  10019
Attention:  Martin J. Bienenstock, Esq.
                   Judy G.Z. Liu, Esq.
                   Timothy Q. Karcher, Esq.
Fax:  212-259-6333

-and-

Riker, Danzig, Scherer, Hyland & Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Attention:  Dennis O'Grady, Esq.
Fax:  (973) 538-0800

13.19  <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.20  <u>Section Headings</u>.  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

13.21  <u>Inconsistencies</u>.  To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern.

57

This Plan is respectfully proposed by:

G-I Holdings Inc.,                                   Official Committee of Asbestos Claimants
Chapter 11 Debtor in Possession


By:  /s/ Samuel J. Heyman                    By:  /s/ Robert J. Komitor
Its: President and Chief Executive Officer   Its:    Chairman


ACI Inc.,
Chapter 11 Debtor in Possession
                                             C. Judson Hamlin,
                                             Legal Representative for Present and Future
                                             Demand Holders
By:  /s/ Samuel J. Heyman                       /s/ C. Judson Hamlin
Its:    Chairman


Dated:  October 5, 2009


Dewey & LeBoeuf, L.L.P.         Keating Muething & Klekamp         Caplin & Drysdale, Chartered
1301 Avenue of the Americas       PLL                              375 Park Avenue
New York, NY  10019             One East Fourth Street             New York, NY 10152-3500
(212) 259-8000                  Suite 1400                         (212) 319-7125
                                Cincinnati, OH 45202
Attorneys for Debtors and       (513) 579-6400                     Attorneys for Official
Debtors-in-Possession                                              Committee of Asbestos
                                Attorneys for C. Judson Hamlin      Claimants
Riker, Danzig, Scherer,         as Legal Representative
  Hyland & Perretti LLP                                            Lowenstein Sandler, PC
Headquarters Plaza              Saiber LLC                         65 Livingston Avenue
One Speedwell Avenue            One Gateway Center                 Roseland, NJ 07068
Morristown, NJ 07962-1981       Newark, NJ 07102-5311              (973) 597-2500
(973) 538-0800                  (973) 645-4929

                                                                   Attorneys for Official
Attorneys for Debtors and       Attorneys for C. Judson Hamlin      Committee of Asbestos
Debtors-in-Possession           as Legal Representative             Claimants


58

## EXHIBITS TO THE PLAN

Exhibit 1.1.17        G-I Holdings Inc. Asbestos Personal Injury Settlement Trust Agreement

Exhibit 1.1.18        G-I Holdings Inc. Asbestos Personal Injury Settlement Trust Distribution Procedures

Exhibit 1.1.41        Letter of Understanding with the Center for Claims Resolution, Inc., dated June 30, 2008

Exhibit 1.1.46        Collateral Agency Agreement

Exhibit 1.1.83        Pledge Agreement of G Holdings Inc.

Exhibit 1.1.101(c)    List of Affiliates That Are Protected Parties

Exhibit 1.1.112       Trust Note

Exhibit 4.3           Asbestos Trustees

## SCHEDULES TO THE PLAN SUPPLEMENT

Schedule 1.1.104      Reorganized Debtors' Certificates of Incorporation

Schedule 1.1.105      Reorganized Debtors' By-Laws

Schedule 4.4(a)       Cooperation Agreement

Schedule 7.1          Executory Contracts and Unexpired Leases Being Assumed

Schedule 8.2          Reorganized Debtors' Directors and Officers