RALPH J. MARRA, JR.
Acting United States Attorney

SUSAN STEELE
Assistant U.S. Attorney

JAN M. GEHT (JMG 3272)
ARI D. KUNOFSKY (ADK 4289)
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, D.C. 20044
(202) 353-9187
Counsel for the United States

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case Nos. 01-30135 (RG), 01-38790 (RG) |
|  | ) | (Jointly Administered) |
| G-I HOLDINGS INC., *et al.*, | ) |  |
|  | ) | Honorable Rosemary Gambardella |
| Debtors. | ) |  |
| ──────────────────────── | ) |  |

**UNITED STATES' RESPONSE TO THE DEBTORS' SUPPLEMENTAL BRIEF IN
SUPPORT OF CONFIRMATION AND IN SUPPORT OF PLAN AMENDMENT
REGARDING APPLICABILITY OF PLAN TERMS TO INDIRECT AS WELL AS
DIRECT ASSESSMENTS**

The United States of America, by and through the Tax Division of the

Department of Justice, objects to the amendments to section 2.4 of the Eighth Amended

Plan (Docket No. 9644)  and responds to the Debtors' supplemental brief filed on

October 5, 2009 (Docket No. 9646) as follows:

## PRELIMINARY STATEMENT

For eight years the Debtors argued that the non-Debtors should be kept out of bankruptcy and that the non-Debtors are completely separate legal entities from the Debtors. This Court ruled in the Debtors' favor. Even in the plan confirmation process, the Debtors represented to this Court that the Debtors are not seeking to discharge the non-Debtors from any tax liabilities. It takes chutzpah[1] to turn around and feign outrage at the suggestion that the United States will, in fact, treat the Debtors and the non-Debtors as separate legal entities.

The Debtors assert that a significant, substantive amendment to the plan is required on an expedited basis, claiming an "eleventh hour" surprise from the United States. Yet the Debtors cannot substantiate their alleged surprise at the assertion that the United States will actually treat the Debtors and non-Debtors separately. First, the Internal Revenue Service has not assessed any tax or attempted to collect anything from the non-Debtors. To enjoin future assessments, the Debtors appear to have violated the so-called mediation privilege they claimed in the past by using statements made during the mediation to advance their litigation position here. Such actions are reproachable given that in this very same proceeding the Debtors defeated the United States' discovery requests by asserting that such a privilege was sacrosanct.

---

[1] Chutzpah is defined as "gall, brazen nerve, effrontery, incredible guts, presumption plus arrogance such as no other word and no other language can do justice to." *Mirfasihi v. Fleet Mortg. Corp.*, 551 F.3d 682, 687 (7th Cir. 2008) (Posner, J.).

4092613.3

Second, the Debtors were on notice of the United States' legal position for over two and a half years.  In March 2007 before any plan was ever filed, the United States notified the Debtors that it intended to treat the Debtors and Non-Debtors as separate legal entities.  Yet the Debtors, when they filed their first plan, did not raise any issues regarding the United States' legal position.  In its First and Second Objections to Confirmation, the United States raised these issues again, only to have the Debtors assert that the Plan did not seek to discharge non-Debtors.  Thus, the claimed imperative for this "eleventh hour" amendment and the need for expedited consideration are false.  Therefore, the Court should reject the new amendment and require the non-Debtors to raise their substantive arguments when the proper time arises.

Underneath the base of its recent amendments are three legal issues.  First, do the non-Debtors owe post-petition, pre-confirmation interest ("Gap Interest")?  Second, are the non-Debtors' liable for post-confirmation taxes, interest, and penalties on terms different than those set out in the Plan for the Debtors' priority tax payments ("Post-Confirmation Obligations")?  Third, can the Debtors pay a priority tax claim with a note when the Bankruptcy Code and Internal Revenue Code require *cash* payments?  If the Court finds that an unsecured, unprotected, single-bullet payment note is cash, then the Court would render the Post-Confirmation Obligations issue moot.

Since both the Gap Interest and Post-Confirmation Obligations would be owed only by the non-Debtors, this Court cannot resolve them for four reasons.  First, this

3

4092613.3

Court lacks "related to" jurisdiction to determine the tax liability of the non-Debtors.

Second, there is no "case or controversy" before this Court because the United States

has not assessed or attempted to collect the non-Debtors liability.  Third, the Anti-

Injunction Act prohibits the relief sought by the Debtors because the Debtors are

seeking to restrain the United States' ability to assess and collect taxes.  26 U.S.C. § 7421.

Fourth, any release of non-Debtors is invalid under 11 U.S.C. § 524(e).

## BACKGROUND

### A.  <u>Procedural History</u>

On January 5, 2001, G-I Holdings, Inc. (collectively with ACI, Inc., the "Debtors")

commenced its chapter 11 case and has thereafter operated its business as a debtor in

possession.  The official committee of asbestos claimants (the "Committee") soon

thereafter sought to substantively consolidate the Debtors with Building Materials

Corporation of America ("BMCA").  The Debtors and BMCA jointly opposed

substantive consolidation arguing that:

> Indeed, the Committee's pleading nowhere take into account the
> harm that can be expected to befall BMCA in the event the
> application is successful and it is thrust into bankruptcy.
> Confidence of BMCA's customers in its ability to continue
> operating successfully and be around to stand behind its products
> for years, even decades, to come is critical to the success of its
> business.  By their very nature, roofing products are designed to
> last for many years; in fact, many residential roofing products are
> sold with warranties lasting for thirty years or more.  In the
> commercial segment of the market, guarantees are marketed and
> sold separately and are an important source of revenue.  Given
> these dynamics, customers would be reluctant to continue
> purchasing from a company who had been forced into chapter 11,
> and who, as a result, might not be able to make good on its

4092613.3

warranty obligations at a future time.  Similarly, trade creditors
also could be expected to react negatively to BMCA being dragged
into bankruptcy, and BMCA's access to critical raw materials and
credit could be jeopardized.

(Ex. 203, Case No. 2:01-ap-03065, docket no. 7, Mem. of Law in Support of Motion of G-I

Holdings, Inc. at 4.)  The Debtors and BMCA further argued that "BMCA's trade and

bank creditors rely heavily on the fact that BMCA is an **independent, separate legal**

**entity from G-I**."  *Id.* at 17 (emphasis added).  Heeding these arguments, this Court

denied the Committee's request for a provisional order substantively consolidating the

Debtors and BMCA.  *Official Committee of Asbestos Claimants v. G-I Holdings, Inc.*, 2001

WL 1598178 (Bankr. D.N.J. Apr. 6, 2001).  This continued to be the Debtors' position for

the past eight years.  And as late as two weeks ago, the Debtors claimed that the Plan

"does not address or affect the rights and obligations of non-debtors."  (Debtors' Mem.

of Law in Support of Confirmation at p. 33 n. 43.)

B.  **The United States' Tax Claims.**

The United States has asserted two sets of alternative tax claims in this

bankruptcy proceeding against the Debtors.  First, the United States has asserted

priority tax claims approximating $315 million, plus unsecured non-priority claims of

roughly $68 million for penalties, arising from the disputed character of an alleged

partnership transaction executed by the Debtors in 1990.  In the alternative, the United

States has priority tax claims approximating $131 million, plus unsecured non-priority

5

claims of roughly $26 million for penalties, arising from the 1999 termination of the

Debtors' alleged partnership investment.  *Id*.[2]

The actual amounts of the United States' claims are being litigated in the U.S.

District Court for the District of New Jersey.  (Case no. 2:02-cv-03082).  The District

Court granted the United States' motion for partial summary judgment on the 1999

transaction on June 8, 2007.  *In re G-I Holdings, Inc.* 369 B.R. 832 (D.N.J. 2007).  The trial

on the merits of the 1990 transaction and the penalties for both years took place from

June 8, 2009 to June 19, 2009.  This Court denied the United States' oral motion at the

June 23, 2009 status conference to postpone the confirmation hearing until the District

Court enters a judgment.  (*See* Docket No. 9278, July 1, 2009 Confirmation Hearing

Scheduling Order).

C.  **The Proposed Treatment of the United States' Tax Claims**.

The United States has two types of tax claims in this matter:  Priority Tax Claim

and G-I Non-Priority Tax Penalty Claim.  Plan section 2.4 provides to pay the United

States' priority tax claim with a note at the end of all litigation regarding this tax that is

almost 20 years old.  Since that litigation could take another five years, this note allows

the Debtors to wait an additional eleven years from the confirmation date before

paying.  At the end of that time period, the United States will receive a single payment

of the entire principal owed plus interest at a rate of LIBOR plus 1%, which equals

---

[2] The alternative priority tax claims are referred hereinafter as "Priority Tax Claim" and the alternative unsecured non-priority tax claims are referred hereinafter as "G-I Non-Priority Tax Penalty Claim" in accordance with Plan sections 1.1.77 and 1.1.98.

4092613.3

about 1.3%.  (Plan section 2.4.)  In the Eighth Amended Plan, the Debtors added the

following provision:

> *provided further,* that any assessment of a tax liability made against
> any entity the payment of which would give rise to a claim for
> indemnification by such entity against the Reorganized Debtors
> shall (i) not exceed the amount of any Allowed Priority Tax Claim,
> (ii) for purposes of this Section 2.4, be deemed to be an assessment
> of an Allowed Priority Tax Claim, and (iii) be subject to the timing
> and payment terms set forth herein, such that any such assessment
> may be satisfied in full upon such entity's delivering a note issued
> by G-I having the same terms as described in (b) hereof.

(Plan section 2.4.)

With respect to the G-I Non-Priority Tax Penalty Claim, the Plan provides for

payment of 100% of the Claim at the end of the litigation regarding the claim.  (Plan

section 3.7.)  The Plan provides for an undefined interest at the rate necessary to render

the United States unimpaired.  (*Id.*)

The United States, through a delegate of the Secretary of the Treasury, voted its

G-I Non-Priority Tax Penalty Claim to reject the Plan.  The Plan Proponents amended

the Plan after the vote to provide the treatment for that claim described in the previous

paragraph.

### D.  <u>The Non-Debtors Can be Assessed for Liabilities that Cannot be Collected from the Debtors.</u>

The Debtors and non-Debtors are members of a consolidated group for tax

purposes.  All members of a consolidated group are severally liable for the entire

amount owed.  26 U.S.C. § 1502, 26 C.F.R. § 1.1502-6(a).  The members cannot change

4092613.3

their liability to the United States through a tax sharing agreement.  26 C.F.R. § 1.1502-6(c).

The Debtors and non-Debtors are severally liable for the taxes and all related interest and penalties at issue in the District Court litigation described above.  As described more fully below, the United States may not *collect* Gap-Interest and Post-Confirmation Obligations from the Debtors because of protections that the Bankruptcy Code provides the Debtors.  That liability, however, can be assessed against the Debtors even if it cannot be collected because the Bankruptcy Code and the Internal Revenue Code differentiate between "assess" and "collect".

In March of 2007, the United States put the Debtors on notice of its legal position in a letter stating "[i]n sum, the foregoing authorities instruct that BMCA – the estate's primary asset – is fully liable for all the IRS claims against the Debtors, including post-petition interest, and that a discharge of the Debtors under 11 U.S.C. § 1141(d)(1)(A) will not diminish BMCA's liability."  (Ex. 201, United States' 3/1/07 Letter; Ex 202, Debtors' 3/14/07 Acknowledgment Letter.)

The United States and the Debtors' group entered into an agreement to stay the assessment of the non-Debtors until the Debtors could be assessed.  The United States may assess as soon as the District Court litigation has become *res judicata*.  26 U.S.C. § 6871; *accord* 11 U.S.C. § 505(c) (allowing the Service to assess after a "determination by a court of the tax under" 11 U.S.C. § 505).

8

## ARGUMENT

**A.  THIS COURT LACKS JURISDICTION TO GRANT THE RELIEF
REQUESTED**.

The Debtors seek a release of the United States' claims against third parties,

relying in large part on this Court's alleged authority to determine the tax liabilities of

the non-Debtors.  Proceedings to determine the liabilities of non-debtors, however, do

not fall within the "related to" jurisdiction of the Court under 28 U.S.C. §§ 1334 and 157.

The contours of federal bankruptcy jurisdiction are defined by 28 U.S.C. § 1334.

*See generally In re Combustion Engineering, Inc.*, 391 F.3d 190, 225 (3d Cir. 2005).  Section

1334(b) confers upon the district courts "original and exclusive jurisdiction of all cases

under title 11," and "original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11."  28 U.S.C.

§ 1334(b).  Section 157(a) permits district courts to refer matters to a bankruptcy court.

*See* 28 U.S.C. §§ 157(a), 151.  "This broad jurisdictional grant allows bankruptcy courts

to 'deal efficiently and expeditiously with all matters connected with the bankruptcy

estate.'"  *In re Combustion Engineering*, 391 F.3d at 225 (quoting *Celotex Corp. v. Edwards*,

514 U.S. 300, 308 (1995)).  The Third Circuit explained that "[b]ankruptcy court

jurisdiction potentially extends to four types of title 11 matters: (1) cases under title 11,

(2) proceedings arising under title 11, (3) proceedings arising in a case under title 11,

and (4) proceedings related to a case under title 11."  *Id*.  The Debtors only argue that

the Court has "related to" jurisdiction.  This Court should reject the Debtors' position.

The standard for "related to" jurisdiction is well-defined:

4092613.3

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* at 226. However, "a bankruptcy court's 'related to' jurisdiction cannot be limitless."

*Celotex Corp. v. Edwards, et ux.*, 514 U.S. 300, 308 (1995); *see also Combustion Engineering,*

*Inc.*, 391 F.3d at 226 (noting that the "related to" jurisdiction is not without limitation).

In this case, the Debtors argue that the Court has "related to" jurisdiction by

citing two Third Circuit cases that in fact support the United States' position. In

*Quattrone Accountants, Inc. v. Internal Revenue Service*, 895 F.2d 921, 926 (3d Cir. 1990),

the Third Circuit declined jurisdiction because the "outcome . . . will in no way affect

debtor's liability." In *Kaplan v. Internal Revenue Service*, 104 F.3d 589, 595 (3d Cir. 1995),

the Third Circuit found that it had jurisdiction because the debtors' **liability** under

26 U.S.C. § 6672 depended on the liability of the non-Debtors.[3] In other words, under

---

[3] The Debtors' citation to two other bankruptcy court cases are likewise inapposite because they involved liability under 26 U.S.C. § 6672. *See In re Campbell Enters., Inc.,* 66 B.R. 200 (Bankr. D.N.J. 1986); *In re H&R Ice Co.,* 24 B.R. 28 (Bankr. W.D. Miss. 1982). The ultimate holding of the third case, *In re Major Dynamics, Inc.,* 14 B.R. 969 (Bankr. S.D. Cal. 1981), was rejected by the Ninth Circuit's Bankruptcy Appellate Panel, which covers the Southern District of California. *See In re Condel, Inc.,* 91 B.R. 79 (9th Cir. BAP 1988) (noting disagreement between lower courts within the Ninth Circuit and finding that "[a]llowing a debtor to avoid or forestall the tax liabilities of its officers by use of a Plan would violate the policy of the Anti-Injunction Act as readily as allowing the debtor to avoid such liability by filing a suit for injunctive relief.") The United States acknowledges that the finding of "related to" jurisdiction was not rejected by the Ninth Circuit's Bankruptcy Appellate Panel, which did not examine the question of "related

10

26 U.S.C. § 6672, two parties could be jointly and severally liable for the same penalty. If one pays, the United States does not collect from the other.

The present case is different.  The Debtors' liability – the tax, pre-petition interest, and post-confirmation interest at the rate set forth in the Plan – is not affected at all by the liability of the non-Debtors for the Gap Interest and Post-Confirmation Obligations. In fact, the United States concedes that it cannot collect from the Debtors that which it would be seeking to collect from the non-Debtors.  As these liabilities can only be paid by the non-Debtors, they do not fall within the "related to" jurisdiction.

The Debtors seek to create jurisdiction by pointing to plan feasibility and to voluntary dealings between the Debtors and non-Debtors, namely the Tax Sharing Agreement.  If the Court determines that either the feasibility of the Plan or the Tax Sharing Agreement is legally relevant to the question of jurisdiction, the United States requests additional discovery on both topics.  To this point, the United States relied on the projections provided by the Debtors, which showed ample cash to cover any eventual liability by the non-Debtors.  (*E.g.*, Expert Report of Stephen F. Cooper dated August 6, 2009.)  If the Debtors now intend to walk away from those projections, the Court should order the non-Debtors to open their books and records in order to find the facts necessary to consider jurisdiction.  Moreover, the Debtors have not shown how much would need to be paid and which non-Debtors would seek indemnification. Accordingly, the United States would also seek to reopen discovery to determine: (a)

to" jurisdiction.

4092613.3

how much each non-Debtor would owe under the Tax Sharing Agreement, and (b) how

much each non-Debtor would seek in indemnification.

Finally, if this Court has "related to" jurisdiction to determine the tax liability of

a non-Debtor, the proceeding is a non-core proceeding for which the Court could not

issue a final order without the consent of the parties.  *See* 11 U.S.C. § 157(a) and (c).  The

United States does not consent.

### B.    THERE IS NO CASE OR CONTROVERSY FOR THE COURT TO ADJUDICATE.

Even if the Court determines jurisdiction may lie under 11 U.S.C. § 1334, the

United States' potential claims against the non-debtors do not satisfy the "case or

controversy" requirement of Article III of the United States Constitution.  A controversy

must be "real and substantial . . . , admitting of specific relief through a decree of a

conclusive character, as distinguished from an opinion advising what the law would be

upon a hypothetical state of facts."  *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227,

241, *reh'g denied*, 300 U.S. 687 (1937).  *See Regional Rail Reorganization Act Cases*, 419 U.S.

102, 138-48 (1974).  No Article III case or controversy exists in "cases which present a

hypothetical conflict which, while perhaps foreseeable, has not yet become imminent."

*Guttmacher Institute v. McPherson*, 616 F. Supp. 195, 199 (S.D.N.Y. 1985), *modified in part,*

*aff'd in part*, 805 F.2d 1088 (2d Cir. 1986).  The case or controversy requirement of Article

III also requires litigants to have standing.  *Simon v. Eastern Kentucky Welfare Rights Org.*,

426 U.S. 26, 38 (1976).  "The fundamental aspect of standing is that it focuses on the

12

party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968). *See Simon*, 426 U.S. at 38.

In this case, the Internal Revenue Service has not made any assessment against any of the non-Debtors for either Gap Interest or Post-Confirmation Obligations. And the Service has not attempted to collect either Gap Interest or Post-Confirmation Obligations from any of the non-Debtors. The Debtors submitted no evidence, but merely speculate about the future.

If the Service were to take such steps, there will be a case or controversy for **non-Debtors** to litigate. In fact, if a taxpayer fails to pay the tax due, the Internal Revenue Code provides all taxpayers with a right to hearing **before** the collection even starts. *See generally* 26 U.S.C. §§ 6320 & 6330. Accordingly, if the non-Debtors fail to pay the interest associated with any liability the District Court determines to be due and the need for forced collection arises, the non-Debtors will have full panoply of remedies at their disposal either before or after the collection. *See generally* 26 U.S.C. §§ 6320, 6330 & 7422. And, in any event, the Debtors are judicially estopped from arguing that they have standing to assert any rights of third-party non-Debtors after spending eight years arguing to this Court that they and the non-Debtors are separate legal entities. *See, e.g., In re Teleglobe Communications Corp.*, 493 F.3d 345, 377 (3d Cir. 2007) ("Judicial estoppel prevents a party from playing fast and loose with the courts by adopting conflicting positions in different legal proceedings (or different stages of the same proceeding).")

Finally, even if there is a justiciable case or controversy within this Court's

jurisdiction regarding claims of the United States against third-parties, it is at best a

non-core proceeding, and the United States does not consent under 28 U.S.C. § 157(c)(2)

to the reference of this proceeding to this Court.

There is one way this Court can resolve the issue of Post-Confirmation

Obligations while respecting the "case or controversy" requirement.  If the Court finds

that a note tendered by the Debtors which promises payment six years later constitutes

full payment at the time the note is tendered, all interest would stop running at that

time, and the non-Debtors would have no Post-Confirmation Obligations once the note

is tendered.  Thus the Post-Confirmation Obligation issues would be mooted by such a

finding.

Both bankruptcy and non-bankruptcy law, however, prohibit paying the United

States' priority tax claims with a note rather than cash.  Under bankruptcy law general

unsecured and secured claims can be paid with property including notes.  11 U.S.C.

§ 1129(b)(2) (requiring a payment in the form of "property.")  *Collier's on Bankruptcy*

1129.04[4][a][i][A] (Property "can be cash, notes, real estate, securities, equity interests

in the reorganized debtor or some other entity issuing securities under the plan, or a

combination of any or all of these items").  But the priority claims at issue here must be

paid in "cash."  11 U.S.C. § 1129(a)(9)(C) (requiring deferred "cash" payments).

Non-bankruptcy law also requires cash payments. 31 U.S.C. § 5103 ("United

States coins and currency (including Federal reserve notes and circulating notes of

14

Federal reserve banks and national banks) are legal tender for all debts, public charges,

taxes, and dues"); 26 U.S.C. § 6311 (authorizing the Secretary to prescribe the acceptable

form of payment); 26 C.F.R. § 301.6311-1 (authorizing the acceptance of checks, drafts,

or money orders "provided the checks, drafts, or money orders are collectible in United

States currency at par").  A note is not cash, it is not a check, it is not a draft, and it is not

a money order.  In fact, if plan section 2.4 provided for the payment at the end of six

years after the final determination of the assessment, it would be clear that no payment

in cash took place on the date of the final determination.  The delivery of a note does

not move the payment in cash from six years after the date of final determination to the

date of final determination.  The Plan's attempt to rewrite the requirement to pay in

cash must be rejected.  And when it is, there will be no remaining case or controversy.

## C.  THE ANTI-INJUNCTION ACT PROHIBITS THE RELIEF REQUESTED.

This Court cannot discharge *non*-Debtors from liability by entering an injunction

under 11 U.S.C. § 105.  *In re Combustion Engineering*, 391 F.3d at 233-237, 248-249

(vacating § 105 injunction shielding non-debtor subsidiaries from liabilities of debtor

corporation).[4]  As this Court has declared, "to cloak such action under the guise of this

court's equitable power under section 105 would result in an exercise of unfounded

---

[4] *See also In re Kaplan*, 104 F.3d 589, 597-98 (3d Cir. 1997) (holding that bankruptcy court
lacked authority under § 105 to reallocate non-debtor corporation's federal tax
payments); *United States v. Huckabee Auto Co., et al (In re Huckabee Auto)*, 783 F.2d 1546,
1548-49 (11th Cir. 1989) (holding that bankruptcy court lacked jurisdiction to enjoin the
Service from collection efforts against non-debtors).

4092613.3

judicial fiat." *In re Elsinore Shore Assocs.*, 91 B.R. 238, 254 (Bankr. D.N.J. 1988)

(Gambardella, J.).[5]

>    a. <u>The Anti-Injunction Act bars this Court from Absolving the Non-Debtors of
>    either Gap Interest or Post-Confirmation Obligations.</u>

Under the Anti-Injunction Act, bankruptcy courts have no jurisdiction to enjoin

the United States from collecting federal tax debts from ***non***-Debtors. The Anti-

Injunction Act provides that "no suit for the purpose of restraining the assessment or

collection of any tax shall be maintained in any court by any person, whether or not

such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).

Congress could "scarcely be more explicit" that the Ani-Injunction Act was meant to

protect "the Government's need to assess and collect taxes as expeditiously as possible

with a minimum of pre-enforcement judicial interference." *Bob Jones Univ. v. Simon*,

416 U.S. 725, 737 (1974). This Act prevents bankruptcy courts from enjoining tax

collections. *In re Becker's Motor Transp., Inc.*, 632 F.2d 242, 246 (3d Cir. 1980) (holding

that "a bankruptcy court exemption [from the Anti-Injunction Act] cannot be judicially

fashioned without contravening congressional intent").[6]

---

[5]  *See also La Salle Rolling Mills, Inc. v. United States*, 832 F.2d 390, 394 (7th Cir. 1987)
("there is no indication in the Bankruptcy Code that Congress intended to supercede
the Anti-Injunction Act"); *In re Heritage Village Church and Missionary Fellowship, Inc.*,
851 F.2d 104, 105 (4th Cir. 1988); *American Hardwoods*, 885 F.2d at 625; *cf. In re Pazzo
Pazzo, Inc.*, 2007 WL 4166017 *2-3 (D.N.J. Nov. 20, 2007) (Tax Injunction Act, 28 U.S.C.
§ 1341, prohibits bankruptcy court from entering § 105 injunction preventing collection
of state taxes from non-debtor).

[6]  *See also La Salle*, 832 F.2d at 394; *A to Z Welding & Mfg. Co. Inc. v. United States*, 803 F.2d
932, 933 (8th Cir. 1986); *In re American Bicycle Ass'n*, 895 F.2d 1277, 1279-80 (9th Cir.

The Debtors downplay the binding Third Circuit precedent of *Becker's Motors*

and ignore the most recent case on the topic from this District, *Pazzo Pazzo, Inc. v. New

Jersey,* 2007 WL 4166017 (D.N.J. Nov. 20 2007), which reaffirmed the central holding of

*In re Becker's Motor.*  In *Pazzo Pazzo,* the court stated:

> The Third Circuit has already addressed and rejected a similar
> argument. In *In re Becker's Motor Transp., Inc.*, it held that an act
> similar to the Tax Injunction Act, the Anti-Injunction Act (which
> bars suits "for the purpose of restraining the assessment or
> collection of any tax") precludes bankruptcy courts from enjoining
> the IRS's collection of taxes from a nondebtor. 632 F.2d 242, 244-46
> (3d Cir.1980); *see* Anti-Injunction Act, 26 U.S.C. § 7421(a) (2000). The
> court in *Becker's* specifically noted that the Bankruptcy Code
> provides no express provision allowing such an injunction. *Becker's*,
> 632 F.2d at 244-46. Given the absence of such a provision, this Court
> holds that the bankruptcy exception to the Tax Injunction Act does
> not permit bankruptcy courts to enjoin a State's collection of taxes
> from nondebtors.

*Pazzo Pazzo*, 2007 WL 4166017, *3.  This Court should not disregard binding Third

Circuit precedent that was recently reaffirmed by the District Court.[7]

---

1990); *Matter of East Wind Indus., Inc.*, 61 B.R. 408, 411 (D.N.J. 1986) (following *Becker's*);
*United States v. Chatman Elec. Services, Inc.*, 82 B.R. 646, 648 n.2 (D.D.C. 1987).

[7] The United States acknowledges that this Court had previously limited the *In re
Becker's Motors* in *In re Campbell Enters., Inc.*, 66 B.R. 200, 203-204 (Bankr. D.N.J. 1986)
(Gambardella, J.)  However, the United States respectfully submits that in over 20 years,
no other bankruptcy court or district court in this District nor the Third Circuit has
followed the Court's lead.  In light of the recent District Court holding in *Pazzo Pazzo*,
the United States respectfully requests that the Court reexamine its prior finding in *In re
Campbell Enterprises.*

To the extent the Court wishes to continue to follow *Campbell Enterprises*, the United
States notes that any injunction against collection would require the Court to find that:
"(1) a substantial likelihood of success on the merits; (2) the imposition of irreparable
harm upon the movant if the injunction is not granted; (3) proof that issuance of an

4092613.3

The Debtors assert that "the Plan Amendment . . . would *not* prevent the IRS from assessing against BMCA." (Debtors' Brief at 20.) The Debtors continue that "[t]he proposed change to section 2.4 simply addresses the amount, timing, and payment terms of BMCA's and G-I's liability to the IRS, but the leaves the IRS free to proceed against each other." *Id.*

The Debtors' assertions are preposterous. The Plan Amendment was filed specifically to prevent the Service from assessing the non-Debtors with the interest they would owe. Since the Service has not made any such assessment, in effect, the Debtors and non-Debtors are seeking a declaration from this Court that certain taxes are not owed by the non-Debtors. Such a finding would be contrary to the Declaratory Judgment Act. *See* 28 U.S.C. 2201(a). *See, e.g., Sterling Consulting Group v. United States,* 245 F.3d 1161, 1167 (10th Cir. 2001) (holding that "the Declaratory Judgment Act

---

injunction will not cause substantial harm to others, and; (4) proof that the public interest will be served by the issuance of the injunction." *In re Campbell Enters., Inc.* 66 B.R. at 208.

As with the Debtors in *Campbell Enterprises*, the non-Debtors do not have a substantial likelihood of success on the merits of whether they are liable for Gap Interest and Post-Confirmation Obligations could be assessed. *See* Section C.b. below. Moreover, the non-Debtors will not be irreparably harmed as they have all the rights any other non-debtor would have under the Internal Revenue Code to challenge the assessment before any collection efforts are taken. The injunctive relief also will harm the United States by not allowing it to collect taxes due and owing.

Finally, granting Mr. Heyman a 20-year interest holiday is not in the public interest. These taxes accrued and were not paid because the Debtors disguised their sale in an attempt to evade paying taxes. The Debtors have received through an agreement with the Service an extension on taxes due in 1990. To convert these taxes into a twenty-year interest-free loan would encourage the promulgation of tax shelters and the manipulation of the bankruptcy system.

18

prohibits the district court from declaring that the bankruptcy estates owe no additional

federal taxes.")

The Debtors then seek to back that declaratory judgment up with an injunction

preventing Gap Interest and Post-Confirmation Obligation from being assessed or

collected.  Neither the declaratory judgment nor the injunction, however, could stand.

*See Bob Jones Univ.*, 416 U.S. at 732 n.7 ("The congressional antipathy for premature

interference with the assessment or collection of any federal tax also extends to

declaratory judgments. . . . There is no dispute, however, that the federal tax exception

to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act").

Finally, such a finding would also constitute a non-core proceeding, to which the

United States does not consent.

      b.   *The Court should not release Non-Debtors from either Post-Confirmation Obligations or Gap Interest.*

If the Court finds that it has authority to issue an injunction or a declaratory

judgment, it should still find that the non-Debtors are not entitled to a release from

either Post-Confirmation Obligations or Gap Interest.  As with the "case or controversy"

requirement, the only way the Court can resolve the Post-Confirmation Obligations

issue is by deciding whether the delivery of the note in Plan section 2.4 satisfies the

requirement that payments be made in cash on the date of the delivery.  If the delivery

does not constitute a payment in full, then interest continues to accrue against the non-

Debtors until the underlying tax liability is paid in full.  26 U.S.C. § 6621.

4092613.3

The Debtors also ask the Court to address the non-Debtors' obligations for Gap Interest under the 2001 Tolling Agreement.  Notwithstanding the fact that the non-Debtors are simply not debtors in this case, the Court should find that Tolling Agreement does not absolve the non-Debtors from the Gap Interest that they owe.  The Service entered into the Tolling Agreement in 2001 with G-I and its affiliated non-Debtors regarding the tax liabilities for the affiliated group.   Under the Tolling Agreement, G-I agreed that, for each taxable year in which its non-Debtors filed consolidated tax returns with G-I as their designated agent, they will be liable for the tax liabilities of the consolidated group (as they clearly are under the consolidated group regulations).  G-I further agreed that, for each taxable year, the statute of limitations for any claims against the non-debtor affiliates will be the same as the statute of limitations for claims against G-I.  This Agreement clarified that the assessment statutes for the non-Debtors would be tolled for the same time it was being tolled for the Debtors.   The Service also agreed not to assess the non-Debtors "before such time as [it] may assess the same amount against" G-I.  The Service further promised not to "assess any amount against the nonbankrupt corporations with respect to said tax liability that is greater than the amount of the liability that he may assess against the Taxpayer."

Neither the language nor the intent of the Tolling Agreement absolved the non-Debtors from their liability for all the taxes of the consolidated group, including the Gap Interest.  Nothing within the Tolling Agreement's language allows the non-Debtors to

4092613.3

walk away from their Gap Interest obligations.  And the Agreement's intent is clear on

its face.  The Tolling Agreement simply clarifies that the assessment statute would

remain open for the non-Debtors while the matter was being litigated in the District

Court, and the non-Debtors and the Service would be bound by the District Court's

determination.  There was no intent for the United States to walk away from interest

due from the non-Debtors.

The Tolling Agreement simply provides that the United States will only assess

amounts that it could assess against the parent (once the District Court has made its

determination).  The United States typically makes assessments against a consolidated

group by making an assessment in the name of the parent.  There is nothing that

prevents the United States from assessing the group's liability, including all interest for

all periods, once the District Court makes its determination.   The Bankruptcy Code

does not prevent interest from accruing against the non-Debtors, or even the Debtors,

during the bankruptcy case.

While section 11 U.S.C. § 502(b) prevents Gap Interest from being **claimed** in the

bankruptcy case (as to the Debtors), nothing prevents its *accrual* under nonbankruptcy

law, even though the interest may ultimately be **uncollectible** from the Debtors after

the bankruptcy case if the Debtors receive a discharge.  By contrast, the Internal

Revenue Code expressly prevents the accrual of certain penalties during a bankruptcy

case. *See, e.g.,* 26 U.S.C. § 6658 (the accrual of penalties provided by 26 U.S.C. §§ 6651,

21

6654, and 6655 is suspended during the debtor's bankruptcy but resumes once the bankruptcy case is no longer pending.).

Neither the bankruptcy automatic stay nor the discharge injunction prevent the assessment of Gap Interest against the non-Debtors or even the Debtors.  The automatic stay has not prohibited the making of an assessment since 1994.  *See* 11 U.S.C. § 362(b)(9).  The discharge injunction prohibits only acts to ***collect*** discharged debts from the Debtors.  The United States' assessment of the Gap Interest in order to collect the interest from non-Debtors is not prohibited by the bankruptcy discharge.  *Compare* 11 U.S.C. § 524(a)(2) (prohibiting acts to collect, recover or offset any debt as a personal liability of the debtor) *with* 11 U.S.C. § 362(a)(6) (prohibiting any act to collect, *assess*, or recover a claim against the debtor).  Further, 11 U.S.C. § 524(e) plainly provides that discharge generally does not affect the liability of any other entity.   Finally, the discharge itself only eliminates the Debtors' personal liability but does not extinguish the liability itself.  *See also Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *see also In re Sure-Snap Corp.*, 983 F.2d 1015, 1018 (11th Cir. 1993) (discharge received by debtor upon confirmation did not terminate debtor-creditor contract so contract could still support award of attorneys' fees incurred post-confirmation); *In re Conston*, 181 B.R. 769, 773 (D. Del. 1995) (collecting cases).  *See also* Chief Counsel Notice 2001-014.

In short, the Tolling Agreement prevents the Service from assessing against the non-Debtors any tax liability that is greater than the tax it can assess against the Debtors.  Since nothing in the Bankruptcy Code or the Internal Revenue Code stops the

4092613.3

accrual of interest against the Debtors or Non-Debtors in the Group, the question is

therefore whether either the bankruptcy automatic stay, or the bankruptcy discharge

injunction (were the Debtors to get one), would prevent the assessment of Gap Interest

against the Debtors in order to reflect the true tax liability of the consolidated group.

Neither does.

The Court should leave any dispute about the Tolling Agreement and the non-

Debtors to a time and place when the non-Debtors have a live controversy with the

Service.  But if it is addressed, the Court should find that the Tolling Agreement does

not prevent the Service from assessing the Gap Interest against the non-Debtors in this

case, since it can indeed be assessed against the Debtors.

**D.    THE RELEASE OF NON-DEBTORS VIOLATES 11 U.S.C. § 524(e)**.

It is beyond doubt that waivers of sovereign immunity must be clear and explicit.

*E.g., Orff v. United States*, 545 U.S. 569, 601-602 (2005).  The standard for finding a waiver

is quite stringent; a waiver must be "unequivocally expressed," strictly construed in

favor of the sovereign, with ambiguities construed against waiver.  *In re Torres*, 432 F.3d

20, 23-24 (1st Cir. 2005) (citing *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999);

*Orff*, 545 U.S. 596, and *United States v. Williams*, 514 U.S. 527, 531 (1995)).  Section 106 of

the Bankruptcy Code abrogates the United States' sovereign immunity to the extent set

forth in specific sections of the Bankruptcy Code.  *See* 11 U.S.C. § 106(a).[8]  One of the

---

[8] The United States notes that section 105 alone does not provide a basis for the Plan's
broad discharge provisions.  Section 105 empowers a court to issue any order, process,
or judgment that is necessary or appropriate to carry out other provisions of the

23

provisions limiting the waiver of sovereign immunity is 11 U.S.C. § 524(e).  The Court

should find that § 524(e) bars all third-party releases.  Should the Court find that section

524(e) does not unequivocally bar all third-party releases, the Court should still find

that the Debtors have not made the showing required the Third Circuit considered as

the very least that would be allowed.

      a.   *The Court should find that 11 U.S.C. § 524(e) bars all non-debtor releases*

A discharge granted to the debtor "does not affect the liability of any other entity

on, or the property of any other entity for, such debt."  *See* 11 U.S.C. § 524(e).  *See also*

*Stratosphere Litig. LLC v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 (9th Cir. 2002) ("a

bankruptcy court cannot confirm a reorganization plan that discharges the liabilities of

third parties"); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601-602 (10th Cir. 1990),

*modified by*, *Abel v. West*, 932 F.2d 898 (10th Cir. 1991); *In re Original IFPC Shareholders,*

*Inc.*, 317 B.R. 738, 747 (Bankr. N.D. Ill. 2004); *cf.* 11 U.S.C. § 524(g) (permitting, in

asbestos cases only, an injunction barring collections from third-party non-debtors if

certain conditions are met, notwithstanding § 524(e)); *In re Specialty Equipment Co., Inc.*,

3 F.3d 1043 (7th Cir. 1993) ("consensual and non-coercive" releases in plan permitted).

---

Bankruptcy Code.  11 U.S.C. § 105(a); *see also In re American Bicycle Ass'n*, 895 F.2d 1277,
1279-80 (9th Cir. 1990).  Section 105 plainly only works in conjunction with another
provision of the Bankruptcy Code which needs to be implemented.  *See* 11 U.S.C.
§ 105(a); *In re American Bicycle Ass'n*, 895 F.2d at 1279-80.  Thus, the waiver of sovereign
immunity provided for in Section 106(a) does not extend to 11 U.S.C. § 105 when no
other provision of the Code is implicated.

4092613.3

The Third Circuit has not resolved the propriety of non-debtor releases.

*See generally In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000). In *Continental Airlines*, the Third Circuit, after examining the circuit split on the topic,[9] stated:

> We also note, with some concern, that the Bankruptcy Court apparently never examined its jurisdiction to release and permanently enjoin Plaintiffs' claims against non-debtors. Although bankruptcy subject matter jurisdiction can extend to matters between non-debtor third parties affecting the debtor or the bankruptcy case, see 28 U.S.C. § 1334; *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), a court cannot simply presume it has jurisdiction in a bankruptcy case to permanently enjoin third-party class actions against non-debtors. We must remain mindful that bankruptcy jurisdiction is limited, as is the explicit grant of authority to bankruptcy courts. See 28 U.S.C. §§ 157, 1334; *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). We do not treat this very significant issue more fully, however, because the record does not permit us to resolve this issue and the parties have not raised and discussed it in their appellate briefs.

*Id.* at 214 n. 12. Rather than resolve this legal issue, the Third Circuit reversed the confirmation plan because "[t]he hallmarks of permissible non-consensual releases-fairness, necessity to the reorganization, and specific factual findings to support these conclusions" were absent from the bankruptcy court's determination. *Id.* at 214.

While the Debtors rely on the Supreme Court's decision in *Energy Resources* for the proposition that non-Debtors may be released from liability, their reliance is

---

[9] Currently, the Fifth, Ninth, and Tenth Circuits prohibit non-debtor releases. *See In re Lowenschuss*, 67 F.3d 194, 1401-02 (9th Cir. 1995); *In re Zale Corp.*, 62 F.3d 746, 759-62 (5th Cir. 1995); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601-02 (10th Cir. 1990), *modified by, Abel v. West,* 932 F.2d 898 (10th Cir. 1991). On the other hand, the Second, Fourth, and Sixth Circuits are accepting of some releases. *See In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992); *In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir. 1989).

misplaced because *Energy Resources* has been limited to situations in which the debtor

seeks to direct the application of payments among categories of debt, *see, e.g., In re*

*Preferred Door Co., Inc.*, 990 F.2d 547, 550-01 (10th Cir. 1993), and has never been

extended to authorize a court to release or discharge a debt owed by a third-party non-

debtor to the United States.[10]

The United States respectfully requests that the Court find that all non-

consensual releases violate 11 U.S.C. § 524(e) following the lead of the Fifth, Ninth, and

Tenth Circuits.

b. *The Debtors failed to establish that a release of non-debtors is warranted.*

Should the Court reject the views of the Fifth, Ninth, and Tenth Circuits, the

Court should find that the Debtors have not demonstrated that "[t]he hallmarks of

---

[10] In *United States v. Energy Resources Co., Inc.*, 495 U.S. 545 (1990), the Supreme Court held that a bankruptcy court had the authority to direct the Internal Revenue Service to allocate a corporate debtor's payments to its trust fund liability prior to its non-trust fund liability "if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan." 495 U.S. at 549. The Supreme Court relied upon 11 U.S.C. §§ 105(a) and 1123(a)(6), and "the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." 495 U.S. at 549. The Court specifically noted that where a debtor is a corporation, the tax debt must still be paid off within six years and, therefore, "the IRS, in all likelihood, will collect the tax debt owed." 495 U.S. at 549. Thus, while applying payments to the non-trust fund liability would provide the Internal Revenue Service with an added assurance under 26 U.S.C. § 6672 that all of the debt owed will be paid, the Supreme Court determined that this "added protection" did not have to be provided in a Chapter 11 proceeding. 495 U.S. at 550. Moreover, the Supreme Court held that "the Bankruptcy Courts' orders do not prevent the Government from collecting trust fund revenue; to the contrary, the orders require the Government to collect trust fund payments before collecting non-trust-fund payments." 495 U.S. at 550. As we have explainted, that is a different situation than the one here where the Plan seeks to prohibit the Service from collecting the Gap Interest the non-Debtors may owe.

26

permissible non-consensual releases-fairness, necessity to the reorganization, and specific factual findings to support these conclusions" are present in this case.

The Debtors present several arguments for the release of the non-Debtors. First, they argue that the non-Debtors' liability would threaten the feasibility of the Plan. The Debtors, however, cite no case for the proposition that Plan's feasibility alone can be sufficient grounds to release the non-Debtors. As a legal matter, the Debtors would allow the legal obligation of any non-debtor – whether it is taxes owed, environmental obligations, or any other regulatory requirement that costs money – to be absolved because the non-debtors have agreed to fund a plan. That cannot be the law.

As a factual matter, this Plan is either feasible or it is not when the non-Debtors are liable for Gap Interest and Post-Confirmation Obligations. As explained above, the Debtors' own projections show that there is ample cash available to pay the additional liabilities of the non-Debtors. If the Debtors are now seeking to reject those projections, the Court should order the non-Debtors to open their books and records so it can determine if the plan is, in fact, feasible.

Second, the Debtors argue that the Tax Sharing Agreement binds G-I to indemnify BMCA. There are a number of problems with this position. G-I can, under the bankruptcy law, reject the contract. 11 U.S.C. § 365. Because G-I wholly owns BMCA, it could have also renegotiated the Agreement to remove the indemnification. Also, G-I has no assets of its own, so it would indemnify BMCA through, presumably, cash dividends from BMCA to G-I. In other words, BMCA payments to G-I are made

4092613.3

pursuant to the Tax Sharing Agreement, but the Debtors' own projections show ample

cash for BMCA to pay cash dividends to G-I, so that G-I can indemnify BMCA for the

payments under the Tax Sharing Agreement.  This circular flow of cash does not

support the necessity to extinguish a liability owed by the non-Debtors to the United

States.

Third, the Debtors threaten than Sam Heyman will walk away from this deal if

the United States' position is upheld.  (Debtors' Brief at 6, 17-18.)  Given the eight years

of exclusivity the Court granted the Debtors and Mr. Heyman to propose a Plan, it

would be necessary and certainly reasonable to allow time for any sort of open bidding

or proposals before concluding that Mr. Heyman's contributions are, in fact, a necessity.

**E.   THE COURT SHOULD STAY ITS RULING PENDING APPEAL**.

The United States respectfully requests that should this Court overrule all of the

United States' objections, it nevertheless stay the effective date of the Plan pending

resolution of any appeal.  Otherwise, the reviewing courts might invoke the doctrine of

equitable mootness.  *See, e.g.*, *In re Zenith Electronics Corp.*, 329 F.3d 338, 343-347 (3d Cir.

2003) (reversing the district court's finding of equitable mootness, but reaffirming that

the doctrine of equitable mootness exists in the Third Circuit).  If they do so, the United

States will be irreparably harmed.

## CONCLUSION

The Debtors cannot have their cake, and have the non-Debtors eat it too.  The

Debtors have chosen to keep their non-Debtor affiliates out of bankruptcy for almost a

decade and must now face the consequences of that decision.  For the reasons set forth

above and for the reasons set forth in the United States' Second, Amended Objection to

Confirmation, the Court should not confirm the eighth amended chapter 11 plan of

reorganization submitted by the Debtors, Asbestos Claimants Committee, and Legal

Representative.

Date:  October 9, 2009

> Respectfully submitted,
>
> RALPH MARRA, JR
> Acting United States Attorney
>
> SUSAN STEELE
> Assistant U. S. Attorney
>
>   _/s/ JAN M. GEHT_____
> JAN M. GEHT (JMG 3272)
> ARI D. KUNOFSKY (ADK 4289)
> Trial Attorneys
> Tax Division, U.S. Department of Justice
> Post Office Box 227
> Washington, D.C. 20044
> Phone:  (202) 307-6449
> Fax:  (202) 514-6866
> Email:  jan.m.geht@usdoj.gov[11]

---

[11] The Tax Division of the Justice Department represents the United States in connection with the Internal Revenue Service's claims against the Debtors.  Nothing herein should be read to imply any limitation on claims that the Environment and Natural Resources Division ("ENRD") of the Justice Department may assert on behalf of the Environmental Protection Agency (EPA), and other Federal agencies represented by ENRD, nor to imply that such Federal agencies take any position with respect to this matter.

4092613.3

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that I caused service of the foregoing *Response* to be

made on October 9, 2009 via ECF to all counsel of record.


/s/ Jan. M. Geht_____
JAN M. GEHT

4092613.3