UNITED STATES DISTRICT COURT
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| G-I HOLDINGS INC., et al., | District Court Case No. 09-cv-05031 (GEB)<br>Hon. Garrett E. Brown Jr., U.S.D.J. |
| Debtors. | Case Nos. 01-30135 (RG) and 01-38790 (RG)<br>(Jointly Administered) |
| | Hon. Rosemary Gambardella, U.S.B.J. |

**ORDER CONFIRMING EIGHTH AMENDED JOINT PLAN
OF REORGINIZATION OF G-I HOLDINGS INC. AND ACI INC.
<u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

# TABLE OF CONTENTS

**Page**

I.      JURISDICTION AND VENUE. ...................................................................5

II.     MODIFICATIONS TO THE PLAN. ............................................................5

III.    CONFIRMATION OF THE PLAN...............................................................6

      A.      CONFIRMATION. ...........................................................................6

      B.      REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION. ...................6

      C.      CONDITIONS TO EFFECTIVE DATE AND SUBSTANTIAL
            CONSUMMATION OF THE PLAN. .......................................................7

      D.      EFFECTS OF CONFIRMATION. ..........................................................7

IV.     APPROVAL, MODIFICATION AND EXECUTION OF PLAN-RELATED
       DOCUMENTS.......................................................................................7

V.      CLAIMS BAR DATES AND OTHER CLAIMS MATTERS. ...........................8

      A.      BAR DATE FOR ADMINISTRATIVE EXPENSE CLAIMS. ............................8

      B.      BAR DATE FOR PROFESSIONAL FEE CLAIMS. ............................................9

      C.      BAR DATE FOR REJECTION DAMAGES CLAIMS.......................................10

      D.      ENFORCEMENT OF BAR DATES.............................................................11

VI.     EXECUTORY CONTRACT AND UNEXPIRED LEASE PROVISIONS AND
       RELATED PROCEDURES. ......................................................................11

VII.    CONTINUATION OF COMPENSATION AND BENEFIT PROGRAMS....................13

VIII.   CONTINUATION OF RETIREE BENEFITS. ................................................14

IX.     CONTINUATION OF INDEMNIFICATION AND REIMBURSEMENT
       OBLIGATIONS....................................................................................14

X.      DISTRIBUTIONS UNDER THE PLAN. ......................................................15

      A.      DISTRIBUTIONS AND DISTRIBUTIONS AGENT.........................................15

      B.      RECORD DATE...............................................................................15

      C.      SETOFFS......................................................................................15

i

XI.     MATTERS RELATING TO IMPLEMENTATION OF THE PLAN. ...........................16

        A.      APPROVAL OF THE GLOBAL SETTLEMENT................................................16

        B.      GENERAL AUTHORIZATION. ........................................................................16

        C.      TITLE TO ASSETS.............................................................................................18

        D.      TRANSFERS. ......................................................................................................19

        E.      INSURANCE........................................................................................................19

        F.      ISSUANCE OF EQUITY OF THE REORGANIZED DEBTORS. ....................20

        G.      CORPORATE GOVERNANCE AND MANAGEMENT OF
                REORGANIZED DEBTORS. ..............................................................................21

        H.      CREATION OF ASBESTOS TRUST. .................................................................21

        I.      APPOINTMENT OF ASBESTOS TRUSTEES. ..................................................22

        J.      TRANSFERS OF PROPERTY AND RIGHTS TO AND ASSUMPTION
                OF CERTAIN LIABILITIES BY THE ASBESTOS TRUST. ............................22

        K.      OTHER FUNDING FOR THE PLAN. ................................................................27

        L.      EXEMPTIONS FROM TAXATION. ..................................................................27

        M.      EXEMPTIONS FROM SECURITIES LAWS.....................................................28

        N.      DELIVERY OF DOCUMENTS..........................................................................28

        O.      CANCELLATION OF EXISTING SECURITIES AND AGREEMENTS..........28

XII.    RELEASES AND EXCULPATION PROVISIONS............................................................29

XIII.   DISCHARGE AND INJUNCTIONS. .................................................................................29

        A.      DISCHARGE OF CLAIMS. ...............................................................................29

        B.      INJUNCTIONS. ...................................................................................................29

XIV.    ISSUES RELATED TO PLAN AND CONFIRMATION OBJECTIONS......................34

        A.      RESOLUTION OF ISSUES RELATED TO PLAN. ..........................................34

        B.      RESOLUTION OR OVERRULING OF CONFIRMATION
                OBJECTIONS......................................................................................................34

ii

XV.     ASBESTOS CLAIMANTS COMMITTEE AND LEGAL REPRESENTATIVE. ..........35

XVI.    RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT AND
        THE DISTRICT COURT. ...........................................................................................36

        A.      RETENTION OF EXCLUSIVE JURISDICTION BY THE
                BANKRUPTCY COURT. ......................................................................36

        B.      NON-CORE JURISDICTION. ..............................................................37

        C.      JURISDICTION OVER TAX CLAIM LITIGATION. .........................37

        D.      JURISDICTION RELATING TO ISP. .................................................37

XVII.   MISCELLANEOUS. .......................................................................................37

XVIII.  NOTICE OF ENTRY OF CONFIRMATION ORDER. ..................................40

XIX.    NO JUST CAUSE FOR DELAY. ..................................................................41

NY3 3037069.13 315183 000001 9/29/2009 07:29pm

# TABLE OF EXHIBITS

| Exhibit | Exhibit Name |
|---------|-------------|
| A | Plan |
| B | Modifications to the Plan |
| C | List of Affiliates that are Protected Parties |
| D | Confirmation Notice |
| E | Confirmation Notice – Publication Version |

**ORDER CONFIRMING EIGHTH AMENDED JOINT PLAN
OF REORGINIZATION OF G-I HOLDINGS INC. AND ACI INC.
<u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

The Second Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI

Inc. Pursuant to Chapter 11 of the Bankruptcy Code, dated December 3, 2008 (the "<u>Second</u>

<u>Amended Plan</u>"), as thereafter amended pursuant to several modifications (the "<u>Modifications</u>")

to the Second Amended Plan, including a Third Amended Plan filed on July 2, 2009, a Fourth

Amended Plan filed on July 28, 2009, a Fifth Amended Plan filed on August 19, 2009, a Sixth

Amended Plan filed on September 9, 2009, a Seventh Amended Plan filed on September 29,

2009, and an Eighth Amended Plan filed October 5, 2009 (all of the Modifications collectively

reflected in the Eighth Amended Plan, the "<u>Plan</u>"),[1] having been filed with the Bankruptcy Court

by G-I Holdings Inc. ("<u>G-I</u>") and its affiliate ACI Inc. ("<u>ACI</u>" and, together with G-I, the

"<u>Debtors</u>" and, after the Effective Date, the "<u>Reorganized Debtors</u>"); and the Plan having been

jointly proposed by the Debtors, the statutory asbestos claimants committee (the "<u>Asbestos</u>

<u>Claimants Committee</u>"), consisting of the individuals and entities appointed on January 18, 2001

by the United States Trustee for the District of New Jersey (the "<u>United States Trustee</u>"), and C.

Judson Hamlin, the Legal Representative of Present and Future Holders of Asbestos Related

Demands appointed by the Bankruptcy Court pursuant to its order dated October 10, 2001 (the

"<u>Legal Representative</u>" and, collectively with the Debtors and the Asbestos Claimants

Committee, the "<u>Plan Proponents</u>"); and the Court having entered, pursuant to *inter alia*, section

---

[1] Capitalized terms and phrases used but not otherwise defined herein have the meanings ascribed to such terms in
the Plan. The rules of interpretation set forth in Section 1.3 of the Plan apply to this Order (the "<u>Confirmation</u>
<u>Order</u>"). In accordance with Section 1.2 of the Plan, any term used in the Plan or this Confirmation Order that is not
defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code, has the meaning of that term
in the Bankruptcy Code. Citations to the Bankruptcy Code and Rules are to the sections and rules as numbered and
in effect prior to October 17, 2005.

A copy of the Plan (without the exhibits thereto) is attached hereto as Exhibit A and incorporated herein by
reference.

1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b), after due notice and hearing, the

Order dated December 5, 2008 (the "Disclosure Statement and Solicitation Procedures Order"),

by which the Bankruptcy Court, among other things, (i) approved the First Amended Disclosure

Statement For Second Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc.

Pursuant to Chapter 11 of the United States Bankruptcy Code, dated December 3, 2008 (the

"Disclosure Statement"), (ii) established procedures for the solicitation and tabulation of votes to

accept or reject the Plan, and approved the forms of ballots to be used in connection therewith

and (iii) scheduled a hearing to commence on January 28, 2009 (the "Confirmation Hearing") to

consider confirmation of the Plan; and an affidavit of service having been executed by Epiq

Bankruptcy Solutions, LLC ("Epiq"), in its capacity as the Bankruptcy Court-appointed

solicitation and voting tabulation agent, attesting to the mailing of the notice of the Confirmation

Hearing and solicitation materials in respect of the Plan in accordance with the Disclosure

Statement and Solicitation Procedures Order (the "Affidavit of Service") and filed with the

Bankruptcy Court on December 17, 2008; and the affidavits and certifications (the "Publication

Affidavits") regarding the publication of the notices of the Confirmation Hearing in various

publications having been filed on January 29, 2009, as required by the Disclosure Statement and

Solicitation Procedures Order; and due notice of the Confirmation Hearing having been given to

holders of Claims against and Equity Interests in the Debtors and to other parties in interest, all

in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement

and Solicitation Procedures Order; and upon certification of the voting tabulation compiled by

Epiq (the "Voting Declaration") reflecting that the requisite votes were obtained to support

confirmation of the Plan; and the Bankruptcy Court having entered an Amended Plan

Confirmation Scheduling Order (the "Amended Scheduling Order") on July 1, 2009 pursuant to

which the Bankruptcy Court, among other things, (i) established various deadlines for fact

discovery and admissions relating to confirmation of the Plan, (ii) set September 4, 2009 as the

deadline for parties in interest to file any objections to the Plan, and (iii) set September 30, 2009

at 11 a.m., prevailing Eastern time, for commencement of the Confirmation Hearing; and

objections to the confirmation of the Plan having been filed on or before September 4, 2009 by

(i) United States Gypsum Company; (ii) Pfizer Inc.; (iii) Quigley Company, Inc.; (iv) the State of

Illinois; (v) Century Indemnity Company (which objection was subsequently withdrawn); (vi)

the United States Of America, Department of Justice, Tax Division (the "IRS"), (vii) Continental

Casualty Company (which objection was subsequently withdrawn), (viii) New York City

Housing Authority; (ix) Los Angeles Unified School District; and (x) Owens-Illinois Inc. (which

objection was subsequently withdrawn) (collectively, the "Confirmation Objections"); and the

Confirmation Hearing having been held on September 30, 2009 and October 1, 5, 6, and 15,

2009; and the appearances of all interested parties having been noted in the record of the

Confirmation Hearing, including the exhibits which were admitted into evidence (Docket No.

9665); and upon the testimony of all witnesses and other evidence propounded at the

Confirmation Hearing; and upon (i) the memorandum of law in support of confirmation of the

Plan filed by the Debtors on September 24, 2009 (Docket No. 9593), (ii) the declarations of C.

Judson Hamlin and Michael Tannenbaum, together with the various exhibits and attachments

thereto, filed by the Plan Proponents in support of the Plan (together, the "Declarations"), (iii)

the expert report of Stephen F. Cooper, dated August 5, 2009 (the "Cooper Report"), (iv) the

expert report of Daniel Beaulne, dated August 6, 2009, submitted by the IRS in opposition to the

Plan (the "Beaulne Report"), (v) the rebuttal expert report of Stephen F. Cooper, dated August

20, 2009 (the "Cooper Rebuttal Report"), submitted in response to the Beaulne Report (the

Cooper Report, Beaulne Report and Cooper Rebuttal Report are referred to collectively as the

"Expert Reports"), (vi) the supplemental brief in support of confirmation of the Plan filed by the

Debtors on October 5, 2009 (Docket No. 9646), (vii) the response of the IRS to the Debtors'

supplemental brief in support of confirmation filed October 9, 2009 (Docket No. 9659), and

(viii) the reply of the Debtors in further support of confirmation of the Plan filed by the Debtors

on October 13, 2009 (Docket Nos. 9660 and 9661); and upon the Motion for Partial Summary

Judgment on Its First Objection to Confirmation filed by the IRS on January 23, 2009; and the

Debtors having filed the Plan Supplement on September 18, 2009 containing certain schedules

and exhibits to the Plan; and the Debtors having submitted a list of exhibits in support of the Plan

on September 18, 2009 and the Debtors having filed an amendment to such list on September 21,

2009; and upon the arguments of counsel and the full record in these Chapter 11 Cases; and upon

the District Court's partial withdrawal of the reference of the Confirmation Hearing pursuant to

28 U.S.C. § 157(d) to enable the Bankruptcy Court and the District Court to preside jointly over

confirmation and issue the Confirmation Order; and the Court[2] having taken judicial notice of the

papers and pleadings on file and prior hearings in these Chapter 11 Cases; and after due

deliberation and sufficient cause appearing therefor; it is hereby

---

[2] All references to "the Court" in this Confirmation Order means the Bankruptcy Court and the District Court together, as jointly presiding over the Confirmation Hearing and issuing this Confirmation Order concurrently.

**ORDERED, ADJUDGED AND DECREED**:

I.    **JURISDICTION AND VENUE.**

1.    The Court has subject matter jurisdiction to confirm the Plan pursuant to 28 U.S.C. §1334.

2.    Venue of the Chapter 11 Cases is proper in the district of New Jersey pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

II.    **MODIFICATIONS TO THE PLAN.**

4.    The Modifications to the Plan do not materially and adversely affect the treatment of any accepting impaired Class of Claims against or Equity Interests in the Debtors under the Plan.  The Modifications to the Plan are either technical changes or clarifications that (i) do not materially or adversely change the treatment of the Claim of any creditor of the Debtors, (ii) have been consented to by the entities affected thereby or (iii) have been ruled on by the Court and approved in all respects.  The Debtors are authorized to take any and all steps and actions necessary to implement or effectuate any of the transactions or other matters set forth in the Plan, as the same has been modified.  (A blackline reflecting all of the Modifications since the filing of the Second Amended Plan is attached hereto as Exhibit B.)

5.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims against the Debtors who voted to accept the Second Amended Plan are deemed to have accepted the Eighth Amended Plan, as modified.

6.    The filing of the Modifications and the service of the same constitute due and sufficient notice thereof.

7.      The Plan complies with section 1127 of the Bankruptcy Code and the Modifications to the Plan are approved in all respects.

### III.    CONFIRMATION OF THE PLAN.

#### A.    CONFIRMATION.

8.      The Plan complies fully with sections 1122 and 1123 of the Bankruptcy Code.  The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.

9.      The Plan, inclusive of all exhibits and schedules thereto and the Plan Supplement, is CONFIRMED.

#### B.    REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION.

10.      The Plan shall become null and void in all respects if the Effective Date does not occur by the last date permitted by the definition thereof unless each Plan Proponent, in its sole and absolute discretion, executes and files with the Bankruptcy Court a written notice waiving the foregoing requirement of Plan effectiveness.

11.      The revocation, withdrawal, or non-consummation of the Plan for any reason whatsoever shall not be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings pending in, arising in, or relating to the Chapter 11 Cases.

12.      If the Effective Date does not occur and the Plan becomes null and void, the parties shall be returned to the positions they would have held had the Confirmation Order not been entered, and nothing in the Plan, the Disclosure Statement, any of the Plan Documents, or any pleading filed or statement made in Court with respect to the Plan or the Plan Documents shall be deemed to constitute an admission or waiver of any sort or in any way limit, impair, or alter the rights of any Entity.

6

## C.    CONDITIONS TO EFFECTIVE DATE AND SUBSTANTIAL CONSUMMATION OF THE PLAN.

13.    Nothing in this Confirmation Order shall in any way affect the provisions of Sections 10.1 and 10.2 of the Plan, which establish (1) the conditions precedent to the Effective Date of the Plan and (2) the circumstances under which any such provisions may be waived.  If a condition to the occurrence of the Effective Date set forth in Section 10.1 of the Plan cannot be satisfied, and the occurrence of such condition is not waived in writing by the parties as set forth in Section 10.2 of the Plan, then the Plan shall be of no force and effect. Upon the satisfaction or waiver of the conditions contained in Section 10.1 of the Plan and the occurrence of the Effective Date, substantial consummation of the Plan, within the meaning of sections 1101 and 1127(b) of the Bankruptcy Code, is deemed to have occurred.

14.    The Court has made the findings of fact and conclusions of law contemplated by Section 10.1(a) of the Plan for issuance of this Confirmation Order.

## D.    EFFECTS OF CONFIRMATION.

15.    From and after the Effective Date, the terms of the Plan and this Confirmation Order shall be binding upon all Persons and parties in interest, including the Debtors, the Reorganized Debtors, any and all holders of Claims and Equity Interests (irrespective of whether such Claims and Equity Interests are impaired under the Plan or whether the holders of such Claims and Equity Interests accepted, rejected or are deemed to have accepted or rejected the Plan).

## IV.    APPROVAL, MODIFICATION AND EXECUTION OF PLAN-RELATED DOCUMENTS.

16.    The Plan, the Plan Supplement, and all exhibits and schedules thereto, substantially in the form as they exist at the time of the entry of this Confirmation Order, including, without limitation, the documents relating to the Asbestos Trust, and each of the other

Plan-Related Documents (as such capitalized term is defined in Section XI.B of this Confirmation Order), are approved in all respects.  All relevant parties, including the Debtors, the Reorganized Debtors and the Asbestos Trustees, shall be authorized, without further action by the Bankruptcy Court, to enter into and effectuate, to the extent applicable, and perform under the Plan-Related Documents, notwithstanding that the efficacy of such documents may be subject to the occurrence of the Effective Date.

17.    The Plan Proponents are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code and Section 12.1 of the Plan.  Without the need for a further order or authorization of the Court or further notice to any Persons, but subject to the express provisions of this Confirmation Order and Section 12.1 of the Plan, the Debtors are authorized and empowered to take such actions and sign such documents as are necessary or desirable to consummate the Plan as long as such actions and documents do not produce a materially adverse change to impaired creditors under the Plan.

## V.    CLAIMS BAR DATES AND OTHER CLAIMS MATTERS.

### A.    BAR DATE FOR ADMINISTRATIVE EXPENSE CLAIMS.

18.    Except as otherwise provided in the Plan, all requests for payment of an Administrative Expense Claim shall be filed with the Bankruptcy Court and served on the United States Trustee and attorneys for the Debtors at the addresses set forth in Section 13.18 of the Plan not later than thirty (30) days after the Effective Date (the "Administrative Expense Claims Bar Date").  Unless the United States Trustee, Debtors or Reorganized Debtors object to an Administrative Expense Claim within forty-five (45) days after receipt of a request for payment, such Administrative Expense Claim shall be deemed Allowed in the amount requested.  If the United States Trustee, Debtors or Reorganized Debtors object to an Administrative Expense

8

Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative

Expense Claim; *provided*, *however*, that the United States Trustee, Debtors or Reorganized

Debtors, as applicable, and the applicant may resolve such objection by stipulation, without

further action of the Bankruptcy Court.  Notwithstanding the foregoing, no request for payment

of an Administrative Expense Claim need be filed with respect to an Administrative Expense

Claim which is paid or payable by a Debtor in the ordinary course of business.

19.     To the extent that an Administrative Expense Claim is Allowed against the

Debtors, there shall be only a single recovery on account of such Allowed Claim; *provided,*

*however*, that an Entity holding an Allowed Claim against each of the Debtors as co-obligors on

such Claim may recover distributions from any such Debtor until such Entity has received

payment in full on such Allowed Claim.

## B.     BAR DATE FOR PROFESSIONAL FEE CLAIMS.

20.     All holders of any Claim for an award by the Bankruptcy Court of

compensation for services rendered or reimbursement of expenses incurred through and

including the Effective Date pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of

the Bankruptcy Code shall (i) file their respective applications for final allowances of

compensation for services rendered and reimbursement of expenses incurred through the

Effective Date by a date no later than ninety (90) days after the Effective Date (the "Professional

Fees Bar Date"), and (ii) if granted such an award by the Bankruptcy Court, be paid in full such

amounts as are Allowed by the Bankruptcy Court (A) on or before the fifth business day after the

date on which such Administrative Expense Claim becomes an Allowed Administrative Expense

Claim, or (B) upon such other terms as may be mutually agreed upon between such holder of an

Administrative Expense Claim and the Reorganized Debtors.  To the extent, if any, that the Debtors

withheld amounts awarded as interim compensation during the Chapter 11 Cases and such

9

amounts are within the final compensation and reimbursement awarded by the Court, the Reorganized Debtors shall pay all such withheld amounts on or before the fifth business day after which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

## C. BAR DATE FOR REJECTION DAMAGES CLAIMS.

21.    Pursuant to Section 7.1 of the Plan, any executory contract or unexpired lease not set forth on Schedule 7.1 of the Plan Supplement that has not expired by its own terms on or prior to the Confirmation Date, which has not been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which is not the subject of a motion to assume and assign or reject as of the Confirmation Date, shall be deemed rejected by the Debtors-in-Possession on the Confirmation Date and the entry of this Confirmation Order shall constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code, *provided, however*, that the Debtors have the right, at any time prior to the Effective Date, to amend Schedule 7.1 to (a) delete any executory contract or unexpired lease listed therein, thus providing for its rejection; or (b) add any executory contract or unexpired lease to Schedule 7.1, thus providing for its assumption, or assumption and assignment. The Debtors shall provide notice of any amendments to Schedule 7.1 to the parties to the executory contracts and unexpired leases affected thereby.

22.    If the rejection of an executory contract or unexpired lease by the Debtors-in-Possession pursuant to Section 7.1 of the Plan results in damages to the other party or parties to such contract or lease, any claim for such damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties, agents, successors, or assigns, unless a proof of claim is filed with the Debtors' court-appointed claims agent or with the Bankruptcy Court and served upon the Debtors or Reorganized Debtors at the addresses set forth in Section 13.18 of the Plan on or before thirty

10

(30) days after the latest to occur of (a) the Confirmation Date, (b) the date of entry of an order

by the Bankruptcy Court authorizing rejection of such executory contract or unexpired lease, and

(c) any date before the Effective Date that the Debtors delete such executory contract or

unexpired lease from the list of executory contracts and unexpired leases set forth in Schedule

7.1 of the Plan Supplement and provide notice of any amendments to Schedule 7.1 to the parties

to the executory contracts and unexpired leases affected thereby ("Contract Rejection Bar

Date").

### D. ENFORCEMENT OF BAR DATES.

23. In accordance with section 502(b)(9) of the Bankruptcy Code, any Person

or Entity that fails to file a proof of Claim by the Administrative Expense Claims Bar Date,

Professional Fees Bar Date, Contract Rejection Bar Date or any other bar dates established in

these Chapter 11 Cases (collectively, the "Bar Dates"), or was not otherwise permitted to file a

proof of Claim after the applicable Bar Date by a Final Order of the Bankruptcy Court, is and

shall be barred, estopped, and enjoined from asserting any Claim against the Debtors (i) in an

amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such

Entity as undisputed, noncontingent and liquidated; or (ii) of a different nature or a different

classification than any Claim identified in the Schedules on behalf of such Entity.

### VI. EXECUTORY CONTRACT AND UNEXPIRED LEASE PROVISIONS AND RELATED PROCEDURES.

24. Each executory contract and unexpired lease identified in Schedule 7.1 to

the Plan Supplement shall be deemed assumed in accordance with Section 7.1 of the Plan and

entry of this Confirmation Order constitutes approval of such assumptions pursuant to section

365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that assumption of such

11

contracts and unexpired leases is in the best interest of the Debtors, their bankruptcy estates, and all parties in interest in the Chapter 11 Cases.

25.    Except as may otherwise be agreed to by the parties, on or before the thirtieth (30th) day after the Effective Date, provided the non-debtor party to any assumed executory contract or unexpired lease has timely filed a proof of claim with respect to any cure amount due under the contract or lease, the Reorganized Debtors shall cure any and all undisputed defaults under each executory contract and unexpired lease assumed by the Debtors pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code.  All disputed defaults required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties.  Unless a proof of claim was timely filed with respect thereto, all cure amounts and all contingent reimbursement or indemnity claims for prepetition amounts expended by the non-debtor parties to assumed executory contracts and unexpired leases are discharged by the entry of this Confirmation Order.

26.    In accordance with Section 7.2 of the Plan, each of the Debtors' insurance policies, and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and are deemed assumed pursuant to the Plan, effective as of the Effective Date.  Entry of this Confirmation Order constitutes approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that assumption of the insurance policies is in the best interest of the Debtors, their bankruptcy estates, and all parties in interest in the Chapter 11 Cases; *provided, however*, nothing contained in this paragraph or the Plan shall constitute or be deemed a waiver of any cause of action the

Debtors may hold against any Entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

27. All of the Debtors' settlement agreements with insurance companies entered into during the pendency of the Chapter 11 Cases and the related pleadings filed in support of such settlement agreements are herein specifically incorporated into Section 7.2 of the Plan.

28. In accordance with section 365 of the Bankruptcy Code, entry of this Confirmation Order constitutes approval and authorization of the Debtors' assumption and assignment to Building Materials Corporation of America of the Peak Oil Site Remediation Action Agreement, dated November 1, 1994 (the "Peak Oil Contract") identified on Schedule 7.1 of the Plan Supplement and a finding by the Bankruptcy Court that (i) assumption and assignment of the Peak Oil Contract is in the best interest of the Debtors and their bankruptcy estates and (ii) the assignee has provided adequate assurance of future performance in accordance with the Peak Oil Contract.

## VII. CONTINUATION OF COMPENSATION AND BENEFIT PROGRAMS.

29. Except as provided in Section 7.1 of the Plan, the Debtors' existing pension plans and all savings plans, retirement plans, health care plans, performance-based incentive plans, retention plans, workers' compensation programs and life, disability, directors and officers liability, and other insurance plans are treated as executory contracts under the Plan and shall, on the Effective Date, be deemed assumed by the Debtors in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code. On and after the Effective Date, all Claims submitted for payment in accordance with the foregoing benefit programs, whether submitted prepetition or postpetition, shall be processed and paid in the ordinary course of business of the Reorganized Debtors, in a manner consistent with the terms and provisions of such benefit

13

programs.  Nothing in this Confirmation Order, the Plan, the Bankruptcy Code (including section

1141 thereof), or any other document filed in any of the Debtors' bankruptcy cases shall be

construed to discharge, release or relieve the Debtors, the Reorganized Debtors, or any other

party, in any capacity, from any liability or responsibility with respect to the Retirement Plan for

Hourly Paid Employees of Building Materials Corporation of America ("Pension Plan") under

any law, governmental policy, or regulatory provisions.  PBGC and the Pension Plan shall not be

enjoined or precluded from enforcing such liability or responsibility as a result of any of the

provisions of the Plan, including those providing for satisfaction, release, and discharge of

claims, the Confirmation Order, the Bankruptcy Code (and section 1141 thereof), or any other

document filed in any of the Debtors' bankruptcy cases.

## VIII.  CONTINUATION OF RETIREE BENEFITS.

30.    On and after the Effective Date, pursuant to section 1129(a)(13) of the

Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the

Debtors (within the meaning of section 1114 of the Bankruptcy Code), if any, at the level

established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the

Confirmation Date, for the duration of the period for which the Debtors had obligated themselves

to provide such benefits.

## IX.  CONTINUATION OF INDEMNIFICATION AND REIMBURSEMENT OBLIGATIONS.

31.    The obligations of the Debtors to indemnify and reimburse persons who

are or were directors, officers, or employees of any of the Debtors on the Commencement Date

or at any time thereafter against and for any obligations (including, without limitation, fees and

expenses incurred by the board of directors of any of the Debtors, or the members thereof, in

connection with the Chapter 11 Cases) pursuant to articles of incorporation, codes of regulations,

bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall

survive confirmation of the Plan, remain unaffected hereby, and not be discharged in accordance

with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or

reimbursement is owed in connection with an event occurring before, on, or after the

Commencement Date.

## X.    DISTRIBUTIONS UNDER THE PLAN.

### A.    DISTRIBUTIONS AND DISTRIBUTIONS AGENT.

32.    The Distributions, as well as all procedures relating thereto, shall be made

pursuant to Article V and VI of the Plan.

33.    Reorganized G-I or its designee shall act as the Disbursing Agent.  All

Distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall

be empowered to (a) take all steps and execute all instruments and documents necessary to

effectuate the Plan, (b) make Distributions contemplated by the Plan, (c) comply with the Plan

and the obligations thereunder, and (d) exercise such other powers as may be vested in the

Disbursing Agent pursuant to the order of the Bankruptcy Court, pursuant to the Plan or as

deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the

Plan.

### B.    RECORD DATE.

34.    The record date for determining the holders of Allowed Claims and

Allowed Equity Interests entitled to receive Distributions under the Plan shall be the

Confirmation Date.

### C.    SETOFFS.

35.    The Reorganized Debtors are authorized, pursuant to applicable

bankruptcy and nonbankruptcy law, to set off against any Allowed Claim and the distributions to

be made pursuant to the Plan on account thereof (before any distribution is made on account of

such Claim), the claims, rights and causes of action of any nature the Debtors or the Reorganized

Debtors hold against the holder of such Allowed Claim; *provided, however*, that neither the

failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release

by the Debtors or the Reorganized Debtors of any such claims, rights and causes of actions that

the Debtors or the Reorganized Debtors may possess against such holder.

## XI.     MATTERS RELATING TO IMPLEMENTATION OF THE PLAN.

### A.     APPROVAL OF THE GLOBAL SETTLEMENT.

36.     The global settlement and compromise and all other settlements embodied

in the Plan are approved in all respects.  On the Effective Date, such compromises and

settlements shall be binding upon the Debtors, all creditors, all holders of Equity Interests and

other Persons, Entities, and parties in interest.

### B.     GENERAL AUTHORIZATION.

37.     Pursuant to sections 1123 and 1142 of the Bankruptcy Code and any

comparable provisions of the applicable business corporation law of any state (collectively, the

"Reorganization Effectuation Statutes"), without further action by the Bankruptcy Court, the

stockholders, members, managers or board of directors of each Debtor or Reorganized Debtor, as

well any other appropriate officer of each Debtor or Reorganized Debtor (collectively, the

"Responsible Officers"), are hereby authorized to: (a) take any and all actions necessary or

appropriate to implement, effectuate and consummate the Plan, this Confirmation Order and the

transactions contemplated thereby or hereby, including, without limitation, each of the other

transactions identified in Article IV of the Plan and each of the transactions contemplated by or

referenced in the Plan-Related Documents; and (b) enter into, execute and deliver, assign, adopt

or amend, as the case may be, the Plan-Related Documents in accordance with their terms.

16

38. For purposes of this Confirmation Order, "Plan-Related Documents" shall include all contracts, instruments, releases, agreements and documents related to, or necessary to implement, effectuate and consummate, the Plan, including, but not limited to: (i) the Plan Documents, including, but not limited to, (a) each of the agreements and documents to be executed and delivered in connection with the Asbestos Trust, including, without limitation, the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures, (b) the Collateral Agency Agreement, (c) the Holdings Pledge Agreement, (d) the Trust Note, (e) the Letter of Credit, (f) Reorganized Debtors' Certificates of Incorporation, (g) Reorganized Debtors' By-Laws, and (h) the Cooperation Agreement; and (ii) all other contracts, instruments, agreements and documents to be executed and delivered by a Debtor or Reorganized Debtor in connection therewith.

39. To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders or directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall, pursuant to sections 1123(a)(5) and 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors and stockholders of the appropriate Debtor or Reorganized Debtor.

40. Without the need for further order or authorization of the Court, the Plan Proponents are authorized and empowered to make any and all modifications to any and all Plan-Related Documents that do not materially modify the terms of such documents adversely to any impaired creditor of the estates or any Plan Proponent, and are consistent with the Plan.

NY3 3037069.13 315183 000001 9/29/2009 07:29pm

41.    The approvals and authorizations specifically set forth in this Confirmation Order are non-exclusive and are not intended to limit the authority of a Debtor or Reorganized Debtor or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order, the Plan-Related Documents or the transactions contemplated thereby or hereby.  In addition to the authority to execute and deliver, adopt or amend, as the case may be, the contracts, instruments, releases and other agreements, including, without limitation, the Plan-Related Documents, specifically granted in this Confirmation Order, each of the Debtors and the Reorganized Debtors is authorized and empowered, without further action in the Court or further action or consent by its directors, managers, trustees, members or stockholders, to take any and all such actions as any of its officers, managers or employees may determine are necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order, the Plan-Related Documents or the transactions contemplated thereby or hereby.

## C.    TITLE TO ASSETS.

42.    Except as otherwise provided in the Plan and the Plan-Related Documents, upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the estates of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests created prior to the Effective Date. From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided in the Plan.

NY3 3037069.13 315183 000001 9/29/2009 07:29pm

## D.    TRANSFERS.

43.    Each of the transfers of property of the Debtors or Reorganized Debtors, as the case may be, pursuant to the Plan: (a) are or shall be deemed to be legal, valid and effective transfers of property; (b) shall not constitute, or be construed to be, avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy law; and (c) shall not subject the Debtors or the Reorganized Debtors, as the case may be, to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

## E.    INSURANCE.

44.    Notwithstanding anything to the contrary in this Confirmation Order, the Plan, or any Plan Document, nothing in this Confirmation Order, the Plan, or any of the Plan Documents (including any other provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing, in any respect, the legal, equitable, or contractual rights, if any, of any Entity that issued any insurance policies (the "Policies"), including but not limited to Policies issued to GAF Corporation, The Ruberoid Company, or any of the Debtors or their predecessors, and the various agreements related to the Policies (together, with the Policies, the "Insurance Agreements"), under or in connection with such Insurance Agreements.  Nothing in the Plan or this Confirmation Order shall preclude any Entity from asserting in any proceeding any and all claims, defenses, rights, or causes of action that such Entity has or may have under or in connection with any of the Insurance Agreements or otherwise.  Nothing in the Plan or this Confirmation Order shall be deemed to waive any claims, defenses, rights, or causes of action that any Entity has or may have under the provisions, terms, conditions, defenses and/or exclusions contained in the Insurance Agreements, including, but not

19

limited to any and all claims, defenses, rights, or causes of action based upon or arising out of

Claims that are liquidated, resolved, discharged, channeled, or paid in connection with the Plan.

### F.    ISSUANCE OF EQUITY OF THE REORGANIZED DEBTORS.

45.    Pursuant to the appropriate provisions of applicable state laws governing

corporations or other legal entities and sections 1123 (including, without limitation, sections

1123(a)(5)(B) and (a)(5)(J)), 1141 and 1142(b) of the Bankruptcy Code, the Debtors or, as the

case may be, the Reorganized Debtors and Holdings are hereby authorized to do the following:

(a) prior to the Effective Date, Holdings shall cancel all Equity Interests in G-I (but not the G-I

Class B Shares) for good and valuable consideration as part of the global settlement referred to in

Section 4.1 of the Plan, and G-I shall authorize and issue to Holdings the G-I Class B Shares,

which, on the Effective Date, shall represent one hundred percent (100%) of the equity interest in

Reorganized G-I; (b) solely for purposes of ensuring ACI's recognition under Georgia corporate

law, after the Confirmation Date, but prior to the Effective Date, G-I shall form a new ACI (with

the corporate name, "New ACI Inc.") and G-I shall contribute all of its right, title and interest in

its shares of old ACI to New ACI and immediately thereafter, old ACI will be liquidated into

New ACI; (c) prior to the Effective Date, G-I shall cancel all Equity Interests in ACI (but not the

ACI Class B Shares) for good and valuable consideration as part of the global settlement referred

to in Section 4.1 of the Plan, and ACI shall authorize and issue to G-I the ACI Class B Shares,

which, on the Effective Date, shall represent one hundred percent (100%) of the equity interest in

ACI; and (d) the Debtors or, as the case may be, the Reorganized Debtors and Holdings may take

any and all steps and other actions deemed necessary or appropriate to effectuate the transactions

described in this paragraph and in accordance with the applicable terms of the Plan and this

Confirmation Order, without any further action in or by the Bankruptcy Court or any other court,

tribunal, agency or administrative proceeding, any further action or consent by its directors,

managers, trustees, members, stockholders or any other third parties, or any other notice, action, court order or process of any kind.

46.     Each federal, state and local governmental agency or department is authorized and directed to accept the filing of any document or any other actions taken in relation to the transactions described in the preceding paragraph and in accordance with the applicable terms of the Plan and this Confirmation Order.  This Confirmation Order is declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable governmental authority or department without any further orders, certificates or other supporting documents.

## G.     CORPORATE GOVERNANCE AND MANAGEMENT OF REORGANIZED DEBTORS.

47.     On the Effective Date, the management, control, and operation of the Reorganized Debtors shall become the general responsibility of the Board of Directors of the Reorganized Debtors.

48.     The members of the Board of Directors and officers of each of the Reorganized Debtors immediately before the Effective Date shall be the initial members of the Board of Directors and officers of each of the Reorganized Debtors on and after the Effective Date pursuant to Section 8.2 of the Plan and Schedule 8.2 to the Plan Supplement.

## H.     CREATION OF ASBESTOS TRUST.

49.     On the Effective Date, the Asbestos Trust shall be created in accordance with Section 4.2 of the Plan and the Asbestos Trust Agreement.  The Asbestos Trust is authorized and empowered to receive the property to be transferred to the Asbestos Trust pursuant to Section 4.4 of the Plan.

50.     Pursuant to the Reorganization Effectuation Statutes, as applicable, and other appropriate provisions of applicable state laws governing corporations or other legal entities and section 1142(b) of the Bankruptcy Code, without further action by the Bankruptcy Court or the directors, managers, partners, members or stockholders of a Reorganized Debtor or further notice to any entities, the Reorganized Debtors are authorized to execute, deliver and perform their obligations under the Asbestos Trust Agreement and to execute, deliver, file and record all such other contracts, instruments, agreements or documents and take all such other actions as any of the Responsible Officers of the Reorganized Debtors may determine are necessary, appropriate or desirable in connection therewith.  The Asbestos Trust Agreement, as in effect on the Effective Date, shall be substantially in the form of Exhibit 1.1.17 to the Plan. The Asbestos Trust Distribution Procedures shall be substantially in the form of Exhibit 1.1.18.

**I.     APPOINTMENT OF ASBESTOS TRUSTEES.**

51.     As of the Confirmation Date, the individuals identified in Exhibit 4.3 of the Plan to serve as Asbestos Trustees under the Asbestos Trust Agreement are appointed, and such appointment shall be effective as of the Effective Date.

**J.     TRANSFERS OF PROPERTY AND RIGHTS TO AND ASSUMPTION OF CERTAIN LIABILITIES BY THE ASBESTOS TRUST.**

**(i)     Transfer of Books and Records to the Asbestos Trust.**

52.     On the Effective Date or as soon thereafter as is reasonably practicable, the books and records of the Debtors that pertain directly to Asbestos Claims shall be transferred, assigned, or otherwise disposed of pursuant to the terms and provisions of a certain Cooperation Agreement to be entered into by and between the Reorganized Debtors and the Asbestos Trust on the Effective Date, a copy of which is included in the Plan Supplement as Schedule 4.4(a) thereto.

22

53.     On the date on which the CCR Payment Amount is paid to CCR,
consistent with the terms of the CCR Settlement Agreement or as soon thereafter as is
practicable, CCR shall assign to the Asbestos Trust all data and documentation concerning the
underlying Asbestos Claims and any rights and claims against G-I that CCR received by
agreement or operation of law in settling such Claims.

54.     Pursuant to the Plan and this Confirmation Order, to the extent the Debtors
or Reorganized Debtors provide any books and records under Section 4.4 of the Plan that contain
privileged information, such transfer shall not result in the destruction or waiver of any
applicable privileges pertaining to such information.

**(ii)     Funding of the Asbestos Trust.**

55.     The Reorganized Debtors and the Plan Sponsor shall fund the Asbestos
Trust in accordance with Article IV of the Plan.

56.     Pursuant to Section 4.4(c)(i) of the Plan, on the Effective Date, the
Reorganized Debtors shall make the First Payment to Asbestos Trust.

57.     Pursuant to Section 4.4(c)(ii) of the Plan, on the Effective Date,
Reorganized G-I shall execute and deliver to the Asbestos Trust the Trust Note, as well as any
and all documents and instruments related thereto and subject to Section 4.4(c)(iii) of the Plan,
the Holdings Pledge Agreement and the Letter of Credit shall be executed and delivered to the
Collateral Agent by the respective parties to such agreements and instruments.

58.     Each of the Trust Note and the Collateral Agency Agreement shall be a
valid and binding obligation of the parties thereto, in full force and effect, and enforceable in
accordance with its terms, upon execution and delivery as of the Effective Date.

59.     Subject to Section 4.4(c)(iii) of the Plan, the Holdings Pledge Agreement shall be a valid and binding obligation of each of the parties thereto, in full force and effect, and enforceable in accordance with its terms, upon execution and delivery as of the Effective Date.

60.     Subject to Section 4.4(c)(iii) of the Plan, as of the Effective Date, the Capital Stock Lien shall attach to the G-I Class B Shares and the Collateral Agent shall thereby possess a valid and enforceable security interest in such shares, upon performance of delivery requirements specified in the Holdings Pledge Agreement with respect to such pledged collateral.

61.     Pursuant to Section 4.4(c)(iii) of the Plan, on the Effective Date, Reorganized G-I or the Plan Sponsor shall provide and deliver to the Collateral Agent, or may cause other persons to provide and deliver to the Collateral Agent, a Letter of Credit in the Maximum Amount and, upon delivery of such Letter of Credit to the Collateral Agent, the Holdings Pledge Agreement shall be automatically terminated, and the Capital Stock Lien shall be immediately extinguished.

62.     Pursuant to Section 4.11 of the Plan, payment of interest and principal under the Trust Note shall initially be secured by the Capital Stock Lien, subject to Section 4.4(c)(iii) of the Plan, and on and after the Effective Date, by the Letter of Credit upon the issuance thereof.

63.     Pursuant to Section 4.4(d) of the Plan, after the Effective Date, and in addition to the First Payment to Asbestos Trust, Reorganized G-I shall make the payments set forth in the Trust Note as and when due.

64.     Pursuant to Section 4.10 of the Plan, G-I's liabilities under the Plan will be funded in part by an equity infusion into G-I of $215 million from the Plan Sponsor.

65.    The Reorganized Debtors, the Plan Sponsor, each Protected Party and their respective successors and assigns are hereby permanently enjoined from requesting any tribunal to enjoin draws on any Letter of Credit provided under the Plan for any reason, including, without limitation, if any one of them becomes a debtor under title 11 of the United States Code; *provided, however,* this provision shall not impair any of such enjoined persons' remedies if such a draw shall have been wrongful or fraudulent.

### (iii)    Assignment and Enforcement of Trust Causes of Action.

66.    On the Effective Date, by virtue of the confirmation of the Plan, without further notice, action, or deed, the Trust Causes of Action shall be automatically assigned to, and indefeasibly vested in, the Asbestos Trust, and the Asbestos Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, with the exclusive right to enforce any and all of the Trust Causes of Action against any Entity, and the proceeds of the recoveries of any such Trust Causes of Action shall be deposited in the Asbestos Trust; *provided, however*, that nothing shall alter, amend or modify the Asbestos Permanent Channeling Injunction, releases, discharges, or Supersedeas Bond Action provisions contained in the Plan.

### (iv)    Institution and Maintenance of Legal and Other Proceedings.

67.    As of the date subsequent to the Effective Date on which the Asbestos Trustees confirm in writing to the Reorganized Debtors that the Asbestos Trust is in a position to assume the responsibility, the Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Trust, including Trust Causes of Action.  The Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all such actions in the name of G-I, ACI, or any of the Reorganized Debtors if deemed necessary or appropriate by the Asbestos Trust.  The

NY3 3037069.13 315183 000001 9/29/2009 07:29pm

Asbestos Trust shall be responsible for, and shall hold the Reorganized Debtors harmless from, the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred subsequent to the Effective Date arising from or associated with any legal action or other proceeding that is the subject of this subsection.

(v)    <strong>Assumption of Certain Liabilities by the Asbestos Trust.</strong>

68.    On the Effective Date, the Asbestos Trust, subject to the terms of the Plan-Related Documents and in accordance with sections 524(g) and 1141 of the Bankruptcy Code, shall, and shall be deemed to, assume and succeed to all liability and responsibility for all Asbestos Claims; the Reorganized Debtors shall be completely discharged of such Claims and shall have no further financial or other responsibility or liability for pending or future Asbestos Claims or Demands; and all Protected Parties shall receive the protections of the Asbestos Permanent Channeling Injunction.

69.    On the Effective Date, the Asbestos Trust shall assume, and shall have exclusive liability for, any deficiency portion of a Bonded Asbestos Personal Injury Claim remaining after crediting proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled.  To the extent the Reorganized Debtors successfully prosecute or defend against a Supersedeas Bond Action resulting in the discharge or release of the relevant supersedeas bond or other payment assurance provided in connection therewith, any such recoveries shall inure to the benefit of the Reorganized Debtors.  The Reorganized Debtors shall be entitled to compromise or settle any of the Supersedeas Bond Actions; *provided, however*, that any such compromise or settlement shall require the consent of the Asbestos Trust (which consent shall not be unreasonably withheld or delayed) to the extent the compromise or settlement results in

26

there being any deficiency portion of a Bonded Asbestos Personal Injury Claim after applying

the proceeds of any supersedeas bond or equivalent form of payment assurance.

### K.    OTHER FUNDING FOR THE PLAN.

70.    Pursuant to Section 4.4(e) of the Plan, the Reorganized Debtors, in their

sole discretion, may fund any payment obligations under the Plan using (A) cash flow from BMCA,

(B) dividends from any direct or indirect subsidiary of the Reorganized Debtors, (C) contributions to

capital of the Reorganized Debtors from Plan Sponsor, (D) sales of Equity Interests in, or assets of,

the Reorganized Debtors or any of their direct or indirect subsidiaries or (E) borrowings by

Reorganized Debtors; *provided, however*, that the Cash necessary to pay holders of Allowed G-I

Non-Priority Tax Penalty Claims shall be provided by ISP.

### L.    EXEMPTIONS FROM TAXATION.

71.    Pursuant to section 1146(c)[3] of the Bankruptcy Code, (i) the issuance,

transfer or exchange of notes, equity interests or other plan securities pursuant to the Plan or any

of the Plan-Related Documents, the creation of any mortgage, deed of trust, or other security

interest, the making or assignment of any lease or sublease, or the making or delivery of any

deed or other instrument of transfer under, in furtherance of, or in connection with the Plan or

any of the Plan-Related Documents, including any transfers in the United States from a Debtor to

a Reorganized Debtor or any other Person or entity pursuant to the Plan, including, without

limitation, the issuance, transfer or exchange of the G-I Class B Shares, ACI Class B Shares and

Trust Note, the granting of the Capital Stock Lien pursuant to the Holdings Pledge Agreement,

and delivery of the Letter of Credit pursuant to the Plan, shall not be subject to any document

recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real

---

[3] Such section was redesignated as section 1146(a) as part of the amendments to the Bankruptcy Code that became
effective on and after October 17, 2005.

estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, (ii)

the appropriate state or local governmental officials or agents are hereby directed to forego the

collection of any such tax or governmental assessment and to accept for filing and recordation

any of the foregoing instruments or other documents without the payment of any such tax or

governmental assessment, and (iii) to the extent necessary, the Court retains jurisdiction to

enforce the foregoing direction, by contempt or otherwise.

## M.    EXEMPTIONS FROM SECURITIES LAWS.

72.    The issuance and distribution of any and all of (i) the G-I Class B Shares,

ACI Class B Shares and Trust Note, and (ii) any other shares of stock, notes or other related

rights, contractual, equitable or otherwise, issued, authorized or reserved under or in connection

with the Plan, shall be, and shall be deemed to be, exempt from registration under any applicable

federal or state securities law to the fullest extent permissible under applicable non-bankruptcy

law and under bankruptcy law, including, without limitation, section 1145 of the Bankruptcy

Code.

## N.    DELIVERY OF DOCUMENTS.

73.    All entities holding Claims against or interests in the Debtors that are

treated under the Plan shall be, and they hereby are, directed to execute, deliver, file or record

any document, and to take any action necessary to implement, consummate and otherwise effect

the Plan in accordance with its terms, and all such entities shall be bound by the terms and

provisions of all documents executed and delivered by them in connection with the Plan.

## O.    CANCELLATION OF EXISTING SECURITIES AND AGREEMENTS.

74.    Except for purposes of evidencing a right to distributions under the Plan,

any document, agreement, or instrument evidencing any Claim or Equity Interest, other than an

Asbestos Claim or any Claim that is unimpaired by the Plan, shall be deemed cancelled without

further act or action under any applicable agreement, law, regulation, order, or rule, and the

obligations of the Debtors under such documents, agreements, or instruments evidencing such

Claims and Equity Interests, as the case may be, shall be discharged; *provided, however*, that

each Asbestos Claim shall be discharged as to the Debtors' estates and the Reorganized Debtors,

and all Asbestos Claims (including all Demands) shall be subject to the Asbestos Permanent

Channeling Injunction.

## XII.    RELEASES AND EXCULPATION PROVISIONS.

75.    Each of the release and exculpation provisions as set forth in, among

others, Sections 9.6 and 9.7 of the Plan, is incorporated herein in its entirety, and shall be

immediately effective on the Effective Date of the Plan.

## XIII.    DISCHARGE AND INJUNCTIONS.

### A.    DISCHARGE OF CLAIMS.

76.    In accordance with and not in limitation of sections 524 and 1141 of the

Bankruptcy Code and, except as provided in the Plan, upon the Effective Date, all Claims against

the Debtors' estates and the Reorganized Debtors shall be, and shall be deemed to be, discharged

in full, and all holders of Claims shall be precluded and enjoined from asserting against the

Debtors' estates and the Reorganized Debtors, or any of their assets or properties, any other or

further Claim based upon any act or omission, transaction, or other activity of any kind or nature

that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim.

Upon the Effective Date, all Entities shall be forever precluded and enjoined, pursuant to section

524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against

the Debtors' estates and the Reorganized Debtors.

### B.    INJUNCTIONS.

(i)    **Issuance of the Asbestos Permanent Channeling Injunction.**

77.        Pursuant to section 524(g) of the Bankruptcy Code, the Asbestos Permanent Channeling Injunction is hereby issued to become effective upon the Effective Date. Without limiting the foregoing, every Person and Entity is hereby permanently and forever stayed, restrained, and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Claim, all of which shall be channeled to the Asbestos Trust for resolution as set forth in the Asbestos Trust Distribution Procedures including, but not limited to: (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitral, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interests in property of any Protected Party; (b) enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party; (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party; (d) setting off, seeking reimbursement of, contribution from, indemnification of or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and (e) proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Trust Agreement or the Asbestos Trust Distribution Procedures, except in conformity and compliance therewith.

**(ii)    Protected Parties Under the Asbestos Permanent Channeling Injunction.**

78.     Pursuant to the Asbestos Permanent Channeling Injunction set forth in the

Plan, each of the following parties is a "Protected Party" under this Confirmation Order and the

Asbestos Permanent Channeling Injunction:

      a.     the Debtors;

      b.     the Reorganized Debtors;

      c.     each Affiliate listed on Exhibit 1.1.101(c) to the Plan, as also

attached to this Confirmation Order as Exhibit C;

      d.     each Entity that, pursuant to the Plan or after the Effective Date,

becomes a direct or indirect transferee of, or successor to, any assets of the Debtors' estates, the

Reorganized Debtors, or the Asbestos Trust, but solely to the extent that an Asbestos Claim is

asserted against such Entity by reason of its becoming such a transferee or successor;

      e.     each Entity that, pursuant to the Plan or after the Effective Date,

makes a loan to the Reorganized Debtors, any Protected Party, or the Asbestos Trust or to a

successor to, or transferee of, any assets of the Debtors' estates, the Reorganized Debtors, or the

Asbestos Trust, but solely to the extent that an Asbestos Claim is asserted against such Entity by

reason of its making such loan or to the extent that any pledge of assets made in connection with

such a loan is sought to be upset or impaired; and

      f.     each Entity alleged to be directly or indirectly liable for the

conduct of, Claims against, or Demands on the Debtors, the Debtors' estates, the Reorganized

Debtors, or the Asbestos Trust on account of Asbestos Claims by reason of one or more of the

following:

            i.     such Entity's ownership of a financial interest in the Debtors, the
Reorganized Debtors, a past or present Affiliate of the Debtors or the
Reorganized Debtors, or a predecessor in interest of the Debtors or the
Reorganized Debtors, but solely in such Entity's capacity as such;

31

ii.      such Entity's involvement in the management of the Debtors, an Affiliate, the Reorganized Debtors, or any predecessor in interest of the Debtors, or the Reorganized Debtors, but solely in such Entity's capacity as such;

iii.      such Entity's service as an officer, director, or employee of the Debtors, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, any predecessor in interest of the Debtors or the Reorganized Debtors, or any Entity that owns or at any time has owned a financial interest in the Debtors or the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such;

iv.      such Entity's provision of insurance to the Debtors, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, any predecessor in interest of the Debtors or the Reorganized Debtors, any Entity that owns or at any time has owned a financial interest in the Debtors or the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but only to the extent that the Debtors, the Reorganized Debtors, or the Asbestos Trust enters into a settlement with such Entity that is approved by the Bankruptcy Court and expressly provides that such Entity shall be entitled to the protection of the Asbestos Permanent Channeling Injunction as a Protected Party; or

v.      such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction (including involvement in providing financing or advice to an Entity involved in such a transaction or acquiring or selling a financial interest in an Entity as part of such a transaction), affecting the financial condition of the Debtors, an Affiliate, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such.

**(iii)    Injunction of Claims.**

79.      In accordance with and not in limitation of sections 524 and 1141 of the

Bankruptcy Code, and except as otherwise expressly provided in the Plan, this Confirmation Order or

such other applicable order of the Bankruptcy Court, all Persons or Entities who have held, currently

hold or subsequently hold Claims or other debt or liability that are discharged pursuant to the Plan

are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in

NY3 3037069.13 315183 000001 9/29/2009 07:29pm

any manner any action or other proceeding of any kind on any such Claim or other debt or liability

pursuant to the Plan against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the

Debtors' estates or properties or interests in properties of the Debtors or the Reorganized Debtors, (b)

the enforcement, attachment, collection or recovery by any manner or means of any judgment,

award, decree or order against the Debtors, the Debtors-in-Possession or the Reorganized Debtors,

the Debtors' estates or properties or interests in properties of the Debtors, the Debtors-in-Possession

or the Reorganized Debtors, (c) creating, perfecting, or enforcing any encumbrance of any kind

securing a discharged claim against the Debtors, the Debtors' estates, the Debtors-in-Possession or

the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors'

estates, the Debtors-in-Possession or the Reorganized Debtors, and (d) except to the extent provided,

permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to

the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any

kind against any obligation due from the Debtors, the Debtors' estates, the Debtors-in-Possession or

the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors'

estates, the Debtors-in-Possession or the Reorganized Debtors, with respect to any such Claim or

other debt or liability discharged or enjoined or channeled pursuant to the Plan.

### (iv) Term of Existing Injunctions or Stays.

80. Unless otherwise provided in the Plan, all injunctions or stays provided for

in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, by order of the

Court or otherwise, and in existence on the Confirmation Date, shall remain in full force and

effect until the later of the Effective Date and the date indicated in any such applicable order.

### (v) Injunction Against Interference With Plan of Reorganization.

81. Pursuant to sections 105 and 1142 of the Bankruptcy Code, from and after

the Effective Date, all holders of Claims, demands, and Equity Interests and other parties in

33

interest, along with their respective present or former employees, agents, officers, directors,

principals and Affiliates shall be enjoined from taking any actions to interfere with the

implementation or consummation of the Plan except for actions expressly allowed by the

Bankruptcy Code to attain legal review.

## XIV. ISSUES RELATED TO PLAN AND CONFIRMATION OBJECTIONS.

### A. RESOLUTION OF ISSUES RELATED TO PLAN.

82.     Certain issues related to the Plan, regarding which no Confirmation

Objections were filed, were resolved by agreement between the parties, subject to the terms and

conditions set forth below.

#### (vi)     United States Trustee.

83.     The reservation of rights filed by the United States Trustee on July 17,

2009, was resolved by the amendments to the Plan.

#### (vii)    Century Indemnity Company and Continental Casualty Company.

84.     The Confirmation Objections of Century Indemnity Company and

Continental Casualty Company have been withdrawn.

### B. RESOLUTION OR OVERRULING OF CONFIRMATION OBJECTIONS.

85.     Objections to Confirmation, whether informal or filed as Confirmation

Objections, to the extent not satisfied by the Modifications or by a separate agreement, are

hereby resolved on the terms and subject to the conditions set forth below or are OVERRULED

and DENIED for the reasons set forth on the record at the Confirmation Hearing.

86.     The compromises and settlements contemplated by each resolution to an

objection are fair, equitable and reasonable, are in the best interests of the Debtors and their

respective estates and creditors and are hereby expressly approved pursuant to Bankruptcy Rule

9019.  All withdrawn objections are deemed withdrawn with prejudice.

      **(viii)   Internal Revenue Service.**

87.     The IRS's Confirmation Objections are overruled with prejudice.

      **(ix)   New York City Housing Authority.**

88.     The NYCHA's Confirmation Objection is overruled with prejudice.

      **(x)   Los Angeles Unified School District and State of Illinois.**

89.     The Confirmation Objections of the Los Angeles Unified School District and State of Illinois are overruled with prejudice.

      **(xi)   Quigley Company, Inc., Pfizer, Inc. and United States Gypsum.**

90.     The Confirmation Objections of Quigley Company, Inc., Pfizer, Inc. and United States Gypsum are overruled with prejudice.

      **(xii)   Novak Group.**

91.     The Novak Group's submission filed on July 17, 2009, to the extent it states a confirmation objection, is overruled with prejudice.

## XV.    ASBESTOS CLAIMANTS COMMITTEE AND LEGAL REPRESENTATIVE.

92.     Except as provided below, the Asbestos Claimants Committee and the Legal Representative shall continue in existence until the Effective Date.

93.     Except as provided below, on the Effective Date, the rights, duties, and responsibilities of the Legal Representative shall be as set forth in the Asbestos Trust Agreement.

94.     Except as provided below, on the Effective Date, the Asbestos Claimants Committee shall dissolve, and its respective members shall, and shall be deemed to, be released and discharged from all duties and obligations arising from or related to the Chapter 11 Cases.

95.     Notwithstanding any of the foregoing, the Asbestos Claimants Committee and the Legal Representative shall continue in existence and shall have post-Effective Date standing and capacity to (i) complete matters, if any, including, without limitation, litigation,

appeals, or negotiations pending as of the Effective Date which are not released pursuant to the

Plan; (ii) object to or defend the Administrative Expense Claims of professionals employed by or

on behalf of the Estates; (iii) participate with the Debtors or Reorganized Debtors to oppose any

appeals of the Confirmation Order; and (iv) prepare and prosecute applications for the payment

of fees and reimbursement of expenses.

          96.     The Asbestos Claimants Committee, its members, and its professionals, as

well as the Legal Representative and his professionals, shall have the right to seek, and shall be

entitled to, reasonable fees and reimbursement of expenses pursuant to sections 330 of the

Bankruptcy Code for services rendered (including those services arising from or connected with

any pending matter referred to in Section 13.9(d) of the Plan).  The Debtors shall pay such

reasonable fees and expenses awarded through the Effective Date, in accordance with the fee and

expense procedures set forth in the Bankruptcy Code and Bankruptcy Rules or otherwise

promulgated during the Chapter 11 Cases.  The Reorganized Debtors shall pay such reasonable

fees and expenses awarded after the Effective Date, but only to the extent that such reasonable

fees and expenses are not expenses of the Asbestos Trust, in which case those portions of such

fees and expenses shall be paid as Asbestos Trust expenses in accordance with the Asbestos

Trust Agreement, with the remainder to be paid by the Reorganized Debtors.

## XVI.   RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT AND THE DISTRICT COURT.

### A.    RETENTION OF EXCLUSIVE JURISDICTION BY THE BANKRUPTCY COURT.

          97.     The Bankruptcy Court shall retain jurisdiction and retain all exclusive

jurisdiction it has over any matter arising under the Bankruptcy Code, arising in or related to the

Chapter 11 Cases or the Plan, or that relates to any of the matters listed in Section 11.1 of the

Plan.

## B.    NON-CORE JURISDICTION.

98.    To the extent the Bankruptcy Court can not determine a matter within the District Court's subject matter jurisdiction after the Effective Date, the reference to the "Bankruptcy Court" in Article XI of the Plan shall be deemed to be replaced by the "District Court."  Notwithstanding anything in the Article XI of the Plan to the contrary, (i) the resolution and payment of Asbestos Claims, and the forum in which such resolution and payment will be determined, will be governed by and in accordance with the Asbestos Trust Distribution Procedures and the Asbestos Trust Agreement, and (ii) the Bankruptcy Court and the District Court shall have concurrent rather than exclusive jurisdiction with respect to (x) disputes relating to rights under insurance policies issued to the Debtors, and (y) disputes relating to the Debtors' rights to insurance with respect to Workers' Compensation Claims.

## C.    JURISDICTION OVER TAX CLAIM LITIGATION.

99.    The District Court shall retain sole jurisdiction over the litigation in the action styled *United States v. G-I Holdings Inc.*, Case No. 02-03082 (D.N.J.) (pending resolution or dismissal without prejudice of that action) and, as a consequence, the Reorganized Debtors shall not file any petition in the United States Tax Court with respect to the Claims subject to that litigation pending final resolution or dismissal without prejudice of that action.

## D.    JURISDICTION RELATING TO ISP.

100.    International Specialty Products, Inc. has minimum contacts with the United States of America and is therefore subject to the personal jurisdiction of the Bankruptcy Court and District Court.

## XVII.  MISCELLANEOUS.

101.    The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent.

102.     In connection with the Plan and all instruments issued in connection

therewith and distributed thereon, the Debtors, or any other paying agent, as applicable, shall

comply with all applicable withholding and reporting requirements imposed by any federal, state,

or local taxing authority, and all Distributions under the Plan shall be subject to any such

withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed

Claim that is to receive a Distribution under the Plan shall have the sole and exclusive

responsibility for the satisfaction and payment of any tax obligations imposed by any

governmental unit, including income, withholding, and other tax obligations, on account of such

Distribution.  Any party issuing any instrument or making any Distribution under the Plan has

the right, but not the obligation, to refrain from making a Distribution, until such holder has

made arrangements satisfactory to such issuing or disbursing party for payment of any such tax

obligations.

103.     The Reorganized Debtors shall, in the ordinary course of business and

without the necessity for any approval by the Court, pay the reasonable fees and expenses of

professional persons incurred from and after the Effective Date by the Reorganized Debtors,

including, without limitation, those fees and expenses incurred in connection with the

implementation and consummation of the Plan.

104.     All requirements of Bankruptcy Code section 524(g)(3)(A) are satisfied to

render the channeling injunction herein irrevocable and not subject to modification except

through appeal in accordance with Bankruptcy Code section 524(g)(6).

105.     All requirements for confirmation set forth in Bankruptcy Code section

1129(a) are satisfied, except that Classes 3A, 5, 7, 10A, 11, 12A and 12B rejected or are deemed

to reject the Plan.

106.   G-I's estate is insolvent. Because the channeling injunction pursuant to Bankruptcy Code section 524(g) is not available in chapter 7 cases, and the operating business owned by the Debtors can not be a going concern without the channeling injunction protecting it from the assertion of hundreds of thousands of Asbestos Claims and Demands, Bankruptcy Code section 1129(a)(7)(A)(ii) is satisfied because in chapter 7 there would be no value in excess of the value necessary to pay the structurally senior debt owed by Building Materials Corporation of America to its creditors.

107.   The (a) proposal of the Plan by the Asbestos Claimants Committee and the Legal Representative, (b) exposure of the Debtors to the marketplace for more than eight years in chapter 11 while the Debtors' subsidiary, Building Materials Company of America, filed its financial statements publicly with the Securities and Exchange Commission, and (c) leverage the Asbestos Claimants Committee had to prevent confirmation of the Plan by preventing the 75% vote of asbestos claimants required by Bankruptcy Code section 524(g)(2)(B)(ii)(IV)(bb) to attain the channeling injunction, created a robust market test to assure that the new value provided by the Plan Sponsor to purchase the Reorganized Debtors is necessary, adequate, monetized, and fair.

108.   As to the rejecting classes of impaired Claims, the requirements of Bankruptcy Code section 1129(b) are satisfied to confirm the Plan over such rejections.

109.   The determinations, findings, judgments, decrees and orders set forth or incorporated herein, as decreed by the Court, constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceedings pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.

Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

110.     This Confirmation Order is a final order and the period in which an appeal may be timely filed shall commence upon the entry hereof.

111.     All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court, shall be paid on the Effective Date or as soon as practicable thereafter.  All post-confirmation and post-Effective Date fees that are due and payable shall be paid by the Reorganized Debtors until the Chapter 11 Cases are closed pursuant to section 305(a) of the Bankruptcy Code.

## XVIII. NOTICE OF ENTRY OF CONFIRMATION ORDER.

112.     Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Debtors or the Reorganized Debtors are directed to serve, within 10 days after the occurrence of the Confirmation Date, a notice of the entry of this Confirmation Order, which shall include notice of the bar dates established by the Plan and this Confirmation Order, the issuance of the Asbestos Permanent Channeling Injunction and notice of the Effective Date, substantially in the form of Exhibit D attached hereto and incorporated herein by reference (the "Confirmation Notice"), on all parties that received notice of the Confirmation Hearing, including, without limitation, the various counsel to holders of Asbestos Claims; *provided*, *however*, that the Debtors or the Reorganized Debtors are directed to serve the Confirmation Notice directly on those holders of Asbestos Claims that received Solicitation Packages directly from the Debtors pursuant to the terms of the Disclosure Statement and Solicitation Procedures Order.

113.     As soon as practicable after the Confirmation Date, the Debtors shall make copies of this Confirmation Order and the Confirmation Notice available on Epiq's website (http://chapter11.epiqsystems.com/).

40

114.    No later than 20 Business Days after the Confirmation Date, the

Reorganized Debtors are directed to publish the version of the Confirmation Notice attached

hereto as Exhibit E once in the national editions of the *New York Times*, *USA Today*, and the

*Wall Street Journal*.

## XIX.   NO JUST CAUSE FOR DELAY.

115.    The Court determines ~~there is no just cause for delay, and~~ that this

until Monday, November 16, 2009 at 5 P.M. Eastern

Confirmation Order shall ~~not~~ be stayed and shall take effect immediately ~~upon entry,~~ Standard

thereafter        Time

notwithstanding anything to the contrary in Bankruptcy Rules 3020(e) or 7062(a).

> **THIS ORDER IS HEREBY DECLARED TO BE IN
> RECORDABLE FORM AND SHALL BE ACCEPTED
> BY ANY RECORDING OFFICER FOR FILING AND
> RECORDING PURPOSES WITHOUT FURTHER OR
> ADDITIONAL ORDERS, CERTIFICATIONS OR
> OTHER SUPPORTING DOCUMENTS.**

Dated:

11/12/2009            /s/ Rosemary Gambardella
                      _____
                      The Honorable Rosemary Gambardella
                      UNITED STATES BANKRUPTCY JUDGE


11/12/2009            /s/ Garrett E. Brown, Jr.
                      _____
                      The Honorable Garret E. Brown, Jr.
                      CHIEF UNITED STATES DISTRICT JUDGE

41

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| G-I HOLDINGS INC. (f/k/a GAF Corporation) and ACI INC., | Case Nos. 01-30135 (RG) and 01-38790 (RG) (Jointly Administered) |
| Debtors. | Hon. Rosemary Gambardella, U.S.B.J. |

### EIGHTH AMENDED JOINT PLAN OF REORGANIZATION OF G-I HOLDINGS INC. AND ACI INC. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**THIS PLAN PROVIDES FOR THE ISSUANCE OF A CHANNELING INJUNCTION UNDER SECTION 524(g) OF THE BANKRUPTCY CODE THAT PERMANENTLY ENJOINS ALL PERSONS HOLDING ASBESTOS CLAIMS AND FUTURE ASBESTOS-RELATED DEMANDS FROM PURSUING A REMEDY AGAINST THE DEBTORS AND OTHER PROTECTED PARTIES, AND CHANNELS SUCH CLAIMS AND DEMANDS TO THE ASBESTOS TRUST FOR RESOLUTION AND PAYMENT**

| | |
|---|---|
| DEWEY & LeBOEUF L.L.P.<br>1301 Avenue of the Americas<br>New York, New York 10019<br>(212) 259-8000<br><br>Attorneys for Debtors in Possession<br><br>CAPLIN & DRYSDALE, CHARTERED<br>375 Park Avenue<br>New York, New York  10152-3500<br>(212) 319-7125<br>Attorneys for Official Committee of Asbestos Claimants<br><br>KEATING MUETHING & KLEKAMP PLL<br>One East Fourth Street<br>Suite 1400<br>Cincinnati, Ohio 45202<br>Tel: (513) 579-6400<br>Attorneys for C. Judson Hamlin as Legal Representative | RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey 07962-1981<br>(973) 538-0800<br>Attorneys for Debtors in Possession<br><br>LOWENSTEIN SANDLER, PC<br>65 Livingston Avenue<br>Roseland NJ 07068<br>(973) 597-2500<br>Attorneys for Official Committee of Asbestos Claimants<br><br>SAIBER LLC<br>One Gateway Center<br>Newark, New Jersey  07102-5311<br>(973) 645-4929<br>Attorneys for C. Judson Hamlin as Legal Representative |

Dated:  October 5, 2009

# TABLE OF CONTENTS

**Page**

ARTICLE I      DEFINITIONS ............................................................................ 1
   1.1      Defined Terms ............................................................... 1
   1.2      Other Definitions ........................................................... 19
   1.3      Rules of Construction ..................................................... 19

ARTICLE II      TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
               PRIORITY TAX CLAIMS .................................................... 19
   2.1      Administrative Expense Claims ....................................... 19
   2.2      Professional Compensation and Reimbursement Claims ........... 20
   2.3      No Double Payment of Administrative Claims ...................... 20
   2.4      Priority Tax Claims ......................................................... 20

ARTICLE III      CLASSIFICATION AND TREATMENT OF CLAIMS AND
               INTERESTS ................................................................... 21
   3.1      Class 1A – G-I Priority Non-Tax Claims. ........................... 22
   3.2      Class 1B – ACI Priority Non-Tax Claims. .......................... 23
   3.3      Class 2A – G-I Secured Claims. ...................................... 23
   3.4      Class 2B – ACI Secured Claims. ...................................... 23
   3.5      Class 3A – G-I Unsecured Claims. ................................... 24
   3.6      Class 3B – ACI Unsecured Claims. ................................... 24
               Class 3C – G-I Non-Priority Tax Penalty Claims ………………………………25
   3.7      Class 4 – Environmental Claims for Remedial Relief ............ 24
   3.8      Class 5 – Other Environmental Claims ............................... 25
   3.9      Class 5A - US Environmental Claim and Vermont Environmental Claim ...................
   3.10      Class 6 – Asbestos Claims. ............................................ 25
   3.11      Class 7 – Asbestos Property Damage Claims and Asbestos Property Damage
               Contribution Claims. .................................................... 26
   3.12      Class 8 – CCR Claim ..................................................... 27
   3.13      Class 9 – Bonded Claims ............................................... 28
   3.14      Class 10A – G-I Affiliate Claims ..................................... 28
   3.15      Class 10B – ACI Affiliate Claims ................................... 28
   3.16      Class 11 – G-I Equity Interest Redemption Claims ............... 29
   3.17      Class 12A – G-I Equity Interests ..................................... 29
   3.18      Class 12B – ACI Equity Interests ................................... 29

ARTICLE IV      IMPLEMENTATION OF PLAN ......................................... 29
   4.1      Compromise and Settlement .......................................... 29
   4.2      Creation of Asbestos Trust ............................................ 30
   4.3      Appointment of Asbestos Trustees ................................... 30
   4.4      Transfer of Certain Property to the Asbestos Trust. ............. 30
   4.5      Institution and Maintenance of Legal and Other Proceedings ..... 33
   4.6      Supersedeas Bonds and Payment Assurances. ..................... 33

# TABLE OF CONTENTS
## (continued)

**Page**

| | | |
|---|---|---|
| 4.7 | Equity Ownership of G-I. | 34 |
| 4.8 | Equity Ownership of ACI. | 34 |
| 4.9 | New ACI | |
| 4.10 | Equity Infusion to Fund Liabilities Under the Plan | |
| | Authority of the Debtors | 35 |
| 4.11 | Letter of Credit | 34 |

| | | |
|---|---|---|
| ARTICLE V | VOTING and DISTRIBUTIONS UNDER THE PLAN | 35 |
| 5.1 | Impaired Classes to Vote | 35 |
| 5.2 | Acceptance by Class of Creditors | 35 |
| 5.3 | Nonconsensual Confirmation | 35 |
| 5.4 | Distributions Under the Plan | 35 |
| 5.5 | Disbursing Agent | 36 |
| 5.6 | Manner of Payment Under the Plan | 36 |
| 5.7 | Unclaimed Property. | 36 |
| 5.8 | Time Bar to Cash Payments | 37 |
| 5.9 | Distributions After Effective Date | 37 |
| 5.10 | Setoffs | 37 |
| 5.11 | Cancellation of Existing Securities and Agreements | 37 |
| 5.12 | Payment of Interest on Allowed Claims | 37 |
| 5.13 | Allocation of Plan Distributions Between Principal and Interest | 37 |
| ARTICLE VI | TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN | 38 |
| 6.1 | Objections to Claims; Prosecution of Disputed Claims | 38 |
| 6.2 | Estimation of Claims | 38 |
| 6.3 | No Distributions Pending Allowance | 39 |
| 6.4 | Distributions After Allowance | 39 |
| 6.5 | Insurance. | 39 |
| 6.6 | Management of Existing Tax Claim Litigation | 39 |
| ARTICLE VII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 39 |
| 7.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases | 39 |
| 7.2 | Assumption of Insurance Policies | 40 |
| 7.3 | Cure of Defaults and Survival of Contingent Claims under Assumed Executory Contracts and Unexpired Leases | 40 |
| 7.4 | Deadline for Filing Rejection Damage Claims | 41 |
| 7.5 | Indemnification and Reimbursement Obligations | 41 |
| 7.6 | Compensation and Benefit Programs | 41 |
| 7.7 | Retiree Benefits | 42 |

ii

# TABLE OF CONTENTS
## (continued)

**Page**

ARTICLE VIII     CORPORATE GOVERNANCE AND MANAGEMENT OF
REORGANIZED DEBTORS ......................................................... 42

8.1     General ....................................................................................... 42
8.2     Reorganized Debtors' Directors and Officers ............................ 42
8.3     Amendment of Articles of Incorporation and By-Laws ............. 42
8.4     Corporate Action ...................................................................... 42

ARTICLE IX     EFFECT OF CONFIRMATION ........................................... 43

9.1     Title to Assets ............................................................................ 43
9.2     Discharge of Claims .................................................................. 43
9.3     Injunction on Claims ................................................................. 43
9.4     Term of Existing Injunctions or Stays ....................................... 44
9.5     Injunction Against Interference With Plan of Reorganization .... 44
9.6     Exculpation ............................................................................... 44
9.7     Mutual Releases ......................................................................... 44
9.8     Avoidance Actions ..................................................................... 45
9.9     Reservation of Rights ................................................................ 45

ARTICLE X     CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN;
IMPLEMENTATION PROVISIONS ........................................... 46

10.1     Conditions Precedent to Effective Date of the Plan ................... 46
10.2     Waiver of Conditions Precedent ................................................ 49

ARTICLE XI     RETENTION OF JURISDICTION ..................................... 49

11.1     Retention of Jurisdiction ............................................................ 49
11.2     Non-Core Jurisdictional Matters ............................................... 51

ARTICLE XII     MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........ 52

12.1     Plan Modifications .................................................................... 52
12.2     Revocation, Withdrawal, or Non-Consummation. ..................... 52

ARTICLE XIII     MISCELLANEOUS PROVISIONS ..................................... 53

13.1     Effectuating Documents and Further Transactions ................... 53
13.2     Cooperation ............................................................................... 53
13.3     Withholding and Reporting Requirements ................................ 53
13.4     Exemption from Transfer Taxes ................................................ 53
13.5     Expedited Tax Determination .................................................... 54
13.6     Exemption from Registration .................................................... 54
13.7     Payment of Statutory Fees ......................................................... 54
13.8     Post-Confirmation Date Fees and Expenses .............................. 54
13.9     The Asbestos Claimants Committee and the Legal Representative. ......... 54
13.10     Plan Supplement ........................................................................ 55

iii

**TABLE OF CONTENTS**
**(continued)**

**Page**

| | | |
|---|---|---|
| 13.11 | Substantial Consummation | 55 |
| 13.12 | Sections 1125 and 1126 of the Bankruptcy Code | 55 |
| 13.13 | Severability | 55 |
| 13.14 | Governing Law | 56 |
| 13.15 | Deemed Acts | 56 |
| 13.16 | Binding Effect | 56 |
| 13.17 | Exhibits/Schedules | 56 |
| 13.18 | Notices | 56 |
| 13.19 | Time | 57 |
| 13.20 | Section Headings | 57 |
| 13.21 | Inconsistencies | 57 |

iv

# EIGHTH AMENDED JOINT PLAN OF
# REORGANIZATION OF G-I HOLDINGS INC. AND ACI INC.
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The Plan Proponents together propose the following eighth amended joint plan of reorganization under section 1121(a) of title 11 of the United States Code:

## ARTICLE I

## DEFINITIONS

1.1     <u>Defined Terms</u>.  As used in the Plan, the following terms shall have the respective meanings specified below and be applicable to the singular and plural form of the terms defined:

1.1.1     <u>ACI</u> means ACI Inc., one of the Debtors in Possession.

1.1.2     <u>ACI Class B Shares</u> means the new class of common stock authorized by ACI and issued to G-I prior to the Effective Date.

1.1.3     <u>ACI Affiliate Claim</u> means a Claim asserted against ACI by any of its Affiliates.

1.1.4     <u>ACI Equity Interest</u> means an Equity Interest in ACI.

1.1.5     <u>ACI Secured Claim</u> means a Secured Claim against ACI.

1.1.6     <u>ACI Priority Non-Tax Claim</u> means any Claim against ACI or its estate, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.1.7     <u>Administrative Expense Claim</u> means any Claim constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(1) of the Bankruptcy Code during the period up to and including the Effective Date, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors-in-Possession, any indebtedness or obligations incurred or assumed by the Debtors-in-Possession in connection with the conduct of their businesses, and any Claims for compensation and reimbursement of expenses arising during the period from and after the respective Commencement Dates and prior to the Effective Date to the extent Allowed by Final Order of the Bankruptcy Court under sections 328, 330, 331, or 503(b) of the Bankruptcy Code or otherwise in accordance with the provisions of the Plan, whether fixed before or after the Effective Date, and any fees or charges assessed against the Debtors' estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

1.1.8     <u>Affiliate</u> means (i) any Entity that is an "affiliate" of any of the Debtors within the meaning set forth in section 101(2) of the Bankruptcy Code, and (ii) Samuel J. Heyman,

1

members of his family, and any other Entity that is owned or controlled, directly or indirectly, by Samuel J. Heyman or members of his family.

        1.1.9    <u>Allowed</u> means:

        (a)    With reference to any Claim (other than an Asbestos Claim) against the Debtors, (i) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any Claim allowed hereunder, (iii) any timely filed Claim that is not disputed or as to which no objection to allowance has been timely interposed in accordance with Section 6.1 hereof or such other period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (iv) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Reorganized Debtors pursuant to a Final Order of the Bankruptcy Court or under Section 6.1 of the Plan, or (v) any Claim that, if disputed, has been Allowed by Final Order; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder; and *provided further* that unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Commencement Date.

        (b)    With respect to any Bonded Claim, any Claim that qualifies as a Bonded Claim under the applicable definitions of the Plan, but only to the extent that the Bankruptcy Court or other court of competent jurisdiction determines by Final Order (or the applicable Debtor or Reorganized Debtor and the holder of such Claim agree) that such holder is entitled to some or all of the proceeds of the applicable supersedeas bond or other payment assurance, but only to the extent so ordered or agreed.

        (c)    With respect to the CCR Claim, such Claim to the extent that the CCR Settlement Agreement has been executed and delivered by each of the parties thereto and approved by the Bankruptcy Court or a Final Order has been issued in the CCR Allowance Proceedings.

        1.1.10    <u>Asbestos Claim</u> means any (i) Asbestos Personal Injury Claim, (ii) Indirect Trust Claim, and (iii) any deficiency portion of a Bonded Asbestos Personal Injury Claim remaining after crediting the proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Claim" shall not include or pertain to the CCR Claim or any Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Claim, Claim held by an Affiliate (even if such Claim would constitute an Indirect Trust Claim if it arose in favor of a non-Affiliate), Environmental Claim, or Workers' Compensation Claim.

2

1.1.11    **Asbestos Claimants Committee** means the statutory asbestos claimants committee, consisting of the Entities appointed as members in the Chapter 11 Cases by the United States Trustee for the District of New Jersey and their duly appointed successors, if any, as the same may be reconstituted from time to time.

1.1.12    **Asbestos Permanent Channeling Injunction** means an irrevocable order or orders of the District Court granting the Debtors and the other Protected Parties the maximum relief and protection against Claims and Demands provided by section 524(g) of the Bankruptcy Code permanently and forever staying, restraining, and enjoining any Entity from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Claim, all of which shall be channeled to the Asbestos Trust for resolution as set forth in the Asbestos Trust Distribution Procedures including, but not limited to:

(a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitral, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interests in property of any Protected Party;

(b)    enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;

(c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

(d)    setting off, seeking reimbursement of, contribution from, indemnification of or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

(e)    proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Trust Agreement or the Asbestos Trust Distribution Procedures, except in conformity and compliance therewith.

1.1.13    **Asbestos Personal Injury Claim** means any Claim or Demand against G-I now existing or hereafter arising, whether or not such Claim, remedy, liability, or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, for death, bodily injury, sickness, disease, medical monitoring or other personal injuries (whether physical, emotional or otherwise) to the extent caused or allegedly caused, directly or indirectly, by the presence of or exposure (whether prior to or on and after the Commencement Date) to asbestos or asbestos-

3

containing products or things that was or were installed, engineered, designed, manufactured, fabricated, constructed, sold, supplied, produced, specified, selected, distributed, released, marketed, serviced, maintained, repaired, purchased, owned, occupied, used, removed, replaced or disposed of by G-I or an Entity for whose products or operations G-I allegedly has liability or for which G-I is otherwise allegedly liable, including, without limitation, (i) any Claim, remedy, liability, or demand for compensatory damages (such as loss of consortium, wrongful death, medical monitoring, survivorship, proximate, consequential, general, and special damages) and punitive damages; (ii) any Claim, remedy, liability or demand for reimbursement, indemnification, subrogation and contribution (including an Indirect Trust Claim); and (iii) any Claim under any settlement pertaining to an Asbestos Personal Injury Claim, which settlement was actually or purportedly entered into by or on behalf of G-I prior to the Commencement Date; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Personal Injury Claim" shall not include or pertain to the CCR Claim or any Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Claim, Claim held by an Affiliate (even if such Claim would constitute an Indirect Trust Claim if it arose in favor of a non-Affiliate), Environmental Claim, or Workers' Compensation Claim.

1.1.14    Asbestos Property Damage Claim means (i) any Claim or remedy or liability against G-I, whether or not such Claim, remedy, or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, for damages for property damage, including but not limited to, the cost of inspecting, maintaining, encapsulating, repairing, decontaminating, removing or disposing of asbestos or asbestos-containing products in buildings, other structures, or other property arising from the installation in, presence in or removal from buildings or other structures of asbestos or asbestos-containing products that was or were installed, manufactured, engineered, designed, fabricated, constructed, sold, supplied, produced, distributed, released, specified, selected, marketed, serviced, repaired, maintained, purchased, owned, used, removed, replaced or disposed of by G-I prior to the Commencement Date, or for which G-I is otherwise allegedly liable, including, without express or implied limitation, any such Claims, remedies and liabilities for compensatory damages (such as proximate, consequential, general, and special damages) and punitive damages, and any Claim, remedy or liability for reimbursement, indemnification, subrogation and contribution, including, without limitation, any Asbestos Property Damage Contribution Claim; and (ii) any Claim under any settlement pertaining to an Asbestos Property Damage Claim, which settlement was actually or purportedly entered into by or on behalf of G-I prior to the Commencement Date; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Property Damage Claim" shall not include or pertain to an Asbestos Personal Injury Claim, Bonded Claim, Indirect Trust Claim, CCR Claim, Environmental Claim, or Workers' Compensation Claim.

1.1.15    Asbestos Property Damage Contribution Claim means any Claim or remedy or liability against G-I, whether or not such Claim, remedy or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases for such Claim, remedy or liability are known or unknown, that is (i) held by (a) any Entity (other than a director or officer entitled to indemnification pursuant to Section 7.4 of the Plan) who has been, is, or may be a

4

defendant in an action seeking damages for property damage, including but not limited to, the cost of inspecting, maintaining, encapsulating, repairing, decontaminating, removing or disposing of asbestos or asbestos-containing products in buildings, other structures, or other property, arising from the installation in, presence in or removal from buildings or other structures of asbestos or asbestos-containing products that was or were installed, manufactured, engineered, designed, fabricated, constructed, sold, supplied, produced, distributed, released, specified, selected, marketed, serviced, repaired, maintained, purchased, owned, used, removed, replaced or disposed of by G-I prior to the Commencement Date, or for which G-I is otherwise allegedly liable, including, without express or implied limitation, any such Claims, remedies and liabilities for compensatory damages (such as proximate, consequential, general, and special damages) and punitive damages, or (b) any assignee or transferee of such Entity; and (ii) on account of alleged liability of G-I for reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay to the plaintiff in such action; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Property Damage Contribution Claim" shall not include or pertain to an Asbestos Personal Injury Claim, Bonded Claim, Indirect Trust Claim, CCR Claim, Environmental Claim, or Workers' Compensation Claim.

1.1.16    <u>Asbestos Trust</u> means the trust established by the Debtors under Bankruptcy Code section 524(g) and in accordance with the Asbestos Trust Agreement.

1.1.17    <u>Asbestos Trust Agreement</u> means the "G-I Holdings Inc. Asbestos Personal Injury Settlement Trust Agreement", to be executed by the Debtors and the Asbestos Trustees, substantially in the form of Exhibit 1.1.17 to the Plan.

1.1.18    <u>Asbestos Trust Distribution Procedures</u> means the "G-I Holdings Inc. Asbestos Personal Injury Trust Distribution Procedures" to be implemented by the Asbestos Trustees pursuant to the terms and conditions of the Plan and the Asbestos Trust Agreement to process, liquidate, and pay Asbestos Claims, substantially in the form of Exhibit 1.1.18 to the Plan.

1.1.19    <u>Asbestos Trust Initial Payment Percentage</u> means the initial payment percentage set forth in the Asbestos Trust Distribution Procedures for the Asbestos Claims, to be established prior to the Effective Date.

1.1.20    <u>Asbestos Trustees</u> means, collectively, the persons confirmed by the Bankruptcy Court to serve as trustees of the Asbestos Trust, pursuant to the terms of the Asbestos Trust Agreement, or as subsequently may be appointed pursuant to the terms of such Agreement.

1.1.21    <u>Ballot</u> means the form distributed to each holder of an impaired Claim to accept or reject the Plan.

1.1.22    <u>Bankruptcy Code</u> means the Bankruptcy Reform Act of 1978, as amended, to the extent codified in title 11 of the United States Code, and applicable to the Chapter 11 Cases.

NYA 584340.26

        1.1.23     <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the District of New Jersey or such other court having subject matter jurisdiction over the Chapter 11 Cases.

        1.1.24     <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended from time to time and as applicable to the Chapter 11 Cases.

        1.1.25     <u>BMCA</u> means Building Materials Corporation of America, Inc., a subsidiary of G-I.

        1.1.26     <u>Board of Directors</u> means each Board of Directors of the Debtors or Reorganized Debtors, as they may exist from time to time.

        1.1.27     <u>Bonded Asbestos Personal Injury Claim</u> means an Asbestos Personal Injury Claim evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was posted by a Debtor or by an Affiliate as security for such Claim.

        1.1.28     <u>Bonded Claim</u> means any Bonded Asbestos Personal Injury Claim or Bonded Non-Asbestos Claim, but shall not include the deficiency portion, if any, of any such Claims.

        1.1.29     <u>Bonded Non-Asbestos Claim</u> means any Claim, other than an Asbestos Claim and a Bonded Asbestos Personal Injury Claim, evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was posted by a Debtor or by an Affiliate as security for such Claim.

        1.1.30     <u>Business Day</u> means a day other than a Saturday, a Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

        1.1.31     <u>Capital Stock Lien</u> means the first priority Lien on the G-I Class B Shares, which Lien shall attach to the G-I Class B Shares as of the Effective Date to secure the Trust Note, as set forth in the Holdings Pledge Agreement.

        1.1.32     <u>Cash</u> means the lawful currency of the United States of America.

        1.1.33     <u>CCR</u> means the Center for Claims Resolution, Inc., a Delaware non-profit corporation, or its successor-in-interest.

        1.1.34     <u>CCR Allowance Proceeding</u> means a contested matter pursuant to 11 U.S.C. § 502 to determine the amount of the CCR Claim, excluding any contested matter to determine the amount or validity of the Former CCR Member Claims.

1.1.35    CCR Claim means any Claim arising from facts or legal relationships that existed before or during G-I's bankruptcy that CCR or its members, in their capacity as such, have asserted or could assert against G-I or its bankruptcy estate, including, without limitation, any Claim for compensatory damages, contribution, indemnity, payment, reimbursement, subrogation, or any other remedy, whether or not raised in the alternative dispute resolution proceedings that were pending between CCR and G-I when G-I's bankruptcy case commenced.  The CCR Claim shall include, but not necessarily be limited to, all Claims based on or relating to (i) alleged breach by G-I of the CCR Producer Agreement or any amendments thereof; (ii) alleged payment or advances of funds, or financing of expenses, by or through CCR on G-I's account or for G-I's benefit; and (iii) any liability or expense allegedly incurred or paid by or through CCR as a result of G-I's failure or refusal to pay any obligation it allegedly incurred under any agreement made by CCR, during G-I's membership in CCR, for the settlement of any asbestos-related personal injury or wrongful death Claim; *provided*, *however*, that the CCR Claim shall not include the Former CCR Member Claims to the extent such Claims are Allowed.

1.1.36    CCR Escrow means an interest-bearing escrow account to be established by the Reorganized Debtors under circumstances described in Section 4.4(c)(i)(C) of the Plan.

1.1.37    CCR Escrow Amount means the dollar amount to be deposited by the Reorganized Debtors into the CCR Escrow (if the CCR Escrow becomes applicable), which amount shall be computed by applying the Asbestos Trust Initial Payment Percentage to the aggregate amount of the CCR Claim as alleged in a proof of claim timely filed with the Bankruptcy Court.

1.1.38    CCR Escrow Earnings means any interest, gains and other income on the CCR Escrow Amount, after deduction of any losses on such account and any fees and expenses charged by the escrow agent.

1.1.39    CCR Payment Amount means the Cash payment equal to either (a) if the CCR Claim is an Allowed Claim pursuant to the CCR Settlement Agreement, the *greater* of (x) $9.9 million and (y) the amount resulting from multiplying $110 million by the Asbestos Trust Initial Payment Percentage, or (b) if the CCR Claim is an Allowed Claim pursuant to a Final Order issued in connection with a CCR Allowance Proceeding, the amount resulting from multiplying the amount of the Allowed CCR Claim by the Asbestos Trust Initial Payment Percentage.

1.1.40    CCR Producer Agreement means The Producer Agreement Concerning Center for Claims Resolution, dated September 28, 1988, as modified, amended and supplemented.

1.1.41    CCR Settlement Agreement means an agreement to be entered into between and among the Debtors, the Asbestos Claimants Committee, the Legal Representative and CCR, and submitted for approval to the Bankruptcy Court, which will implement the letter of understanding with CCR dated June 30, 2008, and provide for a compromise and settlement governing the allowance and treatment of the CCR Claim under the Plan.  The aforementioned letter of understanding is Exhibit 1.1.41 to the Plan.

7

1.1.42    Chapter 11 Cases means the cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors styled *In re G-I Holdings Inc., et al.*, Chapter 11 Case Nos. 01-30135 (RG) and 01-38790 (RG) (Jointly Administered) currently pending before the Bankruptcy Court.

1.1.43    Claim means (i) a "claim," as defined in section 101(5) of the Bankruptcy Code, against G-I or ACI, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim; (ii) any Environmental Claim, whether or not it constitutes a "claim" under section 101(5) of the Bankruptcy Code; and (iii) any rights to any equitable remedy.

1.1.44    Class means a category of Claims or Equity Interests set forth in Article III of the Plan.

1.1.45    Collateral means any property or interest in property of the estates of any of the Debtors subject to an unavoidable Lien to secure the payment or performance of a Claim.

1.1.46    Collateral Agency Agreement means the "Collateral Agency Agreement" to be entered into by and among Reorganized G-I, the Asbestos Trust and the Collateral Agent, substantially in the form annexed as Exhibit 1.1.46 to the Plan.

1.1.47    Collateral Agent means the Entity appointed pursuant to the Collateral Agency Agreement as agent for the Asbestos Trust and any registered holder of the Trust Note, for the purposes specified in the Collateral Agency Agreement.

1.1.48    Commencement Date means January 5, 2001, with respect to G-I, and August 3, 2001, with respect to ACI.

1.1.49    Confirmation Date means the later of (i) the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court; and (ii) the date on which the Confirmation Order is entered on the docket of the District Court.

1.1.50    Confirmation Hearing means the hearing to consider confirmation of the Plan in accordance with the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.1.51    Confirmation Order means the order or orders of the Bankruptcy Court or the District Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, which will contain, *inter alia*, the Asbestos Permanent Channeling Injunction; *provided*, *however*, that, if the District Court does not enter such an order confirming the Plan, then the term "Confirmation Order" shall include an order of the District Court affirming the Confirmation Order entered by the Bankruptcy Court.

8

1.1.52 Consent Decree and Settlement Agreement means the agreement entered into between G-I Holdings and the United States of America to compromise and settle the US Environmental Claim and the Vermont Environmental Claim.

1.1.53 Covered Matters means:

(a) matters and/or proceedings pending or formerly before the Bankruptcy Court or District Court relating to: (i) the estimation of the aggregate Asbestos Personal Injury Claims and Demands, including, but not limited to, those matters subject to the Bankruptcy Court's Sixth Amended Estimation Scheduling Order, entered on July 7, 2008; (ii) the adversary proceeding styled *Official Committee of Asbestos Claimants v. Building Materials Corporation of America, et al.,* Adv. Proc. No. 04-2192 (RG); (iii) the Asbestos Claimants Committee's motion for authority to prosecute alleged avoidance actions of the G-I estate against BMCA, certain of its Affiliates, and certain current and former creditors of BMCA; (iv) the adversary proceeding commenced by the Asbestos Claimants Committee to compel the Chapter 11 filing and substantive consolidation of certain Affiliate(s) of G-I, styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. v. G-I Holdings Inc. et al.,* Case No. 01-03065 (RG); and (v) G-I's prosecution of an action for injunctive relief to stay asbestos claims against BMCA, styled *G-I Holdings, Inc. v. Those Parties Listed on Exhibit A to Complaint and John Does 1-250,* Adv. Proc. 01-3013 (RG);

(b) matters and/or proceedings formerly pending before the District Court relating to G-I's prosecution of an action for a declaratory judgment that BMCA has no successor liability or alter ego liability for Asbestos Personal Injury Claims or Asbestos Property Damage Claims, styled *G-I Holdings Inc. et al. v. Bennett, et al.,* Civil No. 02-3626 (SRC), and the Asbestos Claimants Committee's prosecution of counter-claims therein;

(c) matters and/or proceedings pending before the United States Court of Appeals for the Third Circuit relating to G-I's appeal from the order, dated December 7, 2005, issued by the District Court (Bassler, J.) dismissing, for lack of subject matter jurisdiction, G-I's appeal from the portion of the order of the Bankruptcy Court denying G-I's application to establish a method to estimate individual asbestos personal injury claims for distribution purposes, styled *G-I Holdings Inc. et al. v. Legal Representative of Present and Future Holders of Asbestos-Related Demands,* Case No. 06-1116;

(d) matters and/or proceedings pending before the United States District Court for the Southern District of New York relating to the prosecution by the Asbestos Claimants Committee and the Legal Representative of alleged avoidance actions of the G-I estate against Samuel J. Heyman and related Entities, styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. et al. v. Heyman et al.,* Case No. 01-Civ-8539 (RWS), and predecessor actions styled *Nettles v. Heyman,* Civ. No. 00-0035 (RWS), and *Stewart v. Heyman,* Civ. No. 00-9769 (RWS); and

9

(e)     matters and/or proceedings pending before the United States Court of Appeals for the Second Circuit relating to G-I's action for damages against certain law firms and other defendants, styled *G-I Holdings Inc. v. Baron & Budd, et al.*, Case No. 06-0174.

1.1.54     Creditor means any Entity holding a Claim.

1.1.55     Debtors means G-I and ACI.

1.1.56     Debtors-in-Possession means the Debtors in their capacity as debtors in possession pursuant to sections 1101(1), 1107(a), and 1108 of the Bankruptcy Code.

1.1.57     Demand means a demand for payment, present or future, referred to in Bankruptcy Code section 524(g)(5) that (i) was not a Claim during the Chapter 11 Cases; (ii) arises out of the same or similar conduct or events that gave rise to the Claims addressed by the Asbestos Permanent Channeling Injunction; and (iii) pursuant to the Plan is to be determined, resolved, and paid by the Asbestos Trust.

1.1.58     Disallowed Claim means a Claim (other than an Asbestos Claim) that is disallowed in its entirety by an order of the Bankruptcy Court or such other court of competent jurisdiction, as the case may be.

1.1.59     Disbursing Agent means Reorganized G-I or its designee in its capacity as disbursing agent pursuant to Section 5.5 of the Plan.

1.1.60     Disclosure Statement means the disclosure statement for the Plan approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

1.1.61     Disputed Claim means a Claim that is none of an Allowed Claim, a Disallowed Claim or an Asbestos Claim, and is any Claim, proof of which was filed, or an Administrative Expense Claim or other Claim, which is the subject of a dispute under the Plan or as to which Claim the Debtors have interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed.

1.1.62     Distribution means any dividend or payment of Cash or other consideration made by the Disbursing Agent to the holder of an Allowed Claim on account of such Claim pursuant to the terms and provisions of this Plan; *provided*, *however*, that the term "Distribution" shall not include or pertain to any payment, transfer, or delivery of Cash, property, or other consideration to the Asbestos Trustees, the Asbestos Trust, or any holder of an Asbestos Claim or Demand.

1.1.63     District Court means the United States District Court for the District of New Jersey.

10

1.1.64     Effective Date means a Business Day selected by the Debtors that is on or after the date by which the conditions precedent to the effectiveness of the Plan specified in Section 10.1(b) of the Plan have been satisfied; *provided*, *however*, that the Effective Date shall occur no later than November 20, 2009.

1.1.65     Encumbrance means, with respect to any asset, mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such asset (including, without express or implied limitation, any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

1.1.66     Entity means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the United States Trustee, or any other Entity.

1.1.67     Environmental Claim means any Claim relating to alleged hazardous materials, hazardous substances, contamination, pollution, waste, fines or mine or mill tailings released, threatened to be released or present in the environment or ecosystem, including without limitation, alleged contamination under federal or state environmental laws, codes, orders or regulations, common law, as well as any entitlements to equitable remedies, including, without limitation, investigation, restoration, natural resource damages, reclamation, remediation and cleanup, including without limitation, any Environmental Claim for Remedial Relief and any Other Environmental Claim; *provided*, *however*, for the avoidance of doubt, the term "Environmental Claim" shall not include or pertain to any Asbestos Claim, Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Asbestos Personal Injury Claim, CCR Claim, Workers' Compensation Claim, or Claim of an Affiliate.

1.1.68     Environmental Claim for Remedial Relief means the following Environmental Claims by a governmental unit with respect to properties currently owned or operated by the Debtors: (i) Claims for recovery of response costs incurred post-petition with respect to response actions taken post-petition to address hazards, threats, or releases; (ii) Claims for recovery of civil penalties for violations of law resulting from post-petition actions of the Debtors; or (iii) actions seeking to compel the performance of an action to address a hazard, threat, or release under applicable environmental law.  "Environmental Claim for Remedial Relief" does not include or pertain to any Environmental Claim  for recovery of pre-petition expenditures or pre-petition penalties.

1.1.69     Equity Interest means any equity interest or proxy related thereto, direct or indirect, in any of the Debtors represented by duly authorized, validly issued and outstanding shares of preferred stock or common stock, stock appreciation rights or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in any of the Debtors, or right to convert into such an equity interest or acquire any equity interest of the Debtors, whether or not transferable, or an option, warrant or right contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Commencement Date; *provided*, *however*, for the avoidance

11

of doubt, the term "Equity Interest" shall not include or pertain to any ACI Class B Shares or G-I Class B Shares.

1.1.70    Final Order means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to (a) the Debtors, the Asbestos Claimants Committee, and the Legal Representative if before the Effective Date, or (b) the Reorganized Debtors and the Asbestos Trust if on or after the Effective Date, and if an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 60 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 9024) or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order; and *provided further, however,* that notwithstanding the filing of a motion under Rule 59 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 9023) with respect to such order, the Debtors, the Asbestos Claimants Committee, and the Legal Representative (or, on and after the Effective Date, the Reorganized Debtors and the Asbestos Trust) shall be authorized jointly to deem any such order a Final Order unless such order affects the Asbestos Trust in which case the Debtors or the Reorganized Debtors, together with the Asbestos Trustees, may deem such order a Final Order.

1.1.71    First Payment To Asbestos Trust means the amount Reorganized G-I shall pay in Cash to the Asbestos Trust on the Effective Date in furtherance of the provisions of the Plan, as quantified in accordance with Section 4.4(c) of the Plan.

1.1.72    Former CCR Members Claims means the Claims asserted against G-I by (a) Pfizer Inc.; Quigley Company, Inc.; United States Gypsum Company; and Asbestos Claims Management Corporation ("ACMC"), each a former member of the CCR, and (b) NGC Bodily Injury Trust as successor to the NGC Settlement Trust, an affiliate of ACMC, seeking recovery of amounts arising from or related to the CCR Producer Agreement.

1.1.73    G-I means G-I Holdings Inc., one of the Debtors in Possession.

1.1.74    G-I Affiliate Claim means a Claim asserted against G-I by any of its Affiliates.

1.1.75    G-I Class B Shares means the new class of common stock authorized by G-I and issued to Holdings prior to the Effective Date, pursuant to Section 4.7 of the Plan, and any certificates evidencing the same.

1.1.76    G-I Equity Interest means an Equity Interest in G-I.

12

1.1.77     G-I Equity Interest Redemption Claim means an Unsecured Claim against G-I for the tender or redemption of an Equity Interest related to the 1989 LBO Transaction.

1.1.78     G-I Non-Priority Tax Penalty Claim means any Unsecured Claim of the Internal Revenue Service under the Tax Code against the Debtors or their estates for penalties (including interest thereon) that is not a Priority Tax Claim.

1.1.79     G-I Priority Non-Tax Claim means any Claim against G-I or its estate, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.1.80     G-I Secured Claim means any Secured Claim against G-I.

1.1.81     G-I Unsecured Claim means an Unsecured Claim against G-I, other than an Administrative Expense Claim, Priority Tax Claim, G-I Priority Non-Tax Claim, G-I Secured Claim, Asbestos Claim, Bonded Claim, Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, CCR Claim, Environmental Claim, G-I Affiliate Claim, or G-I Equity Interest Redemption Claim.

1.1.82     Holdings means G Holdings Inc., the parent company of G-I.

1.1.83     Holdings Pledge Agreement means the "Pledge Agreement of G Holdings Inc." to be entered into by and between Holdings and the Collateral Agent, a copy of which is annexed as Exhibit 1.1.83 to the Plan.

1.1.84     Indirect Trust Claim means any Claim or Demand against G-I, now existing or hereafter arising, that is (i) held by any Entity (other than a director or officer entitled to indemnification pursuant to Section 7.5 of the Plan) who has been, is, or may be a defendant in an action seeking damages for death, bodily injury, sickness, disease, or other personal injuries (whether physical, emotional, or otherwise) to the extent based on, arising from, or attributable to an Asbestos Personal Injury Claim; and (ii) on account of alleged liability of G-I for reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay on account of an Asbestos Personal Injury Claim; provided, however, for the avoidance of doubt, the term "Indirect Trust Claim" shall not include or pertain to the CCR Claim, any Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Claim, Environmental Claim, Workers' Compensation Claim, ACI Affiliate Claim, or G-I Affiliate Claim.

1.1.85     Insured Claim means a Claim arising from an incident or occurrence covered by one or more of the Debtors' insurance policies.

1.1.86     ISP means International Specialty Products, Inc., an Affiliate of the Debtors.

13

1.1.87    Legal Representative means C. Judson Hamlin, the Legal Representative of Present and Future Holders of Asbestos Related Demands appointed by the Bankruptcy Court pursuant to its order dated October 10, 2001.

1.1.88    Letter of Credit means one or more irrevocable standby letters of credit issued by an "Acceptable Letter of Credit Issuer", as defined in the Collateral Agency Agreement, and that otherwise satisfy in form and substance all requirements set forth in the Collateral Agency Agreement.

1.1.89    "LIBOR" means, with respect to an Interest Period, the rate (expressed as a percentage per annum to five decimal places) for deposits in United States dollars for three month periods beginning on the first day of such Interest Period that appears on Telerate Page 3750 as of 11:00 a.m., London time, on the Determination Date.  If Telerate Page 3750 does not include such a rate or is unavailable on a Determination Date, the Company will request the principal London office of any four (4) of the Reference Banks (selected by the Company), to provide such bank's offered rate as of approximately 11:00 a.m., London time, on such Determination Date, to prime banks in the London interbank market, for deposits in a representative amount in United States dollars for a three month period beginning on the first day of such Interest Period.  If at least two such offered quotations are so provided, LIBOR for the Interest Period will be the arithmetic mean of such quotations.  If fewer than two such quotations are so provided, the Company will request each of the principal New York City offices of such Reference Banks, to provide such bank's rate as of approximately 11:00 a.m., New York City time, on such Determination Date, for loans in a representative amount in United States dollars to leading European banks for a three month period beginning on the first day of such Interest Period.  If at least two such rates are so provided, LIBOR for the Interest Period will be the arithmetic mean of such rates.  If fewer than two such rates are so provided, then LIBOR for the Interest Period will be 4.50000% per annum.

1.1.90    Lien means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.1.91    Maximum Amount has the meaning ascribed to that term in the Collateral Agency Agreement.

1.1.92    1989 LBO Transaction means the transaction or series of transactions that took place in or about March 1989, in which the former GAF Corporation and certain of its wholly-owned direct or indirect subsidiaries acquired a predecessor also named GAF Corporation in a management-led buyout and in which shareholders of the acquired predecessor company were offered Cash for the tender of their shares in the acquired company.

1.1.93    Noteholder Defendants means any Entity that holds or held public debt issued before the Confirmation Date by BMCA, and all Entities that were named as defendants in the action filed by the Asbestos Claimants Committee styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. v. Building Materials Corp. of America, et al. (In re G-I Holdings, Inc. and ACI Inc.)*, Adv. No. 04-2192 (RG) (Bankr. D.N.J.), or in the proposed complaint submitted by the Asbestos Claimants Committee in the action styled *Official Committee of Asbestos Claimants of G-I*

14

*Holdings Inc. v. Those Parties listed on Exhibit A, et. al.*, Adv. No. 01-3013 (RG) (Bankr. D.N.J.). "Noteholder Defendants" specifically includes, but is not limited to, all current or former parents, subsidiaries, affiliates, advisors, trustees, agents and/or investment managers of any such holder or former holder of public debt issued before the Confirmation Date by BMCA, but only in their capacity as such.

        1.1.94     <u>Other Environmental Claim</u> means any Environmental Claim that is not an Environmental Claim for Remedial Relief, including without limitation Claims for monetary relief for reimbursement or contribution in respect of prepetition remediation expenditures and any prepetition monetary Claims relating to environmental laws or regulations, whether for property owned or operated by G-I prepetition, postpetition, or both.

        1.1.95     <u>Plan</u> means this Eighth Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc. Pursuant to Chapter 11 of the Bankruptcy Code, including, without limitation, the Plan Documents, as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

        1.1.96     <u>Plan Documents</u> mean all documents, attachments, schedules, and exhibits related to the Plan, including, without limitation, the documents contained in the Plan Supplement.

        1.1.97     <u>Plan Proponents</u> means G-I, ACI, the Asbestos Claimants Committee, and the Legal Representative.

        1.1.98     <u>Plan Sponsor</u> means Samuel J. Heyman or any of his Affiliates or designees.

        1.1.99     <u>Plan Supplement</u> means the Supplement to the Plan containing the exhibits and schedules to the Plan that are not served with the approved Disclosure Statement upon holders of Claims and Equity Interests in connection with the solicitation of votes to accept or reject the Plan.

        1.1.100     <u>Priority Tax Claim</u> means any Claim of a governmental unit against the Debtors entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

        1.1.101     <u>Protected Party</u> **means any and all of the following parties:**

(a)        **the Debtors;**

(b)        **the Reorganized Debtors;**

(c)        **any Affiliate listed on Exhibit 1.1.101(c) hereto;**

(d)        **any Entity that, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any assets of the Debtors, the Reorganized Debtors, or the Asbestos Trust, but solely to the extent that an Asbestos Claim is asserted against such Entity by reason of its becoming such a transferee or successor;**

15

(e)     any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to the Reorganized Debtors, any Protected Party, or the Asbestos Trust or to a successor to, or transferee of, any assets of the Debtors, the Reorganized Debtors, or the Asbestos Trust, but solely to the extent that an Asbestos Claim is asserted against such Entity by reason of its making such loan or to the extent that any pledge of assets made in connection with such a loan is sought to be upset or impaired; or

(f)     any Entity alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on the Debtors, the Reorganized Debtors, or the Asbestos Trust on account of Asbestos Claims by reason of one or more of the following:

(i)     such Entity's ownership of a financial interest in the Debtors, the Reorganized Debtors, a past or present Affiliate of the Debtors or the Reorganized Debtors, or a predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such;

(ii)     such Entity's involvement in the management of the Debtors, an Affiliate, the Reorganized Debtors, or any predecessor in interest of the Debtors, or the Reorganized Debtors, but solely in such Entity's capacity as such;

(iii)     such Entity's service as an officer, director, or employee of the Debtors, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, any predecessor in interest of the Debtors or the Reorganized Debtors, or any Entity that owns or at any time has owned a financial interest in the Debtors or the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such;

(iv)     such Entity's provision of insurance to the Debtors, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, any predecessor in interest of the Debtors or the Reorganized Debtors, any Entity that owns or at any time has owned a financial interest in the Debtors or the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but only to the extent that the Debtors, the Reorganized Debtors, or the Asbestos Trust enters into a settlement with such Entity that is approved by the Bankruptcy Court and expressly provides that such Entity shall be entitled to the protection of the Asbestos Permanent Channeling Injunction as a Protected Party; or

(v)     such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction (including involvement in providing financing or advice to an Entity involved in such a transaction or acquiring or selling a financial interest in an Entity as part of such a

16

**transaction), affecting the financial condition of the Debtors, an Affiliate, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such.**

1.1.102    Record Date means the record date for distributions under the Plan, as set forth in the Confirmation Order.

1.1.103    Reorganized Debtors means the Debtors from and after the Effective Date.

1.1.104    Reorganized Debtors' Certificate of Incorporation means the certificate of incorporation or articles of incorporation of each of the Reorganized Debtors that are substantially in the form of Schedule 1.1.104 of the Plan Supplement.

1.1.105    Reorganized Debtors' By-Laws mean the respective by-laws of the Reorganized Debtors that are substantially in the form of Schedule 1.1.105 of the Plan Supplement.

1.1.106    Reorganized G-I means G-I from and after the Effective Date.

1.1.107    Schedules mean, unless otherwise specified, the respective schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

1.1.108    Secured Claim means any Claim (i) to the extent reflected in the Schedules or in a proof of claim as a Secured Claim, which is validly and unavoidably secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (ii) that is subject to a valid setoff right.

1.1.109    Supersedeas Bond Action means any rights, defenses, counterclaims, or affirmative causes of action of the Debtors or the Reorganized Debtors with respect to a Bonded Claim, or with respect to any supersedeas bond or other form of security or payment assurance issued in connection with a Bonded Claim, or against the issuer or insurer of any payment assurance issued in connection with a Bonded Claim.

1.1.110    Tax Code means the Internal Revenue Code of 1986, as amended from time to time.

1.1.111    Trust Causes of Action means any and all actions, claims, rights, defenses, counterclaims, suits, and causes of action of the Debtors, whether known or unknown, at law, in equity or otherwise, whenever or wherever arising under the laws of any jurisdiction attributable to: (a) all defenses to any Asbestos Claim; (b) with respect to any Asbestos Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect Claim of any kind

17

whatsoever, whenever, and wherever arising or asserted; and (c) subject to the provisions of this Plan, any other Claims or rights with respect to Asbestos Claims that the Debtors would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Asbestos Claim had asserted it by initiating or continuing civil litigation against any such Debtor.  Notwithstanding the foregoing, Trust Causes of Action shall not include (i) any of the Debtors' rights arising under or attributable to the Supersedeas Bond Actions; (ii) the property, rights, or assets, if any, of the Debtors or their Affiliates that were previously used to secure or obtain a supersedeas bond with respect to any Bonded Claim and which are recoverable or recovered by any of the Debtors or any of their Affiliates after full satisfaction of such Claim; or (iii) any Claims or rights that were or could have been asserted in the Covered Matters.

1.1.112     Trust Note means the note in the original principal amount of Five Hundred Sixty Million Dollars ($560,000,000), to be authorized and issued pursuant to the Plan by Reorganized G-I on the Effective Date, a copy of which is Exhibit 1.1.112 to the Plan, which Trust Note shall be secured by the Holdings Pledge Agreement until the Holdings Pledge Agreement is replaced by the Letter of Credit, as provided in Sections 4.4(c)(ii) and (iii) of the Plan.

1.1.113     Unsecured Claim means any Claim against one or more of the Debtors (regardless of whether such Claim is covered by insurance), to the extent that such Claim is neither secured nor entitled to priority under applicable law.  Unsecured Claims shall expressly include, without limitation, (a) any Claim arising from the rejection of an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) any portion of a Claim that is not a Secured Claim (i.e., a deficiency claim); (c) any deficiency portion of a Bonded Non-Asbestos Claim remaining after crediting proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled; (d) any Claims arising from the provision of goods or services to the Debtors prior to the Commencement Date, including the Claims of commercial trade creditors; (e) any G-I Non-Priority Tax Penalty Claim and (f) to the extent Allowed, the Former CCR Member Claims.  Unless otherwise specifically provided in an applicable provision of this Plan, Unsecured Claims shall not include (i) Administrative Expense Claims; (ii) Priority Tax Claims; (iii) G-I Priority Non-Tax Claims; (iv) ACI Priority Non-Tax Claims; (v) G-I Secured Claims; (vi) ACI Secured Claims; (vii) Asbestos Claims; (viii) Asbestos Property Damage Claims; (ix) Asbestos Property Damage Contribution Claims; (x) Environmental Claims; (xi) Bonded Claims; (xii) the CCR Claim; (xiii) G-I Affiliate Claims; (xiv) ACI Affiliate Claims; (xv) Workers' Compensation Claims, or (xvi) G-I Equity Interest Redemption Claims.

1.1.114     US Adversary Complaint means the adversary proceeding filed by the United States of America against G-I for declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a); Section 303 of the CAA , 42 U.S.C. § 7603; and Section 7003 of RCRA, 42 U.S.C. § 6973, in connection with the VAG Site .

1.1.115     US Environmental Claim means the proof of claim filed by the United States of America against the G-I and certain of its Affiliates on behalf of the Environmental Protection Agency, the National Oceanic and Atmospheric Administration, and the Department of the Interior alleging claims arising under Section 107 of the Comprehensive Environmental

18

Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607; the Federal Water Pollution Control Act ("FWPCA"), as amended, 35 U.S.C. § 1251 *et seq.*; Section 303 of the Clean Air Act ("CAA"), 42 U.S.C. § 7603; and Section 7003 of the Resource Recovery Act ("RCRA"), 42 U.S.C. § 6973, as more fully described in the Consent Decree and Settlement Agreement.

        1.1.116   VAG Site means the Vermont Asbestos Group Mine Site in Lowell and Eden, Vermont.

        1.1.117   Vermont Environmental Claim means the proof of claim filed by the State of Vermont relating to the VAG Site that is the subject of the US Adversary Complaint, as more fully described in the Consent Decree and Settlement Agreement.

        1.1.118   Workers' Compensation Claim means a Claim brought by any person for alleged entitlement to benefits from G-I under any workers' compensation statute, whether asserted directly by the person claiming such benefits or indirectly or derivatively by an Entity claiming subrogation, reimbursement, contribution, or indemnity for the payment of such benefits.

     1.2   Other Definitions.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code.

     1.3   Rules of Construction.  Unless otherwise expressly provided,

        (a)   all section, schedule or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time;

        (b)   all references to dollars are to the lawful currency of the United States of America;

        (c)   the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole; and

        (d)   the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

## ARTICLE II

### TREATMENT OF ADMINISTRATIVE EXPENSE
### CLAIMS AND PRIORITY TAX CLAIMS

     2.1   Administrative Expense Claims.  Except to the extent that any Entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment with the applicable Debtor, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and

the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor in Possession shall be paid in full and performed by the applicable Reorganized Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2     <u>Professional Compensation and Reimbursement Claims</u>.  All holders of any Claim for an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by a date no later than the date that is ninety (90) days after the Effective Date or by such other date as may be fixed by the Bankruptcy Court, and (ii) if granted such an award by the Bankruptcy Court, be paid in full in such amounts as are Allowed by the Bankruptcy Court (A) on the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, or (B) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Reorganized Debtors.

2.3     <u>No Double Payment of Administrative Claims</u>.  To the extent that an Administrative Expense Claim is Allowed against the Estate of each Debtor, there shall be only a single recovery on account of such Allowed Claim; *provided, however*, that an Entity holding an Allowed Claim against each of the Debtors as co-obligors on such Claim may recover distributions from any such Debtor until such Entity has received payment in full on such Allowed Claim.

2.4     <u>Priority Tax Claims</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the applicable Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the applicable Reorganized Debtor and in full and complete satisfaction of any and all liability attributable to such Priority Tax Claim on the latest of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law, or as soon thereafter as is reasonably practicable, (a) Cash in an amount equal to such Allowed Priority Tax Claim, (b) a transferable note in the principal amount equal to such Allowed Priority Tax Claim, together with interest at a rate per annum equal to LIBOR in effect on the Confirmation Date plus 1%, payable in Cash on the sixth (6th) anniversary from the date of the final determination of the assessment of such Allowed Priority Tax Claim (for purposes of this section 2.4, such date means the date upon which the Allowed Priority Tax Claim is determined by a Final Order), or (c) any combination of Cash and a note, on the terms provided in subsections (a) and (b) hereof, in an aggregate Cash and principal amount equal to such Allowed Priority Tax Claim; *provided*, that the Debtors reserve the right to prepay any such note in part or in whole at any time without premium or penalty; and *provided, further*, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising after the Commencement Date with

20

respect to or in connection with such Allowed Priority Tax Claim; and *provided further*, that any assessment of a tax liability made against any entity the payment of which would give rise to a claim for indemnification by such entity against the Reorganized Debtors shall (i) not exceed the amount of any Allowed Priority Tax Claim, (ii) for purposes of this Section 2.4, be deemed to be an assessment of an Allowed Priority Tax Claim, and (iii) be subject to the timing and payment terms set forth herein, such that any such assessment may be satisfied in full upon such entity's delivering a note issued by G-I having the same terms as described in (b) hereof.

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 1A:  G-I Priority Non-Tax Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 1B:  ACI Priority Non-Tax Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 2A:  G-I Secured Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 2B:  ACI Secured Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 3A:  G-I Unsecured Claims | Impaired | Yes |
| Class 3B:  ACI Unsecured Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 3C:  G-I Non-Priority Tax Penalty Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 4:  Environmental Claims for Remedial Relief | Unimpaired | No (deemed to accept the Plan) |
| Class 5: Other Environmental Claims | Impaired | No (deemed to reject the Plan) |
| Class 5A: US Environmental Claim and Vermont Environmental Claim | Impaired | No (the Consent Decree and Settlement Agreement constitutes the claimholders' vote to accept the Plan) |
| Class 6:  Asbestos Claims | Impaired | Yes |

21

| Class 7:  Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims | Impaired | Yes |
|---|---|---|
| Class 8:  CCR Claim | Unimpaired if CCR Settlement Agreement is approved before voting deadline; otherwise impaired. | No (deemed to accept the Plan) if CCR Settlement Agreement is approved prior to voting deadline; otherwise Yes. |
| Class 9:  Bonded Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 10A:  G-I Affiliate Claims | Impaired | No (deemed to reject the Plan) |
| Class 10B:  ACI Affiliate Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 11:  G-I Equity Interest Redemption Claims | Impaired | No (deemed to reject the Plan) |
| Class 12A:  G-I Equity Interests | Impaired | No (deemed to reject the Plan) |
| Class 12B:  ACI Equity Interests | Impaired | No (deemed to reject the Plan) |

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Equity Interests are classified for all purposes, including, without limitation, voting, confirmation, and distribution pursuant to the Plan, as set forth herein.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  Other than Asbestos Claims, a Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3.1     Class 1A – G-I Priority Non-Tax Claims.

(a)     Classification:  Class 1A consists of all G-I Priority Non-Tax Claims.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed G-I Priority Non-Tax Claims are unaltered by the Plan, or such Allowed G-I

22

Priority Non-Tax Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)     Voting:  Class 1A is unimpaired by the Plan.  Each holder of a Class 1A Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.2     Class 1B – ACI Priority Non-Tax Claims.

(a)     Classification:  Class 1B consists of all ACI Priority Non-Tax Claims.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed ACI Priority Non-Tax Claims are unaltered by the Plan, or such Allowed ACI Priority Non-Tax Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)     Voting:  Class 1B is unimpaired by the Plan.  Each holder of a Class 1B Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.3     Class 2A – G-I Secured Claims.

(a)     Classification:  Class 2A consists of all G-I Secured Claims.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed G-I Secured Claims are unaltered by the Plan, or such Allowed G-I Secured Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)     Voting:  Class 2A is unimpaired by the Plan.  Each holder of a Class 2A Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.4     Class 2B – ACI Secured Claims.

(a)     Classification:  Class 2B consists of all ACI Secured Claims.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed ACI Secured Claims are unaltered by the Plan, or such Allowed ACI Secured Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)     Voting:  Class 2B is unimpaired by the Plan.  Each holder of a Class 2B Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

NYA 584340.26

3.5     Class 3A – G-I Unsecured Claims.

(a)     Classification:  Class 3A consists of all Unsecured Claims against G-I.  To the extent the Former CCR Members Claims become Allowed Former CCR Member Claims, such Claims shall be entitled to the treatment provided for Allowed Claims in Class 3A.

(b)     Treatment:  On the later of (i) the Effective Date and (ii) the date on which a G-I Unsecured Claim becomes an Allowed G-I Unsecured Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed G-I Unsecured Claim shall receive Cash in an amount equal to 8.6 % of such Allowed Claim..

(c)     Voting:  Class 3A is impaired by the Plan.  Each holder of an Allowed Class 3A Claim is entitled to vote to accept or reject the Plan.

3.6     Class 3B – ACI Unsecured Claims

(a)     Classification:  Class 3B consists of all Unsecured Claims against ACI.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed ACI Unsecured Claims are unaltered by the Plan, or such Allowed ACI Unsecured Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)      Voting:  Class 3B is unimpaired by the Plan.  Each holder of a Class 3B Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.7     Class 3C - G-I Non-Priority Tax Penalty Claims

(a)     Classification:  Class 3C consists of all G-I Non-Priority Tax Penalty Claims.

(b)     Treatment:  On the later of (i) the Effective Date and (ii) the date on which a G-I Non-Priority Tax Penalty Claim becomes an Allowed G-I Non-Priority Tax Penalty Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed G-I Non-Priority Tax Penalty Claim shall receive Cash in an amount equal to 100% of such Allowed Claim; *provided*, *however*, that if necessary to render any such Class 3C Claim unimpaired, each holder of an Allowed G-I Non-Priority Tax Penalty Claim shall also receive Cash in an amount sufficient for payment in full of postpetition interest on any such Class 3C Claim, to the extent accrued under applicable non-bankruptcy law.

(c)     Voting:  Class 3C is unimpaired by the Plan.  Each holder of a Class 3C Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

24

3.8     Class 4 – Environmental Claims for Remedial Relief

(a)     Classification:  Class 4 consists of all Environmental Claims for Remedial Relief.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed Environmental Claims for Remedial Relief are unaltered by the Plan, or such Allowed Environmental Claims for Remedial Relief shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)      Voting:  Class 4 is unimpaired by the Plan.  Each holder of a Class 4 Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.9     Class 5 – Other Environmental Claims

(a)     Classification:  Class 5 consists of Other Environmental Claims.

(b)     Treatment:  On the later of (i) the Effective Date and (ii) the date on which an Other Environmental Claim becomes an Allowed Other Environmental Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Environmental Claim shall receive Cash in an amount equal to 8.6 % of such Allowed Claim.

(c)     Voting.  Class 5 is impaired by the Plan.  Each holder of an Allowed Class 5 Claim is conclusively deemed to reject the Plan and is thus not entitled to vote to accept or reject the Plan.

3.10    Class 5A – US Environmental Claim and Vermont Environmental Claim

(a)     Classification:  Class 5A consists of the US Environmental Claim and the Vermont Environmental Claim.

(b)     Treatment:   On the Effective Date, the respective holders of the US Environmental Claim and Vermont Environmental Claim shall receive the treatment afforded to such Claims pursuant to the Consent Decree and Settlement Agreement.  With respect to environmental liabilities to the United States and the State of Vermont, nothing in this Plan shall be construed to discharge or release any non-debtor from liability to the United States or the State of Vermont other than as set forth in the Consent Decree, subject to the provisions of the Plan with respect to the injunctive provisions of 11 U.S.C. § 524(g).

(c)     Voting:  Class 5A is impaired by the Plan.  The Consent Decree and Settlement Agreement constitutes the vote by the holders of the Class 5A Claims to accept the Plan.

(d)     Global Settlement and Compromise.  The Plan incorporates a global settlement and compromise between G-I and its Affiliates with the United States and the

25

State of Vermont of the US Environmental Claim, the Vermont Environmental Claim, and the US Adversary Complaint, which is memorialized in the Consent Decree and Settlement Agreement. This settlement and compromise is subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019. The treatment to be afforded the United States and Vermont with regard to the US Environmental Claim and the Vermont Environmental Claim is set forth in the Consent Decree and Settlement Agreement. To the extent there is an inconsistency between the provisions of the Consent Decree and Settlement Agreement and the Plan with regard to the treatment of the US Environmental Claim and the Vermont Environmental Claim, the Consent Decree and Settlement Agreement will control.

3.11    Class 6 – Asbestos Claims.

(a)    Classification:  Class 6 consists of all Asbestos Claims.

(b)    Treatment:  All Class 6 Claims shall be resolved, determined, and paid pursuant to section 524(g) of the Bankruptcy Code and the terms, provisions, and procedures of the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures. The Asbestos Trust will be funded in accordance with the provisions of Section 4.4 of the Plan. The sole recourse of the holder of a Class 6 Claim shall be the Asbestos Trust, and such holder shall have no right whatsoever at any time to assert its Class 6 Claim against any Protected Party. *Without limiting the foregoing, on the Effective Date, all holders of Asbestos Claims shall be subject to the Asbestos Permanent Channeling Injunction*.

(c)    Voting:  Class 6 is impaired by the Plan. Each holder of a Class 6 Claim is entitled to vote to accept or reject the Plan.

3.12    Class 7 – Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims

(a)    Classification:  Class 7 consists of all Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims.

(b)    Treatment:  On the later of (i) the Effective Date and (ii) the date on which an (A) Asbestos Property Damage Claim becomes an Allowed Asbestos Property Damage Claim or (B) Asbestos Property Damage Contribution Claim becomes an Allowed Asbestos Property Damage Contribution Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Asbestos Property Damage Claim or Allowed Asbestos Property Damage Contribution Claim shall receive Cash in an amount equal to 8.6 % of such Allowed Claim.

(c)    Voting:  Class 7 is impaired by the Plan. Each holder of an Allowed Class 7 Claim is entitled to vote to accept or reject the Plan.

26

3.13    Class 8 – CCR Claim

(a)    Classification:  Class 8 consists of the CCR Claim.

(b)    Treatment:

(i)    If, by the Effective Date, the CCR Claim has been Allowed pursuant to a CCR Settlement Agreement approved by the Bankruptcy Court and executed and delivered by the parties thereto, then on the Effective Date or as soon thereafter as is reasonably practicable, and in accordance with such CCR Settlement Agreement, the Reorganized Debtors shall pay to CCR the CCR Payment Amount as specified in clause (a) of the definition thereof.  If no such CCR Settlement Agreement is approved, executed and delivered, then the Allowed amount, if any, of the CCR Claim shall be determined in a CCR Allowance Proceeding.  If, before the Effective Date, the CCR Claim is Allowed pursuant to a Final Order in a CCR Allowance Proceeding, the Reorganized Debtors shall pay to CCR, on the Effective Date or as soon thereafter as is reasonably practicable, the CCR Payment Amount as specified in clause (b) of the definition thereof.  The Plan may be consummated notwithstanding the pendency of a CCR Allowance Proceeding if, but only if, the Asbestos Claimants Committee and the Legal Representative, in their sole discretion, have provided the written consents described in Section 12.2(b) of the Plan.  Upon the delivery of such written consents, the Reorganized Debtors shall create the CCR Escrow on the Effective Date as provided in Section 4.4(c)(i)(C) of the Plan, in the amount required by that Section, and thereafter, upon the entry of a Final Order in such CCR Proceeding, shall cause a sum equal to the CCR Payment Amount to be disbursed to CCR from the CCR Escrow.  Once the CCR Escrow is created, the Debtors and Reorganized Debtors shall have no liability in respect of the CCR Claim beyond having the escrow agent turn over the appropriate amount from the CCR Escrow.

(ii)    Debtors believe the Former CCR Member Claims are derivative of the CCR Claim, and holders of Former CCR Member Claims have no individual right to assert such Claims against G-I; thus Debtors believe the CCR has compromised and settled these derivative Claims pursuant to the CCR Settlement Agreement; provided, however, to the extent the Former CCR Members Claims become Allowed Former CCR Member Claims, such Claims shall be entitled to the treatment provided for Allowed Claims in Class 3A.

(c)    Voting:  If the CCR Settlement Agreement has been executed and delivered by each of the parties thereto and approved by the Bankruptcy Court prior to the Confirmation Hearing, the Class 8 Claim is unimpaired by the Plan and the holder of the Class 8 Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.  If no CCR Settlement Agreement has been approved by the Bankruptcy Court prior to the Confirmation Hearing, then Class 8 Claim is impaired by the Plan, and the holder of an Allowed Class 8 Claim is entitled to vote to accept or reject the Plan.

NYA 584340.26

3.14    Class 9 – Bonded Claims

(a)    Classification:  Class 9 consists of all Bonded Claims.

(b)    Treatment:  On the later of (i) the Effective Date and (ii) the date on which a Bonded Claim becomes an Allowed Bonded Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Bonded Claim shall receive Cash in an amount equal to such Allowed Bonded Claim; *provided, however*, that (i) in no event shall such Cash distribution exceed the amount of the bond securing such Allowed Bonded Claim and (ii) each such holder of an Allowed Bonded Claim shall look solely to the bond securing its Claim for such Cash distribution, and shall receive no Cash distribution from G-I.  If the holder of the Bonded Claim and G-I do not agree on the Allowed amount of the Bonded Claim, the Bankruptcy Court shall determine the amount of such holder's Allowed Bonded Claim, which amount shall then be paid to such holder from the bond securing such holder's Allowed Bonded Claim.

(c)    Voting:  Class 9 is unimpaired by the Plan.  Each holder of a Class 9 Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.15    Class 10A – G-I Affiliate Claims

(a)    Classification:  Class 10A consists of all G-I Affiliate Claims.

(b)    Treatment:  On the Effective Date, each holder of a G-I Affiliate Claim shall receive no distribution of Cash or property in respect of such Claim.

(c)    Voting:  Class 10A is impaired by the Plan.  Each holder of a G-I Affiliate Claim is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

3.16    Class 10B – ACI Affiliate Claims

(a)    Classification:  Class 10B consists of all ACI Affiliate Claims.

(b)    Treatment:  The legal, equitable, and contractual rights of the holders of Allowed ACI Affiliate Claims are unaltered by the Plan, or such Allowed ACI Affiliate Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    Voting:  Class 10B is unimpaired by the Plan.  Each holder of an ACI Affiliate Claim is conclusively presumed to have accepted the Plan and is thus not entitled to vote to accept or reject the Plan.

28

3.17    Class 11 – G-I Equity Interest Redemption Claims

(a)    <u>Classification</u>:  Class 11 consists of all G-I Equity Interest Redemption Claims.

(b)    <u>Treatment</u>:  On the Effective Date, each holder of a G-I Equity Interest Redemption Claim shall receive no distribution of Cash or property in respect of such Claim.

(c)    <u>Voting</u>:  Class 11 is impaired by the Plan.  Each holder of a G-I Equity Interest Redemption Claim is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

3.18    Class 12A – G-I Equity Interests

(a)    <u>Classification</u>:  Class 12A consists of all G-I Equity Interests.

(b)    <u>Treatment</u>:  On the Effective Date, all instruments evidencing a G-I Equity Interest (but not the G-I Class B Shares) shall be canceled without further action under any applicable agreement, law, regulation, or rule. The G-I Equity Interests shall be extinguished and holders of G-I Equity Interests shall not receive nor retain any property under the Plan.

(c)    <u>Voting</u>:  Class 12A is impaired by the Plan.  Each holder of a G-I Equity Interest is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

3.19    Class 12B – ACI Equity Interests

(a)    <u>Classification</u>:  Class 12B consists of all ACI Equity Interests.

(b)    <u>Treatment</u>:  On the Effective Date, all instruments evidencing an ACI Equity Interest (but not the ACI Class B Shares) shall be canceled without further action under any applicable agreement, law, regulation, or rule. The ACI Equity Interests shall be extinguished and holders of ACI Equity Interests shall not receive nor retain any property under the Plan.

(c)    <u>Voting</u>:  Class 12B is impaired by the Plan.  Each holder of an ACI Equity Interest is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

# ARTICLE IV

## IMPLEMENTATION OF PLAN

4.1    <u>Compromise and Settlement</u>.  The Asbestos Claimants Committee and the Legal Representative have alleged that the liability of G-I for Asbestos Claims and Demands exceeds the value of G-I's estate by several billion dollars.  In addition, the Asbestos Claimants Committee and

29

the Legal Representative have pursued a number of causes of action against G-I and certain of its present and former Affiliates in the Bankruptcy Court, District Court and the United States District Court for the Southern District of New York.  G-I disputes the aggregate liability for Asbestos Claims and Demands alleged by the Asbestos Claimants Committee and the Legal Representative, and G-I or its Affiliates have contended that the above-mentioned causes of action are without merit. The Plan incorporates a global settlement and compromise of all of the disputes in these Chapter 11 Cases among G-I and its Affiliates, the Asbestos Claimants Committee, the Legal Representative, and all other parties to the causes of action referred to above, including the causes of action that were or could have been asserted by the Asbestos Claimants Committee and/or Legal Representative in the Covered Matters.

4.2    Creation of Asbestos Trust.  Effective as of the Effective Date, the Asbestos Trust shall be created.  The Asbestos Trust shall be a "qualified settlement fund" within the meaning of section 468B of the Tax Code.  The purpose of the Asbestos Trust is, among other things, (a) to direct the processing, resolution, liquidation, and payment of all Asbestos Claims in accordance with section 524(g) of the Bankruptcy Code, the Plan, the Asbestos Trust Agreement, the Asbestos Trust Distribution Procedures, and the Confirmation Order, and (b) to preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Asbestos Claims.

4.3    Appointment of Asbestos Trustees.  On the Confirmation Date, the Bankruptcy Court shall appoint the individuals selected jointly by the Asbestos Claimants Committee and the Legal Representative to serve as the Asbestos Trustees for the Asbestos Trust pursuant to the terms of the Asbestos Trust Agreement.  Such appointment shall be effective as of the Effective Date.  The individuals so appointed shall be identified in Exhibit 4.3 of the Plan.

4.4    Transfer of Certain Property to the Asbestos Trust.

(a)    Transfer of Asbestos Claims Books and Records.  On the Effective Date or as soon thereafter as is reasonably practicable, the books and records of the Debtors that pertain directly to Asbestos Claims shall be transferred, assigned, or otherwise disposed of pursuant to the terms and provisions of a certain Cooperation Agreement to be entered into by and between the Reorganized Debtors and the Asbestos Trust on the Effective Date, a copy of which will be set forth in the Plan Supplement as Schedule  4.4(a) thereto.

(b)    Transfer of CCR Claims Books and Records.  On the date on which (i) the CCR Payment Amount is paid to CCR, consistent with the terms of the CCR Settlement Agreement, or (ii) the Final Order is entered in the CCR Allowance Proceeding, as applicable, or as soon thereafter as is practicable, CCR shall assign to the Asbestos Trust all data and documentation concerning the underlying Asbestos Personal Injury Claims and any rights and claims against G-I that CCR received by agreement or operation of law in settling such Claims.

(c)    <u>Effective Date Transfers of Plan Consideration</u>.

    (i)    <u>Cash Payment</u>.

        (A)    On the Effective Date, if the CCR Claim has been Allowed and the CCR Payment Amount is $10.0 million or less, the Reorganized Debtors' First Payment To Asbestos Trust shall be Cash in the aggregate amount of $215,000,000 less half of the CCR Payment Amount.

        (B)    On the Effective Date, if the CCR Claim has been Allowed and the CCR Payment Amount is greater than $10.0 million, the Reorganized Debtors' First Payment To Asbestos Trust shall be Cash in an aggregate amount calculated by subtracting the CCR Payment Amount from $220,000,000.

        (C)    If a CCR Allowance Proceeding remains pending after confirmation of the Plan but the Asbestos Claimants Committee and the Legal Representative have provided the written consents described in Section 12.2(b) of the Plan, then the Reorganized Debtors shall create the CCR Escrow on the Effective Date.  The Reorganized Debtors shall deposit the CCR Escrow Amount into the CCR Escrow, for eventual disbursement to CCR if, when, and to the extent the CCR Claim is Allowed pursuant to a Final Order in the CCR Allowance Proceeding.  If the CCR Escrow becomes applicable, the Reorganized Debtors' First Payment To Asbestos Trust shall be computed as $220,000,000 *minus* the CCR Escrow Amount, and CCR's sole recourse for payment of the CCR Claim shall be against the CCR Escrow.  Any balance remaining in the CCR Escrow after the CCR Claim is paid or disallowed shall be distributed as follows: (i) If the CCR Claim is disallowed by Final Order, Reorganized G-I shall receive $5 million *plus* an allocable *pro rata* share of any CCR Escrow Earnings, and the Asbestos Trust shall receive all remaining proceeds of the CCR Escrow, including all remaining CCR Escrow Earnings;  (ii) if the CCR Claim is Allowed by Final Order and the resulting CCR Payment Amount is $10 million or less, Reorganized G-I shall receive the difference between $5 million and 50% of the CCR Payment Amount, *plus* a *pro rata* share of any CCR Escrow Earnings, and the Asbestos Trust shall receive the entire remaining balance of the CCR Escrow *plus* all remaining CCR Escrow Earnings; and  (iii) if the CCR Claim is allowed by Final Order and the resulting CCR Payment Amount is

31

more than $10 million, the Asbestos Trust shall receive the entire remaining balance of the CCR Escrow *plus* all CCR Escrow Earnings.

(ii)    Other Consideration.  On the Effective Date, Reorganized G-I shall execute and deliver to the Asbestos Trust the Trust Note, as well as any and all documents and instruments related thereto.  Also on the Effective Date, subject to Section 4.4(c)(iii) of the Plan, the respective parties to the following agreements and instruments shall execute and deliver the same to the Collateral Agent: the Holdings Pledge Agreement and the Letter of Credit.

(iii)    Release of Holdings Pledge Agreement Upon Delivery of Letter of Credit.  On the Effective Date, Reorganized G-I or the Plan Sponsor shall provide and deliver to the Collateral Agent, or may cause other persons to provide and deliver to the Collateral Agent, a Letter of Credit in the Maximum Amount.  Upon delivery of such Letter of Credit to the Collateral Agent, the Holdings Pledge Agreement shall be automatically terminated, and the Capital Stock Lien shall be immediately extinguished; *provided, however*, that the extinguishment of the Capital Stock Lien shall not in any way discharge, release or extinguish the Plan Sponsor's obligations under the other Plan Documents.

(d)    Post-Effective Date Transfers of Plan Consideration.  After the Effective Date, and in addition to the First Payment to Asbestos Trust, Reorganized G-I shall make the payments set forth in the Trust Note as and when due.

(e)    Cash Resources for Plan Implementation.  To carry out the Plan, the Reorganized Debtors, in their sole discretion,  may fund any payment obligations under the Plan using (A) cash flow from BMCA, (B) dividends from any direct or indirect subsidiary of the Reorganized Debtors, (C) contributions to capital of the Reorganized Debtors from Plan Sponsor, (D) sales of Equity Interests in, or assets of, the Reorganized Debtors or any of their direct or indirect subsidiaries or (E) borrowings by Reorganized Debtors; provided however, that the Cash necessary to pay holders of Allowed G-I Non-Priority Tax Penalty Claims shall be provided by ISP.

(f)    Assumption of Certain Liabilities by the Asbestos Trust.  On the Effective Date, subject to the terms of the Plan Documents and in accordance with sections 524(g) and 1141 of the Bankruptcy Code, the Asbestos Trust shall assume and succeed to all liability and responsibility for all Asbestos Claims; the Reorganized Debtors shall be completely discharged of such Claims and shall have no further financial or other responsibility or liability for pending or future Asbestos Claims or Demands; and all Protected Parties shall receive the protections of the Asbestos Permanent Channeling Injunction.

(g)    Assignment and Enforcement of Trust Causes of Action.  On the Effective Date, by virtue of the confirmation of this Plan, without further notice, action, or deed, the Trust Causes of Action shall be automatically assigned to, and indefeasibly vested in, the

32

Asbestos Trust, and the Asbestos Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, with the exclusive right to enforce any and all of the Trust Causes of Action against any Entity, and the proceeds of the recoveries of any such Trust Causes of Action shall be deposited in the Asbestos Trust; *provided, however*, that nothing herein shall alter, amend or modify the Asbestos Permanent Channeling Injunction, releases, discharges, or Supersedeas Bond Action provisions contained elsewhere in this Plan.

4.5     <u>Institution and Maintenance of Legal and Other Proceedings</u>.   As of the date subsequent to the Effective Date on which the Asbestos Trustees confirm in writing to the Reorganized Debtors that the Asbestos Trust is in a position to assume the responsibility, the Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Trust, including Trust Causes of Action.  The Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all such actions in the name of G-I, ACI, or any of the Reorganized Debtors if deemed necessary or appropriate by the Asbestos Trust.  The Asbestos Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred subsequent to the Effective Date arising from or associated with any legal action or other proceeding that is the subject of this subsection.

4.6     <u>Supersedeas Bonds and Payment Assurances</u>.

(a)     <u>Preserved Actions</u>.  All Supersedeas Bond Actions and the rights and Claims asserted or to be asserted therein shall be preserved and shall be prosecuted or defended, as the case may be, by the Reorganized Debtors on and after the Effective Date.

(b)     <u>Assumption by the Asbestos Trust</u>.  As of the Effective Date, the Asbestos Trust shall assume, and shall have exclusive liability for, any deficiency portion of a Bonded Asbestos Personal Injury Claim remaining after crediting proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled.  To the extent the Reorganized Debtors successfully prosecute or defend against a Supersedeas Bond Action resulting in the discharge or release of the relevant supersedeas bond or other payment assurance provided in connection therewith, any such recoveries shall inure to the benefit of the Reorganized Debtors.

(c)     <u>Reservation of Rights of Issuers and Insurers of Payment Assurances</u>. Notwithstanding anything to the contrary contained herein, nothing in the Plan shall be deemed to impair, prejudice, compromise, or otherwise affect any defense or counterclaim asserted by any issuer or insurer of payment assurances issued on behalf of the Debtors, or any other defendant in the Supersedeas Bond Actions, to any claim of the Debtors, including, without limitation, any defense based on an asserted right of setoff or recoupment, or other defense under applicable non-bankruptcy law.  Any right of setoff or recoupment shall be satisfied out of the assets in the possession of the sureties or insurers relating to such payment assurances and any claims or liabilities including, without limitation, claims for premiums for bonds provided by any such issuers or insurers.

33

(d)    <u>Compromise and Settlement</u>.  The Reorganized Debtors shall be entitled to compromise or settle any of the Supersedeas Bond Actions; *provided, however*, that any such compromise or settlement shall require the consent of the Asbestos Trust (which consent shall not be unreasonably withheld or delayed) to the extent the compromise or settlement results in there being any deficiency portion of a Bonded Asbestos Personal Injury Claim after applying the proceeds of any supersedeas bond or equivalent form of payment assurance.

4.7    <u>Equity Ownership of G-I</u>.  Prior to the Effective Date, for good and valuable consideration as part of the global settlement referred to in Section 4.1 hereof, G-I shall authorize and issue to Holdings the G-I Class B Shares.  On the Effective Date, as a result of all Equity Interests in G-I (but not the G-I Class B Shares) being cancelled, one hundred percent (100%) of the equity interest in G-I shall be represented by the G-I Class B Shares held by Holdings.  As of the Effective Date, the G-I Class B Shares shall be subject to the Capital Stock Lien until delivery of the Letter of Credit, pursuant to Section 4.4(c)(iii) of the Plan.

4.8    <u>Equity Ownership of ACI.</u>  Prior to the Effective Date, for good and valuable consideration as part of the global settlement referred to in Section 4.1 hereof, ACI will authorize and issue to G-I the ACI Class B Shares.  On the Effective Date, as a result of all Equity Interests in ACI (but not the ACI Class B Shares) being cancelled, one hundred percent (100%) of the equity interest in ACI shall be represented by the ACI Class B Shares held by G-I.

4.9    <u>New ACI</u>.  Due to the failure of ACI to deliver its annual registration under Georgia corporate law, together with required fees, ACI's corporate existence is no longer recognized by the Secretary of State of the State of Georgia.  Accordingly, after the Confirmation Date, but prior to the Effective Date, G-I will form a new ACI (with the corporate name, "New ACI Inc.").  G-I will contribute all of its right, title and interest in its shares of old ACI to New ACI.  Immediately thereafter, old ACI will be liquidated into New ACI. These transactions are being effectuated solely for purposes of ensuring ACI's recognition under Georgia corporate law.  Notwithstanding anything herein to the contrary, from and after such liquidation, any references in this Plan to ACI shall be deemed to be references to New ACI.

4.10    <u>Equity Infusion to Fund Liabilities Under Plan</u>.  G-I's liabilities under the Plan will be funded in part by an equity infusion into G-I of up to $220 million from the Plan Sponsor.

4.11    <u>Letter of Credit</u>.  Payment of interest and principal under the Trust Note shall be secured by the Capital Stock Lien, subject to Section 4.4(c)(iii) of the Plan, and by the Letter of Credit issued on the Effective Date.

4.12    <u>Authority of the Debtors</u>.  Effective on the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively their respective obligations under the Plan and the Plan Documents.

NYA 584340.26

# ARTICLE V

## VOTING AND DISTRIBUTIONS UNDER THE PLAN

5.1     Impaired Classes to Vote.  Each holder of a Claim in an impaired Class as of the Record Date shall be entitled to vote to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

5.2     Acceptance by Class of Creditors.  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan; *provided, however,* that pursuant to section 524(g) of the Bankruptcy Code, Class 6 Asbestos Claims shall have accepted the Plan if the Plan is accepted by at least seventy-five percent (75%) of those voting in Class 6 to accept or reject the Plan.  In the event there are no Claims in a Class because (i) no Claim in such Class is known by the Debtors, (ii) no proof of claim asserting a Claim in such Class has been filed, (iii) any proof of claim asserting a Claim in such Class has been disallowed in its entirety by an order of the Bankruptcy Court or such other court of competent jurisdiction, (iv) any proof of claim asserting a Claim in such Class has been re-classified as a Claim in another Class or against another Debtor, or (v) any proof of claim asserting a Claim in such Class has been withdrawn by the party asserting such Claim or otherwise removed by agreement of such party and the applicable Debtor or by Final Order of the Court, such Class shall be eliminated from the Plan as if it never existed.

5.3     Nonconsensual Confirmation.  If any impaired Class of Claims, other than Class 6, shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code and/or amend the Plan.

5.4     Distributions Under the Plan.  Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.  The Distributions shall be made to the holders of Allowed Claims as of the Record Date and the Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of a Claim occurring after the Record Date.

(a)     Distribution Deadlines.  Any Distribution to be made by the Disbursing Agent pursuant to the Plan shall be deemed to have been timely made if made within twenty (20) days after the time therefor specified in the Plan or such other agreements.  No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date.

(b)     Distributions with Respect to Allowed Claims.  Subject to Bankruptcy Rule 9010, all Distributions under the Plan to holders of Allowed Claims in Classes 3A, 3B, 5, and 7 shall be made by the Disbursing Agent to the holder of each Allowed Claim in such Classes

35

at the address of such holder as listed on the Schedules as of the Record Date, unless the Debtors or, on and after the Effective Date, the Reorganized Debtors have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules.  If any Distribution to any such holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; *provided*, *however*, that, at the expiration of one (1) year from the Effective Date such undeliverable Distributions shall be deemed unclaimed property and shall be treated in accordance with Section 5.7 of the Plan.

(c)     Responsibility for Transfers and Distributions.   The Plan Sponsor and Reorganized Debtors (as applicable) and only the Plan Sponsor and Reorganized Debtors shall be responsible for Distributions required by the Plan.  The Asbestos Trust and only the Asbestos Trust shall be responsible for resolving and paying Class 6 Claims and Demands in accordance with the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.

5.5     Disbursing Agent.  All Distributions under the Plan shall be made by the Disbursing Agent.

5.6     Manner of Payment Under the Plan.  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Disbursing Agent shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank; *provided, however,* that no Cash payment of less than one hundred dollars ($100) shall be made to a holder of an Allowed Claim unless a request therefor is made in writing to the Reorganized Debtors.

5.7     Unclaimed Property.

(a)     Plan Distributions.  All Distributions under the Plan that are unclaimed for a period of one (1) year after distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors, and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

(b)     1989 LBO Transaction.  Any unclaimed, un-cashed, or undeliverable Cash or check previously earmarked or tendered for the redemption of certain Equity Interests relating to the 1989 LBO Transaction, which Cash or checks G-I currently holds or has remitted to an appropriate state agency, and as to which such Equity Interests remain untendered by their holders, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors, and any entitlement of any holder of any Claim to such Cash or checks shall be extinguished and forever barred.

36

5.8     Time Bar to Cash Payments.   Checks issued by the Disbursing Agent for Distributions on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof.  Requests for re-issuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (a) the first (1st) anniversary of the Effective Date, or (b) ninety (90) days after the date of issuance of such check, if such check represents a final Distribution hereunder on account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Reorganized Debtors shall retain all monies related thereto.

5.9     Distributions After Effective Date.  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of the Plan.

5.10     Setoffs.  The Reorganized Debtors may, but shall not be required to, pursuant to applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that the Debtors' estates or the Reorganized Debtors hold against the holder of such Allowed Claim (other than an Asbestos Claim); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Debtors-in-Possession or the Reorganized Debtors of any such claims, rights and causes of action that the Debtors, Debtors-in-Possession or the Reorganized Debtors may possess against such holder.

5.11     Cancellation of Existing Securities and Agreements.  On the Effective Date, any document, agreement, or instrument evidencing any Claim or Equity Interest, other than an Asbestos Claim or any Claim that is unimpaired by the Plan, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be discharged; *provided, however,* that each Asbestos Claim (other than any Demand) shall be discharged as to the Reorganized Debtors, and all Asbestos Claims (including all Demands) shall be subject to the Asbestos Permanent Channeling Injunction.

5.12     Payment of Interest on Allowed Claims.  Interest shall be paid on Allowed Claims only to the extent the payment of interest is provided for by a contractual agreement between the Debtors and the holder of any such Allowed Claim.

5.13     Allocation of Plan Distributions Between Principal and Interest.  To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

NYA 584340.26

# ARTICLE VI

## TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN

6.1     <u>Objections to Claims; Prosecution of Disputed Claims</u>.

(a)     The Reorganized Debtors shall object to the allowance of Claims filed with the Bankruptcy Court (other than Asbestos Claims) with respect to which the Reorganized Debtors dispute liability in whole or in part.  All objections filed and prosecuted by the Reorganized Debtors as provided herein shall be litigated to Final Order by the Reorganized Debtors; *provided, however*, that the Debtors or Reorganized Debtors, as the case may be, may compromise and settle, withdraw, or resolve by any other method, without requirement of Bankruptcy Court approval, any objections to Claims; *provided, further, however*, that in the case of a CCR Allowance Proceeding (i) such CCR Allowance Proceeding shall be prosecuted by the Reorganized Debtors, the Asbestos Claimants Committee, and the Legal Representative, and (ii) such CCR Allowance Proceeding may only be compromised, settled, withdrawn, or otherwise resolved with the consent of each of the Reorganized Debtors, the Asbestos Claimants Committee, and the Legal Representative.  Subject to the treatment described in Section 3.11 with respect to the CCR Claim, each of G-I, ACI, the Asbestos Claimants Committee, and the Legal Representative shall oppose the allowance of any Claim by or on behalf of any Entity that is or was a member of CCR, arising from facts or legal relationships that existed during the period when G-I and the Entity asserting the Claim (or on whose behalf it is asserted) were both members of CCR, or arising from or relating to any agreement made by CCR during such period for the settlement of any asbestos-related personal injury or wrongful death claim.

(b)     Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtors to Claims shall be served and filed on or before the later of (i) one hundred eighty (180) days after the Effective Date, and (ii) such date as may be fixed by the Bankruptcy Court, after notice and hearing, whether fixed before or after the date specified in clause (i) above.

6.2     <u>Estimation of Claims</u>.  Unless otherwise limited by an order of the Bankruptcy Court, the Reorganized Debtors may at any time request that the Bankruptcy Court estimate for final Distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on such objection, and the Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; *provided, however*, that, if the estimate constitutes the maximum limitation on such Claim, the Debtors or the Reorganized Debtors, as the case may be, may elect to pursue supplemental

38

proceedings to object to any ultimate allowance of such Claim; and, *provided, further*, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

6.3    No Distributions Pending Allowance. Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no Distribution provided for hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim. No interest shall be paid on account of Disputed Claims that later become Allowed except to the extent that payment of interest is required under section 506(b) of the Bankruptcy Code.

6.4    Distributions After Allowance. To the extent a Disputed Claim ultimately becomes an Allowed Claim, a Distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction (including any appeal therefrom) allowing any Disputed Claim becomes a Final Order, the Reorganized Debtors shall provide to the holder of such Claim the Distribution to which such holder is entitled hereunder on account of or in exchange for such Allowed Claim.

6.5    Insurance. Nothing contained herein shall constitute or be deemed a waiver of any Claim, defense, right or cause of action that the Debtors, the Reorganized Debtors, the Asbestos Trust, or any Entity may hold under any policies of insurance against any other Entity, including, without limitation, insurers, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers, and the rights of all such parties are expressly preserved. This Section 6.5 shall not limit the liability or obligations of any of the Debtors under this Plan with respect to the uninsured portion of any Claim.

6.6    Management of Existing Tax Claim Litigation. Under the Confirmation Order, the District Court shall retain sole jurisdiction over the litigation in the action styled *United States v. G-I Holdings Inc*., Case No. 02-03082 (D.N.J.) (pending resolution or dismissal without prejudice of that action) and, as a consequence, the Reorganized Debtors shall not file any petition in the United States Tax Court with respect to the Claims subject to that litigation pending resolution or dismissal without prejudice of that action.

# ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    Assumption and Rejection of Executory Contracts and Unexpired Leases. Any executory contract or unexpired lease not set forth on Schedule 7.1 of the Plan Supplement that has not expired by its own terms on or prior to the Confirmation Date, which has not been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which is not the subject of a motion to assume and assign or reject as of the Confirmation Date, shall be deemed rejected by the Debtors-in-Possession on the Confirmation Date and the entry of the Confirmation Order by the

39

Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any executory contracts or unexpired leases of the Debtors that are set forth on Schedule 7.1 of the Plan Supplement shall be deemed to have been assumed by the Debtors and the Plan shall constitute a motion to assume such executory contracts and unexpired leases. Any executory contracts or unexpired leases of the Debtors that are set forth on schedule 7.1 of the Plan Supplement that have been designated as being assumed and assigned to one of the Debtors' Affiliates shall be deemed to have been assumed and assigned by a Debtor to that Affiliate and the Plan shall constitute a motion to assume and assign such executory contracts and unexpired leases. Each executory contract or unexpired lease assumed, or assumed and assigned, hereunder shall include any modifications, amendments, supplements or restatements to such contract or lease. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code, and approval of such assumptions and assignments pursuant to section 365(f) of the Bankruptcy Code, and a finding by the Bankruptcy Court that each such assumed, or assumed and assigned, executory contract or unexpired lease is in the best interest of the Debtors, their bankruptcy estates, and all parties in interest in the Chapter 11 Cases. The Debtors reserve the right, at any time prior to the Effective Date, to amend Schedule 7.1 to (a) delete any executory contract or unexpired lease listed therein, thus providing for its rejection hereunder; or (b) add any executory contract or unexpired lease to Schedule 7.1, thus providing for its assumption, or assumption and assignment hereunder. The Debtors shall provide notice of any amendments to Schedule 7.1 to the parties to the executory contracts and unexpired leases affected thereby. Nothing herein shall constitute an admission by a Debtor or Reorganized Debtor that any contract or lease is an executory contract or unexpired lease or that a Debtor or Reorganized Debtor has any liability thereunder.

   7.2 <u>Assumption of Insurance Policies</u>. Notwithstanding anything contained in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed pursuant to the Plan, effective as of the Effective Date. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that assumption of the insurance policies is in the best interest of the Debtors, their bankruptcy estates, and all parties in interest in the Chapter 11 Cases. Nothing contained in this Section 7.2 shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any Entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

   7.3 <u>Cure of Defaults and Survival of Contingent Claims under Assumed Executory Contracts and Unexpired Leases</u>. Except as may otherwise be agreed to by the parties, on or before the thirtieth (30th) day after the Effective Date, provided the non-debtor party to any such assumed executory contract or unexpired lease has timely filed a proof of claim with respect to such cure amount, the Reorganized Debtors shall cure any and all undisputed defaults under each executory contract and unexpired lease assumed by the Debtors pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code. All disputed defaults required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. Unless a proof of claim was timely filed with respect thereto, all cure amounts and all contingent

reimbursement or indemnity claims for prepetition amounts expended by the non-debtor parties to assumed executory contracts and unexpired leases shall be discharged upon entry of the Confirmation Order by the Clerk of the Bankruptcy Court.

7.4    Deadline for Filing Rejection Damage Claims.  If the rejection of an executory contract or unexpired lease by the Debtors-in-Possession pursuant to Section 7.1 of the Plan results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties, agents, successors, or assigns, unless a proof of claim is filed with the Debtors' court-appointed claims agent or with the Bankruptcy Court and served upon the Debtors or Reorganized Debtors on or before thirty (30) days after the latest to occur of (a) the Confirmation Date, and (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of such executory contract or unexpired lease.

7.5    Indemnification and Reimbursement Obligations.  For purposes of the Plan, the obligations of the Debtors to indemnify and reimburse persons who are or were directors, officers, or employees of any of the Debtors on the Commencement Date or at any time thereafter against and for any obligations (including, without limitation, fees and expenses incurred by the board of directors of any of the Debtors, or the members thereof, in connection with the Chapter 11 Cases) pursuant to articles of incorporation, codes of regulations, bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected hereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Commencement Date.  In furtherance of the foregoing, the Reorganized Debtors shall maintain insurance for the benefit of such directors, officers, or employees at levels no less favorable than those existing as of the date of entry of the Confirmation Order for a period of no less than four years following the Effective Date.

7.6    Compensation and Benefit Programs.  Except as provided in Section 7.1 of the Plan, the Debtors' existing pension plans and all savings plans, retirement plans, health care plans, performance-based incentive plans, retention plans, workers' compensation programs and life, disability, directors and officers liability, and other insurance plans are treated as executory contracts under the Plan and shall, on the Effective Date, be deemed assumed by the Debtors in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code.  On and after the Effective Date, all Claims submitted for payment in accordance with the foregoing benefit programs, whether submitted prepetition or postpetition, shall be processed and paid in the ordinary course of business of the Reorganized Debtors, in a manner consistent with the terms and provisions of such benefit programs. Nothing in the Confirmation Order, the Plan, the Bankruptcy Code (and section 1141 thereof), or any other document filed in any of the Debtors' bankruptcy proceedings shall be construed to discharge, release or relieve the Debtors, the Reorganized Debtors, or any other party, in any capacity, from any liability or responsibility with respect to the Retirement Plan for Hourly Paid Employees of Building Materials Corporation of America ("Pension Plan") under any law, governmental policy, or regulatory provisions.  PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility as a result of any of the provisions of the Plan, including those providing for satisfaction, release, and discharge of claims, the Confirmation Order, the Bankruptcy

41

Code (and section 1141 thereof), or any other document filed in any of the Debtors' bankruptcy proceedings.

      7.7    <u>Retiree Benefits</u>. On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtors had obligated themselves to provide such benefits.

# ARTICLE VIII

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF REORGANIZED DEBTORS

      8.1    <u>General</u>. On the Effective Date, the management, control, and operation of the Reorganized Debtors shall become the general responsibility of the Board of Directors of the Reorganized Debtors.

      8.2    <u>Reorganized Debtors' Directors and Officers</u>. The Boards of Directors of each of the Debtors immediately prior to the Effective Date shall serve as the initial Boards of Directors of the Reorganized Debtors on and after the Effective Date and, if different than the individuals identified in the Disclosure Statement, shall be identified in Schedule 8.2 of the Plan Supplement. Each of the members of such Boards of Directors shall serve in accordance with applicable non-bankruptcy law and each Debtors' certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time. The officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date. Such officers shall serve in accordance with applicable non-bankruptcy law and any employment agreement with the Debtors, if assumed, or with the Reorganized Debtors.

      8.3    <u>Amendment of Articles of Incorporation and By-Laws</u>. The articles of incorporation and by-laws of the Debtors shall be amended as of the Effective Date to provide substantially as set forth in the Reorganized Debtors' Certificate of Incorporation and the Reorganized Debtors' By-Laws. The certificate or articles of incorporation and by-laws shall contain provisions (i) prohibiting the issuance of non-voting equity securities, as required by section 1123(a)(6) of the Bankruptcy Code (subject to further amendment of such certificates or articles of incorporation and by-laws as permitted by applicable law), and (ii) effectuating the provisions of the Plan, in such case without further action by the stockholders or directors of the Debtors, the Debtors-in-Possession, or the Reorganized Debtors.

      8.4    <u>Corporate Action</u>. On the Effective Date, the adoption of the Reorganized Debtors' Certificate of Incorporation and the Reorganized Debtors' By-Laws shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized

42

Debtors.  All other matters provided under the Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred, be authorized, and shall be in effect without requiring further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors.  Without limiting the foregoing, from and after the Confirmation Date, the Debtors or the Reorganized Debtors shall take any and all actions deemed appropriate to consummate the transactions contemplated herein.

## ARTICLE IX

## EFFECT OF CONFIRMATION

9.1     <u>Title to Assets</u>.  Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the estates of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests created prior to the Effective Date, except as provided in this Plan and the Plan Documents.  From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

9.2     <u>Discharge of Claims</u>.  In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as provided in the Plan, upon the Effective Date, all Claims against the Debtors shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim.  Upon the Effective Date, all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors.

9.3     <u>Injunction on Claims</u>.  In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, the Confirmation Order or such other applicable order of the Bankruptcy Court, all Persons or Entities who have held, hold or may hold Claims or other debt or liability that are discharged pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability pursuant to the Plan against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors or the Reorganized Debtors, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, (c) creating, perfecting, or enforcing any encumbrance of any kind securing a discharged claim against the Debtors, the Debtors-in-Possession or the

43

Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Debtors-in-Possession or the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.

9.4    <u>Term of Existing Injunctions or Stays</u>.  Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

9.5    <u>Injunction Against Interference With Plan of Reorganization</u>.  Pursuant to sections 1142 and 105 of the Bankruptcy Code, from and after the Effective Date, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan except for actions allowed to attain legal review.

9.6    <u>Exculpation</u>.  **None of the Debtors, the Reorganized Debtors, their Affiliates, any of the members of the Asbestos Claimants Committee, the Legal Representative, or any of their respective officers, directors, members, employees, advisors, attorneys, financial advisors, accountants, agents, or other professionals retained with Bankruptcy Court approval shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including, without limitation, the commencement of the Chapter 11 Cases, the negotiation of the Plan, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Plan.  None of the foregoing parties shall be exculpated under this provision with respect to any acts occurring prior to the Commencement Date.  With respect to officers and directors of the Debtors this section shall apply only to such officers and directors who were serving in such capacity on and after the Commencement Date.**

9.7    <u>Mutual Releases</u>.

(a)    Upon the Effective Date, the Debtors, the Debtors-in-Possession, the Plan Sponsor, the Reorganized Debtors, and the respective Affiliates and subsidiaries of the foregoing Entities shall be deemed to have unconditionally waived and released the Asbestos Claimants Committee, the Legal Representative, the defendants in *G-I Holdings Inc. v. Baron & Budd, et al.*, Case No. 01-CV-0216 (RWS), the Noteholder Defendants, and each of their respective members, employees, agents, advisors, attorneys, financial advisors, accountants, and other professionals from any and all claims, obligations, suits, judgments, damages,

44

rights, causes of action arising from or based on any Claim, Equity Interest, or litigation, including, but not limited to, the Covered Matters, and all pending litigation among the Debtors, the Debtors-in-Possession, shareholders of the Debtors, the Asbestos Claimants Committee, the Noteholder Defendants and the Legal Representative (including any of the Covered Matters) shall be dismissed with prejudice and without costs to any party; *provided, however*, that nothing herein shall relieve the Debtors, the Reorganized Debtors, the Plan Sponsor, the Asbestos Claimants Committee, the Legal Representative, or the Asbestos Trust of their obligations under the Plan, the Plan Documents, the Confirmation Order, the documents and instruments contained in the Plan Supplement, and the Asbestos Trust Agreement.

(b)       Upon the Effective Date, the Asbestos Claimants Committee and the Legal Representative shall be deemed to have unconditionally waived and released the Debtors, the Debtors-in-Possession, the Plan Sponsor, the Reorganized Debtors, the respective Affiliates and subsidiaries of the foregoing Entities, the Noteholder Defendants, and each of the foregoing Entities' respective present and former officers, directors, employees, advisors, attorneys, financial advisors, accountants, and other professionals from any and all claims, obligations, suits, judgments, damages, rights, causes of action arising from or based on any Claim (other than an Asbestos Claim), Equity Interest, or litigation, including, but not limited to, the Covered Matters, and all pending litigation among the Debtors, the Debtors-in-Possession, shareholders of the Debtors, the Asbestos Claimants Committee, the Noteholder Defendants and the Legal Representative (including any of the Covered Matters) shall be dismissed with prejudice and without costs to any party; *provided, however*, that nothing herein shall relieve the Debtors, the Reorganized Debtors, the Plan Sponsor, the Asbestos Claimants Committee, the Legal Representative, or the Asbestos Trust of their obligations under the Plan, the Plan Documents, the Confirmation Order, the documents and instruments contained in the Plan Supplement, and the Asbestos Trust Agreement.

(c)       Consistent with the foregoing releases, the parties shall execute any and all appropriate documentation to effectuate the dismissal of all pending litigation.

9.8       <u>Avoidance Actions</u>.  The Reorganized Debtors shall release any avoidance, equitable subordination, piercing the corporate veil, alter ego or similar claims, rights, or causes of action that the Debtors, the Debtors-in-Possession or their Chapter 11 estates hold, arising under sections 510, 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code or non-bankruptcy law, including, but not limited to, any and all causes of action that were or could have been asserted in the Covered Matters.

9.9       <u>Reservation of Rights</u>.  Except with respect to Covered Matters or as otherwise specifically provided in the Plan, nothing herein shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Reorganized Debtors, or the Asbestos Trust may have against any Entity other than a Protected Party in connection with or arising out of an Asbestos Claim, and the Asbestos Permanent Channeling Injunction shall not apply to the assertion of any such claim, right, or cause of action by the Debtors, the Reorganized Debtors, or the Asbestos Trust.

45

# ARTICLE X

## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF
## THE PLAN; IMPLEMENTATION PROVISIONS

10.1    <u>Conditions Precedent to Effective Date of the Plan</u>.  The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a)    <u>Entry of the Confirmation Order</u>.  The Bankruptcy Court and the District Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors, the Asbestos Claimants Committee, and the Legal Representatives.  The Confirmation Order or ancillary orders shall provide the following findings and conclusions and shall approve the following relief:

(i)    The Asbestos Permanent Channeling Injunction is implemented in connection with the Plan and the Asbestos Trust;

(ii)    The Plan (including the Plan Documents) complies with section 524(g) of the Bankruptcy Code for the issuance of an irrevocable injunction against Demands subject to the exclusive subject matter jurisdiction of the District Court;

(iii)    The Reorganized Debtors, the Plan Sponsor, each Protected Party and their respective successors and assigns are permanently enjoined from requesting any tribunal to enjoin draws on any Letter of Credit provided hereunder for any reason, including, without limitation, if any one of them becomes a debtor under title 11 of the United States Code; *provided, however,* that this provision shall not impair any of such enjoined persons' remedies if such a draw shall have been wrongful or fraudulent.

(iv)    The global compromise and settlement embodied in the Plan is approved.

(v)    At the time of the order for relief with respect to G-I, G-I had been named as a defendant in personal injury, wrongful death, and property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(vi)    The Asbestos Trust, as of the Effective Date, will assume all the liabilities of the Debtors with respect to all Asbestos Claims;

(vii)    The Asbestos Trust is to be funded in whole or in part by securities of the Reorganized Debtors and by the obligation of the Reorganized Debtors to make future payments;

46

(viii)   The Asbestos Trust is to own, or by the exercise of rights granted under the Plan, for purposes of section 524(g) of the Bankruptcy Code, would be entitled to own, if specified contingencies occur, a majority of the voting shares of G-I;

(ix)   G-I is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Asbestos Permanent Channeling Injunction;

(x)   The actual amounts, numbers, and timing of the future Demands referenced in Section 10.1(a)(ix) of the Plan cannot be determined;

(xi)   Pursuit of the Demands referenced in Section 10.1(a)(ix) of the Plan outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands;

(xii)   The terms of the Asbestos Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan and the Disclosure Statement;

(xiii)   The Plan establishes, in Class 6 (Asbestos Claims), a separate class of the claimants whose Claims are to be addressed by the Asbestos Trust;

(xiv)   The Legal Representative was appointed as part of the proceedings leading to issuance of the Asbestos Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert unknown Asbestos Claims and Demands that are addressed in the Asbestos Permanent Channeling Injunction and transferred to the Asbestos Trust;

(xv)   Applying the Asbestos Permanent Channeling Injunction to each Protected Party in the Asbestos Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Trust by or on behalf of any such Protected Party;

(xvi)   Class 6 (Asbestos Claims) has voted, by at least 75 percent (75%) of those voting, in favor of the Plan;

(xvii)   Pursuant to court orders or otherwise, the Asbestos Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Trust will liquidate, and be in a financial

47

position to pay, Asbestos Claims and Demands that involve similar Claims in substantially the same manner;

(xviii) The Trust Note, and the Collateral Agency Agreement shall each be a valid and binding obligation of each of the parties thereto, in full force and effect, and enforceable in accordance with its terms, upon execution and delivery as of the Effective Date;

(xix) Subject to Section 4.4(c)(iii) of the Plan, the Holdings Pledge Agreement shall be a valid and binding obligation of each of the parties thereto, in full force and effect, and enforceable in accordance with its terms, upon execution and delivery as of the Effective Date; and

(xx) Subject to Section 4.4(c)(iii) of the Plan, as of the Effective Date, the Capital Stock Lien shall attach to the G-I Class B Shares and the Collateral Agent shall thereby possess a valid and enforceable security interest in such shares, upon performance of delivery requirements specified in the Holdings Pledge Agreement with respect to such pledged collateral.

(b)     Occurrence of the Effective Date.  The Effective Date shall not occur, and the Plan shall be of no force and effect, until satisfaction of the following conditions precedent:

(i)     The Confirmation Order shall have been entered for at least ten (10) days and then is not stayed or enjoined;

(ii)     The Bankruptcy Court and/or the District Court, as required, shall have entered or affirmed the Asbestos Permanent Channeling Injunction (which may be included in the Confirmation Order), which shall contain terms satisfactory to the Debtors, the Asbestos Claimants Committee, and the Legal Representative;

(iii)     The Confirmation Order and the Asbestos Permanent Channeling Injunction shall be in full force and effect;

(iv)     All Asbestos Trustees shall have been selected and shall have executed the Asbestos Trust Agreement;

(v)     All agreements and instruments that are exhibits to the Plan or included in the Plan Supplement shall have been duly executed and delivered; *provided, however*, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring;

(vi)     Such other actions and documents as the Debtors deem necessary to implement the Plan shall have been effected or executed; *provided, however*, that the execution, delivery and approval of the CCR Settlement Agreement shall not

48

constitute a condition to the Effective Date and the issuance of a Final Order in the
CCR Allowance Proceedings shall not constitute a condition to the Effective Date;
and

(vii)    All conditions to closing set forth in the Trust Note, Letter of Credit
and the Plan Documents shall have been fulfilled to the reasonable satisfaction of the
Asbestos Claimants Committee and the Legal Representative (such satisfaction not to
be unreasonably withheld);

(viii)   The Debtor or Plan Sponsor shall have demonstrated to the reasonable
satisfaction of the Asbestos Claimants Committee and the Legal Representative that
the Letter of Credit will be issued on the Effective Date.

(c)      The Debtors shall have received (i) a favorable ruling from the Internal
Revenue Service with respect to the qualification of the Asbestos Trust as a "qualified
settlement fund," or (ii) an opinion of counsel with respect to the tax status of the Asbestos
Trust as a "qualified settlement fund" reasonably satisfactory to the Debtors, the Asbestos
Claimants Committee and the Legal Representative.

10.2    Waiver of Conditions Precedent.  To the extent practicable and legally permissible,
each of the conditions precedent in Section 10.1 hereof, may be waived, in whole or in part, by the
Plan Proponents, jointly.  Any such waiver of a condition precedent may be effected at any time by
filing with the Bankruptcy Court a notice thereof that is executed by the Plan Proponents, jointly.  If
any Plan Proponent desires to waive a condition precedent to facilitate confirmation, the other Plan
Proponents shall confer promptly with it as to whether or not the suggested waiver should be given,
in recognition that time is of the essence.

# ARTICLE XI

# RETENTION OF JURISDICTION

11.1    Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction and retain
all exclusive jurisdiction it has over any matter arising under the Bankruptcy Code, arising in or
related to the Chapter 11 Cases or the Plan, or that relates to the following:

(a)      to interpret, enforce, and administer the terms of the Plan, the Plan
Documents (including all annexes and exhibits thereto), and the Confirmation Order.

(b)      to resolve any matters related to the assumption, assignment, or rejection of
any executory contract or unexpired lease to which a Debtor is a party or with respect to
which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims
arising therefrom, including those matters related to the amendment after the Effective Date
of the Plan, to add any executory contracts or unexpired leases to the list of executory
contracts and unexpired leases to be rejected;

49

(c)    to enter such orders as may be necessary or appropriate to implement or consummate the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan; *provided*, *however*, that nothing in the Plan shall detract from or contravene any jurisdictional provisions of any such written agreement or instrument, including the Trust Note, any agreement regarding a pledge or collateral to secure the Trust Note, or any escrow agreement with respect to the CCR Escrow, that permits or requires legal actions or proceedings to be brought in another court;

(d)    to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors or by the Asbestos Claimants Committee and the Legal Representative, after the Effective Date including, without limitation, any claims to recover assets for the benefit of the Debtors' estate, except for matters waived or released under this Plan;

(e)    to ensure that Distributions to holders of Allowed Claims (other than Asbestos Claims) are accomplished as provided herein;

(f)    to hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim (other than Asbestos Claims), both before and after the Confirmation Date, including any objections to the classification of any Claim (other than Asbestos Claims), and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim (other than Asbestos Claims), in whole or in part;

(g)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

(h)    to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(i)    to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(j)    to hear and determine all applications for allowances of compensation and reimbursement of expenses of professionals under sections 330 and 331 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan, except as otherwise provided in Section 13.8 of the Plan;

(k)    to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(l)      to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)      to recover all assets of the Debtors and property of the Debtors' estates, wherever located;

(n)      to resolve any Disputed Claims;

(o)      to determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code;

(p)      to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement, including any of the Plan Documents;

(q)      to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim (excluding any Asbestos Claim) or cause of action by or against the Debtors' estates;

(r)      to hear and determine any other matters that may be set forth in the Plan, the Confirmation Order or the Asbestos Permanent Channeling Injunction, or that may arise in connection with the Plan, the Confirmation Order or the Asbestos Permanent Channeling Injunction;

(s)      to hear and determine any proceeding that involves the validity, application, construction, or enforceability of the Asbestos Permanent Channeling Injunction, or that may arise in connection with the Plan, the Confirmation Order, or the Asbestos Permanent Channeling Injunction;

(t)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(u)      to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code;

(v)      to enter a final decree closing the Chapter 11 Cases; and

(w)      to hear and determine all objections to the termination of the Asbestos Trust.

11.2    <u>Non-Core Jurisdictional Matters</u>.  To the extent that the Bankruptcy Court under applicable law lacks core jurisdiction over, or is otherwise not permitted to render dispositive orders or judgments in, any of the foregoing matters, the reference to the "Bankruptcy Court" in this Article XI shall be deemed to be replaced by the "District Court."  Notwithstanding anything in this Article

51

XI to the contrary, (i) the resolution and payment of Asbestos Claims, and the forum in which such resolution and payment will be determined, will be governed by and in accordance with the Asbestos Trust Distribution Procedures and the Asbestos Trust Agreement, and (ii) the Bankruptcy Court and the District Court shall have concurrent rather than exclusive jurisdiction with respect to (x) disputes relating to rights under insurance policies issued to the Debtors, and (y) disputes relating to the Debtors' rights to insurance with respect to Workers' Compensation Claims.

## ARTICLE XII

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

12.1    <u>Plan Modifications</u>.  Prior to the Confirmation Date, the Plan Proponents, in their sole discretion, may jointly amend, modify or supplement the terms and provisions of the Plan, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Code may otherwise direct.  After the Confirmation Date, so long as such action does not materially adversely affect the treatment of Claims under the Plan, the Plan Proponents may jointly institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  If any Plan Proponent suggests a modification of the Plan to facilitate confirmation, the other Plan Proponents shall confer promptly with it as to whether or not to modify the Plan accordingly, in recognition that time is of the essence.

12.2    <u>Revocation, Withdrawal, or Non-Consummation</u>.

(a)    If the Effective Date does not occur by the last date permitted by the definition thereof, or if the Plan does not otherwise become effective by such date, the Confirmation Order and this Plan shall become null and void in all respects, unless each Plan Proponent, in its sole and absolute discretion, executes and files with the Bankruptcy Court a written notice waiving the foregoing requirement of Plan effectiveness by such date.

(b)    If a CCR Allowance Proceeding remains pending after confirmation of the Plan, the Plan shall be deemed withdrawn, and may not be consummated, unless the Asbestos Claimants Committee and the Legal Representative, in their sole discretion, consent in writing to (i) consummation of the Plan, with the CCR Allowance Proceeding to be resolved after the Effective Date, (ii) the creation of a CCR Escrow pursuant to Section 4.4(c)(i)(C) of the Plan, and (iii) any adjustment in the First Payment to Asbestos Trust required by Section 4.4(c)(i)(C) of the Plan.

(c)    If the Plan is revoked or withdrawn prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the

52

rights of the Debtors or any other Entity in any further proceedings pending in, arising in, or relating to the Chapter 11 Cases.

(d)    In the event that the Effective Date does not occur, the parties shall be returned to the position they would have held had the Confirmation Order not been entered, and nothing in this Plan, the Disclosure Statement, any of the Plan Documents, or any pleading filed or statement made in court with respect to the Plan or the Plan Documents shall be deemed to constitute an admission or waiver of any sort or in any way limit, impair, or alter the rights of any Entity.

# ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1    <u>Effectuating Documents and Further Transactions</u>.    Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the Board of Directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.2    <u>Cooperation</u>.  Subject to the rights set forth herein to revoke or withdraw the Plan, the Plan Proponents shall cooperate and together use their best efforts in pursuing confirmation of this Plan by the Bankruptcy Court.

13.3    <u>Withholding and Reporting Requirements</u>.    In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtors, or any other paying agent, as applicable, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.  Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to refrain from making a Distribution, until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

13.4    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes, equity interests or other plan securities pursuant to the Plan or any of the Plan Documents, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan or any of the Plan Documents, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

53

13.5     Expedited Tax Determination.  The Reorganized Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Commencement Date through, and including, the Effective Date.

13.6     Exemption from Registration.  Pursuant to section 1145 of the Bankruptcy Code, and except as provided in subsection (b) thereof, the issuance of (a) any shares of stock issued pursuant to the Plan, and (b) the Trust Note issued pursuant to the Plan shall be exempt from registration pursuant to section 5 of the Securities Act of 1933, as amended, and all other applicable non-bankruptcy laws or regulations.

13.7     Payment of Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.  The Reorganized Debtors shall pay any quarterly fees payable pursuant to 28 U.S.C. section 1930(a)(6) to the Office of the United States Trustee (the "OUST") after the Effective Date until such time as the case is converted, dismissed or closed pursuant to a final decree.  The Reorganized Debtor shall file post-Effective Date reports, the form of which will be supplied by the OUST.  Nothing contained in this Plan shall relieve the Debtors or Reorganized Debtors from making payments to the OUST when due as required by 28 U.S.C. section 1930(a)(6).

13.8     Post-Confirmation Date Fees and Expenses.  The Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons incurred from and after the Effective Date by the Reorganized Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

13.9     The Asbestos Claimants Committee and the Legal Representative.

(a)     Except as provided below, the Asbestos Claimants Committee and the Legal Representative shall continue in existence until the Effective Date.

(b)     Except as provided below, on the Effective Date, the rights, duties, and responsibilities of the Legal Representative shall be as set forth in the Asbestos Trust Agreement.

(c)     Except as provided below, on the Effective Date, the Asbestos Claimants Committee shall be dissolved, and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, liabilities, and obligations related to, or arising from, the Chapter 11 Cases.

(d)     Notwithstanding any of the foregoing, the Asbestos Claimants Committee and the Legal Representative shall continue in existence and shall have post-Effective Date standing and capacity to (i) complete matters, if any, including, without limitation, litigation, appeals, or negotiations pending as of the Effective Date which are not released pursuant to

54

the Plan, including participating as a party in interest in any CCR Allowance Proceeding; (ii) object to or defend the Administrative Expense Claims of professionals employed by or on behalf of the Estates; (iii) participate with the Debtors to oppose any appeals of the Confirmation Order; and (iv) prepare and prosecute applications for the payment of fees and reimbursement of expenses.

       (e)    In all events, the Asbestos Claimants Committee, its members, and its professionals, as well as the Legal Representative and his professionals, shall have the right to seek, and shall be entitled to, reasonable fees and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code for services rendered (including those services arising from or connected with any pending matter referred to in Section 13.9(d)). The Debtors shall pay such reasonable fees and expenses incurred through the Effective Date, in accordance with the fee and expense procedures set forth in the Bankruptcy Code and Bankruptcy Rules or otherwise promulgated during the Chapter 11 Cases. The Reorganized Debtors shall pay such reasonable fees and expenses relating to any post-Effective Date activities authorized in Section 13.9(d), but only to the extent that such reasonable fees and expenses are not expenses of the Asbestos Trust, in which case those portions of such fees and expenses shall be paid as Asbestos Trust expenses in accordance with the Asbestos Trust Agreement, with the remainder to be paid by the Reorganized Debtors.

13.10   <u>Plan Supplement</u>. A specimen form of the documents to be included in the Plan Supplement shall be (a) filed with the clerk of the Bankruptcy Court no later than ten (10) days prior to the Confirmation Hearing; and (b) posted at www.epiqsystems.com as they become available, but no later than ten (10) days prior to the Confirmation Hearing. Upon its filing with the clerk of the Bankruptcy Court, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court during normal court hours.

13.11   <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.12   <u>Sections 1125 and 1126 of the Bankruptcy Code</u>. As of and subject to the occurrence of the Confirmation Date: (i) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation, and (ii) the Debtors, the Asbestos Claimants Committee and its members, the Legal Representative, and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

13.13   <u>Severability</u>. If, prior to the Confirmation Date, any term or provision of the Plan or any of the Plan Documents shall be held by the Bankruptcy Court to be invalid, void or

55

unenforceable, the Bankruptcy Court shall, with the written consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan or the Plan Documents as the case may be, shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan and the Plan Documents, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.14   <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an exhibit hereto or document contained in the Plan Supplement provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to principles of conflicts of laws.

13.15   <u>Deemed Acts</u>.  Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

13.16   <u>Binding Effect</u>.  The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.

13.17   <u>Exhibits/Schedules</u>.  All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are part of the Plan as if set forth in full herein.

13.18   <u>Notices</u>.  All notices, requests, and demands to or upon the Debtors, the Debtors-in-Possession or the Reorganized Debtors to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

>     G-I Holdings Inc.
>     1361 Alps Road
>     Wayne, New Jersey 07470
>     Attention:  Secretary

>   With a copy to:

>     Dewey & LeBoeuf, L.L.P.
>     1301 Avenue of the Americas

56

New York, New York  10019
Attention:  Martin J. Bienenstock, Esq.
            Judy G.Z. Liu, Esq.
            Timothy Q. Karcher, Esq.
Fax:  212-259-6333

-and-

Riker, Danzig, Scherer, Hyland & Perretti LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1981
Attention:  Dennis O'Grady, Esq.
Fax:  (973) 538-0800

13.19  Time.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.20  Section Headings.  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

13.21  Inconsistencies.  To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern.

This Plan is respectfully proposed by:

G-I Holdings Inc.,                          Official Committee of Asbestos Claimants
Chapter 11 Debtor  in Possession


By:   /s/ Samuel J. Heyman                  By:   /s/ Robert J. Komitor
Its:  President and Chief Executive Officer  Its:    Chairman


ACI Inc.,
Chapter 11 Debtor in Possession
                                            C. Judson Hamlin,
                                            Legal  Representative  for  Present  and  Future
                                            Demand Holders
By:   /s/ Samuel J. Heyman                        /s/ C. Judson Hamlin
Its:    Chairman

Dated:  October 5, 2009


| | | |
|---|---|---|
| Dewey & LeBoeuf, L.L.P.<br>1301 Avenue of the Americas<br>New York, NY  10019<br>(212) 259-8000 | Keating Muething & Klekamp<br> PLL<br>One East Fourth Street<br>Suite 1400<br>Cincinnati, OH 45202<br>(513) 579-6400 | Caplin & Drysdale, Chartered<br>375 Park Avenue<br>New York, NY 10152-3500<br>(212) 319-7125 |
| Attorneys for Debtors and<br>Debtors-in-Possession | | Attorneys for Official<br>Committee of Asbestos<br>Claimants |
| | Attorneys for C. Judson Hamlin<br>as Legal Representative | |
| Riker, Danzig, Scherer,<br> Hyland & Perretti LLP<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, NJ 07962-1981<br>(973) 538-0800 | Saiber LLC<br>One Gateway Center<br>Newark, NJ 07102-5311<br>(973) 645-4929 | Lowenstein Sandler, PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>(973) 597-2500 |
| Attorneys for Debtors and<br>Debtors-in-Possession | Attorneys for C. Judson Hamlin<br>as Legal Representative | Attorneys for Official<br>Committee of Asbestos<br>Claimants |

58

## EXHIBITS TO THE PLAN

| | |
|---|---|
| Exhibit 1.1.17 | G-I Holdings Inc. Asbestos Personal Injury Settlement Trust Agreement |
| Exhibit 1.1.18 | G-I Holdings Inc. Asbestos Personal Injury Settlement Trust Distribution Procedures |
| Exhibit 1.1.41 | Letter of Understanding with the Center for Claims Resolution, Inc., dated June 30, 2008 |
| Exhibit 1.1.46 | Collateral Agency Agreement |
| Exhibit 1.1.83 | Pledge Agreement of G Holdings Inc. |
| Exhibit 1.1.101(c) | List of Affiliates That Are Protected Parties |
| Exhibit 1.1.112 | Trust Note |
| Exhibit 4.3 | Asbestos Trustees |

## SCHEDULES TO THE PLAN SUPPLEMENT

| | |
|---|---|
| Schedule 1.1.104 | Reorganized Debtors' Certificates of Incorporation |
| Schedule 1.1.105 | Reorganized Debtors' By-Laws |
| Schedule 4.4(a) | Cooperation Agreement |
| Schedule 7.1 | Executory Contracts and Unexpired Leases Being Assumed |
| Schedule 8.2 | Reorganized Debtors' Directors and Officers |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| G-I HOLDINGS INC.<br>(f/k/a GAF Corporation) and ACI INC., | Case Nos. 01-30135 (RG) and 01-38790 (RG)<br>(Jointly Administered) |
| Debtors. | Hon. Rosemary Gambardella, U.S.B.J. |

**~~SECOND~~EIGHTH AMENDED JOINT PLAN OF REORGANIZATION OF G-I HOLDINGS INC. AND ACI INC. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**THIS PLAN PROVIDES FOR THE ISSUANCE OF A CHANNELING INJUNCTION UNDER SECTION 524(g) OF THE BANKRUPTCY CODE THAT PERMANENTLY ENJOINS ALL PERSONS HOLDING ASBESTOS CLAIMS AND FUTURE ASBESTOS-RELATED DEMANDS FROM PURSUING A REMEDY AGAINST THE DEBTORS AND OTHER PROTECTED PARTIES, AND CHANNELS SUCH CLAIMS AND DEMANDS TO THE ASBESTOS TRUST FOR RESOLUTION AND PAYMENT**

| | |
|---|---|
| DEWEY & LeBOEUF L.L.P.<br>1301 Avenue of the Americas<br>New York, New York 10019<br>(212) 259-8000<br><br>Attorneys for Debtors in Possession<br><br>CAPLIN & DRYSDALE, CHARTERED<br>375 Park Avenue<br>New York, New York  10152-3500<br>(212) 319-7125<br>Attorneys for Official Committee of Asbestos<br>Claimants<br><br>KEATING MUETHING & KLEKAMP PLL<br>One East Fourth Street<br>Suite 1400<br>Cincinnati, Ohio 45202<br>Tel: (513) 579-6400<br>Attorneys for C. Judson Hamlin as Legal<br>Representative | RIKER, DANZIG, SCHERER,<br>HYLAND & PERRETTI LLP<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, New Jersey 07962-1981<br>(973) 538-0800<br>Attorneys for Debtors in Possession<br><br>LOWENSTEIN SANDLER, PC<br>65 Livingston Avenue<br>Roseland NJ 07068<br>(973) 597-2500<br>Attorneys for Official Committee of Asbestos<br>Claimants<br><br>SAIBER LLC<br>One Gateway Center<br>Newark, New Jersey  07102-5311<br>(973) 645-4929<br>Attorneys for C. Judson Hamlin as Legal<br>Representative |

Dated:  ~~December 3, 2008~~**October 5, 2009**

# TABLE OF CONTENTS

**Page**

ARTICLE I    DEFINITIONS ............................................................ 1
   1.1    Defined Terms ........................................................... 1
   1.2    Other Definitions ................................................... ~~18~~19
   1.3    Rules of Construction ............................................ ~~18~~19

ARTICLE II    TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
           PRIORITY TAX CLAIMS ........................................... 19
   2.1    Administrative Expense Claims ........................................... 19
   2.2    Professional Compensation and Reimbursement Claims ...................... ~~19~~20
   2.3    No Double Payment of Administrative Claims ............................. 20
   2.4    Priority Tax Claims.................................................... 20

ARTICLE III    CLASSIFICATION AND TREATMENT OF CLAIMS AND
           INTERESTS ......................................................... ~~20~~21
   3.1    Class 1A – G-I Priority Non-Tax Claims. .............................. 22
   3.2    Class 1B – ACI Priority Non-Tax Claims. ............................. ~~22~~23
   3.3    Class 2A – G-I Secured Claims. ...................................... ~~22~~23
   3.4    Class 2B – ACI Secured Claims. ...................................... 23
   3.5    Class 3A – G-I Unsecured Claims. .................................... ~~23~~24
   3.6    Class 3B – ACI Unsecured Claims. ................................... ~~23~~24
       **Class 3C – G-I Non-Priority Tax Penalty Claims** ......................**25**
   3.7    Class 4 – Environmental Claims for Remedial Relief.................... 24
   3.8    Class 5 – Other Environmental Claims ............................... ~~24~~25
   3.9    Class **5A - US Environmental Claim and Vermont Environmental Claim** ...........
   **3.10**    **Class** 6 – Asbestos Claims. ...................................... ~~24~~25
   ~~3.10~~**3.11**    Class 7 – Asbestos Property Damage Claims and Asbestos Property Damage
           Contribution Claims................................................. ~~25~~26
   ~~3.11~~**3.12**    Class 8 – CCR Claim ................................................ ~~25~~27
   ~~3.12~~**3.13**    Class 9 – Bonded Claims ............................................ ~~26~~28
   ~~3.13~~    ~~Class 10A – G-I Affiliate Claims~~.................................~~26~~
   3.14    Class 10~~B~~**A** – ~~ACI~~**G-I** Affiliate Claims ............................. ~~27~~28
   3.15    Class **10B – ACI Affiliate Claims**................................... **28**
   **3.16**    **Class** 11 – G-I Equity Interest Redemption Claims .................. ~~27~~29
   ~~3.16~~**3.17**    Class 12A – G-I Equity Interests ................................... ~~27~~29
   ~~3.17~~**3.18**    Class 12B – ACI Equity Interests ................................... ~~28~~29

ARTICLE IV    IMPLEMENTATION OF PLAN ...................................... ~~28~~29
   4.1    Compromise and Settlement............................................ ~~28~~29
   4.2    Creation of Asbestos Trust .......................................... ~~28~~30
   4.3    Appointment of Asbestos Trustees.................................... ~~28~~30
   4.4    Transfer of Certain Property to the Asbestos Trust. ................. ~~29~~30

# TABLE OF CONTENTS
## (continued)

**Page**

| | | |
|---|---|---|
| 4.5 | Institution and Maintenance of Legal and Other Proceedings | ~~31~~**33** |
| 4.6 | Supersedeas Bonds and Payment Assurances. | ~~32~~**33** |
| 4.7 | Equity Ownership of G-I. | ~~32~~**34** |
| 4.8 | Equity Ownership of ACI. | ~~33~~**34** |
| ~~4.9~~ | ~~Permitted Loans~~ | ~~33~~ |
| ~~4.10~~ | ~~Letter of Credit~~ | ~~33~~ |
| **4.9** | **New ACI** | |
| **4.10** | **Equity Infusion to Fund Liabilities Under the Plan** | |
| ~~4.11~~ | Authority of the Debtors | ~~33~~**35** |
| **4.11** | **Letter of Credit** | **34** |

| | | |
|---|---|---|
| ARTICLE V | VOTING and DISTRIBUTIONS UNDER THE PLAN | ~~33~~**35** |
| 5.1 | Impaired Classes to Vote | ~~33~~**35** |
| 5.2 | Acceptance by Class of Creditors | ~~33~~**35** |
| 5.3 | Nonconsensual Confirmation | ~~34~~**35** |
| 5.4 | Distributions Under the Plan | ~~34~~**35** |
| 5.5 | Disbursing Agent | ~~35~~**36** |
| 5.6 | Manner of Payment Under the Plan | ~~35~~**36** |
| 5.7 | Unclaimed Property. | ~~35~~**36** |
| 5.8 | Time Bar to Cash Payments | ~~35~~**37** |
| 5.9 | Distributions After Effective Date | ~~36~~**37** |
| 5.10 | Setoffs | ~~36~~**37** |
| 5.11 | Cancellation of Existing Securities and Agreements | ~~36~~**37** |
| 5.12 | Payment of Interest on Allowed Claims | ~~36~~**37** |
| 5.13 | Allocation of Plan Distributions Between Principal and Interest | ~~36~~**37** |

| | | |
|---|---|---|
| ARTICLE VI | TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN | ~~36~~**38** |
| 6.1 | Objections to Claims; Prosecution of Disputed Claims | ~~36~~**38** |
| 6.2 | Estimation of Claims | ~~37~~**38** |
| 6.3 | No Distributions Pending Allowance | ~~38~~**39** |
| 6.4 | Distributions After Allowance | ~~38~~**39** |
| 6.5 | Insurance | ~~38~~**39** |
| 6.6 | Management of Existing Tax Claim Litigation | ~~38~~**39** |

| | | |
|---|---|---|
| ARTICLE VII | | ~~39~~ |
| | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 39 |
| 7.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases | 39 |
| 7.2 | Assumption of Insurance Policies | ~~39~~**40** |
| 7.3 | Cure of Defaults and Survival of Contingent Claims under Assumed Executory Contracts and Unexpired Leases | 40 |

ii

# TABLE OF CONTENTS
### (continued)

| | | Page |
|---|---|---|
| 7.4 | Deadline for Filing Rejection Damage Claims | ~~40~~**41** |
| 7.5 | Indemnification and Reimbursement Obligations | ~~40~~**41** |
| 7.6 | Compensation and Benefit Programs | ~~40~~**41** |
| 7.7 | Retiree Benefits | ~~41~~**42** |
| ARTICLE VIII | CORPORATE GOVERNANCE AND MANAGEMENT OF REORGANIZED DEBTORS | ~~41~~**42** |
| 8.1 | General | ~~41~~**42** |
| 8.2 | Reorganized Debtors' Directors and Officers | ~~41~~**42** |
| 8.3 | Amendment of Articles of Incorporation and By-Laws | 42 |
| 8.4 | Corporate Action | 42 |
| ARTICLE IX | EFFECT OF CONFIRMATION | ~~42~~**43** |
| 9.1 | Title to Assets | ~~42~~**43** |
| 9.2 | Discharge of Claims | ~~42~~**43** |
| 9.3 | Injunction on Claims | 43 |
| 9.4 | Term of Existing Injunctions or Stays | ~~43~~**44** |
| 9.5 | Injunction Against Interference With Plan of Reorganization | ~~43~~**44** |
| 9.6 | Exculpation | ~~43~~**44** |
| 9.7 | Mutual Releases | 44 |
| 9.8 | Avoidance Actions | 45 |
| 9.9 | Reservation of Rights | 45 |
| ARTICLE X | CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN; IMPLEMENTATION PROVISIONS | ~~45~~**46** |
| 10.1 | Conditions Precedent to Effective Date of the Plan | ~~45~~**46** |
| 10.2 | Waiver of Conditions Precedent | ~~48~~**49** |
| ARTICLE XI | RETENTION OF JURISDICTION | 49 |
| 11.1 | Retention of Jurisdiction | 49 |
| 11.2 | Non-Core Jurisdictional Matters | 51 |
| ARTICLE XII | MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN | ~~51~~**52** |
| 12.1 | Plan Modifications | ~~51~~**52** |
| 12.2 | Revocation, Withdrawal, or Non-Consummation. | 52 |
| ARTICLE XIII | MISCELLANEOUS PROVISIONS | 53 |
| 13.1 | Effectuating Documents and Further Transactions | 53 |
| 13.2 | Cooperation | 53 |
| 13.3 | Withholding and Reporting Requirements | 53 |
| 13.4 | Exemption from Transfer Taxes | 53 |
| 13.5 | Expedited Tax Determination | ~~53~~**54** |

# TABLE OF CONTENTS
## (continued)

**Page**

| | | |
|---|---|---|
| 13.6 | Exemption from Registration | ~~53~~**54** |
| 13.7 | Payment of Statutory Fees | 54 |
| 13.8 | Post-Confirmation Date Fees and Expenses | 54 |
| 13.9 | The Asbestos Claimants Committee and the Legal Representative. | 54 |
| 13.10 | Plan Supplement | 55 |
| 13.11 | Substantial Consummation | 55 |
| 13.12 | Sections 1125 and 1126 of the Bankruptcy Code | 55 |
| 13.13 | Severability | 55 |
| 13.14 | Governing Law | 56 |
| 13.15 | Deemed Acts | 56 |
| 13.16 | Binding Effect | 56 |
| 13.17 | Exhibits/Schedules | 56 |
| 13.18 | Notices | 56 |
| 13.19 | Time | 57 |
| 13.20 | Section Headings | 57 |
| 13.21 | Inconsistencies | 57 |

NYA 584340.14**584340.26**

**~~SECOND~~EIGHTH AMENDED JOINT PLAN OF
REORGANIZATION OF G-I HOLDINGS INC.
AND ACI INC.
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The Plan Proponents together propose the following ~~second~~**eighth** amended joint plan of reorganization under section 1121(a) of title 11 of the United States Code:

# ARTICLE I

## DEFINITIONS

1.1     <u>Defined Terms</u>.  As used in the Plan, the following terms shall have the respective meanings specified below and be applicable to the singular and plural form of the terms defined:

1.1.1     <u>ACI</u> means ACI Inc., one of the Debtors in Possession.

1.1.2     <u>ACI Class B Shares</u> means the new class of common stock authorized by ACI and issued to G-I prior to the Effective Date.

1.1.3     <u>ACI Affiliate Claim</u> means a Claim asserted against ACI by any of its Affiliates.

1.1.4     <u>ACI Equity Interest</u> means an Equity Interest in ACI.

1.1.5     <u>ACI Secured Claim</u> means a Secured Claim against ACI.

1.1.6     <u>ACI Priority Non-Tax Claim</u> means any Claim against ACI or its estate, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.1.7     <u>Administrative Expense Claim</u> means any Claim constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(1) of the Bankruptcy Code during the period up to and including the Effective Date, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors-in-Possession, any indebtedness or obligations incurred or assumed by the Debtors-in-Possession in connection with the conduct of their businesses, and any Claims for compensation and reimbursement of expenses arising during the period from and after the respective Commencement Dates and prior to the Effective Date to the extent Allowed by Final Order of the Bankruptcy Court under sections 328, 330, 331, or 503(b) of the Bankruptcy Code or otherwise in accordance with the provisions of the Plan, whether fixed before or after the Effective Date, and any fees or charges assessed against the Debtors' estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

1

        1.1.8      <u>Affiliate</u> means (i) any Entity that is an "affiliate" of any of the Debtors within the meaning set forth in section 101(2) of the Bankruptcy Code, and (ii) **Samuel J. Heyman, members of his family, and** any other Entity that is owned or controlled, directly or indirectly, by Samuel J. Heyman or members of his family.

        1.1.9      <u>Allowed</u> means:

        (a)      With reference to any Claim (other than an Asbestos Claim) against the Debtors, (i) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any Claim allowed hereunder, (iii) any timely filed Claim that is not disputed or as to which no objection to allowance has been timely interposed in accordance with Section 6.1 hereof or such other period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, (iv) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Reorganized Debtors pursuant to a Final Order of the Bankruptcy Court or under Section 6.1 of the Plan, or (v) any Claim that, if disputed, has been Allowed by Final Order; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder; and *provided further* that unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Commencement Date.

        (b)      With respect to any Bonded Claim, any Claim that qualifies as a Bonded Claim under the applicable definitions of the Plan, but only to the extent that the Bankruptcy Court or other court of competent jurisdiction determines by Final Order (or the applicable Debtor or Reorganized Debtor and the holder of such Claim agree) that such holder is entitled to some or all of the proceeds of the applicable supersedeas bond or other payment assurance, but only to the extent so ordered or agreed.

        (c)      With respect to the CCR Claim, such Claim to the extent that the CCR Settlement Agreement has been executed and delivered by each of the parties thereto and approved by the Bankruptcy Court or a Final Order has been issued in the CCR Allowance Proceedings.

        1.1.10      <u>Asbestos Claim</u> means any (i) Asbestos Personal Injury Claim, (ii) Indirect Trust Claim, and (iii) any deficiency portion of a Bonded Asbestos Personal Injury Claim remaining after crediting the proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Claim" shall not include or pertain to the CCR Claim or any Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Claim, Claim held by an Affiliate (even if such Claim would constitute an Indirect

2

Trust Claim if it arose in favor of a non-Affiliate), Environmental Claim, or Workers' Compensation Claim.

    1.1.11    <u>Asbestos Claimants Committee</u> means the statutory asbestos claimants committee, consisting of the Entities appointed as members in the Chapter 11 Cases by the United States Trustee for the District of New Jersey and their duly appointed successors, if any, as the same may be reconstituted from time to time.

    1.1.12    <u>Asbestos Permanent Channeling Injunction</u> means an irrevocable order or orders of the District Court granting the Debtors and the other Protected Parties the maximum relief and protection against Claims and Demands provided by section 524(g) of the Bankruptcy Code permanently and forever staying, restraining, and enjoining any Entity from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos Claim, all of which shall be channeled to the Asbestos Trust for resolution as set forth in the Asbestos Trust Distribution Procedures including, but not limited to:

    (a)    commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, a judicial, arbitral, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interests in property of any Protected Party;

    (b)    enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;

    (c)    creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interests in property of any Protected Party;

    (d)    setting off, seeking reimbursement of, contribution from, indemnification of or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

    (e)    proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Asbestos Trust Agreement or the Asbestos Trust Distribution Procedures, except in conformity and compliance therewith.

    1.1.13    <u>Asbestos Personal Injury Claim</u> means any Claim or Demand against G-I, now existing or hereafter arising, whether or not such Claim, remedy, liability, or Demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, for death, bodily injury,

3

sickness, disease, medical monitoring or other personal injuries (whether physical, emotional or otherwise) to the extent caused or allegedly caused, directly or indirectly, by the presence of or exposure (whether prior to or on and after the Commencement Date) to asbestos or asbestos-containing products or things that was or were installed, engineered, designed, manufactured, fabricated, constructed, sold, supplied, produced, specified, selected, distributed, released, marketed, serviced, maintained, repaired, purchased, owned, occupied, used, removed, replaced or disposed of by G-I or an Entity for whose products or operations G-I allegedly has liability or for which G-I is otherwise allegedly liable, including, without limitation, (i) any Claim, remedy, liability, or demand for compensatory damages (such as loss of consortium, wrongful death, medical monitoring, survivorship, proximate, consequential, general, and special damages) and punitive damages; (ii) any Claim, remedy, liability or demand for reimbursement, indemnification, subrogation and contribution (including an Indirect Trust Claim); and (iii) any Claim under any settlement pertaining to an Asbestos Personal Injury Claim, which settlement was actually or purportedly entered into by or on behalf of G-I prior to the Commencement Date; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Personal Injury Claim" shall not include or pertain to the CCR Claim or any Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Claim, Claim held by an Affiliate (even if such Claim would constitute an Indirect Trust Claim if it arose in favor of a non-Affiliate), Environmental Claim, or Workers' Compensation Claim.

1.1.14    Asbestos Property Damage Claim means (i) any Claim or remedy or liability against G-I, whether or not such Claim, remedy, or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty, or otherwise, for damages for property damage, including but not limited to, the cost of inspecting, maintaining, encapsulating, repairing, decontaminating, removing or disposing of asbestos or asbestos-containing products in buildings, other structures, or other property arising from the installation in, presence in or removal from buildings or other structures of asbestos or asbestos-containing products that was or were installed, manufactured, engineered, designed, fabricated, constructed, sold, supplied, produced, distributed, released, specified, selected, marketed, serviced, repaired, maintained, purchased, owned, used, removed, replaced or disposed of by G-I prior to the Commencement Date, or for which G-I is otherwise allegedly liable, including, without express or implied limitation, any such Claims, remedies and liabilities for compensatory damages (such as proximate, consequential, general, and special damages) and punitive damages, and any Claim, remedy or liability for reimbursement, indemnification, subrogation and contribution, including, without limitation, any Asbestos Property Damage Contribution Claim; and (ii) any Claim under any settlement pertaining to an Asbestos Property Damage Claim, which settlement was actually or purportedly entered into by or on behalf of G-I prior to the Commencement Date; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Property Damage Claim" shall not include or pertain to an Asbestos Personal Injury Claim, Bonded Claim, Indirect Trust Claim, CCR Claim, Environmental Claim, or Workers' Compensation Claim.

1.1.15    Asbestos Property Damage Contribution Claim means any Claim or remedy or liability against G-I, whether or not such Claim, remedy or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

4

legal, equitable, secured, or unsecured, whether or not the facts of or legal bases for such Claim, remedy or liability are known or unknown, that is (i) held by (a) any Entity (other than a director or officer entitled to indemnification pursuant to Section 7.4 of the Plan) who has been, is, or may be a defendant in an action seeking damages for property damage, including but not limited to, the cost of inspecting, maintaining, encapsulating, repairing, decontaminating, removing or disposing of asbestos or asbestos-containing products in buildings, other structures, or other property, arising from the installation in, presence in or removal from buildings or other structures of asbestos or asbestos-containing products that was or were installed, manufactured, engineered, designed, fabricated, constructed, sold, supplied, produced, distributed, released, specified, selected, marketed, serviced, repaired, maintained, purchased, owned, used, removed, replaced or disposed of by G-I prior to the Commencement Date, or for which G-I is otherwise allegedly liable, including, without express or implied limitation, any such Claims, remedies and liabilities for compensatory damages (such as proximate, consequential, general, and special damages) and punitive damages, or (b) any assignee or transferee of such Entity; and (ii) on account of alleged liability of G-I for reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay to the plaintiff in such action; *provided*, *however*, for the avoidance of doubt, the term "Asbestos Property Damage Contribution Claim" shall not include or pertain to an Asbestos Personal Injury Claim, Bonded Claim, Indirect Trust Claim, CCR Claim, Environmental Claim, or Workers' Compensation Claim.

      1.1.16    <u>Asbestos Trust</u> means the trust established by the Debtors under Bankruptcy Code section 524(g) and in accordance with the Asbestos Trust Agreement.

      1.1.17    <u>Asbestos Trust Agreement</u> means ~~that certain~~**the "G-I Holdings Inc.** Asbestos **Personal Injury** Settlement Trust Agreement**", to be** executed by ~~G-I~~**the Debtors** and the Asbestos Trustees, substantially in the form of Exhibit 1.1.17 to the Plan.

      1.1.18    <u>Asbestos Trust Distribution Procedures</u> means the **"G-I Holdings Inc.** Asbestos ~~Settlement~~**Personal Injury** Trust Distribution Procedures**"** to be implemented by the Asbestos Trustees pursuant to the terms and conditions of the Plan and the Asbestos Trust Agreement to process, liquidate, and pay Asbestos Claims, substantially in the form of Exhibit 1.1.18 to the Plan.

      1.1.19    <u>Asbestos Trust Initial Payment Percentage</u> means the initial payment percentage set forth in the Asbestos Trust Distribution Procedures for the Asbestos Claims, to be established prior to the Effective Date.

      1.1.20    <u>Asbestos Trustees</u> means, collectively, the persons confirmed by the Bankruptcy Court to serve as trustees of the Asbestos Trust, pursuant to the terms of the Asbestos Trust Agreement, or as subsequently may be appointed pursuant to the terms of such Agreement.

      1.1.21    <u>Ballot</u> means the form distributed to each holder of an impaired Claim to accept or reject the Plan.

      1.1.22    <u>Bankruptcy Code</u> means the Bankruptcy Reform Act of 1978, as amended, to the extent codified in title 11 of the United States Code, and applicable to the Chapter 11 Cases.

5

1.1.23    <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the District of New Jersey or such other court having subject matter jurisdiction over the Chapter 11 Cases.

1.1.24    <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code, and any local rules of the Bankruptcy Court, as amended from time to time and as applicable to the Chapter 11 Cases.

1.1.25    <u>BMCA</u> means Building Materials Corporation of America, Inc., a subsidiary of G-I.

1.1.26    <u>Board of Directors</u> means each Board of Directors of the Debtors or Reorganized Debtors, as they may exist from time to time.

1.1.27    <u>Bonded Asbestos Personal Injury Claim</u> means an Asbestos Personal Injury Claim evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was posted by a Debtor or by an Affiliate as security for such Claim.

1.1.28    <u>Bonded Claim</u> means any Bonded Asbestos Personal Injury Claim or Bonded Non-Asbestos Claim, but shall not include the deficiency portion, if any, of any such Claims.

1.1.29    <u>Bonded Non-Asbestos Claim</u> means any Claim, other than an Asbestos Claim and a Bonded Asbestos Personal Injury Claim, evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was posted by a Debtor or by an Affiliate as security for such Claim.

1.1.30    <u>Business Day</u> means a day other than a Saturday, a Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.1.31    <u>Capital Stock Lien</u> means the first priority Lien on the G-I Class B Shares, which Lien shall attach to the G-I Class B Shares as of the Effective Date ~~initially~~ to secure the Trust Note, as set forth in the **Holdings** Pledge Agreement ~~annexed as Exhibit 1.1.31 to the Plan~~.

1.1.32    <u>Cash</u> means the lawful currency of the United States of America.

1.1.33    <u>CCR</u> means the Center for Claims Resolution, Inc., a Delaware non-profit corporation, or its successor-in-interest.

1.1.34    <u>CCR Allowance Proceeding</u> means a contested matter pursuant to 11 U.S.C. § 502 to determine the amount of the CCR Claim**, excluding any contested matter to determine the amount or validity of the Former CCR Member Claims**.

6

1.1.35    CCR Claim means any Claim arising from facts or legal relationships that existed before or during G-I's bankruptcy that CCR or its members, in their capacity as such, have asserted or could assert against G-I or its bankruptcy estate, including, without limitation, any Claim for compensatory damages, contribution, indemnity, payment, reimbursement, subrogation, or any other remedy, whether or not raised in the alternative dispute resolution proceedings that were pending between CCR and G-I when G-I's bankruptcy case commenced.  The CCR Claim shall include, but not necessarily be limited to, all Claims based on or relating to (i) alleged breach by G-I of the CCR Producer Agreement or any amendments thereof; (ii) alleged payment or advances of funds, or financing of expenses, by or through CCR on G-I's account or for G-I's benefit; and (iii) any liability or expense allegedly incurred or paid by or through CCR as a result of G-I's failure or refusal to pay any obligation it allegedly incurred under any agreement made by CCR, during G-I's membership in CCR, for the settlement of any asbestos-related personal injury or wrongful death Claim**; *provided, however*, that the CCR Claim shall not include the Former CCR Member Claims to the extent such Claims are Allowed**.

1.1.36    CCR Escrow means an interest-bearing escrow account to be established by the Reorganized Debtors under circumstances described in Section 3.11(b)**4.4(c)(i)(C)** of the Plan.

1.1.37    CCR Escrow Amount means the dollar amount to be deposited by the Reorganized Debtors into the CCR Escrow (if the CCR Escrow becomes applicable), which amount shall be computed by applying the Asbestos Trust Initial Payment Percentage to the aggregate amount of the CCR Claim as alleged in a proof of claim timely filed with the Bankruptcy Court.

1.1.38    CCR Escrow Earnings means any interest, gains and other income on the CCR Escrow Amount, after deduction of any losses on such account and any fees and expenses charged by the escrow agent.

1.1.39    CCR Payment Amount means the Cash payment equal to either (a) if the CCR Claim is an Allowed Claim pursuant to the CCR Settlement Agreement, the *greater* of (x) $9.9 million and (y) the amount resulting from multiplying $110 million by the Asbestos Trust Initial Payment Percentage, or (b) if the CCR Claim is an Allowed Claim pursuant to a Final Order issued in connection with a CCR Allowance Proceeding, the amount resulting from multiplying the amount of the Allowed CCR Claim by the Asbestos Trust Initial Payment Percentage.

1.1.40    CCR Producer Agreement means The Producer Agreement Concerning Center for Claims Resolution, dated September 28, 1988, as modified, amended and supplemented.

1.1.41    CCR Settlement Agreement means an agreement to be entered into between and among the Debtors, the Asbestos Claimants Committee, the Legal Representative and CCR, and submitted for approval to the Bankruptcy Court, which will implement the letter of understanding with CCR dated June 30, 2008, and provide for a compromise and settlement governing the allowance and treatment of the CCR Claim under the Plan.  The aforementioned letter of understanding is Exhibit 1.1.41 to the Plan.

7

        1.1.42    <u>Chapter 11 Cases</u> means the cases commenced under Chapter 11 of the Bankruptcy Code by the Debtors styled *In re G-I Holdings Inc., et al.*, Chapter 11 Case Nos. 01-30135 (RG) and 01-38790 (RG) (Jointly Administered) currently pending before the Bankruptcy Court.

        1.1.43    <u>Claim</u> means (i) a "claim," as defined in section 101(5) of the Bankruptcy Code, against G-I or ACI, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim; (ii) any Environmental Claim, whether or not it constitutes a "claim" under section 101(5) of the Bankruptcy Code; and (iii) any rights to any equitable remedy.

        1.1.44    <u>Class</u> means a category of Claims or Equity Interests set forth in Article III of the Plan.

        1.1.45    <u>Collateral</u> means any property or interest in property of the estates of any of the Debtors subject to an unavoidable Lien to secure the payment or performance of a Claim.

        **1.1.46**    **<u>Collateral Agency Agreement</u> means the "Collateral Agency Agreement" to be entered into by and among Reorganized G-I, the Asbestos Trust and the Collateral Agent, substantially in the form annexed as Exhibit 1.1.46 to the Plan.**

        **1.1.47**    **<u>Collateral Agent</u> means the Entity appointed pursuant to the Collateral Agency Agreement as agent for the Asbestos Trust and any registered holder of the Trust Note, for the purposes specified in the Collateral Agency Agreement.**

        1.1.48    <u>Commencement Date</u> means January 5, 2001, with respect to G-I, and August 3, 2001, with respect to ACI.

        1.1.49    <u>Confirmation Date</u> means the later of (i) the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court; and (ii) the date on which the Confirmation Order is entered on the docket of the District Court.

        1.1.50    <u>Confirmation Hearing</u> means the hearing to consider confirmation of the Plan in accordance with the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

        1.1.51    <u>Confirmation Order</u> means the order or orders of the Bankruptcy Court or the District Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, which will contain, *inter alia*, the Asbestos Permanent Channeling Injunction; *provided*, *however*, that, if the District Court does not enter such an order confirming the Plan, then the term "Confirmation Order" shall include an order of the District Court affirming the Confirmation Order entered by the Bankruptcy Court.

8

**1.1.52    Consent Decree and Settlement Agreement means the agreement entered into between G-I Holdings and the United States of America to compromise and settle the US Environmental Claim and the Vermont Environmental Claim.**

1.1.53    Covered Matters means:

(a)    matters and/or proceedings pending or formerly before the Bankruptcy Court or District Court relating to: (i) the estimation of the aggregate Asbestos Personal Injury Claims and Demands, including, but not limited to, those matters subject to the Bankruptcy Court's Sixth Amended Estimation Scheduling Order, entered on July 7, 2008; (ii) the adversary proceeding styled *Official Committee of Asbestos Claimants v. Building Materials Corporation of America, et al.,* Adv. Proc. No. 04-2192 (RG); (iii) the Asbestos Claimants Committee's motion for authority to prosecute alleged avoidance actions of the G-I estate against BMCA, certain of its Affiliates, and certain current and former creditors of BMCA; (iv) the adversary proceeding commenced by the Asbestos Claimants Committee to compel the Chapter 11 filing and substantive consolidation of certain Affiliate(s) of G-I, styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. v. G-I Holdings Inc. et al.,* Case No. 01-03065 (RG); and (v) G-I's prosecution of an action for injunctive relief to stay asbestos claims against BMCA, styled *G-I Holdings, Inc. v. Those Parties Listed on Exhibit A to Complaint and John Does 1-250,* Adv. Proc. 01-3013 (RG);

(b)    matters and/or proceedings formerly pending before the District Court relating to G-I's prosecution of an action for a declaratory judgment that BMCA has no successor liability or alter ego liability for Asbestos Personal Injury Claims or Asbestos Property Damage Claims, styled *G-I Holdings Inc. et al. v. Bennett, et al.,* Civil No. 02-3626 (SRC), and the Asbestos Claimants Committee's prosecution of counter-claims therein;

(c)    matters and/or proceedings pending before the United States Court of Appeals for the Third Circuit relating to G-I's appeal from the order, dated December 7, 2005, issued by the District Court (Bassler, J.) dismissing, for lack of subject matter jurisdiction, G-I's appeal from the portion of the order of the Bankruptcy Court denying G-I's application to establish a method to estimate individual asbestos personal injury claims for distribution purposes, styled *G-I Holdings Inc. et al. v. Legal Representative of Present and Future Holders of Asbestos-Related Demands,* Case No. 06-1116;

(d)    matters and/or proceedings pending before the United States District Court for the Southern District of New York relating to the prosecution by the Asbestos Claimants Committee and the Legal Representative of alleged avoidance actions of the G-I estate against Samuel J. Heyman and related Entities, styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. et al.  v. Heyman et al.,* Case No. 01-Civ-8539 (RWS), and predecessor actions styled *Nettles v. Heyman,* Civ. No. 00-0035 (RWS),  and *Stewart v. Heyman,* Civ. No. 00-9769 (RWS); and

9

      (e)    matters and/or proceedings pending before the United States Court of Appeals for the Second Circuit relating to G-I's action for damages against certain law firms and other defendants, styled *G-I Holdings Inc. v. Baron & Budd, et al.*, Case No. 06-0174.

      1.1.54    <u>Creditor</u> means any Entity holding a Claim.

      1.1.55    <u>Debtors</u> means G-I and ACI.

      1.1.56    <u>Debtors-in-Possession</u> means the Debtors in their capacity as debtors in possession pursuant to sections 1101(1), 1107(a), and 1108 of the Bankruptcy Code.

      1.1.57    <u>Demand</u> means a demand for payment, present or future, referred to in Bankruptcy Code section 524(g)(5) that (i) was not a Claim during the Chapter 11 Cases; (ii) arises out of the same or similar conduct or events that gave rise to the Claims addressed by the Asbestos Permanent Channeling Injunction; and (iii) pursuant to the Plan is to be determined, resolved, and paid by the Asbestos Trust.

      1.1.58    <u>Disallowed Claim</u> means a Claim (other than an Asbestos Claim) that is disallowed in its entirety by an order of the Bankruptcy Court or such other court of competent jurisdiction, as the case may be.

      1.1.59    <u>Disbursing Agent</u> means Reorganized G-I or its designee in its capacity as disbursing agent pursuant to Section 5.5 of the Plan.

      1.1.60    <u>Disclosure Statement</u> means the disclosure statement for the Plan approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code.

      1.1.61    <u>Disputed Claim</u> means a Claim that is none of an Allowed Claim, a Disallowed Claim or an Asbestos Claim, and is any Claim, proof of which was filed, or an Administrative Expense Claim or other Claim, which is the subject of a dispute under the Plan or as to which Claim the Debtors have interposed a timely objection and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 or other applicable law, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court, but as to which a proof of claim was not timely or properly filed.

      1.1.62    <u>Distribution</u> means any dividend or payment of Cash or other consideration made by the Disbursing Agent to the holder of an Allowed Claim on account of such Claim pursuant to the terms and provisions of this Plan; *provided*, *however*, that the term "Distribution" shall not include or pertain to any payment, transfer, or delivery of Cash, property, or other consideration to the Asbestos Trustees, the Asbestos Trust, or any holder of an Asbestos Claim or Demand.

      1.1.63    <u>District Court</u> means the United States District Court for the District of New Jersey.

1.1.64    Effective Date means a Business Day selected by the Debtors that is on or after the date by which the conditions precedent to the effectiveness of the Plan specified in Section 10.1(b) of the Plan have been satisfied; *provided*, *however*, that the Effective Date shall occur no later than ~~February 17,~~**November 20,** 2009.

1.1.65    Encumbrance means, with respect to any asset, mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such asset (including, without express or implied limitation, any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction).

1.1.66    Entity means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the United States Trustee, or any other Entity.

1.1.67    Environmental Claim means any Claim relating to alleged hazardous materials, hazardous substances, contamination, pollution, waste, fines or mine or mill tailings released, threatened to be released or present in the environment or ecosystem, including without limitation, alleged contamination under federal or state environmental laws, codes, orders or regulations, common law, as well as any entitlements to equitable remedies, including, without limitation, investigation, restoration, natural resource damages, reclamation, remediation and cleanup, including without limitation, any Environmental Claim for Remedial Relief and any Other Environmental Claim; *provided*, *however*, for the avoidance of doubt, the term "Environmental Claim" shall not include or pertain to any Asbestos Claim, Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Asbestos Personal Injury Claim, CCR Claim, Workers' Compensation Claim, or Claim of an Affiliate.

1.1.68    Environmental Claim for Remedial Relief means ~~an~~**the following** Environmental ~~Claim~~**Claims** by a governmental unit ~~for remedial relief to address on-going hazards as an exercise of state or federal regulatory power at~~**with respect to** properties currently owned or operated by the Debtors~~, but does not include a Claim for monetary relief for reimbursement or contribution in respect of prepetition remediation expenditures or any other prepetition monetary Claim~~**: (i) Claims for recovery of response costs incurred post-petition with respect to response actions taken post-petition to address hazards, threats, or releases; (ii) Claims for recovery of civil penalties for violations of law resulting from post-petition actions of the Debtors; or (iii) actions seeking to compel the performance of an action to address a hazard, threat, or release under applicable environmental law. "Environmental Claim for Remedial Relief" does not include or pertain to any Environmental Claim for recovery of pre-petition expenditures or pre-petition penalties**.

1.1.69    Equity Interest means any equity interest or proxy related thereto, direct or indirect, in any of the Debtors represented by duly authorized, validly issued and outstanding shares of preferred stock or common stock, stock appreciation rights or any other instrument evidencing a present ownership interest, direct or indirect, inchoate or otherwise, in any of the Debtors, or right to

11

convert into such an equity interest or acquire any equity interest of the Debtors, whether or not transferable, or an option, warrant or right contractual or otherwise, to acquire any such interest, which was in existence prior to or on the Commencement Date; *provided*, *however*, for the avoidance of doubt, the term "Equity Interest" shall not include or pertain to any ACI Class B Shares or G-I Class B Shares.

        1.1.70    <u>Final Order</u> means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to (a) the Debtors, the Asbestos Claimants Committee, and the Legal Representative if before the Effective Date, or (b) the Reorganized Debtors and the Asbestos Trust if on or after the Effective Date, and if an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under section 502(j) of the Bankruptcy Code, Rule 60 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 9024) or any analogous rule under the Bankruptcy Rules, may be but has not then been filed with respect to such order, shall not cause such order not to be a Final Order; and *provided further, however,* that notwithstanding the filing of a motion under Rule 59 of the Federal Rules of Civil Procedure (made applicable by Bankruptcy Rule 9023) with respect to such order, the Debtors, the Asbestos Claimants Committee, and the Legal Representative (or, on and after the Effective Date, the Reorganized Debtors and the Asbestos Trust) shall be authorized jointly to deem any such order a Final Order unless such order affects the Asbestos Trust in which case the Debtors or the Reorganized Debtors, together with the Asbestos Trustees, may deem such order a Final Order.

        1.1.71    <u>First Payment To Asbestos Trust</u> means the amount **Reorganized** G-I shall pay in Cash to the Asbestos Trust on the Effective Date in furtherance of the provisions of the Plan, as quantified in accordance with Section 4.4(c) of the Plan.

        **<u>1.1.72</u>**    **<u>Former CCR Members Claims means the Claims asserted against G-I by (a) Pfizer Inc.; Quigley Company, Inc.; United States Gypsum Company; and Asbestos Claims Management Corporation ("ACMC"), each a former member of the CCR, and (b) NGC Bodily Injury Trust as successor to the NGC Settlement Trust, an affiliate of ACMC, seeking recovery of amounts arising from or related to the CCR Producer Agreement.</u>**

        1.1.73    <u>G-I</u> means G-I Holdings Inc., one of the Debtors in Possession.

        1.1.74    <u>G-I Affiliate Claim</u> means a Claim asserted against G-I by any of its Affiliates.

12

1.1.75    G-I Class B Shares means the new class of common stock authorized by G-I and issued to Holdings prior to the Effective Date**, pursuant to Section 4.7 of the Plan, and any certificates evidencing the same**.

1.1.76    G-I Equity Interest means an Equity Interest in G-I.

1.1.77    G-I Equity Interest Redemption Claim means an Unsecured Claim against G-I for the tender or redemption of an Equity Interest related to the 1989 LBO Transaction.

1.1.78    G-I ~~Secured Claim means any Secured Claim against G-I.~~**Non-Priority Tax Penalty Claim means any Unsecured Claim of the Internal Revenue Service under the Tax Code against the Debtors or their estates for penalties (including interest thereon) that is not a Priority Tax Claim.**

1.1.79    G-I Priority Non-Tax Claim means any Claim against G-I or its estate, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment in accordance with sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code, but only to the extent entitled to such priority.

**1.1.80    G-I Secured Claim means any Secured Claim against G-I.**

1.1.81    G-I Unsecured Claim means an Unsecured Claim against G-I, other than an Administrative Expense Claim, Priority Tax Claim, G-I Priority Non-Tax Claim, G-I Secured Claim, Asbestos Claim, Bonded Claim, Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, CCR Claim, Environmental Claim, G-I Affiliate Claim, or G-I Equity Interest Redemption Claim.

1.1.82    Holdings means G Holdings Inc., the parent company of G-I.

**1.1.83    Holdings Pledge Agreement means the "Pledge Agreement of G Holdings Inc." to be entered into by and between Holdings and the Collateral Agent, a copy of which is annexed as Exhibit 1.1.83 to the Plan.**

1.1.84    Indirect Trust Claim means any Claim or Demand against G-I, now existing or hereafter arising, that is (i) held by any Entity (other than a director or officer entitled to indemnification pursuant to Section 7.5 of the Plan) who has been, is, or may be a defendant in an action seeking damages for death, bodily injury, sickness, disease, or other personal injuries (whether physical, emotional, or otherwise) to the extent based on, arising from, or attributable to an Asbestos Personal Injury Claim; and (ii) on account of alleged liability of G-I for reimbursement, indemnification, subrogation, or contribution of any portion of any damages such Entity has paid or may pay on account of an Asbestos Personal Injury Claim; *provided, however,* for the avoidance of doubt, the term "Indirect Trust Claim" shall not include or pertain to the CCR Claim, any Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Claim, Environmental Claim, Workers' Compensation Claim, ACI Affiliate Claim, or G-I Affiliate Claim.

13

1.1.85    Insured Claim means a Claim arising from an incident or occurrence covered by one or more of the Debtors' insurance policies.

~~1.1.80    LC Agent means the agent to whom the Letter of Credit is issued, to be held on behalf of the holder of the Trust Note.~~

**1.1.86    ISP means International Specialty Products, Inc., an Affiliate of the Debtors.**

1.1.87    Legal Representative means C. Judson Hamlin, the Legal Representative of Present and Future Holders of Asbestos Related Demands appointed by the Bankruptcy Court pursuant to its order dated October 10, 2001.

1.1.88    Letter of Credit means ~~the irrevocable standby letter of credit issued by a major money-center bank, the governing terms of which letter of credit shall be reasonably satisfactory in form and substance to the Asbestos Claimants Committee and the Legal Representative, which terms are set forth in the Collateral Agency Agreement annexed as Exhibit 1.1.82 to the Plan.~~**one or more irrevocable standby letters of credit issued by an "Acceptable Letter of Credit Issuer", as defined in the Collateral Agency Agreement, and that otherwise satisfy in form and substance all requirements set forth in the Collateral Agency Agreement.**

**1.1.89    "LIBOR" means, with respect to an Interest Period, the rate (expressed as a percentage per annum to five decimal places) for deposits in United States dollars for three month periods beginning on the first day of such Interest Period that appears on Telerate Page 3750 as of 11:00 a.m., London time, on the Determination Date. If Telerate Page 3750 does not include such a rate or is unavailable on a Determination Date, the Company will request the principal London office of any four (4) of the Reference Banks (selected by the Company), to provide such bank's offered rate as of approximately 11:00 a.m., London time, on such Determination Date, to prime banks in the London interbank market, for deposits in a representative amount in United States dollars for a three month period beginning on the first day of such Interest Period. If at least two such offered quotations are so provided, LIBOR for the Interest Period will be the arithmetic mean of such quotations. If fewer than two such quotations are so provided, the Company will request each of the principal New York City offices of such Reference Banks, to provide such bank's rate as of approximately 11:00 a.m., New York City time, on such Determination Date, for loans in a representative amount in United States dollars to leading European banks for a three month period beginning on the first day of such Interest Period. If at least two such rates are so provided, LIBOR for the Interest Period will be the arithmetic mean of such rates. If fewer than two such rates are so provided, then LIBOR for the Interest Period will be 4.50000% per annum.**

1.1.90    Lien means any charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.1.91    Maximum Amount has the meaning ascribed to that term in the Collateral Agency Agreement.**

14

1.1.92    <u>1989 LBO Transaction</u> means the transaction or series of transactions that took place in or about March 1989, in which the former GAF Corporation and certain of its wholly-owned direct or indirect subsidiaries acquired a predecessor also named GAF Corporation in a management-led buyout and in which shareholders of the acquired predecessor company were offered Cash for the tender of their shares in the acquired company.

1.1.93    <u>Noteholder Defendants</u> means any Entity that holds or held public debt issued before the Confirmation Date by BMCA, and all Entities that were named as defendants in the action filed by the Asbestos Claimants Committee styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. v. Building Materials Corp. of America, et al. (In re G-I Holdings, Inc. and ACI Inc.)*, Adv. No. 04-2192 (RG) (Bankr. D.N.J.), or in the proposed complaint submitted by the Asbestos Claimants Committee in the action styled *Official Committee of Asbestos Claimants of G-I Holdings Inc. v.  Those Parties listed on Exhibit A, et. al.*, Adv. No.  01-3013 (RG) (Bankr. D.N.J.). "Noteholder Defendants" specifically includes, but is not limited to, all current or former parents, subsidiaries, affiliates, advisors, trustees, agents and/or investment managers of any such holder or former holder of public debt issued before the Confirmation Date by BMCA, but only in their capacity as such.

1.1.94    <u>Other Environmental Claim</u> means any Environmental Claim that is not an Environmental Claim for Remedial Relief, including without limitation Claims for monetary relief for reimbursement or contribution in respect of prepetition remediation expenditures and any prepetition monetary Claims relating to environmental laws or regulations, whether for property owned or operated by G-I prepetition, postpetition, or both.

1.1.87    ~~PD Existing Insurance~~ ~~means the Debtors' insurance policies providing coverage against incidents or occurrences resulting in Asbestos Property Damage Claims or Asbestos Property Damage Contribution Claims.~~

1.1.95    <u>Plan</u> means this ~~Second~~**Eighth** Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc. Pursuant to Chapter 11 of the Bankruptcy Code, including, without limitation, the Plan Documents, as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

1.1.96    <u>Plan Documents</u> mean all documents, attachments, schedules, and exhibits related to the Plan, including, without limitation, the documents contained in the Plan Supplement.

1.1.97    <u>Plan Proponents</u> means G-I, ACI, the Asbestos Claimants Committee, and the Legal Representative.

1.1.98    <u>Plan Sponsor</u> means Samuel J. Heyman or any of his Affiliates or designees.

1.1.99    <u>Plan Supplement</u> means the Supplement to the Plan containing the exhibits and schedules to the Plan that are not served with the approved Disclosure Statement upon holders of Claims and Equity Interests in connection with the solicitation of votes to accept or reject the Plan.

15

1.1.100    Priority Tax Claim means any Claim of a governmental unit against the Debtors entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.1.101    Protected Party **means any and all of the following parties:**

(a)    **the Debtors;**

(b)    **the Reorganized Debtors;**

(c)    **any Affiliate listed on Exhibit 1.1.941.1.101(c) hereto;**

(d)    **any Entity that, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any assets of the Debtors, the Reorganized Debtors, or the Asbestos Trust, but solely to the extent that an Asbestos Claim is asserted against such Entity by reason of its becoming such a transferee or successor;**

(e)    **any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to the Reorganized Debtors, any Protected Party, or the Asbestos Trust or to a successor to, or transferee of, any assets of the Debtors, the Reorganized Debtors, or the Asbestos Trust, but solely to the extent that an Asbestos Claim is asserted against such Entity by reason of its making such loan or to the extent that any pledge of assets made in connection with such a loan is sought to be upset or impaired; or**

(f)    **any Entity alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on the Debtors, the Reorganized Debtors, or the Asbestos Trust on account of Asbestos Claims by reason of one or more of the following:**

(i)    **such Entity's ownership of a financial interest in the Debtors, the Reorganized Debtors, a past or present Affiliate of the Debtors or the Reorganized Debtors, or a predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such;**

(ii)    **such Entity's involvement in the management of the Debtors, an Affiliate, the Reorganized Debtors, or any predecessor in interest of the Debtors, or the Reorganized Debtors, but solely in such Entity's capacity as such;**

(iii)    **such Entity's service as an officer, director, or employee of the Debtors, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, any predecessor in interest of the Debtors or the Reorganized Debtors, or any Entity that owns or at any time has owned a financial interest in the Debtors or the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such;**

16

(iv)    **such Entity's provision of insurance to the Debtors, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, any predecessor in interest of the Debtors or the Reorganized Debtors, any Entity that owns or at any time has owned a financial interest in the Debtors or the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but only to the extent that the Debtors, the Reorganized Debtors, or the Asbestos Trust enters into a settlement with such Entity that is approved by the Bankruptcy Court and expressly provides that such Entity shall be entitled to the protection of the Asbestos Permanent Channeling Injunction as a Protected Party; or**

(v)    **such Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction (including involvement in providing financing or advice to an Entity involved in such a transaction or acquiring or selling a financial interest in an Entity as part of such a transaction), affecting the financial condition of the Debtors, an Affiliate, the Reorganized Debtors, any past or present Affiliate of the Debtors or the Reorganized Debtors, or any predecessor in interest of the Debtors or the Reorganized Debtors, but solely in such Entity's capacity as such.**

1.1.102    Record Date means the record date for distributions under the Plan, as set forth in the Confirmation Order.

1.1.103    Reorganized Debtors means the Debtors from and after the Effective Date.

1.1.104    Reorganized Debtors' Certificate of Incorporation means the certificate of incorporation or articles of incorporation of each of the Reorganized Debtors that are substantially in the form of Schedule 1.1.97**1.1.104** of the Plan Supplement.

1.1.105    Reorganized Debtors' By-Laws mean the respective by-laws of the Reorganized Debtors that are substantially in the form of Schedule 1.1.98**1.1.105** of the Plan Supplement.

1.1.106    Reorganized G-I means G-I from and after the Effective Date.

1.1.107    Schedules mean, unless otherwise specified, the respective schedules of assets and liabilities, the list of holders of Equity Interests, and the statements of financial affairs filed by the Debtors in accordance with section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended on or prior to the Confirmation Date.

1.1.108    Secured Claim means any Claim (i) to the extent reflected in the Schedules or in a proof of claim as a Secured Claim, which is validly and unavoidably secured by a Lien on

17

Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (ii) that is subject to a valid setoff right.

1.1.109    Supersedeas Bond Action means any rights, defenses, counterclaims, or affirmative causes of action of the Debtors or the Reorganized Debtors with respect to a Bonded Claim, or with respect to any supersedeas bond or other form of security or payment assurance issued in connection with a Bonded Claim, or against the issuer or insurer of any payment assurance issued in connection with a Bonded Claim.

1.1.110    Tax Code means the Internal Revenue Code of 1986, as amended from time to time.

1.1.111    Trust Causes of Action means any and all actions, claims, rights, defenses, counterclaims, suits, and causes of action of the Debtors, whether known or unknown, at law, in equity or otherwise, whenever or wherever arising under the laws of any jurisdiction attributable to: (a) all defenses to any Asbestos Claim; (b) with respect to any Asbestos Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect Claim of any kind whatsoever, whenever, and wherever arising or asserted; and (c) subject to the provisions of this Plan, any other Claims or rights with respect to Asbestos Claims that the Debtors would have had under applicable law if the Chapter 11 Cases had not occurred and the holder of such Asbestos Claim had asserted it by initiating or continuing civil litigation against any such Debtor.  Notwithstanding the foregoing, Trust Causes of Action shall not include (i) any of the Debtors' rights arising under or attributable to the Supersedeas Bond Actions; (ii) the property, rights, or assets, if any, of the Debtors or their Affiliates that were previously used to secure or obtain a supersedeas bond with respect to any Bonded Claim and which are recoverable or recovered by any of the Debtors or any of their Affiliates after full satisfaction of such Claim; or (iii) any Claims or rights that were or could have been asserted in the Covered Matters.

1.1.112    Trust Note means the note in the original principal amount of Five Hundred Sixty Million Dollars ($560,000,000), ~~secured by the Capital Stock Lien as provided herein,~~**to be** authorized and issued pursuant to the Plan by Reorganized G-I on the Effective Date, a copy of which is Exhibit ~~1.1.105 hereto~~**1.1.112 to the Plan, which Trust Note shall be secured by the Holdings Pledge Agreement until the Holdings Pledge Agreement is replaced by the Letter of Credit, as provided in Sections 4.4(c)(ii) and (iii) of the Plan**.

1.1.113    Unsecured Claim means any Claim against one or more of the Debtors (regardless of whether such Claim is covered by insurance), to the extent that such Claim is neither secured nor entitled to priority under applicable law.  Unsecured Claims shall expressly include, without limitation, (a) any ~~claim~~**Claim** arising from the rejection of an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) any portion of a Claim that is not a Secured Claim (i.e., a deficiency claim); (c) any deficiency portion of a Bonded Non-Asbestos Claim remaining after crediting proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled; ~~and~~ (d) any Claims arising from the provision of goods or services to the Debtors prior to the

18

Commencement Date, including the Claims of commercial trade creditors**; (e) any G-I Non-Priority Tax Penalty Claim and (f) to the extent Allowed, the Former CCR Member Claims**.  Unless otherwise specifically provided in an applicable provision of this Plan, Unsecured Claims shall not include (i) Administrative Expense Claims; (ii) Priority Tax Claims; (iii) G-I Priority Non-Tax Claims; (iv) ACI Priority Non-Tax Claims; (v) G-I Secured Claims; (vi) ACI Secured Claims; (vii) Asbestos Claims; (viii) Asbestos Property Damage Claims; (ix) Asbestos Property Damage Contribution Claims; (x) Environmental Claims; (xi) Bonded Claims; (xii) the CCR Claim; (xiii) G-I Affiliate Claims; (xiv) ACI Affiliate Claims; (xv) Workers' Compensation Claims, or (xvi) G-I Equity Interest Redemption Claims.

**1.1.114    US Adversary Complaint means the adversary proceeding filed by the United States of America against G-I for declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a); Section 303 of the CAA , 42 U.S.C. § 7603; and Section 7003 of RCRA, 42 U.S.C. § 6973, in connection with the VAG Site.**

**1.1.115    US Environmental Claim means the proof of claim filed by the United States of America against the G-I and certain of its Affiliates on behalf of the Environmental Protection Agency, the National Oceanic and Atmospheric Administration, and the Department of the Interior alleging claims arising under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607; the Federal Water Pollution Control Act ("FWPCA"), as amended, 35 U.S.C. § 1251 *et seq.*; Section 303 of the Clean Air Act ("CAA"), 42 U.S.C. § 7603; and Section 7003 of the Resource Recovery Act ("RCRA"), 42 U.S.C. § 6973, as more fully described in the Consent Decree and Settlement Agreement.**

**1.1.116    VAG Site means the Vermont Asbestos Group Mine Site in Lowell and Eden, Vermont.**

**1.1.117    Vermont Environmental Claim means the proof of claim filed by the State of Vermont relating to the VAG Site that is the subject of the US Adversary Complaint, as more fully described in the Consent Decree and Settlement Agreement.**

1.1.118    Workers' Compensation Claim means a Claim brought by any person for alleged entitlement to benefits from G-I under any workers' compensation statute,  whether asserted directly by the person claiming such benefits or indirectly or derivatively by an Entity claiming subrogation, reimbursement, contribution, or indemnity for the payment of such benefits.

1.2    Other Definitions.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code.

1.3    Rules of Construction.  Unless otherwise expressly provided,

19

(a)     all section, schedule or exhibit references in the Plan are to the respective section in, article of, or schedule or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time;

(b)     all references to dollars are to the lawful currency of the United States of America;

(c)     the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole; and

(d)     the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND PRIORITY TAX CLAIMS

2.1     <u>Administrative Expense Claims</u>.  Except to the extent that any Entity entitled to payment of any Allowed Administrative Expense Claim agrees to a less favorable treatment with the applicable Debtor, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor in Possession shall be paid in full and performed by the applicable Reorganized Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2     <u>Professional Compensation and Reimbursement Claims</u>.  All holders of any Claim for an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by a date no later than the date that is ninety (90) days after the Effective Date or by such other date as may be fixed by the Bankruptcy Court, and (ii) if granted such an award by the Bankruptcy Court, be paid in full in such amounts as are Allowed by the Bankruptcy Court (A) on the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable, or (B) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Reorganized Debtors.

20

2.3    No Double Payment of Administrative Claims.  To the extent that an Administrative Expense Claim is Allowed against the Estate of each Debtor, there shall be only a single recovery on account of such Allowed Claim; *provided, however*, that an Entity holding an Allowed Claim against each of the Debtors as co-obligors on such Claim may recover distributions from any such Debtor until such Entity has received payment in full on such Allowed Claim.

2.4    Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the applicable Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the applicable Reorganized Debtor and in full and complete satisfaction of any and all liability attributable to such Priority Tax Claim on the latest of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable ~~nonbankruptcy~~**non-bankruptcy** law, or as soon thereafter as is reasonably practicable, (a) Cash in an amount equal to such Allowed Priority Tax Claim, (b) a transferable note ~~that provides for a Cash payment in an~~**in the principal** amount equal to such Allowed Priority Tax Claim, together with interest at ~~four percent (4.00%)~~**a rate per annum equal to LIBOR in effect on the Confirmation Date plus 1%, payable in Cash** on the sixth (6th) anniversary from the date of the final determination of the assessment of such Allowed Priority Tax Claim **(for purposes of this section 2.4, such date means the date upon which the Allowed Priority Tax Claim is determined by a Final Order)**, or (c) any combination of Cash and a note, on the terms provided in subsections (a) and (b) hereof, in an aggregate Cash and principal amount equal to such Allowed Priority Tax Claim; *provided*, that the Debtors reserve the right to prepay any such note in part or in whole at any time without premium or penalty; and *provided, further*, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest accrued on or penalty arising after the Commencement Date with respect to or in connection with such Allowed Priority Tax Claim**; and *provided further*, that any assessment of a tax liability made against any entity the payment of which would give rise to a claim for indemnification by such entity against the Reorganized Debtors shall (i) not exceed the amount of any Allowed Priority Tax Claim, (ii) for purposes of this Section 2.4, be deemed to be an assessment of an Allowed Priority Tax Claim, and (iii) be subject to the timing and payment terms set forth herein, such that any such assessment may be satisfied in full upon such entity's delivering a note issued by G-I having the same terms as described in (b) hereof**.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

| CLASS | STATUS | ENTITLED TO VOTE |
|---|---|---|
| Class 1A:  G-I Priority Non-Tax Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 1B:  ACI Priority Non-Tax Claims | Unimpaired | No (deemed to accept the Plan) |

21

| Class 2A: G-I Secured Claims | Unimpaired | No (deemed to accept the Plan) |
|---|---|---|
| Class 2B: ACI Secured Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 3A: G-I Unsecured Claims | Impaired | Yes |
| Class 3B: ACI Unsecured Claims | Unimpaired | No (deemed to accept the Plan) |
| **Class 3C: G-I Non-Priority Tax Penalty Claims** | **Unimpaired** | **No (deemed to accept the Plan)** |
| Class 4: Environmental Claims for Remedial Relief | Unimpaired | No (deemed to accept the Plan) |
| Class 5: Other Environmental Claims | Impaired | No (deemed to reject the Plan) |
| **Class 5A: US Environmental Claim and Vermont Environmental Claim** | **Impaired** | **No (the Consent Decree and Settlement Agreement constitutes the claimholders' vote to accept the Plan)** |
| Class 6: Asbestos Claims | Impaired | Yes |
| Class 7: Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims | Impaired | Yes |
| Class 8: CCR Claim | Unimpaired if CCR Settlement Agreement is approved before voting deadline; otherwise impaired. | No (deemed to accept the Plan) if CCR Settlement Agreement is approved prior to voting deadline; otherwise Yes. |
| Class 9: Bonded Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 10A: G-I Affiliate Claims | Impaired | No (deemed to reject the Plan) |
| Class 10B: ACI Affiliate Claims | Unimpaired | No (deemed to accept the Plan) |
| Class 11: G-I Equity Interest Redemption | Impaired | No (deemed to reject the Plan) |

22

| Claims | | |
|---|---|---|
| Class 12A:  G-I Equity Interests | Impaired | No (deemed to reject the Plan) |
| Class 12B:  ACI Equity Interests | Impaired | No (deemed to reject the Plan) |

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Equity Interests are classified for all purposes, including, without limitation, voting, confirmation, and distribution pursuant to the Plan, as set forth herein.  A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  Other than Asbestos Claims, a Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3.1     Class 1A – G-I Priority Non-Tax Claims.

(a)     Classification:  Class 1A consists of all G-I Priority Non-Tax Claims.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed G-I Priority Non-Tax Claims are unaltered by the Plan, or such Allowed G-I Priority Non-Tax Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)     Voting:  Class 1A is unimpaired by the Plan.  Each holder of a Class 1A Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.2     Class 1B – ACI Priority Non-Tax Claims.

(a)     Classification:  Class 1B consists of all ACI Priority Non-Tax Claims.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of Allowed ACI Priority Non-Tax Claims are unaltered by the Plan, or such Allowed ACI Priority Non-Tax Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)     Voting:  Class 1B is unimpaired by the Plan.  Each holder of a Class 1B Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.3     Class 2A – G-I Secured Claims.

(a)    <u>Classification</u>:  Class 2A consists of all G-I Secured Claims.

(b)    <u>Treatment</u>:  The legal, equitable, and contractual rights of the holders of Allowed G-I Secured Claims are unaltered by the Plan, or such Allowed G-I Secured Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    <u>Voting</u>:  Class 2A is unimpaired by the Plan.  Each holder of a Class 2A Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.4    <u>Class 2B – ACI Secured Claims</u>.

(a)    <u>Classification</u>:  Class 2B consists of all ACI Secured Claims.

(b)    <u>Treatment</u>:  The legal, equitable, and contractual rights of the holders of Allowed ACI Secured Claims are unaltered by the Plan, or such Allowed ACI Secured Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    <u>Voting</u>:  Class 2B is unimpaired by the Plan.  Each holder of a Class 2B Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to accept or reject the Plan.

24

3.5     Class 3A – G-I Unsecured Claims.

(a)     Classification:  Class 3A consists of all Unsecured Claims against G-I**,  To
the extent the Former CCR Members Claims become Allowed Former CCR Member
Claims, such Claims shall be entitled to the treatment provided for Allowed Claims in
Class 3A**.

(b)     Treatment:  On the later of (i) the Effective Date and (ii) the date on which a
G-I Unsecured Claim becomes an Allowed G-I Unsecured Claim, or as soon thereafter as is
reasonably practicable, each holder of an Allowed G-I Unsecured Claim shall receive Cash in
an amount equal to 8.6 % of such Allowed Claim..

(c)     Voting:  Class 3A is impaired by the Plan.  Each holder of an Allowed Class
3A Claim is entitled to vote to accept or reject the Plan.

3.6     Class 3B – ACI Unsecured Claims

(a)     Classification:  Class 3B consists of all Unsecured Claims against ACI.

(b)     Treatment:  The legal, equitable, and contractual rights of the holders of
Allowed ACI Unsecured Claims are unaltered by the Plan, or such Allowed ACI Unsecured
Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy
Code.

(c)     Voting:  Class 3B is unimpaired by the Plan.  Each holder of a Class 3B
Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to
accept or reject the Plan.

**3.7     Class 3C - G-I Non-Priority Tax Penalty Claims**

**(a)     Classification:  Class 3C consists of all G-I Non-Priority Tax Penalty
Claims.**

**(b)     Treatment:  On the later of (i) the Effective Date and (ii) the date on
which a G-I Non-Priority Tax Penalty Claim becomes an Allowed G-I Non-Priority Tax
Penalty Claim, or as soon thereafter as is reasonably practicable, each holder of an
Allowed G-I Non-Priority Tax Penalty Claim shall receive Cash in an amount equal to
100% of such Allowed Claim; _provided, however_, that if necessary to render any such
Class 3C Claim unimpaired, each holder of an Allowed G-I Non-Priority Tax Penalty
Claim shall also receive Cash in an amount sufficient for payment in full of postpetition
interest on any such Class 3C Claim, to the extent accrued under applicable non-
bankruptcy law.**

25

    **(c)**    **Voting:  Class 3C is unimpaired by the Plan.  Each holder of a Class 3C Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.**

NYA 584340.14584340.26

3.8    Class 4 – Environmental Claims for Remedial Relief

(a)    <u>Classification</u>:  Class 4 consists of all Environmental Claims for Remedial Relief.

(b)    <u>Treatment</u>:  The legal, equitable, and contractual rights of the holders of Allowed Environmental Claims for Remedial Relief are unaltered by the Plan, or such Allowed Environmental Claims for Remedial Relief shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)    <u>Voting</u>:  Class 4 is unimpaired by the Plan.  Each holder of a Class 4 Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.9    Class 5 – <u>Other Environmental Claims</u>

(a)    <u>Classification</u>:  Class 5 consists of Other Environmental Claims.

(b)    <u>Treatment</u>:  On the later of (i) the Effective Date and (ii) the date on which an Other Environmental Claim becomes an Allowed Other Environmental Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Other Environmental Claim shall receive Cash in an amount equal to 8.6 % of such Allowed Claim.

(c)    <u>Voting</u>.  Class 5 is impaired by the Plan.  Each holder of an Allowed Class 5 Claim is conclusively deemed to reject the Plan and is thus not entitled to vote to accept or reject the Plan.

**<u>3.10    Class 5A – US Environmental Claim and Vermont Environmental Claim</u>**

**<u>(a)    Classification:  Class 5A consists of the US Environmental Claim and the Vermont Environmental Claim.</u>**

**<u>(b)    Treatment:  On the Effective Date, the respective holders of the US Environmental Claim and Vermont Environmental Claim shall receive the treatment afforded to such Claims pursuant to the Consent Decree and Settlement Agreement. With respect to environmental liabilities to the United States and the State of Vermont, nothing in this Plan shall be construed to discharge or release any non-debtor from liability to the United States or the State of Vermont other than as set forth in the Consent Decree, subject to the provisions of the Plan with respect to the injunctive provisions of 11 U.S.C. § 524(g).</u>**

**<u>(c)    Voting:  Class 5A is impaired by the Plan.  The Consent Decree and Settlement Agreement constitutes the vote by the holders of the Class 5A Claims to accept the Plan.</u>**

27

**(d)     Global Settlement and Compromise.  The Plan incorporates a global settlement and compromise between G-I and its Affiliates with the United States and the State of Vermont of the US Environmental Claim, the Vermont Environmental Claim, and the US Adversary Complaint, which is memorialized in the Consent Decree and Settlement Agreement.  This settlement and compromise is subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  The treatment to be afforded the United States and Vermont with regard to the US Environmental Claim and the Vermont Environmental Claim is set forth in the Consent Decree and Settlement Agreement.  To the extent there is an inconsistency between the provisions of the Consent Decree and Settlement Agreement and the Plan with regard to the treatment of the US Environmental Claim and the Vermont Environmental Claim, the Consent Decree and Settlement Agreement will control.**

3.11     Class 6 – Asbestos Claims.

(a)     Classification:  Class 6 consists of all Asbestos Claims.

(b)     Treatment:  All Class 6 Claims shall be resolved, determined, and paid pursuant to section 524(g) of the Bankruptcy Code and the terms, provisions, and procedures of the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.  The Asbestos Trust will be funded in accordance with the provisions of Section 4.4 of the Plan. The sole recourse of the holder of a Class 6 Claim shall be the Asbestos Trust, and such holder shall have no right whatsoever at any time to assert its Class 6 Claim against any Protected Party.  *Without limiting the foregoing, on the Effective Date, all holders of Asbestos Claims shall be subject to the Asbestos Permanent Channeling Injunction.*

(c)     Voting:  Class 6 is impaired by the Plan.  Each holder of a Class 6 Claim is entitled to vote to accept or reject the Plan.

3.12     Class 7 – Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims

(a)     Classification:  Class 7 consists of all Asbestos Property Damage Claims and Asbestos Property Damage Contribution Claims.

(b)     Treatment:  On the later of (i) the Effective Date and (ii) the date on which an (A) Asbestos Property Damage Claim becomes an Allowed Asbestos Property Damage Claim or (B) Asbestos Property Damage Contribution Claim becomes an Allowed Asbestos Property Damage Contribution Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Asbestos Property Damage Claim or Allowed Asbestos Property Damage Contribution Claim shall receive Cash in an amount equal to 8.6 % of such Allowed Claim; *provided, however,* that (i) all Allowed Asbestos Property Damage Claims or Allowed Asbestos Property Damage Contribution Claims shall be paid solely from the PD Existing Insurance and shall receive no Cash distribution from G-I, and (ii) such

28

~~Allowed Property Damage Claims and Allowed Property Damage Contribution Claims~~
~~shall be subject to the terms and provisions of Section 6.5 of the Plan.~~ **.**

(c)    <u>Voting</u>:  Class 7 is impaired by the Plan.  Each holder of an Allowed Class 7
Claim is entitled to vote to accept or reject the Plan.

3.13    <u>Class 8 – CCR Claim</u>

(a)    <u>Classification</u>:  Class 8 consists of the CCR Claim.

(b)    <u>Treatment</u>:

**(i)**    If, by the Effective Date, the CCR Claim has been Allowed pursuant
to a CCR Settlement Agreement approved by the Bankruptcy Court and executed and
delivered by the parties thereto, then on the Effective Date or as soon thereafter as is
reasonably practicable, and in accordance with such CCR Settlement Agreement, the
Reorganized Debtors shall pay to CCR the CCR Payment Amount as specified in
clause (a) of the definition thereof.  If no such CCR Settlement Agreement is
approved, executed and delivered, then the Allowed amount, if any, of the CCR
Claim shall be determined in a CCR Allowance Proceeding.  If, before the Effective
Date, the CCR Claim is Allowed pursuant to a Final Order in a CCR Allowance
Proceeding, the Reorganized Debtors shall pay to CCR, on the Effective Date or as
soon thereafter as is reasonably practicable, the CCR Payment Amount as specified in
clause (b) of the definition thereof.  The Plan may be consummated notwithstanding
the pendency of a CCR Allowance Proceeding if, but only if, the Asbestos Claimants
Committee and the Legal Representative, in their sole discretion, have provided the
written consents described in Section 12.2(e~~b~~) of the Plan.   Upon the delivery of
such written consents, the Reorganized Debtors shall create the CCR Escrow on the
Effective Date as provided in Section 4.4(c)(i)(C) of the Plan, in the amount required
by that Section, and thereafter, upon the entry of a Final Order in such CCR
Proceeding, shall cause a sum equal to the CCR Payment Amount to be disbursed to
CCR from the CCR Escrow.  Once the CCR Escrow is created, the Debtors and
Reorganized Debtors shall have no liability in respect of the CCR Claim beyond
having the escrow agent turn over the appropriate amount from the CCR Escrow.

**(ii)    Debtors believe the Former CCR Member Claims are derivative**
**of the CCR Claim, and holders of Former CCR Member Claims have no**
**individual right to assert such Claims against G-I; thus Debtors believe the CCR**
**has compromised and settled these derivative Claims pursuant to the CCR**
**Settlement Agreement; _provided, however_, to the extent the Former CCR**
**Members Claims become Allowed Former CCR Member Claims, such Claims**
**shall be entitled to the treatment provided for Allowed Claims in Class 3A.**

(c)    <u>Voting</u>:  If the CCR Settlement Agreement has been executed and delivered
by each of the parties thereto and approved by the Bankruptcy Court prior to the

29

Confirmation Hearing, the Class 8 Claim is unimpaired by the Plan and the holder of the Class 8 Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan. If no CCR Settlement Agreement has been approved by the Bankruptcy Court prior to the Confirmation Hearing, then Class 8 Claim is impaired by the Plan, and the holder of an Allowed Class 8 Claim is entitled to vote to accept or reject the Plan.

3.14    Class 9 – Bonded Claims

(a)    Classification: Class 9 consists of all Bonded Claims.

(b)    Treatment: On the later of (i) the Effective Date and (ii) the date on which a Bonded Claim becomes an Allowed Bonded Claim, or as soon thereafter as is reasonably practicable, each holder of an Allowed Bonded Claim shall receive Cash in an amount equal to such Allowed Bonded Claim; *provided, however*, that (i) in no event shall such Cash distribution exceed the amount of the bond securing such Allowed Bonded Claim and (ii) each such holder of an Allowed Bonded Claim shall look solely to the bond securing its Claim for such Cash distribution, and shall receive no Cash distribution from G-I. If the holder of the Bonded Claim and G-I do not agree on the Allowed amount of the Bonded Claim, the Bankruptcy Court shall determine the amount of such holder's Allowed Bonded Claim, which amount shall then be paid to such holder from the bond securing such holder's Allowed Bonded Claim.

(c)    Voting: Class 9 is unimpaired by the Plan. Each holder of a Class 9 Claim is conclusively presumed to have accepted the Plan, and is thus not entitled to vote to accept or reject the Plan.

3.15    Class 10A – G-I Affiliate Claims

(a)    Classification: Class 10A consists of all G-I Affiliate Claims.

(b)    Treatment: On the Effective Date, each holder of a G-I Affiliate Claim shall receive no distribution of Cash or property in respect of such Claim.

(c)    Voting: Class 10A is impaired by the Plan. Each holder of a G-I Affiliate Claim is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

3.16    Class 10B – ACI Affiliate Claims

(a)    Classification: Class 10B consists of all ACI Affiliate Claims.

(b)    Treatment: The legal, equitable, and contractual rights of the holders of Allowed ACI Affiliate Claims are unaltered by the Plan, or such Allowed ACI Affiliate Claims shall otherwise be rendered unimpaired pursuant to section 1124 of the Bankruptcy Code.

      (c)    <u>Voting</u>:  Class 10B is unimpaired by the Plan.  Each holder of an ACI Affiliate Claim is conclusively presumed to have accepted the Plan and is thus not entitled to vote to accept or reject the Plan.

31

3.17    Class 11 – G-I Equity Interest Redemption Claims

(a)    <u>Classification</u>:  Class 11 consists of all G-I Equity Interest Redemption Claims.

(b)    <u>Treatment</u>:  On the Effective Date, each holder of a G-I Equity Interest Redemption Claim shall receive no distribution of Cash or property in respect of such Claim.

(c)    <u>Voting</u>:  Class 11 is impaired by the Plan.  Each holder of a G-I Equity Interest Redemption Claim is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

3.18    <u>Class 12A – G-I Equity Interests</u>

(a)    <u>Classification</u>:  Class 12A consists of all G-I Equity Interests.

(b)    <u>Treatment</u>:  On the Effective Date, all instruments evidencing a G-I Equity Interest (but not the G-I Class B Shares) shall be canceled without further action under any applicable agreement, law, regulation, or rule. The G-I Equity Interests shall be extinguished and holders of G-I Equity Interests shall not receive nor retain any property under the Plan.

(c)    <u>Voting</u>:  Class 12A is impaired by the Plan.  Each holder of a G-I Equity Interest is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

32

3.19    Class 12B – ACI Equity Interests

(a)    Classification:  Class 12B consists of all ACI Equity Interests.

(b)    Treatment:  On the Effective Date, all instruments evidencing an ACI Equity Interest (but not the ACI Class B Shares) shall be canceled without further action under any applicable agreement, law, regulation, or rule. The ACI Equity Interests shall be extinguished and holders of ACI Equity Interests shall not receive nor retain any property under the Plan.

(c)    Voting:  Class 12B is impaired by the Plan.  Each holder of an ACI Equity Interest is conclusively deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

## ARTICLE IV

## IMPLEMENTATION OF PLAN

4.1    Compromise and Settlement.  The Asbestos Claimants Committee and the Legal Representative have alleged that the liability of G-I for Asbestos Claims and Demands exceeds the value of G-I's estate by several billion dollars.  In addition, the Asbestos Claimants Committee and the Legal Representative have pursued a number of causes of action against G-I and certain of its present and former Affiliates in the Bankruptcy Court, District Court and the United States District Court for the Southern District of New York.  G-I disputes the aggregate liability for Asbestos Claims and Demands alleged by the Asbestos Claimants Committee and the Legal Representative, and G-I or its Affiliates have contended that the above-mentioned causes of action are without merit. The Plan incorporates a global settlement and compromise of all of the disputes in these Chapter 11 Cases among G-I and its Affiliates, the Asbestos Claimants Committee, the Legal Representative, and all other parties to the causes of action referred to above, including the causes of action that were or could have been asserted by the Asbestos Claimants Committee and/or Legal Representative in the Covered Matters.

4.2    Creation of Asbestos Trust.  Effective as of the Effective Date, the Asbestos Trust shall be created.  The Asbestos Trust shall be a "qualified settlement fund" within the meaning of section 468B of the Tax Code.  The purpose of the Asbestos Trust is, among other things, (a) to direct the processing, resolution, liquidation, and payment of all Asbestos Claims in accordance with section 524(g) of the Bankruptcy Code, the Plan, the Asbestos Trust Agreement, the Asbestos Trust Distribution Procedures, and the Confirmation Order, and (b) to preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Asbestos Claims.

4.3    Appointment of Asbestos Trustees.  On the Confirmation Date, the Bankruptcy Court shall appoint the individuals selected jointly by the Asbestos Claimants Committee and the Legal Representative to serve as the Asbestos Trustees for the Asbestos Trust pursuant to the terms of the Asbestos Trust Agreement.  Such appointment shall be effective as of the Effective Date.  The individuals so appointed shall be identified in Exhibit 4.3 of the Plan.

33

4.4     <u>Transfer of Certain Property to the Asbestos Trust</u>.

        (a)     <u>Transfer of Asbestos Claims Books and Records</u>.  On the Effective Date or as soon thereafter as is reasonably practicable, the books and records of the Debtors that pertain directly to Asbestos Claims shall be transferred, assigned, or otherwise disposed of pursuant to the terms and provisions of a certain Cooperation Agreement to be entered into by and between the Reorganized Debtors and the Asbestos Trust on the Effective Date, a copy of which will be set forth in the Plan Supplement as Schedule  4.4(a) thereto.

        (b)     <u>Transfer of CCR Claims Books and Records.</u>  On the date on which (i) the CCR Payment Amount is paid to CCR, consistent with the terms of the CCR Settlement Agreement, or (ii) the Final Order is entered in the CCR Allowance Proceeding, as applicable, or as soon thereafter as is practicable, CCR shall assign to the Asbestos Trust all data and documentation concerning the underlying Asbestos Personal Injury Claims and any rights and claims against G-I that CCR received by agreement or operation of law in settling such Claims.

34

(c)  Effective Date Transfers of Plan Consideration.

(i)  Cash Payment.

(A)  On the Effective Date, if the CCR Claim has been Allowed and the CCR Payment Amount is $10.0 million or less, the Reorganized Debtors' First Payment To Asbestos Trust shall be Cash in the aggregate amount of $215,000,000 less half of the CCR Payment Amount.

(B)  On the Effective Date, if the CCR Claim has been Allowed and the CCR Payment Amount is greater than $10.0 million, the Reorganized Debtors' First Payment To Asbestos Trust shall be Cash in an aggregate amount calculated by subtracting the CCR Payment Amount from $220,000,000.

(C)  If a CCR Allowance Proceeding remains pending after confirmation of the Plan but the Asbestos Claimants Committee and the Legal Representative have provided the written consents described in Section 12.2(e**b**) of the Plan, then the Reorganized Debtors shall create the CCR Escrow on the Effective Date.  The Reorganized Debtors shall deposit the CCR Escrow Amount into the CCR Escrow, for eventual disbursement to CCR if, when, and to the extent the CCR Claim is Allowed pursuant to a Final Order in the CCR Allowance Proceeding.   If the CCR Escrow becomes applicable, the Reorganized Debtors' First Payment To Asbestos Trust shall be computed as $220,000,000 *minus* the CCR Escrow Amount, and CCR's sole recourse for payment of the CCR Claim shall be against the CCR Escrow.  Any balance remaining in the CCR Escrow after the CCR Claim is paid or disallowed shall be distributed as follows: (i) If the CCR Claim is disallowed by Final Order, Reorganized G-I shall receive $5 million *plus* an allocable *pro rata* share of any CCR Escrow Earnings, and the Asbestos Trust shall receive all remaining proceeds of the CCR Escrow, including all remaining CCR Escrow Earnings;  (ii) if the CCR Claim is Allowed by Final Order and the resulting CCR Payment Amount is $10 million or less, Reorganized G-I shall receive the difference between $5 million and 50% of the CCR Payment Amount, *plus* a *pro rata* share of any CCR Escrow Earnings, and the Asbestos Trust shall receive the entire remaining balance of the CCR Escrow *plus* all remaining CCR Escrow Earnings; and  (iii)  if the CCR Claim is allowed by Final Order and the resulting CCR Payment Amount is

35

more than $10 million, the Asbestos Trust shall receive the entire remaining balance of the CCR Escrow *plus* all CCR Escrow Earnings.

(ii)    <u>Other Consideration</u>.  On the Effective Date, ~~(A)~~ Reorganized G-I shall execute and deliver to the Asbestos Trust the Trust Note, ~~which shall be secured by the Capital Stock Lien,~~ as well as any and all documents and instruments related thereto~~; and (B) immediately after such delivery of the Trust Note, the Letter of Credit shall be delivered to the LC Agent.  Upon such delivery of the Letter of Credit,~~**.  Also on the Effective Date, subject to Section 4.4(c)(iii) of the Plan, the respective parties to the following agreements and instruments shall execute and deliver the same to the Collateral Agent: the Holdings Pledge Agreement and the Letter of Credit.**

**(iii)    Release of Holdings Pledge Agreement Upon Delivery of Letter of Credit.  On the Effective Date, Reorganized G-I or the Plan Sponsor shall provide and deliver to the Collateral Agent, or may cause other persons to provide and deliver to the Collateral Agent, a Letter of Credit in the Maximum Amount.  Upon delivery of such Letter of Credit to the Collateral Agent, the Holdings Pledge Agreement shall be automatically terminated, and** the Capital Stock Lien shall be immediately extinguished~~;~~**;** *provided, however,* **that the extinguishment of the Capital Stock Lien shall not in any way discharge, release or extinguish the Plan Sponsor's obligations under the other Plan Documents.**

(d)    <u>Post-Effective Date Transfers of Plan Consideration</u>.  After the Effective Date, and in addition to the ~~applicable Cash payment required by Section 4.4(c) of the Plan, the~~**First Payment to Asbestos Trust,** Reorganized ~~Debtors~~**G-I** shall make the payments ~~and repayments~~ set forth in the Trust Note~~; *provided, however,* that the Plan Sponsor may voluntarily make any or all Cash payments or repayments set forth in the Trust Note, in place of the Reorganized Debtors, *provided, further* that, as further set forth in the Subordination Agreement, included as Schedule 4.4(d) of the Plan Supplement, any claims or rights that might thereby arise in favor of the Plan Sponsor against G-I with respect to the Trust Note, the Letter of Credit, or any related collateral security therefor, including (by way of illustration and not of limitation) claims for subrogation, reimbursement, contribution, indemnity, or interest, shall be fully subordinated to the rights of the Trust and the Holder of the Trust Note and shall not be paid or become payable until all principal and interest payable under the Trust Note shall have been indefeasibly paid in full.~~ **as and when due.**

(e)    <u>Cash Resources for Plan Implementation</u>.    To carry out the Plan, the Reorganized Debtors, in their sole discretion, ~~will use cash flow from BMCA, funds borrowed by Reorganized G-I and/or BMCA, and/or sales of stock or assets directly or indirectly by Reorganized G-I or BMCA~~ **may fund any payment obligations under the Plan using (A) cash flow from BMCA, (B) dividends from any direct or indirect**

36

**subsidiary of the Reorganized Debtors, (C) contributions to capital of the Reorganized Debtors from Plan Sponsor, (D) sales of Equity Interests in, or assets of, the Reorganized Debtors or any of their direct or indirect subsidiaries or (E) borrowings by Reorganized Debtors; provided however, that the Cash necessary to pay holders of Allowed G-I Non-Priority Tax Penalty Claims shall be provided by ISP**.

(f)     Assumption of Certain Liabilities by the Asbestos Trust.  ~~In~~**On the Effective Date, subject to the terms of the Plan Documents and in** accordance with sections 524(g) and 1141 of the Bankruptcy Code ~~and in furtherance of the purposes of~~**,** the Asbestos Trust ~~and the Plan, on the Effective Date~~**shall assume and succeed to** all liability and responsibility for all Asbestos Claims ~~shall be assumed and succeeded to by the Asbestos Trust, and~~**;** the Reorganized Debtors shall be completely discharged of such Claims and **shall** have no further financial or other responsibility or liability ~~therefor~~**for pending or future Asbestos Claims or Demands; and all Protected Parties shall receive the protections of the Asbestos Permanent Channeling Injunction**.

(g)     Assignment and Enforcement of Trust Causes of Action.  On the Effective Date, by virtue of the confirmation of this Plan, without further notice, action, or deed, the Trust Causes of Action shall be automatically assigned to, and indefeasibly vested in, the Asbestos Trust, and the Asbestos Trust shall thereby become the estate representative pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, with the exclusive right to enforce any and all of the Trust Causes of Action against any Entity, and the proceeds of the recoveries of any such Trust Causes of Action shall be deposited in the Asbestos Trust; *provided, however,* that nothing herein shall alter, amend or modify the Asbestos Permanent Channeling Injunction, releases, discharges, or Supersedeas Bond Action provisions contained elsewhere in this Plan.

4.5     Institution and Maintenance of Legal and Other Proceedings.  As of the date subsequent to the Effective Date on which the Asbestos Trustees confirm in writing to the Reorganized Debtors that the Asbestos Trust is in a position to assume the responsibility, the Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Trust, including Trust Causes of Action.  The Asbestos Trust shall be empowered to initiate, prosecute, defend, and resolve all such actions in the name of G-I, ACI, or any of the Reorganized Debtors if deemed necessary or appropriate by the Asbestos Trust.  The Asbestos Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred subsequent to the Effective Date arising from or associated with any legal action or other proceeding that is the subject of this subsection.

37

4.6     Supersedeas Bonds and Payment Assurances.

(a)     Preserved Actions.  All Supersedeas Bond Actions and the rights and Claims asserted or to be asserted therein shall be preserved and shall be prosecuted or defended, as the case may be, by the Reorganized Debtors on and after the Effective Date.

(b)     Assumption by the Asbestos Trust.  As of the Effective Date, the Asbestos Trust shall assume, and shall have exclusive liability for, any deficiency portion of a Bonded Asbestos Personal Injury Claim remaining after crediting proceeds of any supersedeas bond or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties to be entitled.  To the extent the Reorganized Debtors successfully prosecute or defend against a Supersedeas Bond Action resulting in the discharge or release of the relevant supersedeas bond or other payment assurance provided in connection therewith, any such recoveries shall inure to the benefit of the Reorganized Debtors.

(c)     Reservation of Rights of Issuers and Insurers of Payment Assurances.  Notwithstanding anything to the contrary contained herein, nothing in the Plan shall be deemed to impair, prejudice, compromise, or otherwise affect any defense or counterclaim asserted by any issuer or insurer of payment assurances issued on behalf of the Debtors, or any other defendant in the Supersedeas Bond Actions, to any claim of the Debtors, including, without limitation, any defense based on an asserted right of setoff or recoupment, or other defense under applicable non-bankruptcy law.  Any right of setoff or recoupment shall be satisfied out of the assets in the possession of the sureties or insurers relating to such payment assurances and any claims or liabilities including, without limitation, claims for premiums for bonds provided by any such issuers or insurers.

(d)     Compromise and Settlement.  The Reorganized Debtors shall be entitled to compromise or settle any of the Supersedeas Bond Actions; *provided, however*, that any such compromise or settlement shall require the consent of the Asbestos Trust (which consent shall not be unreasonably withheld or delayed) to the extent the compromise or settlement results in there being any deficiency portion of a Bonded Asbestos Personal Injury Claim after applying the proceeds of any supersedeas bond or equivalent form of payment assurance.

4.7     Equity Ownership of G-I.  Prior to the Effective Date, for good and valuable consideration as part of the global settlement referred to in Section 4.1 hereof, G-I ~~will~~**shall** authorize and issue to Holdings the G-I Class B Shares.  On the Effective Date, as a result of all Equity Interests in G-I (but not the G-I Class B Shares) being cancelled, one hundred percent (100%) of the equity interest in G-I shall be represented by the G-I Class B Shares held by Holdings.  As of the Effective Date, the G-I Class B Shares shall be subject to the Capital Stock Lien **until delivery of the Letter of Credit, pursuant to Section 4.4(c)(iii) of the Plan**.

4.8     Equity Ownership of ACI.   Prior to the Effective Date, for good and valuable consideration as part of the global settlement referred to in Section 4.1 hereof, ACI will authorize and issue to G-I the ACI Class B Shares.  On the Effective Date, as a result of all Equity Interests in ACI

38

(but not the ACI Class B Shares) being cancelled, one hundred percent (100%) of the equity interest in ACI shall be represented by the ACI Class B Shares held by G-I.

4.9    New ACI.  Due to the failure of ACI to deliver its annual registration under Georgia corporate law, together with required fees, ACI's corporate existence is no longer recognized by the Secretary of State of the State of Georgia.  Accordingly, after the Confirmation Date, but prior to the Effective Date, G-I will form a new ACI (with the corporate name, "New ACI Inc.").  G-I will contribute all of its right, title and interest in its shares of old ACI to New ACI.  Immediately thereafter, old ACI will be liquidated into New ACI. These transactions are being effectuated solely for purposes of ensuring ACI's recognition under Georgia corporate law.  Notwithstanding anything herein to the contrary, from and after such liquidation, any references in this Plan to ACI shall be deemed to be references to New ACI.

4.10    Equity Infusion to Fund Liabilities Under Plan.  G-I's liabilities under the Plan will be funded in part by an equity infusion into G-I of up to $220 million from the Plan Sponsor.

4.11    Letter of Credit.  Payment of interest and principal under the Trust Note shall be ~~guaranteed~~**secured by the Capital Stock Lien, subject to Section 4.4(c)(iii) of the Plan, and** by the Letter of Credit **issued on the Effective Date**.

4.12    Authority of the Debtors.  Effective on the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement effectively their respective obligations under the Plan and the Plan Documents.

# ARTICLE V

## VOTING AND DISTRIBUTIONS UNDER THE PLAN

5.1    Impaired Classes to Vote.  Each holder of a Claim in an impaired Class as of the Record Date shall be entitled to vote to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

5.2    Acceptance by Class of Creditors.  An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan; *provided, however,* that pursuant to section 524(g) of the Bankruptcy Code, Class 6 Asbestos Claims shall have accepted the Plan if the Plan is accepted by at least seventy-five percent (75%) of those voting in Class 6 to accept or reject the Plan.  In the event there are no Claims in a Class because (i) no Claim in such Class is known by the Debtors, (ii) no proof of claim asserting a Claim in such Class has been filed, (iii) any proof of claim asserting a Claim in such Class has been disallowed in its entirety by an order of the Bankruptcy Court or such other court of competent jurisdiction, (iv) any proof of claim asserting a Claim in such Class has been re-classified as a Claim

39

in another Class or against another Debtor, or (v) any proof of claim asserting a Claim in such Class has been withdrawn by the party asserting such Claim or otherwise removed by agreement of such party and the applicable Debtor or by Final Order of the Court, such Class shall be eliminated from the Plan as if it never existed.

      5.3     <u>Nonconsensual Confirmation</u>. If any impaired Class of Claims, other than Class 6, shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code and/or amend the Plan.

      5.4     <u>Distributions Under the Plan</u>. Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due. The Distributions shall be made to the holders of Allowed Claims as of the Record Date and the Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of a Claim occurring after the Record Date.

      (a)     <u>Distribution Deadlines</u>. Any Distribution to be made by the Disbursing Agent pursuant to the Plan shall be deemed to have been timely made if made within twenty (20) days after the time therefor specified in the Plan or such other agreements. No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date.

      (b)     <u>Distributions with Respect to Allowed Claims</u>. Subject to Bankruptcy Rule 9010, all Distributions under the Plan to holders of Allowed Claims in Classes 3A, 3B, 5, and 7 shall be made by the Disbursing Agent to the holder of each Allowed Claim in such Classes at the address of such holder as listed on the Schedules as of the Record Date, unless the Debtors or, on and after the Effective Date, the Reorganized Debtors have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules. If any Distribution to any such holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; *provided*, *however*, that, at the expiration of one (1) year from the Effective Date such undeliverable Distributions shall be deemed unclaimed property and shall be treated in accordance with Section 5.7 of the Plan.

      (c)     <u>Responsibility for Transfers and Distributions</u>. The Plan Sponsor and Reorganized Debtors (as applicable) and only the Plan Sponsor and Reorganized Debtors shall be responsible for Distributions required by the Plan. The Asbestos Trust and only the Asbestos Trust shall be responsible for resolving and paying Class 6 Claims and Demands in accordance with the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.

40

5.5     Disbursing Agent.  All Distributions under the Plan shall be made by the Disbursing Agent.

5.6     Manner of Payment Under the Plan.  Unless the Entity receiving a payment agrees otherwise, any payment in Cash to be made by the Disbursing Agent shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank; *provided, however,* that no Cash payment of less than one hundred dollars ($100) shall be made to a holder of an Allowed Claim unless a request therefor is made in writing to the Reorganized Debtors.

5.7     Unclaimed Property.

(a)     Plan Distributions.  All Distributions under the Plan that are unclaimed for a period of one (1) year after distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors, and any entitlement of any holder of any Claim to such Distributions shall be extinguished and forever barred.

(b)     1989 LBO Transaction.  Any unclaimed, un-cashed, or undeliverable Cash or check previously earmarked or tendered for the redemption of certain Equity Interests relating to the 1989 LBO Transaction, which Cash or checks G-I currently holds or has remitted to an appropriate state agency, and as to which such Equity Interests remain ~~un-tendered~~**untendered** by their holders, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors, and any entitlement of any holder of any Claim to such Cash or checks shall be extinguished and forever barred.

5.8     Time Bar to Cash Payments.  Checks issued by the Disbursing Agent for Distributions on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof.  Requests for re-issuance of any check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim with respect to which such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of (a) the first (1st) anniversary of the Effective Date, or (b) ninety (90) days after the date of issuance of such check, if such check represents a final Distribution hereunder on account of such Claim.  After such date, all Claims in respect of voided checks shall be discharged and forever barred and the Reorganized Debtors shall retain all monies related thereto.

5.9     Distributions After Effective Date.  Distributions made after the Effective Date to holders of Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made in accordance with the terms and provisions of the Plan.

5.10    Setoffs.  The Reorganized Debtors may, but shall not be required to, pursuant to applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights, and causes of action of any nature that the Debtors' estates or the Reorganized

41

Debtors hold against the holder of such Allowed Claim (other than an Asbestos Claim); *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, Debtors-in-Possession or the Reorganized Debtors of any such claims, rights and causes of action that the Debtors, Debtors-in-Possession or the Reorganized Debtors may possess against such holder.

     5.11   <u>Cancellation of Existing Securities and Agreements</u>.  On the Effective Date, any document, agreement, or instrument evidencing any Claim or Equity Interest, other than an Asbestos Claim or any Claim that is unimpaired by the Plan, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under such documents, agreements, or instruments evidencing such Claims and Equity Interests, as the case may be, shall be discharged; *provided, however,* that each Asbestos Claim (other than any Demand) shall be discharged as to the Reorganized Debtors, and all Asbestos Claims (including all Demands) shall be subject to the Asbestos Permanent Channeling Injunction.

     5.12   <u>Payment of Interest on Allowed Claims</u>.  Interest shall be paid on Allowed Claims only to the extent the payment of interest is provided for by a contractual agreement between the Debtors and the holder of any such Allowed Claim.

     5.13   <u>Allocation of Plan Distributions Between Principal and Interest</u>.  To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

# ARTICLE VI

## TREATMENT OF DISPUTED CLAIMS UNDER THE PLAN

     6.1   <u>Objections to Claims; Prosecution of Disputed Claims</u>.

     (a)   The Reorganized Debtors shall object to the allowance of Claims filed with the Bankruptcy Court (other than Asbestos Claims) with respect to which the Reorganized Debtors dispute liability in whole or in part.  All objections filed and prosecuted by the Reorganized Debtors as provided herein shall be litigated to Final Order by the Reorganized Debtors; *provided, however*, that the Debtors or Reorganized Debtors, as the case may be, may compromise and settle, withdraw, or resolve by any other method, without requirement of Bankruptcy Court approval, any objections to Claims; *provided, further, however*, that in the case of a CCR Allowance Proceeding (i) such CCR Allowance Proceeding shall be prosecuted by the Reorganized Debtors, the Asbestos Claimants Committee, and the Legal Representative, and (ii) such CCR Allowance Proceeding may only be compromised, settled, withdrawn, or otherwise resolved with the consent of each of the Reorganized Debtors, the Asbestos Claimants Committee, and the Legal Representative.  Subject to the treatment described in Section 3.11 with respect to the CCR Claim, each of G-I, ACI, the Asbestos

42

Claimants Committee, and the Legal Representative shall oppose the allowance of any Claim by or on behalf of any Entity that is or was a member of CCR, arising from facts or legal relationships that existed during the period when G-I and the Entity asserting the Claim (or on whose behalf it is asserted) were both members of CCR, or arising from or relating to any agreement made by CCR during such period for the settlement of any asbestos-related personal injury or wrongful death claim.

(b)    Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtors to Claims shall be served and filed on or before the later of (i) one hundred eighty (180) days after the Effective Date, and (ii) such date as may be fixed by the Bankruptcy Court, after notice and hearing, whether fixed before or after the date specified in clause (i) above.

6.2    Estimation of Claims.  Unless otherwise limited by an order of the Bankruptcy Court, the Reorganized Debtors may at any time request that the Bankruptcy Court estimate for final Distribution purposes any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or other applicable law regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on such objection, and the Bankruptcy Court will retain jurisdiction to consider any request to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  Unless otherwise provided in an order of the Bankruptcy Court, in the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court; *provided, however*, that, if the estimate constitutes the maximum limitation on such Claim, the Debtors or the Reorganized Debtors, as the case may be, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim; and, *provided, further*, that the foregoing is not intended to limit the rights granted by section 502(j) of the Bankruptcy Code.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

6.3    No Distributions Pending Allowance.  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no Distribution provided for hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.  No interest shall be paid on account of Disputed Claims that later become Allowed except to the extent that payment of interest is required under section 506(b) of the Bankruptcy Code.

6.4    Distributions After Allowance.  To the extent a Disputed Claim ultimately becomes an Allowed Claim, a Distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court or other applicable court of competent jurisdiction (including any appeal therefrom) allowing any Disputed Claim becomes a Final Order, the Reorganized Debtors shall provide to the holder of such Claim the Distribution to which such holder is entitled hereunder on account of or in exchange for such Allowed Claim.

43

6.5     <u>Insurance</u>.  Nothing contained herein shall constitute or be deemed a waiver of any Claim, defense, right or cause of action that the Debtors, the Reorganized Debtors, the Asbestos Trust, or any Entity may hold under any policies of insurance against any other Entity, including, without limitation, insurers, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers, and the rights of all such parties are expressly preserved.  This Section 6.5 shall not limit the liability or obligations of any of the Debtors under this Plan with respect to the uninsured portion of any Claim.

6.6     <u>Management of Existing Tax Claim Litigation</u>.  Under the Confirmation Order, the District Court shall retain sole jurisdiction over the litigation in the action styled *United States v. G-I Holdings Inc*., Case No. 02-03082 (D.N.J.) (pending resolution or dismissal without prejudice of that action) and, as a consequence, the Reorganized Debtors shall not file any petition in the United States Tax Court with respect to the Claims subject to that litigation pending resolution or dismissal without prejudice of that action.

NYA 584340.14584340.26

# ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.    Any executory contract or unexpired lease not set forth on Schedule 7.1 of the Plan Supplement that has not expired by its own terms on or prior to the Confirmation Date, which has not been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which is not the subject of a motion to assume and assign or reject as of the Confirmation Date, shall be deemed rejected by the Debtors-in-Possession on the Confirmation Date and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any executory contracts or unexpired leases of the Debtors that are set forth on Schedule 7.1 of the Plan Supplement shall be deemed to have been assumed by the Debtors and the Plan shall constitute a motion to assume such executory contracts and unexpired leases.  **<u>Any executory contracts or unexpired leases of the Debtors that are set forth on schedule 7.1 of the Plan Supplement that have been designated as being assumed and assigned to one of the Debtors' Affiliates shall be deemed to have been assumed and assigned by a Debtor to that Affiliate and the Plan shall constitute a motion to assume and assign such executory contracts and unexpired leases.</u>**  Each executory contract or unexpired lease assumed**<u>, or assumed and assigned,</u>** hereunder shall include any modifications, amendments, supplements or restatements to such contract or lease.  Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code**<u>, and approval of such assumptions and assignments pursuant to section 365(f) of the Bankruptcy Code,</u>** and a finding by the Bankruptcy Court that each such assumed**<u>, or assumed and assigned,</u>** executory contract or unexpired lease is in the best interest of the Debtors, their bankruptcy estates, and all parties in interest in the Chapter 11 Cases.  The Debtors reserve the right, at any time prior to the Effective Date, to amend Schedule 7.1 to (a) delete any executory contract or unexpired lease listed therein, thus providing for its rejection hereunder; or (b) add any executory contract or unexpired lease to Schedule 7.1, thus providing for its assumption**<u>, or assumption and assignment</u>** hereunder.  The Debtors shall provide notice of any amendments to Schedule 7.1 to the parties to the executory contracts and unexpired leases affected thereby.   Nothing herein shall constitute an admission by a Debtor or Reorganized Debtor that any contract or lease is an executory contract or unexpired lease or that a Debtor or Reorganized Debtor has any liability thereunder.

7.2    <u>Assumption of Insurance Policies</u>.  Notwithstanding anything contained in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed pursuant to the Plan, effective as of the Effective Date.  Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that assumption of the insurance policies is in the best interest of the Debtors, their bankruptcy estates, and all parties in interest in the Chapter 11 Cases.  Nothing contained in this Section 7.2 shall constitute or be deemed a waiver of any cause

45

of action that the Debtors may hold against any Entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

7.3     Cure of Defaults and Survival of Contingent Claims under Assumed Executory Contracts and Unexpired Leases.  Except as may otherwise be agreed to by the parties, on or before the thirtieth (30th) day after the Effective Date, provided the non-debtor party to any such assumed executory contract or unexpired lease has timely filed a proof of claim with respect to such cure amount, the Reorganized Debtors shall cure any and all undisputed defaults under each executory contract and unexpired lease assumed by the Debtors pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code.  All disputed defaults required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. Unless a proof of claim was timely filed with respect thereto, all cure amounts and all contingent reimbursement or indemnity claims for prepetition amounts expended by the non-debtor parties to assumed executory contracts and unexpired leases shall be discharged upon entry of the Confirmation Order by the Clerk of the Bankruptcy Court.

7.4     Deadline for Filing Rejection Damage Claims.  If the rejection of an executory contract or unexpired lease by the Debtors-in-Possession pursuant to Section 7.1 of the Plan results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties, agents, successors, or assigns, unless a proof of claim is filed with the Debtors' court-appointed claims agent or with the Bankruptcy Court and served upon the Debtors or Reorganized Debtors on or before thirty (30) days after the latest to occur of (a) the Confirmation Date, and (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of such executory contract or unexpired lease.

7.5     Indemnification and Reimbursement Obligations.  For purposes of the Plan, the obligations of the Debtors to indemnify and reimburse persons who are or were directors, officers, or employees of any of the Debtors on the Commencement Date or at any time thereafter against and for any obligations (including, without limitation, fees and expenses incurred by the board of directors of any of the Debtors, or the members thereof, in connection with the Chapter 11 Cases) pursuant to articles of incorporation, codes of regulations, bylaws, applicable state law, or specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected hereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Commencement Date.  In furtherance of the foregoing, the Reorganized Debtors shall maintain insurance for the benefit of such directors, officers, or employees at levels no less favorable than those existing as of the date of entry of the Confirmation Order for a period of no less than four years following the Effective Date.

7.6     Compensation and Benefit Programs.  Except as provided in Section 7.1 of the Plan, the Debtors' existing pension plans and all savings plans, retirement plans, health care plans, performance-based incentive plans, retention plans, workers' compensation programs and life, disability, directors and officers liability, and other insurance plans are treated as executory contracts

46

under the Plan and shall, on the Effective Date, be deemed assumed by the Debtors in accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code. On and after the Effective Date, all Claims submitted for payment in accordance with the foregoing benefit programs, whether submitted prepetition or postpetition, shall be processed and paid in the ordinary course of business of the Reorganized Debtors, in a manner consistent with the terms and provisions of such benefit programs. Nothing in the Confirmation Order, the Plan, the Bankruptcy Code (and section 1141 thereof), or any other document filed in any of the Debtors' bankruptcy proceedings shall be construed to discharge, release or relieve the Debtors, the Reorganized Debtors, or any other party, in any capacity, from any liability or responsibility with respect to the Retirement Plan for Hourly Paid Employees of Building Materials Corporation of America ("Pension Plan") under any law, governmental policy, or regulatory provisions. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility as a result of any of the provisions of the Plan, including those providing for satisfaction, release, and discharge of claims, the Confirmation Order, the Bankruptcy Code (and section 1141 thereof), or any other document filed in any of the Debtors' bankruptcy proceedings.

7.7     Retiree Benefits.  On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtors had obligated themselves to provide such benefits.

# ARTICLE VIII

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF REORGANIZED DEBTORS

8.1     General.  On the Effective Date, the management, control, and operation of the Reorganized Debtors shall become the general responsibility of the Board of Directors of the Reorganized Debtors.

8.2     Reorganized Debtors' Directors and Officers.  The Boards of Directors of each of the Debtors immediately prior to the Effective Date shall serve as the initial Boards of Directors of the Reorganized Debtors on and after the Effective Date and, if different than the individuals identified in the Disclosure Statement, shall be identified in Schedule 8.2 of the Plan Supplement.  Each of the members of such Boards of Directors shall serve in accordance with applicable non-bankruptcy law and each Debtors' certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.  The officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date.  Such officers shall serve in accordance with applicable non-bankruptcy law and any employment agreement with the Debtors, if assumed, or with the Reorganized Debtors.

8.3    <u>Amendment of Articles of Incorporation and By-Laws</u>.  The articles of incorporation and by-laws of the Debtors shall be amended as of the Effective Date to provide substantially as set forth in the Reorganized Debtors' Certificate of Incorporation and the Reorganized Debtors' By-Laws.  The certificate or articles of incorporation and by-laws shall contain provisions (i) prohibiting the issuance of non-voting equity securities, as required by section 1123(a)(6) of the Bankruptcy Code (subject to further amendment of such certificates or articles of incorporation and by-laws as permitted by applicable law), and (ii) effectuating the provisions of the Plan, in such case without further action by the stockholders or directors of the Debtors, the Debtors-in-Possession, or the Reorganized Debtors.

8.4    <u>Corporate Action</u>.  On the Effective Date, the adoption of the Reorganized Debtors' Certificate of Incorporation and the Reorganized Debtors' By-Laws shall be authorized and approved in all respects, in each case without further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors.  All other matters provided under the Plan involving the corporate structure of the Reorganized Debtors or corporate action by the Reorganized Debtors shall be deemed to have occurred, be authorized, and shall be in effect without requiring further action under applicable law, regulation, order, or rule, including, without limitation, any action by the stockholders of the Debtors or the Reorganized Debtors.  Without limiting the foregoing, from and after the Confirmation Date, the Debtors or the Reorganized Debtors shall take any and all actions deemed appropriate to consummate the transactions contemplated herein.

# ARTICLE IX

## EFFECT OF CONFIRMATION

9.1    <u>Title to Assets</u>.  Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the estates of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests created prior to the Effective Date, except as provided in this Plan and the Plan Documents.  From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

9.2    <u>Discharge of Claims</u>.  In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as provided in the Plan, upon the Effective Date, all Claims against the Debtors shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim.  Upon the Effective Date, all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors.

48

9.3    Injunction on Claims.  In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as otherwise expressly provided in the Plan, the Confirmation Order or such other applicable order of the Bankruptcy Court, all Persons or Entities who have held, hold or may hold Claims or other debt or liability that are discharged pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability pursuant to the Plan against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors or the Reorganized Debtors, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, (c) creating, perfecting, or enforcing any encumbrance of any kind securing a discharged claim against the Debtors, the Debtors-in-Possession or the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Debtors-in-Possession or the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan.

9.4    Term of Existing Injunctions or Stays.  Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

9.5    Injunction Against Interference With Plan of Reorganization.  Pursuant to sections 1142 and 105 of the Bankruptcy Code, from and after the Effective Date, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan except for actions allowed to attain legal review.

9.6    Exculpation.  **None of the Debtors, the Reorganized Debtors, their Affiliates, any of the members of the Asbestos Claimants Committee, the Legal Representative, or any of their respective officers, directors, members, employees, advisors, attorneys, financial advisors, accountants, agents, or other professionals retained with Bankruptcy Court approval shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the Chapter 11 Cases, including, without limitation, the commencement of the Chapter 11 Cases, the negotiation of the Plan, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Plan; *provided, however*, that the foregoing exculpation shall not apply**

49

~~to L. Tersigni Consulting P.C. or Loreto T. Tersigni.~~**,  None of the foregoing parties shall be exculpated under this provision with respect to any acts occurring prior to the Commencement Date.  With respect to officers and directors of the Debtors this section shall apply only to such officers and directors who were serving in such capacity on and after the Commencement Date.**

9.7     <u>Mutual Releases</u>.

(a)     Upon the Effective Date, the Debtors, the Debtors-in-Possession, the Plan Sponsor, the Reorganized Debtors, and the respective Affiliates and subsidiaries of the foregoing Entities shall be deemed to have unconditionally waived and released the Asbestos Claimants Committee, the Legal Representative, the defendants in *G-I Holdings Inc. v. Baron & Budd, et al.*, Case No. 01-CV-0216 (RWS), the Noteholder Defendants, and each of their respective members, employees, agents, advisors, attorneys, financial advisors, accountants, and other professionals from any and all claims, obligations, suits, judgments, damages, rights, causes of action arising from or based on any Claim, Equity Interest, or litigation, including, but not limited to, the Covered Matters, and all pending litigation among the Debtors, the Debtors-in-Possession, shareholders of the Debtors, the Asbestos Claimants Committee, the Noteholder Defendants and the Legal Representative (including any of the Covered Matters) shall be dismissed with prejudice and without costs to any party; *provided, however,* ~~that the foregoing release shall not apply to L. Tersigni Consulting P.C. or Loreto T. Tersigni; and~~ *~~provided further,~~ however*, that nothing herein shall relieve the Debtors, the Reorganized Debtors, the Plan Sponsor, the Asbestos Claimants Committee, the Legal Representative, or the Asbestos Trust of their obligations under the Plan, the Plan Documents, the Confirmation Order, the documents and instruments contained in the Plan Supplement, and the Asbestos Trust Agreement.

(b)     Upon the Effective Date, the Asbestos Claimants Committee and the Legal Representative shall be deemed to have unconditionally waived and released the Debtors, the Debtors-in-Possession, the Plan Sponsor, the Reorganized Debtors, the respective Affiliates and subsidiaries of the foregoing Entities, the Noteholder Defendants, and each of the foregoing Entities' respective present and former officers, directors, employees, advisors, attorneys, financial advisors, accountants, and other professionals from any and all claims, obligations, suits, judgments, damages, rights, causes of action arising from or based on any Claim (other than an Asbestos Claim), Equity Interest, or litigation, including, but not limited to, the Covered Matters, and all pending litigation among the Debtors, the Debtors-in-Possession, shareholders of the Debtors, the Asbestos Claimants Committee, the Noteholder Defendants and the Legal Representative (including any of the Covered Matters) shall be dismissed with prejudice and without costs to any party; *provided, however,* that nothing herein shall relieve the Debtors, the Reorganized Debtors, the Plan Sponsor, the Asbestos Claimants Committee, the Legal Representative, or the Asbestos Trust of their obligations under the Plan, the Plan Documents, the Confirmation Order, the documents and instruments contained in the Plan Supplement, and the Asbestos Trust Agreement.

(c)     Consistent with the foregoing releases, the parties shall execute any and all appropriate documentation to effectuate the dismissal of all pending litigation.

50

9.8    <u>Avoidance Actions</u>.  The Reorganized Debtors shall release any avoidance, equitable subordination, piercing the corporate veil, alter ego or similar claims, rights, or causes of action that the Debtors, the Debtors-in-Possession or their Chapter 11 estates hold, arising under sections 510, 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code or non-bankruptcy law, including, but not limited to, any and all causes of action that were or could have been asserted in the Covered Matters.

9.9    <u>Reservation of Rights</u>.  Except with respect to Covered Matters or as otherwise specifically provided in the Plan, nothing herein shall constitute or be deemed a waiver of any claim, right, or cause of action that the Debtors, the Reorganized Debtors, or the Asbestos Trust may have against any Entity other than a Protected Party in connection with or arising out of an Asbestos Claim, and the Asbestos Permanent Channeling Injunction shall not apply to the assertion of any such claim, right, or cause of action by the Debtors, the Reorganized Debtors, or the Asbestos Trust.

# ARTICLE X

## CONDITIONS PRECEDENT TO EFFECTIVE DATE OF THE PLAN; IMPLEMENTATION PROVISIONS

10.1    <u>Conditions Precedent to Effective Date of the Plan</u>.  The occurrence of the Effective Date and the substantial consummation of the Plan are subject to satisfaction of the following conditions precedent:

(a)    <u>Entry of the Confirmation Order</u>.  The Bankruptcy Court and the District Court shall have entered the Confirmation Order, in form and substance reasonably satisfactory to the Debtors, the Asbestos Claimants Committee, and the Legal Representatives.  The Confirmation Order or ancillary orders shall provide the following findings and conclusions and shall approve the following relief:

(i)    The Asbestos Permanent Channeling Injunction is implemented in connection with the Plan and the Asbestos Trust;

(ii)    The Plan (including the Plan Documents) complies with section 524(g) of the Bankruptcy Code for the issuance of an irrevocable injunction against Demands subject to the exclusive subject matter jurisdiction of the District Court;

(iii)    The Reorganized Debtors, the Plan Sponsor, each Protected Party and their respective successors and assigns are permanently enjoined from requesting any tribunal to enjoin draws on the~~the~~**any** Letter of Credit **provided hereunder** for any reason, including, without limitation, if any one of them becomes a debtor under title 11 of the United States Code; *provided, however,* that this provision shall not impair any of such enjoined persons' remedies if such a draw shall have been wrongful or fraudulent.

51

(iv)    The global compromise and settlement embodied in the Plan is approved.

(v)    At the time of the order for relief with respect to G-I, G-I had been named as a defendant in personal injury, wrongful death, and property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(vi)    The Asbestos Trust, as of the Effective Date, will assume all the liabilities of the Debtors with respect to all Asbestos Claims;

(vii)    The Asbestos Trust is to be funded in whole or in part by securities of the Reorganized Debtors and by the obligation of the Reorganized Debtors to make future payments;

(viii)    The Asbestos Trust is to own, or by the exercise of rights granted under the Plan, for purposes of section 524(g) of the Bankruptcy Code, would be entitled to own, if specified contingencies occur, a majority of the voting shares of G-I;

(ix)    G-I is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Asbestos Permanent Channeling Injunction;

(x)    The actual amounts, numbers, and timing of the future Demands referenced in Section 10.1(a)(ix) of the Plan cannot be determined;

(xi)    Pursuit of the Demands referenced in Section 10.1(a)(ix) of the Plan outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands;

(xii)    The terms of the Asbestos Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan and the Disclosure Statement;

(xiii)    The Plan establishes, in Class 6 (Asbestos Claims), a separate class of the claimants whose Claims are to be addressed by the Asbestos Trust;

(xiv)    The Legal Representative was appointed as part of the proceedings leading to issuance of the Asbestos Permanent Channeling Injunction for the purpose of protecting the rights of persons that might subsequently assert unknown Asbestos Claims and Demands that are addressed in the Asbestos Permanent Channeling Injunction and transferred to the Asbestos Trust;

52

(xv)    Applying the Asbestos Permanent Channeling Injunction to each Protected Party in the Asbestos Permanent Channeling Injunction is fair and equitable with respect to persons that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Trust by or on behalf of any such Protected Party;

(xvi)   Class 6 (Asbestos Claims) has voted, by at least 75 percent (75%) of those voting, in favor of the Plan; ~~and~~

(xvii)  Pursuant to court orders or otherwise, the Asbestos Trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Trust will liquidate, and be in a financial position to pay, Asbestos Claims and Demands that involve similar Claims in substantially the same manner**;**

**(xviii)  The Trust Note, and the Collateral Agency Agreement shall each be a valid and binding obligation of each of the parties thereto, in full force and effect, and enforceable in accordance with its terms, upon execution and delivery as of the Effective Date;**

**(xix)  Subject to Section 4.4(c)(iii) of the Plan, the Holdings Pledge Agreement shall be a valid and binding obligation of each of the parties thereto, in full force and effect, and enforceable in accordance with its terms, upon execution and delivery as of the Effective Date; and**

**(xx)  Subject to Section 4.4(c)(iii) of the Plan, as of the Effective Date, the Capital Stock Lien shall attach to the G-I Class B Shares and the Collateral Agent shall thereby possess a valid and enforceable security interest in such shares, upon performance of delivery requirements specified in the Holdings Pledge Agreement with respect to such pledged collateral**.

(b)    Occurrence of the Effective Date.  The Effective Date shall not occur, and the Plan shall be of no force and effect, until satisfaction of the following conditions precedent:

(i)    The Confirmation Order shall have been entered for at least ten (10) days and then is not stayed or enjoined;

(ii)   The Bankruptcy Court and/or the District Court, as required, shall have entered or affirmed the Asbestos Permanent Channeling Injunction (which may be included in the Confirmation Order), which shall contain terms satisfactory to the Debtors, the Asbestos Claimants Committee, and the Legal Representative;

53

        (iii)    The Confirmation Order and the Asbestos Permanent Channeling Injunction shall be in full force and effect;

        (iv)    All Asbestos Trustees shall have been selected and shall have executed the Asbestos Trust Agreement;

        (v)    All agreements and instruments that are exhibits to the Plan or included in the Plan Supplement shall have been duly executed and delivered; *provided, however*, that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring;

        (vi)    Such other actions and documents as the Debtors deem necessary to implement the Plan shall have been effected or executed; *provided, however*, that the execution, delivery and approval of the CCR Settlement Agreement shall not constitute a condition to the Effective Date and the issuance of a Final Order in the CCR Allowance Proceedings shall not constitute a condition to the Effective Date; and

        (vii)    All conditions to closing set forth in the Trust Note ~~and the~~**,** Letter of Credit **and the Plan Documents** shall have been fulfilled to the reasonable satisfaction of the Asbestos Claimants Committee and the Legal Representative (such satisfaction not to be unreasonably withheld)**:**~~;~~

        **(viii)    The Debtor or Plan Sponsor shall have demonstrated to the reasonable satisfaction of the Asbestos Claimants Committee and the Legal Representative that the Letter of Credit will be issued on the Effective Date**.

        (c)    The Debtors shall have received (i) a favorable ruling from the Internal Revenue Service with respect to the qualification of the Asbestos Trust as a "qualified settlement fund," or (ii) an opinion of counsel with respect to the tax status of the Asbestos Trust as a "qualified settlement fund" reasonably satisfactory to the Debtors, the Asbestos Claimants Committee and the Legal Representative.

    10.2    <u>Waiver of Conditions Precedent</u>.  To the extent practicable and legally permissible, each of the conditions precedent in Section 10.1 hereof, may be waived, in whole or in part, by the Plan Proponents, jointly.  Any such waiver of a condition precedent may be effected at any time by filing with the Bankruptcy Court a notice thereof that is executed by the Plan Proponents, jointly.  If any Plan Proponent desires to waive a condition precedent to facilitate confirmation, the other Plan Proponents shall confer promptly with it as to whether or not the suggested waiver should be given, in recognition that time is of the essence.

54

# ARTICLE XI

# RETENTION OF JURISDICTION

11.1    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain jurisdiction and retain all exclusive jurisdiction it has over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following:

(a)    to interpret, enforce, and administer the terms of the Plan, the Plan Documents (including all annexes and exhibits thereto), and the Confirmation Order.

(b)    to resolve any matters related to the assumption, assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of the Plan, to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

(c)    to enter such orders as may be necessary or appropriate to implement or consummate the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan; *provided*, *however*, that nothing in the Plan shall detract from or contravene any jurisdictional provisions of any such written agreement or instrument, including the Trust Note, any agreement regarding a pledge or collateral to secure the Trust Note, or any escrow agreement with respect to the CCR Escrow, that permits or requires legal actions or proceedings to be brought in another court;

(d)    to determine any and all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtors or by the Asbestos Claimants Committee and the Legal Representative, after the Effective Date including, without limitation, any claims to recover assets for the benefit of the Debtors' estate, except for matters waived or released under this Plan;

(e)    to ensure that Distributions to holders of Allowed Claims (other than Asbestos Claims) are accomplished as provided herein;

(f)    to hear and determine any timely objections to Administrative Expense Claims or to proofs of Claim (other than Asbestos Claims), both before and after the Confirmation Date, including any objections to the classification of any Claim (other than Asbestos Claims), and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of or secured or unsecured status of any Claim (other than Asbestos Claims), in whole or in part;

(g)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

55

(h)      to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(i)      to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(j)      to hear and determine all applications for allowances of compensation and reimbursement of expenses of professionals under sections 330 and 331 of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan, except as otherwise provided in Section 13.8 of the Plan;

(k)      to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(l)      to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)      to recover all assets of the Debtors and property of the Debtors' estates, wherever located;

(n)      to resolve any Disputed Claims;

(o)      to determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code;

(p)      to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement, including any of the Plan Documents;

(q)      to the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim (excluding any Asbestos Claim) or cause of action by or against the Debtors' estates;

(r)      to hear and determine any other matters that may be set forth in the Plan, the Confirmation Order or the Asbestos Permanent Channeling Injunction, or that may arise in connection with the Plan, the Confirmation Order or the Asbestos Permanent Channeling Injunction;

(s)      to hear and determine any proceeding that involves the validity, application, construction, or enforceability of the Asbestos Permanent Channeling Injunction, or that may

56

arise in connection with the Plan, the Confirmation Order, or the Asbestos Permanent Channeling Injunction;

(t)     to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(u)     to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code;

(v)     to enter a final decree closing the Chapter 11 Cases; and

(w)     to hear and determine all objections to the termination of the Asbestos Trust.

11.2     <u>Non-Core Jurisdictional Matters</u>.  To the extent that the Bankruptcy Court under applicable law lacks core jurisdiction over, or is otherwise not permitted to render dispositive orders or judgments in, any of the foregoing matters, the reference to the "Bankruptcy Court" in this Article XI shall be deemed to be replaced by the "District Court."  Notwithstanding anything in this Article XI to the contrary, (i) the resolution and payment of Asbestos Claims, and the forum in which such resolution and payment will be determined, will be governed by and in accordance with the Asbestos Trust Distribution Procedures and the Asbestos Trust Agreement, and (ii) the Bankruptcy Court and the District Court shall have concurrent rather than exclusive jurisdiction with respect to (x) disputes relating to rights under insurance policies issued to the Debtors, and (y) disputes relating to the Debtors' rights to insurance with respect to Workers' Compensation Claims.

# ARTICLE XII

# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

12.1     <u>Plan Modifications</u>.  Prior to the Confirmation Date, the Plan Proponents, in their sole discretion, may jointly amend, modify or supplement the terms and provisions of the Plan, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Code may otherwise direct.  After the Confirmation Date, so long as such action does not materially adversely affect the treatment of Claims under the Plan, the Plan Proponents may jointly institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  If any Plan Proponent suggests a modification of the Plan to facilitate confirmation, the other Plan Proponents shall confer promptly with it as to whether or not to modify the Plan accordingly, in recognition that time is of the essence.

12.2     <u>Revocation, Withdrawal, or Non-Consummation</u>.

(a)     If the Effective Date does not occur by the last date permitted by the definition thereof, or if the Plan does not otherwise become effective by such date, the

Confirmation Order and this Plan shall become null and void in all respects, unless each Plan Proponent, in its sole and absolute discretion, executes and files with the Bankruptcy Court a written notice waiving the foregoing requirement of Plan effectiveness by such date.

(b)    If a CCR Allowance Proceeding remains pending after confirmation of the Plan, the Plan shall be deemed withdrawn, and may not be consummated, unless the Asbestos Claimants Committee and the Legal Representative, in their sole discretion, consent in writing to (i) consummation of the Plan, with the CCR Allowance Proceeding to be resolved after the Effective Date, (ii) the creation of a CCR Escrow pursuant to Section 4.4(c)(i)(C) of the Plan, and (iii) any adjustment in the First Payment to Asbestos Trust required by Section 4.4(c)(i)(C) of the Plan.

(c)    If the Plan is revoked or withdrawn prior to the Confirmation Date, or if the Plan does not become effective for any reason whatsoever, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings pending in, arising in, or relating to the Chapter 11 Cases.

(d)    In the event that the Effective Date does not occur, the parties shall be returned to the position they would have held had the Confirmation Order not been entered, and nothing in this Plan, the Disclosure Statement, any of the Plan Documents, or any pleading filed or statement made in court with respect to the Plan or the Plan Documents shall be deemed to constitute an admission or waiver of any sort or in any way limit, impair, or alter the rights of any Entity.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1    Effectuating Documents and Further Transactions. Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the Board of Directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such action as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.2    Cooperation. Subject to the rights set forth herein to revoke or withdraw the Plan, the Plan Proponents shall cooperate and together use their best efforts in pursuing confirmation of this Plan by the Bankruptcy Court.

13.3    Withholding and Reporting Requirements. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtors, or any other paying agent, as applicable, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be

58

subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution. Any party issuing any instrument or making any Distribution under the Plan has the right, but not the obligation, to refrain from making a Distribution, until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

13.4 <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes, equity interests or other plan securities pursuant to the Plan or any of the Plan Documents, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan or any of the Plan Documents, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

13.5 <u>Expedited Tax Determination</u>. The Reorganized Debtors may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Commencement Date through, and including, the Effective Date.

13.6 <u>Exemption from Registration</u>. Pursuant to section 1145 of the Bankruptcy Code, and except as provided in subsection (b) thereof, the issuance of (a) any shares of stock issued pursuant to the Plan, and (b) the Trust Note issued pursuant to the Plan shall be exempt from registration pursuant to section 5 of the Securities Act of 1933, as amended, and all other applicable non-bankruptcy laws or regulations.

13.7 <u>Payment of Statutory Fees</u>. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. **<u>The Reorganized Debtors shall pay quarterly fees payable pursuant to 28 U.S.C. section 1930(a)(6) to the Office of the United States Trustee (the "OUST") after the Effective Date until such time as the case is converted, dismissed or closed pursuant to a final decree. The Reorganized Debtor shall file post-Effective Date reports, the form of which will be supplied by the OUST. Nothing contained in this Plan shall relieve the Debtors or Reorganized Debtors from making payments to the OUST when due as required by 28 U.S.C. section 1930(a)(6).</u>**

13.8 <u>Post-Confirmation Date Fees and Expenses</u>. The Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons incurred from and after the Effective Date by the Reorganized Debtors, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

13.9 <u>The Asbestos Claimants Committee and the Legal Representative</u>.

(a)      Except as provided below, the Asbestos Claimants Committee and the Legal Representative shall continue in existence until the Effective Date.

(b)      Except as provided below, on the Effective Date, the rights, duties, and responsibilities of the Legal Representative shall be as set forth in the Asbestos Trust Agreement.

(c)      Except as provided below, on the Effective Date, the Asbestos Claimants Committee shall be dissolved, and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, liabilities, and obligations related to, or arising from, the Chapter 11 Cases.

(d)      Notwithstanding any of the foregoing, the Asbestos Claimants Committee and the Legal Representative shall continue in existence and shall have post-Effective Date standing and capacity to (i) complete matters, if any, including, without limitation, litigation, appeals, or negotiations pending as of the Effective Date which are not released pursuant to the Plan, including participating as a party in interest in any CCR Allowance Proceeding; (ii) object to or defend the Administrative Expense Claims of professionals employed by or on behalf of the Estates; (iii) participate with the Debtors to oppose any appeals of the Confirmation Order; and (iv) prepare and prosecute applications for the payment of fees and reimbursement of expenses.

(e)      In all events, the Asbestos Claimants Committee, its members, and its professionals, as well as the Legal Representative and his professionals, shall have the right to seek, and shall be entitled to, reasonable fees and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code for services rendered (including those services arising from or connected with any pending matter referred to in Section 13.9(d)).  The Debtors shall pay such reasonable fees and expenses incurred through the Effective Date, in accordance with the fee and expense procedures set forth in the Bankruptcy Code and Bankruptcy Rules or otherwise promulgated during the Chapter 11 Cases.  The Reorganized Debtors shall pay such reasonable fees and expenses relating to any post-Effective Date activities authorized in Section 13.9(d), but only to the extent that such reasonable fees and expenses are not expenses of the Asbestos Trust, in which case those portions of such fees and expenses shall be paid as Asbestos Trust expenses in accordance with the Asbestos Trust Agreement, with the remainder to be paid by the Reorganized Debtors.

13.10   Plan Supplement.  A specimen form of the documents to be included in the Plan Supplement shall be (a) filed with the clerk of the Bankruptcy Court no later than ten (10) days prior to the ~~last date by which holders of impaired Claims may vote to accept or reject the Plan~~**Confirmation Hearing**; and (b) posted at www.~~bsille~~**epiqsystems**.com as they become available, but no later than ten (10) days prior to the ~~last date by which holders of impaired Claims may vote to accept or reject the Plan~~**Confirmation Hearing**.  Upon its filing with the clerk of the Bankruptcy Court, the Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court during normal court hours.

60

13.11   Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.12   Sections 1125 and 1126 of the Bankruptcy Code.  As of and subject to the occurrence of the Confirmation Date: (i) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation, and (ii) the Debtors, the Asbestos Claimants Committee and its members, the Legal Representative, and each of their respective Affiliates, agents, directors, officers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

13.13   Severability.  If, prior to the Confirmation Date, any term or provision of the Plan or any of the Plan Documents shall be held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the written consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan or the Plan Documents as the case may be, shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan and the Plan Documents, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.14   Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that an exhibit hereto or document contained in the Plan Supplement provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of Delaware, without giving effect to principles of conflicts of laws.

13.15   Deemed Acts.  Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

13.16   Binding Effect.  The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.

13.17  <u>Exhibits/Schedules</u>.   All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are part of the Plan as if set forth in full herein.

13.18  <u>Notices</u>.  All notices, requests, and demands to or upon the Debtors, the Debtors-in-Possession or the Reorganized Debtors to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> G-I Holdings Inc.
> 1361 Alps Road
> Wayne, New Jersey 07470
> Attention:  Secretary

With a copy to:

> Dewey & LeBoeuf, L.L.P.
> 1301 Avenue of the Americas
> New York, New York  10019
> Attention:   Martin J. Bienenstock, Esq.
>                     Judy G.Z. Liu, Esq.
>                     Timothy Q. Karcher, Esq.
> Fax:  212-259-6333

> -and-

> Riker, Danzig, Scherer, Hyland & Perretti LLP
> Headquarters Plaza
> One Speedwell Avenue
> Morristown, New Jersey 07962-1981
> Attention:  Dennis O'Grady, Esq.
> Fax:  (973) 538-0800

13.19  <u>Time</u>.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.20  <u>Section Headings</u>.  The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

13.21  <u>Inconsistencies</u>.   To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions contained herein shall govern.

NYA 584340.14584340.26

This Plan is respectfully proposed by:

G-I Holdings Inc.,                                    Official Committee of Asbestos Claimants
Chapter 11 Debtor  in Possession


By:  ~~/s/ Samuel J. Heyman~~                    By:  ~~/s/ Robert J. Komitor~~
Its:  President and Chief Executive Officer       Its:      Chairman


ACI Inc.,
Chapter 11 Debtor in Possession                   C. Judson Hamlin,
                                                   Legal Representative for Present and Future
                                                   Demand Holders

By:  ~~/s/ Samuel J. Heyman~~
Its:    Chairman                                   ~~/s/ C. Judson Hamlin~~


Dated:  ~~December 3, 2008~~**October 5, 2009**


Dewey & LeBoeuf, L.L.P.            Keating Muething & Klekamp        Caplin & Drysdale, Chartered
1301 Avenue of the Americas         PLL                              375 Park Avenue
New York, NY  10019                One East Fourth Street            New York, NY 10152-3500
(212) 259-8000                     Suite 1400                       (212) 319-7125
                                   Cincinnati, OH 45202
Attorneys for Debtors and          (513) 579-6400                   Attorneys for Official
Debtors-in-Possession                                               Committee of Asbestos
                                   Attorneys for C. Judson Hamlin    Claimants
Riker, Danzig, Scherer,            as Legal Representative
  Hyland & Perretti LLP                                             Lowenstein Sandler, PC
Headquarters Plaza                 Saiber LLC                        65 Livingston Avenue
One Speedwell Avenue               One Gateway Center                Roseland, NJ 07068
Morristown, NJ 07962-1981          Newark, NJ 07102-5311             (973) 597-2500
(973) 538-0800                     (973) 645-4929
                                                                    Attorneys for Official
Attorneys for Debtors and          Attorneys for C. Judson Hamlin    Committee of Asbestos
Debtors-in-Possession              as Legal Representative           Claimants

63

## EXHIBITS TO THE PLAN

Exhibit 1.1.17          **G-I Holdings Inc.** Asbestos **Personal Injury** Settlement Trust Agreement

Exhibit 1.1.18          G-I **Holdings Inc.** Asbestos **Personal Injury** Settlement Trust Distribution Procedures

~~Exhibit 1.1.31          Pledge Agreement~~

Exhibit 1.1.41          Letter of Understanding with the Center for Claims Resolution, Inc., dated June 30, 2008

Exhibit ~~1.1.94~~**1.1.46 Collateral Agency Agreement**

**Exhibit 1.1.83          Pledge Agreement of G Holdings Inc.**

**Exhibit 1.1.101**(c)    List of Affiliates That Are Protected Parties

Exhibit ~~1.1.82          Collateral Agency Agreement~~**Exhibit 1.1.105**~~1.1.105~~**1.1.112**          Trust Note

Exhibit 4.3          Asbestos Trustees

## SCHEDULES TO THE PLAN SUPPLEMENT

Schedule ~~1.1.97~~**1.1.104**          Reorganized Debtors' Certificates of Incorporation

Schedule ~~1.1.98~~**1.1.105**          Reorganized Debtors' By-Laws

Schedule 4.4(a)          Cooperation Agreement

~~Schedule 4.4(d)          Subordination Agreement~~

Schedule 7.1          Executory Contracts and Unexpired Leases Being Assumed

Schedule 8.2          Reorganized Debtors' Directors and Officers

Document comparison done by Workshare Professional on Thursday, November 05, 2009 3:33:03 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://nya/584340/14 |
| Document 2 | pcdocs://nya/584340/26 |
| Rendering set | DL Standard |

| Legend: |
|---|
| **Insertion** |
| ~~Deletion~~ |
| ~~Moved from~~ |
| Moved to |
| Style change |
| Format change |
| Moved deletion |

| Inserted cell | |
|---|---|
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 249 |
| Deletions | 163 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 412 |

01-30135-hcg Claim Doc...

**Exhibit 1.1.93(c)**
**List of Affiliates That Are Protected Parties**

333 Post Road Associates, LLC
338 First Neck, LLC
344 First Neck, LLC
346 First Neck, LLC
3cognition LLC
61 Broadway Heyman Partners, LLC
61 Broadway Holdco, LLC
61 Broadway Owner LLC, a Delaware Limited Liability Co.
61 Broadway Realty Investors, LLC
877 Post Road Inc.
950 L'Enfant, LLC
950 Old Colony, Inc.
ACI Inc.
AH Annual Gift Trust
Annette Heyman
Annette Heyman 1995 Revocable Living Trust
Annette Heyman 1995 Trust for Eleanor S. Heyman
Annette Heyman 1995 Trust for Elizabeth D. Heyman
Annette Heyman 1995 Trust for Jennifer L. Heyman
Annette Heyman 1995 Trust for Lazarus S. Heyman
Annette Heyman 1998 Living Trust
Annette Heyman Family, LLC
Arawana Mills Company, LLC
Belleville Realty Corp.
Bluehall Incorporated
BMCA Acquisition Inc.
BMCA Fresno LLC
BMCA Gainesville LLC
BMCA Holdings Corporation
BMCA Insulation Products Inc.
BMCA Quakertown Inc.
Brenlevin Partners, LLC
Building Materials Corporation of America
Building Materials Investment Corporation
Building Materials Manufacturing Corporation
B Water LLC
Chemfields Pharmaceuticals Private Limited (India)
Chemicals Africa LLC
Chemicals Asia LLC
Chemicals Europe LLC
Chemicals North America LLC
Chemicals South America LLC

Chromium Corporation
Columbus Plaza Associates, LLC
Compo Acres, LLC
Crossroads II
Crossroads II, LLC
Crossroads Joint Venture
Crossroads Joint Venture, LLC
Darien Joint Venture, LLC
Darinor Plaza Associates, LLC
Darinor Plaza Partner, LLC
Eleanor and Rodney Propp 2006 Trust for Juliette Seymour Propp
Eleanor and Rodney Propp 2006 Trust for Stella Sabine Propp
Eleanor S. (Heyman) Propp
Eleanor S. Heyman 1976 Trust
Eleanor S. Heyman 1981 Age 60 Trust
Eleanor S. Heyman 1981 Continuing Trust
Eleanor S. Heyman 1995 Family Trust
Eleanor S. Heyman Age 50 Trust
Elizabeth D. (Heyman) Winter
Elizabeth D. Heyman 1981 Age 60 Trust
Elizabeth D. Heyman 1981 Continuing Trust
Elizabeth D. Heyman 1981 Trust
Elizabeth D. Heyman 2000 Family Trust
Elizabeth D. Heyman Age 50 Trust
ELK Composite Building Products, Inc.
ELK Corporation of Alabama
ELK Corporation of America
ELK Corporation of Arkansas
ELK Corporation of Texas
ELK Group, Inc.
ELK Group, L.P.
ELK Performance Nonwoven Fabrics, Inc.
ELK Premium Building Products, Inc.
ELK Slate Products, Inc.
ELK Technologies, Inc.
ELK Technology Group, Inc.
ELK Versashield Building Solutions, Inc.
ElkCorp
Fairhaven Holdings, LLC
First General Holding Company, Inc.
First General Insurance Company, Inc.
First National Joint Venture, LLC
G Holdings Inc.
GAF Broadcasting Company, Inc.
GAF Decking Systems LLC
GAF Leatherback Corp.

2

GAF Materials Corporation (Canada)
GAF Premium Products Inc.
GAF Properties Inc.
GAF Real Properties Inc.
GAF Roofing Manufacturing Corporation
GAFTECH Corporation
GCP Realty, LLC
GCP Realty II, LLC
General Aniline & Film Corporation
G-I Funding LLC
G-I Holdings Inc.
Granules India Limited [India]
Green Holdings LLC
H D Hotel, LLC
H D Realty Associates, LLC
H.J. Heyman Realty, LLC
H.J. Heyman Sons, LLC
Hall Court Joint Venture, LLC
HBP Acquisition LLC
Heybldg Associates II, LLC
Heybldg Associates, LLC
Heybldg Holdings, LLC
Heyfour Associates, LLC
Heyman Associates No. 1, LLC
Heyman Associates No. 11, LLC
Heyman Associates No. 12, LLC
Heyman Associates No. 3
Heyman Associates No. 5, LLC
Heyman Associates No. 56, LLC
Heyman Associates No. 6, LLC
Heyman Associates No. 66, LLC
Heyman Associates No. 7
Heyman Group Limited Partnership
Heyman Holdings Associates Limited Partnership
Heyman Investment Associates, LLC
Heyman Joint Venture II, LLC
Heyman Joint Venture, LLC
Heyman Properties Construction Company
Heyman Properties, LLC
Heyman-Greenburgh Associates, LLC
Heyvestco, LLC
Horizon EDH Holdings, LLC
Horizon EDH Trust Holdings, LLC
Horizon ESH Holdings, LLC
Horizon ESH Trust Holdings, LLC
Horizon Holdings Residual Trust

3

Horizon Holdings, LLC
Horizon JLH Holdings, LLC
Horizon JLH Trust Holdings, LLC
Horizon LSH Holdings, LLC
Horizon LSH Trust Holdings, LLC
Horizon Trust Holdings, LLC
International Specialty Holdings LLC
International Specialty Products Inc.
International Specialty Products (India) Private Limited [India]
International Specialty Products Funding Corporation
International Specialty Products ISP (France) S.A.S. [France]
ISP (Australasia) Pte Ltd. [Australia]
ISP (Belgium) BVBA [Belgium]
ISP (Belgium) International N.V. [Belgium]
ISP (Canada) Corp. [Canada]
ISP (Great Britain) Co. Ltd. [United Kingdom]
ISP (Italia) S.r.l. [Italy]
ISP (Japan) Ltd. [Japan]
ISP (Korea) Limited [Korea]
ISP (Norden) A.B. [Sweden]
ISP (Osterreich) Ges. m.b.h. [Austria]
ISP (Polska) Sp.z.o.o. [Poland]
ISP (Shanghai) Co. Limited [China]
ISP (Singapore) Pte. Ltd. [Singapore]
ISP (Switzerland) A.G. [Switzerland]
ISP (Thailand) Co., Ltd. [Thailand]
ISP Administration Inc.
ISP Advanced Materials Technologies LLC
ISP Alginates Inc.
Corporacion ISP Andina C.A. [Venezuela]
ISP Argentina S.R.L. [Argentina]
ISP Asia Pacific Pte. Ltd. [Singapore]
ISP Bermuda Limited [Bermuda]
ISP Biochema Schwaben GmbH [Germany]
ISP Biocides GmbH [Germany]
ISP Capital Inc.
ISP Capital LLC
ISP Ceska Republika Spol S.R.O. [Czech Republic]
ISP Chemco LLC
ISP Chemical Products Inc.
ISP Chemical Products LLC
ISP Chemicals (Malaysia) Sdn. Bhd. [Malaysia]
ISP Chemicals LLC
ISP Chile S.A. [Chile]
ISP Colombia Ltda. [Colombia]
ISP Customer Service GmbH [Germany]

4

ISP do Brasil Llda. [Brazil]
ISP Environmental Services Inc.
ISP Food Specialties (U.K.) Limited [United Kingdom]
ISP France Customer Service SARL [France]
ISP France Holding SARL [France]
ISP France Marketing SARL [France]
ISP Freetown Fine Chemicals Inc.
ISP Freight Services N.V. [Belgium]
ISP Funding Corp. II
ISP Global Operations (Barbados) Inc. [Barbados]
ISP Global Technologies (Germany) Holding GmbH [Germany]
ISP Global Technologies Deutschland GmbH [Germany]
ISP Global Technologies Deutschland Unterstutzungskasse GmbH [Germany]
ISP Global Technologies Inc.
ISP Global Technologies LLC
ISP Granule Products LLC
ISP Granules Inc.
ISP GT Inc.
ISP HC Limited [Cyprus]
ISP Holdings (U.K.) Ltd. [United Kingdom]
ISP Horhausen GmbH [Germany]
ISP Hungary Holdings Limited [Hungary]
ISP International Corp.
ISP International Sales Inc.
ISP Investco LLC
ISP Investments Inc.
ISP Ireland [Ireland]
ISP Italy Marketing S.r.l. [Italy]
ISP Lima LLC
ISP Luxembourg Canada S.a.r.l. [Canada]
ISP Luxembourg Holdings S.a.r.l. [Luxembourg]
ISP Management Company, Inc.
ISP Management LLC
ISP Marl GmbH [Germany]
ISP Marl Holdings GmbH [Germany]
ISP Mexico S. de R.L. de C.V. [Mexico]
ISP Microcaps (U.K.) Ltd. [United Kingdom]
ISP Microcaps (U.S.) LLC
ISP Microcaps Deutschland GmbH [Germany]
ISP Mineral Products Inc.
ISP Minerals Holding Corporation
ISP Minerals Inc.
ISP Minerals Investments LLC
ISP Minerals LLC
ISP Pharma Systems LLC
ISP (Puerto Rico) Inc.

5

ISP Real Estate Company, Inc.
ISP Realty Corporation
ISP Sales (U.K.) Limited [Ireland]
ISP Sophia Antipolis S.a.r.l[France]
ISP Synthetic Elastomers LP
ISP Synthetic GP LLC
ISP Synthetic Limited LLC
ISP Tech (Texas) Inc
ISP Technologies Inc
ISP Technologies LLC
ISP U.S. Sales LLC
ISP Vincience S.A. [France]
ISP Water Management Services LLC
Jennifer L. (Heyman) Millstone
Jennifer L. Heyman 1978 Trust
Jennifer L. Heyman 1981 Age 60 Trust
Jennifer L. Heyman 1981 Continuing Trust
Jennifer L. Heyman 1998 Family Trust
Jennifer L. Heyman Age 50 Trust
Johnston County Partners LLC
L'Enfant Colony, LLC
L48 Realty II, LLC
L48 Realty, LLC
Lazarus S. Heyman
Lazarus S. Heyman 1976 Trust
Lazarus S. Heyman 1981 Age 60 Trust
Lazarus S. Heyman 1981 Continuing Trust
Lazarus S. Heyman 1992 Family Trust
Lazarus S. Heyman Age 50 Trust
LGA Holdings, LLC
LGA Hotel, LLC
LL Building Products Inc.
Lock Street Associates, LLC
Lufkin Path Forward, Inc.
HPL, LLC
Merick Inc.
Midland Path Forward, Inc.
Milford Plaza Associates, LLC
Millstone Productions, LLC
Nanuet Joint Venture, LLC
North Orange Ave., LP
Old Derby Realty Associates, LLC
Oldmort Joint Venture
Pequannock Valley Claim Service Company, Inc.
Pinelands Company LLC
Progiven S.A.S.

6

Property Redevelopment Consultants, LLC
Q104.3 Listeners Club Inc.
Quality Fine Chemicals LLC
RGM Products, Inc.
Ridgefield Park Holdings, LLC
Ridgefield Park Investors, LLC
Ridgefield Realty Investors, LLC
Ridgemate Manufacturing Company Inc.
Ronnie F. Heyman
Ronnie F. Heyman 1984 Trust for Eleanor S. Heyman
Ronnie F. Heyman 1984 Trust for Elizabeth D. Heyman
Ronnie F. Heyman 1984 Trust for Jennifer L. Heyman
Ronnie F. Heyman 1984 Trust for Lazarus S. Heyman
Ronnie F. Heyman Beachside Remainder Trust for Eleanor Heyman Propp
Ronnie F. Heyman Beachside Remainder Trust for Elizabeth Heyman Winter
Ronnie F. Heyman Beachside Remainder Trust for Jennifer Heyman Millstone
Ronnie F. Heyman Beachside Remainder Trust for Lazarus S. Heyman
Ronnie F. Heyman Trust for Eleanor S. Heyman
Ronnie F. Heyman Trust for Elizabeth D. Heyman
Ronnie F. Heyman Trust for Jennifer L. Heyman
Ronnie F. Heyman Trust for Lazarus S. Heyman
Route 6 Holdings, LLC
Route 70 Services LLC
Samnard Associates, LLC
Samuel J. Heyman
Samuel J. Heyman 1976 Family Trust
Samuel J. Heyman 1981 Continuing Trust II for Eleanor Heyman Propp
Samuel J. Heyman 1981 Continuing Trust II for Eleanor Propp
Samuel J. Heyman 1981 Continuing Trust II for Elizabeth Heyman Winter
Samuel J. Heyman 1981 Continuing Trust II for Elizabeth Winter
Samuel J. Heyman 1981 Continuing Trust II for Jennifer Heyman Millstone
Samuel J. Heyman 1981 Continuing Trust II for Jennifer Millstone
Samuel J. Heyman 1981 Continuing Trust II for Lazarus S. Heyman
Samuel J. Heyman 1981 Continuing Trust II for Lazarus S. Heyman
Samuel J. Heyman 1992 Continuing Trust for Eleanor S. Heyman
Samuel J. Heyman 1992 Continuing Trust for Elizabeth D. Heyman
Samuel J. Heyman 1992 Continuing Trust for Jennifer L. Heyman
Samuel J. Heyman 1992 Continuing Trust for Lazarus S. Heyman
Samuel J. Heyman 2002 Trust for Stella Sabine Propp
Samuel J. Heyman 2005 Trust for Juliette Seymour Propp
Samuel J. Heyman 2006 Trust for Clara Arden Propp
Samuel J. Heyman 2006 Trust for Philippa Claire Millstone
Samuel J. Heyman 2007 Trust for Si Joseph Heyman
Samuel J. Heyman 2008 Trust for Charles Marvin Winter
Samuel J. Heyman 2009 Trust for Sheldon Harris Heyman
Samuel J. Heyman 2009 Trust for Solomon Arthur Heyman

7

Samuel J. Heyman Beachside Remainder Trust for Eleanor Heyman Propp
Samuel J. Heyman Beachside Remainder Trust for Elizabeth Heyman Winter
Samuel J. Heyman Beachside Remainder Trust for Jennifer Heyman Millstone
Samuel J. Heyman Beachside Remainder Trust for Lazarus S. Heyman
Samuel J. Heyman, Trustee
Seagrass Corporation LLC
SJH & RFH Annual Gift Trust
ISP Vincience S.A. [France]
South Ponca Realty Corp.
Stamford Industrial Park, LLC
Super Milford Holdings, LLC
Techwax Ltd. [United Kingdom]
The Annette Heyman Foundation, Inc.
The Gen III Gift Trust
The Horizon EDH Holdings Residual Trust
The Horizon ESH Holdings Residual Trust
The Horizon JLH  Holdings Residual Trust
The Horizon LSH Holdings Residual Trust
The Old Colony Company
The Samuel J. Heyman 2006 Retained Annuity Trust
The Samuel J. Heyman 2009 Family Trust F/B/O Lazarus S. Heyman
The Samuel J. Heyman 2009 Family Trust F/B/O Eleanor Propp
The Samuel J. Heyman 2009 Family Trust F/B/O Jennifer Millstone
The Samuel J. Heyman 2009 Family Trust F/B/O Elizabeth Winter
Tomsam Associates, LLC
Verona Inc.
Vesper Holdings, LLC
Westfield Main Associates, LLC
Westport Holdings II, LLC
Westport Holdings, LLC
White Plains Plaza Partners, LLC
White Plains Plaza Realty, LLC
Willimantic Investors, Inc.
Wind Gap Real Property Acquisition Corp.
Windsor Locks Associates, LLC
Windsor Locks Hotel Investors, Inc.
Winmill Capital Management, LLC
Winmill GP, LLC
Winmill Investments, LLC

Rodney Propp
Stella Sabine Propp
Juliette Seymour Propp
Clara Arden Propp
David Millstone
Philippa Claire Millstone

8

Emma Frances Millstone
Kim Heyman
Si Joseph Heyman
Sheldon Harris Heyman
Solomon Arthur Heyman
David Winter
Charles Marvin Winter

9

UNITED STATES DISTRICT COURT
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| G-I HOLDINGS INC., et al., | District Court Case No. 09-cv-05031 (GEB) Hon. Garrett E. Brown Jr., U.S.D.J. |
| Debtors. | Case Nos. 01-30135 (RG) and 01-38790 (RG) (Jointly Administered) |
| | Hon. Rosemary Gambardella, U.S.B.J. |

**NOTICE OF ENTRY OF ORDER CONFIRMING EIGHTH AMENDED JOINT PLAN OF REORGINIZATION OF G-I HOLDINGS INC. AND ACI INC. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      Confirmation of the Plan.  G-I Holdings Inc. and ACI Inc., debtors and debtors-in-possession in the above-captioned cases (together the "Debtors" and, as reorganized entities after emergence, the "Reorganized Debtors"), hereby give notice that the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), and the United States District Court for the District of New Jersey jointly entered an order (the "Confirmation Order") confirming the Eighth Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc. (the "Plan").  The Confirmation Date is _____, 2009.  Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings set forth in the Plan.

2.      Effective Date.  The Effective Date of the Plan has not yet occurred, and certain conditions set forth in Section 10.1 of the Plan must be satisfied or waived before the Plan may become effective.  Within five (5) Business Days after the occurrence of the Effective Date, the Debtors will file with the Bankruptcy Court a notice of occurrence of the Effective Date.  The notice will also be posted on the website of the Debtors' court-appointed claims agent, Epiq Bankruptcy Solutions, LLC ("Epiq") (http://chapter11.epiqsystems.com/).  Any party who wishes to confirm the actual occurrence of the Effective Date is directed to check the records of the Bankruptcy Court or Epiq's website.

3.      Effect of the Occurrence of the Effective Date.  Upon the occurrence of the Effective Date, in accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as provided in the Plan, the Confirmation Order, or other applicable order of the Bankruptcy Court:

a.      all Claims against the Debtors shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim;

b.      all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors;

c.      all Persons or Entities who have held, hold or may hold Claims or other debt or liability that are discharged pursuant to the Plan are permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability pursuant to the Plan against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors or the Reorganized Debtors, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind securing a discharged claim against the Debtors, the Debtors-in-Possession or the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, and (iv) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Debtors-in-Possession or the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan; and

d.      the Asbestos Permanent Channeling Injunction is issued and in effect, and all holders of Asbestos Claims shall be subject to the Asbestos Permanent Channeling Injunction, an injunction with respect to claims against Protected Parties.

4.      <u>Record Date</u>. The Record Date for purposes of determining the holders of Allowed Claims that are entitled to distributions that are required to be made under the Plan on the Effective Date or as otherwise provided under the Plan was _____, 2009. Distributions will be made to the holders of Allowed Claims as of the Record Date and the Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of a Claim occurring after the Record Date.

2

5.     <u>Administrative Expense Claims Bar Date</u>.  Except as otherwise provided in the Plan, all
requests for payment of an Administrative Expense Claim shall be filed with the
Bankruptcy Court and served on the United States Trustee and attorneys for the Debtors
at the addresses set forth in Section 13.18 of the Plan not later than thirty (30) days after
the Effective Date (the "<u>Administrative Expense Claims Bar Date</u>").  Unless the United
States Trustee, Debtors or Reorganized Debtors object to an Administrative Expense
Claim within forty-five (45) days after receipt of a request for payment, such
Administrative Expense Claim shall be deemed Allowed in the amount requested.  If the
United States Trustee, Debtors or Reorganized Debtors object to an Administrative
Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such
Administrative Expense Claim; *provided*, *however*, that the United States Trustee,
Debtors or Reorganized Debtors, as applicable, and the applicant may resolve such
objection by stipulation, without further action of the Bankruptcy Court.
Notwithstanding the foregoing, no request for payment of an Administrative Expense
Claim need be filed with respect to an Administrative Expense Claim which is paid or
payable by a Debtor in the ordinary course of business.

6.     <u>Compensation of Professionals – Bar Date</u>.  All holders of any Claim for an award by the
Bankruptcy Court of compensation for services rendered or reimbursement of expenses
incurred through and including the Effective Date pursuant to sections 503(b)(2),
503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file their respective
applications for final allowances of compensation for services rendered and
reimbursement of expenses incurred through the Effective Date by a date no later than
ninety (90) days after the Effective Date (the "<u>Professional Fees Bar Date</u>"), and (ii) if
granted such an award by the Bankruptcy Court, be paid in full such amounts as are Allowed
by the Bankruptcy Court (A) on or before the fifth business day after the date on which such
Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (B)
upon such other terms as may be mutually agreed upon between such holder of an
Administrative Expense Claim and the Reorganized Debtors.  To the extent, if any, that the
Debtors withheld amounts awarded as interim compensation during the Chapter 11 Cases
and such amounts are within the final compensation and reimbursement awarded by the
Court, the Reorganized Debtors shall pay all such withheld amounts on or before the fifth
business day after which such Administrative Expense Claim becomes an Allowed
Administrative Expense Claim.

7.     <u>Executory Contracts and Unexpired Leases</u>.  Pursuant to Section 7.1 of the Plan, any
executory contract or unexpired lease not set forth on Schedule 7.1 of the Plan Supplement
that has not expired by its own terms on or prior to the Confirmation Date, which has not
been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which
is not the subject of a motion to assume and assign or reject as of the Confirmation Date,
shall be deemed rejected by the Debtors-in-Possession on the Confirmation Date and the
entry of this Confirmation Order shall constitute approval of such rejection pursuant to
sections 365(a) and 1123 of the Bankruptcy Code, *provided, however*, that the Debtors have
the right, at any time prior to the Effective Date, to amend Schedule 7.1 to (a) delete any
executory contract or unexpired lease listed therein, thus providing for its rejection; or (b)
add any executory contract or unexpired lease to Schedule 7.1, thus providing for its
assumption, or assumption and assignment.  The Debtors shall provide notice of any

amendments to Schedule 7.1 to the parties to the executory contracts and unexpired leases affected thereby.  The Plan Supplement has been filed with the Bankruptcy Court and is available at Epiq's website.  Any amendments to the Plan Supplement will be filed with the Bankruptcy Court and made available at Epiq's website.

8.      Rejection of Executory Contracts or Unexpired Leases – Bar Date.  If the rejection of an executory contract or unexpired lease by the Debtors-in-Possession pursuant to Section 7.1 of the Plan results in damages to the other party or parties to such contract or lease, any claim for such damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties, agents, successors, or assigns, unless a proof of claim is filed with the Debtors' court-appointed claims agent or with the Bankruptcy Court and served upon the Debtors or Reorganized Debtors at the addresses set forth in Section 13.18 of the Plan on or before thirty (30) days after the latest to occur of (a) the Confirmation Date, (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of such executory contract or unexpired lease, and (c) any date before the Effective Date that the Debtors delete such executory contract or unexpired lease from the list of executory contracts and unexpired leases set forth in Schedule 7.1 of the Plan Supplement and provide notice of any amendments to Schedule 7.1 to the parties to the executory contracts and unexpired leases affected thereby ("Contract Rejection Bar Date").

9.      Enforcement of Bar Dates.  In accordance with section 502(b)(9) of the Bankruptcy Code, any Person or Entity that fails to file a proof of Claim by the Administrative Expense Claims Bar Date, Professional Fees Bar Date, Contract Rejection Bar Date or any other bar dates established in these Chapter 11 Cases (collectively, the "Bar Dates"), or was not otherwise permitted to file a proof of Claim after the applicable Bar Date by a Final Order of the Bankruptcy Court, is and shall be barred, estopped, and enjoined from asserting any Claim against the Debtors (i) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such Entity as undisputed, noncontingent and liquidated; or (ii) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Entity.

10.     Unclaimed Distributions.  All claims for undeliverable distributions must be made on or before the first (1st) anniversary of the date of such distribution, after which date all unclaimed property shall revest in the Reorganized Debtors free of any restrictions thereon and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Any unclaimed, un-cashed, or undeliverable Cash or check previously earmarked or tendered for the redemption of certain Equity Interests relating to the 1989 LBO Transaction, which Cash or checks G-I currently holds or has remitted to an appropriate state agency, and as to which such Equity Interests remain untendered by their holders, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors, and any entitlement of any holder of any Claim to such Cash or checks shall be extinguished and forever barred.

11. <u>Copies of the Plan and Confirmation Order</u>.  Any party-in-interest who wishes to obtain a copy of the Plan, any exhibits to the Plan, or the Confirmation Order may view and download such documents at Epiq's website (http://chapter11.epiqsystems.com/).  In addition, all documents that are filed with the Bankruptcy Court may be reviewed during regular business hours (8:30 a.m. to 4:00 p.m. weekdays, except legal holidays) at the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, Newark, New Jersey 07102.

**Dated:_____, 2009**

| | | |
|---|---|---|
| Dewey & LeBoeuf, L.L.P.<br>1301 Avenue of the Americas<br>New York, NY  10019<br>(212) 259-8000 | Keating Muething & Klekamp<br>  PLL<br>One East Fourth Street<br>Suite 1400<br>Cincinnati, OH 45202<br>(513) 579-6400 | Caplin & Drysdale, Chartered<br>375 Park Avenue<br>New York, NY 10152-3500<br>(212) 319-7125 |
| Attorneys for Debtors and<br>Debtors-in-Possession | Attorneys for C. Judson Hamlin<br>as Legal Representative | Attorneys for Official<br>Committee of Asbestos<br>Claimants |
| Riker, Danzig, Scherer,<br>  Hyland & Perretti LLP<br>Headquarters Plaza<br>One Speedwell Avenue<br>Morristown, NJ 07962-1981<br>(973) 538-0800 | Saiber LLC<br>One Gateway Center<br>Newark, NJ 07102-5311<br>(973) 645-4929 | Lowenstein Sandler, PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>(973) 597-2500 |
| Attorneys for Debtors and<br>Debtors-in-Possession | Attorneys for C. Judson Hamlin<br>as Legal Representative | Attorneys for Official<br>Committee of Asbestos<br>Claimants |

5

UNITED STATES DISTRICT COURT
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Chapter 11 |
| G-I HOLDINGS INC., <u>et al.</u>, | District Court Case No. 09-cv-05031 (GEB) Hon. Garrett E. Brown Jr., U.S.D.J. |
| Debtors. | Case Nos. 01-30135 (RG) and 01-38790 (RG) (Jointly Administered) |
| | Hon. Rosemary Gambardella, U.S.B.J. |

**NOTICE OF ENTRY OF ORDER CONFIRMING EIGHTH AMENDED JOINT PLAN
OF REORGINIZATION OF G-I HOLDINGS INC. AND ACI INC.
<u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    <u>Confirmation of the Plan</u>.  G-I Holdings Inc. and ACI Inc., debtors and debtors-in-possession in the above-captioned cases (together the "<u>Debtors</u>" and, as reorganized entities after emergence, the "<u>Reorganized Debtors</u>"), hereby give notice that the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>"), and the United States District Court for the District of New Jersey jointly entered an order (the "<u>Confirmation Order</u>") confirming the Eighth Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc. (the "<u>Plan</u>").  The Confirmation Date is _____, 2009.  Unless otherwise defined in this Notice, capitalized terms and phrases used herein have the meanings set forth in the Plan.

2.    <u>Effective Date</u>.  The Effective Date of the Plan has not yet occurred, and certain conditions set forth in Section 10.1 of the Plan must be satisfied or waived before the Plan may become effective.  Within five (5) Business Days after the occurrence of the Effective Date, the Debtors will file with the Bankruptcy Court a notice of occurrence of the Effective Date.  The notice will also be posted on the website of the Debtors' court-appointed claims agent, Epiq Bankruptcy Solutions, LLC ("<u>Epiq</u>") (http://chapter11.epiqsystems.com/).  Any party who wishes to confirm the actual occurrence of the Effective Date is directed to check the records of the Bankruptcy Court or Epiq's website.

3.    <u>Effect of the Occurrence of the Effective Date</u>.  Upon the occurrence of the Effective Date, in accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as provided in the Plan, the Confirmation Order, or other applicable order of the Bankruptcy Court:

a.  all Claims against the Debtors shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized

Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim;

b.   all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors;

c.   all Persons or Entities who have held, hold or may hold Claims or other debt or liability that are discharged pursuant to the Plan are permanently enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability pursuant to the Plan against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors or the Reorganized Debtors, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Debtors-in-Possession or the Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind securing a discharged claim against the Debtors, the Debtors-in-Possession or the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, and (iv) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559 or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Debtors-in-Possession or the Reorganized Debtors or against the property or interests in property of the Debtors, the Debtors-in-Possession or the Reorganized Debtors, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan; and

d.   the Asbestos Permanent Channeling Injunction is issued and in effect, and all holders of Asbestos Claims shall be subject to the Asbestos Permanent Channeling Injunction, an injunction with respect to claims against Protected Parties.

4.   <u>Record Date</u>.  The Record Date for purposes of determining the holders of Allowed Claims that are entitled to distributions that are required to be made under the Plan on the Effective Date or as otherwise provided under the Plan was _____, 2009.  Distributions will be made to the holders of Allowed Claims as of the Record Date and the Debtors and the Reorganized Debtors shall have no obligation to recognize any transfer of a Claim occurring after the Record Date.

5.   <u>Administrative Expense Claims Bar Date</u>.  Except as otherwise provided in the Plan, all requests for payment of an Administrative Expense Claim shall be filed with the Bankruptcy Court and served on the United States Trustee and attorneys for the Debtors at the addresses set forth in Section 13.18 of the Plan not later than thirty (30) days after the Effective Date (the "<u>Administrative Expense Claims Bar Date</u>").  Unless the United States Trustee, Debtors or Reorganized Debtors object to an Administrative Expense Claim within forty-five (45) days after receipt of a request for payment, such Administrative Expense Claim shall be deemed Allowed in the amount requested.  If the United States Trustee, Debtors or Reorganized

Debtors object to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim; *provided*, *however*, that the United States Trustee, Debtors or Reorganized Debtors, as applicable, and the applicant may resolve such objection by stipulation, without further action of the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be filed with respect to an Administrative Expense Claim which is paid or payable by a Debtor in the ordinary course of business.

6.      Compensation of Professionals – Bar Date. All holders of any Claim for an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (i) file their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by a date no later than ninety (90) days after the Effective Date (the "Professional Fees Bar Date"), and (ii) if granted such an award by the Bankruptcy Court, be paid in full such amounts as are Allowed by the Bankruptcy Court (A) on or before the fifth business day after the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or (B) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Reorganized Debtors. To the extent, if any, that the Debtors withheld amounts awarded as interim compensation during the Chapter 11 Cases and such amounts are within the final compensation and reimbursement awarded by the Court, the Reorganized Debtors shall pay all such withheld amounts on or before the fifth business day after which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

7.      Executory Contracts and Unexpired Leases. Pursuant to Section 7.1 of the Plan, any executory contract or unexpired lease not set forth on Schedule 7.1 of the Plan Supplement that has not expired by its own terms on or prior to the Confirmation Date, which has not been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which is not the subject of a motion to assume and assign or reject as of the Confirmation Date, shall be deemed rejected by the Debtors-in-Possession on the Confirmation Date and the entry of this Confirmation Order shall constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code, *provided, however*, that the Debtors have the right, at any time prior to the Effective Date, to amend Schedule 7.1 to (a) delete any executory contract or unexpired lease listed therein, thus providing for its rejection; or (b) add any executory contract or unexpired lease to Schedule 7.1, thus providing for its assumption, or assumption and assignment. The Debtors shall provide notice of any amendments to Schedule 7.1 to the parties to the executory contracts and unexpired leases affected thereby. The Plan Supplement has been filed with the Bankruptcy Court and is available at Epiq's website. Any amendments to the Plan Supplement will be filed with the Bankruptcy Court and made available at Epiq's website.

8.      Rejection of Executory Contracts or Unexpired Leases – Bar Date. If the rejection of an executory contract or unexpired lease by the Debtors-in-Possession pursuant to Section 7.1 of the Plan results in damages to the other party or parties to such contract or lease, any claim for such damages, if not previously evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties, agents, successors, or assigns, unless a proof of claim is filed with the Debtors' court-appointed claims agent or with the

3

Bankruptcy Court and served upon the Debtors or Reorganized Debtors at the addresses set forth in Section 13.18 of the Plan on or before thirty (30) days after the latest to occur of (a) the Confirmation Date, (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of such executory contract or unexpired lease, and (c) any date before the Effective Date that the Debtors delete such executory contract or unexpired lease from the list of executory contracts and unexpired leases set forth in Schedule 7.1 of the Plan Supplement and provide notice of any amendments to Schedule 7.1 to the parties to the executory contracts and unexpired leases affected thereby ("Contract Rejection Bar Date").

9.     Enforcement of Bar Dates.  In accordance with section 502(b)(9) of the Bankruptcy Code, any Person or Entity that fails to file a proof of Claim by the Administrative Expense Claims Bar Date, Professional Fees Bar Date, Contract Rejection Bar Date or any other bar dates established in these Chapter 11 Cases (collectively, the "Bar Dates"), or was not otherwise permitted to file a proof of Claim after the applicable Bar Date by a Final Order of the Bankruptcy Court, is and shall be barred, estopped, and enjoined from asserting any Claim against the Debtors (i) in an amount that exceeds the amount, if any, that is identified in the Schedules on behalf of such Entity as undisputed, noncontingent and liquidated; or (ii) of a different nature or a different classification than any Claim identified in the Schedules on behalf of such Entity.

10.     Unclaimed Distributions.  All claims for undeliverable distributions must be made on or before the first (1st) anniversary of the date of such distribution, after which date all unclaimed property shall revest in the Reorganized Debtors free of any restrictions thereon and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Any unclaimed, un-cashed, or undeliverable Cash or check previously earmarked or tendered for the redemption of certain Equity Interests relating to the 1989 LBO Transaction, which Cash or checks G-I currently holds or has remitted to an appropriate state agency, and as to which such Equity Interests remain untendered by their holders, shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Reorganized Debtors, and any entitlement of any holder of any Claim to such Cash or checks shall be extinguished and forever barred.

11.     Copies of the Plan and Confirmation Order.  Any party-in-interest who wishes to obtain a copy of the Plan, any exhibits to the Plan, or the Confirmation Order may view and download such documents at Epiq's website (http://chapter11.epiqsystems.com/).  In addition, all documents that are filed with the Bankruptcy Court may be reviewed during regular business hours (8:30 a.m. to 4:00 p.m. weekdays, except legal holidays) at the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, Newark, New Jersey 07102.

Dated:_____, 2009