PAUL J. FISHMAN
United States Attorney

SUSAN STEELE
Assistant U.S. Attorney

JAN M. GEHT (JMG 3272)
ARI D. KUNOFSKY (ADK 4289)
Trial Attorneys, Tax Division
U.S. Department of Justice
Ben Franklin Station
Post Office Box 227
Washington, D.C. 20044
(202) 353-9187
Counsel for the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | ) Chapter 11 )  ) Case No.  2:09-cv-05031 (GEB) |
| G-I HOLDINGS INC., et al., | ) ) Case Nos. 01-30135 (RG), 01-38790 (RG) |
| Debtors. | ) (Jointly Administered) ) ) Honorable Garret Brown ) Honorable Rosemary Gambardella ) ) Hearing Date:       November 13, 2009 ) ) Oral Argument:       Requested |

**BRIEF IN SUPPORT OF THE UNITED STATES' MOTION TO RECONSIDER A
<u>STAY OF CONSUMMATION OF CONFIRMATION</u>**

The United States, by and through its undersigned counsel, moves for the court

to reconsider its order denying a stay of consummation of the order confirming the

Eighth Amended Plan of Reorganization (Case no. 2:09-cv-05031, docket no. 11)[1] pending resolution of any appeal by the United States.

## PRELIMINARY STATEMENT

The Court found in its order that the United States had "not established the necessary showing" for the Court to issue a stay. (Case no. 2:09-cv-05031, docket no. 10, Opinion p. 101.) The United States files this motion for reconsideration because the premise that the United States is made whole in the plan is in error with respect to the taxes owed by the non-debtor entities protected by this Court's order. In addition, the Plan's benefits for its proponents cannot outweigh the necessity for a stay to preserve the United States' ability to appeal.

A stay of enforcement of an confirmation order is appropriate if the potential appellant has a substantial case on the merits and the equities weigh in favor of the stay. Here a stay of the consummation of the confirmation order is warranted given: (1) the likelihood that the United States will win on the merits of the serious legal issues raised by G-I Holdings at the end of this nine-year bankruptcy, and (2) the equities rest in favor of the United States because the failure to grant a stay may equitably moot the ability to raise these issues on any appeal.

The Plan, as confirmed, enjoins the United States from collecting tax liabilities owed by G-I Holdings affiliates that have never been **debtors**. (Plan section 2.4.) The

---

[1] The Bankruptcy Court and District Court filed the same order and opinion in both courts. (*See* Case no. 02:01-bk-30135, docket nos. 9786, 9787.) References in this motion for reconsideration are to the District Court's docket.

non-Debtor Affiliates are, essentially, given a release of their liability beyond what will be paid in the Plan. The Plan also violates the Bankruptcy Code by delaying payment of the United States' $315 million priority tax claim by over six years after assessment. 11 U.S.C. § 1129(a)(9)(C) (requiring "deferred cash payments" leading to full payment within six years of assessment). Each of these issues is a serious legal issue that may be raised if an appeal is filed.

The non-debtor releases are a serious legal issue for four reasons: (1) the Third Circuit has not yet ruled whether these releases are allowed under the Bankruptcy Code, (2) there is an split among the circuits regarding this issue, and (3) to the extent the Court relied on the Tolling Agreement's effect on non-debtors' tax liabilities, this Court lacks subject-matter jurisdiction to determine that effect, and (4) the Anti-Injunction Act prevents such releases against taxing authorities. As the Court noted, the Third Circuit has not ruled whether non-debtor releases are generally proper. *In re Continental Airlines*, 203 F.3d 203, 214 n. 12 (3d Cir. 2000). There is an active split on that issue among the circuits, and the issue is serious enough to qualify for a stay. Moreover, the Court's ruling appears to rely on the Tolling Agreement's effect on taxpayers who are not debtors. The Court lacks jurisdiction to determine the tax liability of non-debtors or the effect of their agreements with the Internal Revenue Service for more than $10,000. *See* 28 U.S.C. § 1346(a)(2). And even if it had jurisdiction to determine the tax liabilities of the non-Debtor Affiliates, it would be in the context of a section 505 determination, and not a plan provision. Finally, to the extent the Plan's

confirmation acts to prevent the Internal Revenue Service from assessing and collecting taxes against non-debtors, the Third Circuit has ruled that the Anti-Injunction Act, 26 U.S.C. § 7421, applies in bankruptcy. *In re Becker's Motor Transp., Inc.*, 632 F.2d 242, 246 (3d Cir. 1980). The Act prohibits a court from restraining the Internal Revenue Service from assessing or collecting a tax. 26 U.S.C. § 7421(a). Accordingly, the order confirming the Plan raises at least four serious legal issues that satisfy the requirement that the United States is likely to prevail on appeal.

As to the payment of the $315 million priority tax claim, the United States must be paid in "deferred cash payments" within six years of assessment. 11 U.S.C. § 1129(a)(9)(C). The Plan will not pay within six years of assessment and will not make any interim payments. (Plan section 2.4.) It will instead make a single bullet payment six years after "final **unappealable** judgment," which effectively means after all the litigation has concluded. The Internal Revenue Code, however, allows assessments to be made when attaches; in federal court when a final judgment is entered. The Order's addition of the condition that the six-year period begins with an unappealable judgment extends the statutory period by some unknown amount of time. The treatment of the priority tax claims is incorrect as a matter of law and a stay is warranted.

The equities also compel a stay. Any appeal may become equitably moot if the successful appeal would "unravel the reorganization plan." *In re Zenith Electronics Corp.*, 329 F.3d 338, 346 (3d Cir. 2003). The Plan provides that the Plan Sponsor will pay

$215 million in cash into an Asbestos Trust. This transfer may occur as soon next Monday evening. G-I Holdings will likely argue that any appeal of any issue will be equitably moot when the funds are transferred to the Trust because the Plan Sponsor would not make the payment if any of the Plan terms were modified. And, if a court adopted that view, the United States would be unable to have any appeal heard and these issues will be left without redress.

Alternatively, if the Court denies the United States' motion for a stay pending the appeal, then the United States seeks a stay while it moves for a stay from the Third Circuit directly. The United States, however, reserves the right to seek a stay directly from the Third Circuit given that this Court only stayed its order for two days. *See* Fed. R. App. P. 8(a)(2).

## BACKGROUND

**A. The United States' Tax Claims.**

The United States has asserted two sets of alternative tax claims in this bankruptcy proceeding against G-I Holdings. The first are priority tax claims approximating $315 million, plus unsecured non-priority claims of roughly $68 million for penalties, arising from the disputed character of an alleged partnership transaction executed by G-I Holdings in 1990. In the alternative, the United States has priority tax claims approximating $131 million, plus unsecured non-priority claims of roughly

$26 million for penalties, arising from the 1999 termination of the G-I Holdings' alleged partnership investment.[2]

The actual amounts of the United States' claims are being litigated in the U.S. District Court for the District of New Jersey. (Case no. 2:02-cv-03082). The District Court granted the United States' motion for partial summary judgment on the 1999 transaction on June 8, 2007. *In re G-I Holdings, Inc.*, 369 B.R. 832 (D.N.J. 2007). The trial on the merits of the 1990 transaction and the penalties for both years took place from June 8, 2009 to June 19, 2009. This Court denied the United States' oral motion at the June 23, 2009 status conference to postpone the confirmation hearing until the District Court enters a judgment. (*See* Docket No. 9278, July 1, 2009 Confirmation Hearing Scheduling Order).

### B. The G-I Holdings and non-Debtor Affiliates' Liabilities.

G-I Holdings and its non-Debtor Affiliates are members of a consolidated group for tax purposes. All members of a consolidated group are severally liable for the entire amount owed. 26 U.S.C. § 1502, 26 C.F.R. § 1.1502-6(a). The members cannot change their liability to the United States through a tax sharing agreement. 26 C.F.R. § 1.1502-6(c).

---

[2] The alternative priority tax claims are referred hereinafter as "Priority Tax Claim" and the alternative unsecured non-priority tax claims are referred hereinafter as "G-I Non-Priority Tax Penalty Claim" in accordance with Plan sections 1.1.77 and 1.1.98.

G-I Holdings and non-Debtor Affiliates are severally liable for the taxes and all related interest and penalties at issue in the District Court litigation described above. The United States concedes it may not **_collect_** any interest due from a debtor between the time a bankruptcy petition is filed and the time of confirmation ("Gap Interest") or the different interest rate, if any, owed by non-debtors after confirmation of the plan (the "Post-Confirmation Obligations") because of protections that the Bankruptcy Code provides debtors. That liability, however, can be assessed against G-I Holdings and non-Debtor Affiliates even if it cannot be collected from G-I Holdings because the Bankruptcy Code and the Internal Revenue Code differentiate between "assess" and "collect". *Compare* 11 U.S.C. § 524(a)(2) (prohibiting acts to *collect*, recover or offset any debt as a personal liability of the debtor), *with* 11 U.S.C. § 362(a)(6) (prohibiting any act to *collect, assess,* or recover a claim against the debtor). And once assessed, the Internal Revenue Service can collect the entire liability owed by the non-Debtors Affiliates from them.

### C. Treatment of the Services' Claims Under the Plan.

Under Plan section 2.4, G-I Holdings can pay the United States' priority tax claim with a note at the end of all litigation including any appeals. Six years after the note is delivered, the United States will receive a single payment of the entire principal owed plus interest at a rate of LIBOR plus 1%, which equals about 1.3%. (Plan section 2.4.) G-I Holdings amended its Plan at the end of the confirmation hearing to limit the

non-Debtor Affiliates' liability to the amount that could be collected from G-I Holdings. (Plan section 2.4.)

With respect to the G-I Non-Priority Tax Penalty Claim, the Plan provides for payment of 100% of the Claim at the end of the litigation regarding the claim. (Plan section 3.7.) The Plan provides for an undefined interest rate. (*Id.*)

### D. Confirmation

After the confirmation hearing, plan exclusivity was extended through October 30, 2009. (Docket no. 9718.) On Thursday, November 12, 2009, an order was entered confirming the Eighth Amended Plan. (Docket nos. 10 (opinion), 11 (order).) The Court stayed the effective date of the Plan for two business days, through Monday, November 16, 2009.

By the Effective Date, the Asbestos Trust must be funded with $215 million cash and a $560 million note from the Plan Sponsor. (Plan section 10.1(a)(vii).) In exchange, the Plan Sponsor will receive all the equity in G-I Holdings and a release of on-going litigation claimed to be worth $1 billion. (Plan sections 4.10, 9.7.) The Effective Date cannot occur, however, until the Confirmation Order has been entered without stay for 10 days. (Plan section 10.1(b)(i).)[3] Under the Plan's terms, the Effective Date can be no later than November 20, 2009. (Plan section 1.1.64.)

---

[3] Counsel for G-I Holdings mentioned at the November 10, 2009 hearing that all three Plan Proponents would be waiving this provision in writing. At the time the Plan was confirmed, no such waiver had been filed.

## ARGUMENT

When a district court enters an order confirming a chapter 11 plan, confirmation is automatically stayed for 10 days. Fed. R. Bankr. P. 3020(e), 8017(a).[4] The District Court can extend this stay pending an appeal to the court of appeals. Fed. R. Bankr. P. 8017(b).[5] To be granted a stay pending any appeal, the United States must "show that (1) they are likely to prevail on the merits of their appeal; (2) without a stay, they will suffer irreparable injury; (3) other interested persons will suffer no substantial harm; and (4) the public interest will not be harmed." *In re W & R Grace Co.*, 2008 WL 5978951, *2 (D. Del. Oct. 28, 2008); *Raza v. Biase (In re Raza)*, 2008 WL 682236, *5 (D.N.J. March 7, 2008). *See generally Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). While the Court must find there is a likely success on the merits as one of the factors, "where one factor weighs particularly strongly in favor of the movant, it may reduce the need

---

[4] Fed. R. Bankr. P. 8017 applies to appeals from the district court to the court of appeals. The test, however, is the same as under Fed. R. Bankr. P. 8005, which governs appeals from the bankruptcy court to the district court. *In re W.R. Grace & Co.*, 2008 WL 5978951, *7 (D. Del. Oct. 28, 2008) (*quoting In re Olick, Civ. A.*, 1996 WL 287344, *1 (E.D.Pa. May 29, 1996); *Collier's On Bankruptcy*, ¶ 10-8017.01 (Lawrence P. King, 15th (rev.) ed. 2009).

[5] Fed. R. Bankr. P. 8017(b) provides that "on motion and notice to the parties to the appeal, the district court . . . may stay its judgment pending an appeal to the court of appeals. The stay shall not extend beyond 30 days after the entry of the judgment of the district court . . . unless the period is extended for cause shown. If before the expiration of a stay entered pursuant to this subdivision there is an appeal to the court of appeals by the party who obtained the stay, the stay shall continue until final disposition by the court of appeals. . . . [A] bond or security shall not be required if a stay is obtained by the United States or an officer or agency thereof or at the direction of any department of the Government of the United States."

for other factors to weigh as strongly in favor of the movant." *In re SA Holdings, Co., LLC*, 2007 WL 1598113 (D.N.J. May 30, 2007) (Hotchberg, J.).

## I.   The United States is Likely to Prevail on the Merits.

In defining the parameters of likelihood of success on the merits, it is obvious that it "would be a rare judge who makes a ruling he or she thinks is 'likely' to be reversed on appeal." *Hoekstra v. Oak Cluster Cmty. Counsel (In re Hoekstra)*, 268 B.R. 904, 906 (Bankr. E.D. Va. 2000). The Court must, however, look to its earlier decision and determine if the United States may prevail on appeal. *In re Raza*, 2008 WL 682236, *5 ("The movant has the burden of demonstrating, at least, a likelihood of success on the merits."). Here there are four issues where this Court can at least acknowledge that a substantial issue exists that raises a serious legal question: **(a)** the release of non-Debtor Affiliates from taxes not owed by the debtors, **(b)** the failure to provide for the United States' priority claim, **(c)** interest rate paid on the claim, and **(d)** the lack of good faith in allowing the Plan Sponsor to buy a company without competition while delaying payments to the United States.

The United States extensively briefed and argued these issues orally and through its Amended Objection to Confirmation, which was filed under seal, its Supplemental Briefing Regarding Non-Debtor Releases (docket no. 9659), and its Proposed Findings of Fact and Conclusions of Law (docket no. 9690). This Court has disagreed. (Docket no. 10, Opinion.)

Two of these issues provide the basis for a stay: the non-Debtor Affiliates' release and the payment structure for the $315 million priority tax claim.

> ### A. There is a Substantial Legal Issue Regarding the Non-Debtor Release on which the United States has a Substantial Likelihood of Prevailing.

Releasing the non-Debtor Affiliates from their tax claims is a substantial question of bankruptcy and tax law. The release of non-debtors as a bankruptcy issue has not yet been addressed directly by the Third Circuit. The last time the Third Circuit considered this issue directly, it denied the releases but held that it did not need "to establish our own rule regarding the conditions under which non-debtor releases and permanent injunctions are appropriate or permissible." *In re Continental Airlines*, 203 F.3d at 213-214.

Among the other circuits, there is currently a split of authority on whether a non-debtor release can be effectuated without violating 11 U.S.C. § 524(e).[6] Section 524(e) provides that the discharge of a "debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). The Fifth, Ninth, and Tenth Circuits have held that 11 U.S.C. § 524(e) bars the release of non-debtors. If the Third Circuit follows these courts, then the non-debtor releases here would be improper.

---

[6] *Compare In re Lowenschuss*, 67 F.3d 1394, 1401-02 (9th Cir. 1995); *In re Zale Corp.*, 62 F.3d 746, 759-62 (5th Cir. 1995); *In re Western Real Estate Fund*, 922 F.2d 592, 600-02 (10th Cir. 1990), *modified on other grounds*, 932 F.2d 898 (10th Cir. 1991) (generally prohibiting the release of non-debtors), *with In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2006); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992); *In re A.H. Robins Co., Inc.*, 880 F.2d 694 (1989) (allowing releases in limited circumstances).

There are an additional three issues presented here that were not at issue in *In re Continental Airlines*. These issues arise because the Court is dealing with a taxing authority and sovereign rather than a general commercial or tort creditor. First, this Court has no jurisdiction to determine the tax liabilities of non-Debtors. Section 505 of the Bankruptcy Code limited this Court's jurisdiction in the tax realm to determining only G-I Holdings' tax liabilities. *E.g., In re Prescription Home Health Care, Inc.*, 316 F.3d 542, 548-549 (5th Cir. 2002). The Court accordingly had no jurisdictional power to make a "substantive [tax] ruling on BMCA's liability . . ." in the context of a plan confirmation hearing when it lacks that ability under 11 U.S.C. § 505. (Docket no. 10, Opinion, p. 94.) BMCA was a non-debtor and kept out of the bankruptcy process by the Debtors' choice. The conclusion that releasing non-Debtor Affiliates from their tax liabilities is based on the Court's determination that an agreement reached between the G-I Holdings consolidated group and the Internal Revenue Service affected the ability to assess and collect against non-debtors. But this Court lacks jurisdiction to make that determination, particularly when the issue was raised in the last days of the confirmation hearing.

Second, the release of the non-Debtor Affiliate violates the Anti-Injunction Act. Under the Anti-Injunction Act, 26 U.S.C. § 7421(a), "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person . . . ." In *Becker's Motor*, the Third Circuit held that the Anti-Injunction Act prohibits bankruptcy courts from restraining the United States' right to collect and assess taxes. *In re Becker's Motor Transp., Inc.*, 632 F.2d 242, 246 (3d Cir. 1980); *accord*

*Pazzo Pazzo, Inc. v. New Jersey*, 2007 WL 4166017 (D.N.J. Nov. 20 2007).[7] The Court here is ignoring *Becker's Motor* because it asserts sovereign immunity was waived under 11 U.S.C. § 106. But under any waiver of sovereign immunity under 11 U.S.C. § 106 is limited by non-bankruptcy law when it comes to enforcing that order. 11 U.S.C. § 106(a)(4). To the extent the Court is ruling on BMCA's substantive tax liability, the releases are enforcing that ruling. To hold that section 106 waives the Anti-Injunction Act would render section 106(a)(4) superfluous.

Third, this Court erred when it held that its third-party releases and injunction would be appropriate under *United States v. Energy Resources*, 495 U.S. 545 (1990). (Docket no. 10, Opinion, p. 90-91.) *Energy Resources* never dealt with limitations on taxes of non-debtor affiliates directly, it only dealt with allocating and applying the debtors' tax payments to the debtors' tax liabilities. Accordingly, *Energy Resources* is inapplicable. *In re Prescription Home Health Care, Inc.*, 316 F.3d 542, 549 (5th Cir. 2002) ("Nothing in *Energy Resources* suggests that bankruptcy courts have jurisdiction to determine the tax liabilities of non-debtors."). The Debtors and the Court have pointed to no cases where *Energy Resources* was used successfully to directly release a non-debtor from tax liability.

---

[7] *See also La Salle Rolling Mills, Inc. v. United States*, 832 F.2d 390, 394 (7th Cir. 1987) ("there is no indication in the Bankruptcy Code that Congress intended to supercede the Anti-Injunction Act"); *In re Heritage Village Church and Missionary Fellowship, Inc.*, 851 F.2d 104, 105 (4th Cir. 1988); *American Hardwoods*, 885 F.2d at 625; *A to Z Welding & Mfg. Co. Inc. v. United States*, 803 F.2d 932, 933 (8th Cir. 1986); *In re Am. Bicycle Ass'n*, 895 F.2d 1277, 1279-80 (9th Cir. 1990); *Matter of East Wind Indus., Inc.*, 61 B.R. 408, 411 (D.N.J. 1986) (following *Becker's*); *United States v. Chatman Elec. Services, Inc.*, 82 B.R. 646, 648 n.2 (D.D.C. 1987).

4802333.7

Given the limitations under 11 U.S.C. § 524(e) and that this Court has no jurisdiction to determine the non-Debtor Affiliate's tax liabilities under either the Bankruptcy Code or Internal Revenue Code, the United States is likely to succeed on the merits of an appeal.

> **B. The United States is Likely to Succeed with Regard to the Payment of its United States' Priority Tax Claims.**

As to payment terms of the $315 million priority tax claim, the Bankruptcy Code is clear: it requires "deferred cash payments" within six years of **_assessment_**. 11 U.S.C. § 1129(a)(9)(C). The payments that the Debtors proposed in the Plan are not within six years of assessment, but six years after the end of all appeals in the District Court tax litigation. (Plan section 2.4.). This Court then held that the United States could not assess until there was an "unappealable judgment." (Docket no. 10, Opinion p. 73.) This is simply an error of law. The United States may assess as soon as there is *res judicata*. 26 U.S.C. § 6871; 11 U.S.C. § 505(c). In federal courts that is when a final judgment is entered. *See, e.g., U.S. v. 5 Unlabled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009) ("FDA could probably have asked this court to give preclusive effect to the decision in the Northern District of Georgia without waiting for the Eleventh Circuit's decision, as the pendency of an appeal does not affect the potential for res judicata flowing from an otherwise-valid judgment."). The requirement that the judgment in the case on the merits of the tax liability be "unappealable" is unfounded.

The confirmation order condones that the Plan also does not provide for deferred cash payments. BMCA's CFO John Rebele testified that his company could make

payments to the Service of $20 million per year without upsetting any lending covenants or missing any plan payments. (Hrg. Tr. 10/1/2009, pp. 17:8-19:11.) The Court relied on *In re Gregory Boat Co.* 144 B.R. 361 (Bankr. E.D. Mich. 1992) for the proposition that a single six-year payment is appropriate here. (Docket no. 10 Opinion p. 73.) The Court, however, ignores that *Gregory Boat* also required the debtor to show good faith and that the six-year delay met a reorganizational need. *In re Gregory Boat Co.*, 144 B.R. at 367 (requiring the delay to be "reasonably necessary to the success of the debtor's reorganization" and supported by a "sound business justification" or the plan is not proposed in good faith). Rebele's testimony belies any such finding here.

Moreover, the Court ignores that the only time the payment terms of a priority tax claim reached the Third Circuit Court of Appeals, it indicated in *dicta* that "[i]t is highly doubtful" that a plan proposing a single, sixth-year bullet payment would meet the requirements of section 1129(a)(9)(C). *In re Ribs-R-Us*, 828 F.2d 199, 203 n.3 (3d Cir. 1987). Given the CFO's statements regarding the ability to pay and the Third Circuit's last words on the matter, the United States has a significant likelihood of success on the merits and a stay is warranted.

### II. The United States will Suffer Irreparable Injury if Equitable Mootness Prevents Legal Redress.

Failure to grant the stay may moot any appeal by the United States. Equitable mootness is "a kind of appellate abstention that favors the finality of reorganizations and protects the interrelated multi-party expectations on which they rest." *In re Pacific Lumber Co.*, ___ F.3d ___, 2009 WL 3082066, *4 (5th Cir. Sept. 29, 2009). Equitable

mootness "prevents a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." *Nordhoff Investments, Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 185 (3d Cir. 2001) (quoting *In re PWS Holdings, Inc.*, 228 F.3d 224 236(3d Cir. 2000)).

If there is no stay of the confirmation order pending any appeal, the Debtors will certainly argue that the United States should be left without any appellate remedies because the Plan Sponsor would have not contributed $215 million to the Asbestos Trust when the Service could assess non-Debtor Affiliates or require payments at the appropriate interest rate or structure. The United States disagrees with that conclusion.

It would be an unfair extension of the equitable mootness doctrine to apply it to this case. Such an extension turns an abstention doctrine that has been applied narrowly into a shield against any and all appellate review. *See In re Pacific Lumber Co.*, 2009 WL 3082066, *5 ("[A]ppellate cases generally apply equitable mootness with a scalpel rather than an axe."); *In re PWS Holdings*, 228 F.3d at 236-237 (not applying equitable mootness to third-party releases of insiders when the appellant "seeks to invalidate releases [under the absolute priority rule, 11 U.S.C. § 1129(b),] that affect the rights and liabilities of third parties. The plan has been substantially consummated, but . . . the plan could go forward even if the releases were struck.").[8]

---

[8] Interestingly, in *In re Pacific Lumber* the Fifth Circuit held that non-debtor releases could be stricken from the plan despite arguments of equitable mootness: "[T]he goal of finality sought in equitable mootness analysis does not outweigh a court's duty to protect the integrity of the process. We see little equitable about protecting the released non-debtors from negligence suits arising out of the

4802333.7

The dissenting opinion of then Judge Alito in the 7-6 *en banc* opinion of *In re Continental Airlines* is instructive. *In re Continental Airlines*, 91 F.3d 553, 567-573 (3d Cir. 1996). In *In re Continental Airlines*, the bankruptcy court refused to rule on a trustee's motion for adequate protection until the plan confirmation hearing. *Id*. at 556. After the plan was confirmed and the trustee's motion was denied, the district court ruled that the trustee's appeals regarding its motion were equitably moot, which the Third Circuit affirmed. *Id*. at 556. Justice Alito, in dissent, warned that equitable mootness was a potential danger given that it allows courts to skirt their "'virtually unflagging obligation' to exercise the jurisdiction that we have been given." *Id.* at 568 (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)); *see Nordhoff*, 258 F.3d at 192 (Alito J., concurring) (concurring because the appellant failed to seek a stay but warning that "equitable mootness doctrine can easily be used as a weapon to prevent any appellate review of bankruptcy court orders confirming reorganization plans. It thus places far too much power in the hands of bankruptcy judges.").

Justice Alito's concerns are acute here, where G-I Holdings' actions would protect third parties from paying lawfully owed taxes. The Plan was proposed and considered under exclusivity – when no other party could propose a plan. Until the last day of the confirmation hearing, G-I Holdings represented explicitly that the Plan did

---

reorganization. In a variety of contexts, this court has held that Section 524(e) only releases the debtor, not co-liable third parties." *Id*. at 2009 WL 3082066, *15. The safer course for both sides, however, would be if this Court issued a stay.

4802333.7

not release the non-Debtor Affiliates from their tax liabilities. G-I Holdings changed the Plan at the last moment, and the issue was heard on expedited briefing. G-I Holdings is sure to argue that the Plan will be substantially consummated before any appeal is heard. Denying a stay would in effect allow the Debtors the ability to preclude a review of provisions it added at the last minute. This scenario show the equities – including the preservation of the jurisdiction the appellate courts have been given to review important issues – weigh in favor of granting the stay.

This Court, however, does not need to decide whether equitable mootness would apply now. Losing appeal rights through equitable mootness can constitute irreparable harms for purposes of deciding whether to issue a stay. *County Squire Assoc. v. Rochester Cmty. Savings Bank (In re Country Squire Assoc.)*, 203 B.R. 182, 183 (2d Cir. (BAP) 1996); *Adelphia*, 361 B.R. at 347-348, 351. At issue is almost ten-years of Gap Interest from non-Debtor Affiliates that has been accruing on the $315 million priority tax claim since 2001. If the Court is wrong on the substantive tax and bankruptcy law and equitable mootness applies, the public fisc stands to lose hundreds of millions of dollars based on the fact that the Debtors' lenders moved quickly rather than the merits. This harm should be prevented by staying consummation of the Plan while the appeal is pending.

### III. The Plan Proponents Will Not Encounter Substantial Harm.

The Plan Proponents, the G-I Holdings and Asbestos Creditors, will not face substantial harm if the Court enters the stay. BMCA will continue to operate as it has

for the nine years since bankruptcy was filed.  Additionally, G-I Holdings and the Asbestos Creditors have waited over a year since the original plan was filed.  Waiting the additional time to see the resolution of an appeal cannot work substantial harm because it should have been foreseeable to the sophisticated parties proposing the global settlement.  Additionally, any delay in payment is outweighed by the United States' irreparable injury of having any appeal with a strong likelihood of success mooted by a rush to fund the Asbestos Trust that has remained empty for the past nine years.

**IV.     The Public Interest Will be Served by a Stay Pending Appeal.**

The public interest – especially, the taxpayers of the United States – have an interest in resolving bankruptcies in the way that Congress prescribes.  Congress, in enacting the Bankruptcy Code, recognized that taxes warranted special treatment because "tax authorities are creditors of practically every taxpayer . . . [and the] tax collection rules for bankruptcy cases have a direct impact on the integrity of the Federal, State and local tax systems."  S.Rep. No. 989, 95th Cong., 2d Sess. 13-14 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5799-5800.  The Bankruptcy Code's requirement of "deferred cash payments" does not mean that other taxpayers should give the G-I Holdings what amounts to a thirty-year loan for their 1990 taxes at an interest rate below 2%.  Nor should the Bankruptcy Code and its Courts be hijacked by last-minute amendments to grant reprieve to non-Debtor Affiliates that have otherwise opposed all efforts to be actively included in the bankruptcy.  The Asbestos Creditors and G-I

Holdings waited a year after the plan was proposed for the markets to thaw. (Docket no. 9593, Debtors' Mem. of Law in Supp. of Confirmation, p. 11-12.) It is in the public interest to make them wait until the Court of Appeals reviews their Plan and ensure that the law is followed. It is crucial to the process to ensuring public trust in the bankruptcy and voluntary tax system. The public interest should weigh in favor of the stay.

## CONCLUSION

For the reasons stated above, the United States requests the Court grant the Motion to Reconsider a Stay of Consummation of Confirmation.

In the alternative, if a stay pending any appeal is not granted, the United States seeks a stay to allow time for it to move for a stay from the Third Circuit.

Date: November 13, 2009

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

/s/ Ari D. Kunofsky
JAN M. GEHT (JMG 3272)
ARI D. KUNOFSKY (ADK 4289)
Trial Attorneys, Tax Division
U.S. Department of Justice
Ben Franklin Station
Post Office Box 227
Washington, D.C. 20044
Tel. (202) 353-9187
Telecopier: (202) 514-6866
Ari.D.Kunofsky@usdoj.gov

Counsel for the United States