RIKER, DANZIG, SCHERER,
HYLAND & PERRETTI LLP
Co-Attorneys for the Debtors
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
(973) 538-0800
Dennis J. O'Grady, Esq. (DJO 7430)
Mark E. Hall, Esq. (MH 9621)

DEWEY & LEBOEUF LLP
Co-Attorneys for the Debtors
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000
Martin J. Bienenstock, Esq. (MJB 3001)
Timothy Q. Karcher, Esq. (TQK 6173)

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
Andrew J. Rossman (AR 0596)
Christopher Kercher (CK 1755)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7199
Facsimile: (212) 849-7100

UNITED STATES DISTRICT COURT
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>G-I HOLDINGS INC.<br>(f/k/a GAF Corporation) and ACI INC.,<br><br>Debtors. | Chapter 11<br><br>District Court Case No. 09-CV-5031(GEB)<br>Hon. Garrett E. Brown Jr., U.S.D.J.<br><br>Case Nos. 01-30135 (RG) and 01-38790 (RG)<br>(Jointly Administered)<br><br>Hon. Rosemary Gambardella, U.S.B.J. |

**DEBTORS' BRIEF IN OPPOSITION TO THE UNITED STATES' MOTION TO
RECONSIDER A STAY OF CONSUMMATION OF CONFIRMATION**

     G-I Holdings, Inc. ("G-I" or "Debtor") respectfully submits this memorandum of law in opposition to the Motion to Reconsider a Stay of Consummation of Confirmation (the "Motion") submitted by the Internal Revenue Service (the "IRS"). For the reasons discussed below, the Motion fails to satisfy the strict criteria for such a stay and therefore should be denied.

**PRELIMINARY STATEMENT**

In a continuing effort to hold up the long awaited reorganization of this company, the IRS has now filed a completely meritless motion to reconsider the Court's joint ruling denying its application for a stay pending appeal. The IRS does not even bother to cite the standard for reconsideration because it has no colorable argument for meeting it. Its 20-page brief fails to point out any new law or new evidence that came down in the 24 hours since the Court issued its ruling or any clear errors of fact or law that necessitate correction to avoid manifest injustice. Rather, the IRS simply asks for a second bite at the apple, recycling the very same arguments that it made during the confirmation proceedings and the Court rejected in its opinion. There is no reason why the Court should revisit any of its determinations on the merits, which were well supported by detailed findings of fact and meticulously reasoned legal conclusions. The Court rightly denied the stay on the independent grounds that a stay would present a grave danger to the success of this reorganization. This danger far outweighs the putative harm to the IRS of having to adhere to its own Tolling Agreement, receive payment in full with interest from the Debtors and nondebtors on a schedule imposed by the chapter 11 plan, and receive the treatment of priority tax claims Congress prescribed in Section 1129(a)(9) of the Code.

The Court properly rejected the stay application for robust reasons that remain equally today and even more pressing today than at the time of the ruling two days ago. The Court made specific findings rooted in the trial record that: (1) "the IRS will suffer no injury as a result of this Court's order confirming the Plan because it is an unimpaired creditor," (2) granting a stay "would risk the failure of a reorganization effort that is the result of hard-fought negotiation among a myriad of interested parties and that fulfills the fundamental purposes of chapter 11," (3) "only now do the Debtors have an opportunity to obtain financing" and "any further delay would

seriously jeopardize the agreements that were reached to make this reorganization feasible." Op. 101.  The Court summed up the overwhelming balance of harms by concluding, "***The Court will not grant a stay pending appeal and exacerbate the present risk of failure for a creditor that is being paid in full under the Plan***." *Id.* (emphasis added).

When the Court's confirmation order goes effective on Monday, November 16, 2009 at 5 pm, we will be a scant ***four days*** from the November 20, 2009 deadline for closing the Plan of Reorganization for these Debtors.  The consequences of failing to meet that deadline are severe and potentially irremediable.  The plan proponents would no longer be bound by the Global Settlement that has been eight and a half years in the making and the Debtors and their constituents may have lost the last best chance for this company to emerge from Chapter 11.  Keeping the necessary financing in place despite the enormous complexities created by Mr. Heyman's untimely death and closing a transaction of this size with nearly a billion dollars in financing from multiple sources in four days is a herculean effort as it is.  Even one day's delay could jeopardize that effort, a risk that no responsible litigant in this chapter 11 case would want, save the IRS.

## ARGUMENT

**I.     The IRS Offers No Basis to Reconsider the Court's Well-Reasoned Denial of a Stay and Its Motion Should Be Denied**

In order to prevail, a party seeking reconsideration of a court's order must establish at least one of the following three grounds for relief: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [entered the order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999).  The IRS does not even attempt to meet any of the grounds for relief.  Instead, the IRS seeks to re-

litigate that which it overwhelmingly lost in a last-ditch effort to stall for time. "A motion that merely raises a disagreement with the Court's initial decision is not an appropriate reconsideration motion…In other words, '[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple.'" *Church & Dwight Co., Inc. v. Abbott Labs.,* 545 F.Supp.2d 447, 450 (D.N.J. 2008) (Brown, C.J.) (citations omitted).

Applying the four factor test for a stay pending appeal, the Court correctly and unambiguously decided that the IRS was not entitled to a stay because as an unimpaired creditor it faces no irreparable harm without a stay, in contrast to the very real threat posed to other interests if a stay were granted.[1] In its brief, the IRS raises no new arguments and has not shown any manifest injustice that would result from the denial of the stay. The IRS is merely renewing its original application.

A.   **The IRS Cannot Establish Any Legal or Factual Error in the Court's Opinion, Let Alone One That Leads to Manifest Injustice**

As the Court's joint opinion amply shows, the Court has great familiarity with the record, having presided over a five day trial and having reviewed substantial trial briefs from all parties. There is not the slightest need to re-litigate the issues as the IRS seeks to do and we rest comfortably on our trial briefs, which we incorporate by reference. *See* Doc. Nos. 9590, 9593, 9646, 9660, 9661. Indeed, the Court's joint opinion actually summarized, and fully addressed, the arguments the IRS makes in its Motion. Nevertheless, we feel compelled to briefly address the IRS' two principal contentions, each of which completely misstates the Court's opinion.

---

[1] The factors to consider on a motion for a stay pending appeal are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). In *Family Kingdom v. EMIF New Jersey Ltd. Partnership*, 225 B.R. 65, 69 (D. N.J. 1998), the court noted that where a party seeks a stay of a bankruptcy order, the requirement of showing likelihood of success may not be relaxed. *Id*. at n.6.

*First*, the IRS argues that the Court improperly released nondebtors from tax liability. IRS Br. at 11-12. This is simply inaccurate. The Court interpreted the plain language of the Tolling Agreement, which, we note the IRS *itself* drafted. Op. 91. Specifically, the Court interpreted the Tolling Agreement to mean that "the IRS agrees that it may 'not assess any amount against the nonbankrupt corporations with respect to said tax liability that is greater than the amount of the liability that he may assess against the Taxpayer.'" *Id.* The Court noted that the Plan also expressly bars the IRS from collecting Gap Interest from G-I, which is consistent with the Bankruptcy Code's disallowance of post-petition interest. See 11 U.S.C. § 502(b)(2). *Id.* Therefore, the Court concluded that under Tolling Agreement, the Plan and the Bankruptcy Code, the IRS cannot collect from non-debtor affiliates more than the amount of its allowed claim against G-I. There was no release of BMCA.[2]

*Second*, the IRS misinterprets the Court's ruling regarding the impact of 11 U.S.C. §106 of the Anti-Injunction Act. IRS Br. at 12-13. As the Court explained, its ruling is not injunctive in nature: "[T]his Court is not preventing the IRS from assessing against BMCA, or other non-debtor affiliates. Rather, it is issuing a substantive ruling on BMCA's liability to the IRS by

---

[2] The IRS also contends that "[t]he Court lacks jurisdiction to determine the tax liability of non-debtors or the effect of their agreements with the Internal Revenue Service for more than $10,000." IRS Br. at 3 (citing 28 U.S.C. 1346(a)(2)). The IRS has not raised this issue previously. The Third Circuit has held that "[c]ourts often take a dim view of issues raised for the first time in post-judgment motions." *Kiewit Eastern Co., Inc. v. L&R Constr. Co.*, 44 F.3d 1194, 1204 (3d Cir. 1995); *see also Pittston Co. Ultramar Am. Ltd. V. Allianz Ins. Co.*, 124 F.3d 508, 519 n.12 (3d Cir. 1997) (affirming district court's summary rejection of argument raised for the first time in Rule 59(e) motion for reconsideration). The Court should reject the IRS's new jurisdictional argument here as well. The IRS does not even purport to explain its argument concerning 28 U.S.C. 1346(a)(2) or provide any authority supporting its premise that the statute even applies to this case. The IRS apparently contends that this Court lacks jurisdiction to interpret a contract between private citizens and the government, but that is simply not the law. *See, e.g., Quality Tooling, Inc. v. U.S.*, 47 F.3d 1569 (Fed. Cir. 1995) ("If the interest expressed by the Bankruptcy Act in providing fair and expeditious relief to creditors is greater than the interest expressed by the [Contract Disputes Act] in resolving government contract claims in familiar, and expert, fora, then the district court may, in its discretion, retain jurisdiction over the contract claims."). Here, G-I is a party to the Tolling Agreement and the Court rightly concluded it has "related to" jurisdiction over this issue under 28 USC §1334 because of the Tax Sharing Agreement and G-I's reliance on BMCA. Op. at 90-91. In any event, the IRS availed itself of this Court's jurisdiction by filing its proof of claim.

addressing the self-imposed limitations of the IRS's claim against BMCA, and specifying that BMCA shall satisfy any such IRS assessment against BMCA in the same manner that G-I would satisfy an IRS assessment against G-I." Op. at 94. Even if it were deemed injunctive, the Court rightly ruled that it has the authority under §106. The IRS's suggestion that §106(a)(4) limits the ability of a court to enforce an order contemplated by §106 would render §§106(a)(1), (2) and (3) meaningless. The IRS also fails to acknowledge that not only this Court – but the Supreme Court of the United States ruled – that even without Congress's amendments to section 106, the U.S. Constitution had abrogated sovereign immunity in the bankruptcy court. *Central Virginia Community College v. Katz*, 546 U.S. 356, 361 (2006). Op. 96-97.

### B. As the Court Has Already Determined, Even the Briefest of Stays Could Jeopardize this Reorganization, Causing Severe and Irreparable Harm to All Parties in Interest, While the IRS Faces No Remotely Similar Harm

*First*, as the tragic death of Mr. Heyman pointedly reminds us, each passing day opens the possibility that some unforeseen calamity could occur. As Mr. Heyman testified:

> And there is the risk, as I said, and I can't, I don't want to be a prophet of doom, but there is the risk that over a period of time business conditions change, credit market conditions change. And we now know that we're in a world of uncertainty and volatility. And so I think the longer this process takes the more risk you run. That's why we've tried to move very quickly after we saw the credit markets improve toward the end of the second quarter. We moved very quickly, I think, to, to try to put this on the right, on the right track, and so I believe obviously in business timing is important.[3]

The parties to the Global Settlement have agreed to assume the risks of the passage of time and be bound, **but only until November 20, 2009**, when the Global Settlement will expire. With so many moving pieces and so many constituents, there can be no guarantee that the parties will agree to remain to be bound and assume these risks indefinitely. *See In re General Motors Corp.*, 409 B.R. 24, 32 (Bankr. S.D.N.Y. 2009) (emphasizing the "need for speed" because

---

[3] Sept. 30, 2009 Tr. at 73-74, attached as Exh. D.

funding would expire within days and federal government would not continue supporting the company while individual creditors sought to block the transaction at center of the plan). The Plan proponents are not required to extend the November 20 deadline and if they pull out, the Global Settlement and the Plan would be lost, plunging the company back into bankruptcy with an ensuing litigation frenzy. *See In re Calpine*, Case. No. 05-60200, 2008 WL 207841 at *5 (Bankr. S.D.N.Y. Jan. 24, 2008) (cost of remaining in chapter 11 and incurring substantial professional fees is valid consideration in denying stay of confirmation). The expiration of the Global Settlement may well mean the demise of the company or any hope for a successful reorganization. The Debtors undoubtedly "would be irreparably harmed by a stay," because it "would jeopardize their ability to keep their business afloat in such circumstances. *In re DJK Residential, LLC*, 2208 WL 650389, at *4 (S.D.N.Y. Mar. 7, 2008).

*Second*, and relatedly, while the financing necessary to consummate the Plan is available today, there is no guarantee that the current window in the credit markets will remain open, as recent history has so clearly demonstrated. In this very case, the confirmation hearing was delayed by several months as turmoil in the credit markets prevented the Debtors from obtaining the necessary letter of credit to fund the asbestos trust. Arranging the necessary financing, keeping it in place despite the enormous complexity created by Mr. Heyman's untimely death, and coordinating the closing of a transaction of this size and complexity in time to meet the November 20, 2009 deadline has taken extraordinary efforts and the Debtors cannot afford any delay. As the Bankruptcy Court recognized in denying a stay in *In re Calpine*, "A stay of the Confirmation Order would present a substantial risk that a condition precedent to financing will fail and [Debtors] could lose their exit financing, forcing them back to restructuring, looking to obtain new exit financing in an unfavorable capital market environment." 2008 WL 207841 at

03489.61582/3204204.1                                         7

*5. *See also Indiana State Police Pension Trust v. Chrysler LLC*, 129 S.Ct. 2275 (2009) (vacating stay where there was a likelihood that financing would fall through if stay were not lifted); *In re General Motors Corp.*, 409 B.R. 24 (Bankr. S.D.N.Y. 2009) (denying motion for stay pending appeal where "[t]he continued availability of financing" would be jeopardized);

*Third*, the Debtors' creditors, especially the asbestos claimants, will suffer irreparable harm if a stay is issued. As the Court is well aware, there are numerous asbestos claimants who are awaiting confirmation of the Plan to receive benefits that will help to pay for their immediate health needs.

## CONCLUSION

The Court should deny the IRS's motion for reconsideration of its stay motion.

Dated: November 14, 2009
      Morristown, New Jersey

Respectfully submitted,

By: /s/ Dennis J. O'Grady
Dennis J. O'Grady (DJO 7430)
RIKER, DANZIG, SCHERER,
HYLAND & PERRETTI LLP
Co-Attorneys for the Debtors
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962
Telephone: (973) 538-0800

-and-

Martin J. Bienenstock (MJB 3001)
Timothy Q. Karcher (TK 6173)
DEWEY & LEBOEUF LLP
Co-Attorneys for the Debtors
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000

-and-

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
Andrew J. Rossman (AR 0596)
Christopher Kercher (CK 1755)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7199
Facsimile: (212) 849-7100