**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

FILED
JAMES J. WALDRON
MAY 17 2012
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

In Re:

**G-I Holdings, INC., et al.,**
**(f/k/a GAF Corporation),**

                                    Debtors.

Chapter 11

**Case No. 01-30135 (RG) and 01-38790 (RG)**
**(Jointly Administered)**

**OPINION**

APPEARANCES:

Riker, Danzig, Scherer, Hyland & Perretti, LLP
BY:  Dennis J. O'Grady, Esq.
     Mark E. Hall, Esq.
One Speedwell Avenue
Morristown, New Jersey 07962
*Co-counsel for the Reorganized Debtors*

Quinn Emanuel, Urquhart & Sullivan, LLP
BY:  Andrew J. Rossman, Esq.
     Jacob J. Waldman, Esq.
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
*Special Counsel for the Reorganized Debtors*

Sandak, Hennessey & Greco, LLP
BY:  Marc J. Kurzman, Esq.
707 Summer Street
Stamford, Connecticut 06901-1026
*Outside Counsel for the Reorganized Debtors*

Fox Rothschild, LLP
BY:  Jeffrey M. Pollack, Esq.
Princeton Pike Corporate Center
997 Lenox Drive – Building 3
Lawrenceville, New Jersey 08648-2311
*Co-counsel for the New York City Housing Authority*

Law Offices of Philip J. Goodman, P.C.
BY:  Philip J. Goodman, Esq.
280 North Old Woodward – Suite 407
Birmingham, Michigan 48009
*Co-counsel for the New York City Housing Authority*

Rosemary Gambardella, Bankruptcy Judge

MATTER BEFORE THE COURT

Before the Court is a Motion to Correct Mistake in the Court's December 14, 2010 Opinion, pursuant to Rule 60(a) and (b) of the Federal Rules of Civil Procedure, made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure, and 11 U.S.C. § 105, filed by Claimant New York City Housing Authority (NYCHA).   NYCHA filed a proof of claim on October 10, 2008, for asbestos property damage to housing complexes in the amount of $500 million to pay for the abatement of asbestos-containing materials allegedly originally manufactured, mined, distributed, and sold by G-I Holdings, Inc. or its predecessors in interest. On December 10, 2008, the Reorganized Debtors filed an objection to the NYCHA Claim, and on December 14, 2010, this Court issued its opinion granting in part and denying in part the Debtors' Objection to the NYCHA Claim, *In re G-I Holdings, Inc.*, 443 B.R. 645 (Bankr. D.N.J. Dec. 14, 2010) ("December 14, 2010 Opinion").   Thereafter, discovery proceeded until conflicting interpretations of the December 14, 2010 Opinion brought the instant issue before the Court.  On October 31, 2011, and November 28, 2011, the parties raised the issue at separate status conferences.   On February 16, 2012, the Court held a hearing and reserved decision.   The following constitutes this Court's findings of fact and conclusions of law.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.  Background

The Court need not recite the entire history of the case, and what follows is a brief overview of the background of the administrative case and the involvement of NYCHA, focused primarily on those

facts most relevant to NYCHA's Motion to Correct Mistake in the Court's December 14, 2010 Opinion.[1]

On January 5, 2001, G-I Holdings, Inc. ("G-I") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"), and continued to operate its business as a debtor-in-possession. On August 3, 2001, ACI, Inc. ("ACI"), a subsidiary of G-I, also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to this Court's Order on October 10, 2001, the two cases have been jointly administered.[2]

On January 25, 2001, the Office of the U.S. Trustee appointed the Official Committee of Unsecured Creditors pursuant to 11 U.S.C. § 1102(a), ECF No. 87, and on October 10, 2001, the Court appointed C. Judson Hamlin as Legal Representative—a fiduciary representative of the interests of persons holding present and future asbestos-related claims against G-I, ECF No. 603.

By Order dated September 5, 2008 ("Bar Date Order"), this Court fixed October 15, 2008, as the bar date by which all proofs of claim against any interest in the Debtors had to be filed, other than certain "Excluded Claims." See Bar Date Order, Sept. 5, 2008, ECF No. 8257.

---

[1] For a more complete procedural history, see In re G-I Holdings, Inc., 443 B.R. 645 (Bankr. D.N.J. 2010); United States v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 2009 WL 4911953 (D.N.J. Dec. 14, 2009); In re G-I Holdings, Inc., 2006 WL 2595264 (D.N.J. Sept. 8, 2006); In re G-I Holdings, Inc., 2006 WL 2403531 (Bankr. D.N.J. Aug. 11, 2006); Official Comm. of Asbestos Claimants v. Bldg. Materials Corp. of Am. (In re G-I Holdings, Inc.), 338 B.R. 232 (Bankr. D.N.J. 2006), vacated, 2006 WL 1751793 (D.N.J. Jun. 21, 2006); G-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.), 328 B.R. 691 (D.N.J. 2005); Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 385 F.3d 313 (3d Cir. 2004); G-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.), 380 F. Supp. 2d 469 (D.N.J. 2005); Official Comm. of Asbestos Claimants v. Bank of N.Y. (In re G-I Holdings, Inc.), 318 B.R. 66 (D.N.J.), aff'd, 122 F. App'x 554 (3d Cir. 2004); In re G-I Holdings, Inc., 218 F.R.D. 428 (D.N.J. 2003); In re G-I Holdings, Inc., 2003 WL 22273256 (D.N.J. Aug. 8, 2003); Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 295 B.R. 502 (D.N.J. 2003); United States v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 295 B.R. 222 (D.N.J. 2003); Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 295 B.R. 211 (D.N.J. 2003); Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.), 327 B.R. 730 (Bankr. D.N.J. 2005); In re G-I Holdings, Inc., 323 B.R. 583 (Bankr. D.N.J. 2005); G-I Holdings, Inc. v. Those Parties Listed on Ex. A (In re G-I Holdings, Inc.), 313 B.R. 612 (Bankr. D.N.J. 2004); In re G-I Holdings, Inc., 308 B.R. 196 (Bankr. D.N.J. 2004); In re G-I Holdings, Inc., 292 B.R. 804 (Bankr. D.N.J. 2003); G-I Holdings, Inc. v. Hartford Accident & Indem. Co. (In re G-I Holdings, Inc.), 278 B.R. 376 (Bankr. D.N.J. 2002); G-I Holdings, Inc. v. Reliance Ins. Co. (In re G-I Holdings, Inc.), 278 B.R. 725 (Bankr. D.N.J. 2002).

[2] For ease of reference, the Reorganized Debtors will be collectively referred to as "Debtors" or "G-I."

Chief Judge Garrett Brown of the U.S. District Court for the District of New Jersey and this Court, by Order dated November 12, 2009, jointly approved the Debtors' Eighth Amended Joint Plan of Reorganization. ECF No. 9787.

### B. NYCHA Proof of Claim

NYCHA filed its proof of claim on October 10, 2008, in the amount of $500 million to remediate asbestos-related property damage to NYCHA-owed housing complexes and buildings ("NYCHA Claim"). NYCHA asserts there are asbestos-containing products originally manufactured, mined, distributed, and sold by Debtors or their predecessors-in-interest in those housing complexes and buildings and alleges it incurred costs necessary to abate the health hazards by replacing such products with non-toxic substitutes.

The Proof of Claim lists the basis for the claim as "Other: Property Damage," states the claim was incurred on "various" dates, and refers to "attachments and statement" as supporting documentation. Attached to the Proof of Claim is a Statement in Support of Proof of Claim of New York City Housing Authority ("Statement in Support"), dated October 9, 2008, and an attachment that identifies NYCHA Developments. *See* NYCHA Mot. to Correct Mistake ex. 2, Dec. 13, 2011, ECF No. 10552. The Statement in Support reads:

> 1.  The asbestos property damage claim of NYCHA, to which this Statement is attached, includes hundreds of buildings owned by NYCHA, built with products identified as having been manufactured by the Debtors, or having been manufactured with asbestos fiber for which the Debtors are legally responsible and include tens of millions of feet of vinyl asbestos floor tile ("VAT"), roofing materials, insulation materials. It would be extremely burdensome, if not impossible, to assemble, collect and submit all of the documentation supporting this asbestos property damage claim at this time, particularly in view of the extremely short period of time from the issuance of the Court approved Notice of [Bar Date] and the actual Bar Date of October 15, 2008.
> 2.  Attached to NYCHA's Proof of Claim are representative documents which demonstrate the types of product identification documentation which establish the

presence of Debtor's products in NYCHA's buildings. The voluminous documentation for all of the housing complexes and buildings included in the Claim are being gathered, organized and prepared for submission in support of the Claim.

*Id.*

On November 17, 2008, supplementary documentation to the Proof of Claim was filed, which includes: "Ruberoid Roofing Claim Example Documents;" "Ruberoid/Vermont Asbestos Fiber RA Keasbey/Rex Cement Claim Example Documents;" "Ruberoid/Vermont Asbestos Fiber EHRET/Baldwin EHRET Hill Claim Example Documents;" "Ruberoid/Vermont Asbestos Fiber Atlantic Asbestos Company Claim Example Documents;" "Empire/ACE/Vermont Asbestos Fiber Claim Example Documents;" "Ruberoid Vermont Asbestos Fiber Flint Home Asbestos Tile Claim Example Documents;" and "Ruberoid/Vermont Asbestos Fiber United States Gypsum Claim Example Documents." NYCHA Mot. to Correct Mistake ex. 3 pts. 1 & 2, Dec. 13, 2011, ECF Nos. 10552-4, -5. These example documents list several different types of asbestos-containing materials, as indicated by the categories of documents listed above. *Id.*

C. Debtors' Objection to NYCHA Claim

On December 10, 2008, G-I filed an objection to the NYCHA Claim, arguing the underlying asbestos property damage claim was time-barred under New York state law or, alternatively, the NYCHA Claim lacked sufficient detail and documentation in order to state a claim. Debtors alleged the claim provided insufficient information concerning which asbestos-containing products were allegedly installed in which of the NYCHA housing complexes or buildings as well as what actions were taken by NYCHA to abate asbestos-containing products. Debtors' Obj. to NYCHA Cl. ¶¶ 5-7, ECF No. 8625. G-I argued NYCHA's documents "provided no indication of what products were installed" and did not "indicate the nature and extent of the damages" nor "costs allegedly incurred or may in the future be incurred." *Id.* ¶¶ 16-17.

In its Response to Debtors' Objection to the NYCHA Proof of Claim, NYCHA stated it had, at

the time the Response was filed, expended more than $40 million "just for the removal and replacement

of asbestos-containing floor tile (vinyl asbestos floor tile or 'VAT')." Resp. to Proof of Cl. Obj., Jan. 6,

2009, ECF No. 8733.  It went on:

> Among the hundreds of asbestos abatement projects, a large number involved
> removal and replacement of asbestos-containing materials manufactured and sold
> by G-I's predecessors, including but not limited to GAF, Ruberoid, Mastic, and
> Matico. . . . On November 17, 2008, NYCHA submitted a First Supplemental
> Submission enclosing additional documents establishing that NYCHA buildings
> were constructed with ACMs [asbestos-containing materials], such as vinyl
> asbestos floor tile, roofs, thermal system insulation materials and products
> manufactured by Debtors' predecessors and other companies with asbestos fiber
> supplied by Vermont mines.

*Id.* ¶¶ 2, 9.[3]

Subsequently, Debtors filed a Reply in Further Support of Debtors' Objection to NYCHA's

Proof of Claim on July 7, 2009, in which they further argued about both the nature and the timeliness of

the NYCHA Claim. G-I alleged NYCHA was wrongly attempting to invoke the "emergency assistance

doctrine" because NYCHA was merely removing vinyl asbestos floor tiles ("VATs") as a

"precautionary removal, at the convenience of NYCHA, of a non-friable asbestos-containing VAT," not

because of immediate risk of harm to occupants. Debtors' Reply in Supp. of Cl. Obj. ¶¶ 2, 4, ECF No.

9290. Debtors stated the following in Footnote 2:

> In an effort to create an illusion of an asbestos-related hazard to its residents,
> NYCHA refers to a variety of asbestos-containing products allegedly manufactured
> by the Debtors' predecessors and to the thousands of asbestos lawsuits filed against
> them. However, it is clear from the documentation submitted by the NYCHA that
> its untimely proof of claim is based on one product and one product only: VAT. No
> property damage claim based on that product has ever been sustained against the
> Debtors or their predecessors.

---

[3] The Court notes that NYCHA did not at any point in the November 17, 2008 supplementary filing categorize the vinyl asbestos floor tiles as "friable" or "non-friable."

*Id.* ¶ 4 n.2. In the remaining arguments, Debtors focused on discussing VAT, the health and environmental risks of VAT, and the legal treatment of what Debtors characterize as non-friable VAT compared with the immediate risk of, for example, peeling lead paint. *Id.* ¶¶ 21-23, 26, 31.

NYCHA filed a Sur-Reply on July 17, 2009, in which it argued in support of its restitution and indemnity claims, citing New York state law's "liberal application" of statutes of limitation. NYCHA Sur-Reply, ECF No. 9312. In characterizing Debtors' response as incorrect with respect to the need to abate asbestos-based hazards, NYCHA stated: "Debtors are simply wrong in asserting that the need to abate lead paint is more 'immediate' than the need to abate defective building materials such as GAF VAT and other products which expose children and adults, alike, to the hazards of asbestos-related disease." *Id.* ¶ 11. A substantial portion of the remainder of the Sur-Reply addressed case law contrary to Debtor's cited case law and drew the Court's attention to evidence previously presented to the Court about the dangers of VAT.

Nowhere in the Sur-Reply did NYCHA limit the nature of its claims, and it expressly contradicted Debtors' above-referenced Footnote 2, stating:

> NYCHA's Proof of Claim plainly seeks recovery for contamination caused by a wide variety of Debtors' products, including "tens of millions of square feet of vinyl asbestos floor tile (VAT), *roofing material, insulation materials*" [and] "*asbestos fibers* manufactured, mined, distributed and sold by Debtors . . . ." Debtor's [sic] misrepresent to the Court that NYCHA's claim is only for VAT.

*Id.* ¶ 23 (internal citations to Court filings omitted). NYCHA further drew the Court's attention to previously submitted examples of other asbestos products that originated with Vermont Asbestos Group. *Id.* ¶ 24.

The Court held a hearing on July 22, 2009, at which parties reiterated their arguments. After some discussion of additional argument, this Court instead allowed parties to submit further letter briefs. On August 24, 2010, NYCHA submitted its letter, which discussed recent New York state court

decisions they argued should impact this Court's decision. On September 8, 2010, Debtors filed their responsive letter, distinguishing NYCHA's cited cases from the immediate case and arguing that NYCHA could not recharacterize its time-barred asbestos property damage claims from tort to indemnity.

### D. Court's December 14, 2010 Opinion

On December 14, 2010, the Court issued its Opinion granting in part and denying in part Debtors' Motion Objecting to NYCHA's Proof of Claim. *In re G-I Holdings, Inc.*, 443 B.R. 645 (Bankr. D.N.J. 2010). The Opinion sets forth a thorough background of the administrative case and the procedural history that led to the Debtors' Motion Objecting to Proof of Claim. In "Subsection F" of the background and procedural history, titled "The Housing Authority Claim," the Court related the history of the motion at issue, and stated that NYCHA filed its Proof of Claim on October 10, 2008, as well as, on November 17, 2008, a First Supplemental Submission, which "included supplemental documents establishing that Housing Authority Buildings were constructed with asbestos containing floor tile, roofs, thermal system insulation materials and products manufactured by the Debtors' predecessors and other companies." *Id.* at 653. The final sentence of Subsection F reads: "Supplemental documentation filed by the Housing Authority indicates that the alleged asbestos-containing products that are the subject of the claim are non-friable asbestos-containing floor tiles ('VAT') that the Housing Authority installed in some of its buildings." *Id.* The Opinion then laid out the respective positions of the parties in their moving papers, the arguments at the July 22, 2009 hearing, and the subsequent filings.

The Court denied NYCHA's claims under a tort theory, finding the applicable statutes of limitation had expired and the claims were therefore out of time. With respect to the indemnification claims, the Court found the dates of expenditures and the amount of funds expended by NYCHA in abatement efforts were needed to determine when the applicable statute of limitation began to accrue

and were issues of fact that "cannot by resolved by this Court until the parties present additional proofs and the record before this Court is further developed at an evidentiary hearing." *Id.* at 668.

The Court continued: "At this juncture, Debtors' motion to disallow the Housing Authority's claim(s) which are based on common law indemnity as time-barred is premature, and accordingly, it is denied. The Housing Authority will have an opportunity to present further proofs with respect to these issues of fact." *Id.* In the same vein, the Court held that NYCHA had alleged sufficient facts which, taken as true, would give rise to a claim for common law indemnification. Similar holdings were made about the restitution claims. *Id.* at 669, 671 ("The actual dangers of VAT and the urgency of the public health risk, the dates that expenditures were made by the Housing Authority, the required duties of the Housing Authority and Debtors to tenants, and the reasonable quantum of abatement costs that should have been borne by Debtor are all issues of fact that cannot be resolved by this Court until there is a more developed factual record"). The Court repeatedly held that, in light of the Court's obligation to take all facts as pled by the non-moving party as true when evaluating a motion to disallow claims, there was insufficient evidence before the Court to make a determination at that time. *See id.* at 668, 669, 671.

E. The Discovery Disputes

On April 8, 2011, Debtors submitted a letter to the Court detailing disputes that arose when NYCHA and the Debtors attempted to negotiate a Scheduling Order, informing the Court that "[t]he present dispute relates to discovery issues, including, in particular, whether discovery should proceed first with respect to the potentially dispositive factual matters raised in this Court's Opinion dated December 14, 2010 . . . ." Debtors' Scheduling Order Letter at 1-2, Apr. 8, 2011, ECF No. 10444. The Debtors' primary concern, according to the Letter, was that analysis of all of the buildings that were allegedly contaminated would be extremely burdensome, and it believed that with some additional

9

information, it could bring a motion to dispose of a large portion of NYCHA's claims.  At no point in

the Letter is there reference to a limitation of the subject materials of the claims.  In fact, Debtors state:

"Specifically, G-I believes these matters can be resolved via a dispositive motion following some very

basic and inexpensive discovery targeted at establishing that to the extent NYCHA removed any VAT or

other Asbestos Products from any of the NYCHA Properties, it did so primarily as a matter of

convenience, and *not* as the result of any imminent health hazard or to fulfill any duty owed to third

parties such as tenants." Debtors' Scheduling Order Letter at 5.

On October 31, 2011, this Court held a telephonic status conference with the parties to discuss

their letter to the Court, submitted October 25, 2011, which gave the Court a status report.  During that

conference, the parties reported they were attempting to conclude document production by January 31,

2012, the agreed-upon extended deadline in the scheduling order. Oct. 31, 2011 Hr'g Tr. 4:10-13, ECF

No. 10579.  Both parties expressed concern over the logistical complications of voluminous production.

Debtors reported they had made approximately 200 boxes of documents available to NYCHA in West

Virginia and that Debtors were receiving a rolling production of documents from NYCHA. *Id.* at 4:18-

5:16.

During the hearing, counsel for NYCHA, Jeffrey Pollack, Esq., referred to document requests for

asbestos-containing materials other than tile flooring. *See, e.g., id.* at 7:21-25.   In response to

discussions about potential building inspections, counsel for G-I, Andrew Rossman, Esq., referred to

abatement procedures for flooring tiles only—essentially limiting the discussion of discovery to VAT.

The Court, in response, noted that it understood both parties reserved their rights to make further

argument on the scope of discovery. *See id.* at 11-12, 13:9-13.

On November 28, 2011, the Court held a second telephonic status conference, where the parties

raised the issue of characterization of the December 14, 2010 Opinion.  At that hearing, parties reported

on the status of the on-going discovery. NYCHA expressed concern that some materials related to either roofing or a thermal system manufactured by Calsilite (referred to elsewhere as TSI or Calsilite) were not produced in the West Virginia documents and neither was information on other subjects. NYCHA's counsel argued G-I had made no indication on the record that production would be limited to certain asbestos-containing materials or would exclude roofing materials. *See* Nov. 28, 2011 Hr'g Tr. 4:14-20, 5:7-17, 6:7-14, ECF No. 10580.

In response, G-I's counsel refuted the premise that NYCHA was unaware of G-I's objections to NYCHA's request for production of documents and things. G-I objected to production beyond that related to what Debtors allege is the "subject of NYCHA's claim against G-I: non-friable asbestos-containing floor tile, VAT," and cited to the December 14, 2010 Opinion in support. *Id.* at 7-8. Debtors' counsel alleged NYCHA was aware of the limitation for several months before the trip to West Virginia to review documents.

Debtors argue that the December 14, 2010 Opinion, standing alone, limited the subject of the NYCHA Claim and further support the limitation, arguing:

> And the reason why [the Claim is] limited to VAT makes perfect sense when you think about it, You Honor, because their claims are not claims for asbestos property damage. The only claims that have survived the statute of limitation rulings are, for the moment, are claims for indemnity and restitution. The basis for those claims had to be, as Your Honor's opinion indicates, some duty that's owed to the residents of the New York City Housing Authority, that there is some public danger presented by the product.
> I find it difficult to imagine how there could be a public danger presented to tenants of the New York City Housing Authority if there are roofing materials that are made of asbestos. So we think that clearly that issue is out of the case and the case is limited to VAT.

*Id.* at 9:8-23.

In response, NYCHA expressed its disagreement with the reading of the Opinion, stating "Obviously, [the Court is] the foremost expert on [its] own opinion," but arguing that clarification was

needed. *Id.* at 15:12-16; *see id.* at 27:13-16 ("[NYCHA's] position is we're not changing the game at all. This is [ ] a valid, viable claim that has never been dismissed."). *But see id.* at 25:16-25 (argument by the Debtors that NYCHA needed to file a Rule 60 motion).

The Court requested parties put their positions regarding the scope of production pursuant to the December 14, 2010 Opinion in letter briefs to be submitted to the Court.

F. The Letter Briefs & Rule 60 Motion

On December 9, 2011, NYCHA submitted a letter to the Court expressing NYCHA's understanding that roofing, thermal system insulation (Calsilite) (TSI), and raw asbestos fiber in NYCHA's Proof of Claim were within the December 14, 2010 Opinion's determination of non-disallowed[4] claims. This letter, which also notifies the Court of the forthcoming Rule 60(a) Motion, sets forth NYCHA's arguments in favor of its interpretation of the Opinion, as requested at the November 28, 2011 hearing. NYCHA argues that "from the outset," its claims have been based on several asbestos-containing products, including but not limited to VAT. NYCHA Letter Br., Dec. 9, 2011, ECF No. 10548. They deny there was inappropriately limited scope in the supporting documentation of their Proof of Claim, drawing the Court's attention to the Statement in Support, which indicated the documents submitted were "representative" documents for all types of products. *Id.* at 2 & n.1.

NYCHA further argues it does not understand the basis for the Court's reference in the December 14, 2010 Opinion to a supplemental filing after the November 17, 2008 Submission, as "there was no further supplemental documentation submitted by NYCHA, and it has never filed or presented to the Court any documentation limiting its claim to VAT." *Id.* at 3. NYCHA asserts it does not believe the Court "intended to rule that NYCHA's roofing and TSI claims are barred" and encourages the Court, pursuant to its broad powers under 11 U.S.C. § 105, to clarify the language they believe the Debtors

---

[4] NYCHA refers to the claims as "non-discharged." The December 14, 2010 Opinion, however, held that certain claims were not disallowed at present but determined a decision as to whether the claims were allowed would be premature.

have misconstrued. *Id.* at 6. Alternatively, NYCHA argues that Fed. R. Civ. P. 60(a), made applicable by Fed. R. Bankr. P. 9024, empowers the Court to make corrections such as removing the contentious last sentence of Subsection F of its Opinion. *Id.* at 6-8.

NYCHA filed the instant Motion to Correct Mistake on December 13, 2011, arguing it had asserted a claim for roofing, thermal system insulation (Calsilite) (TSI), and raw asbestos fiber, as well as floor tiles, and because Debtors had not provided sufficient proof to contradict those claims, all of those materials should be included in the Court's determination that the claims were not disallowed. Mot. to Correct Mistake, Dec. 13, 2011, ECF No. 10552. NYCHA alleges the current conflict in interpretation arose when Debtors "abject[ly] refus[ed]" to produce documents during document production in Charleston, West Virginia, *id.* ¶ 12, stating that "[u]ntil recently, when G-I's counsel (Andrew Rossman, Esq.) articulated G-I's basis for not producing responsive materials, NYCHA was under the belief that both parties agreed that the roofing, thermal system insulation (Calsilite) (TSI) and raw asbestos fiber had not been disallowed," *Id.* ¶ 1.

Reiterating several of the arguments in its Letter, NYCHA alleges the various asbestos-containing materials have been included in the NYCHA Claim since the Proof of Claim's initial filing, consistently included since then and, further, its documentation—both the attachment to the Proof of Claim and the November 17, 2008 First Supplemental Submission—has consistently been "representative" due to the short timeframe between the issuance of the Notice of Bar Date on September 5, 2008, and the October 15, 2008 Bar Date. It repeats it does not understand the basis for the Court's reference to a supplemental submission.

NYCHA also repeats its argument that the Court should strike the last sentence of Subsection F in order to clarify the Opinion pursuant to Fed. R. Civ. P. 60, made applicable by Fed. R. Bankr. P. 9024. *Id.* ¶¶ 8-11 (citing *Burton v. Johnson*, 975 F.2d 690 (10th Cir. 1992) ("[The] court may also

invoke Rule 60(a) to resolve an ambiguity in its original order to more clearly reflect its contemporaneous intent and ensure that the court's purpose is fully implemented."); *In re Lenox*, 902 F.2d 737 (9th Cir. 1990) (recognizing that, pursuant to 11 U.S.C. § 105(a), a bankruptcy court has the power to reconsider any of its previous orders when equity so requires); and *In re Cisneros*, 994 F.2d 1462 (9th Cir. 1993) (upholding a bankruptcy court's decision to vacate its previously issued order and rejecting debtor's argument of a too lengthy delay because there was no prejudice to the debtor).

NYCHA argues there has been no real prejudice to the Debtors despite the nearly yearlong gap between the issuance of the Court's Order denying in part Debtors' Motion to Disallow and the filing of the instant Motion (the "December 22, 2010 Order"), arguing no intervening rights of the Debtors have become vested in reliance on the verbiage in the Opinion and the only action taken in response to Debtors' interpretation was the refusal to produce documents in connection with other asbestos-containing materials. *Id.* ¶¶ 13, 14 (relying on the explanation elucidated in *Waters v. Waters (In re Waters)*, 2007 WL 3069326, at *3 (Bankr. D.N.J. Oct. 18, 2007), which supports courts' use of equitable powers so long as "no intervening rights have become vested in reliance on the orders"). Further, they argue, denial of the relief sought would be highly prejudicial to NYCHA's claim because it would eliminate "large quantities of Debtor's products from the viable restitution and indemnity claims." *Id.* ¶ 12. NYCHA requests this Court either strike the last sentence of Subsection F in the Opinion or "issue a clarification that NYCHA's claims include all the product types specified in its claim and supplemental submission, and direct Debtors to answer all discovery relating thereto, plus such further relief the Court deems appropriate." *Id.* at 10.

On December 19, 2011, Debtors submitted a letter response to NYCHA's December 9, 2011 Letter.  G-I Letter Br., Dec. 19, 2011, ECF No. 10555.  In it, G-I argues the Court should reject NYCHA's "untimely" attempt to modify the Opinion, because, they allege, the "Opinion makes clear

the Court ruled, for several reasons, that only indemnity and restitution claims relating to VAT could

proceed." *Id.* at 1.  G-I argues predominantly that NYCHA failed to meet its burden of adequately

asserting facts to support a finding that it expended funds to abate other asbestos-containing materials,

without which a claim could not be sustained. *Id.* at 7-8.  Debtors also argue NYCHA has not quantified

any costs expended to abate products other than VAT and therefore has failed to meet its burden of

proof in that respect.  Further, G-I argues that since nearly a year has elapsed between the Order and the

current Motion, during which time Debtors proceeded with discovery under their interpretation of the

Court's Opinion, significant prejudice to G-I would result from "much expanded" scope of production.

*Id.* at 10.  The Debtors argue this Court must have intended to limit NYCHA's claims solely to

indemnity and restitution related to abatement of VAT and disallowed claims based on other asbestos-

containing materials, as evidenced by the Court's thirty-two references to VAT in the Opinion, as

compared with once apiece for the other materials. *Id.* at 3.

On January 3, 2012, G-I filed Debtors' Opposition to Claimant New York City Housing

Authority's Motion to Correct Mistake in Court's December 14, 2010 Opinion that "The" Subject of

NYCHA's Claim are Non-Friable Asbestos-Containing Floor Tiles. G-I Opp'n, Jan. 3, 2012, ECF No.

10561.  Therein, G-I argues its position that the December 14, 2010 Opinion, "properly read," allowed

NYCHA to "seek indemnity and restitution relating only to the abatement of VAT [floor tiles], and

consequently that NYCHA is entitled to discovery relating only to VAT."[5] *Id.* at 3 n.1.  In support, G-I

directs the Court to our December 22, 2010 Order, which states NYCHA would have an opportunity to

organize and present proofs with respect to the identified issues of material fact. *See id.* at 4 (quoting

Order Granting in Part and Denying in Part Debtors' Mot. to Disallow NYCHA's Cls. ¶ 4, Dec. 22,

2010, ECF No. 10408).  G-I argues the Court "clearly" intended issues of material fact to mean solely

---

[5] G-I expressly maintains its position that all of NYCHA's claims, including those for indemnity and restitution, are time
barred. G-I Opp'n at 3 n.1, 10 n.24; *cf.* G-I Opp'n at 20 nn. 32-33.

those related to VAT because the Court repeatedly referred to VAT without referencing other asbestos-containing materials. *Id.* at 4-7, 9-11.

G-I argues the Court "must have considered and rejected" NYCHA's claims for other asbestos-containing materials, pointing to the evidence submitted by NYCHA and concluding the Court "therefore explicitly considered NYCHA's various installments of documents . . . and nonetheless stated that NYCHA's claims relate to VAT." *Id.* at 11.    Debtors allege the sentence in Subsection F demonstrates the Court explicitly determined only VAT claims survived the Motion to Disallow and, thus, NYCHA's request for information concerning other asbestos-containing materials goes beyond allowable "discoverable information" as defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure.[6]

Further, Debtors argue, none of NYCHA's relied-upon legal bases for its Motion are applicable in this situation.  They allege Rule 60(b)(1) is inapplicable because the Motion was not brought within a reasonable time.  According to G-I, while NYCHA's Motion was brought within the one year threshold established by Rule 60(c),[7] it was not brought within a reasonable time, *id.* at 13-14 (citing *In re Diet Drugs Prod. Liab. Litig.*, 383 F. App'x 242 (3d Cir. June 7, 2010), because despite its allegations that it only recently became aware of the differing interpretations, NYCHA had been aware of G-I's intent to produce only VAT-related documents because that intent was stated in G-I's Response and Objections to documents and interrogatory requests, *id.* at 15.  Widening the scope of production would prejudice the Debtors, who have, they argue, "pressed forward in good faith with a large and thorough document production consistent with [their interpretation of] the Opinion." *Id.* at 15-16.

---

[6] Rule 26(b)(1) provides:
> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

[7] The Order Granting in Part and Denying in Part Debtors' Mot. to Disallow was entered on December 22, 2010. The instant Motion was filed on December 13, 2011, or 356 days after the Order was entered.

G-I challenges NYCHA's use of Rule 60(b) generally, contending the presentation of prior proofs amounts to an attempt to relitigate prior issues. NYCHA, G-I argues, is trying, through its characterization of the Opinion "as a mistake" to present the same arguments again, which is an improper use of Rule 60. Debtors further argue that since NYCHA did not present any new information, the cited authority, including *In re Cisneros*, 994 F.2d 737 (9th Cir. 1990) and *In re Waters, supra*, 2007 WL 3069326, does not support the request for relief under Rule 60. G-I Opp'n at 16-17 (relying on *Smith v. Evans*, 853 F.2d 155 (3d Cir. 1988); *Hazel v. Smith*, 190 F. App'x 137 (3d Cir. 2006); and *Pazzo Pazzo, Inc. v. New Jersey (In re Pazzo Pazzo)*, 2007 WL 437685 (Bankr. D.N.J. Feb. 5, 2007)). Nor, according to G-I, is NYCHA's use of Rule 60(a) appropriate, because the rule applies only to corrections of technical or mechanical errors, not to NYCHA's request for clarification that all the product types identified were not disallowed by the December 14, 2010 Opinion, which G-I argues "seeks to unravel the entire Opinion, not correct a typo." G-I Opp'n at 19 (arguing that the thirty-two references to "VAT" are not in the nature of a typographic error).

Finally, G-I argues NYCHA failed to provide a reason to find "inequity" in the Opinion so as to properly support its request to modify the Opinion under 11 U.S.C. § 105(a). G-I alleges NYCHA, nearly a year after an order was entered, is asking the Court to invoke its equitable power because NYCHA did not "understand, or did not attempt to understand, the order's implications." *Id.* at 17-18. Debtors argue there is no inequity and thus no reason to employ § 105. *Id.* (citing *In re Beaty*, 306 F.3d 915, 922 (9th Cir. 2002); *In re Con't Airlines*, 203 F.3d 203 (3d Cir. 2000); *In re United Steel Enters., Inc.*, 2006 WL 3544584 (D.N.J. Dec. 8, 2006); *In re G-I Holdings, Inc.*, 327 B.R. 730 (Bankr. D.N.J. 2005).

On February 16, 2012, the Court held a hearing on the Motion. At the hearing, NYCHA repeated its belief that it has consistently understood and represented the scope of the NYCHA Claim to

17

include various asbestos-containing materials, not simply VAT, and that until October 2011, it was

under the impression that the understanding was mutual. NYCHA argued the Opinion did not render a

decision on the merits of the NYCHA Claim, but is more correctly viewed as a decision on whether

NYCHA properly pled a claim in a timely fashion. NYCHA believes it is within the equitable power of

the Court, pursuant to *In re Waters* and under Fed. R. Bankr. P. 9024, to correct or amend the Opinion

because there has been no active reliance on the Order. Further, it argues, to deny the Motion to Correct

Mistake could lead to potential for the Opinion to be read inconsistently.

G-I argues the plain meaning of the Opinion and the subsequent Order is that "this case is limited

to a VAT case." They recall that the original objection to the NYCHA Claim was not merely on statute

of limitations grounds, but also for failure to sufficiently support the NYCHA Claim. G-I pointed to

three parts of the Opinion to support Debtors' understanding that the Court limited the subject of the

NYCHA Claim to VAT. G-I, while acknowledging the last sentence in Subsection F did appear in the

background section, contends the section itself reflects the "shared understanding of the litigants and the

Court as to what is before the Court, as to what the case was about" based on the proofs submitted to the

Court and argues there is a distinction between what was presented by NYCHA to be the subject of the

NYCHA Claim and what the Court determined the subject to be. The Debtors also point to pages 669

and 671 of the Opinion to reflect their understanding in the holding of the Opinion—arguing that since

the Court referred to NYCHA stating a claim for "VAT," rather than a more general term or a more

complete list of asbestos-containing materials, and following that reference with a discussion of what

proofs would be needed to build a more complete factual record in order to state a claim, the Court

clearly indicated the case was limited to VAT. G-I asserts the Debtors relied on that reading and

accordingly were prejudiced as to case strategy as well as the cost and time of discovery. Debtors

reiterated their argument that NYCHA is asking the Court not merely to correct a typographic error, so

Rule 60(a) does not apply; that there have not been new proofs provided, so Rule 60(b) does not apply; and that the Court, according to its own rulings, cannot use 11 U.S.C. § 105 to expand its powers under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

NYCHA rebutted Debtors' interpretation, explaining the Opinion goes through, at great length, whether a claim was established and what proofs were needed to establish a claim, but that there was no discussion of whether the Court allowed, or more relevantly, disallowed, claims other than for VAT. It argues that in each section of the Opinion the Court explicitly holds whether a particular type of claim survives the Motion to Disallow but stresses there is no such holding with respect to VAT or non-VAT claims. NYCHA argues that if the Court denies the Motion, the denial essentially means that on a scientific basis, without the opportunity for a hearing, G-I was so persuasive NYCHA may not even put on a case for the other asbestos-containing materials. It disagrees with the Debtors' claim of true detrimental reliance and concludes that since the subject Opinion is the Court's decision, the Court can say whether it meant VAT in the broad sense or the specific under its inherent equitable power.

STANDARDS OF LAW

"Bankruptcy courts, as courts of equity, have the power to reconsider, modify, or vacate their previous orders so long as no intervening rights have become vested in reliance on the orders." *Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1466 (9th Cir. 1993); *see Meyer v. Lenox (In re Lenox)*, 902 F.2d 737, 739-40 (9th Cir. 1990) (noting the power was formalized in Fed. R. Bankr. P. 9024). In order to meet the requirements of equity and serve the interests of justice, a bankruptcy court may reconsider any of its orders, including, if necessary, even stipulations. *Lenox*, 902 F.2d at 740.

Federal Rule of Bankruptcy Procedure 9024 makes Rule 60 applicable to cases under the

Bankruptcy Code. Federal Rule of Civil Procedure 60 provides:

> (a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. . . .
>
> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); . . .
> (6) any other reason that justifies relief.
>
> (c) Timing and Effect of the Motion.
> (1) Timing. A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.
> (2) Effect on Finality. The motion does not affect the judgment's finality or suspend its operation.

Fed. R. Civ. P. 60.

Rule 60(a) is limited to the correction of clerical mistakes or omissions and does not include

alterations to decisions deliberately made. The focus when considering a Rule 60(a) motion is the

court's intent. The court may void an order or make changes to allow the order or judgment to reflect its

actual contemporaneous intentions, including modifications to resolve an ambiguity in its original order

or judgment. *See Burton v. Johnson*, 975 F.2d 690, 964 (10th Cir. 1992); *United States v. Falcone*, 2010

WL 1372435, at *9 (D.N.J. Mar. 31, 2010) (Wolfson, J.) (noting that Rule 60(a) allows courts to

"correct records to show what was done"); *Wetherbee v. Willow Lane, Inc. (In re Bestway Prods., Inc.)*,

151 B.R. 530, 534-35 (Bankr. E.D. Cal. 1993) (reflecting the 9th Circuit rule that "any blunder in

execution can be corrected under Rule 60(a), while some other procedural basis (e.g., Rule 60(b)) is

needed when the court is changing its mind"), *aff'd*, 165 B.R. 339 (B.A.P. 9th Cir. 1994). Rule 60(a)

does not apply, however, where the requested changes go "beyond merely correcting a 'clerical mistake or a mistake arising from oversight or omission' and instead seek to alter the substantive rights of the parties." *In re Burns & Roe Enters.*, 2009 WL 1372251, at *6 (D.N.J. May 15, 2009) (Brown, C.J.); *see also Burton v. Johnson, supra*, 975 F.2d at 694 ("A . . . court is not permitted, however, to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect. . . . Rather the interpretation must reflect the contemporaneous intent of the [court] as evidenced by the record.").

Where clarification, rather than modification, is requested, courts in the Third Circuit have recognized that Rule 60(a) is not applicable where the court recognizes that the meaning or the effect of an order is unclear, it would "strain reason to find it apparent that the court intended one thing but by merely clerical mistake or oversight did another," and such ambiguity or uncertainty cannot be characterized as a clerical error on the court's part. *Law Offices of William W. McVay v. Szeg*, 2006 WL 2850627 (W.D. Pa. Oct. 3, 2006) (Ambrose, C.J.) (finding that where parties seek an explanation of a term, there is more than a question of "mindless and mechanistic" error and as such cannot be determined to be "a clerical error, or a mistake in copying, computation, mechanics, or other appropriate synonym"); *see Pfizer v. Uprichard*, 422 F.3d 124, 129-30 (3d Cir. 2005) (holding that Rule 60(a) encompasses only errors that are mechanical in nature); *In re Burns & Roe Enters., Inc.*, 2009 WL 1372251, *supra*; *see also In re Diet Drugs Prod. Liab. Litig.*, 383 F. App'x 242 (3d Cir. June 7, 2010). The omission of explanatory language is not a simple mechanical or typographic error, because the question of which rights or issues were adjudicated by the judgment "clearly and directly affects the substantive rights of the parties." *Szeg*, 2006 WL 2850627, at *4.

Rule 60(b)(1) permits the court, on motion, to vacate orders entered as a result of mistake, inadvertence, surprise, or excusable neglect. Fed. R. Civ. P. 60(b)(1). Rule 60(b)(1) is concerned with

mistakes of a substantive, rather than clerical, nature. *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975); *see United States v. Falcone, supra*, 2010 WL 1372435, at *8. Mistakes of law cannot, standing alone, justify granting a Rule 60(b) motion. *See Smith v. Evans*, 853 F.2d 155, 158 (3d Cir. 1988) (citing *Moolenar v. Gov't of the V.I.*, 822 F.2d 1324, 1346 (3d Cir. 1987)); *Pazzo Pazzo, Inc. v. New Jersey (In re Pazzo Pazzo)*, 2007 WL 437685, at *5 (Bankr. D.N.J. Feb. 5, 2007) (Winfield, J.); *accord United State Aid Funds v. Espinosa*, 130 S. Ct. 1367 (2010) (holing erroneous judgments are not *per se* void pursuant to Rule 60(b)(4)).

Rule 60(b) motions cannot serve as an appeal or relitigation of previously contested issues. If a party may seek the same relief by filing an appeal, granting a Rule 60(b) motion is improper. *See Smith v. Evans*, 853 F.2d at 158; *Pazzo Pazzo*, 2007 WL 437685, at *5; *cf. Martinez-McBean v. Gov't of the V.I.*, 562 F.2d 908, 911 (3d Cir. 1997) (prohibiting the use of Rule 60(b)(6) as an appeal of previously determined issues). Courts in this Circuit have looked at the function, rather than the form or caption, of Rule 60(b) motions. *See United States v. Fiorelli*, 337 F.3d 282, 287-88 (3d Cir. 2003); *Smith v. Evans*, 853 F.2d at 158-59; *Turner v. Evans*, 726 F.2d 112, 114 (3d Cir. 1984). If a motion made under Rule 60(b) seeks only to relitigate the original issues, repeats the arguments previously raised, and raises no new issues, that motion is considered more properly a Fed. R. Civ. P. 59(e) motion for reconsideration. *See, e.g., Hazel v. Smith*, 190 F. App'x 137, 138 (3d Cir. 2006).

A threshold issue to determining whether a Rule 60 motion can prevail is whether the motion is filed timely. Motions filed pursuant to Rule 60(b) must be made within a "reasonable time." Fed. R. Civ. P. 60(c). Additionally, claims made under Rule 60(b)(1) are untimely *per se* if made more than one year from the entry of judgment. *Id.* However, even if Rule 60(b)(1) motions are brought within the one year time frame, they may still be untimely if an unreasonable period of time has passed. *In re Diet Drugs Prod. Liab. Litig.*, 383 F. App'x at 246; *Taylor v. Taylor (In re Taylor)*, 357 B.R. 360, 364

(Bankr. W.D. Pa. 2006) ("The one year time period . . . is an outer limit and any Rule 60(b) motion is subject to denial if it is not also made within a reasonable time after the basis for relief is known.") (citing *Defoe v. Allstate Ins. Co.*, 1998 WL 328195, at *5 (E.D. Pa. 1998)). What constitutes a reasonable time depends on a case-by-case examination of the circumstances and includes factors such as finality, reason for delay, the practical ability for the litigant to learn of the ground relied upon earlier, and potential prejudice to other parties. *In re Diet Drugs Prod. Liab. Litig.*, 383 F. App'x at 246 (citing *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986).

### ANALYSIS AND OPINION OF LAW

At the outset, the Court acknowledges it has independent, discretionary authority to review, amend, correct, or clarify its own Opinion and other orders under its inherent equitable power. *See Utica Leaseco, LLC v. GMI Land Co., LLC*, 2011 WL 2458065, at *5 (W.D. Pa. June 16, 2011) ("Bankruptcy courts generally have 'independent authority' to reconsider their own orders pursuant to Section 105."); *see also Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 945 (9th Cir. 2007) ("Aside from Rule 60(b)(6), the bankruptcy court also had the discretionary power to reconsider its order."); *Rodriguez v. EMC Mortgage Corp. (In re Rodriguez)*, 252 F.3d 435, at *2 (5th Cir. Mar. 15, 2001) (per curiam) ("[T]he bankruptcy court had jurisdiction to interpret its own order, thereby giving it the power to entertain the motion for clarification."); *cf. G.W. Palmer & Co., Inc. v. Dye (In re Tanimura Distrib., Inc.)*, 2011 WL 3299933, at *6 (B.A.P. 9th Cir. Mar. 11, 2011) ("As courts of equity, bankruptcy courts have broad discretion under Rule 9024 to reconsider, vacate, or modify past orders. [Rule 9024] does not restrict the bankruptcy court's power to reconsider any of its previous orders when equity so requires.") (internal citations omitted).

Here, NYCHA is asking the Court to clarify its intent in stating that "the alleged asbestos-containing products that are the subject of the claim are non-friable asbestos-containing floor tiles

('VAT')." G-I argues that Rule 60(a) is inapplicable because the scope of the requested relief goes beyond the correction of a mechanical mistake or typographic error.

The conflicting interpretations do not arise from a single mechanical error but from parsing the language of the December 14, 2010 Opinion. It is not just one sentence in the Background section that gives rise to G-I's reading of our holding but references throughout the Opinion to "VAT" as the subject of the NYCHA Claim. Merely mechanically replacing "VAT" with "asbestos-containing materials" would not be a simple exchange of equivalent terms nor would it be the remedy requested by NYCHA. The Court finds Rule 60(a) inapplicable to this situation.

G-I also argues that Rule 60(b) does not apply in this situation because NYCHA did not bring its Motion in a reasonable time and because, it alleges, the Motion is an attempt to relitigate issues decided in the December 14, 2010 Opinion.

Turning first to the procedural considerations, the Court holds the Motion was brought not only within the statutorily-defined one year period but also within a reasonable time. The Motion to Correct Mistake was filed 356 days after the December 22, 2010 Order was entered, which satisfies the rule 60(c) requirement. With respect to reasonableness, the Court finds there was no unreasonable delay on NYCHA's part. The last paragraph of Subsection F is ambiguously constructed and could have given rise to multiple interpretations. Thus, it is not unreasonable that each party could have proceeded with discovery unaware of the differing readings of the Opinion until a disagreement over the proper scope of production arose. Further, the Court finds any prejudice to the Debtors from the clarification of the Opinion would arise simply from the delay in litigation and the expanded scope of discovery.[8] While

---

[8] In so finding, the case of *Law Offices of William W. McVay v. Szeg* is informative. In that case, appellants argued that prolonging litigation would result in unfair prejudice and that the Rule 60(b) motion was merely a stall tactic by the appellees. The court held that while granting the Rule 60(b) motion would result in prolonged litigation, the Rule "certainly contemplates that some judgments will be vacated" and thus the lengthened proceedings did not prejudice the appellants. The court also held that whether the use of a Rule 60(b) motion as a litigation tactic was proper had no bearing on whether appellants were prejudiced. 2006 WL 2850627, at *5.

the potential cost of protracted litigation would not be *de minimus*, the Court is not convinced the increased cost would outweigh the result of limiting the subject matter of the NYCHA Claim without allowing NYCHA to present proofs in support of its claims. Thus, the Court finds the Motion to Correct Mistake was brought within a reasonable time.

The Court also finds NYCHA is not attempting to use a Rule 60(b)(1) motion to relitigate issues previously before the Court. NYCHA does not argue the Court was incorrect in its December 14, 2010 Opinion nor does it ask the Court to reevaluate the sufficiency of its non-VAT asbestos-containing materials claims. The only discussion of whether NYCHA has provided sufficient support for its restitution and indemnity claims based on the abatement of roofing, Calsilite (TSI), or raw asbestos fiber is found in the Debtors' papers. NYCHA has requested the Court clarify its Opinion, not reevaluate it. Thus, the Court finds Debtors' reliance on *Smith v. Evans*; *Hazel v. Smith*; and *In re Pazzo Pazzo, Inc.* to be misplaced and that NYCHA is not attempting to relitigate issues determined in the December 14, 2010 Opinion.

We do not find, however, Rule 60(b)(1) is applicable to the instant request. While the instant Motion is styled a "Motion to Correct Mistake," the relief requested is not correction of a mistake, either legal or factual. NYCHA argues the last sentence in Subsection F of the Opinion contains a factual mistake because it did not file any additional supporting documentation after its First Supplemental Submission on November 17, 2008. No "mistake" was made, however. The sentence is ambiguous, but it does not state supplemental documentation was filed after November 17, 2008.

The Court is not being asked to modify or change its Opinion, but to clarify it. Neither G-I nor NYCHA are asking the Court to change its mind or its determination of whether claims for asbestos-containing materials other than VAT are allowed or disallowed. Instead, each argues its own

25

interpretation was that which the Court intended. In light of the nature of the request, we hold the inquiry is more properly determined under the Court's equitable powers, not Rule 60.

The Court does not agree with Debtors' argument that granting the Motion to Correct Mistake would be akin to "unraveling the entire Opinion." NYCHA correctly characterized the Opinion as an examination of whether certain pleading standards had been met with respect to the NYCHA Claim and a holding that there was an insufficient record before the Court to make a factual determination as to the indemnity and restitution claims at that time. And as G-I indicated, the Court set forth a list of the issues of fact that would need to be determined in order for the Court to make a factual finding as to the sufficiency of the claims for indemnity and restitution.

The Opinion did not decide whether NYCHA had supported its claim with respect to the different types of asbestos-containing materials. There is only one instance where the different types of materials are distinguished, which is the last paragraph of Subsection F. Throughout the rest of the Opinion, the Court continued to use "VAT" as a reference to the asbestos-containing materials that are the subject of the NYCHA Claim.[9] Completely absent from the Opinion is any explanation as to either the allowance or disallowance of claims based on the abatement of certain asbestos-containing materials as distinct from others.

The December 14, 2010 Opinion explicitly held that Debtors' Motion to Disallow was premature as to restitution and indemnity claims without further development of the factual record and that NYCHA would be allowed a future opportunity to present proofs in support. To limit the subject asbestos-containing materials without some explanation or without allowing NYCHA that opportunity would create a reading of the Opinion in which it contradicted itself. The Court did not intend to limit the subject of the NYCHA Claim to VAT tiles to the exclusion of other asbestos-containing materials

---

[9] The Court does not find convincing G-I's argument that since the term "VAT" appeared more frequently than the names of other types of asbestos-containing materials, the Court had explicitly limited the subject of the NYCHA Claim to VAT.

because to do so at this point would be premature. NYCHA will have an opportunity to present further proofs related to each type of asbestos-containing material included in its Proof of Claim and Supplemental Submission with respect to the issues of fact identified in the December 14, 2010 Opinion.

CONCLUSION

For the forgoing reasons and to the extent that NYCHA asks the Court to clarify that NYCHA's claims include all the product types specified in its claim and supplemental submission, the Motion to Correct Mistake in the Court's December 14, 2010 Opinion is GRANTED. An order shall be submitted in accordance with this decision.

DATED:  May 17, 2012

_Rosemary Gambardella_

ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE