**FILED**
JAMES J. WALDRON

**SEP - 9 2016**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In Re:**<br><br>**G-I HOLDINGS, INC. f/k/a GAF CORPORATION, et al.**<br><br>Debtors. | **Case Nos.: 01-30135 (RG) and**<br>**01-38790(RG)**<br>**(Jointly Administered)**<br><br>**OPINION** |

<u>**APPEARANCES:**</u>

**Riker, Danzig, Scherer, Hyland & Perretti, LLP**
BY:    Dennis J. O'Grady, Esq.
          Mark E. Hall, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1901
*Co-Attorney(s) for the Reorganized Debtors, G-I Holdings, Inc., et al*

**Quinn Emanuel, Urquhart & Sullivan, L.P.**
BY:    Andrew J. Rossman, Esq.
          Scott C. Shelley, Esq.
          Jacob J. Waldman, Esq.
51 Madison Avenue
New York, New York 10010
*Co-Attorney(s) for the Reorganized Debtors, G-I Holdings, Inc., et al*

**Sandak, Hennessey & Greco, LLP**
BY:    Marc J. Kurzman, Esq.
707 Summer Avenue
Stamford, Connecticut 06901
*Co-Attorney(s) for the Reorganized Debtors, G-I Holdings, Inc., et al*

**Fox Rothschild, LLP**
BY:    Jeffrey M. Pollock, Esq.
Princeton Pike Corporate Center
997 Lenox Drive – Building 3
Lawrenceville, New Jersey 08648-2311
*Co-Counsel for the New York City Housing Authority*

**Law Offices of Philip J. Goodman, P.C.**
BY:    Philip J. Goodman, Esq.
280 North Old Woodward Avenue – Suite 407
Birmingham, Michigan 48009
*Co-counsel for the New York City Housing Authority*

**Cohen, Placitella & Roth, P.C.**
BY:    Christopher M. Placitella, Esq.
        Jared M. Placitella, Esq.
        Joel Rosen, Esq.
        Stewart L. Cohen, Esq.
        Harry M. Roth, Esq.
2001 Market Street – Suite 2900
Philadelphia, Pennsylvania 19103
*Co-Counsel for the New York City Housing Authority*

## ROSEMARY GAMBARDELLA, BANKRUPTCY JUDGE

### MATTER BEFORE THE COURT

Before the Court is G-I Holdings, Inc., et al's ("G-I") Motion for Summary Judgment against the New York City Housing Authority ("NYCHA") on its Indemnity and Restitution Claims and NYCHA's Cross-Motion for Partial Summary Judgment as to Liability.  A hearing was conducted on June 25, 2015, at which time the Court reserved decision.  The following constitutes this Court's findings of fact and conclusions of law.

### STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

On January 5, 2001, (the "Petition Date"), G-I Holdings, Inc. ("G-I" or "G-I Holdings"), formerly known as GAF Corporation ("GAF") and earlier, as Ruberoid Co. ("Ruberoid"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Chapter 11 Voluntary Petition, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 1.  On August 3, 2001 ACI Inc. ("ACI"), a subsidiary of G-I Holdings, also filed a voluntary petition for relief under Chapter 11.[1]  Subsequently, G-I Holdings continued to operate its business as a debtor-in-possession

---

[1] A more detailed factual background can be found in *In re G-I Holdings, Inc.*, 443 B.R. 645 (Bankr. D.N.J. 2010), *opinion clarified*, 472 B.R. 263 (Bankr. D.N.J. 2012).

pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. *See* 11 U.S.C. §§ 107(a), 1108. On October 10, 2001, the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") entered an Order directing the joint administration of the G-I Holdings and ACI bankruptcy cases.

The Official Committee of Unsecured Creditors (the "Committee") was appointed on January 18, 2001 by the United States Trustee pursuant to Section 1102(a) of the Bankruptcy Code to represent those individuals who allegedly suffered injuries related to asbestos exposure from products manufactured by the predecessors of G-I. *See* 11 U.S.C. § 1102(a). On October 10, 2001, this Court appointed C. Judson Hamlin as the Legal Representative, a fiduciary to represent the interests of persons who hold present and future asbestos-related claims against G-I.

G-I Holdings is the successor-in-interest to GAF, an entity named in approximately 500,000 asbestos-related lawsuits. *See G-I Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-I Holdings, Inc.)*, 313 B.R. 612, 621 (Bankr. D.N.J. 2004). The Committee submitted that, as successor-in-interest to GAF, G-I Holdings remained liable for approximately 150,000 asbestos-related lawsuits filed but unresolved as of the Petition Date and for an unknown number of asbestos-related claims that would be filed in the future. *Id.*

In early 1994, GAF Building Materials Corporation, an indirect subsidiary of GAF, formed a new corporation as a wholly-owned subsidiary known as Building Materials Corporation of America ("BMCA"). *Id.* Pursuant to that transaction, BMCA received substantially all of the assets of GAF's roofing products business and expressly assumed $204 million of asbestos-related liability, with G-I indemnifying BMCA against any additional such

liability.  *Id.*  BMCA, also an indirect subsidiary of G-I Holdings, is the primary operating subsidiary and principal asset of G-I Holdings.  *Id.*

### A. Global Settlement of Asbestos-Related Lawsuits Lead to a Joint Plan of Reorganization

In early 2007, the Debtors, the Committee, and the Legal Representative (collectively, the "Parties") commenced mediation under the auspices of former United States District Judge Nicholas H. Politan in an effort to resolve the asbestos-related lawsuits.  Subsequently, the Parties outlined the principal terms of a global settlement and endeavored to complete a final global settlement with comprehensive documentation in the form of a proposed Chapter 11 plan and its ancillary documents.  To preserve the status quo, the Parties mutually agreed to request a stay of all litigation that would be covered under the final global settlement from this Court and other courts of competent jurisdiction.  Although lengthy and initially unsuccessful, the negotiations continued until the parties reached a settlement culminating in an agreement in early August 2008 (hereinafter "Global Settlement").

On August 21, 2008, the Parties filed the Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc. pursuant to Chapter 11 of the Bankruptcy Code (hereinafter "Joint Plan of Reorganization") that implemented the Global Settlement of all asbestos-related lawsuits naming G-I Holdings and any other related entities as defendant(s). The Joint Plan of Reorganization provided for the creation of an asbestos trust pursuant to Section 524(g) of the Bankruptcy Code ("Asbestos Trust"), to which all asbestos-related lawsuits against the Debtors now and in the future would be channeled.  Pursuant to the Global Settlement, the Asbestos Trust would assume the Debtors' liability for asbestos-related lawsuits, in exchange for cash on the effective date of the Joint Plan of Reorganization in an amount not to exceed $215 million, and a note in the

amount of $560 million issued by the reorganized Debtors and secured by a letter of credit. *See* Joint Plan of Reorganization at § 4.4, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 8190. Samuel J. Heyman (hereinafter "Heyman"), owner and Chairman of G-I and BMCA, was the Plan Sponsor.

## B. The Bar Date for Proofs of Claim

By order dated September 5, 2008 ("Bar Date Order"), this Court fixed October 15, 2008 as the bar date by which all proofs of claim against any interests in the Debtors had to be filed, other than certain "Excluded Claims" as defined in therein. *See* Bar Date Order, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 8257.

## C. The Second Amended Joint Plan of Reorganization

On December 3, 2008, Debtors filed a Second Amended Joint Plan of Reorganization and an Amended Disclosure Statement ("Second Amended Joint Plan"). The Second Amended Joint Plan was almost identical to the Joint Plan of Reorganization, but provided for, *inter alia*, an equity infusion of up to $220 million to fund G-I Holdings' liabilities by the Plan Sponsor. *Cf.* Joint Plan of Reorganization, *supra*, at § 4.10, and Second Amended Joint Plan at § 4.10, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 8590.

On January 12, 2009, the New York City Housing Authority ("NYCHA" or the "Housing Authority") filed an objection to the Second Amended Joint Plan ("NYCHA Objection") stating that it "completely ignore[d] New York law which supports NYCHA's claim for restitution," and that adopting it would mean that "debtor will foist all costs attributable to Debtors upon NYCHA, and therefore, Debtors' Second Amended Joint Plan of Reorganization should be

rejected as deficient." Objection to Confirmation of Plan at 2, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 8752. NYCHA filed no further objections to the subsequent third through eighth amended plans.

### D. Poor Economic Climate Delays Confirmation Hearing

On or about December 4, 2008, the Debtors submitted the Second Amended Joint Plan to classes of voters as defined therein to accept or reject the Second Amended Joint Plan pursuant to Section 1126 of the Bankruptcy Code. At the conclusion of the solicitation process, the Debtors received sufficient votes in favor of the Second Amended Joint Plan to approve it. Subsequently, the Debtors informed this Court that because of the lack of available credit in the capital markets, the letter of credit required to fund the Asbestos Trust and integral to confirmation of the Second Amended Joint Plan would be difficult, if at all possible, to find. As a result, this Court delayed the confirmation hearing and asked the Debtors to advise it of any further developments via monthly status conferences.

In June 2009, the Debtors informed this Court that they could secure the required letter of credit, and that the confirmation process could resume. After consultation with the Parties, this Court entered the Amended Plan Confirmation Scheduling Order ("Amended Joint Scheduling Order") on July 1, 2009. Amended Joint Scheduling Order, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 9278. Per the Amended Joint Scheduling Order, this Court established September 4, 2009 as the deadline for parties in interest to file objections to confirmation, and established that the confirmation hearing would commence on September 30, 2009. *See id.*

**E. Subsequent Modifications Reflecting Negotiations Among the Parties Eventually Lead to an Eighth Joint Plan of Reorganization**

The Parties filed a Third Amended Joint Plan of Reorganization on July 2, 2009 (ECF No. 9283), a Fourth Amended Joint Plan of Reorganization on July 28, 2009 (ECF No. 9344), a Fifth Amended Joint Plan of Reorganization on August 19, 2009 (ECF No. 9401), a Sixth Amended Joint Plan of Reorganization on September 9, 2009 (ECF No. 9482), a Seventh Amended Joint Plan of Reorganization on September 30, 2009, (ECF No. 9617), and finally an Eighth Amended Joint Plan of Reorganization on October 5, 2009 (ECF No. 9644). The District Court for the District of New Jersey and this Court commenced the confirmation hearing on September 30, 2009 and continued it on October 5, 2009, October 6, 2009, October 15, 2009, and November 7, 2009.

After the conclusion of the confirmation hearing on November 7, 2009, Mr. Heyman, the Plan Sponsor, died of natural causes. Subsequently, Ronnie Feuerstein Heyman, Mr. Heyman's wife, received all of the same signatory powers as Mr. Heyman pursuant to appropriate corporate resolutions.

By Order dated November 12, 2009, Chief Judge Garrett Brown of the District Court for the District of New Jersey and this Court jointly approved the Debtors' Eighth Amended Joint Plan of Reorganization which became effective November 17, 2009 ("Confirmation Order"). *See* Confirmation Order, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 9787; *see also In re G-I Holdings, Inc.*, 420 B.R. 216 (D.N.J.2009).

**F. The Housing Authority Claim**

The Housing Authority filed its proof of claim, dated October 10, 2008, on October 13, 2008 for asbestos property damage in the amount of $500 million to pay for the remediation of

Housing Authority owned housing complexes and buildings where, it is alleged, asbestos-containing products originally manufactured, mined, distributed, and sold by Debtors or its predecessors-in-interest were installed. The Housing Authority further alleges that it incurred costs necessary to abate the hazards by replacing such products with non-toxic substitutes. According to its Statement in support of the Housing Authority Claim, the legal bases for the claim include, *inter alia*, laws of the State of New York and New Jersey permitting property damage claims based on causes of action including negligence, breach of warranty, nuisance, restitution, and indemnity. NYCHA asserts it has incurred costs necessary to abate the hazards caused by G-I's products, which include removing tens of millions of square feet of non-friable asbestos-containing floor tiles, roofing materials, and insulation materials. On November 17, 2008, the Housing Authority submitted a First Supplemental Submission, which included additional documents establishing that Housing Authority buildings were constructed with asbestos containing materials, such as vinyl asbestos floor tile ("VAT"), roofs, thermal system insulation materials, and products manufactured by the Debtors' predecessors and other companies. Supplemental documentation filed by the Housing Authority indicates that the alleged asbestos-containing products that are the subject of the claim are non-friable asbestos-containing floor tiles that the Housing Authority installed in some of its buildings.

On December 10, 2008, G-I objected to NYCHA's Proof of Claim on the basis that NYCHA's claims have long since been time-barred, and NYCHA was aware of the purported damage to its buildings from the asbestos containing materials ("ACM") long before January 5, 1998. Objection to N.Y.C. Hous. Auth. Proof of Claim No. 1517, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 8625. G-I contended that, pursuant to N.Y.C.P.L.R. § 214-c, the applicable statute of limitations related to claims sounding in tort is three years, and the cutoff

date for such claims based on G-I Holding's Petition Date of January 5, 2001, was January 5, 1998. *Id.*

On December 14, 2010, this Court entered a decision ("2010 Opinion") on G-I's Objection and determined NYCHA's tort based claims, including negligence, personal injury, and/or property damage, were time-barred, holding that NYCHA should have been aware of the presence of ACM in its buildings before January 5, 1998 due to the "widespread public awareness of the dangers of asbestos." *In re G-I Holdings, Inc.*, 443 B.R. at 665. In so ruling this Court examined New York statute of limitations including N.Y.C.P.L.R. § 214(4). *See id.*

In the 2010 Opinion this Court also held that:

1. The applicable statute of limitations for common law indemnification based on unjust enrichment is six years under New York law, and accordingly, the Housing Authority's indemnification claim must survive this Motion to Disallow because the accrual date of the claim is an issue of fact which remains to be determined.

2. The claims for common law indemnification will survive this Motion to Dismiss because the movant has alleged facts that if true would give rise to such claim.

3. The applicable statute of limitations for common law true restitution based on unjust enrichment is six years under New York Law, and accordingly, the Housing Authority's true restitution claim must survive this Motion to Disallow as time-barred because the accrual date is an issue of fact which this Court must determine.

4. The claims for common law true restitution will survive this Motion to Dismiss because the movant has alleged facts that if true would give rise to such claim.

*Id.* at 666-71.

In its 2010 Opinion, this Court did not dismiss NYCHA's claims for common law indemnity but rather held the following allegations made by NYCHA could support a claim for equitable indemnity, if proven:

> VAT is inherently dangerous to tenants, that Debtors are responsible for the wrongdoing, that the dangers of VAT gave rise to a duty to abate VAT in the interests of public safety, that the Housing Authority has borne the costs of the abatement, and that the cost of the abatement should have been borne by the Debtors.

*Id.* at 669.  With that, this Court determined NYCHA would have an opportunity to present further proofs as to the following issues of fact:

> The actual dangers of VAT and the urgency of the public health risk, the dates that expenditures were made by the Housing Authority, the required duties of the Housing Authority and Debtors to tenants, and the reasonable quantum of abatement costs that should have been borne by Debtors.

*Id.*

In its 2010 Opinion this Court also did not dismiss NYCHA's claims for common law true restitution but rather held that the following allegations made by NYCHA could support a claim for common law true restitution if proven:

> VAT is inherently dangerous to tenants, that Debtors are the source of the VAT, that the dangers of VAT gave rise to a duty to abate VAT in the interests of public safety, that NYCHA has borne the cost of abatement, and that that cost should have been borne by the Debtors instead.

*Id.* at 671.  With that this Court determined NYCHA would have an opportunity to present further proofs as to the following issues of fact:

> The actual dangers of VAT and the urgency of the public health risk, the dates that expenditures were made by the Housing Authority, the required duties of NYCHA and the Debtors to tenants and the reasonable quantum of abatement costs that should have been borne by the Debtors.

*Id.*

This Court left two issues open for later resolution upon a more developed factual record: first, whether NYCHA is able to establish the factual elements essential to its equitable causes of action thereby demonstrating that they are not merely recast tort claims; and second, whether NYCHA's remaining causes of action are barred by laches due to NYCHA's delay in bringing them. *Id.*

With respect to NYCHA's proof of claim, the parties entered into a "Stipulation of Facts dated December 3, 2012," whereby they stipulated and agreed that:

> 1. Prior to September 1981, G-I's predecessors-in-interest, including the Ruberoid Company ("Ruberoid"), GAF Corporation, Matico, and Mastic Tile Company, manufactured and sold, among other flooring products, vinyl asbestos floor tile ("VAT") and asphalt asbestos- containing floor tile.

> 2. From approximately 1928 through 1981, GAF Corporation, or its predecessor by merger, Ruberoid, manufactured and sold, among other roofing products, asbestos-containing roofing materials, including felts, coatings, and cements.

> 3. Beginning in the early 1940s, Ruberoid developed Calsilite, an asbestos-containing industrial thermal insulation product, which it manufactured and sold from 1949 until 1971. Ruberoid also developed and manufactured asbestos-free Calsilite prior to the 1971 closing of the Calsilite plant. Calsilite was an industrial high-temperature insulation product.

> 4. From approximately 1935 through March 1975 GAF Corporation or its predecessor by merger, Ruberoid, owned and operated an asbestos mining facility in Vermont and produced asbestos fiber for use in both their own products and those manufactured and sold by other companies.

> 5. Title 15, Chapter 1 of the Asbestos Control Program Asbestos Rules and Regulations, issued by the Bureau of Environmental Compliance of the New York City Environmental Protection Bureau, requires that air sampling be conducted before, during, and after abatements of asbestos-containing materials located in the interior of structures. The number of samples to be taken within and near the work area depends upon the scope of the project. Title 15 ("Title 15"), Chapter 1, §§ 1-41–1-43, at 37–43. Similarly, Part 56 of Title 12 ("Title 12") of the Official Compilation of Codes, Rules and Regulations of the State of New York ("Official Compilation") (12 NYCRR Part 56), at 56-4.9(a) and 56-6.2(a)–(c) requires air sampling before, during, and after many asbestos abatement projects, depending again on the scope of the project.

6. NYCHA is obligated to comply with applicable federal, state, and New York City rules and regulations in performing asbestos abatements.

7. Title 15 defines "Disturb" as "any action taken which may alter, change, or stir, such as but not limited to the removal, encapsulation, enclosure or repair of asbestos-containing material." (§ 1-02).

8. Title 12 defines "Disturbance" as "[a]ny activities that disrupt the matrix of ACM[2] or PACM[3] or generate debris, visible emissions or airborne asbestos fibers from ACM or PACM. This includes moving of friable asbestos-containing material from one place to another." (§ 56-2.1(ax)).

9. Left "undisturbed"—or, in other words, when a building or apartment is not undergoing repair, renovation, alteration, or demolition work that requires removal of ACM—it is NYCHA's position that intact, undamaged ACM in NYCHA buildings do not pose a health or safety hazard to persons in the buildings. When repairing ACM that are not intact and undamaged, and when such renovation, alteration, demolition, or abatement work is occurring, NYCHA implements the abatement procedures required by applicable New York City, state, and federal laws, regulations, and rules, adopted and implemented to prevent asbestos fibers from entering the ambient air. When NYCHA learns that it needs to disturb ACM to make repairs or renovations to NYCHA buildings or to the components thereof, it complies with the procedures described in Paragraph 9.

10. Attached hereto as Exhibit 1 is a true and correct copy of NYCHA's Handbook for Residents of the New York City Housing Authority.

11. NYCHA is not required by any law or regulation to conduct inspections of apartments or building interiors to determine if ACM are present, except as a prelude to undertaking repair, renovation, alteration, demolition or abatement work as required by the local, state and federal regulations with which it must comply. NYCHA conducts air testing or bulk sampling to determine the presence of asbestos fibers in the ambient air or in materials in the buildings only when there has been disturbance of ACM or PACM, or when NYCHA performs repairs, renovations, demolitions, or other work that will disturb ACM or PACM. The only air sampling results that NYCHA possesses purportedly showing concentrations of airborne asbestos fibers above permissible exposure limits ("PEL") were obtained within containment areas erected during abatements of ACM, and therefore those concentrations did not represent any actual hazard to NYCHA residents. (NYCHA Opposition to Motion to Compel, dated October 2, 2012, ¶ 30).

12. Intact floor tile does not spontaneously release asbestos fibers into the air. (*See* Ewing Aff. ¶ 7). And NYCHA's policy of layering new floor tile upon old

---

[2] ACM is "Asbestos-Containing Materials."
[3] PACM is "Presumed Asbestos-Containing Materials."

floor tile has eliminated the chance of hazardous releases of asbestos fibers and exposures due to improperly performed abatement projects. (*Id.* ¶ 5).

13. Pursuant to a policy that has been in place since approximately 1989, NYCHA replaces asbestos containing floor tile in vacated apartments only when (a) an apartment already has three layers of floor tile and requires a new layer of floor tile; or (b) NYCHA determines that at least 10 square feet of the floor tile within the apartment is damaged. (*See* NYCHA Memorandum GM-3766 authored by Gloria Finkelman, Deputy General Manager for Operations, dated July 26, 2010, NYCHA-8314–20, a true and correct copy of which is attached hereto as Exhibit 2). Furthermore, NYCHA repairs or replaces ACM when it determines that they are damaged or no longer intact. ACM are also removed during the course of capital improvement projects including, but not limited to, common areas, which removals are performed in accordance with applicable laws and regulations.

14. When removing asbestos containing floor tiles from NYCHA apartments, NYCHA and/or its contractors implement the abatement procedures required by applicable New York City, state, and federal laws, regulations, and rules, adopted and implemented to prevent asbestos fibers from entering the ambient air. NYCHA conducts air sampling during and after the removal of asbestos containing floor tile from apartments to confirm that an apartment is safe for re-occupancy.

15. It is NYCHA's position that in-place and undisturbed asbestos containing roofing products do not pose an exposure risk to NYCHA tenants or employees. (*See* Ewing Affidavit ¶ 16). NYCHA abates asbestos containing roofing only if it is no longer intact, or NYCHA determines it is damaged, or such removal is required in connection with renovation or maintenance activities.

16. When removing asbestos containing roofing products from its buildings, NYCHA and/or its contractors implement the abatement procedures required by applicable New York City, state, and federal laws, regulations, and rules, adopted and implemented to prevent asbestos fibers from entering the ambient air.

17. Calsilite pipe and block insulation was used for high temperature applications, such as high pressure steam lines and equipment.  The products claimed by NYCHA to be Calsilite pipe and block insulation are located in boiler and mechanical rooms of NYCHA buildings.

18. NYCHA manages asbestos containing pipe and block insulation in accordance with federal, state and local regulations.  Those regulations do not mandate the removal of intact, undamaged, or undisturbed asbestos containing pipe and block insulation from NYCHA buildings.

19. NYCHA does not regard the presence of undamaged asbestos containing pipe and block insulation as creating a hazard to its tenants and employees.  NYCHA

removes and replaces asbestos containing pipe and block insulation only if NYCHA determines it is damaged or if removal is required in connection with renovation or maintenance activities. (*See* Ewing Aff. ¶ 17).

20. When removing asbestos containing pipe and block insulation from its buildings, NYCHA and/or its contractors implement the abatement procedures required by applicable New York City, state, and federal laws, regulations, and rules, adopted and implemented to prevent asbestos fibers from entering the ambient air.

Stipulation Between G-I Holdings, Inc. & N.Y.C. Hous. Auth., re: Stipulation of Facts, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10740 ("Stipulation of Facts").

G-I's Motion for Summary Judgment on NYCHA's Claims for Equitable Indemnity and Restitution:

On December 15, 2014, G-I filed a Motion for summary judgment on NYCHA's causes of action for indemnity and restitution. Motion for Summary Judgment, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10894. Accompanying the motion, G-I filed a Statement of Undisputed Material Facts In Support of the Summary Judgment Motion. G-I makes three main arguments in support of its position:

(1) NYCHA cannot make the factual or legal showing necessary to sustain claims for equitable indemnity and restitution;

(2) NYCHA's causes of action for equitable indemnity and restitution are recast time-barred tort claims; and

(3) NYCHA's equitable claims are precluded by laches and should be dismissed. *Id.*

Addressing its initial position, G-I first asserts NYCHA cannot support its allegation that VAT or any other ACM installed in its building are inherently dangerous to its tenants. G-I claims NYCHA admitted it does not regard VAT as inherently dangerous to tenants and that

VAT poses no public health risks unless damaged. *Id.* at 21-22. G-I asserts NYCHA's 30(b)(6)

witness, Brian Clarke, was not aware of a single instance in all of NYCHA's developments

where ACM are currently endangering the health of NYCHA's tenants and conceded that

NYCHA represents to all tenants that its apartments are safe and habitable. *Id.* (citing Transcript

of Deposition of Brian Clarke dated Dec. 11, 2013 at 99:21-100:2, *In re G-I Holdings, Inc.*, Case

No. 01-30135, ECF No. 10896-5 ("Clarke 12/11/13 Deposition"); Transcript of Continued

Deposition of Brian Clarke dated Dec. 12, 2013 at 138:21-140:6, *In re G-I Holdings, Inc.*, Case

No. 01-30135, ECF No. 10896-10 ("Clarke 12/12/13 Deposition")). G-I contends NYCHA's

documents show VAT only becomes a hazard when mechanical forces break the tile into small

pieces. *Id.* at 22. G-I continues that NYCHA does not routinely test the materials or air in its

buildings, even within apartments with an exposed layer of VAT, unless there is fear VAT or

other ACM are causing harm. *Id.* G-I goes on that NYCHA's VAT policies demonstrate VAT

is not removed from apartments to address a public health risk, but rather is generally removed

from vacant apartments when floors must be replaced in the ordinary course. *Id.* (citing Clarke

12/12/13 Deposition, *supra*, at 116:21-117:4). G-I claims NYCHA will deny a tenant's request

for the VAT to be removed if the criteria in its governing policies, GM-3766,[4] do not compel

removal, and that certain damaged VAT will be left in place if not considered a high priority. G-

I contends NYCHA is aware that its tenants have lived with ACM, including exposed layers of

VAT, in their apartments for decades and will continue to do so for "more than a hundred years

to come." *Id.* (citing Clarke 12/11/13 Deposition, *supra*, at 146:23-147:6). G-I claims

---

[4] GM-3685 was an internal policy of NYCHA issued on March 6, 2002 that governed the removal of VAT in its buildings which referred to the Environmental Protection Agency's policy that "floor tile is not considered hazardous until it has lost its structural matrix and has been reduced to many small pieces[,]" and removal of VAT is only required when necessary as specified in the stipulation of facts. *Id.* at 10-11. (citing GM-3685, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10896-8). On July 26, 2010, a memo labeled GM-3766 replaced GM-3685. G-I asserts that GM-3766 maintained the same approach to removal of VAT, and continued to echo the EPA's guidance on when VAT can be hazardous – when broken into many small pieces. *See id.* (citing GM-3685, *supra*; GM-3766, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10896-9).

NYCHA's tenant handbook fails to inform residents that VAT or other ACM are a danger if left in place and advise on actions they should take to avoid ongoing VAT dangers. *Id.* at 23 (citing Handbook for Residents of the N.Y.C. Hous. Auth., *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10896-21).

G-I next argues NYCHA cannot support its allegation that dangers of VAT give rise to a duty to abate VAT in the interests of public safety. *Id.* G-I argues NYCHA admitted its duty to remove VAT derives from statutes and regulations, none of which require removal of undamaged ACM, and therefore does not give rise to a duty on the part of NYCHA or G-I to do so. Further, G-I claims GM-3766 shows that NYCHA removes VAT only in certain situations that relate to economic feasibility, rather than safety, such that substantial floor repairs needed present an "opportunity" to remove the VAT rather than an imperative. *Id.* (citing Clarke 12/12/13 Deposition, *supra*, at 64:17-20).

Third, G-I argues NYCHA has failed to establish the elements of its equitable indemnity or restitution claims. *Id.* at 24. G-I claims NYCHA has failed to disclose instances where residents became ill from VAT or other ACM, and thus NYCHA has not shown it incurred liability for which it should be indemnified. *Id.* (citing *Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA*, 294 A.D.2d 93, 99, 743 N.Y.S.2d 599 (2002), *aff'd on other grounds*, 100 N.Y.2d 202, 791 N.E.2d 398 (2003)). Moreover, G-I argues the relevant regulations here impose precautionary requirements upon NYCHA and its contractors, not upon former product manufacturers, when removing VAT. *Id.* (citing *Germantown*, 294 A.D.2d at 98-99). Thus, G-I concludes it has no duty for removal of the products. *Id.* at 24-25. G-I additionally claims NYCHA cannot recover in restitution for expenses prior to the Petition Date because it failed to demonstrate the elements of hazard or urgency and would be unable to

recover on "anticipated costs" which G-I posits comprise most of its claim, citing this Court's 2010 Opinion which found that restitution does not "extend to future costs." *Id.* at 25 (citing *In re G-I Holdings, Inc.*, 443 B.R. at 670).

Fourth, G-I argues NYCHA cannot obtain from G-I equitable indemnity and restitution for "incremental costs" incurred by NYCHA for taking precautionary measures, such as negative air pressure installations and air monitoring, to remove ACM from its buildings. *Id.* G-I argues NYCHA should not be permitted to utilize G-I's products for years and then charge G-I for such regulatory compliance costs, especially when NYCHA elects to remove the VAT at its own discretion. *Id.* Relying on *Chase Manhattan Bank, N.A. v. T & N plc*, G-I argues NYCHA represented for decades that the ACM did not pose a threat, and to now find in favor of NYCHA would transform suppliers of materials into insurers for each time a building owner incurred costs to improve safety of its property or remedy potentially hazardous materials. *Id.* at 26 (citing 1996 WL 603934, at *1 (S.D.N.Y. Oct. 22, 1996)). G-I continues that NYCHA's substantial delay in taking action shows that removal of the VAT is not immediately necessary. *Id.* Therefore, G-I argues that the costs of complying with such regulations cannot be shifted under equitable indemnity or equitable restitution where NYCHA offers no proof that VAT is inherently dangerous to residents if left in place. *Id.* at 27.

G-I contends that regulatory requirements imposed on NYCHA and its contractors are only triggered when NYCHA elects to remove VAT from an apartment and removal has not and cannot be shown as necessary to protect tenants from the risk of imminent harm during the removal process. *Id.* Relying on Dr. Brent Finley's December 15, 2014 Declaration ("Finley Declaration"), Dr. Finley, a board certified toxicologist, states that in summarizing certain air sampling data collected by contractors for NYCHA during removal of ACM, principally VAT

from NYCHA apartments, approximately 200,000 individual air samples taken from NYCHA's properties in connection with removal of ACM show approximately 99.9% recorded asbestos fiber concentrations below the .01 fibers per cubic centimeter (f/cc) "clearance" level established by EPA in 1985, at which EPA, New York State, New York City, and NYCHA permit a tenant to re-occupy an apartment. *Id.* (citing Finley Declaration at ¶¶ 4, 10-11, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10895). In other words, G-I argues during removal of VAT, only a miniscule number of air samples, some 139, exceed the clearance level, including within the removal work area itself. *Id.* at 27-28 (citing Finley Declaration, *supra*, at ¶ 11).

G-I's second argument is that NYCHA's causes of action for equitable indemnity and restitution are merely recast time-barred tort claims. *Id.* at 28. G-I claims that for NYCHA to prevail it must establish an independent duty on the part of G-I to NYCHA that does not arise from these time-barred claims. *Id.* (citing *MRI Broadway Rental, Inc. v. U.S. Mineral Prod. Co.*, 242 A.D.2d 440, 445, 662 N.Y.S.2d 114 (1997), *aff'd*, 92 N.Y.2d 421, 704 N.E.2d 550 (1998) ("*MRI I*"); *888 7th Ave. Assocs. Ltd. P'ship v. AAER Sprayed Insulations, Inc.*, 199 A.D.2d 50, 51, 605 N.Y.S.2d 25 (1993)). Relying upon *Germantown Central School District v. Clark, Clark, Millis & Gilson, AIA*, G-I argues NYCHA's relief is premised upon recast tort claims arising from duties associated with time-barred claims because NYCHA cannot show that it, NYCHA, had a duty to remove the ACM in the buildings, NYCHA permits tenants to live with ACM for years or decades, refuses tenant requests for removal, has stipulated the products are not hazardous in place, cites no regulations imposing a duty to remove the ACM, and makes no showing that it is or has become liable to third parties due to the purported presence of ACM in NYCHA's buildings. *Id.* at 28-29. G-I thus concludes NYCHA's claims are attempts to recast otherwise meritless claims against G-I that have long since been time-barred. *Id.* at 30. To the

extent NYCHA argues G-I's predecessors intentionally or negligently sold defective products, G-I asserts that such claim is breach of a time-barred, tort-based duty. *Id.* at 29.

G-I's third argument is NYCHA's equitable claims should be dismissed based on laches. *Id.* at 30. G-I claims NYCHA delayed for over two decades in bringing its causes of action when it had the means to determine the facts underlying its claims since 1985 at the latest. *Id.* (citing Clarke 12/11/13 Deposition, *supra*, at 143:25-144:6, testifying that in 1985 NYCHA had the means to identify G-I or its predecessors as the party who sold it asbestos-containing products). G-I contends it has been highly prejudiced because many witnesses will be unreachable, elderly, or deceased as well as suffer from impaired memories, especially since G-I's predecessor ceased manufacturing ACM in 1981. *Id.* at 31 (citing *Arroyo v. Bd. of Educ. of the City of N.Y.*, 25 Misc. 3d 1229(A), 906 N.Y.S.2d 770 (Sup. Ct. 2009)). G-I continues that should this matter proceed to trial, central issues will relate to the manufacturing and testing processes that relate to the binding of asbestos fibers within VAT, which is why they are not dangerous when undisturbed. *Id.* at 30. G-I goes on that it would be substantially prejudiced during the product identification phase of discovery because Armen Boranian ("Boranian"), former manager of GAF's floor tile manufacturing, who historically served as G-I's product identification expert witness, died in 2011 at age 87. *Id.* G-I argues Boranian's involvement is vital to distinguish VAT sold by G-I's predecessors and that of other manufacturers; however, due to NYCHA's substantial delay, he will be unavailable to perform site inspections or advise G-I on the origin of the VAT in NYCHA buildings. *Id.* at 31-32.

Lastly, G-I claims NYCHA has disposed of immense amounts of evidence over the past thirty years, including more than six million square feet of VAT from 1999 through 2009, which precludes G-I from ever examining these materials to determine whether or not the VAT was

manufactured by G-I's predecessors. *Id.* at 32. G-I asserts such action is particularly prejudicial since NYCHA intends to hold G-I liable for every ACM removal from 1998 through approximately 2123 while impeding G-I's ability to defend itself by destroying crucial evidence. *Id.* (citing *Cont'l Cas. Co. v. Emp'rs Ins. Co. of Wausau*, 60 A.D.3d 128, 138, 871 N.Y.S.2d 48 (2008)). Based on the above, G-I requests summary judgment dismissing NYCHA's remaining claims for equitable indemnity and restitution and disallowing NYCHA's proof of claim in its entirety.


NYCHA's Opposition to G-I's Motion for Summary Judgment:

On February 9, 2015 NYCHA filed an opposition to G-I's motion for summary judgment in which it makes nine arguments. Brief in Opposition to G-I Holdings' Motion for Summary Judgment, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10909 ("NYCHA's Opposition to Summary Judgment"). First, NYCHA argues G-I's products in NYCHA buildings are inherently dangerous. *Id.* at 4. NYCHA claims its duty is not "removal" of intact and undamaged VAT, but rather "abatement" procedures when disturbances caused by removal or repairs occur. *Id.* NYCHA states that its decisions to "remove" VAT are based on a policy providing that, upon turnover of an apartment, NYCHA removes and replaces VAT either when the apartment has three (3) layers of floor tile and requires a new layer of floor tile or where the floor tile within the existing apartment has ten (10) square feet or more of damaged tile. *Id.* (citing GM-3766, *supra*). As to pipe insulation and boiler block ("Calsilite") and roofing products, NYCHA removes them when they are damaged or need replacing in connection with maintenance or renovations. The inherent "hazards" of these materials, NYCHA urges, manifest themselves the instant each is disturbed for removal. *Id.* at 4-5 (citing Affidavit of William M.

Ewing, CIH dated Feb. 1, 2012 at ¶ 18-19, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF

No. 10896-8 ("Ewing 2/1/12 Affidavit") (stating that "in the absence of precautionary safety

procedures used by NYCHA, each removal of VAT, asbestos containing TSI (thermal system

installation) and roofing would cause the asbestos fibers contained in these products to

immediately be released into the ambient air of the buildings, settling on surfaces and

continuously re-entrained back into the air breathed in by persons in the buildings" and that

"[NYCHA's] approach to the management of these asbestos-containing materials is both

reasonable and prudent and the use of required protective measures are immediately necessary to

avoid and/or reduce human exposures to the hazards which are associated with breathing

airborne asbestos fibers which are released from these products each time a removal project is

done")). NYCHA treats all ACM as dangerous products, warning its tenants not to disturb them

and never disturb them without adequate protections. *Id.* at 5. New York State rules and

regulations defines abatement as "[a]ny portion of an asbestos project that includes procedures to

control fiber release from asbestos-containing materials …. [which] includes removal,

encapsulation, enclosure, repair, handling of asbestos material that may result in the release of

asbestos fiber." *Id.* at 5 (citing New York City, N.Y., Rules, Tit. 15, § 56-2.1). NYCHA claims

G-I confuses these two principles because abatement goes beyond removal wherein procedures

and processes must be implemented to remove VAT. *Id.* It is for the costs associated with this

practice that NYCHA seeks indemnification and restitution because when a removal is done for

any reason NYCHA must perform both its duty and G-I's duty to pay for abatement

"procedures." *Id.* at 5-6.

NYCHA claims G-I incorrectly assumes that because no laws or regulations require

NYCHA or any other building owner to "remove" undisturbed VAT, NYCHA cannot prove the

dangers of VAT lead to a duty to abate. *Id.* at 4. NYCHA argues it treats all ACM as hazardous even though the threat of harm is only realized at the moment of disturbance causing fiber release. *Id.* at 6. NYCHA claims its concern for ACM is apparent through all the safety procedures and protections it employs when VAT is disturbed. *Id.* NYCHA further claims it instructs and trains its employees to deal with ACM safely and gives notice to its tenants of the presence of ACM while the material is intact and undamaged and during removal projects. *Id.* at 7 (citing Clarke 12/11/13 Deposition, *supra*, at 30-31, 239-41). NYCHA continues that G-I offers no expert or documentary evidence to prove that VAT is not inherently dangerous, where, on the contrary, scientific evidence shows VAT releases asbestos fibers when disturbed and New York City, the State of New York, and the federal government have all adopted laws predicated upon dangers associated with ACM when disturbed. *Id.*

Second, NYCHA argues its claims for "true" indemnity and restitution are independent causes of action and not recast tort claims. *Id.* NYCHA claims the arguments advanced by G-I based upon *888 7th Avenue Assocs. Ltd. P'ship v. AAER Sprayed Insulations, Inc.* have been rejected by *City of New York v. Lead Industries Ass'n, Inc.*, 222 A.D.2d 119, 644 N.Y.S.2d 919 (1996) ("*LIA III*") and *City of New York v. Lead Industries Ass'n, Inc.*, 182 Misc. 2d 835, 700 N.Y.S.2d 361 (Sup. Ct. 1999) ("*LIA IV*"). *Id.* NYCHA argues that the *LIA III* and *LIA IV* courts determined that "true" indemnity and restitution claims were different from tort claims even if both were based upon the same duty as other tort-based claims which were time-barred because a plaintiff holds a right to bring an action to recover damages which plaintiff was caused to pay as a result of defendant's breach of its duty to a third party. *Id.* (citing *LIA IV*, 182 Misc. 2d 835). The *LIA IV* court described the history of that case, including the holding and rationale of the appellate division in *LIA III*, in which that court stated that the *888 7th Avenue Assocs.* court

used obscure language unnecessary to the result. *Id.* at 8 (citing *LIA III*, 222 A.D.2d at 127).

NYCHA further claims *LIA IV* distinguished *MRI Broadway Rental, Inc. v. U.S. Mineral Products Co. ("MRI I")* which only addressed claims directly arising from injuries from exposure to toxic substances: negligence, product liability claims, etc., and contradicts G-I's reliance on it here determining that "true" restitution and indemnity claims do not arise from a party's exposure, but rather from a quasi-contractual obligation of the defendant to the plaintiff when the plaintiff has expended resources on behalf of exposed third parties, and those resources should have been expended by the defendant. *Id.* at 9 (citing *LIA IV*, 182 Misc. 2d at 840).

NYCHA also rejects G-I's reliance upon *Germantown* because the plaintiff in that case could not show a duty on defendants to students and employees because the "… defendants did not manufacture asbestos." *Id.* at 9-10 (citing 294 A.D.2d at 99). NYCHA contends the lack of duty in *Germantown* differentiates it from NYCHA's claim here where G-I's predecessors manufactured the ACM which have and will pose serious health risks to building occupants and breaches a "manufacturer's" duty under New York law. *Id.* NYCHA claims G-I has a duty to abate the ACM its predecessors manufactured and sold for installation in NYCHA buildings. *Id.* at 11-13 (relying upon, *inter alia*, *Judge Rotenberg Educ. Ctr., Inc. v. Blass*, 882 F. Supp. 2d 371 (E.D.N.Y. 2012); *New York v. W. Side Corp.*, 790 F. Supp. 2d 13 (E.D.N.Y. 2011); *Indep. Sch. Dist. No. 197 v. W.R. Grace & Co.*, 752 F. Supp. 286, 303-04 (D.Minn. 1990); *LIA III*, 222 A.D.2d at 128; *Phila. v. Lead Indus. Ass'n*, 1992 WL 23450, at *7 (E.D. Pa. Feb. 3, 1992), *aff'd*, 994 F.2d 112 (3d Cir. 1993); *City of N.Y. v. Keene Corp.*, 132 Misc. 2d 745, 505 N.Y.S.2d 782 (Sup. Ct. 1986), *aff'd*, 129 A.D.2d 1019, 513 N.Y.S.2d 1004 (1987)).

Third, NYCHA argues the elements of its equitable indemnity and restitution claims are supported by more than sufficient proof to deny G-I's summary judgment motion and grant its

own motion for partial summary judgment as to liability, citing this Court's 2010 Opinion that identified thirteen (13) elements of NYCHA's equitable restitution and indemnity claims that if properly evidenced would support approval of its claims. *Id.* at 13. *See infra* at 30-31.

Fourth, NYCHA claims G-I's arguments are not supported by New York law. *Id.* NYCHA claims G-I's reliance upon *Chase Manhattan Bank* is misplaced in that G-I argues that because NYCHA permitted tenants to occupy the buildings, NYCHA cannot claim that VAT and other ACM are inherently dangerous. NYCHA's Opposition to Summary Judgment, *supra*, at 13-14. NYCHA contends ACM will inevitably be disturbed over time by way of, *inter alia*, renovations, updates, and repairs, which will cause release of fibers necessitating abatement procedures. *Id.* at 14 (citing Affidavit of William M. Ewing, CIH dated Jan. 26, 2015 at ¶¶ 7, 16, 17, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10909-3 ("Ewing 1/26/15 Affidavit")).

> Intact floor tile does not spontaneously release asbestos fibers into the air. Asbestos fiber release from floor tile also does not occur as a result of air erosion or vibration. Asbestos fiber release does occur from floor tile due to mechanical forces such as drilling, sawing, sanding, or abrading the material. Asbestos fibers are also released during the removal of floor tile... Asbestos-containing roofing felts are abated in accordance with federal OSHA, EPA, State of New York, and City of New York regulations. In-place and undisturbed the roofing does not pose an exposure risk. However, the removal process does disturb and release asbestos fibers and, therefore, government regulations, adopted as the National Emission Standards for Hazardous Air Pollutants ("NESHAPS"), as well as State and City rules and regulations, require the use of safety precautions which must be followed when removing asbestos-containing roofing. NYCHA has a policy to remove the roofing in accordance with the rules and regulations when it is necessary to replace them... Asbestos-containing pipe and block insulation was inspected at several locations in NYCHA facilities. Some of these materials were represented as being Calsilite asbestos-containing insulation. It is the policy of NYCHA to manage these materials in accordance with federal, state and local regulations. In order to avoid and/or reduce human exposures to airborne asbestos fibers, the asbestos-containing insulation is abated as an OSHA Class I material and EPA

Regulated Asbestos-Containing Material (RACM) when necessary due to its damaged condition or for renovation or maintenance.

Ewing 1/26/15 Affidavit, *supra*, at ¶¶ 7, 16, 17.

NYCHA states that it has documented more than 50 million square feet of G-I's predecessors' product installed throughout thousands of apartments, but could not evacuate large complexes to completely eliminate VAT in one fell swoop, putting thousands of low income tenants on the street. Accordingly, NYCHA keeps the materials intact and undamaged until vacancies take place, giving the opportunity to safely abate them. NYCHA's Opposition to Summary Judgment, *supra*, at 15, n. 4. NYCHA asserts that permitting residents to live in its buildings and declaring the products to be inherently dangerous are not mutually exclusive positions. *Id.* at 15. NYCHA continues that the threats of harm are constantly present, capable of being manifested at any moment. *Id.*

In support of its position that it should not be liable for indemnity and restitution claims, G-I relies on *Chase Manhattan Bank* where the court denied Chase's claim for costs of asbestos removal, finding that if Chase's position was correct, "any costs incurred by a building owner to promote safety would be recoverable from another party who had supplied potentially hazardous materials or substances..." *See* Motion for Summary Judgment, *supra*, at 26. However, NYCHA asserts G-I's reliance on this statement of the court in *Chase Manhattan Bank* ignores the principles of both restitution and indemnity – that the party enriched by its own wrongdoing should bear responsibility for the costs incurred to prevent exposures to hazardous materials that were used in products which the wrongdoer (1) knew when disturbed would expose people, and (2) neither tested nor warned its customers of the hazards. NYCHA's Opposition to Summary Judgment, *supra*, at 15. NYCHA argues it is not incurring costs just "to promote safety," but to actively prevent exposures to cancer-causing materials. *Id.* at 16. NYCHA rejects G-I's

25

argument that NYCHA does not treat the removal of ACM as immediately necessary. *Id.* NYCHA claims it takes immediate action to protect the ambient air from release of asbestos fibers from these products every time it performs work that will disturb ACM. *Id.*

Fifth, NYCHA argues the Finley Declaration only proves that the required costly abatement procedures used and paid for by NYCHA are effective. *Id.* at 17. NYCHA claims the Finley Declaration, which provides that during the removal of VAT, only a minute amount of air samples exceed the clearance level, ignores NYCHA's use of protective procedures which keeps the levels of asbestos in the air to a much lower level than it would have been without such procedures. *Id.* NYCHA notes that William M. Ewing, CIH ("Ewing"), an expert witness for NYCHA, reviewed the Finley Declaration and stated that the "data demonstrate[s] that the asbestos abatement methods employed by NYCHA have been effective in keeping fiber concentrations low during and following abatement activities." *Id.* at 17 (citing Ewing 1/26/15 Affidavit, *supra*, at ¶ 6). Ewing goes on to note that NYCHA's "management of [ACM] is both reasonable and prudent, and use of the required protective measures are immediately necessary to avoid and/or reduce human exposures to the [asbestos] hazards which are associated with breathing airborne asbestos fibers which are released from these products each time a removal project is done," and that "[the Finley Declaration] is inaccurate regarding its reference to a 0.01 f/cc 'Clearance Level' established by EPA in 1985 which represents the level when the EPA permits residents to occupy apartments....[T]here is not any EPA regulation that sets any clearance level for residents to occupy apartments and never has been." *Id.* at 18 (citing Ewing 1/26/15 Affidavit, *supra*, at ¶¶ 19, 20).

Sixth, NYCHA argues the hazards created by disturbance of G-I's ACM are recognized by government authorities at all levels and are confirmed by empirical studies. *Id.* at 19.

Moreover, NYCHA argues there are substantial studies that demonstrate ACM emit hazardous levels of asbestos fibers when disturbed, as set forth in its cross-motion for summary judgment discussed below. *Id.* at 19-20.    NYCHA claims G-I has offered no evidence to rebut the proposition that ACM are inherently dangerous when disturbed, which requires protective measures. *Id.* at 20.

Seventh, NYCHA argues G-I's comparison of NYCHA's lead-based paint ("LBP") and asbestos policies is a red herring. *Id.* G-I contends that NYCHA treats LBP as an immediate threat to residents, provides residents significantly more information, and takes affirmative steps to identify and abate LBP. *Id.* NYCHA claims G-I's attempt to point out differences in NYCHA's procedures with respect to LBP and asbestos is inapposite. *Id.* at 20-21. NYCHA asserts that although LBP hazards are different than ACM hazards, this distinction does not mean one substance is less serious than the other or that NYCHA treats one substance less seriously than the other. *Id.* at 21. NYCHA states differing regulations have been promulgated on the federal, state, and local levels, to safeguard against each substance, and NYCHA's precautionary procedures have been developed based upon the same. *Id.* NYCHA continues that because LBP requires different or more sampling, testing, tenant notification, or the like does not mean NYCHA treats ACM with any less concern and does not show ACM are not inherently dangerous and a threat to human health. *Id.* at 21-22 (citing GM-3758, NYCHA Memorandum titled "Lead-Based Painting Testing and Abatement," *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10896-25 ("GM-3758") (the policy for LBP based on Local Law 1 of 2004-the New York City Childhood Lead Poisoning Prevention Act and federal regulations); GM-3685, *supra* (the policy for VAT based on New York City Asbestos Rules and Regulations and New York Rules and Regulations); Ewing 1/26/15 Affidavit, *supra*, at ¶¶ 11, 12, 13).

Eighth, NYCHA argues G-I's laches argument is baseless. *Id.* at 22. NYCHA claims G-I has failed to identify a single witness other than Boranian who would be needed to testify about the nature of VAT. *Id.* at 23. NYCHA continues that G-I's anticipation of witnesses who are likely unavailable to testify due to delay is speculation and fails to meet the standard of a "particularized showing of demonstrable prejudicial delay." *Id.* (citing *In re Korman*, 2010 WL 889866 (Bankr. D.N.J. Mar. 8, 2010)). NYCHA further argues that it is doubtful Boranian would have qualified as an "expert" or been an effective product identification witness because (1) he could only testify about whether a product was made by Ruberoid or GAF if it was produced after 1963, the year he started working with Ruberoid, (2) he only worked in manufacturing until 1966 when he was appointed to manager of research, leaving the manufacturing division until he was appointed manager of manufacturing in 1973, and (3) he would only be able to testify on behalf of 9 of nearly 100 complexes in which the installation of Matico/Ruberoid GAF VAT has been documented by NYCHA. *Id.* at 23-24 (citing Transcript of Deposition of Armen G. Boranian, P.E. dated Apr. 14-16, 1992 at 532, 564, 583-85, *John L. May, Archbishop of St. Louis v. AC&S, Inc.* No. 88-0386-C-5 (E.D. Mo.)). Moreover, NYCHA claims Boranian would have been an unreliable witness because his ability to identify ACM produced by G-I's predecessors is, according to him, "all guesswork. Sometimes[]" and that he "can't exactly specify who's [sic] other tile it is, but [he] knows it's not ours." *Id.* at 24 (citing Deposition of Armen G. Boranian, *Adams-Arapahoe Sch. Dist. No. 28-J v. Celotex Corp.*, No. 84-C-1974 (D. Colo.) ("Boranian Deposition")). NYCHA claims such an unscientific and vague methodology would not support admission of Boranian's testimony as an expert under Federal Rule of Evidence 702. *Id.* at 25.

Furthermore, in response to G-I's argument that it will not be able to examine the VAT due to its removal by NYCHA, NYCHA claims there is still sufficient installations of VAT in-place in every complex for G-I to inspect and that NYCHA does removals of VAT when apartments become vacant and/or when sufficient damage is observed to necessitate the removal and replacement of the tile. *Id.* (citing Affidavit of Bane Bermudez dated Feb. 5, 2015, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10909-6 ("NYCHA removes and replaces VAT when there are vacancies and VAT is damaged or three (3) layers of floor tile are present. NYCHA has not removed and replaced all VAT in any one complex")). Additionally, NYCHA argues that the majority of VAT installed in NYCHA complexes still remains for removal which will occur over many years to come. *Id.* (citing Clarke 12/11/13 Deposition, *supra*, at 147).

Ninth, NYCHA argues it is entitled to future restitution damages. *Id.* at 26. NYCHA claims traditional notions of restitution alone will do little to make it whole from the abatement procedures it must implement, and G-I will be unjustly enriched for each dollar NYCHA spends moving forward, amounts of which can be determined. *Id.* at 26-27. Consequently, NYCHA requests the Court determine the present value of the future stream of predictable expenses to serve as recompense for G-I's failure to undertake the necessary precautions to keep its buildings safe from the products made and sold by G-I's predecessors. NYCHA urges that this Court can concisely compute the amounts that will need to be spent per foot of material based on the actual costs incurred to date which have been documented. *Id.* at 29. Based on the foregoing, NYCHA requests the Court deny G-I's motion for summary judgment based on disputed facts before the Court and award NYCHA partial summary judgment as to liability on its restitution and indemnity claims. *Id.* at 28-29.

<u>NYCHA's Cross Motion for Partial Summary Judgment as to Liability on its Restitution and</u>

<u>Indemnity Claims</u>:

On February 9, 2014, NYCHA also filed a cross motion for partial summary judgment as to liability on its restitution and indemnity claims.  Motion for Partial Summary Judgment as to Liability of N.Y.C. Hous. Auth., *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10910 ("NYCHA's Cross Motion").   NYCHA urges that this Court's 2010 Opinion sets forth the elements necessary for NYCHA to prevail on its claims for equitable restitution and indemnity as follows:

The Court listed elements which, if proven, would support allowance of these claims against the Debtors under NYCHA's claim for indemnity:

1) VAT is inherently dangerous to tenants;

2) The Debtors are the source of and responsible for the wrongdoing;

3) The dangers of VAT give rise to a duty to abate in the interests of public safety;

4) NYCHA has borne those costs; and

5) The cost should have been borne by Debtors.

The Court set forth the elements to be proven under NYCHA's claim for restitution against the Debtors as follows:

6) VAT is inherently dangerous to tenants;

7) The Debtors are the source of the VAT;

8) The dangers of VAT give rise to a duty to abate in the interests of public safety;

9) NYCHA has borne the costs; and

10) The cost should have been paid by Debtors.

*Id.* at 2.  Additionally, NYCHA urges the Court determined that to prevail on its restitution

claim, NYCHA must prove:

    11)  The actual dangers of VAT;

    12)  The urgency of the public health risk; and

    13)  The dates and reasonable costs incurred by NYCHA.

*Id.* at 2-3.  NYCHA argues there is no disputed issue of material fact as to each of these elements which entitles NYCHA to summary judgment as to liability on its equitable indemnity and restitution claims. *Id.* at 3.

    First, NYCHA argues breathing asbestos is inherently dangerous. *Id.* at 4. Debtors cite to several sources that articulate and declare the dangers of ACM including the New York State Asbestos Rules and Regulations in which the New York legislature has acknowledged "that exposure to asbestos fibers, a known carcinogenic agent, creates a serious risk to the public safety and health and that the public is more frequently exposed to these risks as a result of increasing number of rehabilitation reconstruction and demolition projects on buildings or structures containing asbestos or asbestos materials." *Id.* (citing 12 N.Y.C.R.R. Part 56-1.2(a) (2006)).  NYCHA further cites, among other federal statutes and regulations, to the Environmental Protection Agency's Asbestos National Emission Standards for Hazardous Air Pollutants, 40 C.F.R. Parts 61 and 63, and *United States v. Reserve Mining Co.*, 380 F. Supp. 11, 41 (D. Minn. 1974) to support that there is no safe concentration or limit of asbestos fibers that are deemed safe for human exposure. *Id.* at 5-6.

    Second, NYCHA claims asbestos fibers will be released into the ambient, breathable air during removal and other disturbances of VAT, Calsilite, and asbestos-containing roofing materials. *Id.* at 7. NYCHA identifies a 1996 study entitled "Quantification of Fiber Releases for Various Floor Tile Removal Methods," (attached as Exhibit 8), conducted by a group of

occupational health science professionals (Crossman, Jr., R.N.; Williams, Jr., M.G.; Lauderdale, J.; Schosek, K.; Dodson, R.F.) that was undertaken to evaluate whether commonly used VAT removal procedures released asbestos fibers in the process. *Id.* The authors found, based on studies of the techniques employed in floor tile removal, that the data confirmed that "asbestos fibers are released in appreciable numbers during application of each of the techniques." *Id.* (citing Robert N. Crossman, Jr., et al., APPL. OCCUP. ENVIRON. HYG. 11(9) 1113, 1123 (1996)). Furthermore, NYCHA notes the authors conclude that "the data from the present study suggest that potentially respirable dust is created during floor tile removal and thus exposures occur for the workers and potentially others." *Id.* (citing APPL. OCCUP. ENVIRON. HYG. 11(9) at 1124). NYCHA contends the authors developed several procedures to follow when removing floor tile which both the City of New York and NYCHA employ in removing VAT. *Id.* NYCHA also cites a study entitled "Removal" in the September 1985 issue of "Asbestos Issues" (attached as Exhibit 12) in which the authors state:

> When left in place, well-maintained and undisturbed, these asbestos floor tile and mastic combinations perform their function well without posing a significant asbestos exposure hazard. However, if they are broken, cut, drilled or otherwise disturbed, as occurs during renovation or demolition, they can release asbestos fibers into the air and pose a potential health hazard. Because of this potential, asbestos floor tile and mastic should be kept under an asbestos operations and maintenance (O&M) program while in place. When it is intentionally or unintentionally disturbed, more drastic precautions should be followed.

*Id.* at 9 (citing William H. Spain, CSP, Nickolas P. Wickware, CSM, and William M. Ewing, Jr., CIH, *Removal*, ASBESTOS ISSUES, Sept. 1985).

Further, NYCHA lists several scientific studies that it claims show disturbances to Calsilite caused exposure to asbestos fibers, even when "wet methods" were utilized. *Id.* at 10. NYCHA argues the abatement procedures it must implement directly result from the failure of G-I's predecessors to address the hazardous conditions of the ACM when disturbed by repair and

removal, of which they had early knowledge. *Id.* at 11 (citing *id.* at 24-44, "*A Chronology of Corporate Knowledge and Acts of Suppression*").

NYCHA claims that, from 1928 until 1981, G-I's predecessor, GAF, manufactured asbestos-containing roofing materials including felts containing approximately 60% chrysolite asbestos by weight and paints used as coatings on roofs containing 10 to 20% chrysolite asbestos by weight. *Id.* NYCHA claims G-I represented, like its VAT, the asbestos fibers in the roofing materials were "locked in" and "bound into the products' organic matrix," however such materials, along with VAT, were never tested to determine if they would release asbestos fibers during foreseeable uses such as repairs, removal for replacement, or demolition. *Id.* NYCHA continues that G-I never produced any test, study, or empirical evidence showing that when these roofing materials are repaired or replaced, they do not emit asbestos fibers into the air that can thus enter the building through vents, doors, or windows or contaminate adjacent buildings and playgrounds. *Id.* NYCHA argues that the New York City Asbestos Rules and Regulations impose duties upon building owners, including NYCHA, when removing such roofing materials, which include insuring workers are properly licensed, implementing safety plans, requiring air and bulk sampling, noticing procedures, and specific abatement practices, among others. *Id.* at 11-12 (citing Asbestos Control Program, Asbestos Rules & Regulations, Title 15, Chapter 1 of the Rules of the City of New York, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10910-7 ("Asbestos Rules & Regulations")). NYCHA contends that in the absence of assiduous compliance with these rules, removal of asbestos-containing roof felts and paints would cause fibers to be released and migrate through openings in the buildings, causing great risk of harm to building occupants. *Id.* at 13 (citing Ewing 1/26/15 Affidavit, *supra*, at ¶¶ 16, 18, 19). NYCHA also contends that the New York State Rules and Regulations require sealing off all openings

within 25 feet of a roofing project to prevent asbestos fibers from passing through building openings. *Id.* at 13 (citing 12 N.Y.C.R.R. Part 56). NYCHA argues it cannot be disputed that such abatement procedures are immediately necessary to protect the public health in each roof project which removes ACM. *Id.* at 14. Moreover, NYCHA states that just because a product is only hazardous at the time it is manipulated does not reduce the threat of its ability to cause injury. *Id.*

NYCHA claims VAT, Calsilite, and asbestos-containing roofing materials, similarly to LBP, are relatively benign until disturbed, but will inevitably be disturbed or deteriorate over time by damaging and degrading forces such as repairs, tile wear and tear, pipe leaks, weather conditions, and demolition. *Id.* at 15. NYCHA goes on that the abatement procedures necessary to control such risks show these ACM are inherently dangerous as there is no possibility that they will not release harmful materials when disturbed. *Id.* NYCHA urges that the New York Supreme Court, Appellate Division, in *LIA III* equated the hazards of LBP and asbestos-containing materials when approving the remedy of remediating the "wide-spread consequences" of both products' hazardous nature. *Id.* (citing 222 A.D.2d at 128 ("It may also be noted that restitution has been characterized as a particular remedy for the costs of abatement of asbestos, a problem of similar wide-spread consequences as lead paint."); *Keene Corp.*, 132 Misc. 2d at 751).

Third, NYCHA claims the public health risk is urgent with respect to its restitution claim. *Id.* NYCHA cites *Independent School District No. 197 v. W.R. Grace & Co.* for the proposition that G-I should be responsible to "answer in damages – to pay for the consequences of the harm done unless the harm were removed, avoided, or abated by [G-I]" because its failure to do so could place NYCHA in a situation where it may be confronted with an asbestos-related

emergency to which it must respond to protect the safety of the building tenants. *Id.* at 16.

NYCHA also argues *Independent School District No. 197* supports the proposition that the

hazard posed by asbestos is no less of an "emergency" because abatement will require an

extended amount of time or has not yet been completed. *Id.* at 17. NYCHA also cites to *Federal*

*Reserve Bank of Minneapolis v. Carey Canada, Inc.*, 1988 WL 220489 (D. Minn. Aug. 31, 1988)

for the position that because abatement of asbestos products would take years to complete does

not undermine its "immediate necessity." *Id.* NYCHA argues the abatement work necessary

here to protect public health will take decades to perform, yet definitely will occur, and such

length of time does not detract from the immediate need to employ protective measures each

time a piece of Debtors' ACM is disturbed. *Id.*

Fourth, NYCHA argues there is substantial evidence that huge quantities of G-I's

predecessors' ACM were installed in NYCHA buildings. *Id.* at 18. Because NYCHA manages

hundreds of buildings and thousands of apartments, it requests the Court to determine its

evidence is sufficient for a number of representative buildings. *Id.* NYCHA urges that if

liability is found based on this evidence, the Court can address the remainder of the buildings at a

later proceeding. NYCHA argues a representative example of its product identification evidence

for G-I's VAT, including vinyl asbestos and asphalt tile of its predecessors (Matico Tile Co.,

GAF, and Ruberoid) is for the Governor Alfred E. Smith Houses (citing *id.* at Ex. 18) and further

documentation (attached as Exhibits 19 through 23) show the approval and purchase of VAT

made by G-I's predecessors for Independence Towers, Douglass Houses, Long Island Baptist,

Ravenswood I Houses, and Farragut Houses. *Id.* at 19. NYCHA continues that sworn affidavits

of Robert Schmahl, Anil Norody, and Henry Zalak, three long-time employees of NYCHA who

have personal knowledge of NYCHA's materials acquisition and installation practices, show that

35

once approved, the materials designated for installation in NYCHA construction projects are always installed. *Id.* at 19-20 (citing *id.* at Ex. 24).

In addition to evidence of specifications and approvals of G-I's products in certain housing complexes, NYCHA posits other evidence, such as a 1972 proposal that NYCHA accepted from GAF – Floor Products Division to supply 38,000 boxes of 12 x 12 VAT, invoices that show continued sale of GAF VAT to NYCHA of at least 11,140,525 square feet of GAF floor tile, and GAF's advertisements of installation of its VAT in NYCHA's housing. *Id.* at 20 (citing *id.* at Ex. 25, 26, 27, 22). Based on this evidence NYCHA asserts that G-I cannot dispute that there are and have been millions of square feet of G-I's predecessors' VAT installed throughout NYCHA's buildings.

NYCHA also claims there is incontrovertible identification evidence to prove that Ruberoid sold asbestos-containing roofing materials and Calsilite to NYCHA, such as approval documents for Baychester Houses, Butler Houses, and Independence Houses for felts, roll roofing, and cements (citing *id.* at Ex. 28, 29, 30), and correspondence, sample submissions, and approvals for the Bronxdale n/k/a Justice Sonia Sotomayor Houses and Gravesend Houses. *Id.* at 21 (citing *id.* at Ex. 31, 32).

NYCHA further claims it is undisputed that G-I's predecessors used asbestos fiber in the manufacture of their VAT, Calsilite, and roofing products. *Id.* (citing G-I Holdings' Interrogatory Responses to 30(b)(6) Topics, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10910-33). NYCHA claims Mastic Tile Corporation of America began selling VAT in 1945 and was acquired by GAF in 1959 which continued production and sale of VAT until 1981 when it sold the floor tile business. *Id.* Moreover, NYCHA claims GAF manufactured Calsilite

pipecovering from 1944 to 1971.  *Id.*   Lastly, NYCHA claims GAF and its predecessor, Ruberoid, manufactured and sold asbestos roofing products from 1928 to 1981.[5]  *Id.*

Fifth, NYCHA contends that its claims for true restitution, indemnity, and unjust enrichment each arise under New York equity law.  Here, NYCHA contends G-I had superior knowledge of the hazardous nature of its ACM products and therefore had a duty to disclose those risks.  *Id.* at 22 (citing *Cirillo v. Slomin's Inc.*, 196 Misc. 2d 922, 768 N.Y.S.2d 759 (Sup. Ct. 2003)).  Because of G-I's failure to disclose, NYCHA argues G-I should be forced to bear the costs, which have been borne by NYCHA, of remediating the dangerous conditions to prevent unjust enrichment.  *Id.* (citing *Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188 (1989); *DaimlerChrysler Ins. Co. v. Jenneman*, 95 A.D.3d 928, 943 N.Y.S.2d 597 (2012)).  NYCHA continues that, as a consumer without sophisticated knowledge about the products, NYCHA had a right to expect the products it was purchasing were free from defects and safe to use throughout their useful lives.  *Id.* at 23.  NYCHA goes on that it was not aware G-I's predecessors failed to test these products for hazards, yet NYCHA, like any other consumer, relied upon the manufacturer to test the products for safety and either warn of any health risks or not sell the products.  *Id.* (citing *Leider v. Ralfe*, 387 F. Supp. 2d 283, 297-98 (S.D.N.Y. 2005)).  NYCHA claims G-I's predecessors had abundant knowledge and evidence that asbestos caused serious illness, and by the 1930s it was being sued by workers for asbestos-related diseases.  NYCHA asserts that G-I acted to keep that knowledge from the public and workers for decades.  *Id.* at 23-24.

---

[5] G-I Holdings' Interrogatory Responses to 30(b)(6) Topics states, in part: that "GAF did not manufacture any floor tile products prior to its 1967 acquisition of Ruberoid" and that "Ruberoid entered the floor tile business in 1959 when it acquired the assets of Mastic Tile Corporation of America." G-I Holdings' Interrogatory Responses to 30(b)(6) Topics, *supra*, at 3.

NYCHA gives what it purports is a "Chronology of G-I's Predecessors' Corporate Knowledge and Acts of Suppression," setting forth G-I's predecessors' knowledge of the inherent dangers of its ACM products and acts taken to suppress that awareness of the ACM's hazardous effects in the utilization of ACM products.  *Id.* at 24 (citing Exhibits A-AW). NYCHA references several exhibits that contain correspondence, transcripts, and documents that NYCHA purports show, among other things, internal communications between G-I's predecessors' employees discussing ACM dangers, communications on how to conceal the appearance of asbestos in advertising material, lawsuits filed against G-I's predecessors for asbestos related illness, lack of disclosure of important information to G-I's predecessors' employees about asbestos testing, a failure to warn employees of VAT danger, testimony of G-I's predecessors' employees stating they were aware of ACM hazards, advertisement of G-I's predecessors' "quality control" initiatives of asbestos to attract business, communications attempting to minimize the impact that any warning labels would have on the purchase of ACM products, and the development of warning labels against sanding flooring products to prevent the spread of asbestos particles.  *Id.* at 24-35.  NYCHA asserts that in March 1972, GAF was still attempting to block any requirement to warn its customers and users of its products about hazardous asbestos exposures. *Id.* at 34-35 (citing *id.* at Ex. AJ, FG, "Testimony of GAF's Group Vice President Joseph G. Hall at the Occupational Safety and Health Administration Public Hearings on Proposed Regulations Covering Asbestos Dust").  NYCHA claims, in fact, that after efforts to resist placing warning labels on its VAT, in April 1972, GAF entered into a contract with NYCHA to provide over 1.7 million square feet of VAT for installation in its buildings.  *Id.* at 20, 34 (citing *id.* at Ex. 25).  Following that, GAF continued to sell at least another 11 million square feet of VAT for installation in NYCHA's buildings.  *Id.* (citing *id.* at Ex. 26, 27).

38

NYCHA claims warnings against sanding VAT were first introduced in 1977, the year GAF first sold a non-asbestos floor tile product, and were placed only on the inside of the VAT boxes, not outside or on the tile itself. *Id.* at 30, 38 (citing Boranian Deposition, *supra*, at 990). NYCHA asserts that no warnings discussing breaking, drilling, or sawing the tile were given and nothing was provided by way of diseases associated with asbestos. *Id.* at 39 (citing Boranian Deposition, *supra*, at 988-90). NYCHA further contends that, as late as 1979, GAF employees failed to recognize asbestos as "hazardous" as it still dumped ACM into city sewers and Lake Erie and continued to oppose any regulation of asbestos in VAT. *Id.* at 40 (citing *id.* at Ex. AU, AV). NYCHA argues neither Ruberoid nor GAF undertook any testing to determine how much asbestos fiber was released when the floor tile deteriorated, despite their knowledge that VAT "wore over time" and making representations to the federal government that the fibers were "locked in." *Id.* at 42 (citing Transcript of Deposition of Edward Tanenhaus dated Oct. 9, 2014 at 111, 123-4, 126, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF Nos. 10910-11-10910-14).

Sixth, NYCHA argues the dangers of VAT give rise to a duty to abate in the interests of public safety, the costs of which should be borne by G-I. *Id.* at 44 (citing *Worthy v. N.Y.C. Hous. Auth.*, 21 A.D.3d 284, 799 N.Y.S.2d 518 (2005) (holding that he owner of a multiple dwelling is responsible for its maintenance and repair and the correction of any violation on the premises) (citing Multiple Dwelling Law § 78)). NYCHA, as a landlord, has a duty to maintain safe and habitable buildings for its tenants, workers, and other individuals in its buildings. *Id.* (citing 12 NYCRR Part 56; *LIA III*, 222 A.D.2d at 128; Asbestos Rules & Regulations, *supra*). Its implementation of mandatory abatement procedures in repairing, replacing, and removing ACM is in fulfillment of its duty to maintain a safe environment for occupants. *Id.* at 45 (citing Admin. Code §§ 27-127, 27-128; *Guzman v. Haven Plaza Hous. Dev. Fund Co.*, 69 N.Y.2d 559,

566, 509 N.E.2d 51 (1987)).  NYCHA argues that because G-I and its predecessors caused the asbestos contamination, they owe a duty to abate and remediate said contamination.  *Id.* (citing *W. Side Corp.*, 790 F. Supp. 2d 13).  NYCHA also claims that in New York, manufacturers are charged with the duty to abate their hazardous products.  *Id.* at 45-46 (citing *Keene Corp.*, 132 Misc. 2d 745; *LIA III*, 222 A.D.2d 119).

Seventh, NYCHA argues it has and will continue to accrue reasonable abatement costs. *Id.* at 48.  NYCHA claims that more than 15,000 VAT abatements have been performed in NYCHA's buildings, a large number of which were products documented as having been manufactured and sold by G-I's predecessors.  *Id.* (citing *id.* at Ex. 18-23).  NYCHA cites several examples of abatement work that it claims are representative of the thousands of projects undertaken to safely remove the ACM and the types of costs NYCHA has borne to do this work. *Id.* at 48-49.  NYCHA contracted with Environmental and Planning Management, an asbestos abatement company, to perform asbestos abatements in 2008.  On July 22, 2008 abatement work was performed in Apartment 12G at the Governor Smith Houses I located at 374 Pearl Street, New York, N.Y., by setting up air containment, posting notices, conducting air sampling, using licensed waste haulers to dispose of contaminated materials, and preparation of reports concerning the work.  *Id.*; *see id.* at Ex. 18, 33.  During this process, NYCHA incurred costs of $4,760.75 for the 685 square foot project, $673.20 in air monitoring expenses, and $266.33 in lost rental income.  *Id.* at 49.  NYCHA contends the total cost of this project was $6,200.28 representing a total cost per square foot of $9.05.  *Id.*  Another example was a 660 square foot VAT project conducted on September 17, 2007 at 180 South St., Apt. 17H of the Governor Smith Houses I in which the total cost of the abatement was $5,977.93 or a total cost per square foot of $9.06.  *Id.* at Ex. 34.  Likewise, VAT abatement projects at the Independence Houses

yielded similar costs per square foot of $9.33 (83 Taylor St., Apt. 15B), $8.70 (75 Wilson St., Apt. 2B), $8.93 (121 Wilson St., Apt. 18B), and $8.70 at a project at the Douglass Houses (840 Columbus Ave., Apt. C). *Id.* at 49-50; *see id.* at Ex. 35, 36, 37, 38. NYCHA posits that these costs provide a sound evidentiary basis to find that the proofs of work done and costs borne by NYCHA have been established. *Id.* at 50. Additionally, NYCHA claims it spent $30,000 for Calsilite removal at the Bronxdale Houses for a capital project to renovate the heating system (citing *id.* at Ex. 31, 39), and $10,000 per project for replacing 11 roofs with Ruberoid roofing materials at the Baychester Houses, with total costs of $110,000.00 (citing *id.* at Ex. 28, 40). *Id.* NYCHA argues that its costs for such services are reasonable as it follows a strict competitive bidding policy whereby the work is awarded to the lowest responsive and responsible bidder. *Id.* at 51-52 (citing Clarke 12/11/13 Deposition, *supra*, at 169). In this respect, NYCHA points to its Contract Procedure Resolution – General Procurement Policy which includes standards for "cost-efficient purchases" and the "most cost-effective approach." *See id.* (citing Clarke 12/11/13 Deposition, *supra*, at 43, 169; Contract Procedure Resolution – General Procurement Policy at 5-6, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10910-125).

In conclusion NYCHA asserts that it has "provided more than sufficient evidence to prove the material facts of each" of the thirteen elements this Court identified in its 2010 Opinion to establish claims for true restitution and indemnity and that on the "significant" question whether the ACM at issue are "inherently dangerous," that G-I has demonstrated that it has no scientific and evidence-based proof that the products of its predecessors in NYCHA buildings are not hazardous to human health. NYCHA asserts that here G-I relies on its subjective, unsupported position that NYCHA treats LBP differently than ACM, erroneously concluding that NYCHA does not treat ACM as hazardous materials. *Id.* at 52. NYCHA further argues that

G-I's laches defense is not supported by the requirement of evidence that G-I has suffered

prejudice by the passage of time from the date G-I claims NYCHA should have brought its claim

to the date NYCHA filed its proof of claim in this case.

NYCHA urges that it has provided substantial evidence to establish all the elements of

true restitution and indemnity, including product identification, the inherently dangerous nature

of ACM, its expenditures made to perform its duty, and the duty of G-I and its predecessors as

"manufacturers" under New York law. NYCHA argues each time it executed its responsibility

to protect tenants and others from inhaling toxic fibers, it was because of the "urgency" of the

threat to human health which needed immediate attention by implementation of required safety

procedures. NYCHA asserts it has demonstrated its payment of costs in performing these duties

under strict bidding procedures, that the expenditures are "reasonable" and necessary to protect

against the harm of asbestos exposure from these ACM – costs that will continue into the future

and be borne by NYCHA. NYCHA argues that the present value of this stream of expense must

be included in the restitution owed by the Debtors.

NYCHA requests partial summary judgment on the question of the liability of G-I to pay

NYCHA for all amounts by which G-I has been or will be unjustly enriched because of

NYCHA's performance of these duties and that this Court order further proceedings to address

the totality of NYCHA's payments for all related past and future abatements of products for

which G-I is responsible, to be scheduled before the Court, a Magistrate, or Master as the Court

deems appropriate.

G-I's April 17, 2015 Reply in support of its Motion for Summary Judgment and in Opposition to

NYCHA's Motion for Partial Summary Judgment

On April 17, 2015, G-I filed a Reply in response to NYCHA's opposition and in

opposition to NYCHA's cross motion for summary judgment. Memorandum of Law in Further

Support of G-I Holdings Inc.'s Motion for Summary Judgment, and in Opposition to NYCHA's

Motion for Partial Summary Judgment, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No.

10928 ("G-I's Reply").

G-I claims NYCHA has failed to establish the existence of facts to support its claim for

indemnity and restitution. *Id.* at 3. G-I takes two main positions in this respect: first, G-I argues

NYCHA has failed to establish the necessary elements of hazard or urgency, or that either

NYCHA or G-I has a duty to NYCHA's tenants to remove VAT or other ACM from NYCHA

apartments to protect the health of its residents; and second, NYCHA has made clear that its

causes of action for indemnity and restitution are merely recast versions of its tort claims, for

which the statute of limitations expired at the latest more than two decades ago. *Id.* G-I also

urges that NYCHA's claim for unjust enrichment is improper since it was only first asserted in

NYCHA's cross motion for partial summary judgment and not set forth in its proof of claim. *Id.*

at 3, n. 3. G-I argues that, nonetheless, had NYCHA alleged such a claim, it too would be time-

barred. G-I asserts that NYCHA's claims that G-I's predecessors' failure to disclose their

"superior knowledge" of ACM hazards support, at best, an ordinary failure-to-warn claim that

was time-barred decades ago. *Id.* at 4.

G-I first claims NYCHA failed to demonstrate the existence of a hazard, much less an

urgent hazard. *Id.* G-I contends NYCHA does not regard in-place VAT or other ACM as a

hazard to its tenants and thus failed to establish there are "actual dangers of VAT" or any

"urgency of the public health risk" as required to maintain indemnity and restitution claims. *Id.* (citing *In re G-I Holdings, Inc.*, 443 B.R. at 669). NYCHA stated "it has never been our position that the [NYCHA] buildings [] are unsafe and that we are killing tenants." *Id.* (citing Motion for Summary Judgment, *supra*, at 15; Transcript of Motion Hearing & Status Conference June 19, 2012 at 22:7-9, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10896-22). G-I cites what it asserts are several policies and statements made by NYCHA concerning its treatment of ACM as not imminently harmful including the stipulation herein that: undamaged, in-place VAT and other ACM are not hazardous to NYCHA's tenants; memorandum GM-3776 states VAT is not hazardous until it has lost its "structural matrix and has been reduced to many small pieces" (citing GM-3766, *supra*); the information in GM-3776 is conveyed to tenants when NYCHA denies their requests to have VAT removed from their apartments, even when a layer of VAT is exposed (citing Motion for Summary Judgment, *supra*, at 11-12); NYCHA conducts no air sampling to detect airborne asbestos fibers unless it is done in connection with VAT removal, even in apartments where the exposed layer is VAT (citing Motion for Summary Judgment, *supra*, at 11-12); NYCHA does not prioritize the removal of VAT when there is an exposed layer of tile and does not inform tenants living in such apartments that the tile presents a hazard left in place (citing Motion for Summary Judgment, *supra*, at 17); NYCHA is aware of no condition in any of its buildings where breathable asbestos fibers are being released into the air (citing Motion for Summary Judgment, *supra*, at 14); and NYCHA would not let its tenants live in NYCHA apartments if they were not safe (citing Motion for Summary Judgment, *supra*, at 14-15). *Id.* at 5. G-I continues that NYCHA treats VAT as a maintenance issue, not a hazard, because it removes VAT in the regular course of operations, not because of an emergent health risk. *Id.* Moreover, Debtors urge that NYCHA's reference to the regulations and procedures for

VAT removal are designed to ensure the safety of tenants during VAT removal, not to respond to an urgent hazard. *Id.* at 5-6.

Second, G-I argues NYCHA has failed to present any evidence that VAT in its buildings is releasing asbestos fibers, and its assertion that VAT allegedly wears down does not demonstrate the existence of an urgent hazard. *Id.* at 6. G-I argues NYCHA's own VAT policies do not treat ordinary "wear" of VAT as a public health risk because NYCHA does not prioritize removal of floors where the exposed layer of tile is VAT, nor does it schedule removals according to the length of time VAT has been present in an apartment. *Id.* (citing GM-3776, *supra*). Moreover, NYCHA is not required to, and does not, inform tenants that "worn" VAT might create a hazard, but rather informs tenants that VAT flooring is safe and will refuse to remove it unless certain criteria specified in GM-3776 are met. Additionally, NYCHA performs no air sampling other than when done in connection with ACM removal. G-I claims NYCHA's industrial hygienist, William Ewing, offers no evidence that VAT in NYCHA's buildings is releasing fibers into tenant apartments or that "wear" of the tiles creates a hazard. *Id.* at 6-7.

Third, G-I argues NYCHA's ordinary course removal of VAT does not satisfy the urgency requirement of claims for equitable indemnity and restitution. *Id.* at 7. G-I claims that NYCHA only removes VAT when the repair or renovation criteria in GM-3776 are met, not to eliminate a hazard. *Id.* NYCHA asserts that the presence of asbestos is no less of an emergency because the abatement will require extended time to complete or has not yet been completed. *Id.* G-I attempts to distinguish NYCHA's assertion and consequent reliance on *Carey Canada, Inc.*, 1988 WL 220489, at *2, which stated "the fact that abatement is as of yet incomplete does not conclusively demonstrate the inapplicability of the [restitution] doctrine," on the ground that that

case involved abatement of asbestos fireproofing material – a friable asbestos product that, according to an affidavit in that case, "tended to release asbestos fibers into the air." *Id.* G-I also attempts to differentiate *Independent School District No. 197*, 752 F. Supp. 286, because it also involved a project to remove friable fireproofing material that presented a potential health hazard, not VAT, which NYCHA allegedly concedes is not friable and treats as non-hazardous. *Id.* G-I argues the building owners in those cases never repeatedly asserted that ACM were safe if left in place. *Id.* at 8. G-I looks for guidance to *Adams-Arapahoe School District No. 28-J v. GAF Corp.*, 959 F.2d 868 (10th Cir. 1992), where the plaintiff failed to present proof that VAT had actually caused contamination, to support its proposition that VAT removed only when it is damaged or in conjunction with a renovation project does not warrant an award for recovery of the costs of removal. G-I thus concludes that, based upon *Adams-Arapahoe*, a plaintiff must come forward with evidence that VAT is contaminating a building with asbestos fibers to obtain recovery for the costs of removal. G-I argues that NYCHA's assertion that there is an "immediate release of fibers" when NYCHA removes VAT from tenant apartments in the "regular course of its operations" would make the removal and disposal of anything that could become hazardous if mishandled including chemicals, transformers, and old refrigerators an urgent hazard. *Id.* at 8-9.

Fourth, G-I claims NYCHA has failed to establish NYCHA's duty to its tenants or G-I's duty to NYCHA or to NYCHA's tenants, to remove VAT or other ACM. *Id.* at 9. G-I argues that to state a claim for equitable indemnity, NYCHA must show that both NYCHA and G-I have duties to NYCHA's tenants, and, for the cause of action for restitution, NYCHA must show G-I holds a duty to NYCHA's tenants and that NYCHA instead performed that duty on an urgent or emergency basis. *Id.* (citing *Chase Manhattan Bank*, 1996 WL 603934, at *2). G-I claims

that because NYCHA, or any other building owner, is not required by law or regulation to remove ACM in its building, but rather only removes VAT based upon its own discretion and then in accordance with government regulations to avoid creating a hazard to its residents, it is distinct from the duty to abate a present hazard. *Id.* at 9-10. Moreover, G-I claims NYCHA offers no authority that the emergency assistance doctrine, which supports an action for restitution, entitles a party to recover costs of precautions designed to prevent the creation of a hazard where none previously existed. *Id.* at 10 (citing *Chase Manhattan Bank*, 1996 WL 603934, at *2). G-I posits that because NYCHA owes no duty to its tenants to remove VAT and undamaged VAT does not require removal, G-I cannot have such a duty to remove VAT in the interest of health or safety, and therefore the causes of action for indemnity and restitution should be disallowed. *Id.*

Fifth, G-I claims NYCHA's causes of action are recast time-barred tort claims. *Id.* NYCHA raises a factual question of whether G-I had superior knowledge regarding the inherent dangers of certain ACM and whether G-I withheld this information from NYCHA. *Id.* (citing NYCHA's Opposition to Summary Judgment, *supra*, at 1-2). G-I argues this inquiry is relevant to an ordinary "failure to warn" tort claim, not an indemnity or restitution claim. *Id.* at 10-11. Moreover, G-I asserts that NYCHA claims the asbestos about which G-I's predecessors purportedly failed to warn NYCHA renders VAT and other ACM "defective." *Id.* at 11 (citing NYCHA's Cross Motion, *supra*, at 22-23). G-I contends that whether the claim arose from a failure to warn or a product defect, both are the same tort causes of action NYCHA admits it could have brought in 1985, only now they are characterized as indemnity and restitution claims. *Id.* G-I continues that NYCHA seeks to derive, from the common law of fraud, a duty extending from G-I either to NYCHA itself, or to its tenants, and, in doing so, alleges G-I had "superior

knowledge" of its products. *Id.* G-I argues this is an attempt to satisfy the misrepresentation element of a fraud claim that would have been time-barred long ago if alleged as a fraud cause of action. *Id.*

Next, G-I addresses the legal authority cited by NYCHA. G-I claims *City of New York v. Keene Corp.*, involving a motion to dismiss, does not apply in the present circumstances because that case did not address indemnity and restitution causes of action where the underlying tort claims were time-barred and thus has no bearing on whether NYCHA provided evidence for its causes of action or whether said causes of action are recast tort claims. *Id.* at 12. G-I also argues that *New York v. West Side Corp.* involved a case where the movant filed claims for indemnity and restitution based on significant soil and groundwater pollution as a result of contamination related to a substance called PCE. *Id.* G-I claims that NYCHA has provided no evidence of contamination in its buildings by asbestos fibers and, like *West Side Corp.*, where the movant failed to show a duty or obligation under law to remediate, G-I asserts that NYCHA has affirmatively said it has no duty to remove undisturbed VAT such that would require G-I to provide indemnity. *Id.* G-I further urges that the court in *Chase Manhattan Bank* determined the plaintiff could not support its restitution claim because, like here, plaintiff repeatedly assured tenants its building was safe. *Id.* at 13. G-I argues that *Chase Manhattan Bank* stands for the proposition that, under New York law, a building owner cannot assert its buildings are safe, wait decades to remove ACM, and then insist that removal of ACM qualifies as an emergency warranting restitution. *Id.* G-I contends that NYCHA cannot expect to impose hundreds of millions of dollars in purported liability upon G-I based upon speculation that VAT will become hazardous and the potential harm that may ensue to tenants without citing a single example of such an incident. *Id.*

Sixth, G-I claims that legal authority relating to LBP are inapplicable to VAT. G-I claims it has established the differences by which NYCHA treats the hazards of LBP and alleged hazards of VAT. *Id.* at 14. In particular, G-I claims NYCHA treats LBP as an imminent, ongoing danger that has harmed numerous people in contrast to its nonhazardous treatment of undamaged, undisturbed VAT. G-I urges that in-place LBP is treated as an imminent threat because, as the materials required to be provided to tenants warn, it can be easily disturbed and turned into airborne dust from, *inter alia*, "doors and windows that stick or rub together" and "[w]indow sills…that have been chewed on by children." *Id.* at 14-15 (citing "N.Y.C. Dep't of Hous., *Preservation & Development Fix Lead Paint Hazards: What Landlords Must Do and Every Tenant Should Know*" at 3, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10896-26). G-I also notes that NYCHA follows more stringent regulations for LBP, such as engaging in random paint sampling at developments constructed before 1978 and periodic risk assessments of dust conditions and providing more information to tenants concerning LBP, than for VAT. *Id.* at 15 (citing Clarke 12/12/13 Deposition, *supra*, at 166:8-25, 167:24-168:5; Clarke 12/11/13 Deposition, *supra*, at 53:7-21; GM-3758, *supra* (LBP Memo)).

Based upon the distinctions between LBP and VAT, G-I argues that NYCHA's reliance upon *LIA III* is misplaced as that case treated LBP as a health threat that had to be eradicated where plaintiffs expended funds "inspecting, testing, monitoring, and abating the hazards arising from the use of the lead paint in testing children at risk of lead poisoning and in treating the child victims of such poisoning, for which restitution was sought." *Id.* Moreover, G-I claims NYCHA does not proactively test, monitor, or otherwise search for hazards related to VAT or other ACM and offers not a single instance of treating child victims of VAT or ACM. *Id.*

G-I continues that *LIA III* concurs with the holding in *888 7th Avenue Assocs.*, that indemnity and restitution claims are time-barred along with any underlying tort claims where the movant fails to establish a duty upon the defendant owed to third parties. *Id.* at 16. G-I reiterates that *LIA III* is distinguishable from the present case because immediate action was required there to remove the LBP whereas here NYCHA has waited decades to commence action to remove VAT while assuring its tenants that VAT is safe. *Id.* Additionally, G-I argues that in *LIA IV*, also arising in the LBP context, the court found that indemnity and restitution claims are based upon a party's [NYCHA's] statutory duty to abate the LBP hazard, unlike the present case where NYCHA disclaims statutory or other duty to remove undamaged VAT. *Id.* at 16-17. G-I further argues that *Philadelphia v. Lead Industries Ass'n*, 1992 WL 98482 (E.D. Pa. Apr. 23, 1992), *order aff'd*, 994 F.2d 112 (3d Cir. 1993), where plaintiff brought causes of action for indemnity and restitution, does not apply because there the plaintiff was obliged under local and federal law to test for LBP to abate and to monitor and treat individuals for lead-related health problems, unlike here, where NYCHA is not obligated to act in the same manner with respect to VAT. *Id.* at 17. G-I states that NYCHA seeks to maintain the same pace of renovations as before, not expedite it, with the costs to be borne by G-I. *Id.* G-I argues that the *Lead Industries Ass'n* court found that the right to indemnification is triggered by judgment of liability and subsequent award of damages for which the initial defendant sought reimbursement, and that "[t]he mere statutory duty to abate is an insufficient hook upon which to hang the hat indemnification." *Id.* at 12 (citing *Lead Indus. Ass'n*, 1992 WL 98482, at *12).

Seventh, G-I claims NYCHA is not entitled to restitution damages for future maintenance projects related to VAT. *Id.* at 18. G-I argues that restitution provides compensation for alleviating an imminent hazard. *Id.* Moreover, G-I attempts to invalidate NYCHA's claim that

equity demands restitution on the basis that equity cannot create rights denied by law. *Id.* (citing

*In re Morristown & Erie R.R Co.*, 885 F.2d 98, 100 (3d Cir. 1989)).

Eighth, G-I claims NYCHA should be precluded from obtaining equitable relief due to the laches doctrine. *Id.* at 19. G-I argues laches exists to prevent NYCHA's act of waiting several decades until G-I's prime product identification witness, Armen Boranian, is deceased. *Id.* G-I argues NYCHA provides no justification for failing to bring its claim thirty years ago, but does so now when witnesses who could testify as to the critical details concerning the manufacturing and testing processes and the hazards, or lack thereof, of VAT are not available. *Id.* at 19-20. G-I states that NYCHA produced twenty-year-old witness testimony transcripts, for example: 1988 trial testimony of Philip Bettoli; 1991 deposition of Philip Bettoli; 1984 trial testimony of Philip Bettoli; 1983 deposition of Theodore Dean; 1991 deposition of Theodore Dean; 1986 deposition of Philip Bettoli; 1983 deposition of William Schwingen; and 1983 deposition of Herbert Stoudt. *Id.* at 20 (citing NYCHA Ex. 14, Ex. AS, Ex. U, Ex. Y, Rossman Ex. 37). G-I thus claims the absence of Boranian and virtually G-I's entire core of witnesses is concrete, and not speculative, and prejudicial to G-I. *Id.* NYCHA attempts to discredit Boranian, and the relevance of his testimony, because he previously stated that identifying GAF tile is "guesswork" in a November 10, 1987 deposition in a previous matter. *Id.* at 21 (citing Boranian Deposition, *supra*). G-I argues NYCHA omitted the previous question, which asked whether Boranian can identify tile manufactured by "Flintkote Company" not GAF tile. *Id.* Lastly, G-I claims NYCHA admits to destroying evidence by removing and failing to preserve VAT. *Id.* at 22.

Ninth, G-I claims NYCHA's cross motion and opposition do not comply with Local Rule 56.1 of the United States District Court for the District of New Jersey because NYCHA failed in

cross-moving for summary judgment to supply a statement setting forth material facts as to which there is no genuine issue and failed to submit a statement in response to G-I's statement of undisputed material facts, and that such failure should result in dismissal of NYCHA's cross motion and the granting of summary judgment to G-I and disallowance of NYCHA's claim. *Id.* On May 14, 2015 NYCHA filed a Statement of Undisputed Material Facts in Support of its Motion For Partial Summary Judgment as to Liability, and a Responsive Statement of Material Facts in Opposition to G-I's Motion for Summary Judgment. N.Y. Hous. Auth.'s Statement of Undisputed Material Fact in Support of Claimant NYCHA's Motion for Partial Summary Judgment as to Liability, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10933; N.Y. Hous. Auth.'s Responsive Statement of Material Facts in Support of N.Y. Hous. Auth.'s Opposition to G-I Holdings, Inc.'s Motion for Summary Judgment on NYCHA's Cause of Action for Indemnity & Restitution, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10934. On June 5, 2015 G-I filed its Responsive Statement of Undisputed Facts In Opposition To NYCHA's Motion for Summary Judgement. Response Statement of Undisputed Material Facts in Support of G-I Holdings, Inc.'s Opposition to NYCHA's Motion for Summary Judgment, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10939.

Next, G-I argues NYCHA's cross motion for partial summary judgment should be denied because it fails to offer facts supporting a finding that VAT is a hazard, that NYCHA must act urgently to alleviate the hazard, and that G-I or NYCHA owe a duty to NYCHA's tenants to remove VAT from NYCHA's buildings. G-I's Reply, *supra*, at 23. Instead, G-I urges, NYCHA submits documents purporting to provide evidence for an issue the Court did not identify as relevant – G-I's predecessors' purported "superior knowledge" of the hazards of breathing asbestos fibers. G-I continues that NYCHA also has failed to present competent evidence that

shows the floor tiles currently present in NYCHA buildings were examined and determined to have been manufactured by G-I's predecessors. *Id.*

G-I argues that NYCHA must show the actual dangers of VAT, not the danger of breathing asbestos fibers. *Id.* at 24. G-I does not contest that breathing asbestos fibers is harmful, but does assert that NYCHA failed to present any competent evidence that its residents are breathing said fibers released from VAT in its buildings. *Id.* G-I continues that NYCHA presents old literature concerning the release of asbestos fibers from VAT when mishandled through sanding; however, NYCHA does not allege it engages in those practices nor that it was harmed by the same. *Id.* (citing NYCHA's Cross Motion, *supra*, at 7). G-I argues that William Ewing, NYCHA's industrial hygienist, offered no proof that in-place undisturbed VAT or other ACM are hazardous or that VAT has caused any contamination within NYCHA buildings. *Id.* at 25. G-I contends that Ewing's assertion that the EPA does not set any clearance level for residents to occupy apartments does not change the fact that NYCHA uses .01 f/cc as the clearance level below which it will permit re-occupancy of apartments after VAT removal. *Id.* G-I concludes that NYCHA has failed to make an affirmative showing that VAT is creating a hazard or is inherently dangerous, so that NYCHA's cost to take protective measures required by regulations to ensure that no hazard is created when removing VAT is not recoverable from G-I under the theories of equitable indemnity or restitution. *Id.*

G-I claims it, not NYCHA, is entitled to summary judgment on the element of urgency because NYCHA's VAT policies do not take wear or age of the tile into account for removal purposes, and that NYCHA's assertions that G-I's predecessors failed to warn NYCHA of the inherent defect in VAT that will eventually manifest is an admission that NYCHA has recast its tort claims, which it could have brought in 1985, as equitable claims. *Id.* at 26.

G-I claims NYCHA has made no meaningful showing of product identification because NYCHA offers no evidence that anyone examined VAT or other ACM in NYCHA buildings to conclude it was manufactured by G-I's predecessors. *Id.* Moreover, G-I argues NYCHA cannot rely on documents concerning purchase or even the installation of VAT between forty and seventy years ago to substitute for present day observation of the tile in NYCHA buildings. *Id.* at 26-27. G-I further argues that even if these documents provided evidence, they would be inadmissible hearsay under Fed. R. Evid. 801 and 802. *Id.* at 27. G-I contends that NYCHA's documents do not show VAT manufactured by G-I's predecessors is still present in NYCHA buildings or that it was ever installed, but rather relies upon a generic proposition that once the materials were approved, they were always installed in NYCHA construction projects. *Id.* at 27-28.

G-I claims NYCHA's lengthy history concerning G-I's purported knowledge of the hazards of asbestos is misleading and irrelevant. Specifically, G-I argues the Exhibits and assertions regarding warning labels, abrasion tests, and occupational exposure including dust on factory floors and in or near asbestos mines are irrelevant to the elements NYCHA must establish to prevail on its claims. *Id.* at 28-31. G-I additionally claims NYCHA has failed to demonstrate reasonable costs and either its own duty or G-I's duty to remove undamaged VAT. At this stage, G-I contends NYCHA has only provided perfunctory examples of contract prices, no evidence that such costs were reasonable, and no evidence of consequential damages, including loss of rent. For these reasons G-I requests that this Court grant summary judgment in favor of G-I, disallow NYCHA's claims for indemnity and restitution in their entirety, and deny NYCHA's cross motion for partial summary judgment in its entirety.

NYCHA's May 14, 2015 Reply to G-I's Opposition to NYCHA's Motion for Partial Summary
Judgment as to Liability:

On May 14, 2015, NYCHA filed a Reply to G-I's Opposition to NYCHA's Motion for
Partial Summary Judgment as to Liability. N.Y.C. Hous. Auth.'s Reply to G-I Holdings, Inc.'s
Opposition to N.Y.C. Hous. Auth.'s Motion for Partial Summary Judgment as to Liability, *In re
G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10935 ("NYCHA's Reply").

NYCHA makes several arguments in furtherance of its cross motion for partial summary
judgment as to liability and in opposition to G-I's motion for summary judgment dismissing
NYCHA's claims. *Id.* at 2. First, NYCHA argues its claim is not based upon a need to
"remove" ACM, but rather fulfillment of its duty and G-I's duty to prevent contamination when
ACM are removed or otherwise disturbed. *Id.* NYCHA claims it does not remove ACM
because they are hazardous while intact and in place, but rather it is when these materials must
be removed that the urgency of a potential health risk is presented, requiring the immediate use
of "abatement procedures" mandated by law. *Id.* NYCHA notes G-I continuously
mischaracterizes NYCHA's claims asserting that NYCHA and G-I have no duty to NYCHA's
tenants to remove VAT, but fails to address the key issue of when VAT and other ACM pose an
urgent health hazard. *Id.* at 3. G-I's reasoning only focuses on the time during the products'
lifespan when they do not actively release asbestos fibers, claiming when inevitably disturbed, as
every ACM will be, the protective measures that must be exercised under law are merely
maintenance issues, unrelated to hazard or health threat. *Id.* at 3-4. NYCHA claims G-I's
position ignores the rationale behind the laws and regulations which recognize how dangerous
these products are when disturbed and the scientific evidence from studies which demonstrate
hazardous fiber release during removal. *Id.* at 4. NYCHA asserts that G-I misconstrues the

critical element of both indemnity and restitution identified by this Court in its 2010 Opinion,

443 B.R. at 669, whether: "The dangers of VAT give rise to a duty to abate in the interest of

public safety." *Id.* NYCHA argues that G-I erroneously believes that the "duty to abate" is

actually a "duty to remove" without respect to the condition of the material. *Id.* NYCHA

contends that its duty to abate is a duty to use "the abatement procedures" required by law to

keep its tenants safe from asbestos fibers in the breathable air. *Id.* NYCHA claims G-I does not

dispute that the precautionary measures used by NYCHA in removing VAT are necessary to

prevent health hazards, but rather presents a distorted perception of how NYCHA supposedly

handles the product to support its contention that there is no need to remove. *Id.* NYCHA also

asserts that G-I offers no rebuttal to substantial evidence that VAT is so dangerous as to warrant

enforcement of regulations at every level of government to prevent a major public health risk.

*Id.*

NYCHA claims the Declaration of Dr. Brent Finley submitted to support G-I's claim of

no hazard does not express an opinion as to whether the process of removing VAT is or is not

hazardous or dangerous. *Id.* at 5. Instead, NYCHA asserts it only addresses Dr. Finley's

calculation of the numbers of air sample reports conducted during VAT abatement projects while

mandatory safety precautions, including the use of foam to suppress fiber release, were

employed as required by New York law. NYCHA claims that Dr. Finley ignores the fact that

abatement procedures reduce the volume of fibers released into the air, seeking to minimize the

volume and extent of fiber release that would ensue in the absence of protective measures.

NYCHA claims that G-I states that when NYCHA does "get around to removing VAT," it is not

dealing with an urgent hazard, but is complying with regulations designed to prevent

contamination, and that the regulations do not support NYCHA's position that VAT is inherently

dangerous and must be removed to prevent harm to NYCHA's tenants. *Id.* Conversely, NYCHA argues that neither itself nor any other authority compels removal of VAT in good condition – the danger is realized when it is disturbed by removal or damaged. *Id.* NYCHA follows the reasoning set forth in the Affidavit of William M. Ewing that VAT will inevitably be disturbed at some point transforming the hazard from "inherent" to "actual" and "urgent." *Id.* at 5-6 (citing Ewing 1/26/15 Affidavit, *supra*, at ¶¶ 7, 16, 17; Ewing 2/1/12 Affidavit, *supra*, at ¶¶ 18, 19). NYCHA continues that although VAT does not pose a health risk when in-place and undisturbed, once it is removed in the ordinary course these products release fibers into the air which must be contained by foam, containment chambers, and negative air pressure, and abated consistent with certain precautions and procedures to protect humans from a serious health risk. *Id.* at 6. Thus, the "urgent risk of harm" commences as soon as disturbance of the product begins requiring NYCHA to take precautions to avoid a serious and immediate hazard to human health. *Id.* at 7.

NYCHA argues that G-I's claim that it does not treat ACM as unsafe because its approach to LBP is different is misplaced because G-I fails to recognize that federal, state, and local regulations for LBP require different actions from a building owner than do regulations concerning VAT and other ACM. *Id.* NYCHA claims differences in procedures do not diminish the level of NYCHA's concern about ACM or for the safety of its tenants and other individuals who enter NYCHA buildings. *Id.*

Second, NYCHA argues its claims are not recast time-barred tort claims because its true restitution and indemnity claims are independent of its tort and product liability claims, citing *LIA IV*, and urges that G-I's efforts to distinguish *West Side Corp.* and *Keene Corp.* are unconvincing. NYCHA urges that its reliance on *Keene Corp.* is appropriate and sustains its

position that G-I's predecessors, as manufacturers, have a duty to remove hazardous materials and are liable under the Restatement of Restitution § 115. As well, NYCHA argues that *West Side Corp.* stands for the express proposition that a manufacturer has a duty to abate hazardous contamination which exposes the public to health hazards. *Id.* at 8. NYCHA claims G-I's reliance on *Chase Manhattan Bank* is misplaced because G-I mistakenly assumes NYCHA's claims are for "removal" rather than to address the unjust enrichment it is receiving, based on the use of precautionary abatement techniques needed to keep the public safe when ACM are disturbed. *Id.* Further, NYCHA distinguishes *Chase Manhattan Bank* by claiming that there the bank did make claims that the building was made unsafe by the mere presence of the defendant's in place and intact fireproofing, yet did not take action to protect the tenants from that threat. NYCHA asserts that it does not take such a position here, and that its claims are much different than those made by Chase. *Id.* NYCHA posits that G-I argues that NYCHA has claimed a separate cause of action for unjust enrichment. NYCHA counters that it has not pled a separate cause of action for unjust enrichment, instead unjust enrichment is an integral element of its equitable restitution and indemnity claims. *Id.* at 9.

Third, NYCHA argues G-I's reliance on *Adams-Arapahoe* is misplaced because that case is distinguishable in that plaintiff claimed its buildings were contaminated by GAF's VAT and consequently the school district sought to recover the costs of removing ACM. *Id.* Additionally, NYCHA notes that case was based upon tort and contract causes of action, not equitable restitution or indemnity as here. NYCHA asserts its claims here are not for negligence. The elements of NYCHA's equitable restitution and indemnity claims do not require proof of a physical injury such as contamination. Instead the focus of the causes of action are on the "actual dangers of the VAT, and the urgency of the public health risk." NYCHA proffers the

elements to be proven are those that were enumerated by this Court in the 2010 Opinion. *Id.* at 10. NYCHA states the damages it seeks under its equitable causes of action are costs to prevent the harm that would ensue from exposure of tenants and others to asbestos fibers and that the costs to "safely remove" as opposed to the costs to "remove" are sought. *Id.* NYCHA posits that the fact that there is no present physical injury is irrelevant, and continues that G-I has misconstrued its claim as one for payment of costs "to remove" ACM rather than what NYCHA is seeking under equitable causes of action: payment for the efforts needed to "prevent harm" to the people in its buildings which urgently arise when the products are removed. *Id.*

Fourth, NYCHA argues G-I is incorrect in asserting that NYCHA argues there is an urgent hazard when VAT wears down. *Id.* NYCHA argues G-I misses the point by arguing the inherent danger at issue is when VAT and the other ACM wear down, but actually the true harm occurs because these materials will ultimately be disturbed during the course of removal, a process so catastrophic to the matrix in which asbestos fibers are imbedded that every governmental unit having jurisdiction over asbestos in the City of New York require the use of complex protective measures to prevent an urgent health threat. *Id.* NYCHA argues although it is true that VAT does wear down which may result in VAT damage, NYCHA implements its policy to repair and/or replace the damaged tile. *Id.* at 11. NYCHA further argues that G-I's predecessors' purported failure to test and warn removers and installers of their products is compelling evidence to support the element of NYCHA's equitable restitution and indemnity claims that Debtors were "wrongdoers," whose culpable conduct created the hazards which threaten NYCHA residents and employees. *Id.*

Fifth, NYCHA argues G-I has failed to rebut NYCHA's product identification and cost evidence. *Id.* NYCHA claims it has submitted copies of the original acquisition documents that

show Debtors' predecessors are the source of the VAT and other ACM for a representative

sample of NYCHA's buildings.  As well, NYCHA's records show the approval and selection of

VAT and ACM manufactured by G-I's predecessors, product identification evidence for which

G-I offers no rebuttal evidence.  *Id.*  NYCHA contends G-I's claim that no evidence that anyone

examined a single piece of VAT in these buildings to conclude it was manufactured by G-I's

predecessors assumes, with no basis in fact or law, that visual identification of in-place products

is required to identify the manufacturer.  *Id.* at 12.  However, NYCHA claims G-I offers no

rebuttal evidence which could support G-I's contention that a person could inspect in-place VAT

or other ACM and conclude that any products other than those documented in the acquisition

documents were installed.  *Id.*  NYCHA continues that G-I's speculation that VAT may no

longer "still" be in NYCHA's buildings or that it might not have ever been installed does not

satisfy G-I's burden to rebut the documentary evidence or raise a disputed issue of fact that

refutes purchase of these products from its predecessors.  *Id.*  In addition, NYCHA claims G-I

fails to present evidence to contradict NYCHA employee affidavits that show NYCHA's long-

standing policy that approved products must be installed in the specified buildings.  *Id.*  NYCHA

concedes that it never alleged the ACM products have been "imminently hazardous"

continuously for sixty years, but does claim that when the products are disturbed or must be

removed they present such a serious threat to public health that they must be treated as urgently

hazardous.  *Id.*

   NYCHA claims G-I offers no evidence to dispute the documents which detail the costs

incurred by NYCHA to employ the required safety procedures in removing the identified

products.  *Id.* at 12-13.  NYCHA argues G-I simply claims the documents submitted do not

establish reasonable costs, offering no reason why the Court should reject the fact that NYCHA's

bidding process results in a reasonable cost for each project. *Id.* at 13.

Sixth, NYCHA argues awarding G-I summary judgment on the defense of laches is

without merit and not appropriate where there are genuinely disputed issues of material fact and

that in any analysis of whether to apply laches, the Court must view the evidence most favorably

to the non-moving party, citing *Cornell Research Foundation, Inc. v. Hewlett-Packard Co.*, 2007

U.S. Dist. LEXIS 89637, at *74 (N.D.N.Y. Jan. 31, 2007).   NYCHA asserts that in analyzing

whether a delay in bringing an action has caused "evidentiary prejudice," as claimed here by G-I,

the Court must have concrete evidence and reject speculative arguments. *Id.* (citing *Meyers v.*

*Asics Corp.*, 974 F.2d 1304, 1308 (Fed. Cir. 1992)).   NYCHA claims G-I presents self-serving

and conclusory allegations that certain details regarding the manufacturing and testing process,

as well as details concerning the hazards (or lack thereof) of VAT, "could be" critical at trial and

due to NYCHA's unexplained delay, G-I has been deprived of witnesses who "could testify"

about certain processes. *Id.* at 14.   NYCHA argues G-I offers "no concrete particulars regarding

impairment of its defense."   As such, there are many unanswered disputed material issues of fact

regarding what evidence, if any, G-I will be unable to garner and present which it would have

been able to do so had the claim been brought when G-I claims it should have been brought. *Id.*

(citing *Cornell Research Found., Inc.*, 2007 U.S. Dist. LEXIS 89637, at *138).   Moreover,

NYCHA argues G-I fails to inform the Court of the substance of the deceased former employees'

testimony G-I believes would have been available at some earlier date and why such testimony

would be relevant or admissible in this proceeding. *Id.*

NYCHA asserts Debtors maintain two document repositories, in West Virginia and

Baltimore, which contain millions of documents relating to the products at issue in this case,

hundreds of thousands of which have already been produced, which contain the correspondence and memoranda authored by and sent to the deceased former employees as well as product brochures, manufacturing records, and other evidence which G-I can utilize in challenging NYCHA's facts. *Id.* at 15. NYCHA argues that G-I's Fed. R. Civ. P. 30(b)(6) witness, its corporate representative Edward Tanenhaus, was presented here in response to NYCHA's request that a G-I representative testify on matters related to the products at issue, their development, manufacturing, testing, sale, and distribution. *Id.* (citing N.Y.C. Hous. Auth.'s Notice of Deposition of G-I Holdings, Inc. Pursuant to Fed. R. Civ. P. 30(b)(6), *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10935-1). NYCHA claims at that deposition G-I raised objections to several exhibits and topics on the basis of relevance, but no objection based on the fact that the representative was unable to answer questions because former employees were unavailable. *Id.* (citing Letter from Jacob J. Waldman dated July 5, 2013, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10935-2). As well, NYCHA urges, at Tanenhaus' October 9, 2014 deposition, Tanenhaus read at least two transcripts of depositions given by Ted Dean, a former GAF executive who was involved in developing warning labels for VAT products. *Id.* (citing Transcript of Deposition of Edward Tanenhaus dated Oct. 9, 2014, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10935-3). NYCHA argues that at that deposition neither Tanenhaus nor G-I's counsel made objections based on the unavailability of witnesses or the passage of time, and Tanenhaus was able to answer questions based on his own memory and deposition testimony and documents shown to him. *Id.* NYCHA continues that there are over 180 deposition transcripts of GAF personnel including testimony from particular witnesses which G-I names as prejudicially unavailable taken in personal injury and asbestos property damage cases around the country which are admissible under Federal Rule of Evidence

804(b)(1) and which can be presented in support of G-I's defenses to claims regarding the
hazards of their ACM in the manufacturing process, during installation, and as in-place products
in buildings. *Id.* at 16. Further, NYCHA claims there is a wealth of testimony from the
employees of G-I's predecessors that is available and admissible to present evidence which
Debtors claim is beyond their reach. *Id.* (citing, for example, Transcript of the July 28, 1988
Deposition of William Schwingen, former Vice-President and Director of Marketing for
Commercial Roofing, dated July 28, 1988, *Univ. Sys. of N.H. v. Nat'l Gypsum,* (D.N.H., Case
No. 84-716-L) (testimony regarding GAF's knowledge of the hazards of asbestos exposure to
asbestos workers, installers, and building occupants, the warning and instructions given to
suppliers, installers, and building owners regarding the hazards of GAF products, the history of
the company, including the floor tile division, health concerns leading to the replacement of
asbestos in Calsilite, the history of the knowledge of the hazards of asbestos, use of asbestos in
roofing products, and warnings placed on Calsilite)).

    NYCHA also sets forth examples of other testimony from former GAF employees which
it characterizes as follows:

> In *St. Jacque v. Johns-Manville Corp.*, Superior Court of the State of California
> (Case Nos. C-134 465 and C-137 465), George E. Ferment gave a deposition on
> December 20, 1983 (Exhibit 6), testifying about the use and elimination of
> asbestos in GAF VAT (transcript of deposition of Ferment at pp. 45-65).
>
> Herbert Stoudt, who was a technical information supervisor with GAF, and then
> its successor, Tarkett, Inc., testified at his December 12, 1983 deposition in *St.
> Jacque v. Johns-Manville, supra*, testified about the use of asbestos in floor tile,
> installation issues and warnings about asbestos hazards to installers (transcript of
> deposition of Herb Stoudt at pp. 32-72); use of respirators at GAF's flooring
> manufacturing plants. *Id.* at 104-07.
>
> At the trial of *Parsysz v. Armstrong World Industries*, (U.S.D.C.Fla. Case No. 87-
> 0292 CIV KING.) Philip Bettoli, former chief chemist for GAF, testified
> extensively about GAF's beliefs concerning the safety and lack of damage caused
> the asbestos products manufactured by the company (transcript of the deposition

of Philip Bettoli at pp. Vol 6 - 1020-1026, Exhibit 7); and the history of the company's decision to place warnings on the products. *Id.* at 1052-64.

*Id.* at 16-17.

NYCHA claims G-I now attempts to expand the scope of testimony it previously claimed that its former employee, Armen Boranian, would have offered. *Id.* at 17. However, NYCHA states G-I fails to indicate here that Boranian was examined extensively on topics, other than product identification, including manufacturing, testing, product warnings, and maintenance procedures in other asbestos cases, and his testimony preserved in deposition and trial transcripts. *Id.* at 17-18 (citing List of GAF Personnel who have Testified, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10935-4).


G-I's June 5, 2015 Sur-Reply in Further Support of Motion for Summary Judgment:

On June 5, 2015, G-I filed a Sur-Reply in further support of its Motion for Summary Judgment. Sur-Reply Memorandum of Law in Further Support of G-I Holdings, Inc.'s Motion for Summary Judgment, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10938.

G-I argues that this case represents a textbook case of laches – NYCHA concedes it could have brought its asbestos property damage claims in 1985, NYCHA has not explained why it waited until 2008 to assert its asbestos property damage claims against G-I, and in the intervening twenty-three years G-I has lost access to most if not all of its key witnesses who are now deceased, too elderly, or otherwise unavailable to assist G-I in defense of claims arising from events more than thirty, forty, and fifty years ago. G-I makes four arguments in its Sur-Reply in further support of its Motion for Summary Judgment against NYCHA on its causes of action for indemnity and restitution. *Id.*

First, G-I claims there is no disputed material issue of fact that NYCHA's delay has deprived G-I of its key fact witnesses resulting in prejudice to G-I. *Id.* at 3. G-I claims NYCHA effectively concedes that its delay deprived G-I of the ability to call virtually any fact witnesses, who are now very elderly or deceased, and those available witnesses would have fading memories concerning events and processes that took place in many instances over fifty years ago. G-I further notes that its predecessors exited the asbestos manufacturing business nearly thirty-five years ago. *Id.* G-I notes NYCHA identifies several fact witnesses by name, including Armen Boranian, William Schwingen, and Philip Bettoli, which, in G-I's view, showcases people and topics now lost to G-I for its defense. *Id.* G-I argues this showing of evidentiary prejudice is more than sufficient to show prejudice beyond any material issue of fact. *Id.* (citing *Cornell Research Found., Inc.*, 2007 WL 4349135, at *43). G-I articulates NYCHA's argument thusly: that laches is "speculative generalization" because G-I argues it has lost witnesses on topics that "could" arise at trial, rather than predicting the precise evidence and subject matter its adversary will raise. *Id.* at 4 (citing NYCHA's Reply, *supra*, at 14). G-I continues that by NYCHA's standard, no party could obtain summary judgment on laches. *Id.* However, G-I claims it has met the *Cornell Research Foundation, Inc.* standard by showing, without disagreement by NYCHA, that virtually all of its live witnesses with personal knowledge are gone and witnesses that were key parts of G-I's predecessors' operations are no longer available to consult or otherwise assist in G-I's defense of NYCHA's claims. *Id.* G-I claims GAF's primary indemnification witness, Boranian, based upon personal knowledge, would have been capable of identifying the VAT he spent some twenty years manufacturing, and that NYCHA's attacks on him should have taken place on cross examination but NYCHA's delay assures that

will never happen. *Id.* G-I argues the fact that Boranian is not able to respond to NYCHA's objections to his testimony shows clear prejudice that laches is designed to alleviate. *Id.*

Second, G-I argues NYCHA's attempt to gain an advantage by waiting for G-I's witnesses to become unavailable independently warrants summary judgment in G-I's favor on laches grounds. *Id.* at 6. G-I claims NYCHA effectively admits its strategy for meeting its product identification burden at trial is to offer decades-old documents purportedly showing G-I's predecessors', Ruberoid's, or GAF's products were ordered decades ago and then to assert that evidence is unrebuttable because none of G-I's living witnesses can identify the origin of the VAT or other ACM currently installed in NYCHA buildings. *Id.* G-I claims NYCHA employs this strategy in support of its equitable claims. *Id.*

Third, G-I argues that although its Rule 30(b)(6) witness, Edward Tanenhaus, was able to testify on a variety of topics and on the basis of prior deposition testimony of GAF witnesses, this type of witness is expected to testify from personal knowledge to a company's knowledge gleaned from reviewing documents and speaking to other individuals. *Id.* (citing *Costa v. Burlington*, 254 F.R.D. 187, 189-90 (D.N.J. 2008)). G-I urges that even if Mr. Tanenhaus could testify at trial he would, as in his 30(b)(6) deposition, merely be a vehicle for presenting "cobbled-together" facts drawn from old testimony and documents – not a substitute for fact witnesses with knowledge of the assortment of topics listed by NYCHA, and would prejudice G-I. G-I asserts that, in fact, G-I, in connection with its 30(b)(6) witness, did object on the grounds that former employees of G-I's predecessors who could testify on the basis of personal knowledge were unavailable, citing Letter from Jacob J. Waldman dated July 5, 2013, *supra*, and that NYCHA responded that such objection was not a sustainable objection to taking a 30(b)(6)

deposition, citing Letter from Philip P. Goodman dated July 15, 2013 at 2, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10938-2.

Fourth, G-I argues the existence of prior testimony does not alleviate the prejudice to G-I. G-I claims the existence of prior testimony on a wide range of topics only shows the range of fact witnesses and knowledge that NYCHA's delay has denied to G-I, hampering its ability to defend against NYCHA's asbestos property damage claims.  Reading into the record responses to questions posed decades ago by GAF's adversaries, G-I argues, does not relieve the prejudice from the loss of fact witnesses particularly where NYCHA will offer its own static excerpts and live witnesses in response.  G-I questions the admissibility of such prior testimony against NYCHA and posits that even if NYCHA waived any objection, G-I would still have to rely on wholly inadequate evidence which emphasizes the applicability of G-I's laches defense. *Id.* at 7-8.


June 25 2015 Hearing:

On June 25 2015, the Court heard oral arguments on G-I's motion for summary judgment and NYCHA's cross motion for partial summary judgment.  G-I points the Court to its 2010 Opinion, where the Court directed that the parties should focus discovery on NYCHA's restitution and indemnity claims, particularly on the issue of G-I's duty that would give rise to those claims, as opposed to NYCHA's time-barred tort claims. G-I further points out to the Court that NYCHA claimed it would show that the duty derived from G-I's creation of a present public health hazard that is adversely affecting NYCHA's tenants.  G-I argues that the Stipulation of Facts will provide all the facts necessary for the Court to rule on summary judgment and enter judgment in favor of G-I.

G-I compares this case to *MRI* and attempts to distinguish it from cases where there was an actual, present hazard that was dangerous to the public health, such as a tree fallen in a roadway, a fire, an oil spill, and a beached whale, all requiring immediate attention. G-I argues NYCHA presents no evidence of a current hazard, but rather forecasts that it will spend the next one hundred years conducting maintenance on its apartments to remove VAT or other ACM. To have a duty to abate an immediate hazard that may arise ninety-nine years from now, G-I posits, bears no relation to the emergency assistance doctrine in restitution, its equivalent theory in indemnity, or the reasoning in *LIA III*. G-I argues NYCHA must show a duty and an immediate need to abate, but that NYCHA does not abate until it chooses to, pursuant to its own policies.

As such, G-I argues the issue at hand is a maintenance problem, not a health problem, and that NYCHA has conceded that intact undamaged ACM do not pose a present health or safety hazard to persons in its buildings, and intact floor tile does not spontaneously release asbestos fibers into the air. Further, NYCHA's policy of layering new VAT over old VAT has eliminated the hazardous release of asbestos fibers due to improperly performed abatement procedures. Therefore, G-I argues there is no danger to NYCHA's tenants, and the only problem is the added layer of expense when removing VAT.

G-I relies on *MRI Broadway Rental, Inc. v. United States Mineral Products Co.*, 92 N.Y.2d 421, 704 N.E.2d 550 (1998) ("*MRI II*"), wherein the Court found that the injuries for which plaintiffs claimed damages were not entirely related to the friability of asbestos, but for the most part related simply to the presence of asbestos in the building. G-I argues that the facts of *MRI II* are similar to the present case. G-I argues the claim for relief from the presence of asbestos in NYCHA buildings should have been brought at 1985, at the latest, are thus recast tort claims, and must therefore be dismissed as time-barred. G-I claims NYCHA was undertaking

substantial asbestos abatement work in its buildings in 1986 and 1987, more than ten years before the bankruptcy case was filed in 2001, and it sustained damages months if not years before the cutoff date for claims in this case, and, during all this time, NYCHA failed to ever make a claim.

G-I argues that NYCHA has conceded that intact, undamaged VAT is not harmful unless it is disturbed by NYCHA's own maintenance and renovation activities. G-I advances this is not the type of hazard that is consistent with the urgency in the handling of lead paint in *LIA III*. As to NYCHA's other claims for built-up roofing and pipe and block insulation, G-I urges that NYCHA has stipulated that in-place and undisturbed asbestos-containing roofing products do not pose an exposure risk to tenants or employees and that undamaged asbestos-containing pipe and block insulation do not create a hazard to its tenants or employees. With respect to all the ACM that NYCHA claims as part of its proof of claim, G-I urges if these materials are undisturbed they pose no health or safety hazard to tenants or other third parties.

G-I urges that the present situation does not present the classic case for indemnity, which is to compensate a blameless party for having to pay damages to an injured party, because NYCHA has not come forward with evidence that it expended funds to a third party in reference to a duty to compensate said injured party. G-I further argues that NYCHA has not established that G-I owes a duty to NYCHA's tenants, as no tenant is in danger of a health hazard until NYCHA decides to disturb the tiles as part of its maintenance program.

G-I argues NYCHA has not shown that G-I has a duty to NYCHA's tenants, which is required for indemnity and restitution claims. G-I argues if failure to warn of the hazards is the source of the duty, as opposed to an imminent hazard where someone has to act immediately, then this would qualify as a recast tort claim and be time-barred here. G-I claims NYCHA has

not brought forth evidence to show that VAT is inherently dangerous nor brought forth evidence of any urgent public health risk making it immediately necessary to satisfy the requirements of public health and safety. Rather, whenever NYCHA chooses to perform maintenance or renovations, it must comply with safety regulations to ensure the safety of the building, and here wishes to place the economic costs for the same upon G-I. Thus, G-I argues there is no true indemnity or restitution claims proven, but rather recast time-barred tort claims. Finally, G-I argues that NYCHA is not entitled to restitution damages for the cost of future abatement activities.

G-I further argues that because NYCHA has not acted in accordance with equitable principles due to unexplained delay, it should be foreclosed from asserting relief pursuant to the equitable doctrine of laches. G-I argues the latest time to bring the claim should have been 1985, when NYCHA had information that G-I or GAF's products might be in their buildings and when NYCHA was aware of the widespread public discussions about asbestos and its potential hazards, and that NYCHA has not explained the delay. G-I continued that the unexplained delay has caused prejudice to G-I, and therefore NYCHA should not be entitled to equitable relief. G-I also notes there is evidence in this record which should have put NYCHA on notice of the potential hazards of asbestos contamination, including a 1966 New York Times article on the subject. As well, NYCHA was purchasing VAT from vendors who were working with Ruberoid and GAF and in the best position to know that asbestos products were in NYCHA buildings. Based upon its record of constructing housing, G-I urges that NYCHA had to be aware of asbestos in its buildings and accordingly has not presented an excuse for its decades of delay in bringing its claim.

G-I argues it is prejudiced because the claims brought in 2008 could have been brought in 1985, at a time when GAF was subsumed in litigation relating to asbestos claims and when all its fact witnesses were available to testify. However, at this time, at least four key fact witnesses and many others are deceased or very elderly. G-I claims it is prejudiced by being prevented from consulting with these individuals to construct a defense or evaluate demeanor or credibility. G-I argues that the delay has caused a loss of fact witnesses, which prejudices it by denying it of the opportunity to present a full and fair defense on this claim.

In response to G-I and in support of its own cross motion for partial summary judgment as to liability, NYCHA argues that Boranian's potential testimony would be futile because he would likely not be permitted to testify. First, NYCHA raises the issue of whether Boranian would be able to testify based upon what NYCHA characterizes as the uncertainty in his methodology for identifying asbestos in VAT, which NYCHA claims he allegedly identified in a deposition as "guesswork," and, if permitted to do so, NYCHA argues he would have lacked credibility.

Next, NYCHA claims that equitable principles should foreclose G-I's ability to assert laches because for over thirty years G-I and its predecessors have has engaged in a pattern of conduct of intentionally concealing the fact of asbestos in its products and its dangers. NYCHA urges that G-I's laches defense should be rejected because the delay in filing the claim was a result of G-I's and its predecessors' failure to be forthcoming with the hazardous nature of its products including VAT and other ACM. NYCHA argues this prejudicial conduct should deprive G-I of the equitable defense of laches. Finally, NYCHA claims that G-I and its predecessors caused the delay by concealing the risks of their products. NYCHA urges that, at a

minimum, there is a factual question as to NYCHA's knowledge of the dangers of these products and at what time NYCHA became aware of these dangers.

NYCHA urges there are tenants presently living in NYCHA properties that are engaging in a multitude of daily activities that create wear-and-tear on the VAT.  NYCHA claims the fact these products need to be replaced in the future during repairs, renovations, and modifications creates a legal duty of NYCHA to protect its tenants and take reasonable steps to provide safe conditions, especially with respect to floor tiles, roofing materials, and other ACM.  NYCHA acknowledges its buildings are not creating a danger or risk to tenants or others today, but the fact that people are in the buildings encountering ACM creates a risk.  NYCHA argues that the risk is not the actual event, but the potential that it could occur that creates an inherent danger.  To address this potential risk of exposing tenants to asbestos and potential mesothelioma when NYCHA renovates its buildings or removes VAT, it must take steps to abate the situation pursuant to applicable local and federal rules and standards.  NYCHA urges that G-I should indemnify or reimburse NYCHA through restitution for its costs and expenses.  NYCHA further argues that G-I has always maintained in this case that numerous experts, other than Boranian, would be needed to inspect NYCHA buildings and determine whether and where asbestos products are currently installed.  Accordingly, there is no prejudice to G-I sufficient to invoke the doctrine of laches.

NYCHA relies upon *Keene Corp.* and the *LIA* cases arguing the issue in those cases was whether the plaintiffs properly articulated claims of restitution and indemnity, and the courts in those cases made determinations in the affirmative.  In *Keene Corp.* and the *LIA* cases, the courts were looking at asbestos and LBP removal, respectively, and in those cases, NYCHA urges, the court never required that such products had to be removed immediately.  NYCHA claims that, at

a minimum, two factual questions exist in the present case: whether there is wear and tear, and the risk thereof, *and* under New York law, whether immediate action is required based upon the risk of exposure. NYCHA urges that the answer to both those questions is yes – but, at a minimum, factual issues exist. NYCHA disagrees with G-I's application of *MRI*. NYCHA argues that although a claim for restitution requires immediate action, "immediate" does not mean that it has to happen today. NYCHA also urges that in *Keene Corp.* and the *LIA* cases, New York courts have held that restitution damages *can* extend to future costs which this Court can estimate going forward.

NYCHA argues that G-I, in its Responsive Statement of Undisputed Facts in Support of G-I's Opposition to NYCHA's Motion for Summary Judgment, disputes every factual issue that NYCHA has identified in its cross motion for summary judgment and argues Ewing's testimony is inadmissible. NYCHA claims that whether Ewing's testimony is admissible is a factual question of the same type as G-I's witness, Boranian, where NYCHA raises an issue as to whether Boranian, or other witnesses identified by G-I, is of the type that would have the knowledge, data, and methodology to meet admissibility requirements.

NYCHA argues there is no doubt it has an absolute legal duty under New York law to provide safe housing to its tenants and to remediate and abate asbestos when it poses a health hazard. NYCHA also claims, at a minimum, there is a factual question as to what constitutes abatement (i.e. removal, encapsulation, cordoning off), which buildings contain G-I's predecessors' products, and what the costs are with regard to abatement. Notwithstanding, NYCHA argues there is evidence that proves these products from GAF were installed in NYCHA buildings, G-I's predecessors had superior knowledge of the dangers of these products, G-I's predecessors went through a pattern of hiding the same from NYCHA, and NYCHA, under

a legal duty imposed by local, state, and federal law is undertaking a course of conduct of
abatement that rightfully should have belonged to G-I, all giving rise to claims for equitable
indemnity and restitution, citing *LIA IV*.  NYCHA continues that the only issue not proven by
NYCHA is whether every floor tile was made by G-I predecessors, which is an issue reserved for
a trial.

Finally, NYCHA urges that in the case of *MBIA Insurance Corp. v. Morgan Stanley*, 42
Misc. 3d 1213(A), 984 N.Y.S.2d 633 (Sup. Ct. 2011), the concept that restitution does not
encompass future costs was rejected.

In reply, G-I claims NYCHA cannot show that G-I knew facts about the hazards of VAT
specifically that NYCHA did not know.  G-I claims that NYCHA attempts to demonstrate what
G-I knew generally about asbestos and argues that G-I has failed to show that NYCHA knew
anything about the hazards of VAT, and NYCHA does not acknowledge the fact that NYCHA
was aware of the dangers of VAT and other ACM decades before the bankruptcy of G-I.  G-I
argues that NYCHA became aware of the potential hazards of exposure to asbestos fibers at least
as early as the 1980s, had a policy in place by 1989 for handling VAT in its housing units that
called for leaving VAT intact and undisturbed and for removal when necessary, similar to the
policy used today, and no later than 1991 NYCHA had established its own internal asbestos
detection and abatement unit.  G-I continues that NYCHA had the opportunity to file a claim
against GAF in 1984 when the City of New York brought suit against GAF, but chose not to do
so and instead maintained and renovated the floor tile in the ordinary course.  G-I claims it was
only when NYCHA received notice of the claims bar date in this bankruptcy case of October 15,
2008 that it filed its present claim, days before the bar date, and for the first time raised its claim

as a litigation strategy to obtain some benefit from the bankruptcy case.  As such, G-I argues there is no excuse as to why this claim should not have been brought years ago.

G-I argues the suggestion that here there is an inherent danger in the VAT is belied by NYCHA's action and policies which indicate that VAT is a "maintenance problem."  That is, when NYCHA chooses to disturb the VAT for its own renovation purposes, NYCHA has to take safety measures, and that the Ewing Affidavit and the Finley Affidavit (the parties' respective experts) agree that the safety measures are effective and there are no respirable asbestos fibers being emitted in NYCHA's buildings putting tenants at risk.  Further, G-I argues NYCHA has not demonstrated any emergency, immediate hazard, or danger to the public health or safety, and presents no case law that shows the "mere risk" of such is enough, or that ordinary wear and tear of the VAT creates a harm.  The only danger arises when NYCHA conducts renovation or repairs in its buildings and must employ safety measures.

Boranian worked for GAF and Ruberoid from 1963 to 1981 and was instrumental in the research and manufacturing of these tiles, and during that time he amassed the knowledge to determine which tiles belonged to GAF.  However, G-I posits that based on NYCHA's decades of delay, Boranian is no longer available to testify based upon his death, and G-I's other experts may not have the same expertise as Boranian did to identify the subject tiles.

G-I argues that this Court's 2010 Opinion is clear that a restitution claim does not extend to future costs, and the only claim NYCHA can have is for monies already expended, citing *State of New York v. Schenectady Chemicals, Inc.*, 103 A.D.2d 33, 39, 479 N.Y.S.2d 1010 (1984). The question instead is whether there is a present hazard; G-I claims that unlike LBP, VAT and ACM do not pose a *present* hazard.  G-I further argues that the *MRI* and *888 7th Avenue Assocs.*

75

cases should control, which rejected similar indemnification and restitution claims in the asbestos context.

In reply, NYCHA argues G-I misreads *MRI* as did the defendants in *LIA IV*. NYCHA asserts that LBP is a product like asbestos in that it "sits there and then you have to deal with it" and comply with applicable laws and regulations.

NYCHA urges the New York courts have rejected G-I's position. NYCHA claims that in 1985 it could identify their product, but does not concede that it knew about its claims.

NYCHA also claims that, at a minimum, there is a factual question as to whether G-I can defend itself because, although Boranian has passed away, there are hundreds of depositions that opine on all aspects of the issues at play in this proceeding. Further, NYCHA claims that had G-I believed Bornanian's testimony was critical, G-I would have preserved it at a time before he passed away in 2011. NYCHA also identifies, as a fact issue, whether undisturbed VAT is or is not a risk, whether the action taken by NYCHA is needed to be taken right now (a mixed question of fact and law), and whether there is an immediate danger or risk.

G-I argues NYCHA has failed to deliver any evidence it promised pursuant to the 2010 Opinion, which outlined the elements to prove the restitution and indemnity claims. Instead, G-I claims NYCHA changed its legal theory that removal of VAT and expending costs to meet the safety requirements is a basis to warrant indemnity and restitution based upon an alleged hazard. G-I asserts that NYCHA's claims are not true restitution or indemnity claims and that summary judgment dismissing the claims should be entered in favor of G-I at this time.

NYCHA argues it has, beyond question, shown there is a duty and risk, or at a minimum a factual question as to the same, to support its restitution claim. Additionally, NYCHA disagrees that it has to produce all of its proofs at this time on its restitution and indemnity claims

because it is only moving on one theory and only for partial summary judgment. Further, NYCHA urges that there is a factual question as to whether there is a risk immediately upon usage or the removal and modification of the products that should result in the denial of summary judgment as to all parties.

Post-Hearing Submissions:

On July 7, 2015, NYCHA submitted a letter arguing that *LIA IV* is the controlling decision on indemnity and restitution claims, not *MRI II* as G-I argued at the June 25, 2015 hearing. *See* Letter Dated July 7, 2015 Filed on Behalf of N.Y.C. Hous. Auth., *In re G-I Holdings, Inc.*, Case No. 01-30135, Docket No. 10944. NYCHA noted that the Court of Appeals in *MRI II* did not overrule *LIA IV* as *MRI II* did not address restitution or indemnity causes of action, and as such, *LIA IV* remains the definitive law in New York on the same. *Id.*

On July 29, 2015, G-I responded by arguing NYCHA mischaracterizes G-I's argument and misconstrues New York law in that G-I did not contend that *MRI II* or its Appellate Division antecedent *MRI I*, 242 A.D.2d 440 overrules *LIA IV*, but rather that both cases are easily reconcilable considering their factual circumstances. *See* Letter Dated July 29, 2015 in Response to N.Y.C. Hous. Auth.'s Letter Dated July 7, 2015, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 10945. G-I continues that both the *MRI* and *LIA* cases stand for the proposition that indemnity and restitution claims are viable where the underlying tort claims are time-barred only when there is a need for immediate performance of a duty to a third party to stem a present, ongoing hazard, and LBP, as described in the *LIA* cases, constitutes an immediate and ongoing health and safety hazard, whereas asbestos does not, as the *MRI* cases decided. *Id.* G-I argues that the *MRI* cases are the most pertinent opinions here because they "reflect the proper

application of the governing principle – that recasting time-barred tort claims as indemnity and restitution claims, as NYCHA does here, does not revive those tort claims." *Id.*

## LEGAL STANDARDS & ANALYSIS

### A. Jurisdiction

Pursuant to 28 U.S.C. § 157, adjudication of a claim arising in a bankruptcy proceeding is a core matter. *See generally* 28 U.S.C. § 157(b) (2008). Further, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. *See* 28 U.S.C. § 1334 (2008). Finally, venue is proper pursuant to 28 U.S.C. § 1409(a) (2008).

### B. Allowance of Claims

The allowance of claims is governed by Section 502 of the Bankruptcy Code which provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a) (2008). Federal Rule of Bankruptcy Procedure 3007 provides that an objection to the allowance of a claim must be in writing and filed, and that a copy of the objection must be mailed or otherwise delivered to the claimant at least thirty days prior to the hearing. Fed. R. Bankr. P. 3007 (2008). If a party in interest objects, then pursuant to 11 U.S.C. § 502(b)(1), a claim will not be allowable if it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1) (2008).

In order to determine whether claims are enforceable for bankruptcy purposes Section 502 relies upon non-bankruptcy law. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245, n. 66

78

(3d Cir. 2005) (citing 4 *Collier on Bankruptcy* ¶ 502.03[2][b][ii] (15th rev. ed. 2003)). As such,

"[a] claim against the bankruptcy estate, therefore, 'will not be allowed in a bankruptcy

proceeding if the same claim would not be enforceable against the debtor outside of

bankruptcy.'" *Id.* (citing *United States v. Sanford*, 979 F.2d 1511, 1513 (11th Cir. 1992)). The

ultimate effect of Section 502 of the Bankruptcy Code "is to provide a bankruptcy trustee with

the same rights and defenses to claims as held by the debtor prior to bankruptcy." *Id.* (citation

omitted).

With respect to the burden of proof for claims brought in the bankruptcy court pursuant

to Section 502(a), the Third Circuit Court of Appeals has explained that the burden of proof

"rests on different parties at different times." *See In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173

(3d Cir. 1992). The claimant must initially "allege facts sufficient to support the claim." *Id.* "If

the averments in [the] filed claim meet this standard of sufficiency," the claim is *prima facie*

valid. *Id.* (internal citation omitted). Thus, "a claim that alleges facts sufficient to support a

legal liability to the claimant satisfies the claimant's initial obligation to go forward" and the

burden shifts to the objector. *Id.* The objector must then "produce evidence which, if believed,

would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.*

at 173-74. "If the objector produces sufficient evidence to negate one or more of the sworn facts

in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a

preponderance of the evidence." *Id.* at 174 (citing *In re WHET, Inc.,* 33 B.R. 424, 437 (Bankr.

D. Mass. 1983)). The burden of persuasion always remains on the claimant. *Id.* (citation

omitted).

### C.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Federal

Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.   The court should state on the record the reasons for

granting or denying the motion." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056.[6]

The United States Supreme Court has defined an "issue of material fact" as a question

which must be answered in order to determine the rights of the parties under substantive law, and

which can only properly be resolved "by a finder of fact because [it] may reasonably be resolved

in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also*

*Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004) ("A fact is material when its

resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a

material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'") (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating that there is no genuine

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Knauss v. Dwek*,

289 F. Supp. 2d 546, 549 (D.N.J. 2003).   Once the movant meets its burden, the burden shifts to

the nonmoving party, who must present evidence establishing that a genuine dispute of material

fact exists, making it necessary to resolve the difference at trial. *Knauss*, 289 F. Supp. 2d at 549.

Summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

---

[6] The quoted language is taken from the 2010 revision of Rule 56(a), which replaces the previous Rule 56(c).
Notably, it replaces "genuine issue of material fact" with "genuine dispute as to any material fact."   Certain cited
cases predate this rule change and use the older terminology.

bear the burden of proof at trial." *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (citation omitted).

Inferences and facts should be construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995). However, parties opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The nonmovant may not rely on mere allegations but must present actual evidence raising a genuine dispute of material fact. *Anderson*, 477 U.S. at 249. In addition, a motion for summary judgment will not be defeated by "the mere existence" of some disputed facts. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "If the evidence [offered by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "[O]nly disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004) (citing *Anderson*, 477 U.S. at 248).

Summary judgment may be proper even though some material facts remain disputed if, after all inferences are drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of law. "[T]he inquiry involved in a ruling on a motion for summary judgment...necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252.

The Third Circuit has held that the purpose of summary judgment is to avoid an unnecessary trial which results in delay and expense, by promptly disposing of any actions in which there is no genuine dispute of material fact. *Tomalewski v. State Farm Life Ins. Co.*, 494

F.2d 882, 884 (3d Cir. 1974).   However, summary judgment is characterized as a "drastic

remedy." *Id.* The Third Circuit has stated that "where there is the slightest doubt as to the

facts," summary judgment may not be granted. *Id.* At the summary judgment stage, therefore,

the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue

for trial." *Knauss*, 289 F. Supp. 2d at 549 (citing *Anderson*, 477 U.S. at 249).

For the reasons discussed below, this Court finds there is no genuine dispute as to

material fact regarding NYCHA's indemnity and restitution claims, and that weighing inferences

in favor of NYCHA, G-I is entitled to summary judgment as a matter of law.


### D. NYCHA's Indemnity and Restitution Claims

On October 13, 2008, NYCHA filed a proof of claim in Debtors' bankruptcy case for

$500 million, which NYCHA claims is necessary to remediate NYCHA-owned housing

complexes and buildings where asbestos-containing products allegedly manufactured, mined,

distributed, and sold by G-I or its predecessors-in-interest were installed.

On December 10, 2008, G-I filed an objection to NYCHA's claim, arguing that the

underlying asbestos property damage claim is time-barred under relevant New York state law.

In its 2010 Opinion, this Court previously dismissed any claims NYCHA may have against G-I

under a tort theory, including negligence, personal injury, and/or property damage as time-barred

under the applicable three-year statute of limitations. *In re G-I Holdings, Inc.*, 443 B.R. 645, 664

(Bankr. D.N.J. 2010), *opinion clarified*, 472 B.R. 263 (Bankr. D.N.J. 2012). This Court further

held that NYCHA's claims for common law indemnity and restitution were not time-barred, as

the applicable statute of limitations is six years. This Court therefore allowed NYCHA the

opportunity "to organize and to present further proofs with respect to [the] issues of material fact

[surrounding the restitution and indemnity arguments]." *Id.* at 670. The Court further set out the following elements of what NYCHA must prove to sustain its claims for indemnity and restitution:

1) VAT is inherently dangerous to tenants;[7]

2) The Debtors are the source of and responsible for the wrongdoing;

3) The dangers of VAT give rise to a duty [of NYCHA and the Debtors] to abate in the interests of public safety;

4) NYCHA has borne those costs; and

5) The cost should have been borne by Debtors.

The Court set forth the elements to be proven under NYCHA's claim for restitution against the Debtors as follows:

6) VAT is inherently dangerous to tenants;

7) The Debtors are the source of the VAT;

8) The dangers of VAT give rise to a duty [of NYCHA and the Debtors] to abate in the interests of public safety;

9) NYCHA has borne the costs; and

10) The cost should have been paid by Debtors.

NYCHA's Cross Motion, *supra*, at 2. Additionally, the Court determined that to prevail on its restitution claim, NYCHA must prove:

11) The actual dangers of VAT;

12) The "urgency" of the public health risk; and

13) The dates expenditures were made by NYCHA and reasonable costs incurred by NYCHA.

*Id.* at 2-3.

---

[7] Although the Court's ruling specifically related to VAT, the facts and issues raised here relates as well to the other products at issue, roofing and Calsilite. *See id.*

### i.    Indemnity

The parties agree here that New York law is applicable.  The principle of indemnity under New York Law has been described by the New York Court of Appeals: "[i]t is a well-settled principle that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity." *State of N.Y. v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 88, 473 N.E.2d 1184 (1984) (citing *McDermott v. City of N.Y.*, 50 N.Y.2d 211, 217, 406 N.E.2d 460 (1980); Restatement, Restitution, § 76).  "The right to indemnity ... is not dependent upon the legislative will.  It springs from a contract, express or implied, and full, not partial, reimbursement is sought." *McDermott*, 50 N.Y.2d at 216 (citations omitted).

As defined in the New York Supreme Court: "There are two categories of indemnity—contractual ... and common-law." *Nelson v. Jereissati*, 2009 N.Y. Misc. LEXIS 3869, at *7 (N.Y. Sup. Ct. Feb. 10, 2009) (citing *City of N.Y. v. College Point Sports Ass'n*, 61 A.D.3d 33, 876 N.Y.S.2d 409 (N.Y. App. Div. 2009)).  "Common law indemnification has been defined as 'nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled [by equity] to indemnity.'" *Id.* at * 8 (citing *McDermott*, 50 N.Y.2d at 217).

The required elements and duties were further detailed in *City of New York v. Lead Industries Ass'n, Inc.*:

> The gravamen of an action for indemnity is that both parties, indemnitor and indemnitee, are subject to a duty to a third person under such circumstances that one of them, as between themselves, should perform it rather than the other.  The classic situation giving rise to a claim for indemnity is where one, without fault on its own part, is held liable to a third party by operation of law (frequently statutory) due to the fault of another.  It is the independent duty which the

> wrongdoer owes to prevent the other from becoming vicariously liable, and cast
> in damages, to the injured party that is the predicate for the indemnity action[,]
> and it is not necessary that the indemnitee establish that the indemnitor ever
> has owed, or currently owes, it a separate duty apart from the duty to indemnify.

222 A.D.2d 119, 125, 644 N.Y.S.2d 919 (1996) ("*LIA III*") (citations omitted).  "An owner can seek indemnity for asbestos clean-up from a party wholly responsible for the wrongdoing." *Chem. Bank v. Stahl*, 237 A.D.2d 231, 232, 655 N.Y.S.2d 24 (1997) (citing *City of N.Y. v. Keene Corp.*, 132 Misc.2d 745, 505 N.Y.S.2d 782 (Sup. Ct. 1986), *aff'd*, 129 A.D.2d 1019, 513 N.Y.S.2d 1004 (1987)).

True indemnity claims (like true restitution claims) arise from a quasi-contractual obligation of a defendant to a plaintiff where the plaintiff has expended resources to remedy harm on behalf of third parties which expenses should have properly been borne by defendant. *See City of N.Y. v. Lead Indus. Ass'n, Inc.*, 182 Misc. 2d 835, 840, 700 N.Y.S.2d 361 (Sup. Ct. 1999) ("*LIA IV*").

To prevail on a claim for implied indemnification, a plaintiff must prove the following: (1) both plaintiff and defendant owed a duty to third parties; and (2) plaintiff discharged the duty; (3) which, as between plaintiff and defendant, should have been discharged by defendant. *See McDermott*, 50 N.Y.2d at 217; *LIA III*, 222 A.D.2d at 124-25; *Germantown Cent. Sch. Dist. v. Clark, Clark, Millis & Gilson, AIA*, 294 A.D.2d 93, 98-99, n. 2, 743 N.Y.2d 599 (2002), *aff'd on other grounds*, 100 N.Y.S.2d 202, 791 N.E.2d 398 (2003).

### 1.  Duties of NYCHA and G-I to Tenants

There is no dispute based upon the various local, state, and federal statutes, rules, and regulations cited at length above, that NYCHA owes a duty to provide habitable living conditions to the tenants in its buildings.  The issue here, however, is whether that duty extends to G-I.

NYCHA relies on, among other cases, *City of New York v. Keene Corp.*, where the New York Supreme Court, on motions to dismiss by defendants, denied such motions as against the plaintiffs, finding that plaintiffs adequately plead causes of action for indemnity and restitution based on the manufacturers of asbestos in that case having a duty to abate their hazardous products. *See* 132 Misc. 2d at 749-50. In *Keene Corp.*, New York City and its Board of Education (plaintiffs) brought an action against asbestos manufacturers and installers (defendants) for indemnity and restitution based upon defendants' claimed negligence or liability in strict products liability. *See id.* at 745. The court determined that plaintiffs had a duty to provide a safe and healthy environment for school children which was derived from common law and the New York School Asbestos Safety Act, Education Law § 430 *et seq*, and that assuming that defendants breached a duty under strict liability and/or under the negligence causes of action, it would be unfair for plaintiffs to bear the costs when they played no part in causing the allegedly hazardous conditions. *Id.* at 749-50. The court there stated:

> Indemnity is rooted in principles of equity. Simple fairness mandates that "[a] person who, in whole or in part, has discharged a duty ... which as between himself and another should have been discharged by the other, is entitled to indemnity." "To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs." The law implies a contract to reimburse in cases of unjust enrichment "[w]here payment by one person is compelled, which another should have made."

*Id.* at 749 (citations omitted).

The application of *Keene Corp.* is somewhat limited here as that decision dealt solely with whether the causes of action for indemnity and restitution had been adequately plead. *Keene Corp.* also dealt with underlying tort claims which were not time-barred, whereas here the statute of limitations has already expired on the underlying tort claims. While it is clear under New York law that true restitution and indemnity claims are "…independent of their tort and

product liability claims" and remain viable after such claims are dismissed as time-barred, the issue before this Court is whether NYCHA has, at this stage of the proceedings, presented the elements necessary to sustain these causes of action at the summary judgment stage of these proceedings. *See LIA IV*, 182 Misc. 2d 835; *LIA III*, 222 A.D.2d 119.

NYCHA's also relies on *New York v. West Side Corp.* for the proposition that G-I owes a duty to NYCHA's tenants. 790 F. Supp. 2d 13 (E.D.N.Y. 2011). In *West Side Corp.*, the court held, on a motion by the manufacturer defendants to dismiss certain counts of the complaint, including restitution and indemnification, a manufacturer owed a duty to the public to abate and remediate groundwater contamination that the manufacturer allegedly caused. *Id.* at 32-33. It is also notable that although the *West Side Corp.* court found a duty with respect to the restitution claim, the court found that the plaintiff, the State of New York, did not identify or allege in its complaint that it had a duty or legal obligation to remediate the site, so the court found that its indemnification claim failed as plead. The State was granted thirty days to re-plead that count. *Id.* The present matter concerns liability associated with ACM, not groundwater contamination, and is therefore distinguishable. NYCHA's reliance on *LIA III* and *LIA IV* is similarly distinguishable because those cases dealt with the duty owed in relation to lead based paint ("LBP"). This case presents different hazards and different duties of the parties.

G-I relies on *Germantown Central School District v. Clark, Clark, Millis & Gilson, AIA*, where the New York Supreme Court, Appellate Division held that an architectural firm and engineering subcontractor (defendants) who conducted asbestos abatement services and improperly certified a school (plaintiff) as asbestos-free had no duty toward third parties, particularly the plaintiff school's employees and students of the school. *See* 294 A.D.2d at 94, 98-99. Thirteen years after defendants completed the asbestos abatement services, plaintiff

retained consultants who determined asbestos was still present in areas of the building.  *Id.* at 94.

Plaintiff completed further abatement work and brought suit against defendants, including claims

for indemnity and restitution, arguing that defendants owed a duty to the plaintiff school's

students and employees which plaintiff claims it discharged by investigating and partially

abating the asbestos that defendants had earlier incorrectly certified had been removed.  *Id.*  The

court determined the plaintiff failed to provide any basis or authority upon which to impose a

duty on defendants to the third parties, and further, that defendants, who did not manufacture the

asbestos, at most negligently performed or misrepresented the abatement services for which

plaintiffs had contracted.  *Id.* at 98-99.   The *Germantown* Court thus concluded that the

plaintiff's claim must be considered under the auspices of a breach of contract or tort theory,

both of which were time-barred, and not under an indemnity or restitution theory.  *Id.* at 99.

G-I also relies on *Chase Manhattan Bank, N.A. v. T & N plc* to assert that there the court

found that plaintiff Chase could not support its restitution cause of action because Chase

repeatedly assured the tenants that the building was safe.  G-I urges that *Chase Manhattan Bank*

establishes under New York law that a building owner cannot assert its buildings are safe, wait

decades to remove ACM, and then insist – in litigation – that removal of ACM constitutes a

restitution worthy emergency.  *See* 1996 WL 603934 (S.D.N.Y. Oct. 22, 1996).   In *Chase

Manhattan Bank*, the court held that the defendant manufacturer did not owe a duty to the public

because it was not proven that any money was expended on behalf of the manufacturer's

wrongdoing.  *Id.* at *11.  NYCHA attempts to distinguish the claims in *Chase Manhattan Bank*

from the present matter by asserting that its claims for indemnification and restitution are not for

removal of the ACM, but rather to reimburse for the unjust enrichment G-I is receiving through

NYCHA's use of precautionary abatement techniques needed to keep the public safe when ACM

is disturbed.  This distinction is unpersuasive.  Like in *Chase Manhattan Bank*, NYCHA has not proven that G-I owes a duty to NYCHA's tenants, nor that any funds were expended pursuant to that duty.  *See id.*

This Court must determine whether NYCHA's duty extends to G-I based upon NYCHA's own initiatives to conduct repairs and renovations.  NYCHA does not assert that the asbestos levels in its air are at an unsafe level, or that airborne asbestos levels present a present danger.  *See id.* ("Chase has failed to establish that [defendant] manufactured, marketed or sold a defective product for which Chase has been required to spend money to abate the resulting hazards.  The evidence showed that, despite the presence of [asbestos fireproofing], the air inside One [Chase Manhattan Plaza] remained safe.").  In this case, the asbestos levels are within acceptable limits in its buildings because NYCHA implements effective abatement procedures.

Although NYCHA owes a duty to provide habitable living conditions to its tenants under applicable local, state, and federal law, NYCHA has failed to provide any basis or authority upon which to impose such a duty on G-I to these third parties, nor is there any genuine dispute as to any material fact, based on this record, as to the lack of such duty on G-I.  When NYCHA disturbs the VAT or other ACM pursuant to its own abatement policies, it is required to follow safety regulations.  NYCHA's duty to protect its tenants by using safety precautions when repairing or renovating its buildings does not extend to G-I, which duty is a required element of NYCHA's indemnity claim against G-I.

### 2. *Evidence of Abatement*

G-I argues that because NYCHA has not presented evidence that it has compensated any injured party in response to hazards created by VAT or other ACM, it is not entitled to indemnification.  Although a traditional indemnity claim is predicated upon plaintiffs making

direct payments to injured parties, the *LIA III* court found "there is no reason why expenditures for abating and cleaning up the hazards attributable to defendants and treating and monitoring the health of children exposed to those hazards should not be equally compensable." *See* 222 A.D.2d at 128. Thus, this Court does not foreclose the possibility for NYCHA to recover on its expenditures to abate the VAT or other ACM solely because it has not compensated its buildings' inhabitants by direct payments.

The *Keene Corp.* court sustained on a motion to dismiss plaintiffs' indemnity claim because, although the applicable law and regulations

> [do] not specifically require plaintiffs to abate the asbestos hazard, it does require them to take steps necessary to carry out their common-law duty [to provide a safe and healthy environment for school children]. Specifically, plaintiffs, *inter alia*, must inspect for asbestos hazards, prepare annual inspection reports and develop plans for correcting hazardous asbestos conditions. The cost of such preparatory activity is subject to a claim for indemnity.

*See* 132 Misc. 2d at 750 (citations omitted).

In the 2010 Opinion, this Court noted that NYCHA's claim for indemnity would be determined based on the "reasonable quantum of abatement costs that should have been borne by the Debtors," and that restitution claims would be "limited to the reasonable costs of abatement, not necessarily the amount expended, and [do] not extend to future costs." *In re G-I Holdings, Inc.*, 443 B.R. at 669-70 (citing *State of N.Y. v. Schenectady Chem., Inc.*, 103 A.D.2d 33, 39, 479 N.Y.S.2d 1010 (1984)). NYCHA has argued that such limitation on future restitution costs was rejected by the New York Court in *MBIA Insurance Corp. v. Morgan Stanley*, 42 Misc. 3d 1213(A), 984 N.Y.S.2d633 (Sup. Ct. 2011) ("Plaintiff's claim for future damages [based on an unjust enrichment claim] cannot be dismissed at this stage of the proceeding").

There is a genuine dispute as to material facts related to NYCHA's abatement expenses recoverable pursuant to its alleged indemnity claim. This Court, however, finds that because G-I

does not owe a duty to NYCHA's tenants to sustain an indemnity claim or cause of action, this Court need not determine whether NYCHA would be capable of submitting sufficient abatement evidence at trial.

### 3. Who Should Bear Cost

Undoubtedly, all asbestos-containing buildings will need to be renovated or remodeled at some point. Because abatement will inevitably occur, however, does not necessarily mean the hazard at the present time is of the type that is compensable by way of indemnity or restitution.

In *MRI Broadway Rental, Inc. v. United States Mineral Products Co. ("MRI II")*, plaintiff building owner was barred from claiming indemnification from defendant asbestos manufacturer for "damages [] not entirely related to the friability of the asbestos, but for the most part relate[d] simply to the presence of asbestos in the building," and where "[b]y plaintiff's own admission, the level of friable asbestos in the building does not now exceed OSHA standards." 92 N.Y.2d 421, 428-29, 704 N.E.2d 550 (1998). Similarly, the issue here is maintenance-related as opposed to responding to a present harm and is not compensable under a claim of indemnity. Therefore, NYCHA is barred from seeking indemnity for abatement that is not required to respond to an actual present danger, but rather one that may arise in the future as a result of NYCHA's maintenance-related activities.

This Court finds that although NYCHA owes a duty to its tenants, that duty does not extend, as a matter of law, to G-I to indemnify NYCHA for its own activities. Although this Court would require more evidence to factually determine NYCHA's abatement activities and costs related thereto, NYCHA's indemnity claim fails because there is no genuine dispute as to any material fact that G-I does not owe a duty to NYCHA's tenants, and the cost of abatement activities incurred by NYCHA would not properly be borne by G-I. Therefore, as a matter of

law, summary judgment must be granted in favor of G-I and against NYCHA with respect to NYCHA's common law indemnity claim.

### ii.    Restitution

Under New York law, restitution claims are governed by the "emergency assistance doctrine" derived from Section 115 of the Restatement (First) of Restitution. Under this provision:

> A person who has performed the duty of another, by supplying things or services, although acting without the other's knowledge or consent, is entitled to restitution from the other if (a) he acted unofficiously and with intent to charge therefore, and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety.

*Nat'l R.R. Passenger Corp. v. N.Y.C. Hous. Auth.*, 819 F. Supp. 1271, 1279–80 (S.D.N.Y. 1993) (citing *Keene Corp.*, 132 Misc. 2d at 747; *Schenectady Chems., Inc.*, 103 A.D.2d 33; *State v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83).

"A restitution cause of action ... require[s] an *allegation* that the act performed was 'immediately necessary to satisfy the requirements of public ... health, or safety.'" *Keene Corp.*, 132 Misc.2d at 751 (emphasis added) (citing Restatement of Restitution § 115). Restitution claims "are, however, 'limited to the reasonable costs for abatement, not necessarily the amount expended, and [do] not extend to future costs.'" *Id.*; *see Schenectady Chems., Inc.*, 103 A.D.2d at 39. Therefore, any claims brought in the instant case as true restitution claims for expenditures related to the remediation of asbestos-related property damage must be evidenced properly, and such expenditures are subject to a reasonableness determination by this Court.

In order to establish a true restitution claim, the indemnitee need not provide advanced notice to the indemnitor before taking action in the interests of public health, but the claimant

must establish that it had a duty to act.  "In order to maintain a cause of action for common law restitution, a plaintiff must allege that it performed the defendants' duty by supplying things or services that 'were immediately necessary to satisfy the requirements of public decency, health or safety.'"  *New York v. Hickey's Carting, Inc.*, 380 F. Supp. 2d 108, 121 (E.D.N.Y. 2005) (citing *LIA III*, 222 A.D.2d at 125).

> Reading § 115 of the Restatement in its logical construction leads to the conclusion that a party acting without another party's consent or knowledge need not necessarily expressly advise the other party of an intent to charge for services supplied. This becomes readily apparent when, as here, the services of the plaintiffs were necessary for public health and safety requirements – and where it is fair to presume that the expression of a specific intent to seek restitution from the defendants would have met with no response.

*City of N.Y. v. Lead Indus. Ass'n, Inc.*, 1991 WL 284454, at *7 (N.Y. Sup. Ct. Dec. 23, 1991), *aff'd*, 190 A.D.2d 173, 597 N.Y.S.2d 698 (1993) ("*LIA I*").

"There is a clear distinction between those situations where a party acts for humanitarian purposes in rendering insignificant or voluntary services and services rendered because of a compelling public need." *Id.*  This was later reinforced in *LIA III*:

> Unlike a claim for indemnity, a plaintiff seeking restitution need not have been under a duty to perform that for which restitution is sought but, rather, that such party because there was an immediate necessity to protect "public decency, health or safety," took action to fulfill a duty actually owed by the defendant restitutor. While traditionally, it was necessary that plaintiff have acted voluntarily, it has been held that it is not fatal to a cause of action for restitution that the plaintiff may also have had a statutory duty to act.

222 A.D.2d at 125-26 (citations omitted). In other words, to maintain a claim for restitution in this case, the Housing Authority need not prove that it provided Debtors with notice of its intent to charge for the abatement work, but it must establish that it had an underlying duty to tenants to perform this work (as opposed to if the abatement work performed was insignificant or voluntarily performed for altruistic reasons).

Additionally, the *Chase Manhattan Bank* court held that plaintiff need not be under an independent duty to act to assert a restitution claim. 1996 WL 603934, at *9. Instead, he must show that, because there was an immediate necessity to protect public decency, health, or safety, he took action to fulfill a duty actually owed by the defendant. *Id.*

In the 2010 Opinion, this Court noted that:

> to maintain a claim for restitution in this case, [NYCHA] need not prove that it provided Debtors with notice of its intent to charge for the abatement work, but it must establish that it had an underlying duty to tenants to perform this work (as opposed to if the abatement work performed was insignificant or voluntarily performed for altruistic reasons).

443 B.R. at 671.

Additionally, NYCHA must prove that abatement was immediately necessary to protect public decency, health, or safety.

### *Actual Dangers of VAT and other ACM and Urgency of Public Health Risk*

This Court must determine here whether the actual dangers of VAT or other ACM to tenants are sufficient to pose an immediate and urgent public health risk to sustain a claim for common law restitution. NYCHA has alleged here that VAT and ACM are inherently dangerous to tenants. When interpreting what is meant by inherently dangerous, courts must rely upon the circumstances of each case without precise definition. *See Poplar v. Bourjois, Inc.*, 298 N.Y. 62, 66, 80 N.E.2d 334 (1948).[8]

Based upon the record, parties have stipulated here that:

> when a building or apartment is not undergoing repair, renovation, alteration, or demolition work that requires removal of ACM – it is NYCHA's position that intact, undamaged ACM in NYCHA buildings do not pose a health or safety

---

[8] For example, one court has defined inherently dangerous as danger "that inheres in the instrumentality or condition itself, at all times, so as to require special precautions to be taken with regard to it to prevent injury; instead of danger arising from mere causal or collateral negligence of others with respect to it under particular circumstances." *Emery v. Thompson*, 347 Mo. 494, 498, 148 S.W.2d 479 (1941) (finding railroad ties piled upon the right of way of a railroad were not inherently dangerous; rather the danger arose from causal or collateral negligence of others in piling the ties).

> hazard to persons in the buildings.  When repairing ACM that are not intact and
> undamaged, and when such renovation, alteration, demolition, or abatement work
> is occurring, NYCHA implements the abatement procedures required by
> applicable New York City, state, and federal laws, regulations, and rules, adopted
> and implemented to prevent asbestos from entering the ambient air.

Stipulation of Facts, *supra*, at ¶ 9.  Undamaged, undisturbed VAT and other ACM pose no health

risk to inhabitants of NYCHA buildings.  Tenants are only susceptible to an airborne asbestos

hazard if proper precautions are not taken when the VAT is disturbed during the course of

remodeling, repair, improvements, removal, or renovations, and there is no dispute that NYCHA

takes safety measures required by law to ensure the health and welfare of tenants when

disturbing VAT or other ACM or performing removal and/or abatement activities.  Because

VAT and other ACM are not dangerous until the limited period when they are being disturbed by

remodeling, repair, removal, demolition, or abatement work, this Court does not find VAT or

other ACM to be imminently dangerous so to support restitution damages.

The *Chase Manhattan Bank* court found that because there was no immediate necessity

to remove the asbestos fireproofing to protect public decency, health, or safety, plaintiff's claim

for restitution under New York State's "emergency assistance doctrine" was denied.  *See* 1996

WL 603934, at *9.  The court noted that cases applying Section 115 of the Restatement (First) of

Restitution illustrate that the nature of the danger must be "acute and severe, not merely serious

or problematic."  *Id.* (relying on *United States v. Consol. Edison Co. of N.Y., Inc.*, 580 F.2d 1122

(2d Cir. 1978); *Peninsular & Oriental Steam Navigation Co. v. Overseas Oil Carriers, Inc.*, 553

F.2d 830 (2d Cir. 1977; *Branlon Twp. V. Jerome Builders, Inc.*, 80 Mich. App. 180, N.W.2d 326

(Mich. Ct. App. 1977)).  The court found the nature of the danger did not warrant the action

plaintiff had taken because the asbestos was present in the building since the time of its

construction, Chase became aware of health hazards associated with asbestos at the latest during

the 1970s, perhaps as early as 1959, and it was not until 1986 plaintiff first adopted the operation and maintenance program to manage or remove the asbestos fireproofing and for which it sought reimbursement. *Id.* at *10. The court continued that plaintiff had continually asserted that the air in the building was safe and the level of airborne asbestos presented no greater danger than that out on the streets. *Id.* The court found there was insufficient credible evidence to support a finding of a threat to public health and safety requiring action within the meaning of § 115. *Id.* The court found that Chase had not proven that the steps it took were *immediately* necessary, that Chase was aware of the presence of asbestos in the fireproofing in the building from the time the building was constructed, and that Chase was aware of the hazards of asbestos as early as 1959 but did not take action to abate the hazard until 1986. *Id.* The court noted that if plaintiff's position were correct, any costs incurred by a building owner to promote safety would be recoverable from another party who has supplied potentially hazardous materials such as gas or electricity. *Id.* The *Chase Manhattan Bank* court concluded that Chase failed to prove that the conditions inside One Chase Plaza were dangerous or hazardous to a degree that would make the costs incurred recoverable in restitution. *Id.*

Assuming that the VAT and ACM present in the NYCHA buildings could or should be categorized as "inherently dangerous" to NYCHA's tenants, this Court is satisfied that this record presents no genuine dispute as to any material fact that the urgency aspect of the VAT and ACM danger as it relates to these present claims has not been proven. Pursuant to NYCHA's 1989 policy, VAT and other ACM are removed from NYCHA apartments in limited circumstances: where "(a) an apartment already has three layers of floor tile and requires a new layer of floor tile; or (b) NYCHA determines that at least ten square feet of the floor tile within the apartment is damaged." Stipulation of Facts, *supra*, at ¶ 13 (citing GM-3766).

"Furthermore, NYCHA repairs or replaces ACM when it determines that they are damaged or no longer intact.   ACM are also removed during the course of capital improvement projects including, but not limited to, common areas, which removals are performed in accordance with applicable laws and regulations."   *Id.*; *see* Clarke 12/11/13 Deposition, *supra*, at 72:24-73:6; Clarke 12/12/13 Deposition, *supra*, at 116:12-117:4; Handbook for Residents of the N.Y.C. Hous. Auth., *supra*, at 39.

Further, the parties stipulated to several facts and statements concerning NYCHA's treatment of ACM which show it is not imminently harmful, including: "Left 'undisturbed' – or, in other words, when a building or apartment is not undergoing repair, renovation, alteration, or demolition work that requires removal of ACM – it is NYCHA's position that intact, undamaged ACM in NYCHA buildings do not pose a health or safety hazard to persons in the buildings;" "Intact floor tile does not spontaneously release asbestos fibers into the air.   And NYCHA's policy of layering new floor tile upon old floor tile has eliminated the chance of hazardous releases of asbestos fibers and exposures due to improperly performed abatement projects;" "It is NYCHA's position that in-place and undisturbed asbestos containing roofing products do not pose an exposure risk to NYCHA tenants or employees.   NYCHA abates asbestos containing roofing only if it is no longer intact, or NYCHA determines it is damaged, or such removal is required in connection with renovation or maintenance activities;" and "NYCHA does not regard the presence of undamaged asbestos containing pipe and block insulation as creating a hazard to its tenants and employees.   NYCHA removes and replaces asbestos containing pipe and block insulation only if NYCHA determines it is damaged or if removal is required in connection with renovation or maintenance activities."   *Id.* ¶¶ 9, 12, 15, 19.

NYCHA relies upon *Independent School District No. 197 v. W.R. Grace & Co.*, which found that the "hazard posed by the presence of the asbestos constitutes no less of an 'emergency' because abatement will require an extended amount of time, and has not yet been completed." 752 F. Supp. 286, 304 (D. Minn. 1990).

The *Chase Manhattan Bank* court also noted:

> It is true that the fact that abatement of a hazard may take time or may not be complete is not a bar to recovery on a claim of restitution. *See Independent Sch. Dist. No 197[]*, 752 F. Supp. at 304; *Fed. Reserve Bank of Minneapolis v. Carey Canada, Inc.*, 1988 WL 220489, at *3 (D. Minn. Aug. 31, 1988). It is also true that the passage of some time between awareness of the alleged hazard and action to remedy the danger may not defeat a restitution claim for lack of immediacy as a matter of law. *See Caterair Int'l Corp. v. LCL Transit Co., Inc.*, 1995 WL 348045, at *7 (N.D. Ill. June 5, 1995) (delay of one year created issue of material fact). But as the Court's factual findings indicate, the delay in this case was over a decade.

1996 WL 603934, at *10.

The New York Court of Appeals in *MRI II* also noted:

> [I]njuries for which plaintiff claims damages are not entirely related to the friability of the asbestos, but for the most part relate simply to the presence of asbestos in the building. By plaintiff's own admission, the level of friable asbestos does not now exceed OSHA standards. Nevertheless, plaintiff claims damages for the cost of abatement, as well as loss of use and value of the building. These damages have no relation to the actual presence of friable asbestos in the air, but rather occurred when the public in general, and the government in particular, became aware of the potential dangers of asbestos-containing buildings. As plaintiff's conduct in undertaking substantial asbestos-abatement work in 1986 and early 1987 indicates, its damages were sustained at least months, if not years, before the August 28, 1987 date which serves as the cutoff of all claims in this case.

92 N.Y.2d at 428-29.

G-I's here asserts that based on a sampling done, 99.9% recorded fiber concentrations were below the .01 f/cc clearance level, meaning only a very minimal amount of the air contains asbestos fibers. The Court finds the facts of this case analogous to *MRI II* in that NYCHA is not

responding to an immediate threat. Instead, NYCHA is abating the asbestos in its buildings in the normal course of its maintenance and repair protocol.

The record here presents facts that are undisputed and support a finding of the lack of an imminent emergency. First, NYCHA presents in this record several of the asserted more than 15,000 abatements it has to date performed. NYCHA instituted a policy in 1989 that advised on the proper treatment of VAT during the removal process. NYCHA has specific policies in place for removal of VAT and other ACM that contradict any emergency or imminent threat of harm. For example, the parties have stipulated that:

> Pursuant to a policy that has been in place since approximately 1989, NYCHA replaces asbestos containing floor tile in vacated apartments only when (a) an apartment already has three layers of floor tile and requires a new layer of floor tile; or (b) NYCHA determines that at least 10 square feet of the floor tile within an apartment is damaged. Furthermore, NYCHA repairs or replaces ACM when it determines that they are damaged or no longer intact. ACM are also removed during the course of capital improvement projects including, but not limited to, common areas, which removals are performed in accordance with applicable laws and regulations;

> It is NYCHA's position that in-place and undisturbed asbestos containing roofing products do not pose an exposure risk to NYCHA tenants or employees. NYCHA abates asbestos containing roofing only if it is no longer intact, or NYCHA determines it is damaged, or such removal is required in connection with renovation or maintenance activities; [and]

> NYCHA does not regard the presence of undamaged asbestos containing pipe and block insulation as creating a hazard to its tenants and employees. NYCHA removes and replaces asbestos containing pipe and block insulation only if NYCHA determines it is damaged or if removal is required in connection with renovation or maintenance activities.

Stipulation of Facts, *supra*, at ¶¶ 13, 15, 19. These policies are at odds with the principle of restitution which is to provide relief to a party who must respond to an imminent health threat in the event of an emergency.

Similarly to the *Chase Manhattan Bank* court, this Court finds that there is no immediate necessity to abate the VAT or other ACM. There is no genuine dispute as to any material fact regarding the lack of urgency of abatement, and therefore summary judgment in favor of G-I and against NYCHA on NYCHA's restitution claims is appropriate.

NYCHA also attempts to compare the dangers of VAT and ACM to the dangers of LBP. The *LIA III* Court held that LBP manufacturers may be held responsible for the abatement costs of LBP. The City of New York, NYCHA, and the New York City Health and Hospitals Corporation (plaintiffs) incurred substantial expenses to monitor and remediate hazards caused by LBP including abatement costs, clean-up costs, and costs for testing and treating children at risk of and suffering from lead poisoning. *See* 222 A.D.2d at 123-24. In reviewing the plaintiffs' claim for indemnity, the court acknowledged the "well-recognized hazards" of LBP and determined the purpose of equitable indemnity would be furthered by implementing preventative and ameliorative steps to abate the hazards at the earliest opportunity to avert the poisonous effects that would result from continued exposure to LBP. *Id.* at 128. Thus, the court determined that although a traditional indemnity claim is predicated upon plaintiffs making direct payments to particular parties injured by the hazards allegedly caused by defendants, there is no reason why the costs attributable to abating and cleaning up the hazards attributable to defendants are not equally compensable. *Id.* The court continued that by taking the steps to abate the potential harm, albeit statutorily imposed, the plaintiffs significantly reduced the potential for harm to the children and limited the extent and amount of potential damages that could be suffered by defendants by way of litigation, which would otherwise arise from the children's exposure to LBP. *Id.* at 129.

The court continued that, concomitantly, the anticipatory steps taken by the plaintiffs, including monitoring and treating the children exposed to the LBP, in effect, shall limit the potential for damages that defendants may have to bear through individual lawsuits on behalf of the children. *Id.* The court stated that:

> [t]o deny plaintiffs the right to seek recovery of the very substantial sums that they have been caused to expend, in remediating and inhibiting the potential for injury and damages due to defendants' unsafe product, would be to permit the alleged defendant wrongdoers to be "unjustly enriched" by insulating them, at plaintiffs' expense, from potential tort and indemnity liability that would otherwise have arisen. This is precisely the kind of inequitable result, and unjust enrichment, that an indemnity action is designed to prevent.

*Id.* (citation omitted).

Although NYCHA claims that VAT and other ACM are inherently dangerous due to their asbestos content, NYCHA treats the undisturbed product as relatively safe. The product it is asserted by NYCHA poses a threat to tenants during the course of removal, which will then require abatement activities, when NYCHA conducts renovation activities. NYCHA states

> [t]he point missed by G-I is that the inherent danger from VAT and other ACMs is not that they "wear down", but that they ultimately will be disturbed during the course of removal, a process so catastrophic to the matrix in which asbestos fibers are imbedded that every governmental unit having jurisdiction over asbestos in the City of New York has required the use of complex protective measures to prevent an urgent health risk.

NYCHA's Reply, *supra*, at 10-11. Here, any imminent hazard created occurs when the VAT or other ACM are disturbed, described at length herein, creating the need for the abatement protocols. This is far different than the scenario in *LIA III* where the risk of LBP was so potent due to daily interaction by people with the products which could create a grave health concern, particularly for children. The distinction in danger is also reflected by the differences in the disclosures made to tenants and the policies in place to treat VAT or other ACM when disturbed as opposed to LBP.

NYCHA's reliance upon the *LIA* cases is misplaced because those cases involved LBP, a danger that is treated much more stringently, or at least differently, than VAT or other ACM according to the policies implemented by NYCHA. Based upon the unique dangers that LBP poses to occupants, especially children, and its ability to be more easily disrupted, such as when a tenant closes a window or door, it creates an immediate hazard because airborne dust can form or small particles can be chewed by children.

NYCHA applies a more stringent protocol for LBP detection including disseminating material to residents about the dangers, conducting random paint sampling on developments constructed before 1978, periodic risk assessments, investigating apartments upon suspicion of LBP and abating, if present. *Compare* GM-3758, *supra* (the policy for LBP based on Local Law 1 of 2004-the New York City Childhood Lead Poisoning Prevention Act and federal regulations), *with* GM-3685, *supra* (the policy for VAT based on New York City Asbestos Rules and Regulations and New York Rules and Regulations). In essence, NYCHA must take affirmative and proactive steps to deal with LBP as opposed to the presence of VAT or other ACM in which NYCHA responds by implementing measures when damage repairs or renovations will impact these materials. The Court does not discount that asbestos may present a serious health risk, but NYCHA on this record does not present such as imminent health risk to justify restitution damages.

VAT and other ACM must be handled with extreme care, but the facts in this record do not warrant restitution damages. It is not appropriate because to do so would make damages recoverable from a party who supplied any potentially hazardous materials or substances. NYCHA in essence, has failed to show it fulfilled a duty also owed by G-I in response to action that was "immediately necessary" to protect "public decency, health, or safety." The Court finds

no genuine dispute as to any material fact regarding the lack of urgency as it pertains to

NYCHA's restitution claims.      Thus, G-I is entitled to summary judgment on NYCHA's

restitution claims.


### iii.    Laches

Laches is an equitable doctrine that bars s a party from enforcing a right "where there has

been an unreasonable and inexcusable delay that results in prejudice to a party." *See Arroyo v.

Bd. of Educ. of City of N.Y.*, 25 Misc. 3d 1229(A), 906 N.Y.S.2d 770 (Sup. Ct. 2009).    To

support a laches defense, the asserting party must show: "(1) conduct by an offending party

giving rise to the situation complained of, (2) delay by the complainant in asserting his or her

claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of

the offending party that the complainant would assert his or her claim for relief, and (4) injury or

prejudice to the offending party in the event that relief is accorded the complainant." *Stein v.

Doukas*, 98 A.D.3d 1026, 1028, 950 N.Y.S.2d 773 (2012).    A review of laches is performed on a

case-by-case basis and depends on the factual circumstances at bar.    *See Cont'l Cas. Co. v.

Emp'rs Ins. Co. of Wausau*, 60 A.D.3d 128, 137, 871 N.Y.S.2d 48 (2008).

The crux of a laches defense is prejudice to the opposing party. *See Arroyo*, 25 Misc. 3d

1229(A) (finding a seventeen year delay between when discovery was initially exchanged and

the instant motion to dismiss sufficed to bar plaintiff's claim by way of laches because witnesses

may have disappeared, died, or lost meaningful memory of events leading to injuries, and that

based upon record retention policies, many of which were less than sixteen years, it is extremely

unlikely that relevant records could be located at this point). *But see Meyers v. Asics Corp.*, 974

F.2d 1304, 1308 (Fed. Cir. 1992) (finding "[c]onclusory statements that there are missing

witnesses, witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient" for a laches defense).

To prevail on a laches defense, a party must show both prejudice to the asserting party and unreasonable and inexcusable delay. *See Arroyo*, 25 Misc. 3d 1229(A). G-I claims that NYCHA delayed over two decades before bringing its causes of action, and that NYCHA had the means to determine the facts underlying its claims since 1985 at the latest. This Court finds NYCHA unreasonably delayed asserting its causes of action. However, there is a material dispute of fact as to whether G-I can present a defense, and therefore whether it has been prejudiced by the delay.

Although G-I identifies some of its main witnesses that will likely be unavailable at trial, G-I mainly discusses its prejudice due to the absence of its product identification witness, Boranian. Other than Boranian's lack of ability to testify as to the origin of NYCHA's VAT, G-I makes, for the most part, conclusory statements that it would suffer prejudice, which are unpersuasive to this Court. Although G-I points to stale evidence and the fact it is missing key witnesses, it has not proven that it does not have the ability to construct a defense based upon the undisputed fact that there are the voluminous documents and evidence that would be available for G-I's preparation. Because there is a genuine dispute as to material fact, that is whether G-I has been prejudiced by NYCHA's delay, a determination of laches is inappropriate to be decided on summary judgment.

### iv.    Time-Barred Recast Tort Claims

The *Keene Corp.* court followed the theory that if defendants are found to have breached a duty under a strict liability or negligence cause of action, then breach of that same duty could

serve as a basis for an indemnity claim. *See* 132 Misc. 2d at 749. *See also LIA III*, 222 A.D.2d at 127 ("[I]t is the breach by defendant of an underlying *duty* owed to a third party, even if an action based thereon by that party against defendant is time-barred that is critical to a plaintiff's right to an indemnity action to recover damages which plaintiff was caused to pay as a result of defendant's breach of its duty to the third party," citing *McDermott*, 50 N.Y.2d 211). The court in *888 7th Avenue Assocs. Limited P'ship v. AAER Sprayed Insulations, Inc.* stated that plaintiff's restitution and indemnity causes of action were properly dismissed because defendants' only duty to third parties was by reason of other causes of action, all of which were time-barred. *See* 199 A.D.2d 50, 51, 605 N.Y.S.2d 25 (1993). *See also MRI Broadway Rental, Inc. v. U.S. Mineral Prod. Co.*, 242 A.D.2d 440, 444, 662 N.Y.S.2d 114 (1997), *aff'd*, 92 N.Y.2d 421, 704 N.E.2d 550 (1998) ("*MRI I*") ("It is settled law that an equitable remedy is not available to enforce a legal right that is itself barred by the Statute of Limitations.").

In *888 7th Avenue Assocs.*, a building owner (plaintiff) filed a complaint against an asbestos manufacturer for property damage and economic losses incurred as a result of asbestos exposure. *See* 199 A.D.2d at 51. The *888 7th Avenue Assocs.* court determined that plaintiff's complaint was time-barred because plaintiff failed to commence its action within the applicable three-year statute of limitations of CPLR 214 and accrued when the asbestos actually began to harm. *Id.* The court further determined that plaintiff's restitution and indemnity claims "were properly held to be not viable on the ground that defendants' only duty to third parties would be by reason of other causes of action…, all of which are time barred." *Id.*

Similarly, the *MRI Broadway Rental, Inc. v. United States Mineral Products Co.* ("*MRI I*") court found that plaintiff's goal was to circumvent the statute of limitations and therefore dismissed plaintiff's claim. *See* 242 A.D.2d at 445. In *MRI I*, a building owner (plaintiff) sued

the applier and manufacturers of asbestos-containing fireproofing in the building (defendants), alleging the product creates unsafe and hazardous conditions. *See id.* at 441. The court held that "[t]he equitable remedy [of restitution and indemnity] depends, among other things, upon the existence of a legal cause of action, [and] it follows that those facts which will bar the legal action will also afford an answer to the equitable remedy." *Id.* at 444 (citation omitted). The equitable remedies of restitution and indemnity were found subject to this same rule, and therefore plaintiff's restitution and indemnity claims were dismissed. *Id.*

NYCHA has not sufficiently proven its indemnity and restitution claims, nor are there genuine disputes as to material facts as they pertain to the necessary elements of these claims so that summary judgment must be granted in favor of G-I as a matter of law. This Court also finds that NYCHA's indemnity and restitution claims are recast time-barred tort claims and as such must be dismissed. This Court finds that NYCHA is attempting to circumvent the expired statute of limitations on its tort claims by alleging equitable claims of indemnity and restitution. NYCHA's indemnity and restitution claims are recast tort claims, and are therefore dismissed as time-barred.

CONCLUSION

Based upon the foregoing reasons, G-I's Motion for Summary Judgment against NYCHA on its Indemnity and Restitution claims is GRANTED in its entirety and NYCHA's Motion for Partial Summary Judgment as to Liability is DENIED.

An Order shall be submitted in accordance with this decision.

DATED:  September 9, 2016

*Rosemary Gambardella*

ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE