**FILED**
JEANNE A. NAUGHTON, CLERK

MAY 1 - 2017

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

In Re:

**G-I HOLDINGS, INC. f/k/a GAF
CORPORATION, et al.**

Debtors.

Case Nos.: 01-30135 (RG) and
01-38790(RG)
(Jointly Administered)

OPINION

**APPEARANCES:**

**Riker, Danzig, Scherer, Hyland & Perretti, LLP**
BY:    Dennis J. O'Grady, Esq.
        Rachel F. Gillen, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07962-1901
*Co-Counsel for G-I Holdings, Inc.*

**Quinn Emanuel, Urquhart & Sullivan, L.P.**
BY:    Andrew J. Rossman, Esq.
        Sylvia E. Simson, Esq.
        Jonathan B. Oblak, Esq.
        Joshua R. Rosenthal, Esq.
51 Madison Avenue
New York, New York 10010
*Co-Counsel for G-I Holdings, Inc.*

**Gibbons P.C.**
BY:    Michael R. Griffinger, Esq.
        Brett S. Theisen, Esq.
        William S. Hatfield, Esq.
One Gateway Center
Newark, New Jersey 07102
*Attorneys for Ashland LLC (f/k/a Ashland, Inc.),
International Specialty Products, Inc., and ISP Environmental Services, Inc.*

**ROSEMARY GAMBARDELLA, BANKRUPTCY JUDGE**

## MATTER BEFORE THE COURT

Before the Court is a Motion to Enforce a Plan Injunction filed by G-I Holdings, Inc. ("G-I")[1] and GAF Corporation ("GAF") (collectively "G-I" or "Debtors"). G-I is seeking an order to enforce the Confirmed Plan's discharge injunction against Ashland, LLC ("Ashland"), International Specialty Products, Inc. ("ISP"), and ISP Environmental Services, Inc. ("IES") (collectively "Ashland Parties" or "Plaintiffs"). Ashland filed Opposition to the Motion and G-I filed a Reply. This Court held Oral Argument on February 16, 2017. The following constitutes this Court's findings of fact and conclusions of law.

This dispute arises in connection with the Ashland Parties' potential liability for remediation of a Superfund site located in Linden, New Jersey (the "LCP Site"),[2] and the Ashland Parties' claims seeking indemnification from G-I for costs and expenses paid by or asserted against them by governmental entities or third parties related to the LCP Site based on an Indemnification Agreement between the parties. G-I contends that the Confirmation Order and the injunctive provisions of its Confirmed Plan bar the Ashland Parties' claims. Ashland contends that this Court is without jurisdiction to decide this issue because this Court recently remanded the Ashland Parties' Complaint to state court and because the Remand Order is pending appeal before the New Jersey District Court. Ashland further contends that even if this Court has jurisdiction to decide the Motion, the Court should find that the Plan's discharge injunction does not apply to the Ashland Parties' claims because the claims arise from an assumed executory contract.

For the reasons discussed herein, this Court will deny the Motion without prejudice.

---

[1] "G-I" includes GAF Corporation ("GAF"). GAF merged into G-I prior to its 2001 bankruptcy filing such that G-I is its corporate successor.

[2] The LCP Site is a 26-acre property located in Linden, New Jersey that was designated a high-priority Superfund site by the federal government in 1998 based on decades-old releases of hazardous substances.

## STATEMENT OF FACTS

### A. The LCP Site

The dispute concerns liability for the environmental remediation of a certain Superfund site located in Linden, New Jersey – the LCP Site.

The LCP Site is the location of a former chemical manufacturing facility on an approximately 26-acre parcel of property in Linden, New Jersey. The LCP Site was acquired by GAF Corporation[3] prior to 1950. GAF Corporation constructed a chlor-alkali plant at the LCP Site, which it operated until it sold the property to Linden Chlorine Products, Inc. in 1972. The operations of the former chlor-alkali plant by GAF Corporation at the LCP Site resulted in the contamination of the LCP Site and off-site areas with various hazardous substances, including mercury. The LCP Site ceased production permanently in 1985.

### B. Corporate History

The issue of who now bears responsibility for the LCP Site depends upon a series of complex corporate transactions and contractual agreements that span the course of three decades.

In 1989, GAF was liquidated, and its liabilities were transferred to five separate entities: Dorset Inc. ("Dorset"), GAF Building Materials Corporation (formerly known as Edgecliff Inc.), Merick Inc., Perth Inc., and Clover Inc. According to G-I, Dorset received "all the assets and liabilities, known and unknown, relating to [GAF's] acetylenic chemicals, surfactants, specialty chemicals, organometalics, mineral products, industrial filters and filter vessels business (collectively, the 'Chemical Businesses')," while GAF Building Materials Corporation, formerly known as Edgecliff Inc., received "all the assets and liabilities, known and unknown, relating to

---

[3] This is a different entity from GAF that is a party to the instant motion.

[GAF's] commercial and residential roofing materials business."[4] *See* Motion to Dismiss

Adversary Proceeding at 6, *Ashland Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No.

12 (citing the 1989 Liquidation Plan). To effectuate the Liquidation Plan, on April 10, 1989,

GAF entered into instruments of Assignment and Assumption with Dorset and GAF Building

Materials Corporation, which transferred, in relevant part, "100% of the liabilities arising out of .

. . environmental claims arising out of plants currently operating in the Chemical Businesses" to

Dorset, and "100% of all liabilities arising out of . . . environmental claims from plants no longer

operating and from oil waste pollution" to GAF Building Materials Corporation. *Id.* at 7.

Ashland claims that the liabilities in connection with the LCP Site were transferred to

Edgecliff Inc., which later became GAF Building Materials Corporation, because such liability

fell under the umbrella of "environmental liabilities associated with plants no longer operating,"

such as the LCP site, whereas G-I claims the liabilities in connection with the LCP Site were

transferred to Dorset, because such liability is related to the Chemical Businesses. Ashland

asserts here that ISP and IES were later incorporated in 1991 as subsidiaries of GAF, and thus

ISP and IES were never in the corporate lineage of Edgecliff Inc./GAF Building Materials (one

of the Defendant-Indemnitors), which assumed responsibility for the LCP site before ISP and

IES were even formed.

G-I, however, takes the position that none of the G-I Parties are responsible for any

environmental liabilities or obligations at the LCP Site as these liabilities and obligations were

assumed by IES in 1991 and that even if these liabilities resulted in G-I following the series of

corporate transactions referred to herein, which G-I claims they did not, these liabilities were

discharged in G-I's bankruptcy case.

---

[4] "[The t]hree other companies – Merick Inc., Perth Inc., and Clover Inc. – acquired [GAF's] broadcasting, insurance, and export operations, respectively." *Id.*

In 1991, ISP and IES were incorporated as subsidiaries of GAF Chemicals. On May 8, 1991, GAF Chemicals, GAF, and ISP 9 Corporation ("ISP 9")[5] entered an agreement whereby ISP 9 assumed certain liabilities and obligations of GAF Chemicals, including "[a]ll liabilities and obligations relating to the manufacture and sale of specialty chemicals at Linden, NJ, known and unknown, contingent or otherwise, including liabilities for the remediation of the Linden site...." (the "1991 Agreement"). Additionally, the 1991 Agreement stated that IES:

> shall indemnify, defend, and hold harmless [GAF Chemicals], GAF and its other subsidiaries from and against any and all [liabilities and obligations described in the 1991 Assumption Agreement Schedule] and any and all liabilities, costs and expenses in connection with any investigations, claims, actions, suits or proceedings arising out of or resulting from the conduct of any business, ownership or any assets or incurrence of any liabilities or obligations on and after May 9, 1991 by [IES].

Therefore, G-I alleges that IES assumed all GAF and GAF Chemicals' liabilities, including those associated with the LCP Site. The Ashland Parties allege, conversely, that because liability originally passed from GAF to GAF Buildings Materials Corporation, and not to Dorset/GAF Chemicals, liability in connection with the LCP Site was not transferred to ISP and IES in the 1991 Agreement.

In 1994, GAF Buildings Materials Corporation formed a new corporation as a wholly-owned subsidiary known as Building Materials Corporation of America (now Standard Industries, Inc.) ("BMCA").[6] BMCA, which is also an indirect subsidiary of G-I, is the primary operating subsidiary and principal asset of G-I. BMCA acquired the operating assets and certain liabilities of GAF Building Materials Corporation's roofing commercial and residential roofing materials business. G-I asserts that BMCA did not assume any liabilities associated with "closed

---

[5] ISP 9 later changed its name to IES.
[6] On or about January 26, 2016, BMCA changed its name to Standard Industries, Inc. *See* Letter from Mark Hall, Esq., dated March 1, 2016, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 21.

manufacturing facilities," and therefore cannot be held liable in connection with the LCP Site.

On October 18, 1996, GAF Corporation (including its successor "GAF"), G-I, G Industries Corp., GAF Chemicals, and ISP Holdings Inc. (the parent of ISP and IES at the time) entered into an indemnification agreement in connection with certain "Spin Off Transactions" involving GAF and its subsidiaries (the "Indemnification Agreement"). Section 2.2(a) of the Indemnification Agreement entitled "Indemnification and Release" provides at subsection (a)(1):

> GAF and G-I [] shall jointly and severally indemnify, defend and hold harmless ISP Holdings, its Post Spin Subsidiaries and each of their respective present and future Representatives and Affiliates from and against all GAF Liabilities and any and all Indemnifiable Losses of ISP Holdings, its Post Spin Subsidiaries and each of their respective Representatives and Affiliates arising out of or due to, directly or indirectly, the GAF Liabilities, whether such GAF Liabilities arose before, or arise after, the Spin Off Date.

*See* Indemnification Agreement, Appx. 6 at 6, Motion for Remand, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 9-7.

As part of the spin-off transactions, ISP Holdings and its subsidiaries, including IES and ISP, were spun off from the GAF Entities. At that time, Samuel J. Heyman owned 96% of ISP Holdings and its subsidiaries.[7] On or around August 23, 2011, Ashland Inc.[8] acquired ISP Holdings and its subsidiaries, and is currently the parent company of ISP and IES.

### C. G-I's Bankruptcy Filing and Confirmation of the Plan of Reorganization

On January 5, 2001, G-I, a Delaware corporation with its principal place of business in the State of New Jersey, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Chapter 11 Voluntary Petition, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 1. The Court's docket entries for the same day reflect that the first meeting of creditors was

---

[7] After the conclusion of the confirmation hearing on November 7, 2009, Mr. Heyman, the Plan Sponsor, died of natural causes. Subsequently, Ronnie Feuerstein Heyman, Mr. Heyman's wife, received all of the same signatory powers as Mr. Heyman pursuant to appropriate corporate resolutions.
[8] Ashland, Inc. recently changed its name to Ashland, LLC. Ashland is a leading global specialty chemical company incorporated under the laws of the State of Kentucky.

scheduled for 9:00 a.m. on January 31, 2001 and that the last day to assert claims of non-dischargeability was April 2, 2001. On August 3, 2001, ACI, Inc. ("ACI"), a subsidiary of G-I, also filed a voluntary petition for relief under Chapter 11. Chapter 11 Voluntary Petition, *In re ACI, Inc.*, Case No. 01-38790, ECF No. 1. On October 10, 2001, this Court entered an Order directing the joint administration of the G-I and ACI bankruptcy cases. Order Directing Joint Administration of Chapter 11 Cases, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 630.

The Official Committee of Unsecured Creditors was appointed on January 18, 2001 by the United States Trustee pursuant to Section 1102(a) of the Bankruptcy Code to represent those individuals who allegedly suffered injuries related to asbestos exposure from products manufactured by the predecessors of G-I. *See* 11 U.S.C. § 1102(a). On October 10, 2001, this Court appointed C. Judson Hamlin as the Legal Representative, a fiduciary to represent the interests of persons who hold present and future asbestos-related claims against G-I.

On August 21, 2008, G-I filed a Joint Plan of Reorganization. Chapter 11 Plan, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 8190. After a number of modifications to the Plan, G-I filed an Eighth Amended Joint Plan of Reorganization on October 5, 2009 (the "Plan" or "Confirmed Plan"). Eighth Amended Chapter 11 Plan, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 9644. The District Court for the District of New Jersey and this Court held hearings concerning confirmation of the Plan on September 30, 2009, October 5, 6, and 15, 2009, and November 7, 2009. *See* Hearing Transcripts, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF Nos. 9708-12.

On November 12, 2009, the District Court for the District of New Jersey, by Hon. Garrett E. Brown, Jr., Chief Judge, and this Court entered an Order Confirming the Eighth Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc. (the "Confirmation Order")

pursuant to Chapter 11 of the Bankruptcy Code. Order Confirming Eighth Amended Joint Plan of Reorganization of G-I Holdings Inc. and ACI Inc., *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 9787. The Plan became effective on November 17, 2009, as described in the November 20, 2009 Notice of Plan Confirmation. Notice of (A) Entry of Order Confirming Eighth Amended Joint Plan of Reorganization and (B) Occurrence of Effective Date, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 9825.

The discharge provision of the Confirmation Order at Paragraph 76 reads as follows:

> In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code and, except as provided in the Plan, upon the Effective Date, all Claims against the Debtors' estates and the Reorganized Debtors shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be precluded and enjoined from asserting against the Debtors' estates and the Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim. Upon the Effective Date, all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors' estates and the Reorganized Debtors.

Confirmation Order, ¶ 76. Thus, the Confirmation Order provided that all Claims against the Reorganized Debtors would be discharged, and that all holders of such claims would be barred from asserting them against Reorganized G-I. *Id.*

The Confirmation Order further directed that any claimants holding Claims were also:

> permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability pursuant to the Plan against the . . . Reorganized Debtors, the Debtors' estates or properties or interests in properties of the Debtors or the Reorganized Debtors . . . .

*Id.* ¶ 79.

The Plan defined "Claim" to mean:

a "claim" as defined in section 101(5) of the Bankruptcy Code, against G-I or ACI, whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, any rights under sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, any claim of a derivative nature, any potential or unmatured contract claims, and any other contingent claim; (ii) any Environmental Claim, whether or not it constitutes a "claim" under section 101(5) of the Bankruptcy Code; and (iii) any rights to any equitable remedy.

Confirmed Plan, § 1.1.43.

Further, the Plan defined the term "Environmental Claim" as:

any Claim relating to alleged hazardous materials, hazardous substances, contamination, pollution, waste, fines or mine or mill tailings released, threatened to be released or present in the environment or ecosystem, including without limitation, alleged contamination under federal or state environmental laws, codes, orders or regulations, common law, as well as any entitlements to equitable remedies, including, without limitation, investigation, restoration, natural resource damages, reclamation, remediation and cleanup, including without limitation, any Environmental Claim for Remedial Relief and any Other Environmental Claim; *provided, however*, for the avoidance of doubt, the term "Environmental Claim" shall not include or pertain to any Asbestos Claim, Asbestos Property Damage Claim, Asbestos Property Damage Contribution Claim, Bonded Asbestos Personal Injury Claim, CCR Claim, Workers' Compensation Claim, or Claim of an Affiliate.

*Id.* § 1.1.67 (emphasis in original).

Pursuant to the Plan, G-I assumed the Indemnification Agreement.[9]    Part VI of the

Confirmation Order (Executory Contract and Unexpired Lease Provisions and Related

---

[9] Article VII, Section 7.1 of the Plan provides, in pertinent part:

<u>Assumption and Rejection of Executory Contracts and Unexpired Leases.</u> . . . Any executory contracts or unexpired leases of the Debtors that are set forth on Schedule 7.1 of the Plan Supplement shall be deemed to have been assumed by the Debtors and the Plan shall constitute a motion to assume such executory contracts and unexpired leases. Any executory contracts or unexpired leases of the Debtors that are set forth on schedule 7.1 of the Plan Supplement that have been designated as being assumed and assigned to one of the Debtors' Affiliates shall be deemed to have been assumed and assigned by a Debtor to that Affiliate and the Plan shall constitute a motion to assume and assign such executory contracts and unexpired leases. Each executory contract or unexpired lease assumed, or assumed and assigned, hereunder shall include any modifications, amendments, supplements or restatements to such contract or lease. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions pursuant to section 365(a) of the Bankruptcy Code, and approval of such assumptions and assignments pursuant to section 365(f) of the Bankruptcy Code, and a finding by the

Procedures) notes, in relevant part: "Unless a proof of claim was timely filed with respect thereto, all cure amounts and all contingent reimbursement or indemnity claims for prepetition amounts expended by the non-debtor parties to assumed executory contracts and unexpired leases are discharged by the entry of this Confirmation Order." Confirmation Order, ¶ 25; *see also* Confirmed Plan, §§ 7.1-7.3.

---

Bankruptcy Court that each such assumed, or assumed and assigned, executory contract or unexpired lease is in the best interest of the Debtors, their bankruptcy estates, and all parties in interest in the Chapter 11 Cases . . . .

Confirmed Plan, § 7.1.

On November 16, 2009, G-I filed a Notice of Amendment to Schedule 7.1 of the Plan Supplement. *See In re G-I Holdings, Inc.,* Case No. 01-30135, ECF No. 9806. The Amended Schedule 7.1 included the Indemnification Agreement. *See id.,* Ex. A.

Section 7.3 of the Plan provides:

Cure of Defaults and Survival of Contingent Claims under Assumed Executory Contracts and Unexpired Leases. Except as may otherwise be agreed to by the parties, on or before the thirtieth (30th) day after the Effective Date, provided the non-debtor party to any such assumed executory contract or unexpired lease has timely filed a proof of claim with respect to such cure amount, the Reorganized Debtors shall cure any and all undisputed defaults under each executor contract and unexpired lease assumed by the Debtors pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code. All disputed defaults required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Reorganized Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties. Unless a proof of claim was timely filed with respect thereto, all cure amounts and all contingent reimbursement or indemnity claims for prepetition amounts expended by the non-debtor parties to assumed executory contracts and unexpired leases shall be discharged upon entry of the Confirmation Order by the Clerk of the Bankruptcy Court.

Confirmed Plan, § 7.3.

Section 9.2 of the Plan states:

> Discharge of Claims. In accordance with and not in limitation of sections 524 and 1141 of the Bankruptcy Code, and except as provided in the Plan, upon the Effective Date, all Claims against the Debtors shall be, and shall be deemed to be, discharged in full, and all holders of Claims shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim. Upon the Effective Date, all Entities shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors.

Confirmed Plan, § 9.2.

Section 11.1 of the Plan further states, in relevant part:

> Retention of Jurisdiction. The Bankruptcy Court shall retain jurisdiction and retain all exclusive jurisdiction it has over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan, or that relates to the following:
>
> > (a) to interpret, enforce, and administer the terms of the Plan, the Plan Documents (including all annexes and exhibits thereto), and the Confirmation Order.
> >
> > (b) to resolve any matters related to the assumption, assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom. . .;
> >
> > . . .
> >
> > (o) to determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code[.]

Confirmed Plan, § 11.1; *see also* Confirmation Order, ¶ 97.

Ashland did not file a proof of claim in G-I's bankruptcy. Ashland alleges that it was not required to file a proof of claim because indemnification claims under the Indemnification Agreement are not "claims" as defined by the Plan. Additionally, Ashland asserts that because it

did not acquire IES and ISP until 2011, it was unable to timely file a proof of claim in G-I's

bankruptcy case.  Ashland further asserts that it was not required to file a proof of claim because

G-I expressly assumed the Indemnification Agreement.

G-I claims, conversely, that any claim Ashland might assert against it was discharged.

### D. Investigation of the LCP Site

Ashland asserts that beginning in or about 1994, prior to entry of the Indemnification

Agreement and G-I's Bankruptcy Petition, the Environmental Protection Agency ("EPA") began

investigating the LCP Site for environmental contamination.  In 1998, before the Petition Date,

the EPA sent information requests to GAF and other parties regarding the LCP Site and sought

commitments to investigate and study remediation options for the LCP Site.  Ashland asserts

here that "on information and belief," Mr. Heyman, who along with members of his family

owned and controlled both IES and GAF at the time, volunteered IES to enter into an

Administrative Order on Consent ("AOC") for Remedial Investigation and Feasibility Study

with the EPA.  Ashland claims that the EPA misidentified IES as a responsible party, rather than

G-I, but because Mr. Heyman controlled both IES and GAF at that time, the misidentification

was not remedied.  The EPA issued a Record of Decision for the cleanup of the LCP Site in

2014, estimating costs for the site cleanup at $36.3 million. *See* Complaint, Appx. 3, ¶ 3, Motion

for Remand, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 9-4.

Subsequently, the EPA issued a Unilateral Administrative Order ("UAO") for the Remedial

Design to IES and Praxair, Inc. for the LCP Site, which became effective June 26, 2015 and

which required IES to conduct and complete the remedy set forth in the Record of Decision.

Because Reorganized G-I has not assumed responsibility for this expense, Plaintiffs assert that

they have expended, and may be ordered to continue to expend, significant sums of money to investigate and remediate contamination at and from the LCP Site.

In or around 1999, after the Indemnification Agreement but before the Petition Date, the National Oceanic and Atmospheric Administration ("NOAA") and the U.S. Department of the Interior ("DOI") began to investigate the potential impacts and releases of hazardous substances at and from the LCP Site on natural resources in and around the site. The NOAA and DOI thereafter commenced a natural resource damage assessment (the "NRDA"). On March 22, 2012, IES entered into an agreement with the NOAA and the DOI to contribute resources to the investigations being conducted in support of the NRDA, but Plaintiffs assert specifically that the agreement disavowed any liability on the part of IES in connection with the LCP Site, noting that the agreement provided "This Agreement shall not constitute, or be interpreted or used as an admission of fault, liability, law or fact by [IES]." Contribution to Sampling Agreement, Appx. 10, ¶ 8, Motion for Remand, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 9-11. Plaintiffs claim on information and belief that NOAA and DOI have already expended more than $600,000 on investigations in support of the NRDA and will continue to expend substantial sums, and that, on July 21, 2015, NOAA and DOI notified Plaintiffs that they intend to recover any unreimbursed portions of the investigative costs from Plaintiffs.

## PROCEDURAL HISTORY

### A. State Court Action

On September 30, 2015, the Ashland Parties filed a Complaint in the Superior Court of New Jersey, Law Division, Morris County ("ISP Litigation" or "State Court Action")[10] seeking a declaratory judgment that Defendants G-I, Building Materials Corporation of America d/b/a GAF Materials Corporation, GAF Corporation, John and Jane Does 1-20, and ABC Companies 1-20 (collectively, "Defendants") are in breach of the Indemnification Agreement and pursuant to the Indemnification Agreement must indemnify Plaintiffs for any costs or liabilities incurred in connection with the investigation and remediation of the LCP Site, that Plaintiffs do not bear any responsibility for same, that G-I is the successor to the entity or entities that owned and operated the LCP Site between the early 1950s and 1972, and that Plaintiffs are not successors to any such entity.  Plaintiffs also seek recovery of costs incurred, and that they may be ordered to incur, in connection with the investigation and remediation of the LCP site.

Count One of the Complaint seeks a declaratory judgment: "[d]eclaring that G-I or its successor, if any, is the successor to GAF Corporation and GAF Chemicals Corporation, and is responsible for all liabilities associated with those companies' ownership and operation of the LCP Site;" "[d]eclaring that none of the Plaintiffs is a successor to GAF Corporation or GAF Chemicals Corporation, and that none of the Plaintiffs is responsible for any liabilities associated with those companies' ownership and operation of the LCP Site;" and requesting any other and further relief, including costs.

Count Two of the Complaint, sounding in breach of contract, seeks a declaratory judgment declaring among other things that Defendants are contractually obligated under the Indemnification Agreement to indemnify ISP and IES for all Claims of Environmental Liability related to the LCP Site, including payments of defense costs, environmental remediation costs

---

[10] *See* Complaint for Declaratory Judgment, *Ashland, Inc., et al. v. G-I Holdings Inc., et al.*, Docket No. MRS-L-2331-15 (N.J. Super. Ct., Law Div. Sept. 30, 2015), Appx. 3, Motion for Remand, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 9-4.

incurred by Plaintiffs in the past and the future and that Defendants are in breach of those obligations, and entering judgment in Plaintiffs' favor awarding damages in the amount expended by Plaintiffs in accordance with the proof to be presented, with the maximum lawfully allowable interest thereon.

Count Three of the Complaint alleges a breach of the implied covenant of good faith and fair dealing asserted by ISP and IES against all Defendants.

Count Four of the Complaint alleges unjust enrichment asserted by Ashland and IES against all Defendants.

On November 4, 2015, Plaintiffs filed a Motion in the State Court Action to Proceed Summarily and for Entry of Judgment Against Defendants. Plaintiffs argued that pursuant to Rule 4:67-1 *et seq.* of the New Jersey Rules of Court, which permits a court to dispose of a matter on the record or on minimal testimony in open court on short notice, the state court should resolve the dispute in a summary fashion. Plaintiffs asserted that the issues are straightforward and "limited to the interpretation and application of an uncomplicated contract and the details of a few corporate changes." Therefore, Plaintiffs requested that the state court resolve the action in a summary fashion.

**B. Removed and Then Remanded State Court Action**

On November 4, 2015, before any substantive proceedings in the state court occurred, G-I filed a Notice of Removal, arguing that the Bankruptcy Court retained jurisdiction for proceedings such as the State Court Action under both the Confirmation Order and Confirmed Plan. Notice of Removal, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 1. G-I alleged that the State Court Action is a "core proceeding" under 28 U.S.C. § 157(b)(2) because:

> The State Court Action is a proceeding 'arising in' G-I's Chapter 11 bankruptcy
> case…[and] is fundamentally a matter concerning events that occurred prior to the
> commencement of G-I's bankruptcy case that will implicate the administration of
> the Plan, will require the interpretation of various provisions of the Plan, and will
> entail an assessment and determination as to whether to allow or disallow such
> causes of action in light of the discharge of Claims provided for by the
> Confirmation Order and the Plan.

In the alternative, G-I asserted that that the State Court Action is at a minimum "related to" G-I's

bankruptcy case, and that the Defendants consent to entry of final orders or judgment by the

Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(1) if the Court

deems the State Court Action a non-core proceeding.

On November 20, 2015, Ashland filed a Motion to Remand the proceeding to state court

("Motion to Remand").  Motion for Remand, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No.

15-02379, ECF No. 9.  On December 18, 2015, G-I filed a response in opposition to the Motion

to Remand.  Opposition to Ashland, Inc., Int'l Specialty Prod., Inc., & ISP Envtl. Servs., Inc.'s

Motion for Remand, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 14.

On January 22, 2016, Ashland filed a reply in further support of its Motion to Remand.

Plaintiffs' Reply in Further Support of Motion for Remand, *Ashland, Inc. v. G-I Holdings, Inc.*,

Adv. Pro. No. 15-02379, ECF No. 18.

On December 11, 2015, G-I filed the Motion to Dismiss Ashland's Adversary

Proceeding.  On February 2, 2016, Ashland filed a Response in Opposition to G-I's Motion to

Dismiss.  Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss,

*Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 19.  On March 11, 2016,

G-I filed a Reply in support of its Motion to Dismiss.  Reply Memorandum of Law in Further

Support of Motion Dismiss Ashland, Inc., Int'l Specialty Prod. Inc., & ISP Envtl. Servs., Inc.'s

Complaint for Declaratory Judgment, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-

02379, ECF No. 25.   On April 21, 2016, G-I filed a letter in further support of its Motion to

Dismiss, which Ashland argued was an unauthorized sur-reply.   Apr. 21, 2016 Letter from A.

Rossman, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 31.   On May

18, 2016, Ashland filed a letter response to the Motion to Dismiss.   Letter Response to Sur-

Reply, *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 32.

On May 26, 2016, the Court held a telephone conference call with the parties to discuss

the schedule for oral argument of the pending motions. The Court determined that the Motion to

Remand would be heard and decided before the Court and parties expended additional time and

resources on the Motion to Dismiss. Therefore, the Court adjourned the Motion to Dismiss and

determined that the Motion to Remand and certain supplemental motions pending before the

Court would be heard together as scheduled.[11]   The Court acknowledged, however, that parties

may necessarily need to refer to the Motion to Dismiss to the extent such reference informed the

arguments for or against remand.

The Court held a telephone conference call with the parties on June 1, 2016.   During the

telephone conference call, the Court determined to adjourn the hearing on the supplemental

motions to a date after the Motion for Remand was decided.

---

[11] Also pending before the Court are the following motions filed in the adversary proceeding: Plaintiffs' Motion for *In Camera* Inspection and Determination That Certain Documents Are Not Privileged and Should Be Considered in Deciding Defendants' Dismissal Motion [ECF. No. 33]; (2) the ISP Plaintiffs' Motion for Authority to File Under Seal and Unredacted (I) Exhibits E and F to Plaintiffs' Response to Defendants' Sur–Reply on the Dismissal Motion, and (II) Plaintiffs' Memorandum of Law in Support of Motion for *In Camera* Inspection and Determination that Certain Documents are Not Privileged and Should be Considered in Deciding Defendants' Dismissal Motion [ECF. No. 34]; (3) the G–I Defendants' Motion for Authority to File, Under Seal, Their Opposition to Plaintiffs' Motion for *In Camera* Inspection and Determination That Certain Documents Are Not Privileged and Should Be Considered in Deciding Defendants' Dismissal Motion and Response to Plaintiffs' Motion for Authority to File Under Seal and the Exhibits Thereto [ECF. No. 46]; (4) the ISP Plaintiffs' Motion For Authority to File Under Seal and Unredacted (I) Plaintiffs' Reply Memorandum of Law in Further Support of Motion for *In Camera* Inspection and Determination That Certain Documents Are Not Privileged and Should Be Considered in Deciding Defendants' Dismissal Motion, Generally in the Context of This Litigation and Elsewhere; and (II) Exhibit A to Plaintiffs' Reply Memorandum of Law (the "August 3 Motion to Seal") [ECF No. 51]; and (5) Defendant's Motion for Authority to File, Under Seal, their Response to Plaintiff's Second Motion for Authority to File Under Seal and Further Opposition to Plaintiff's Motion for In *In Camera* Inspection and Determination That Certain Documents Are Not Privileged and Should Be Considered in Deciding Defendants' Dismissal Motion and the Exhibit Thereto [ECF No. 56].

### C. This Court's Remand Decision and Subsequent History

On December 21, 2016, this Court issued a written Opinion granting Ashland's Motion to Remand (the "Remand Decision"). *Ashland, Inc. v. G-I Holdings, Inc. (In Re G–I Holdings, Inc.)*, 564 B.R. 217 (Bankr. D.N.J. 2016). In it, the Court found that (1) the proceeding did not confer "arising under" jurisdiction because Ashland's Complaint did not include federal causes of action, nor did it seek to invoke substantive rights provided for under bankruptcy laws; (2) the proceeding did not confer "arising in" jurisdiction because Ashland's causes of action exist outside of bankruptcy; and (3) the proceeding, however, satisfied the "close nexus" test set forth in *In re Resorts International*, 372 F.3d 154 (3d Cir. 2004) and so this Court had "related to" jurisdiction over the proceeding. This Court determined Ashland's claims "related to" the bankruptcy case because, although the litigation in large part involves application of state contract and corporate law, G-I's affirmative defense that Ashland's claims are barred by the Confirmation Order and discharge injunction may require interpretation of the Plan and the Confirmation Order and application of the bankruptcy law concerning discharge. *See G–I Holdings*, 564 B.R. at 252. The Court further determined that (4) both mandatory and permissive abstention and equitable remand were appropriate under 28 U.S.C. Sections 1334(c)(2), §1334(c)(1) and 1452(b), respectively. In reaching this determination, the Court found among other things that Ashland's Motion to Remand was timely made and the Complaint asserting state law claims for breach of contract and other related relief was appropriately filed in state court, that the state court had the ability to efficiently adjudicate the matter, and that such adjudication, while it may require interpretation of the Bankruptcy Code and Confirmed Plan, "will not affect the distribution to creditors and is unlikely to unduly impact the administration of the estate." *Id.* at 254.

On January 4, 2017, G-I filed a Notice of Appeal of this Court's Remand Order. *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 65.

On January 6, 2017, the G-I Defendants filed an Application to Shorten Time and a Motion for Stay Pending Appeal of this Court's Remand Order. *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No 69.

After a telephone conference with the parties on January 9, 2017, this Court on January 11, 2017 entered an "Order On Motion To Remand" that granted the Motion for Remand and ordered that "neither this order nor the file be transmitted to the New Jersey Superior Court, Law Division, Morris County by the Bankruptcy Court or otherwise until directed to do so by this Court." *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 74.

On February 14, 2017, this Court entered an Order denying the Motion for Stay Pending Appeal but granting an Interim 30-Day Stay to allow G-I to pursue a stay order from the District Court.[12] *Ashland, Inc. v. G-I Holdings, Inc.*, Adv. Pro. No. 15-02379, ECF No. 91.

### D. G-I's Motion to Enforce the Plan Injunction

On January 10, 2017, G-I filed the instant Motion to Enforce the Plan Injunction against the Ashland Parties (the "Injunction Motion") in the main bankruptcy proceeding. *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 11029. G-I initially asserts that the "required analysis relevant to this Motion is simple and straightforward" and articulates it as follows:

---

[12] On March 9, 2017 the District Court entered an Order Granting Consensual Extended Interim Stay Pending Appeal and Expedited Appeal, dated March 8, 2017. *G-I Holdings, Inc. v. Ashland, Inc. (In re G-I Holdings Inc.)*, Case No. 17-cv-00077-ES, ECF No. 17. The District Court's order granted an extended interim stay for 45 days from the expiration of the interim stay, until April 30, 2017, and set forth an expedited briefing and hearing schedule for the appeal of this Court's Remand Order. *Id.* at 3.

On April 26, 2017, the District Court, on consent of the parties, entered an Order further extending the interim stay for 14 days from the expiration of the extended interim stay, until May 14, 2017. *G-I Holdings, Inc. v. Ashland, Inc. (In re G-I Holdings Inc.)*, Case No. 17-cv-00077-ES, ECF No. 28 at 3.

The ISP Litigation involves causes of action premised on the 1996 Indemnification Agreement. . . . All of the releases of hazardous substances on or at the LCP Parcel – and thus the environmental contamination underlying the ISP Parties' claims – occurred long before G-I's January 5, 2001 petition date, and many years before November 17, 2009, the date G-I's Plan became effective (the "Effective Date"). ISP and its subsidiary IES had knowledge of IES' remedial liability associated with the LCP Parcel by no later than 1999, when the U.S. Environmental Protection Agency (the "EPA") issued an Administrative Order on Consent, Index. No. II-CERCLA-02-99-2015, with respect to the LCP Parcel (the "AOC"). The AOC expressly stated that it was "entered into voluntarily" by IES, which had "assumed the liabilities of GAF" as a Potentially Responsible Party ("PRP") under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA") for the LCP Parcel, recited extensive findings of facts and conclusions of law, and detailed the remedial work to be performed under the EPA's direction. At the time of the AOC's issuance, IES was thus aware of and acknowledged its assumed PRP status vis-à-vis the LCP Parcel and the corresponding CERCLA liability, whether already identified or to be identified in the future. In addition, following issuance of the AOC, ISP and IES incurred millions of dollars of expenses in connection with the remedial investigation of the LCP Parcel prior to the Effective Date. ISP also received substantial insurance coverage settlement funds in G-I's bankruptcy case with this Court's approval based on its responsibility for environmental liabilities associated with the LCP Site. Notwithstanding these facts, the ISP Parties did not file a timely proof of claim and thus failed to preserve the right to assert indemnification claims against G-I. And because all of the ISP Parties' claims are based on pre-confirmation environmental contamination and a pre-confirmation contract, they constitute "Claims" under the Plan – and fall squarely within the discharge provided to G-I by the Plan and the Confirmation Order. Accordingly, this Court can and should enter an order enforcing the Plan Injunction and thus prevent the ISP Parties from continuing the ISP Litigation as against G-I and GAF.

Brief in Support of Injunction Motion, ECF 11029-1, at 3-4 (footnotes omitted).

G-I first argues that this Court is the appropriate forum to enforce the Plan Injunction and the Discharge Provision regardless of whether the ISP Litigation is remanded to state court. G-I asserts that it is not uncommon for a bankruptcy court to enforce a plan injunction related to a proceeding pending in another non-bankruptcy forum. *Id.* at 13 (citing *In re SemCrude, L.P.*, No. 08-11525-BLS, 2011 WL 4711891, at *1 (Bankr. D. Del. Oct. 7, 2011), *rev'd in part on other grounds*, No. 08-11525-BLS, 2012 WL 5554819 (D. Del. Nov. 15, 2012), *subsequently rev'd on other grounds*, 796 F.3d 310 (3d Cir. 2015) (enforcing confirmation order to enjoin

plaintiffs from pursuing state court litigation in Oklahoma); *In re CD Liquidation Co., LLC*, No. 09-13038-KG, 2012 WL 6737478, at *1, *6 (Bankr. D. Del. Dec. 28, 2012) (enforcing confirmation order and enjoining plaintiffs from pursuing litigation in federal district court in New York).  G-I further contends that this Court expressly retained jurisdiction to enforce the Confirmation Order.  Brief in Support of Injunction Motion at 13 (citing Confirmation Order, ¶ 97).  G-I states that enforcement of a confirmation order is "a core matter" and thus falls under the jurisdiction of this Court.  Brief in Support of Injunction Motion at 13 (citing, *inter alia*, *In re AMR Corp.*, No. 11-15463-SHL, 2016 WL 1559294, at *4-5 (S.D.N.Y. Apr. 14, 2016) (itself citing *In re Nw. Airlines Corp.*, No. 05-17930-ALG, 2008 WL 630449, at *2-3 (S.D.N.Y. Mar. 5, 2008); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 1151 (2009)).  G-I also relies upon *In re Charter Communications*, a decision from the Bankruptcy Court for the Southern District of New York, in which Hon. James M. Peck ruled that the bankruptcy court, rather than the Arkansas district court, was the proper forum in which to litigate the scope of the plan injunction and third party releases, stating that "[i]t is difficult to identify judicial acts that are any more critical to the orderly functioning of the bankruptcy process or more closely tethered to core bankruptcy jurisdiction."  Brief in Support of Injunction Motion at 13 (quoting 2010 WL 502764, at *4 (Bankr. S.D.N.Y. Feb. 8, 2010)).

Second, G-I contends that although Ashland seeks to impose liability on G-I for environmental liabilities associated with the LCP Site, IES assumed these liabilities in the 1991 Agreement and conducted itself for decades in a manner demonstrating that it understood it was responsible for the LCP Site.  Brief in Support of Injunction Motion at 15 (citing various documents purportedly demonstrating the Ashland assumed liability for the LCP Site).  G-I contends however, that "even assuming the ISP Parties' tortured interpretation of the facts in this

matter, the ISP Parties cannot pursue their claims against G-I (and necessarily GAF) because these claims were discharged by the Confirmation Order and Plan and are thus barred by principles of *res judicata* and estoppel." Brief in Support of Injunction Motion at 16.

As for Ashland's indemnity claims against G-I under the Indemnification Agreement, G-I argues that because Ashland's claims are based upon a written contract, these claims arose at the time the contract was executed. *Id.* at 17 (citing *In re M. Frenville Co.*, 744 F.2d 332, 336 (3d Cir. 1984) *overruled on other grounds by In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010)). As a result, G-I contends that Ashland's claims were discharged by the Plan and Confirmation Order. Brief in Support of Injunction Motion at 17. G-I cautions that:

> Permitting the ISP Parties to end run the Plan and Confirmation Order in an attempt at manufacturing such "new" indemnity claims would open the floodgates for other parties to remain silent as to contract claims, lulling a debtor into assuming a prepetition contract without knowledge of such indemnity claims, and then post-confirmation, to assert that their claims are exempt from the discharge, undermining perhaps the most important element of the fresh-start policy promulgated by the Bankruptcy Code.

*Id.* at 17 (citing *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995)).

G-I continues that pursuant to Section 1141(a) of the Bankruptcy Code, once a plan has been confirmed in a chapter 11 bankruptcy case, "'the plan is binding on a broad list of entities, including creditors . . . [and] acts as a binding contract on all the parties thereto . . . such [that] creditors are bound by the terms of the plan,'" quoting *In re G-I Holdings, Inc.*, 514 B.R. 720, 747-48 (Bankr. D.N.J. 2014) (Gambardella, J.) (internal citations omitted), *aff'd*, 654 F. App'x 571 (3d Cir. 2016), that "'a confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation' and that claims for pre-confirmation acts will be barred," quoting *Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1977) (internal citations omitted). Brief in Support of Injunction Motion at 17-18.

G-I further asserts:

A Claim is defined by the Plan to include "a 'claim,' as defined in section 101(5) of the Bankruptcy Code, against G-I, . . . whether or not asserted, whether or not the facts of or legal bases therefor are known or unknown, and specifically including, without express or implied limitation, . . . any potential or unmatured contract claims, and any other contingent claim." Plan § 1.1.43. Section 101(5) of the Bankruptcy Code then defines the term "claim" to include a contingent "right to payment." 11 U.S.C. § 101(5). And the Third Circuit has long recognized that in the contractual indemnification context, a contingent "right to payment" of an indemnification claim under an express agreement exists "upon the signing of the agreement." *In re M. Frenville Co.*, 744 F.2d at 336;[30] *see also, e.g.*, *In re Commc'n[] Dynamics, Inc.*, 382 B.R. 219, 232-33 (Bankr. D. Del. 2008) (noting that "[m]any courts have held that a claim (albeit contingent) which is based on a written agreement arises at the time the agreement is executed even though the breach of the agreement does not occur until later" and that "a claim arises when the right to payment accrues, not when payment is due"). The ISP Parties' claims also clearly relate to "hazardous substances," "alleged contamination under federal or state environmental laws," "remediation and cleanup," and "natural resource damages" and thus all constitute an "Environmental Claim" within the meaning of the Plan, which are in turn encompassed within the Plan's broader definition of "Claim." Plan §§ 1.1.43, 1.1.67.

Brief in Support of Injunction Motion at 19 (edits in original). In accompanying footnote

30 regarding *Frenville*, G-I notes that:

While the Third Circuit has revised and honed the test for determining when a claim arises in recent years, *Frenville* continues to inform when a contractual indemnity claim arose in connection with G-I's bankruptcy case, particularly given the Plan's November 12, 2009 confirmation date. *See Wright v. Corning*, 679 F.3d 101, 109 (3d Cir. 2012); *see also, e.g.*, *In re SelectBuild Ill., LLC*, No. 09-CV-12085, 2015 WL 3452542, at *7-8 (Bankr. D. Del. May 28, 2015) (finding that the *Frenville* test informs when a claim arose given the bankruptcy plan's December 17, 2009 confirmation date, "although neither *Grossman's* nor *Wright* really altered the [Third Circuit's] discussion [in *Frenville*] about contractual indemnification claims").

Brief in Support of Injunction Motion at 19 n.30 (edits in original).

G-I argues that this Court need look no further than Paragraph 76 of the Confirmation

Order to determine that Ashland's claims are "Claims" under the Plan "based upon any act or

omission, transaction or other activity of any kind or nature that occurred prior to the Effective

Date". *Id.* at 18 (citing Confirmation Order, ¶ 76) (emphasis omitted). G-I here notes that the releases of hazardous substances and environmental contamination underlying Ashland's claims stem from the LCP Site operations that took place decades prior to the effective date of G-I's Plan.

Third, G-I argues that its assumption of the Indemnification Agreement does not impact the discharge analysis because the Ashland Parties were required to file a proof of claim to preserve any of reimbursement or indemnity claims under the Agreement. G-I asserts that during the confirmation process, the Ashland Parties did not indicate any default occurred under the Indemnification Agreement despite being well aware of the LCP Site's environmental liabilities and years of CERCLA activity concerning the LCP Site. *Id.* at 20-21 (citing *In re Diamond Mfg. Co.*, 164 B.R. 189, 201-03 (Bankr. S.D. Ga. 1994); *In re Cellnet Data Sys., Inc.*, 313 B.R. 604, 608-09 (Bankr. D. Del. 2004)); *NCL Corp. v. Lone Star Bldg. Ctrs. (E.) Inc.*, 144 B.R. 170, 179 (S.D. Fla. 1992)). G-I thus contends that even if the Ashland Parties had a basis to assert that IES was merely "volunteered" to perform CERCLA environmental activities for the LCP Site, and that G-I and GAF should indemnify it for same, which they clearly do not, it is undisputed that the Ashland Parties failed to raise the issue prior to assumption of the Indemnification Agreement and cannot raise it now. Brief in Support of Injunction Motion at 21.

G-I also asserts that estoppel principles support enforcement of the Plan injunction and discharge provisions. G-I contends that the Ashland Parties took inconsistent positions in G-I's bankruptcy case by accepting substantial insurance proceeds related to the LCP Site as part of the insurance coverage settlements associated with the Environmental Coverage Action in G-I's bankruptcy case, never once representing to this Court what Plaintiffs now argue in the ISP Litigation, namely that the LCP Site environmental liabilities were G-I's responsibility. G-I

therefore argues that this Court should apply *quasi-estoppel* to enforce the Plan Injunction and

discharge provision and prevent the claim from proceeding. *Id.* at 22 (citing *In re Price*, 361

B.R. 68, 79 (Bankr. D.N.J. 2007) (Kaplan, J.)).

*Ashland's Opposition*

On February 2, 2017, Ashland filed an Opposition to the Injunction Motion ("Opposition

to the Injunction Motion"). *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 11055.

Ashland asserts that this Court cannot grant the Injunction Motion for two reasons: (1)

this Court already ordered that the issues presented by the Injunction Motion are remanded to the

New Jersey Superior Court for adjudication, citing the Remand Decision, and (2) the G-I

Defendants' appeal of the Remand Decision divested this Court of jurisdiction over the issues

presented in the Injunction Motion, which are inextricably intertwined with this Court's rulings

on the Motion to Remand. *Id.* at 2. For example, Ashland notes that G-I argues in the Injunction

Motion that any obligation of the G-I Defendants to the Ashland Parties under the

Indemnification Agreement was discharged by the Confirmation Order. Ashland continues that

this same argument was made in opposition to Ashland's Motion to Remand and that the Court

considered it in the Remand Decision in determining that remand was required. *Id.* at 2-3.

Ashland argues that the Injunction Motion is an improper attempt to effect an end-run around the

appellate process, supplant the jurisdiction of the state court and obtain a substantive

adjudication of issues on which this Court already abstained. *Id.* at 4.

First, Ashland contends that this Court's Remand Decision is the "law of the case" and

bars the Court from further adjudication of the G-I Defendants' affirmative discharge defense to

Ashland's Complaint. Ashland notes that G-I has now resubmitted many of the same arguments

that it and the G-I Defendants advanced in opposition to the Motion to Remand; thus, Ashland

asserts that the Injunction Motion "amounts to an impermissible reargument of the Remand

Decision, and it is barred by the law of the case doctrine." *Id.* at 9 (citing *Hamilton v. Leavy*, 322

F.3d 776, 786 (3d Cir. 2003); *U.S. v. Kikumura*, 947 F.2d 72, 77 (3d Cir. 1991); *In re City of*

*Phila. Litig.*, 158 F.3d 711, 717-18 (3d Cir. 1991)). Ashland urges that:

> The Remand Opinion, pursuant to which this Court abstained from exercising
> "related to" jurisdiction over the Ashland Litigation and remanded the action to
> the New Jersey Superior Court, is the law of the case and bars the Court from
> further adjudication of the G-I Defendants' affirmative discharge defense to the
> Ashland Parties' Complaint. In its Remand Opinion, the Court concluded that it
> lacked "arising under" and "arising in" jurisdiction over the Ashland Litigation
> and determined that abstention was required under 28 U.S.C. § 1334(c)(2), and
> that even if not required, abstention was warranted under § 1334(c)(1). [Adv.
> Proc. No. 15-02379, Doc. No. 61 at 53, 56-60][.]
>
> The G-I Defendants now resubmit many of the same arguments that they
> advanced in their Remand Motion, and which this Court previously ruled it was
> required to abstain from adjudicating. The G-I Defendants' Injunction Motion,
> therefore, amounts to an impermissible reargument of the Remand Opinion, and it
> is barred by the law of the case doctrine.

Opposition to the Injunction Motion at 8-9.

Second, Ashland contends that the G-I Defendants' appeal of the Remand Decision

divested this Court of jurisdiction over the Injunction Motion. Ashland notes that, generally, a

notice of appeal immediately divests the lower court of jurisdiction over those matters on appeal

and a federal district court and a federal court of appeals should not attempt to assert jurisdiction

over a case simultaneously. Ashland continues that the filing of a notice of appeal is an event of

jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district

court of its control over those aspects of the case involved in the appeal. *Id.* at 10 (citing *Griggs*

*v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *Venen v. Sweet*, 758 F.2d 117, 120-21

(3d Cir. 1985). Ashland contends that the divestiture rule applies with equal force to bankruptcy

appeals. Opposition to the Injunction Motion at 11 (citing *Liscinski v. Cambridge Mgmt. Grp.*

*(In re Trimble)*, Case No. 06-22616, Adv. Pro. Case No. 07-2115, 2008 Bankr. LEXIS 835, at *6 (Bankr. D.N.J. Mar. 18, 2008) (Lyons, J.)).  Ashland notes that "this rule is intended to prevent the confusion and inefficiency that would of necessity result were two courts to be considering the same issue or issues simultaneously." Opposition to the Injunction Motion at 11 (citing *Venen*, 758 F.2d at 121; *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 13–13653(DHS), 2014 Bankr. LEXIS 1914, at *9 (Bankr. D.N.J. Apr. 24, 2014) (Steckroth, J.)).  Ashland argues that the fact that the appeal was taken from a decision in the ISP Litigation, an adversary proceeding, whereas the Injunction Motion here is filed in the chapter 11 case, does not change the analysis, and asserts that an appeal of an order in an adversary proceeding is equally capable of causing confusion, waste of time, or interference with the appellate process in relation to a motion in the main case. Opposition to the Injunction Motion at 11 (citing *In re Norris Grain Co.*, 167 B.R. 258, 260 (Bankr. M.D. Fla. 1994)). Ashland asserts that to determine whether exercising jurisdiction over the Injunction Motion would interfere with the appeal of this Court's Remand Decision, the Court must analyze both the issues on appeal and the issues presented by the Injunction Motion.  Opposition to the Injunction Motion at 11.  Ashland urges that G-I's claim for relief in the Injunction Motion contains the same arguments that G-I made to the Court in opposition to the Motion to Remand.  Ashland asserts that G-I has simply repackaged certain of the arguments against remand under a different procedural vehicle.  Ashland urges that this Court, in deciding the Motion to Remand, considered that the G-I's Defendants were raising as an affirmative defense that the Ashland Parties' claims in the ISP Litigation were discharged and/or enjoined under the Plan and Confirmation Order and found that such arguments, even if true, did not warrant exercise of bankruptcy jurisdiction over this matter as "the Superior Court was fully capable to look at the Plan's discharge provisions to determine whether G-I's

affirmative defense applies." Ashland cautions that if this Court were to grant the Injunction

Motion, the appeal would be undermined and this Court will have preempted the District Court's

consideration of the appeal issues, which are the same as the Injunction Motion issues, and this

Court will also have substituted its judgment for the judgment of the New Jersey Superior Court

on the G-I Defendants' affirmative discharge defense even though this Court ruled that it was not

going to do so. *Id.* at 14.

Third, Ashland contends that its causes of action are not "Claims" as defined by the Plan

because the definition of "Environmental Claims" under the Plan excludes from discharge any

Claim of an Affiliate. *Id.* at 16 (citing Plan § 1.1.86). Ashland notes that both ISP and IES are

identified on Exhibit 1.1.93(c) attached to the Plan as Affiliates of G-I who are "Protected

Parties" as defined by the Plan. Ashland argues that the Plaintiffs' status as affiliates defeats G-

I's contention that the Ashland Parties' claims were discharged as Environmental Claims under

the Plan. In addition, Ashland argues that G-I cannot rely upon the general discharge provisions

contained in Section 9.2 of the Plan because there are more specific provisions of the Plan under

which Ashland's claims fall, including Section 7.3, which governs the discharge of claims

arising out of assumed executory contracts. Ashland notes that under this section, G-I expressly

assumed the Indemnification Agreement; therefore, G-I removed the Ashland Parties' post-

confirmation date claims thereunder from the category of "Claims" or "Environmental Claims"

that were discharged under the Plan. *Id.* at 16-17.

Ashland notes that Section 365(a) of the Bankruptcy Code provides that "the trustee,

subject to the court's approval, may assume or reject any executory contracts or unexpired leases

of the debtor." Opposition to the Injunction Motion at 17 (citing 11 U.S.C. § 365(a); *In re Rickel

Home Ctrs., Inc.*, 209 F.3d 291, 298 (3d Cir. 2000)). Ashland notes that "once an executory

contract is assumed, the debtor is bound to assume all of its terms *cum onere* – with all of its

benefits and burdens." Opposition to the Injunction Motion at 17 (citing *N.L.R.B. v. Bildisco and*

*Bildisco*, 465 U.S. 513, 531-32 (1984)). Further, Ashland asserts that "a debtor may not cherry-

pick the provisions of an assumed contract with which it will comply." Opposition to the

Injunction Motion at 17 (citing *AGV Prods., Inc. v. Metro-Goldwin-Mayer, Inc.*, 115 F. Supp. 2d

378, 390-91 (S.D.N.Y. 2000); *In re Kopel*, 232 B.R. 57, 63-64 (Bankr. E.D.N.Y. 1999); *In re*

*Vill. Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992)). Ashland contends that under

the terms of the Confirmation Order, the only claims required to be filed with respect to

executory contracts were for "any cure amount due under the contract." Opposition to the

Injunction Motion at 17 (citing Confirmation Order, ¶ 25). Ashland notes that, here, it is not

seeking indemnification for pre-petition amounts, but rather only for amounts it expended Post-

Confirmation and amounts it will expend in the future. *See* Opposition to the Injunction Motion

at 18. Ashland contends that the mere existence of environmental contamination at the LCP Site

does not trigger entitlement of the Ashland Parties to indemnification; rather, only the assertion

of claims against the Ashland Parties by EPA and other federal agencies triggered the Ashland

Parties' rights, and G-I's obligations, under the Indemnification Agreement. Ashland contends

that G-I, having assumed the Indemnification Agreement after determining that assumption was

in the reorganized debtors' best interest, now seeks to evade those obligations in violation of

Section 365 of the Bankruptcy Code. *Id.* at 18-19.

In addition, the Ashland Parties contend that they did not have a duty to provide notice to

G-I of a potential default under the Indemnification Agreement relating to the LCP Site. *Id.* at

19-20. Ashland contends that G-I offers no support for its argument that the Ashland Parties

were obligated to do so and again asserts that Section 7.3 of the Plan plainly applies only to "pre-

petition amounts expended." Ashland further notes that because IES and G-I were under common ownership at the time the Indemnification Agreement was assumed, through confirmation of the Plan, and up until the sale of IES/ISP to Ashland in 2011, there was no need to notify G-I of a potential default. Additionally, Ashland contends that the cases cited by G-I are distinguishable because none involved the assumption of an executory contract where the sole obligations of the parties were mutual indemnification obligations. *Id.* at 21 (distinguishing *Diamond Mfg.*; *NCL Corp.* and *Cellnet Data Sys.*). Ashland argues that the case at bar is more analogous to the court's decision in *In re City of Detroit*, 524 B.R. 147, 266-67 (Bankr. E.D. Mich. 2014).

Lastly, with respect to the insurance proceeds that IES and ISP received in connection with their obligations under the 1999 AOC, Ashland asserts that 1) G-I had previously entered into the Indemnification Agreement, agreeing thereby to indemnify, *inter alia*, IES and ISP's various environmental expenses; 2) in the insurance coverage settlement motions, G-I expressly consented to the disbursement of insurance proceeds to IES/ISP to reimburse them for the expenses they had incurred with respect to the LCP Site, and 3) G-I acknowledged that it owed a duty of indemnification to reimburse IES/ISP for expenses incurred in connection with the LCP Site. *Id.* at 23-24.

### *G-I's Reply*

On February 7, 2017, G-I filed a Reply in support of the Injunction Motion. Reply in Support of Injunction Motion, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 11057.

First, G-I argues that in general, the filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal, citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379

(1985).  G-I contends that under this rule, "'[t]he lower court is divested of jurisdiction over "those aspects of the case involved in the appeal," not over any matters that may arise in the matter.'"  Reply in Support of Injunction Motion at 5 (quoting *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2011) (itself quoting *Griggs*, 459 U.S. at 58). G-I argues therefore that this Court has jurisdiction to hear the Injunction Motion.  Reply in Support of Injunction Motion at 5.  G-I notes that "notwithstanding the pendency of an appeal, bankruptcy courts are not divested of jurisdiction to decide issues and proceedings different from and collateral to those involved in the appeal."  *Id.* at 5 (citing *Hopewell*, 258 B.R. at 583).  G-I further contends that even appellate proceedings with significant connection to the lower court proceeding do not necessarily deprive the lower court of jurisdiction.  Reply in Support of Injunction Motion at 5 (citing *In re Schultz Mfg. Fabricating Co.*, 956 F.2d 686, 691 (7th Cir. 1992)).

G-I contends that this Court's Remand Order does not divest the Court of jurisdiction here because the Remand Decision did not rule on the application and enforceability of the Plan or the November 12, 2009 Confirmation Order; rather, in G-I's view, the Remand Decision, the Remand Order and the appeal deal exclusively with issues relating to bankruptcy jurisdiction and abstention.  Reply in Support of Injunction Motion at 1-2.  G-I argues that even if G-I loses the appeal, the Remand Order is fully executed and the ISP Litigation is transferred to state court, G-I would still have the right to pursue the relief in the Injunction Motion and this Court would unquestionably have "core" jurisdiction to grant it.  G-I asserts that the sole issues on appeal are (1) whether this Court should have found that "arising in" jurisdiction is applicable to the Ashland Parties' claims in the ISP Litigation, and (2) whether the Court erred in determining that it was required to abstain from exercising jurisdiction over the ISP Litigation and abused its

discretion in determining that it was permitted to do so, notwithstanding the presence of "related to" jurisdiction. *Id.* at 6. G-I argues that the Injunction Motion has no bearing on either of these issues, as the Injunction Motion concerns whether the claims set forth in the Ashland Parties' Complaint are "Claims" that were discharged under the Confirmation Order and Plan. *Id.* (citing *Hopewell*, 258 B.R. at 583; *In re Emergency Beacon Corp.*, 58 B.R. 399, 402-03 (Bankr. S.D.N.Y. 1986)). G-I contends that the statements in the Remand Decision highlighted by the Ashland Parties all related to G-I's arguments concerning abstention, or that this Court has "arising in" jurisdiction and that this Court did not consider the actual application of the Plan and Confirmation Order or the merits of G-I's pending Motion to Dismiss.

Similarly, G-I contends that the appeal does not divest this Court of jurisdiction because any ruling on the Injunction Motion would not interfere with the appeal of the Remand Order as the issues to be decided by this Court on the Injunction Motion and the District Court on the appeal of the Remand Order are different (citing *In re Prudential Lines, Inc.*, 170 B.R. 222, 244 (S.D.N.Y. 1994); *In re Scopac*, 624 F.3d 274, 280-81 (5th Cir. 2010)). G-I states that, on appeal, the District Court will determine whether this Court or a state court has jurisdiction over the Ashland Parties' Complaint, but that a ruling by this Court in favor of G-I on its Injunction Motion would not ultimately dispose of the entire ISP Litigation because the Ashland Parties also asserted claims against non-debtor BMCA and because granting the Injunction Motion would still require the implementation of such an order in whichever forum the District Court decides has jurisdiction. *See id.* at 8-9 (citing *Charter Commc'ns*, 2010 WL 502764 at *6). Because granting the Injunction Motion will not interfere with the District Court's consideration of the appeal of the Remand Order, G-I argues that *Norris Grain* is inapposite. Reply in Support of Injunction Motion at 9.

Next, G-I argues that the law of the case doctrine "directs courts to refrain from re-deciding issues that were resolved earlier in a litigation," citing *Arroyo v. Astrue,* 347 F. App'x 802, 804 (3d Cir. 2009) (further citations omitted), but that the doctrine only applies to "issues previously determined," quoting *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979).   Reply in Support of Injunction Motion at 10-11.   G-I cites *Bouchet v. National Urban League, Inc.*, 730 F.2d 799, 806 (D.C. Cir. 1984) (emphasis in original) for the principle that "[q]uestions that merely could have been decided do not become law of the case" – rather, "only when an issue not expressly addressed must have been decided by 'necessary implication' will the doctrine be applied."   Reply in Support of Injunction Motion at 11.   G-I again notes that the Remand Decision did not decide the applicability of the Plan or discharge provisions.   *See id.* at 12-13 (citing *In re C.F. Foods, L.P.*, 265 B.R. 71 (Bankr. E.D. Pa. 2001); *In re Asousa P'ship*, 276 B.R. 55, 57-59 (Bankr. E.D. Pa. 2002)).   G-I argues that here, as in *In re C.F. Foods* and *In re Asousa Partnership*, G-I is raising the import and effect of the general discharge provisions discharging all claims against G-I (Section 9.2 of the Plan) and the injunctive provision permanently enjoining any action or proceeding in respect of any claim (Section 9.3 of the Plan) through a "different lens and via a different procedural posture – that is, G-I is moving the Court, in its main chapter 11 bankruptcy case, to interpret and enforce the Confirmation Order as it concerns the ISP Parties' Claims against G-I in the ISP Litigation," and that "as a result, the Court's Remand Order is not determinative, nor preclusive, or G-I's Motion to Enforce."   Reply in Support of Injunction Motion at 13.

Turning to the merits of the Injunction Motion, G-I contends that the Ashland Parties' causes of action constitute "Claims" within the meaning of Section 7.3 of the Plan and Bankruptcy Code Section 101(5) because they arose before G-I's bankruptcy petition was filed.

G-I asserts that a right to payments of an indemnification claim under an express agreement exists "'upon the signing of the agreement.'" *Id.* at 14 (quoting *Frenville*, 744 F.2d at 336 (citing *Comm'n Dynamics*, 382 B.R. at 232-34 ("[m]any courts have held that a claim (albeit contingent) which is based on a written agreement arises at the time the agreement is executed even though the breach of the agreement does not occur until later" and that "a claim arises when the right to payment accrues, not when payment is due."))). G-I contends that here, since the parties executed the Indemnification Agreement in 1996 and IES entered into the AOC with the EPA in 1999, IES thus was aware of its PRP status under CERCLA for the LCP Site at that time prior to G-I's Petition Date. Thus, ISP and IES held a claim under the Indemnification Agreement prior to and at the time of G-I's bankruptcy but failed to file a proof of claim. Accordingly, G-I asserts these claims have been discharged.

Next, G-I argues that Section 7.3 of the Plan does not prevent discharge of Ashland's claims. According to G-I, Section 7.3 merely provides an additional 30 days after the Plan became effective for G-I to cure defaults under assumed executory contracts or expired leases (provided the non-debtor timely filed a proof of claim) as well as notice to all parties that "all cure amounts and all contingent reimbursement or indemnity claims for prepetition amounts expended" will be expressly discharged but for a timely proof of claim. Reply in Support of Injunction Motion at 17 (citing § 7.3 of the Plan). G-I argues that the Plan provides no exception in Section 7.3 or otherwise supporting the notion that contingent indemnity claims survive the Plan. G-I contends that its position is supported by the principle of bankruptcy law that all claimholders must file a proof of claim in order to preserve their claims. Reply in Support of Injunction Motion at 17 (citing *In re Altegrity, Inc.*, 562 B.R. 253, 259 (Bankr. D. Del. Nov. 28, 2016)). G-I rejects the Ashland Parties' contention that they lacked a cognizable claim for

indemnification under the Indemnification Agreement until after the Plan was confirmed and so did not file a proof of claim, countering that IES began incurring costs in connection with compliance with the AOC in 1999.  G-I argues that IES, or ISP on IES' behalf, could have given notice of their indemnification claims prior to G-I's bankruptcy but did not do so.  Instead, G-I notes that they recovered millions of dollars in insurance funds in G-I's bankruptcy case based on multiple representations to this Court as to ISP's liability for the LCP Site.  G-I contends that these alleged "inconsistent positions" further support enforcing the Plan injunction against the Ashland Parties.  Reply in Support of Injunction Motion at 17.   G-I argues that the Ashland Parties' failure to provide notice to G-I of its claims at the time the Indemnification Agreement was assumed bars later pursuit of those claims.  *Id.* at 19 (citing *Cellnet Data Sys.*, 313 B.R. at 608-09).  G-I rejects what it characterizes as Ashland's assumption that the Plaintiffs' Complaint against G-I constitutes a post-confirmation claim and that ISP and IES did not expend any funds in connection with their PRP liability and compliance with the AOC.   Reply in Support of Injunction Motion at 20.   G-I argues that, typically, claims that are classified as post-confirmation claims arising under a properly assumed executory contract by their nature relate to post-petition acts of the debtor.  G-I urges that here the Ashland Parties' claim cannot be so classified because the chemical manufacturing and related activity leading to the environmental contamination and the initiation of a CERCLA claim related to pre-petition activities (citing *In re Juvennelliano*, 464 B.R. 651, 654-55 (Bankr. D. Del. 2011)).  As well, G-I asserts IES expended funds in connection with the environmental liabilities at the LCP Site.

Lastly, G-I disputes Ashland's contention that G-I expressly acknowledged its indemnification obligations to the Ashland Parties by releasing insurance proceeds to ISP, IES' parent.  G-I contends that this argument fails because G-I never sought approval to distribute

these proceeds on the basis of an obligation to ISP or IES pursuant to the Indemnification Agreement and because certain affidavits submitted by attorneys at McCarter & English, LLP, ISP's counsel in the insurance coverage action,[13] "effectively concede" ISP and IES's PRP status for the LCP Site.  Reply in Support of Injunction Motion at 23.

*February 16, 2017 Hearing*

On February 16, 2017, this Court heard oral argument of the parties in this matter.

A. *Jurisdiction*

G-I argued that pendency of the appeal did not divest this Court of jurisdiction because there is no actual identity of issues and the disposition of the Injunction Motion would not deprive the District Court of the ability to rule on the appeal.  In overview, G-I first asserted that the Injunction Motion, filed in the main case, is a different "procedural animal" than the ISP Litigation that was removed to this Court and became the adversary proceeding subject to the Remand Order.   G-I explained that whereas a plan injunction motion is the classic tool reorganized debtors use to enforce the discharge against lawsuits typically in other venues, in this case, the underlying lawsuit ended up before this Court.   G-I contended that it became necessary to file this Injunction Motion upon the Court issuing the Remand Decision.   Second, G-I argued that the Court has subject matter jurisdiction over the Injunction Motion pursuant to the Plan and the Confirmation Order because the Court already determined it has related-to jurisdiction over the issues in the ISP Litigation and because courts have found either related-to or arising-in jurisdiction over motions to enforce plan injunctions.   Third, G-I argued that the appeal of the Remand Order did not divest this Court of jurisdiction because an appeal only

---

[13] *G-I Holding, Inc. et al v. Hartford Accident & Indemnity Co., et al.*, Docket No. L-980-97, N.J. Super. Ct., Law Div., Somerset Cnty.

divests the lower court of the express issues on appeal, in this case, the application of abstention and jurisdiction issues as they relate to the ISP Litigation.

G-I contended that an appeal only divests the lower court of that which is appealed. G-I explained that the specific issues on appeal to the District Court are whether this Court erred by not finding that arising-in jurisdiction applies to the subject adversary proceeding, whether this Court erred in determining that it was required to abstain, and whether this Court erred and abused its discretion in determining that it was permitted to abstain. G-I asserted that the two elements to consider with respect to divestiture are: 1) whether the issues themselves are the same, and 2) whether the effect of the court's ruling would strip the appellate court of the ability to do its job. G-I argued that this Court never reached the substantive issues in the Injunction Motion—specifically, whether Ashland's underlying claim is a "claim" under the Code and the Plan and thus discharged and barred by the plan injunction—in deciding the Motion to Remand. G-I further asserted that the instant motion is narrower than and distinct from the remand of a plenary proceeding filed in state court. Moreover, G-I contended that even if this Court granted the Injunction Motion and enjoined lawsuits against G-I, doing so would not divest the District Court of its decision on appeal because 1) non-debtor BMCA is a defendant in the ISP Litigation, and 2) the District Court would still need to decide in what court the discharge injunction should be enforced.

When the Court asked whether the fact that the Injunction Motion is in the main case and the appeal is in the adversary case precludes application of the divestiture rule under *Norris Grain*, G-I responded that *SemCrude* established that whether the court has jurisdiction over a motion to enforce the Discharge Injunction in the main case and whether the court has jurisdiction over the underlying lawsuit are distinct jurisdictional questions. G-I noted that the

court in *SemCrude* found it had core jurisdiction over a motion to enforce the plan injunction based on its analysis of the subject matter of that motion, not the subject matter of the underlying lawsuit pending in another venue.  G-I asserted that the Supreme Court in *Travelers* similarly found that the enforcement of an order in the main bankruptcy case is a distinct jurisdictional question.

Citing *Prudential Lines*, G-I argued that the case law provides a bankruptcy court is divested of jurisdiction if either 1) it is making a decision on a contested issue that is identical to one on appeal, or 2) its adjudication would tamper in some manner with the appealed order. Similarly, G-I noted that the Fifth Circuit in *Scopac* used the language "interfere with or allow the circumvention of the appeal of the confirmation order."  G-I explained that this Court could rule on the Injunction Motion without tampering with the District Court appeal, just as the bankruptcy court's decision to enforce the plan in *SemCrude* did not prevent the District Court there from independently finding no related-to bankruptcy jurisdiction existed over the underlying state court litigation.  G-I argued that Ashland's bases for contending the appeal overlaps with the Injunction Motion concern the merits of the case, which were not decided and are not on appeal.  In so arguing, G-I acknowledged that it relies on the Plan and Confirmation Order in the instant Injunction Motion just as it relied on them in the Motion to Dismiss the adversary proceeding.  G-I argued that to the extent Ashland may argue for the first time that these purported overlaps are jurisdictional questions, *SemCrude* dictates that they are distinct, with a different procedural posture and a different answer.

G-I continued that if the Court determines that the Injunction Motion is a core proceeding, it must hear the question under *Charter Communications* and *CD Liquidation*, which found core jurisdiction to enjoin lawsuits pending in federal court, and *AMR*, wherein the court

enjoined lawsuits pending in state court.    G-I contended that these cases were all post-confirmation and support finding core jurisdiction here, notwithstanding that the underlying litigations there did not come before the bankruptcy court.

In response to Ashland's law of the case argument, G-I contended that it is not asking this Court to overrule itself, but to reach for the first time the merits of the Plan and discharge injunction and apply them to the lawsuit Ashland is trying to prosecute. Thus, G-I posited that the "law of the case" doctrine is inapplicable here, citing *SemCrude*.

Ashland responded that the Court must first find that it has jurisdiction over the Injunction Motion in the absence of the appeal before asking whether the divestiture rule divests the Court of that jurisdiction. Ashland relied on the articulation of the divestiture rule in *Griggs*, where the Court of Appeals divested the District Court of control over those aspects of the case involved in the appeal. Ashland pointed out that many of the arguments G-I made in opposing remand, including that the Court must look to and enforce the discharge and injunction provisions in the Confirmation Order and Plan, as well as in the Motion to Dismiss, are repeated in this present Injunction Motion. Thus, Ashland contended that the Injunction Motion is not a "completely different animal," but "another bite at the apple." Ashland argued that the Court considered G-I's arguments in finding related-to jurisdiction over the ISP Litigation but nevertheless abstaining from hearing it and deciding that state court was the proper forum.

Ashland acknowledged that the *Scopac* case indicated that due to the inherent nature of bankruptcy cases, there are sometimes discreet controversies that deserve separate appellate consideration and that the divestiture rule should not be interpreted broadly. However, Ashland asserted that G-I cannot separate the present Injunction Motion from the jurisdictional issues raised with respect to remand because G-I did not make those issues severable. Moreover,

Ashland noted that G-I chose to appeal the Remand Order instead of seeking reconsideration or asking this Court to enforce the discharge injunction in the first instance, even though G-I discussed the Plan injunction as part of its opposition to the remand motion.

With respect to the significance of filing the Injunction Motion in the main case when the appeal is in a distinct adversarial proceeding, Ashland first referred to *SemCrude*. Ashland argued that *SemCrude* involved property of the estate, one of the quintessential aspects of core jurisdiction. Ashland continued that the court there specifically observed that even though abstention from hearing core proceedings is normally inappropriate, the rule is not inflexible and the court retains the power to abstain for reasons of justice, comity with state courts or respect for state law. Ashland argued that this Court abstained from hearing the ISP Litigation because the Court found it had no impact on the estate, did not involve whether the claims were property of the estate, the state court was well-equipped to handle the proceeding, and the claims are state law claims. Ashland continued that this Court relinquished jurisdiction when it remanded the matter and then was divested, by G-I's filing of the Notice of Appeal, of jurisdiction to deal with matters that would impact the appeal.

Second, Ashland argued that the law of the case applies, in spite of the procedural posture, because the remand of the adversary proceeding and this Injunction Motion are components of a single bankruptcy case. Ashland argued that G-I has not overcome this Court's decision to abstain from hearing the ISP Litigation despite finding related-to jurisdiction.

G-I responded that unlike in *Norris Grain*, the disposition of the instant Injunction Motion would not "moot the appeal." G-I continued that despite Ashland's contention that there is overlap between the relief sought in this Injunction Motion and the pending Motion to

Dismiss, the Court did not rule on the latter.  G-I clarified that it is not arguing that the merits or the relief sought is different, but that the procedural vehicle is different.

G-I asserted that the only issues on appeal are abstention and jurisdiction; thus, the Court is not divested from hearing the merits of the present Injunction Motion.  G-I contended that under *Hopewell* and other cases, the bankruptcy court retains jurisdiction to resolve collateral issues not before the appellate court.  G-I continued that *SemCrude* found not only that the determination of property of the estate was a core proceeding, but also that the interpretation and enforcement of a plan is a core proceeding.  G-I noted that *Charter Communications* and *CD Liquidation* likewise did not involve property of the estate, but nevertheless found that the enforcement of releases and injunctions under the plan were core proceedings.  Moreover, G-I argued that the abstention doctrine does not apply to core proceedings under 28 U.S.C. § 1334(c)(2).

G-I asserted that Ashland has the difficult burden of proving that the law of the case disposes of this dispute because a different case or a different procedural context can be viewed in a different prism.  G-I explained that this is why the procedural posture makes a difference and why the Remand Order does not dictate the outcome of this Injunction Motion.

G-I continued that the enforcement of the Plan injunction has a critical impact on the administration of the Plan, and indeed is the entire reason for bankruptcy proceedings.  G-I contended that creating an exception that allows Ashland an end-run around those proceedings threatens the Plan and G-I's ability to reorganize.

Ashland clarified that it is not asking the Court to abstain from hearing the Injunction Motion; instead, it contends that because the arguments on the Injunction Motion are part and parcel of the appeal, the Injunction Motion interferes with the appeal and the Court should not

hear it, and that permissive abstention under 28 U.S.C. § 1334 (c)(1) can apply to core proceedings.

In response, G-I agreed that Ashland did not move for abstention as to the present Injunction Motion and repeated its position that enforcement of a plan injunction is a core function of the bankruptcy court, citing *Charter Communications*.

## B. Merits

With respect to the merits of the Injunction Motion, G-I argued that Ashland's claims are pre-petition claims as defined by the Bankruptcy Code and under the Plan; therefore, Ashland's claims were discharged under the Plan. G-I alleged that even if Ashland expended additional funds post-confirmation, Ashland's claim is still a contingent or unmatured claim under the Code or the Plan. G-I continued that the Third Circuit's decision in *Frenville* specifically found that if a contractual indemnity exists, the right to payment is by virtue of the contract, not an actual payment obligation. G-I argued that the funds expenditure here occurred pre-confirmation on liabilities that are decades old. G-I continued that the Indemnification Agreement and the AOC between IES and the EPA are pre-petition contracts, and that ISP and IES sought insurance proceeds in New Jersey state court and before this Court while the bankruptcy case was pending, which shows that ISP and IES acknowledged their liability for the LCP Site.

G-I asserted that ISP and IES never filed a proof of claim or asserted that G-I was responsible for the cleanup costs during the bankruptcy, including when the indemnity was assumed as part of the Plan. G-I alleged that the Plan cut off Ashland's claim for contractual indemnity because it is a claim under the Code, under *Frenville* and under the Plan, whether it is an "environmental claim" or a "claim" more generally.

G-I continued that the Plan and the Confirmation have a broad discharge provision under which, upon the Effective Date of the Plan, all claims against the debtors' estates and the reorganized debtor shall be and be deemed to be discharged in full. Thus, G-I asserted that the only dispute is whether Ashland has a claim. G-I contended that Ashland's claims are pre-petition claims under the Plan's definition of a claim and that *Frenville* makes clear that, in the Third Circuit, a contingent right to payment of an indemnification claim under an express agreement exists upon the signing of the agreement. G-I claimed that that is the case here, citing *Communication Dynamics* for further support. G-I added that it believes Ashland's indemnification claim has no merit because liability lies with ISP and IES, but in any event, Ashland's right to payment arose when the contract was signed. G-I noted that ISP actually paid funds with respect to the LCP Site cleanup and recovered insurance proceeds during the bankruptcy case. Further, G-I asserted that ISP filed papers in multiple courts, including this Court, representing that the obligation was ISP's and not G-I's. Thus, G-I argued that the Ashland Parties acknowledged their liability and are bound by those statements under *quasi-estoppel*. Moreover, G-I claimed that if the Ashland Parties thought liability lay with G-I, they should have asserted their indemnification claim by filing a proof of claim before the bar date in the bankruptcy case. G-I continued that Ashland knew about the indemnification claim against G-I when it acquired ISP's stock in 2011 and that Ashland's stock purchase did not remedy ISP's failure to file a proof of claim. G-I continued that Ashland's potential expenditure of funds in the future does not make its claim a post-petition claim, citing *Frenville* and *Grossman's*, because the definition of "claim" under Section 101(5) of the Code includes unmatured contract claims.

G-I argued that the fact that a debtor assumes or rejects an executory contract does not dictate what happens to a pre-petition claim under the contract, whether asserted or not. G-I contended that Ashland's argument is essentially that, by virtue of assuming the contract, all pre-petition claims under the contract are revived and transformed into post-petition, post-reorganization claims if they involve post-petition expenditures of funds. G-I urged the Court that Section 7.3 of the Plan does not create a carve-out from the discharge provision in Section 9.2; in fact, it imposes the additional requirement that a claim for an asserted default under an assumed contract must be filed within 30 days after the effective date of the plan. In addition, G-I asserted that Section 7.3 further indicates that all cure amounts, contingent reimbursement claims or indemnity claims shall be discharged unless a proof of claim is timely filed. G-I continued that 11 U.S.C. § 365(b) likewise does not preserve a pre-petition claim by virtue of assumption of a contract. G-I contended that whereas Ashland cites no law in support of its position, G-I cited *Diamond Manufacturing*, *NLC* and *Cellnet*, which found that the failure to file a claim with respect to a default under an assumed contract or lease barred the claim. G-I argued that *Diamond Manufacturing* is particularly on point, and that the court there found that the plaintiff's failure to assert a default under the lease indemnity provisions regarding then-existing, pre-assumption contamination prior to the trustee's assumption the lease resulted in the default and indemnity claims being barred. G-I also cited those cases in positing that Ashland's failure to assert a default bars its claims under *res judicata*. G-I rested on its brief with respect to *quasi-estoppel*.

Ashland argued that *AMR* is inapposite because the employment discrimination claims in that case accrued pre-petition, whereas Ashland's indemnification claims did not. Ashland also cited to *Charter Communications*, among others, for the court's observation that bankruptcy

courts in particular may have less need to interpret documents and resolve disputes involving the reorganized debtor post-confirmation, noting that this Court found the ISP Litigation had no critical impact on the Plan.

Ashland argued that although, under the Plan, a "claim" generally includes "environmental claims," the Plan defines "environmental claim" to exclude a "claim of an affiliate," citing Section 1.1.67 of the Plan. Ashland continued that when Ashland acquired IES and ISP, it knew it had the Indemnification Agreement assumed by G-I. Therefore, Ashland asserted that it knew if it had to pay to clean up the LCP Site, it had an absolute right to seek indemnification for any amounts expended under the Indemnification Agreement. Ashland argued that the September 5, 2008 Order establishing the bar date for filing proofs of claim (the "Bar Order") provided that "[a]ny affiliate of G-I or ACI, insofar as such affiliate may have a claim against or interest in either G-I or ACI or any of the other affiliates, this bar order specifically exempts and excludes the Ashland parties, ISP and IES from the necessity of filing a claim against G-I."[14] Thus, Ashland asserted that it did not need to file a claim and in fact was excluded from doing so, obviating G-I's arguments on this issue.

Ashland emphasized that the Indemnification Agreement was assumed upon confirmation of the Plan. With respect to Section 7.3 of the Plan, Ashland pointed out that despite G-I's assertion that funds have been expended, there has been no determination of default, nor has Ashland alleged a default or need for cure under the Indemnification Agreement. Ashland argued that G-I's brief acknowledges that there has been no allocation of financial responsibility between BMCA, G-I and ISP for the LCP Site remediation costs. Ashland

---

[14] G-I argued that Ashland did not include this argument in its briefs. Ashland responded that the Court can take judicial notice of the Order, as it is part of the G-I proceedings and G-I's counsel referred to it. The Court permitted Ashland to continue its argument on this point and allowed the parties to submit post-hearing responses, if necessary.

continued that although the insurance proceeds had been allocated, it is not clear to what extent the parties were compensated.

Ashland acknowledged that if it had expended money and made a claim for cure of default in connection with a demand for indemnification, it would be a pre-petition claim under Section 7.3 of the Plan. However, Ashland alleged it made no such claim in the ISP Litigation and further that the Bar Order excluded it from filing a proof of claim as an affiliate. For these reasons, Ashland contends that Section 7.3 does not apply and *Frenville* is inapplicable.

Ashland continued that its indemnification claim arose when it demanded indemnification in the ISP Litigation on July 1, 2015, days after June 26, 2015, the effective date of the UAO and years after G-I assumed the Indemnification Agreement. Ashland contended that it is not making a pre-petition claim because it does not allege a default requiring cure or that pre-petition amounts were expended. Likewise, Ashland asserted that Section 9.2 of the Plan does not apply because Ashland's claims did not arise before the effective date of the Plan. Similarly, Ashland argued that it did not need to make a cure claim within 30 days of the effective date of the Plan because there was no such claim.

Ashland contended that to the extent any entity needed to assert a claim, it was ISP and IES under the control of the Heyman family; thus, Ashland is not estopped from making its arguments and is entitled to rely upon the assumed Indemnification Agreement. Ashland cited to *City of Detroit* for the proposition that parties to an indemnification agreement must live by it, notwithstanding efforts in a plan to counteract it.

G-I asserted that Ashland conceded during the hearing on the Motion to Remand that its claim is a contract claim, not an environmental claim. G-I continued that the affiliate exclusion

only applies to environmental claims under the Plan, and moreover Ashland would still have to show whether its indemnification claim is a claim under the Code and the Plan.

G-I posited that, notwithstanding Ashland's new argument that it did not need to file a proof of claim under the Bar Order, the basis of the present Injunction Motion is the Plan injunction and the discharge, not the Bar Order. G-I asserted that there is no exception to the Plan injunction and discharge for an affiliate claim. G-I alleged that the heading of Section 7.3, "Cure of Defaults and Survival of Contingent Claims Under Assumed Executory Contracts and Unexpired Leases," cannot be relied on for purposes of interpreting the Plan under Section 13.20, which provides that section headings are for reference only and do not affect the meaning or interpretation of the Plan. G-I also asserts that Ashland is bound by the Heymans' decisions with respect to ISP because Ashland bought ISP's stock. G-I contended that the issue of allocation is irrelevant to whether a claim existed at the time of the bankruptcy and was therefore discharged under the Plan and Confirmation Order, which G-I contends is the case here. G-I also insisted that *Frenville* is the law in the Third Circuit with respect to an indemnity in writing.

G-I contended that the various agency claims against Ashland all arise from the contamination at the LCP Site and the Indemnity Agreement. G-I emphasized that those claims are merely the materialization of contingencies that already existed, namely, the contaminated site and the fact that there would be liability for it. G-I repeated that the Ashland parties knew about such liability during the bankruptcy proceeding and that the trigger for a claim is the right to payment at the time of the agreement, not when the EPA says how much is owed. G-I repeated that because there is no carve-out in Section 7.3 from the discharge in Section 9.2, all claims are discharged notwithstanding Ashland's failure to file a proof of claim with respect to any cure or contingent amounts.

G-I argued that Ashland's contention that it receives special treatment as an affiliate ignores Section 3.15 of the Plan, which specifically addresses the treatment of G-I affiliate claims under the Plan, Class 10A, which provides that holders of such claims shall receive no distribution of cash or property with respect to such claims. G-I continued that no provision in the Plan preserves affiliate claims post-bankruptcy. G-I contended that all claims in the case, whether subject to a proof of claim or the Bar Order, were extinguished by the Plan discharge and injunction. G-I likewise emphasized that no case law provides that an assumed contract revives an old claim, noting that *Diamond Manufacturing* and other cases cited support the opposite proposition. Instead, G-I argued that the assumption of a contract is simply a decision by the debtor to have that contract continue in place with the parties to be liable going forward.

In response, Ashland clarified that it is not asserting *Frenville* is not good law, but simply that it is inapplicable here.

Ashland also contended that the law of the case jurisprudence is not a matter of procedure, but of what has been decided. Ashland continued that the case law is clear that adversary proceedings in bankruptcy are not distinct from, but rather components of, the single bankruptcy case.

Ashland emphasized that it is not asserting that it expended pre-petition amounts in this case, which is what Section 7.3 of the Plan discusses.

Ashland asserted that the purpose of the Bar Order exclusion of affiliate claims makes sense since G-I affiliates would not want to be filing claims against each other during the bankruptcy proceeding. However, if the affiliate was thereafter sold, the parties cannot walk away from the fact that its claim was excluded during the bankruptcy case and can still be enforced if the indemnification agreement was assumed. Ashland alleged that all parties want to

enforce the Indemnification Agreement and that the ISP Litigation pertains to post-effective date,

post-confirmation claims that Ashland intends to pursue should this Court deny the Injunction

Motion.

*Post-Hearing Submissions*

On February 26, 2017, G-I filed a post-hearing letter. G-I Post-Hearing Letter, *In re G-I*

*Holdings, Inc.*, Case No. 01-30135, ECF No. 11068. First, G-I explained that it rested on its

rebuttal during the February 16, 2017 hearing with respect to Ashland's new argument

concerning the Bar Order. G-I contended that it understood the record to be closed on that issue.

Next, G-I asserted that Hon. Esther Salas' decision in *In re Christ Hospital*, No. 14-472 (ES),

2014 WL 4613316 (D.N.J. Sep. 12, 2014) followed similar reasoning to *In re SemCrude, L.P.*,

No. 08-11525-BLS, 2011 WL 4711891 (Bankr. D. Del. Oct. 7, 2011), *rev'd in part on other*

*grounds,* No. BR 08-11525 BLS, 2012 WL 5554819 (D. Del. Nov. 15, 2012), *subsequently rev'd*

*on other grounds,* 796 F.3d 310 (3d Cir. 2015), and further supports a conclusion that this Court

has core jurisdiction to decide the Injunction Motion. *See* G-I Post-Hearing Letter at 1-2. G-I

argued that in *Christ Hospital*, the appellant alleged certain economic tort claims in state court

against the appellees relating to the appellees' acquisition of the debtor's assets pursuant to a sale

order reaffirmed in the debtor's confirmed Chapter 11 plan. *Id.* at 2 (citing *Christ Hosp.*, 2014

WL 4613316 at *1-3). G-I contended that the appellee filed a motion for an injunction to

enforce the sale and confirmation order in the main bankruptcy case, which the bankruptcy court

granted. G-I Post-Hearing Letter at 2 (citing *Christ Hosp.*, 2014 WL 4613316 at *4). G-I

asserted that the district court there affirmed the bankruptcy court's finding that it had

jurisdiction to enforce its own orders because the injunction motion was a core matter. G-I Post-

Hearing Letter at 2 (citing *Christ Hosp.*, 2014 WL 4613316 at *7). G-I continued that the district

court cited with approval the bankruptcy court's conclusion that the appellant's argument that its economic tort claims did not arise in or under Title 11 "'misse[d] the point'" that those claims are Section 363(f) interests and that the sale and enforcement of the associated order were core. G-I Post-Hearing Letter at 2 (citing *Christ Hosp.*, 2014 WL 4613316 at *10). G-I contended that *Christ Hospital* and *SemCrude* thus support that this Court has core jurisdiction to enforce the terms of its own prior order, *i.e.*, the Confirmation Order. G-I Post-Hearing Letter at 2.

On February 28, 2017, Ashland filed a post-hearing letter in response to G-I's post-hearing submission. Ashland Post-Hearing Letter, *In re G-I Holdings, Inc.*, Case No. 01-30135, ECF No. 11070. Ashland first noted G-I's acknowledgment that the record on the Injunction Motion is closed and that G-I chose not to comment with respect to the Bar Order. *Id.* at 1. Ashland next argued that G-I's attempt to supplement the record with *Christ Hospital* was improper because that opinion was available to G-I when it filed its brief in support of the Injunction Motion, when G-I filed its reply, and at the time of the hearing. *See id.* Ashland continued that G-I's submission is particularly improper given Ashland's position that the Injunction Motion itself is an improper attempt to reargue jurisdiction and abstention issues that the Court fully considered and adjudicated in granting the Motion to Remand. *Id.* Ashland reiterated certain of its arguments raised in opposition to the Injunction Motion, including that G-I's opposition to the Motion to Remand specifically argued that the Plan injunction precluded remand, that the Injunction Motion attempts an end-run around the appeal of the Remand Order pending before the District Court, and that this Court determined that abstention from hearing the ISP Litigation claims was appropriate. *See id.* 1-2. Ashland asserted that the record on the Court's denial of a stay pending appeal is similarly closed, and that the appeal is now before the District Court. *Id.* at 2. Ashland concluded that, for these reasons, the Court should not consider

G-I's improper post-hearing submission. *Id.* Ashland continued that, if this Court is inclined to

reopen the record on the Injunction Motion to consider G-I's late submission, *Christ Hospital*

adds nothing to the jurisdiction and abstention analysis. *Id.* Ashland argued that the district

court's decision in that case was grounded in the bankruptcy court's *in rem* jurisdiction over an

approved Section 363 sale of assets and that the post-sale exercise of jurisdiction was deemed

"'necessary to protect the sale.'" *Id.* (citing *Christ Hosp.*, 2014 WL 4613316 at *10). Ashland

contended that the bankruptcy court in that case noted that the economic tort claims being

asserted against the purchaser of the debtor's assets were connected to or arose from the 363 sale

such that they were "interests" subject to the 363 sale. Ashland Post-Hearing Letter (citing *In re

Christ Hosp.*, 502 B.R. 158, 185 (Bankr. D.N.J. Dec. 3, 2013). Thus, Ashland argued that *Christ

Hospital* adds no support to G-I's contention that this Court must exercise core jurisdiction over

Ashland's contractual indemnification claims, which Ashland insisted have no impact on G-I's

estate and can be readily adjudicated with G-I's affirmative discharge defense in the New Jersey

state court. Ashland Post-Hearing Letter at 2.


## LEGAL STANDARDS

### I. Jurisdiction

#### A. The Divestiture Rule

Generally, a notice of appeal divests the lower court of jurisdiction over those matters on

appeal. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *Venen v. Sweet*,

758 F.2d 117, 120 (3d Cir. 1985); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 13–13653

(DHS), 2014 Bankr. LEXIS 1914, at *9 (Bankr. D.N.J. Apr. 24, 2014). "The filing of a notice of

appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals

and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58. The Third Circuit has determined that "'[d]ivest' means what it says – the power to act, an all but a limited number of circumstances, has been taken away and placed elsewhere." *Venen*, 758 F.2d at 120 (footnote omitted). This principle, referred to as "the divestiture rule," "has the salutary purpose of preventing confusion and inefficiency which would of necessity result were two courts to be considering the same issues simultaneously." *Id.* at 121. At least one court has noted that the divestiture rule is discretionary, not absolute. *See In re Norris Grain Co.*, 167 B.R. 258, 260 (Bankr. M.D. Fla. 1994) ("A court must exercise its discretion to avoid interfering with or replacing the appellate process."); *see also In re Thorp*, 655 F.2d 997, 998 (9th Cir. 1981) ("While this rule is not a creature of statute and is not absolute in character, . . . it is judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time.") (internal citations omitted); *Hoffman ex rel. N.L.R.B. v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976) ("[T]he [divestiture] rule is not a creature of statute and is not absolute in character.").

The divestiture rules applies with equal weight to bankruptcy court orders. *See 710 Long Ridge Rd.*, 2014 Bankr. LEXIS 1914 at *11, *17 (concluding that the court was without jurisdiction to address a motion seeking clarification of its confirmation order pending appeal because the clarification requested addressed a "critical issue on appeal"). Courts have recognized, however, that due to the inherent nature of bankruptcy cases, "discrete controversies within the overall case framework may often deserve separate appellate consideration," and have cautioned against a "broad rule that a bankruptcy court may not consider any request which either directly or indirectly touches upon the issues involved in a pending appeal and may not do

anything which has any impact on the order on appeal." *See In re Scopac*, 624 F.3d 274, 280 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011) (internal citations omitted). Instead, the test is a functional one: "'once an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process.'" *See id.* (quoting *In re Whispering Pines Estates, Inc.*, 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007)). Other courts, including in this jurisdiction, have articulated a similar standard. *See, e.g., 710 Long Ridge Rd.*, 2014 Bankr. LEXIS 1914 at *9 (noting that "[t]he function of the divestiture rule is to *prevent interference* from the lower court while the appeal is pending and to conserve judicial resources by having only one court at a time review issues") (citations omitted and emphasis added); *In re Prudential Lines, Inc.*, 170 B.R. 222, 243, 244 (S.D.N.Y. 1994) (finding that "a lower court may take no action which *interferes with* the appeal process or with the jurisdiction of the appellate court" and noting that in cases where the bankruptcy court lacked jurisdiction to undertake a particular act, "the bankruptcy court either *tampered in some manner with* the appealed order *or sought to make a decision on a contested issue identical to one on appeal*") (emphasis added); *Norris Grain*, 167 B.R. at 260 ("[T]o determine whether exercising jurisdiction in the main case in regard to a motion to dismiss would *interfere* with the appeal of the adversary judgment, the Court must analyze both the issues on appeal and the issues presented by the motion to dismiss.") (emphasis added).

Therefore, an appeal of a bankruptcy order will not only divest the bankruptcy court of jurisdiction if the issues on appeal are identical to the issues presently before the bankruptcy court, but also if the bankruptcy court's determination of the issues before it would interfere with or undermine the appellate process.

### B. Law of the Case

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Daramy v. Attorney Gen. of the U.S.*, 365 F. App'x 351, 354 (3d Cir. 2010) (quoting *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 816 (1988)) (further citations omitted); *see also ACLU v. Mukasey*, 534 F.3d 181, 187 (3d Cir. 2008). "'Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (quoting 18 Charles A. Wright, Arthur R. Miller, Edward Cooper, *Federal Practice and Procedure* § 4478 at 788 (1981)). "The doctrine is designed to protect traditional ideals such as finality, judicial economy, and jurisprudential integrity." *In re City of Phila. Litig.*, 158 F.3d 711, 717-18 (3d Cir. 1998).

"The law of the case doctrine, however, acts to preclude review of only those legal issues that the court actually decided, either expressly or by implication; it does not apply to dicta." *Id.* at 718. Nor does the law of the case apply between separate actions. *See Daramy*, 365 F. App'x at 354-55.

## II. The Merits

### A. Quasi-Estoppel

Quasi-estoppel is different from "garden-variety" equitable estoppel. *In re Price*, 361 B.R. 68, 78–79 (Bankr. D.N.J. 2007) (Kaplan, J.). Equitable Estoppel is "an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment." *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, No. CIV. A. 07-321 (WHW),

2008 WL 2783339, at *3 (D.N.J. July 16, 2008) (quoting *Casamasino v. City of Jersey City*, 158

N.J. 333, 354 (N.J. 1999) (further citations omitted)).  In contrast, the doctrine of *quasi-estoppel*

has no requirement of a change in position in reliance upon another's prior conduct.  *Price*, 361

B.R. at 78–79 (citing *In re Guterl Special Steel Corp.*, 316 B.R. 843, 856 (Bankr. W.D. Pa.

2004)).

> As noted by the court in *In re Price*, 361 B.R. 68, 79 (Bankr. D.N.J. 2007) (Kaplan, J.):

> The doctrine, which has its basis in equity, precludes a party from asserting, to
> another's prejudice, a position that is inconsistent with a previously-held position.
> *See Erie Telecommunications, Inc. v. City of Erie*, 659 F.Supp. 580, 585
> (W.D.Pa.1987). The doctrine applies where it would be unconscionable to permit
> a person to maintain a position inconsistent with one in which he acquiesced or
> where he accepted a benefit. *Id.* The "conscience of the court" is repelled by the
> inconsistency. In common parlance, quasi-estoppel translates into the maxim that
> "one cannot blow both hot and cold". *Guterl Special Steel, supra,* 316 B.R. at 856
> *(quoting, Erie Telecommunications,* 659 F.Supp. at 585). Another court has
> explained the principal in even clearer terms: "one cannot eat his cake and have it
> too". *Western Resources, Inc. v. Union Pacific Railroad Co.,* 2002 WL 1462004
> (D.Kan.2002).

*Price*, 361 B.R. at 79.

### B. Effect of Confirmation of a Plan

Section 1141 of the Bankruptcy Code describes the effect of confirmation of a plan in a

chapter 11 case.  Pursuant to Section 1141(a):

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the
> provisions of a confirmed plan bind the debtor, any entity issuing securities under
> the plan, any entity acquiring property under the plan, and any creditor, equity
> security holder, or general partner in the debtor, whether or not the claim or
> interest of such creditor, equity security holder, or general partner is impaired
> under the plan and whether or not such creditor, equity security holder, or general
> partner has accepted the plan.

11 U.S.C. § 1141(a).

A bankruptcy court's order of confirmation is treated as a final judgment with *res

judicata* effect.  *In re G–I Holdings, Inc.,* 514 B.R. 720, 747–48 (Bankr. D.N.J. 2014)

(Gambardella, J.), *aff'd,* 654 F. App'x 571 (3d Cir. 2016) (citing *Stoll v. Gottlieb,* 305 U.S. 165,

170–71 (1938); *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 138–39 (2009) (holding that once

an order becomes final, it is *res judicata* as to parties and those in privity with them)).

Further, Section 1141 (d)(1) provides:

Except as otherwise provided in this subsection, in the plan, or in the order
confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such
confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i)
of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section
501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general
partners provided for by the plan.

11 U.S.C. § 1141(d)(1).

"Principal among the effects of the determination when a claim arises is the effect on the

dischargeability of a claim." *In re Grossman's Inc.*, 607 F.3d 114, 122 (3d Cir. 2010). A "debt"

is defined as liability on a "claim" under Section 101(12), which in turn is defined as a "right to

payment" under Section 101(5). *Id.*

C. Definition of "Claim" Under the Bankruptcy Code

The term "claim" is defined in the Bankruptcy Code at Section 101(5) as follows:

(5) The term "claim" means—

(A) right to payment, whether or not such right is reduced to judgment,
liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,
undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

The term "claim" has been defined very broadly. The Third Circuit has recognized the intentionally broad definition of "claim" in *In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010). *Grossman's* overruled the "accrual test" in *In re M. Frenville Co., Inc.*, 744 F.2d 332 (3d Cir. 1984), finding that it imposed "too narrow an interpretation of a 'claim' under the Bankruptcy Code" and holding that "a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." *Grossman's*, 607 F.3d at 121, 125 (citing 11 U.S.C. § 101(5)).

In the contractual indemnification context, a contingent right to payment of an indemnification claim under an express agreement exists "upon the signing of the agreement." *Frenville*, 744 F.2d at 336. Therefore, if the contract was executed prior to the petition date, any damages arising from the contract constitute "claims" within the meaning of the Bankruptcy Code and are therefore subject to discharge. *See In re Huffy Corp.*, 424 B.R. 295, 305 (Bankr. S.D. Ohio 2010) (finding that retailer was aware, pre-petition, of potential tort liability from retailer's sale of debtor-manufacturer's products such that the retailer could have filed a contingent, prepetition claim for indemnity and could have filed a proof of claim). This is so even if the obligations under the contract arose post-confirmation. *See In re Chateaugay Corp.*, 102 B.R. 335, 352 (Bankr. S.D.N.Y. 1989) (". . . Indemnity Loss claims which arise as a result of post-confirmation triggering or disqualifying events, although presently contingent, cannot escape unaffected by the Debtors' reorganization, and are thus subject to a confirmed plan of reorganization in these Chapter 11 cases. Therefore, post-confirmation triggering or

disqualifying events shall give rise to 'claims' which are cognizable in these reorganization proceedings.")

### D. Assumption of Executory Contracts

Section 365 authorizes trustees or debtors-in-possession to assume or reject any executory contract or unexpired lease of the debtor, subject to court approval. *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 317-18 (3d Cir. 2003) (citing 11 U.S.C. § 365(a)); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 534 (Bankr. D.N.J. 1988) (Gambardella, J.). In order to assume such an agreement, the debtor-in-possession must cure defaults and provide assurance of future performance. *Kiwi Int'l*, 344 F.3d at 318. Specifically, Section 365 provides, in relevant part:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

>> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property . . .;

>> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

>> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1)).

As the Third Circuit of Appeals explained, "Section 365 enables the [debtor] to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit

the estate and rejecting those that do not." *In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (citing 11 U.S.C. § 365(a)). The purpose of Section 365(b)(1) in particular is "'to restore the debtor-creditor relationship . . . to pre-default conditions,[] bringing the loan back into compliance with its terms.'" *In re DBSI, Inc.*, 405 B.R. 698, 704 (Bankr. D. Del. 2009) (quoting *In re U.S. Wireless Data, Inc.*, 547 F.3d 484, 489 (2d Cir. 2008) (internal citations omitted)). If the debtor satisfies the requirements of Section 362(b)(1) and the debtor's decision to assume such executory contract or unexpired lease is supported by valid business justifications, the executory contract or unexpired lease may be assumed. *See In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (D. Del. 2006).

Once an executory contract is properly assumed, the debtor is bound to assume all of its terms *cum onere* – with all of its benefits and burdens. *See N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 531-32 (1984). A debtor may not "cherry-pick" the provisions of an assumed contract with which it will comply. *See AGV Prods., Inc. v. Metro-Goldwin-Mayer, Inc.*, 115 F. Supp. 2d 378, 390-91 (S.D.N.Y. 2000); *In re Kopel*, 232 B.R. 57, 63-64 (Bankr. E.D.N.Y. 1999) ("A debtor cannot simply retain the favorable and excise the burdensome provisions of an agreement."); *see also In re Vill. Rathskeller, Inc.*, 147 B.R. 665, 671 (Bankr. S.D.N.Y. 1992)).

## ANALYSIS

Before it can reach the merits of the Injunction Motion, this Court must decide whether it presently has jurisdiction to decide it, notwithstanding the Court's previous decision to abstain from exercising jurisdiction over the ISP Litigation. G-I asserts that the Injunction Motion is a "core proceeding" and Ashland does not appear to argue otherwise. Therefore, the specific question is whether this Court has been divested of the jurisdiction it would otherwise have had

to hear the Injunction Motion.  For the following reasons, the Court finds that it has been divested of jurisdiction.

G-I contends that the divestiture rule does not apply because this Court has "core jurisdiction" to decide the Injunction Motion, the issues on appeal are different from the issues raised in the Injunction Motion, and because the Injunction Motion was brought in the main case whereas the Remand Order was entered in the adversary proceeding.  This Court disagrees. First, as noted above, the issue is not this Court's subject matter jurisdiction over the Injunction Motion, but whether the divestiture rule applied once G-I filed the Notice of Appeal.  Second, although the issues on appeal are not identical to the issues presented by this Injunction Motion, there is a substantial risk that this Court's decision will interfere with the appeal or substantially undermine the jurisdiction of the District Court.  In opposition to the Motion to Remand, the G-I Defendants raised as an affirmative defense, and this Court considered as part of its abstention analysis, the argument that the Ashland Parties' claims in the ISP Litigation were discharged by the Confirmation Order and Plan.  This same issue is before this Court on the Injunction Motion. Accordingly, this Court finds that there is a substantial risk that this Court's decision on the Injunction Motion will interfere with the appeal and undermine the appellate process.

Moreover, the fact that G-I brought this Injunction Motion in the main case rather than the adversary proceeding does not change the substantive analysis.  First, the Court notes that *In re SemCrude, L.P.*, No. 08-11525 BLS, 2011 WL 4711891 (Bankr. D. Del. Oct. 7, 2011), *rev'd in part on other grounds*, No. BR 08-11525 BLS, 2012 WL 5554819 (D. Del. Nov. 15, 2012), *subsequently rev'd on other grounds*, 796 F.3d 310 (3d Cir. 2015), and *In re Scopac*, 624 F.3d 274, 279 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011), do not address this issue.  Although *SemCrude*, like this case, involved a motion to enjoin before the

bankruptcy court and a separate state court litigation that was remanded (albeit by the district court) for lack of bankruptcy jurisdiction, the issue in *SemCrude* was whether the bankruptcy court had jurisdiction over the motion to enjoin given the district court's finding of no jurisdiction, not whether a pending appeal divested the bankruptcy court of jurisdiction over the motion to enjoin. *See* 2011 WL 4711891 at *1-3. Likewise, though this Court finds the *Scopac* case's discussion of the divestiture rule informative, the procedural posture of that case is different from this case. In *Scopac*, there were two separate appeals from orders of the bankruptcy court, the confirmation order and an order denying an administrative expense claim, pending before the district court at the same time. *See* 624 F.3d at 279. The district court held that its consideration of the appeal of the confirmation order divested it of jurisdiction over the appeal of the order denying the administrative expense claim because the latter was an integral part of the former. *Id.* Therefore, *Scopac* did not involve the question of whether a pending appeal divested the bankruptcy court of jurisdiction to hear a motion before it.

Instead, this Court finds *In re Norris Grain Co.*, 167 B.R. 258, 259 (Bankr. M.D. Fla. 1994) most instructive here. In *Norris Grain*, the Chapter 11 debtors' plan provided that claims owed to the Internal Revenue Service ("IRS") were to be paid in full over six years. 167 B.R. at 259. Following plan confirmation, the debtors filed an adversary complaint to determine whether IRS tax assessments for certain years were void under the discharge injunction in 11 U.S.C. §§ 524(a) and 1141(d). *Id.* Although the court found that the tax assessments violated the discharge, it nevertheless allowed them to stand because no harm resulted from them and declined to decide their validity. *Id.* The debtors and the IRS appealed the court's determination, which was affirmed by the district court. *Id.* Both parties appealed to the Eleventh Circuit Court of Appeals. *Id.*

While that appeal was pending, the IRS filed a motion in the main case to dismiss the debtors' petition based upon the debtors' failure to pay the IRS under the plan. *See id.* There, like here, the issue before the bankruptcy court was whether the pending appeal in the adversary case prevented the court from deciding the motion in the main case. *See id.* The bankruptcy court observed:

> An adversary proceeding may have its own jurisdictional base which allows a court to retain jurisdiction after the main case has been dismissed. *In re Morris*, 950 F.2d 1531 (11th Cir.1992). However, this does not mean the appeal of a judgment in an adversary proceeding is not capable of causing confusion, waste of time or interfering with the appellate process in relation to a motion in the main case. *Urban Development Ltd., Inc.*, 42 B.R. 741. Thus, to determine whether exercising jurisdiction in the main case in regard to a motion to dismiss would interfere with the appeal of the adversary judgment, the Court must analyze both the issues on appeal and the issues presented by the motion to dismiss.

*Norris Grain*, 167 B.R. 258 at 260 (emphasis added).

The court articulated the issue on appeal in the adversary proceeding as the effect of the discharge injunction on the IRS's assessment. *Id.* In contrast, the court found the motion to dismiss required it to determine whether the debtors materially defaulted under the plan. *Id.* The court reasoned that because dismissing the case would mean there was no discharge to enforce by way of the injunction, the issue of the effect of those provision would be mooted by dismissal of the case. *Id.* Therefore, the Court concluded that it did not have jurisdiction to rule on the motion to dismiss because doing so would interfere with the jurisdiction of the appeals court and the appellate process. *Id.*

For the reasons already discussed, this Court concludes that exercising jurisdiction in the main case with respect to the Injunction Motion would interfere with the appeal of the Remand Order in the adversary proceeding. As noted above, in opposition to the Motion to Remand, the G-I Defendants raised as an affirmative defense, and this Court considered as part of its

abstention analysis, the argument that the Ashland Parties' claims in the ISP Litigation were discharged by the Confirmation Order and Plan. This same issue is before the Court on the Injunction Motion. Therefore, as in *Norris Grain*, until the District Court has ruled on the appeal, the Court does not have jurisdiction to rule on the Injunction Motion because doing so would interfere with the jurisdiction of the appellate court and the appellate process. *See* 167 B.R. at 260.

While G-I certainly had the opportunity to file a motion for reconsideration, or even to file the instant Injunction Motion after the Motion to Remand was decided against it, it instead chose to file an appeal. G-I's Notice of Appeal had the effect of divesting this Court of its jurisdiction to rule on the Injunction Motion. For the foregoing reasons, the Court finds it lacks jurisdiction to consider the Injunction Motion. Because the Court does not have jurisdiction, it does not reach the parties' additional arguments on the merits.

## CONCLUSION

For the foregoing reasons, the Court finds it lacks jurisdiction to consider the Injunction Motion. Therefore, the Injunction Motion must be denied without prejudice.

An Order shall be submitted in accordance with this Decision.

DATED: May 1, 2017

ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE